## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF PREPETITION BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, FORMS, AND BOOKS AND RECORDS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Prepetition Bank Accounts, Cash Management System, Forms, and Books and Records and (II) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

4.      The bases for the relief requested herein are sections 105(a), 363, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

5.      Pursuant to Rule 9013-1(f) Local Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed in any of these cases.

7.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

**A.      The Debtors' Accounts, Forms, Records and Cash Management System**

8.      The Debtors use a cash management system (the "Cash Management System") in the ordinary course of business which permits the efficient collection and application of funds. Prior to the commencement of these chapter 11 cases, and in the ordinary course of business, the Debtors maintained 25 bank accounts (collectively, the "Bank Accounts"). A list of the Bank Accounts is attached hereto as **Exhibit A**. The Debtors' Cash Management System is primarily maintained at PNC Bank, Two Tower Center Blvd, 17th Floor, East Brunswick, NJ 08816 ("PNC Bank").

9.      A summary of the Debtors' Cash Management System and the Bank Accounts maintained by the Debtors at PNC Bank is contained below:

   (a) Williams Industrial Services Group, LLC ("WISG") maintains a Master Funding Account, the purpose of which is to receive funds advanced by PNC Bank pursuant to the Debtors' Revolving Credit Agreement. Funds are transferred from the Master Funding Account to the Concentration Account maintained by Holdings.

   (b) Williams Specialty Services, LLC ("WSS"), Williams Plant Services, LLC ("WPS"), and Williams Industrial Services, LLC ("WIS") each maintain separate Collections Accounts, the purpose of which is to receive customer payments. Funds received in the Collection Accounts are swept daily and remitted to PNC Bank for application against the outstanding balance due under the Debtors' Revolving Credit Agreement.

   (c) Williams Industrial Services Group, Inc. ("Holdings") maintains a Concentration Account, the purpose of which is to receive funds from the Master Funding Account for transfer to the Accounts Payable Disbursement Accounts and Payroll Accounts as needed.

   (d) Holdings, WISG, WSS, WPS, WIS, Construction & Maintenance Professionals, LLC ("CMP"), and WISG Electrical, LLC ("Electrical") each maintain separate Accounts Payable Disbursement Accounts. These Accounts are zero balance accounts, the purpose of which is to fund disbursements to satisfy accounts payable. Funds are transferred to these Accounts from the Concentration Account as needed.

   (e) Holdings, WISG, WSS, WPS, WIS, CMP, and Electrical each maintain separate Payroll Accounts. These are zero balance accounts, the purpose of which is to fund payroll and related payroll tax obligations. Funds are transferred to these Accounts

from the Concentration Account prior to payroll disbursement on Tuesday mornings.

(f) Holdings and Steam Enterprises, LLC ("Steam") each maintain separate Operating Accounts, which are required by Minnesota state law to fund captive state-run workers' compensation programs in that state related to potential asbestos liabilities.

(g) WIS and WPS each maintain separate accounts designated to hold segregated, bonded accounts receivable.

10. Additionally, WISG Canada Ltd. maintains one general purpose Bank Account at TD Bank, N.A ("TD Bank").

11. Finally, the Debtors utilize payment processing and other services provided by PNC Merchant Services Company ("PNC Merchant Services" and together with PNC Bank and TD bank, the "Cash Management Banks").

12. The Debtors' existing Bank Accounts function smoothly and permit the efficient collections and disbursements of cash for the benefit of the Debtors and all parties in interest. The Debtors' transition into chapter 11 will be significantly less disruptive if the Bank Accounts are maintained following the commencement of these cases with the same account numbers and, where applicable, automated relationship. The Debtors further request authority to deposit funds in and withdraw funds from all such accounts post-petition, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to, check, wire, transfers, ACH, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtors in possession accounts.

**B.    Bank Fees**

13. In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with maintaining the cash management system (collectively, the "Bank Fees"). The Debtors estimate that they owe approximately $18,000.00 in unpaid Bank Fees as of

the Petition Date. By this Motion, the Debtors seek the authority to continue to pay the Bank Fees, including the prepetition Bank Fees, in the ordinary course of business on a post-petition basis.

### C.    Existing Business Forms and Checks

14.    In the ordinary course of business, the Debtors maintain blank check stock and use a system, which is pre-programmed by a third party, to print the Debtors' names thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtors' checks, the "Business Forms"). To minimize administrative expense and delay, Local Rule 2015-2(a), the Debtors request authority to continue to use the Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to each Debtor's "Debtor in Possession" status.

### D.    Requested Waiver of Certain U.S. Trustee Guidelines

15.    The Office of the U.S. Trustee (the "U.S. Trustee") has established the Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees (the "Guidelines") to supervise the administration of chapter 11 cases and prevent post-petition payments for prepetition claims. The Guidelines require a chapter 11 debtor to, among other things: (i) close its existing books, records and bank accounts, and open new post-petition books, records and bank accounts (which must bear debtor in possession labels, and must be opened at banks approved by the U.S. Trustee); (ii) establish separate bank accounts for operations, payment of taxes, cash collateral and payroll (to the extent that the debtor had a separate payroll account prepetition); and (iii) obtain new checks bearing the designation "Debtor in Possession," along with additional information. The Debtors submit that compliance with these requirements would create substantial and unnecessary administrative burdens. Requiring the Debtors to open new

bank accounts and alter their cash management system would impose unnecessary expense, confusion, and diversion of scarce time and personnel, and would hinder the efficient use of the Debtors' resources at the critical first days of these cases. On the other hand, permitting the Debtors to maintain their existing bank accounts and existing cash management system (or to make only such changes as are appropriate in the ordinary course of business) will prevent disruption of the Debtors' operations and will not prejudice any party in interest. The Debtors' existing procedures, along with additional safeguards proposed herein, adequately address the concerns that underlie the Guidelines. The Debtors have in place sophisticated, computerized record keeping systems and will be able to ensure that all prepetition and post-petition transactions are properly accounted for and can easily be distinguished. The Debtors will continue to maintain complete and accurate records of all transfers of funds in and out of the Debtors' bank accounts.

16.    Based on the foregoing, the Debtors seek the following specific relief with respect to their books and records, cash management system, and business forms:

(a) a waiver of the requirement that the Debtors' prepetition bank accounts be closed and new post-petition bank accounts be opened;

(b) approval to maintain and continue to use without change in account style their existing bank accounts;

(c) approval to maintain and continue to use their existing Cash Management System;

(d) authority to continue to pay the Bank Fees, including prepetition Bank Fees, in the ordinary course of business;

(e) approval to use, in their present form, existing checks and other business forms related to the Debtors' bank accounts; provided, however, that upon depletion of the Debtors' current supply of such checks and forms, each Debtor will have the debtor in possession nomenclature added to such checks and forms in accordance with the Local Rules;

(f) approval to use the Debtors' existing books and records with appropriate notations to reflect the filing of the chapter 11 petitions; and

(g) entry of an order authorizing the banks at which the Debtors have bank accounts to maintain and administer the Debtors' bank accounts in accordance with the contracts

entered into between the Debtors and such banks before the filing of the Debtors' chapter 11 petitions and otherwise in accordance with past practice, and enjoining such banks from freezing or otherwise impeding the Debtors' bank accounts; provided, however, that such banks shall not honor any checks issued on such bank accounts on a date prior to the commencement of these chapter 11 cases and presented for payment to the banks postpetition unless otherwise authorized to do so by order of this Court.

## RELIEF REQUESTED

14.     By this Motion, the Debtors request entry of an order substantially in the form of the interim and final proposed orders attached hereto as **Exhibit B** and **Exhibit C** respectively: (a) authorizing the maintenance of Bank Accounts and continued use of existing Business Forms; (b) authorizing, but not directing, continued use of the Cash Management System; (c) waiving certain Guidelines set forth by the U.S. Trustee; and (d) granting related relief.

## BASIS FOR RELIEF REQUESTED

I.     **Approval to Maintain the Status Quo is Routinely Granted Under Bankruptcy Code Sections 105 and 363**

15.     Bankruptcy Code section 105(a) authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a) is intended "to assure the bankruptcy courts['] power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2-105 COLLIER ON BANKRUPTCY ¶ 105.01 (15th ed. 2015). The relief requested in this Motion is necessary to preserve business continuity and to lessen the likelihood of disruption to the Debtors' operations, and is in the best interests of the Debtors' creditors. The Debtors respectfully submit that relief under section 105(a) is warranted under these circumstances. The bankruptcy court in *In re Columbia Gas Sys., Inc.* explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticabilities of maintaining separate cash accounts for the many different purposes that require cash." 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit agreed,

emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

16.     Additionally, section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) extends to a debtor's continued use of its customary cash management system and, thus, supports the relief requested herein. *See, e.g., Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996); *Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)).

17.     Accordingly, bankruptcy courts routinely grant debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing debtors to use their prepetition "routine cash management system" was entirely consistent with Bankruptcy Code). Courts in this circuit have recognized that allowing a debtor to maintain existing cash management systems is often appropriate. *See, e.g., In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 424 (3d Cir. 2005); *In re Kindred Healthcare, Inc.*, No. 99-3199, 2003 Bankr. LEXIS 1308, at *2 (Bankr. D. Del, Oct. 9, 2003) (noting Court had previously granted motion to continue use of debtor's existing cash management system); *Columbia Gas*, 997

F.2d at 1061 (recognizing that requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

## II.        Opening New Accounts Will Disrupt the Debtors' Business

18.        The prospects for a successful sale or reorganization of the Debtors' business, as well as the preservation and enhancement of the Debtors' value as a going concern, will be materially and negatively impacted if the Cash Management System is disrupted and any Bank Accounts are closed. Indeed, if the Debtors were required to open new accounts as debtors in possession and modify the Cash Management System, the Debtors would be forced to reconstruct the Cash Management System at this critical juncture when the Debtors should be otherwise focused on their restructuring. Thus, the Debtors' finance, accounting, and bookkeeping employees would need to focus their efforts on immediately opening new bank accounts and working to ensure proper controls are in place for cash to properly flow through all operations and confirm that certain vendors are aware of new accounts related to the Debtors' receipts, thereby diverting them from their daily responsibilities during this critical juncture in these chapter 11 cases. Opening new bank accounts would increase operating costs, and the delays that would result from opening new accounts, revising cash management procedures, and instructing certain vendors to redirect payments would negatively impact the Debtors' ability to operate their business while pursuing these arrangements.

19.        In addition, the Debtors would be subject to significant administrative burdens and expenses because they would need to execute new signatory cards and depository agreements and create an entirely new manual system for issuing checks and paying post-petition obligations, all as generally would be required by the U.S. Trustee Guidelines.

### III.        The Debtors Should Be Granted Authority to Use Existing Business Forms

20.        The Debtors submit that the continued use of existing Business Forms will not prejudice parties in interest and such relief will avoid unnecessary expenses and administrative delays at this critical time. Furthermore, the Debtors' requested relief will not prejudice parties in interest because parties doing business with the Debtors undoubtedly will know of the Debtors' status as debtors in possession. Thus, changing of existing Business Forms is unnecessary and unduly burdensome. Nevertheless, consistent with Local Rule 2015-2, once the existing Business Forms have been used, the Debtors shall, during the pendency of these chapter 11 cases, reorder new Business Forms that include a stamp to reference the Debtors' status as debtors in possession and the corresponding bankruptcy case number.

### EMERGENCY CONSIDERATION

21.        The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF ANY APPLICABLE STAY

22.     The Debtors seek a waiver of any stay of the effectiveness of the order granting this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## NOTICE

23.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the administrative agents for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Delaware Division of Revenue; (g) the United States Attorney for the District of Delaware; (h) the Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Debtors' banks as listed on **Exhibit A**; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

24.     No prior request for the relief sought in the motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors request this Court enter an interim order, substantially in the form of **Exhibit B** and a final order, substantially in the form of **Exhibit C**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 22, 2023
Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0192
*desgross@chipmanbrown.com*

-and-

Sean A. Gordon (*pro hac vice* pending)
Austin B. Alexander (*pro hac vice* pending)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326-4266
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
*Sean.Gordon@thompsonhine.com*
*Austin.Alexander@thompsonhine.com*

Alan R. Lepene (*pro hac vice* pending)
Scott B. Lepene (*pro hac vice* pending)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
*Alan.Lepene@thompsonhine.com*
*Scott.Lepene@thompsonhine.com*

*Proposed Counsel for Debtors*

**EXHIBIT A**

| # | Debtor | Last Four Digits of Account # | Type of Account |
|---|---|---|---|
| 1 | Williams Industrial Services Group Inc | 0432 | Concentration Account |
| 2 | Williams Industrial Services Group Inc | 0424 | Payroll |
| 3 | Williams Industrial Services Group Inc | 0459 | Accounts Payable |
| 4 | Williams Industrial Services Group Inc | 2032 | Operating Account |
| 5 | Williams Industrial Services Group LLC | 1558 | Payroll |
| 6 | Williams Industrial Services Group LLC | 1574 | Master Funding Account |
| 7 | Williams Industrial Services Group LLC | 1566 | Accounts Payable |
| 8 | Williams Industrial Services LLC | 1294 | Segregated Bonded Accounts Receivable |
| 9 | Williams Industrial Services LLC | 1961 | Payroll |
| 10 | Williams Industrial Services LLC | 1996 | Collection Account |
| 11 | Williams Industrial Services LLC | 1988 | Accounts Payable |
| 12 | Construction & Maintenance Professionals LLC | 1873 | Payroll |
| 13 | Construction & Maintenance Professionals LLC | 1881 | Accounts Payable |
| 14 | Steam Enterprises LLC | 1902 | Operating Account |
| 15 | Williams Specialty Services LLC | 1929 | Payroll |
| 16 | Williams Specialty Services LLC | 1953 | Payroll (Manual) |
| 17 | Williams Specialty Services LLC | 1945 | Collection Account |
| 18 | Williams Specialty Services LLC | 1937 | Accounts Payable |
| 19 | Williams Plant Services LLC | 2008 | Payroll |
| 20 | Williams Plant Services LLC | 2016 | Accounts Payable |
| 21 | Williams Plant Services LLC | 2024 | Collection Account |
| 22 | Williams Plant Services LLC | 1366 | Segregated Bonded Accounts Receivable |
| 23 | WISG Electrical LLC | 8686 | Accounts Payable |
| 24 | WISG Electrical LLC | 8678 | Payroll |
| 25 | WISG Canada Ltd | 2616 | General |

## **EXHIBIT B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF PREPETITION BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, FORMS, AND BOOKS AND RECORDS AND (II) GRANTING RELATED RELIEF**

This matter is before the Court on the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Prepetition Bank Accounts, Cash Management System, Forms, and Books and Records and (II) Granting Related Relief* (the "Motion") [Docket No. __] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). The Debtors' existing Bank Accounts[2] are listed on **Exhibit 1** hereto and made a part hereof. This Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

00054158.1

appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration accompanying the Motion, and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and shall be served on: (i) the Debtors; (ii) (ii) proposed counsel for the Debtors, Thompson Hine LLP, (Attn: Alan Lepene.), email: *alan.lepene@thompsonhine.com* and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers), email: *desgross@chipmanbrown.com;* (iii) counsel to the administrative agents for the Debtors' prepetition credit facilities, Blank Rome LLP (Attn: Regina Stango Kelbon, Gregory F. Vizza), email: *regina.kelbon@blankrome.com, gregory.vizza@blankrome.com;* (iv) counsel to any statutory committee appointed in these Cases; and (v) the Office of the United States Trustee for the District of Delaware, (Attn: Linda Richenderfer); email: *linda.richenderfer@usdoj.gov.*

3.      The Debtors shall immediately upon entry of this Interim Order contact the Cash Management Banks, provide the Cash Management Banks with each of the Debtors' employer identification numbers, and identify each of their Bank Accounts held at each of the Cash Management Banks as being held by a debtor in possession.

4.        The Debtors are authorized, but not directed, on an interim basis and in their sole discretion, to: (a) continue operating Cash Management System, (b) continue to use the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date, (c) honor any prepetition obligations related to the Cash Management System in the ordinary course of business, and (d) pay any ordinary course Bank Fees , including fees associated with treasury management and merchant services, incurred in connection with the Bank Accounts, treasury management services, and merchant services, in each case incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts. The Debtors may make ordinary course changes to their Cash Management System, absent further order of this Court, as consistent with this Interim Order. Any post-petition fees, costs, charges, expenses, charge backs, or other reimbursement or payment obligations that are not paid in accordance herewith, are hereby accorded priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

5.        Those agreements existing between the Debtors and each Cash Management Bank shall continue to govern the post-petition cash management relationship between the Debtors and each Cash Management Bank and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with such Cash Management Bank (including, for the avoidance of doubt, any rights of the Cash Management Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement), unless

the Debtors and Cash Management Banks agree otherwise, and any other legal rights and remedies afforded to Cash Management Banks under applicable law shall be preserved.

6.      The Debtors are authorized to use their Business Forms, including checks, without alteration and without the designation "debtor in possession" imprinted upon them; *provided, that,* once the Debtors' existing check stock and/or business forms have been used, the Debtors shall when reordering checks or Business Forms, include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks and Business Forms; *provided, further,* that, with respect to checks or Business Forms which the Debtors or their agents print themselves, the Debtors shall, when printing checks or Business Forms, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks and Business Forms starting within 10 business days of the date of entry of this Interim Order.

7.      The Cash Management Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be (including the completion of any such transaction commenced on or before the Petition Date but not completed until on or after the Petition Date).

8.      The Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts  as they may deem necessary and appropriate, provided, however, that the Debtors give notice within fifteen (15) days of opening or closing a Bank Account, to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases, provided further that the Debtors shall open any new Bank Account at a bank that has

executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware.

9.  The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to any Additional Cash Management Bank (as hereinafter defined) at which such account is opened including any new bank account opened for the purpose of separately maintaining the proceeds of the Debtors' prepetition and post-petition term loan debt..

10.  In the course of providing cash management services to the Debtors, the Cash Management Banks and each Additional Cash Management Bank is authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or post-petition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or post-petition and regardless of whether the returned items relate to prepetition or post-petition items or transfers.

11.  Notwithstanding any other provision of this Interim Order, the Cash Management Banks shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Interim Order if a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Interim Order: (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary

item handling procedures. Without limiting the foregoing, a Cash Management Bank may assume that any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order unless otherwise specifically otherwise advised by the Debtors, and a Cash Management Bank shall not have any liability to any party for relying on representations by the Debtors as provided for herein.

12.     The Cash Management Banks  are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtors' accounts with the Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Bank as service charges for the maintenance of Cash Management System, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtor's account after the Petition Date, regardless of the reason such item is returned or reversed.

13.     Immediately upon entry of this Interim Order, Cash Management Banks are authorized, but not obligated, without further order of this Court, to recommence such transfers or sweeps without regard to whether the funds swept and/or transferred include funds deposited prior to the Petition Date.

14.     Despite the use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

15.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

16.     The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

17.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit 1**

**Bank Accounts**

| # | Debtor | Last Four Digits of Account # | Type of Account |
|---|---|---|---|
| 1 | Williams Industrial Services Group Inc | 0432 | Concentration Account |
| 2 | Williams Industrial Services Group Inc | 0424 | Payroll |
| 3 | Williams Industrial Services Group Inc | 0459 | Accounts Payable |
| 4 | Williams Industrial Services Group Inc | 2032 | Operating Account |
| 5 | Williams Industrial Services Group LLC | 1558 | Payroll |
| 6 | Williams Industrial Services Group LLC | 1574 | Master Funding Account |
| 7 | Williams Industrial Services Group LLC | 1566 | Accounts Payable |
| 8 | Williams Industrial Services LLC | 1294 | Segregated Bonded Accounts Receivable |
| 9 | Williams Industrial Services LLC | 1961 | Payroll |
| 10 | Williams Industrial Services LLC | 1996 | Collection Account |
| 11 | Williams Industrial Services LLC | 1988 | Accounts Payable |
| 12 | Construction & Maintenance Professionals LLC | 1873 | Payroll |
| 13 | Construction & Maintenance Professionals LLC | 1881 | Accounts Payable |
| 14 | Steam Enterprises LLC | 1902 | Operating Account |
| 15 | Williams Specialty Services LLC | 1929 | Payroll |
| 16 | Williams Specialty Services LLC | 1953 | Payroll (Manual) |
| 17 | Williams Specialty Services LLC | 1945 | Collection Account |
| 18 | Williams Specialty Services LLC | 1937 | Accounts Payable |
| 19 | Williams Plant Services LLC | 2008 | Payroll |
| 20 | Williams Plant Services LLC | 2016 | Accounts Payable |
| 21 | Williams Plant Services LLC | 2024 | Collection Account |
| 22 | Williams Plant Services LLC | 1366 | Segregated Bonded Accounts Receivable |
| 23 | WISG Electrical LLC | 8686 | Accounts Payable |
| 24 | WISG Electrical LLC | 8678 | Payroll |
| 25 | WISG Canada Ltd | 2616 | General |

**<u>Exhibit C</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 |
| | (Jointly Administered) |
| Debtors. | **Re: Docket No. _____** |

## FINAL ORDER (I) AUTHORIZING CONTINUED USE OF PREPETITION BANK ACCOUNTS, CASH MANAGEMENT SYSTEM, FORMS, AND BOOKS AND RECORDS AND (II) GRANTING RELATED RELIEF

This matter is before the Court on the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Prepetition Bank Accounts, Cash Management System, Forms, and Books and Records and (II) Granting Related Relief* (the "Motion") [Docket No. ___] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). The Debtors' existing Bank Accounts[2] are listed on **Exhibit 1** hereto and made a part hereof. This Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration accompanying the Motion, and at the Hearing establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn, resolved, or overruled; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, on a final basis and in their sole discretion, to: (a) continue operating Cash Management System, (b) continue to use the Bank Accounts in existence as of the Petition Date, in the names and with the account numbers existing immediately before the Petition Date, (c) honor any prepetition obligations related to the Cash Management System in the ordinary course of business, and (d) pay any ordinary course Bank Fees , including fees associated with treasury management and merchant services, incurred in connection with the Bank Accounts, treasury management services, and merchant services, in each case incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts.

3.      Those agreements existing between the Debtors and each Cash Management Bank shall continue to govern the post-petition cash management relationship between the Debtors and each Cash Management Bank and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded

under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with such Cash Management Bank (including, for the avoidance of doubt, any rights of the Cash Management Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or post-petition, to the extent permitted under the applicable agreement), unless the Debtors and Cash Management Banks agree otherwise, and any other legal rights and remedies afforded to Cash Management Banks under applicable law shall be preserved.

4.      The Debtors are authorized to use their Business Forms, including checks, without alteration and without the designation "debtor in possession" imprinted upon them; *provided, that,* once the Debtors' existing check stock and/or business forms have been used, the Debtors shall when reordering checks or Business Forms, include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks and Business Forms; *provided, further,* that, with respect to checks or Business Forms which the Debtors or their agents print themselves, the Debtors shall, when printing checks or Business Forms, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks and Business Forms.

5.      The Cash Management Banks are authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be (including the completion of any such transaction commenced on or before the Petition Date but not completed until on or after the Petition Date).

6.      The Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts  as they may deem necessary and appropriate, provided, however, that the Debtors give notice within fifteen (15) days of opening or closing a Bank Account, to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases, provided further that the Debtors shall open any new Bank Account at a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware.

7.      The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to any Additional Cash Management Bank (as hereinafter defined) at which such account is opened including any new bank account opened for the purpose of separately maintaining the proceeds of the Debtors' prepetition and post-petition term loan debt..

8.      In the course of providing cash management services to the Debtors, the Cash Management Banks and each Additional Cash Management Bank is authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or post-petition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or post-petition and regardless of whether the returned items relate to prepetition or post-petition items or transfers.

9.      Notwithstanding any other provision of this Final Order, the Cash Management Banks shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Final Order if a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Final Order: (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures. Without limiting the foregoing, a Cash Management Bank may assume that any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order unless otherwise specifically otherwise advised by the Debtors, and a Cash Management Bank shall not have any liability to any party for relying on representations by the Debtors as provided for herein.

10.     The Cash Management Banks  are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtors' accounts with the Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Bank as service charges for the maintenance of Cash Management System, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtor's account after the Petition Date, regardless of the reason such item is returned or reversed.

11.     Immediately upon entry of this Final Order, Cash Management Banks are authorized, but not obligated, without further order of this Court, to continue such transfers or sweeps without regard to whether the funds swept and/or transferred include funds deposited prior to the Petition Date.

12.     Despite the use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

13.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

14.     The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

16.     Notice of the Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit 1**

**Bank Accounts**

| # | Debtor | Last Four Digits of Account # | Type of Account |
|---|--------|------------------------------|-----------------|
| 1 | Williams Industrial Services Group Inc | 0432 | Concentration Account |
| 2 | Williams Industrial Services Group Inc | 0424 | Payroll |
| 3 | Williams Industrial Services Group Inc | 0459 | Accounts Payable |
| 4 | Williams Industrial Services Group Inc | 2032 | Operating Account |
| 5 | Williams Industrial Services Group LLC | 1558 | Payroll |
| 6 | Williams Industrial Services Group LLC | 1574 | Master Funding Account |
| 7 | Williams Industrial Services Group LLC | 1566 | Accounts Payable |
| 8 | Williams Industrial Services LLC | 1294 | Segregated Bonded Accounts Receivable |
| 9 | Williams Industrial Services LLC | 1961 | Payroll |
| 10 | Williams Industrial Services LLC | 1996 | Collection Account |
| 11 | Williams Industrial Services LLC | 1988 | Accounts Payable |
| 12 | Construction & Maintenance Professionals LLC | 1873 | Payroll |
| 13 | Construction & Maintenance Professionals LLC | 1881 | Accounts Payable |
| 14 | Steam Enterprises LLC | 1902 | Operating Account |
| 15 | Williams Specialty Services LLC | 1929 | Payroll |
| 16 | Williams Specialty Services LLC | 1953 | Payroll (Manual) |
| 17 | Williams Specialty Services LLC | 1945 | Collection Account |
| 18 | Williams Specialty Services LLC | 1937 | Accounts Payable |
| 19 | Williams Plant Services LLC | 2008 | Payroll |
| 20 | Williams Plant Services LLC | 2016 | Accounts Payable |
| 21 | Williams Plant Services LLC | 2024 | Collection Account |
| 22 | Williams Plant Services LLC | 1366 | Segregated Bonded Accounts Receivable |
| 23 | WISG Electrical LLC | 8686 | Accounts Payable |
| 24 | WISG Electrical LLC | 8678 | Payroll |
| 25 | WISG Canada Ltd | 2616 | General |