## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO CONTINUE PREPETITION INSURANCE AND WORKERS' COMPENSATION POLICIES AND TO PAY PREPETITION PREMIUMS AND RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue Prepetition Insurance and Workers' Compensation Policies and to Pay Prepetition Premiums and Related Obligations and (II) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.      The bases for the relief requested herein are sections 105, 363, 1107, 1108, and 1112 of title 11 of the United States Code, (the "Bankruptcy Code") and Rules 4001(c), 6003 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

6004 of the Federal Rules of the Bankruptcy Procedure (the "Bankruptcy Rules"). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

4.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

## THE DEBTORS' INSURANCE POLICIES AND PREMIUM FINANCING AGREEMENTS

5.      In connection with the operation of their business, Debtors maintain various insurance policies to address potential exposure, including, without limitation general liability, automobile, commercial liability, environmental, property, director and officer liability, fiduciary liability, and cyber (collectively, the "Insurance Policies") through several different insurance carriers (collectively, the "Insurance Carriers"). The Debtors' Insurance Policies, which are

essential to the Debtors' business during the Chapter 11 cases, are more specifically identified on **Exhibit A** attached hereto, which references the applicable policy numbers, policy periods and effective dates, premium amounts, fees/surcharges, Insurance Carriers, coverage categories and descriptions, coverage limits, and deductibles.

6.        As detailed in **Exhibit A** attached hereto, insurance premiums for Debtors' director and officer liability, cyber, fiduciary and other related coverages for policy periods spanning twelve (12) months from May 1, 2023 to May 1, 2024 total $612,519.60. These premiums are financed pursuant to a Premium Financing Agreement (the "First Insurance Premium Financing Agreement") with First Insurance Funding ("First Insurance") dated April 25, 2023. A true and correct copy of the First Insurance Premium Financing Agreement is attached hereto as **Exhibit B**. Under the First Insurance Premium Financing Agreement, Debtors are required to remit ten (10) monthly installment payments to First Insurance in the amount of $50,807.04 per month, due on the first (1st) day of each month through and including April 1, 2024. As of the Petition Date, the Debtors are current and have no prepetition monthly installment payments outstanding under the First Insurance Premium Financing Agreement, and the First Insurance Premium Financing Agreement outstanding principal balance is prepaid in full.

7.        Likewise, as set forth more fully on **Exhibit A** attached hereto, insurance premiums for the Debtors' other Insurance Policies (including general liability, automobile, commercial liability, environmental, and property policies), as well as its Workers' Compensation Premiums (as such term is defined below) for policy periods spanning twelve (12) months from September 15, 2022, to September 15, 2023, total $3,326,673.04. These premiums are financed pursuant to a Commercial Insurance Premium Financing and Security Agreement (the "BankDirect Premium Financing Agreement," and together with the First Insurance Premium Financing Agreement,

collectively, the "Premium Financing Agreements") with Bank Direct Capital Finance, a division of Texas Capital Bank ("BankDirect") dated September 16, 2022. A true and correct copy of the BankDirect Insurance Premium Financing Agreement is attached hereto as **Exhibit C**. Under the BankDirect Premium Financing Agreement, Debtors are required to remit eleven (11) monthly installment payments to BankDirect in the amount of $282,952.49 per month, due on the fifteenth (15th) day of each month through and including September 15, 2024. As of the Petition Date, the Debtors are current and have no prepetition monthly installment payments outstanding under the BankDirect Insurance Premium Financing Agreement. The next installment will come due on August 15, 2023, in the amount of $282,952.49.

8.      The Debtors' obligations under the Premium Financing Agreements are secured by, *inter alia,* sums that may become payable under the Insurance Programs. In the Debtors' business judgment, the terms of the Premium Financing Agreements represent fair and reasonable terms for financing the premiums of the Insurance Policies and Workers Compensation Policies under the circumstances, and the Debtors' estates will benefit by maintaining this low-cost financing. Moreover, any interruption of payments might adversely affect the Debtors' ability to obtain financing for future policies on favorable terms, to the extent needed. In some cases, the coverage is required by regulations, laws, or contracts that govern the Debtors' business obligations. Thus, the Debtors request the authority to continue honoring their obligations pursuant to the Premium Financing Agreements and to continue the grant of security interests to First Insurance and BankDirect.

## THE DEBTORS' WORKERS' COMPENSATION PROGRAMS AND POLICIES

9.      Under state law, the Debtors are required to maintain workers' compensation Insurance Policies to provide their employees with coverage for claims arising from or related to their employment with the Debtors. In the ordinary course of business, the Debtors maintain

workers' compensation insurance programs and policies at the levels required by statute for each U.S. state in which the Debtors conduct business (collectively, the "Workers' Compensation Policies"). The Workers' Compensation Policies are administered by Starr Indemnity & Liability Company. The Debtors pay all amounts related to workers' compensation claims up to a fixed per-claim deductible in the amount of $500,000 for losses that exceed the deductible. The Debtors' Workers Compensation Policies are also identified on **Exhibit A** attached hereto, which references the applicable policy numbers, policy periods and effective dates, premium amounts, fees/surcharges, coverage categories and descriptions, coverage limits, and deductibles.

10.      As set forth more fully on **Exhibit A** attached hereto, the Debtors have annual required premiums for the Workers' Compensation Policies, which total $683,225 (collectively, the "Workers' Compensation Premiums"). The Workers' Compensation Policies currently in effect as of the Petition Date have policy periods that run from September 15, 2022, to September 15, 2023. As noted above, the Workers' Compensation Premiums are financed pursuant to the BankDirect Premium Finance Agreement attached hereto as **Exhibit C,** with payment terms outlined in paragraph 7 above.

## RELIEF REQUESTED

11.      By this Motion, the Debtors request entry of interim and final orders, substantially in the form annexed hereto as **Exhibit E** and **Exhibit F** respectively, (a) granting them authority to (i) continue their prepetition Insurance Policies, as such practices, programs, and policies were in effect as of the Petition Date; (ii) renew, amend, supplement, extend, or purchase Insurance Policies to the extent that the Debtors determine that such action is in the best interest of their estates; (iii) pay all amounts owed as of the Petition Date and during the pendency of this case under the Premium Financing Agreements and/or the Insurance Policies, as may be necessary to maintain the Insurance Policies, including without limitation, the amounts specified in **Exhibit D**;

(b) authorizing the Debtors' banks and other financial institutions to receive, process and pay any and all checks and other transfers related to the foregoing; and (c) granting related relief.

**BASIS FOR RELIEF REQUESTED**

12.     As discussed above, the Insurance Policies provide a comprehensive range of protection for the Debtors' business, properties, and assets. As such, it is essential that the Debtors' insurance coverage continues in full force and effect during the course of these chapter 11 cases. Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Similarly, certain of the Insurance Policies are required by various state and federal regulations. In addition, the U.S. Trustee Guidelines require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date. *See* U.S. Trustee Guidelines, § 5. To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to continue to honor obligations arising under the Insurance Policies and related Premium Financing Agreements, if necessary, to renew, supplement, or purchase insurance coverage on a post-petition basis in the ordinary course of business.

13.     This Court has authority to grant the relief requested herein pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts generally require only that the debtor "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *See also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to

pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

14.     Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court may use its power under section 105(a) to authorize payment of prepetition obligations under the "necessity of payment" doctrine. *See, e.g., In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987). Under the "necessity of payment" doctrine, a bankruptcy court can exercise its equitable powers to permit the payment of prepetition claims of those parties whose goods or services are critical to reorganization of the debtor's operations. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the railroad during reorganization, payment may be authorized even if it is made out of corpus."); *In re Boston & Maine Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Columbia Gas Sys.,* 171 B.R. 189, 192 (Bankr. D. Del. 1994) (necessity of payment doctrine is applicable where "payment is essential to continued operation of the business"); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (stating that the rationale of the necessity of payment rule corresponds with the paramount goal of Chapter 11 debtor reorganization); *In re Structurelite Plastics Corp.,*

86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (agreeing in "principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately'") (citation omitted).

15.    As noted above, the Premium Financing Agreements grant the lender parties thereto security interests in the respective Insurance Policies and/or Workers' Compensation Policies, as applicable, including any unearned premiums or other sums that may become payable under same. Security interests created by premium finance arrangements are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.),* 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.),* 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981). Moreover, section 361 of the Bankruptcy Code specifically contemplates providing adequate protection to the extent of the diminution in value of a secured creditor's collateral, and security interests such as those under the Premium Financing Agreements warrant adequate protection in the form of periodic payments pursuant to the Premium Financing Agreements' terms. *See, e.g., In re Waverly Textile Processing, Inc.,* 214 B.R. 476, 480 (Bankr. E.D. Va. 1997); *TIFCO, Inc. v. U.S. Repeating Arms Co.,* 67 B.R. 990, 1000 (Bankr. D. Conn. 1986).

16.    Therefore, if the Debtors are unable to continue making payments under the Premium Financing Agreements, the lenders party thereto could seek relief from the automatic stay to cancel applicable Insurance Policies in accordance with the terms of the Premium Financing Agreements or to seek adequate protection of their respective investments. *See Universal Motor Express,* 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing

arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay). The Debtors then would be required to obtain replacement insurance on an expedited basis and at significant cost to the estates. If the Debtors are required to obtain replacement insurance and to pay a lump-sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay BankDirect and/or First Insurance under their respective Premium Financing Agreements. Even if these parties are not permitted to terminate the Insurance Policies, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies, as may be needed. Accordingly, the Debtors submit that the practical solution is to continue making the premium financing payments as called for under the Premium Financing Agreements.

17.     The Debtors submit that there is sufficient business justification to grant the relief requested herein, because failure to pay premiums and related insurance expenses when due may harm the Debtors' estates in several other ways. The Insurance Carriers may refuse to renew the Insurance Policies absent the Debtors' ongoing satisfaction of the Insurance Obligations as and when they become due, which will require the Debtors to obtain replacement policies and programs and possibly reconfigure their risk management program. This, in turn, would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' insurers. Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing Insurance Policies, which could threaten the Debtors' ability to continue operating their business, given the Debtors' myriad of regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

18.     Indeed, the Insurance Policies are essential to the preservation of the value of the Debtors' business, properties, and assets and their ability to successfully prosecute these chapter

11 cases. Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage on a post-petition basis in the ordinary course of business. The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

19.     If the liability and property Insurance Policies are terminated or lapse, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others. Such a result would also place at risk the Debtors' estates' assets necessary to satisfy the secured and unsecured claims of creditors. Additionally, continued effectiveness of the directors' and officers' liability Insurance Policies is necessary to the retention of qualified and dedicated senior management. Moreover, pursuant to the terms of many of their commercial contracts, as well as the guidelines established by the Office of the United States Trustee, the Debtors are obligated to remain current with respect to many of their primary Insurance Policies.

20.     The maintenance of the Workers' Compensation Policies is likewise justified because applicable state law mandates this coverage, and 28 U.S.C. § 959(b) requires the Debtors to comply with valid state laws. In addition, some of the Debtors employees depend on the protection that the Workers' Compensation Policies provide.

21.     The amounts the Debtors propose to pay in respect to the Insurance Policies and under the Premium Financing Agreements are relatively small in comparison to the size of the Debtors' estates and the Debtors' potential exposure absent insurance coverage. It is critical that the Debtors continue to maintain the Premium Financing Agreements and the Insurance Policies on an uninterrupted basis, and pay monthly installment payments, premiums and related costs in the ordinary course of business and consistent with prepetition practices.

22.     The Debtors request that authorization of the payment of the various obligations hereunder shall not be deemed the assumption of any executory contract pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing their Insurance Policies and reserve all rights with respect to the Policies.

23.     The Debtors further request that all applicable banks and other financial institutions be authorized when requested by the Debtors and in the Debtors' sole discretion, without any duty of inquiry or liability to any party for following the Debtors' instructions, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts to pay amounts owed under the Insurance Policies, whether those checks are presented prior to or after the Petition Date, and make other transfers, provided that sufficient funds are available in the applicable accounts to make the payments.

## EMERGENCY CONSIDERATION

24.     The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF ANY APPLICABLE STAY

25.     The Debtors seek a waiver of any stay of the effectiveness of the order granting this

Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is

necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.

Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay

imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## NOTICE

26.     The Debtors have provided notice of this motion to: (a) the Office of the United

States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors;

(c) counsel to the administrative agents for the Debtors' prepetition credit facilities; (d) the Internal

Revenue Service; (e) the Georgia Department of Revenue; (f) the Delaware Division of Revenue;

(g) the United States Attorney for the District of Delaware; (h) the Securities and Exchange

Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i)

the Insurance Carriers; and (j) any party that has requested notice pursuant to Bankruptcy Rule

2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule

9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the Court.

27.     In light of the nature of the relief requested, the Debtors respectfully submit that no

further notice is necessary.

## NO PRIOR REQUEST

28.     No prior request for the relief sought in this Motion has been made to this or any

other court.

## CONCLUSION

WHEREFORE, the Debtors request this Court enter an interim order, substantially in the form of **Exhibit E**, and after notice and hearing, if necessary, a final order substantially in the form of **Exhibit F**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 22, 2023
Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0192
*desgross@chipmanbrown.com*

-and-

Sean A. Gordon (*pro hac vice* pending)
Austin B. Alexander (*pro hac vice* pending)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326-4266
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
*Sean.Gordon@thompsonhine.com*
*Austin.Alexander@thompsonhine.com*

Alan R. Lepene (*pro hac vice* pending)
Scott B. Lepene (*pro hac vice* pending)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
*Alan.Lepene@thompsonhine.com*
*Scott.Lepene@thompsonhine.com*

*Proposed Counsel for Debtors*

**<u>EXHIBIT A</u>**

**Insurance Policies**

Williams Industrial Services Group, Inc.
Policy Schedule (5/1/23)



| Policy Holder | Policy Number | Effective Date | Expiration Date | Pure Premium | Surplus Lines Tax/Policy Fees/Surcharges TOTAL | TOTAL Premium | Insurance Company | Coverage | Limits | Deductible | Coverage Explanation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Williams Industrial Services Group, Inc. | 1000090435221 | 9/15/2022 | 9/15/2023 | $605,000 | $0 | $605,000 | Starr Indemnity & Liability Company | General Liability | $1,000,000 Occurrence / $2,000,000 Aggregate | $250,000 | Protects the insured against claims brought by third parties for bodily injury or property damage arising out of the insured's operations. |
| Williams Industrial Services Group, Inc. | 1000198870221 | 9/15/2022 | 9/15/2023 | $105,020.00 | $0.00 | $105,020 | Starr Indemnity & Liability Company | Automobile | $1,000,000 Combined Single Limit | Liability - $0 | Responds to suits/claims from third parties as a result of a "covered auto". No Auto Physical Damage Provided for Any Units. - Auditable. |
| Williams Industrial Services Group, Inc. | 1000002884 | 9/15/2022 | 9/15/2023 | | | | Starr Indemnity & Liability Company | Workers' Compensation | WC - Statutory / EL - $1,000,000 | $500,000 | Part 1 - Workers Compensation: Provides employees with  no fault coverage for bodily injury by accident or by disease including resulting death in compliance with Workers' Compensation laws.  Part 2 - Employers Liability: Protects the employer against legal liability from an injured employee. Program provides automatic renewal if selected criteria are met. |
| Williams Industrial Services Group, Inc. | 1000003306 | 9/15/2022 | 9/15/2023 | $625,000 | $58,225 | $683,225 | Starr Indemnity & Liability Company | Workers' Compensation (FL & MA) | WC - Statutory / EL - $1,000,000 | $500,000 | Part 1 - Workers Compensation: Provides employees with  no fault coverage for bodily injury by accident or by disease including resulting death in compliance with Workers' Compensation laws.  Part 2 - Employers Liability: Protects the employer against legal liability from an injured employee. Program provides automatic renewal if selected criteria are met. |
| Williams Industrial Services Group, Inc. | 1000004774 | 9/15/2022 | 9/15/2023 | | | | Starr Indemnity & Liability Company | Workers' Compensation (NY, AZ, CT, IA, NJ, NC) | WC - Statutory / EL - $1,000,000 | $500,000 | Part 1 - Workers Compensation: Provides employees with  no fault coverage for bodily injury by accident or by disease including resulting death in compliance with Workers' Compensation laws.  Part 2 - Employers Liability: Protects the employer against legal liability from an injured employee. Program provides automatic renewal if selected criteria are met. |
| Williams Industrial Services Group, Inc. | 1000095471221 | 9/15/2022 | 9/15/2023 | $648,638 | $0.00 | $648,638 | Starr Indemnity & Liability Company | Excess Liability (Lead $5M) | $5,000,000 | $0 | Extends the limits of the eligible primary liability limits policies provided by Star Indemnity & Liability for coverages such as Automobile Liability, General Liability and Employers Liability and Foreign Auto, General and |
| Williams Industrial Services Group, Inc. | EXC30000728104 | 9/15/2022 | 9/15/2023 | $383,000 | $15,320 | $398,320 | Endurance American Specialty | Excess Liability ($5M x $5M) | $5,000,000 excess of primary $5,000,000 | $0 | Extends the limits of the eligible primary liability limits policies provided by Star Indemnity & Liability for coverages such as Automobile Liability, General Liability and Employers Liability and Foreign Auto, General and Employers Liability. |
| Williams Industrial Services Group, Inc. | TBD | 9/15/2022 | 9/15/2023 | $458,000 | $18,320 | $476,320 | Navigators Specialty Insurance Co | Excess Liability ($10M x $10M) | $10,000,000 excess of $5,000,000 primary and $5,000,000 excess | $0 | Extends the limits of the eligible primary liability limits policies provided by Star Indemnity & Liability for coverages such as Automobile Liability, General Liability and Employers Liability and Foreign Auto, General and Employers Liability. |
| Williams Industrial Services Group, Inc. | TBD | 9/15/2022 | 9/15/2023 | $160,000 | $6,400 | $166,400 | Landmark American Insurance Co. | Excess Liability ($5M x $20M) | $5,000,000 excess of $5,000,000 primary and $15,000,000 excess | $0 | Extends the limits of the eligible primary liability limits policies provided by Star Indemnity & Liability for coverages such as Automobile Liability, General Liability and Employers Liability and Foreign Auto, General and Employers Liability. |
| Williams Industrial Services Group, Inc. | TBD | 9/15/2022 | 9/15/2023 | Included in Polution | | | Hamilton | Contractors Professional Liab. | $1,000,000 Policy Aggregate / $1,000,000 Each Claim | $500,000 Each Claim | Provides coverage for design errors or omissions committed either by Global Power or a designated subcontractor, resulting in economic damages such as acceleration costs, delay damages, cost for remedial design or reconstruction. |
| Williams Industrial Services Group, Inc. | TBD | 6/5/2021 | 9/15/2022 | $139,000 | $5,560 | $144,560 | Hamilton | Premises Pollution | $5,000,000 Each Loss / $5,000,000 Policy Period Aggregate | $50,000 Each Loss | Provides coverage for bodily injury, property damage, cleanup costs, and defense expenses for pollutants emanating from scheduled owned and leased sites.  Aggregate limits are shared between this policy and the Contractors Pollution Liability policy. |
| Williams Industrial Services Group, Inc. | TBD | 6/5/2021 | 9/15/2022 | Included in above | | | Hamilton | Contractors Pollution | $5,000,000 Each Loss / $5,000,000 Policy Period Aggregate / $2,500,000 Project Specific Excess Limit for ConEd NY | $50,000 Each Loss | Provides coverage for bodily injury, property damage, cleanup costs, and defense expenses for pollutants emanating from scheduled owned and leased sites.  Aggregate limits are shared between this policy and the Contractors Pollution Liability policy |

Williams Industrial Services Group, Inc.
Policy Schedule (5/1/23)



| Policy Holder | Policy Number | Effective Date | Expiration Date | Pure Premium | Surplus Lines Tax/Policy Fees/Surcharges TOTAL | TOTAL Premium | Insurance Company | Coverage | Limits | Deductible | Coverage Explanation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Williams Industrial Services Group, Inc. | TBD | 9/15/2022 | 9/15/2023 | $100,160 | $0.00 | $100,160 | Starr Indemnity & Liability Company | | Inland Marine/Contractor's Equipment | | |
| | | | | | | | | Equipment Limit | $403,000 | 2% Applies to Cranes Per Occurrence; $10,000 Minimum Deductible Per Occurrence; $25,000 Maximum Deductible Per Occurrence | Provides broad coverage for contractors' equipment and tools, also, includes coverage for insured's interest in Covered Property  unless otherwise excluded (your materials, supplies, fixtures, machinery, or equipment; and Similar property of others that is in your care, custody, or control, while at your Jobsite that are intended to be a permanent part of the Installation Project.  Riggers Coverage is for property in your care, custody & control that is on the hook. |
| | | | | | | | | Unscheduled Equipment Limit | $100,000 Per Occurrence $5,000 Per Item | | |
| | | | | | | | | Leased or Rented | $1,000,000 Per Occurrence $1,000,000 Per Item | | |
| | | | | | | | | Catastrophe Limit | $1,403,000 Flood - Zones A, V, B, X500 - No Coverage Earth Movement - No Coverage | 2% Applies to All Other Equipment Per Occurrence; $1,000 Minimum Deductible Per Occurrence; $5,000 Maximum Deductible Per Occurrence | |
| | | | | | | | | Installation Floater | $5,000,000 Jobsite Limit $5,000,000 Catastrophe Limit | $25,000 Per Occurrence | |
| | | | | | | | | Actual Cash Value - Equipment greater than 5 years old. Replacement Cost - Equipment 5 years old or newer. Refer to policy for additional Limits and Sublimits. | | | |
| | | | | | | | | | Commercial Property | | |
| | | | | | | | | Policy Maximum Limit | $6,000,000 - Per Schedule on File | All Perils - $25,000 Per Occurrence, Except: | |
| | | | | | | | | Earthquake | $6,000,000 Annual Aggregate | $25,000 Per Occurrence | Provides coverage for property loss when the loss or damage is caused by a covered peril, such as fire or explosion. See Policy for other Deductibles and how limits apply. |
| | | | | | | | | Flood | $6,000,000 Annual Aggregate | $25,000 Per Occurrence | |
| | | | | | | | | Named Storm | $6,000,000 Annual Aggregate | 3% of TIV at time of loss, subject to minimum of $100,000 | |
| | | | | | | | | No Coinsurance Applies - Replacement Cost for Real & Personal Property - Earnings & Extra Expense is included Per Schedule on File. - Refer to policy for additional Limits and Sublimits | | | |



| Policy Holder | Policy Number | Effective Date | Expiration Date | Pure Premium | Surplus Lines Tax/Policy Fees/Surcharges TOTAL | TOTAL Premium | Insurance Company | Coverage | Limits | Deductible | Coverage Explanation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Williams Industrial Services Group, Inc. | ELU189576-23 | 5/1/2023 | 5/1/2024 | $17,930.00 | $0.00 | $17,930.00 | XL Specialty Insurance Co. | Crime | $5,000,000 | $50,000 Per Claim | Protects organizations from loss of money, securities, or inventory resulting from crime.  Common crime insurance claims allege employee dishonesty, embezzlement, forgery, robbery, safe burglary, computer fraud, wire transfer fraud, counterfeiting, and other criminal acts. |
| Williams Industrial Services Group, Inc. | EUW180616104 | 5/1/2023 | 5/1/2024 | $153,000.00 | $0.00 | $153,000.00 | Wesco Insurance Co. (Euclid) | D&O (Primary) - $5M | $5,000,000 | $1,500,000 per Claim | |
| Williams Industrial Services Group, Inc. | 05-766-62-12 | 5/1/2023 | 5/1/2024 | $107,100.00 | $0.00 | $107,100.00 | National Union Fire Ins Co of Pitt | D&O Excess - $5M x $5M | $5,000,000 | --------- | |
| Williams Industrial Services Group, Inc. | DOC434687402 | 5/1/2023 | 5/1/2024 | $75,000.00 | $0.00 | $75,000.00 | Zurich American Insurance Co. | D&O Excess - $5M x $10M | $5,000,000 | --------- | Provides coverage for corporate directors & officers against claims, most often by stockholders and employees, alleging financial loss arising from mismanagement |
| Williams Industrial Services Group, Inc. | ELU18579-23 | 5/1/2023 | 5/1/2024 | $46,500.00 | $0.00 | $46,500.00 | XL Specialty Insurance Co. | D&O (Side A - DIC) Excess $5M x $15M | $5,000,000 | --------- | |
| Williams Industrial Services Group, Inc. | P-001-000867562-02 | 5/1/2023 | 5/1/2024 | $37,031.00 | $0.00 | $37,031.00 | Axis Insurance Co. | D&O (Side A - DIC) Excess  $5m x $20m | $5,000,000 | --------- | |
| Williams Industrial Services Group, Inc. | NHS704896 | 5/1/2023 | 5/1/2024 | $33,000.00 | $0.00 | $33,000.00 | RSUI Indemnity Co. | D&O (Side A - DIC) Excess $5M x $25M | $5,000,000 | --------- | |
| Williams Industrial Services Group, Inc. | P-001-000868569-02 | 5/1/2023 | 5/1/2024 | $51,836.00 | $0.00 | $51,836.00 | Axis Insurance Co. | Employment Practices Liab. | $5,000,000 | $150,000 Per Claim $150,000 3rd Party | Provides coverage for allegations of discrimination, sexual harassment or wrongful termination. |
| Williams Industrial Services Group, Inc. | P-001-000868562-02 | 5/1/2023 | 5/1/2024 | $18,837 | $0.00 | $18,837 | Axis Insurance Co. | Fiduciary Liability/ERISA | $5,000,000 | $25,000 per Claim | Provides coverage for trustees, fiduciaries, professional administrators, and the plan itself with respect to errors and omissions in the administration of employee benefit programs. |
| Williams Industrial Services Group, Inc. | 06-283-38-45 | 5/1/2023 | 5/1/2024 | $10,000 | $0.00 | $10,000 | National Union Fire Ins Co of Pitt | Excess Fiduciary Liability/ERISA $5M x $5M | $5,000,000 | _____ | Provides coverage for trustees, fiduciaries, professional administrators, and the plan itself with respect to errors and omissions in the administration of employee benefit programs. |
| Williams Industrial Services Group, Inc. | PLM-CB-SCDHC6D4V-002 | 5/1/2023 | 5/1/2024 | $29,145.00 | $1,997.80 | $31,142.80 | Cowbell- Palomar Excess | Cyber | $5,000,000 | $50,000 Each Claim See Policy for Additional Deductible Information | Provides coverage for a data breach where customers' personal information is exposed or stolen, and covers a variety of expenses including notification costs, credit monitoring, costs to defend claims by regulators, fines and penalties and loss resulting from identity theft.  As well, coverage extends to property exposures including business interruption, data loss/destruction, funds transfer loss and cyber extortion. |
| Williams Industrial Services Group, Inc. | C-4LPY-039477-CEPSME-2023 | 5/1/2023 | 5/1/2024 | $29,945 | $1,197.80 | $31,142.80 | Coalition-Arch Specialty | Excess Cyber $5Mx$5M | $5,000,000 | _____ | |
| | | | | | | $3,940,162.60 | | | | | |

## **EXHIBIT B**

**First Insurance Premium Financing Agreement**

DocuSign Envelope ID: F88D5F94-7559-4C5D-A132-0062D219DBFD

**LENDER:**

# PREMIUM FINANCE AGREEMENT

450 Skokie Blvd, Ste 1000

☐ Personal  ☑ Commercial  ☐ Additional Premium

**FIRST INSURANCE**\*
— FUNDING —
A WINTRUST COMPANY

Northbrook, IL 60062-7917
P:(800) 837-3707 F:(800) 837-3709
www.firstinsurancefunding.com

**Quote #: 48984033**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy)<br>Williams Industrial Services Group Inc<br>200 Ashford Center North, Suite 425<br>Atlanta, GA 30338 | | (Name and Business Address)<br>SIMKISS & BLOCK<br>1041 Old Cassatt Rd<br>Berwyn, PA 19312 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 612,519.60 | 123,143.92 | 489,375.68 | 0.00 | 489,375.68 | 18,694.72 | 508,070.40 | 8.250 % |

*YOUR PAYMENT SCHEDULE WILL BE:*    *Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 6/1/2023 |
|---|---|---|---|
| 10 | 50,807.04 | Installment Due Dates | 1st (Monthly) |

Certain information contained in the Loan Disclosure section may change in accordance with Section 19 of this Agreement.

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

## SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00187-WESCO INSURANCE COMPANY<br>G00016-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 153,000.00<br>0.00<br>0.00 |
| TBD | C00435-NATIONAL UNION FIRE IN CO PA<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 107,100.00<br>0.00<br>0.00 |
| (Policies continued on next page.) | | | | **TOTAL** | 612,519.60 |

(Policies continued on next page.)

Q# 48984033, PRN: 042023, CFG: A04790, RT: ALERAGROUP-BR, DD: N/A, BM: Invoice, Qtd For: A04790 Original, Memo 1

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1)** Do not sign this Agreement before you read both pages of it, or if it contains any blank space. **(2)** You are entitled to a completely filled-in copy of this Agreement. **(3)** You have the right prepay the loan in full and receive a refund of any unearned finance charge. **(4)** Keep a copy of this Agreement to protect your legal rights. **(5)** See last page of Agreement for your consent to electronic statement and notice delivery.

| _Signature of Insured or Authorized Agent_ | 4/25/23<br>Date | DocuSigned by:<br>*Joe Kolok*<br>4FAC1CA15766458...<br>_Signature of Agent_ | 4/25/2023<br>Date |
|---|---|---|---|

**FIF1122NBP**

Insured: Williams Industrial Services
Quote #: 48984033

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER may pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

DocuSign Envelope ID: F88D5F94-7559-4C5D-A132-0062D219DBFD

## SCHEDULE OF POLICIES

Insured: Williams Industrial Services
Quote #: 48984033

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C02341-ZURICH AMERICAN<br>G00016-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 75,000.00<br>0.00<br>0.00 |
| TBD | C01445-XL SPECIALTY INSURANCE CO<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 46,500.00<br>0.00<br>0.00 |
| TBD | C00024-RSUI INDEMNITY COMPANY<br>G00016-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 33,000.00<br>0.00<br>0.00 |
| TBD | C00198-AXIS INSURANCE COMPANY<br>G00016-RT SPECIALTY<br>[CX:0]  [90%PR] | D&O | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 37,031.00<br>0.00<br>0.00 |
| TBD | C01445-XL SPECIALTY INSURANCE CO<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | CRME | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 17,930.00<br>0.00<br>0.00 |
| TBD | C00198-AXIS INSURANCE COMPANY<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | LIAB | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 18,837.00<br>0.00<br>0.00 |
| TBD | C00435-NATIONAL UNION FIRE IN CO PA<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | EXLB | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 10,000.00<br>0.00<br>0.00 |
| TBD | C00198-AXIS INSURANCE COMPANY<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | EPLI | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 51,836.00<br>0.00<br>0.00 |
| TBD | C03571-PALOMAR EXCESS & SURPLUS INSURANCE CO<br>[CX:0]  [90%PR] | CY LIAB | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 29,145.00<br>800.00<br>1,197.80 |
| TBD | C00169-ARCH SPECIALTY INSURANCE CO<br>G00114-RT SPECIALTY<br>[CX:0]  [90%PR] | CY LIAB | 12 | 5/1/2023<br>ERN TXS/FEES<br>FIN TXS/FEES | 29,945.00<br>0.00<br>1,197.80 |


**Simkiss & Block**

## INSURANCE INVOICE

Williams Industrial Services Group, LLC                    Cust. No. WILLIND-01
200 Ashford Center North, Suite 425
Atlanta, GA 30338

## POLICY INFORMATION

TYPE OF POLICY:                N/A - Finance Agreement Down Payment
INSURANCE COMPANY:             N/A - Finance Agreement Down Payment
NAMED INSURED:                 Williams Industrial Services Group, LLC
POLICY EFFECTIVE DATE:         5/01/2023
POLICY EXPIRATION DATE:        5/01/2024
POLICY TERM:                   Annual
POLICY NUMBER:                 N/A - Finance Agreement Down Payment

*****************************************************************************

First Insurance Funding Quote #: 48984033
Finance Agreement Down Payment

                                                          $   123,143.92

TOTAL AMOUNT: Due:                                     $   123,143.92

4/27/2023

 **Simkiss & Block**

**P:** 610.727.5300
**F:** 610.727.5414
**E:** info@simkiss.com

1041 Old Cassatt Road
Berwyn, PA 19312

**simkiss.com**

**Simkiss & Block, An Alera Group Agency, LLC**
**WIRE/ACH INSTRUCTIONS:**

*JPMorgan Chase Bank, N.A.*

*For Wire Transfers:*

ABA#   021000021   for all incoming domestic wires
ACCT NAME – Simkiss & Block, An Alera Group Agency, LLC
ACCT #   782559675

For ACH delivery:
ABA#   071000013
ACCT NAME – Simkiss & Block, An Alera Group Agency, LLC
ACCT #   782559675

The address is not needed, but if they insist:
JP Morgan Chase Bank, NA
10 S Dearborn St.
Chicago, IL 60603

**For incoming international wires (in US dollars or foreign currency)**
**Same information as above plus our SWIFT #: CHASUS33**

Wires or ACH: Either method of sending us money is acceptable.
Please send detail with the wire or separately enabling us to properly allocate the funds
received.

**WORLD-CLASS RISK AND BENEFITS SOLUTIONS**

CORPORATE RISK ● EMPLOYEE BENEFITS ● SURETY BONDS ● PRIVATE CLIENT INSURANCE ● PRIVATE EQUITY RISK

**<u>EXHIBIT C</u>**

**BankDirect Premium Financing Agreement**



**BankDirect**
CAPITAL FINANCE

150 North Field Drive, Suite 190
Lake Forest, Illinois 60045
Phone 877-226-5456 Fax 877-226-5297

Quote Number: 2388872.6

# COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT

THIS COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT (this "Agreement") is between Insured named below as borrower and BankDirect Capital Finance, a division of Texas Capital Bank ("BankDirect") as lender, concerning the financing of the premium(s) for one or more commercial insurance policies listed in the Schedule of Policies below (the "Loan"). The terms of this Agreement are stated below and on all subsequent pages of this document.

| Insured / Borrower ("Insured") Name & Business Address (as stated in Policy) | Insured's Agent or Broker ("Agent") Name & Business Address |
|---|---|
| Williams Industrial Services Group, Inc<br>Williams Industrial Services Group, LLC<br>200 Ashford Center North, Suite 425<br>Atlanta, GA 30338<br>Telephone Number: 866-851-4077   Taxpayer ID #: | Simkiss & Block<br>1041 Old Cassatt Road<br>Berwyn, PA 19312<br><br>Telephone Number: 610-727-5371   Agency Code: 15490 |

## SCHEDULE OF POLICIES (each, a "Policy")

| Policy Prefix and Number | Effective Date of Policy MM/DD/YY | Name & City of Insurance Company and Name & City of General or Policy Issuing Agent or Company Office | Type of Coverage | Policy Subject to Audit (√) | Policy Term in Months Covered | Min Earned Prem % | Days to Cancel | Short Rate (√) | Premium Amounts |
|---|---|---|---|---|---|---|---|---|---|
| | 9/15/2022 | Hamilton Insurance Designated Activity Company<br>RSG Specialty, LLC - Philadelphia<br>1515 Market St., Suite 1030<br>Philadelphia, PA 19102 | CONTRACTORS POLL. LIAB. / PROF. LIAB. - CPL/PL | | 12 | 25% | 10 | √ | Premium: $139,000.00<br>Policy Fee: $0.00<br>Broker Fee: $0.00<br>Tax/Stamp: $5,560.00<br>Inspection: |

Additional Policies are listed on the attached Schedule of Policies

**TOTAL PREMIUMS**                                                        $3,326,673.04

| TOTAL PREMIUMS | DOWN PAYMENT | UNPAID PREMIUM BALANCE | FLORIDA DOC STAMP TAX Applicable in Florida only | AMOUNT FINANCED Amount of Loan provided to or on behalf of Insured | FINANCE CHARGE The dollar amount of interest the Loan will cost over the term of the Loan | TOTAL OF PAYMENTS Amount of interest and principal which will have been paid on the Loan after making all scheduled Loan payments | ANNUAL PERCENTAGE INTEREST RATE The cost of interest on the Loan as a yearly percentage rate. |
|---|---|---|---|---|---|---|---|
| $3,326,673.04 | $282,952.49 | $3,043,720.55 | $0.00 | $3,043,720.55 | $68,756.84 | $3,112,477.39 | 4.49% |

| Payment Schedule:<br>The Loan payment schedule will be: | Number of Loan Payments | Amount of Each Loan Payment* | When Loan Payments are Due ("Due Dates") | |
|---|---|---|---|---|
| | | | First Due Date | Subsequent Monthly Due Dates** |
| | 11 | $282,952.49 | 10/15/2022 | 15th |

*Non-payment of the Loan may result in cancellation of any Policy   **Subsequent payments are due on the same day of each succeeding period until paid in full

**Prepayment:** Insured may prepay the outstanding principal balance of the Loan in full at any time. If Insured prepays the Loan in full, Insured will receive a refund of the unearned finance charge, calculated according to the Rule of 78's or the actuarial method as provided by applicable law. Minimum refund is $1.

**Security Interest:** Insured assigns and grants a security interest to BankDirect as security for payment of all amounts payable under this Agreement, in all of Insured's right, title and interest in and to each Policy and all amounts which are or may become payable to Insured under or with reference to the Policies including, among other things, any gross unearned premiums, dividend payments, and all payments on account of loss which results in reduction of any unearned premium in accordance with the term(s) of said Policies

**IMPORTANT INFORMATION ABOUT YOUR LOAN:** To help the Federal government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies the Insured. We will require such information as we deem reasonably necessary to allow us to properly identify you, such as your name, address and Taxpayer ID # (TIN).

**Delinquency Charge:** Insured agrees to pay a delinquency charge to BankDirect on any payment required to be made by Insured hereunder which is not received by BankDirect within five (5) days of its due date unless a longer period is specified under applicable law, in which case the delinquency charge will be imposed on any payment not received by BankDirect within this longer period. The delinquency charge will be the lessor of (1) 5% of the overdue amount, or (2) the maximum delinquency charge allowed by applicable law.

**Cancellation Charge:** If a default results in cancellation of a Policy, Insured agrees to pay a cancellation charge of $25 or the maximum amount permitted by applicable law.

| NOTICE TO INSURED: | 1. DO NOT SIGN THIS AGREEMENT UNTIL YOU READ ALL PAGES OF THE AGREEMENT AND FILL IN ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT, KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION. |
|---|---|

**REPRESENTATIONS AND WARRANTIES:**

The undersigned Agent and Insured have read the Representations and Warranties on page two of this document, make all such representations and warranties and understand that BankDirect will rely on all such representations and warranties in determining whether or not to accept this Agreement, and agree to be bound by the terms of this Agreement. Insured further acknowledges that upon satisfactory completion of the Agreement, the undersigned Agent may receive a fee from BankDirect for the origination and administration of this Agreement as allowed by applicable law.

All Insureds must sign as named in Policies. If corporation, authorized officers must sign; if partnership, partner must sign as such; signatory acting in representative capacity represents that has authorized that transaction and has authorized signatory to receive all notices hereunder. By signing below Insured agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement, including those on page two. Insured is not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

_(Signature of Agent)_ Daniel B Norris

_(Title)_ VP Finance   _(Date)_ 9/16/22

_(Signature of Insured)_ Dai Vell

_(Printed Name & Title)_ Damien Vassell, CFO   _(Date)_ 9/15/22

BANKDIRECT 1 040114 -DS

1

**Name of Insured:** Williams Industrial Services Group, Inc

**Total Premiums:** $3,326,673.04

Insured (jointly and severally if more than one) agrees as follows:

**1. Promise to Pay.** In consideration of the payment by BankDirect of the Amount Financed, Insured agrees to pay the Down Payment to the insurance company(ies) listed in the Schedule of Policies, and Insured agrees to pay to the order of BankDirect all of the principal amount of the Loan, all interest thereon and all other amounts payable by Insured hereunder in accordance with the Payment Schedule and the other terms of this Agreement.

**2. Representations and Warranties.** Insured represents and warrants that: (a) the Policies are in full force and effect; (b) the proceeds of the Loan are to be used to purchase insurance for business or commercial purposes; (c) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading; (d) Insured has no indebtedness to the insurers issuing the Policies; (e) Insured is not insolvent nor presently the subject of any insolvency proceeding; and (f) the person signing this Agreement on behalf of Insured is authorized to do so.

**3. Power of Attorney.** Insured hereby irrevocably appoints BankDirect as Attorney-in-Fact with full power of substitution and full authority upon the occurrence of an Event of Default (defined below) to (i) effect cancellation of the Policies, (ii) receive any unearned premium or other amounts with respect to the Policies assigned as security herein, (iii) sign any check or draft Issued therefore in Insured's name and to direct the insurance companies to make said check or draft payable to BankDirect and (iv) sign any other instrument or document in the name of and on behalf of Insured to effectuate the purposes of this Agreement. Insured agrees that this appointment and authority cannot be revoked and is coupled with an interest and will terminate only after Insured's obligations under this Agreement are paid in full. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

**4. Payments Received after Notice of Cancellation.** Insured agrees that any payments made and accepted after a Notice of Cancellation has been sent to any insurance company do not constitute reinstatement or obligate BankDirect to request reinstatement of such insurance Policy(ies), and Insured acknowledges that BankDirect has no authority or duty to reinstate coverage, and that such payments may be applied to Insured's obligations hereunder or under any other agreement with BankDirect, and any such payments will not affect BankDirect's rights or remedies under this Agreement.

**5. Assignments.** Insured agrees not to assign any rights, interests or obligations under any Policy or this Agreement without the prior written consent of BankDirect, except that BankDirect's consent is not required for the rights or interests of mortgagees and loss payees. BankDirect may assign its rights and interests under this Agreement without Insured's consent, and all rights and interests conferred upon BankDirect under this Agreement shall inure to BankDirect's successors and assigns.

**6. Insufficient Funds (NSF) Fees.** If an Insured's check or electronic funding is dishonored for any reason, Insured agrees to pay BankDirect a fee equal to $25 or the maximum amount permitted by applicable law.

**7. Default.** An Event of Default occurs when: (a) Insured does not pay any installment according to the terms of this Agreement or any other agreement; (b) Insured fails to comply with any of the terms of this Agreement; (c) any of the Policies are cancelled for any reason; (d) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor; (e) premiums increase under any of the Policies and Insured fails to pay such increased premiums within thirty (30) days of the notification; or (f) Insured is in default under any other agreement with BankDirect.

**8. Rights Upon Default.** If an Event of Default occurs, BankDirect may at its option pursue any and all rights and remedies available, including but not limited to, the following: demand and receive immediate payment of the Loan and any other unpaid amounts due under this Agreement regardless of whether BankDirect has received any refund of unearned premium. BankDirect may take all necessary actions to enforce payment of any unpaid amounts due hereunder. To the extent not prohibited or limited by applicable law, BankDirect is entitled to collection costs and expenses paid or incurred by BankDirect as a result of or in connection with enforcing its rights and remedies under this Agreement and applicable law and to reasonable attorneys' fees if this Agreement is referred to an attorney who is not a salaried employee of BankDirect for collection or enforcement. BankDirect may cancel any or all of the Policies and collect any unearned premiums or other amounts payable under said Policies. Unearned premiums shall be payable to BankDirect only.

**9. Right of Offset.** BankDirect may offset and deduct from any amounts BankDirect owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to BankDirect under this Agreement or any other agreement to the extent permitted by applicable law.

**10. Finance Charge.** The Finance Charge includes interest on the outstanding principal amount of the Loan. The Finance Charge is computed using a 365-day year. Interest on the Loan shall accrue from the Effective Date of this Agreement or the earliest policy effective date indicated in the Schedule of Policies, whichever is earlier, and continue to accrue until the Loan is paid in full. If BankDirect terminates this Agreement after an Event of Default, Insured will pay interest on the outstanding principal balance of the Loan at the maximum rate permitted under applicable law from the date of such termination until Insured pays the Loan and all other amounts due under this Agreement in full.

**11. Additional Premiums.** Insured agrees to promptly pay to each applicable insurance company any additional premiums due on any Policy.

**12. Agent.** Agent is not the agent of BankDirect and Agent cannot bind BankDirect in any way. BankDirect is not Agent of any insurer and is not liable for any acts or omissions of any insurer. Agent is the agent of Insured, and Insured acknowledges that it has chosen to do business with Agent and the insurance companies issuing the Policies, and that the solvency, financial condition or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to BankDirect hereunder.

**13. Corrections.** Except if prohibited by applicable law, BankDirect may correct any errors or omissions in this Agreement and if not known or corrected at the time of signature by or for Insured.

**14. Force or Effect.** This Agreement shall have no force or effect until accepted in writing by BankDirect.

**15. Limitation of Liability: Claims Against BankDirect.** Neither BANKDIRECT nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by BANKDIRECT or its assignee of the rights conferred herein, including but not limited to BANKDIRECT's exercise of the right of cancellation, except in the event of willful or intentional misconduct by BANKDIRECT

**16. Governing Law.** This Agreement is governed by and construed and interpreted in accordance with the laws of the state where BankDirect accepts this Agreement. BankDirect shall, at its option, prosecute any action to enforce its rights and remedies hereunder in the Circuit Court of Cook County, Illinois, and Insured (i) irrevocably waives any objection to such venue and (ii) will honor any order issued by or judgment enforced in such court.

**17. Miscellaneous.** All rights and remedies in this Agreement are cumulative and not exclusive. If any provision of this Agreement is determined to be invalid or unenforceable under applicable law, the remaining provisions of this Agreement shall continue to be in full force and effect. This Agreement constitutes the entire agreement between BankDirect and Insured with respect to its subject matter and may not be modified except as agreed upon in writing. BankDirect's acceptance of late or partial payments shall not be deemed a waiver by BankDirect of any provisions of this Agreement, and BankDirect is entitled to require Insured to strictly comply with the terms hereof. If any amount contracted for or received by BankDirect hereunder is determined to violate any applicable law, BankDirect may return such prohibited amount to Insured without any further liability therefor or in respect thereof to the fullest extent permitted by law. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of Insured and Agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**18. CALIFORNIA RESIDENTS: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.**

Insured agrees that, in accordance with Section 18608 of the California Financial Code, BankDirect's liability to Insured upon the exercise of BankDirect's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of BankDirect's willful failure to meet the notice of cancellation required under California law.

New York Residents: No charges imposed for obtaining and servicing the financed policies, pursuant to Section 2119 (formerly 129) of the New York Insurance Laws, are financed hereunder unless specified in the Schedule of Policies.

---

In connection with the Policies scheduled herein, Agent represents and warrants to BankDirect and its successors and assigns that:

**1. Payment.** Agent shall remit all funds received from BankDirect and Insured promptly to the insurance company(ies) issuing the financed policy(ies). Agent shall segregate and hold all payments received by it from Insured or any insurance company listed in the Schedule of Policies with respect to the Loan or this Agreement in trust for BankDirect, shall have no right or interest in any such payments and shall immediately deliver all such payments to BankDirect for application to Insured's obligations hereunder.

**2. Signatures Genuine.** Insured's signature on both pages of this Agreement is genuine and authorized.

**3. Authorization By Insured.** If this Agreement has been signed by Agent on behalf of Insured, Agent has been fully authorized to sign this Agreement on behalf of Insured and Insured has authorized this transaction. Agent has given Insured a complete copy of this Agreement.

**4. Authority of Agent.** For each Policy, Agent signing this Agreement is either the authorized policy-issuing agent of the issuing insurance company(ies) or the broker placing the coverage directly with the issuing insurance company(ies), except as indicated on the Schedule of Policies. The person signing this Agreement on behalf of Agent is authorized to do so. Agent is neither authorized to receive any payments from Insured under this Agreement nor to make any representations to Insured for or on behalf of BankDirect.

**5. Not Agent of BankDirect.** Agent is not an agent of BankDirect and is not authorized to bind BankDirect and has not made any representation to the contrary.

**6. Recognition of Assignment.** Agent recognizes the security interest granted in this Agreement, whereby Insured assigns to BankDirect all unearned premiums, dividends and certain loss payments. Upon cancellation of any of the Policies, Agent agrees to pay BankDirect all unearned commissions and unearned premiums upon receipt. If such funds are not remitted to BankDirect within ten (10) days of receipt by Agent, Agent agrees to pay BankDirect interest on such funds at the maximum rate permitted under applicable law. Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to BankDirect hereunder.

**7. Down Payment.** The down payment and any other payments due from Insured which Agent has agreed to collect, have been collected from Insured.

**8. Policies:** (a) are all cancelable by standard short-rate or pro-rata tables; (b) are not audit or reporting form policies or policies subject to retrospective rating, unless so indicated on the Schedule of Policies in this Agreement, and if so indicated, the deposit premiums are not less than the anticipated premiums to be earned for the full term of the Policies; (c) upon cancellation by Insured or BankDirect, do not require advance notice of cancellation to any party, other than any notice required to be given by BankDirect; (d) are in full force and effect and the premiums indicated are earned for the term of the Policies; (e) have not been financed on an installment payment plan provided by the insurance company(ies); (f) are all cancelable policies; (g) are written for a term of at least one year; (h) are not for personal, family or household purposes; and (i) have no exceptions other than those indicated and comply with BankDirect's eligibility requirements. All information in this Agreement pertaining to the Policies is complete and correct.

**9. Insured:** (a) has not paid for the Policies other than as described in this Agreement; (b) has received a copy of this Agreement; and (c) is not the subject of any proceeding in bankruptcy, receivership or insolvency; or if Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which Insured's name and address is placed. All information in this Agreement pertaining to Insured is complete and correct.

**10. Miscellaneous.** Agent agrees to indemnify and pay BankDirect for and hold BankDirect harmless from and against any losses, costs, damages, fees and expenses (including reasonable attorneys' fees, court costs and collection costs) paid or incurred by BankDirect or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, any breach by Agent of this Agreement, any error committed by Agent in completing or failing to complete any portion of this Agreement, or any violation by Agent of any applicable law. Agent shall promptly notify BankDirect of any unpaid increased premiums for the Policies. This Agreement is a valid and enforceable agreement between BankDirect and Agent and there are no defenses to it.

2

Name of Insured: Williams Industrial Services Grou Total Premiums: $3,326,673.04

## Schedule of Policies

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY MM/DD/YY | NAME & CITY OF INSURANCE COMPANY AND NAME & CITY OF GENERAL AGENT OR COMPANY OFFICE | TYPE OF COVERAGE | POLICIES SUBJECT TO AUDIT (✓) | TERM IN MONTHS COVERED | MIN EARNED PREM | DAYS TO CANCEL | SHORT RATE (✓) | PREMIUM AMOUNTS | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10001988702 21 | 9/15/2022 | Starr Specialty Insurance Company 399 Park Ave 2nd Fl New York, NY 10022 | AUTO LIABILITY | | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $104,917.00 $0.00 $0.00 $103.04 $0.00 |
| 100 0002884 | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | WORKERS COMP - GUARANTEED COST | ✓ | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $315,674.00 $0.00 $0.00 $58,225.00 $0.00 |
| 100 0003306 | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | WORKERS COMP - GUARANTEED COST | ✓ | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $43,597.00 $0.00 $0.00 $0.00 $0.00 |
| 100 0004774 | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | WORKERS COMP - GUARANTEED COST | ✓ | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $265,729.00 $0.00 $0.00 $0.00 $0.00 |
| 10000904352 21 | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | GENERAL LIABILITY | | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $605,000.00 $0.00 $0.00 $0.00 $0.00 |
| TBD | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | INLAND MARINE | | 12 | 25% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $100,160.00 $0.00 $0.00 $0.00 $0.00 |
| 10000954712 21 | 9/15/2022 | Starr Indemnity & Liability Company 399 Park Ave 2nd Fl New York, NY 10022 | EXCESS LIABILITY | | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $647,668.00 $0.00 $0.00 $0.00 $0.00 |
| EXC3000072 8104 | 9/15/2022 | Endurance American Insurance Co RSG Specialty, LLC - Philadelphia 1515 Market St., Suite 1030 Philadelphia, PA 19102 | EXCESS LIABILITY | | 12 | 25% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $383,000.00 $0.00 $0.00 $15,320.00 $0.00 |
| NY22EXCZ06 7KMIC | 9/15/2022 | Navigators Insurance Company RSG Specialty, LLC - Philadelphia 1515 Market St., Suite 1030 Philadelphia, PA 19102 | EXCESS LIABILITY | | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $458,000.00 $0.00 $0.00 $18,320.00 $0.00 |
| EX202200002 721 | 9/15/2022 | Gotham Insurance Company RSG Specialty, LLC - Philadelphia 1515 Market St., Suite 1030 Philadelphia, PA 19102 | EXCESS LIABILITY | | 12 | 0% | 10 | ✓ | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $160,000.00 $0.00 $0.00 $6,400.00 $0.00 |
| | | | | | | | | PAGE 3 TOTALS | | $3,182,113.04 |

**<u>EXHIBIT D</u>**

**Amounts Specified**

| Financing Agreement | Outstanding Balance |
|---|---|
| First Insurance Premium Financing Agreement | $0 |
| BankDirect Insurance Premium Financing Agreement | $565,904.98 |

**EXHIBIT E**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[2] | Case No. 23-10961 |
| | (Jointly Administered) |
| Debtors. | **Related Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO CONTINUE PREPETITION INSURANCE AND WORKERS' COMPENSATION POLICIES AND TO PAY PREPETITION PREMIUMS AND RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF**

This matter is before the Court on the *Emergency Motion for Entry of an Order (I) Authorizing Debtors to Continue Prepetition Insurance and Workers' Compensation Policies and to Pay Prepetition Premiums and Related Obligations and (II) Granting Related Relief* (the "Motion") [Docket No. __] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

The Court has considered the Motion, the First Day Declaration, and the matters reflected in the record of the hearing held on the Motion on July ___, 2023. It appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

to 28 U.S.C. §§1408 and 1409(a); and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that good cause has been shown therefor; IT IS HEREBY ORDERED:

1.    The Motion is granted on an interim basis to the extent set forth herein.

2.    The Debtors are authorized, but not required, to maintain the Insurance Policies and Workers' Compensation Policies, and to pay any post-petition obligations related to the Insurance Policies, insurance deductibles, and any other amounts related thereto.

3.    The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at __:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and shall be served on: (i) the Debtors; (ii) proposed counsel for the Debtors, Thompson Hine LLP, (Attn: Alan Lepene.), email: alan.lepene@thompsonhine.com and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers), email: desgross@chipmanbrown.com; (iii) counsel to the administrative agents for the Debtors' prepetition credit facilities, Blank Rome LLP (Attn: Regina Stango Kelbon, Gregory F. Vizza), email: regina.kelbon@blankrome.com, gregory.vizza@blankrome.com; (iv) counsel to any statutory committee appointed in these Cases; and (v) the Office of the United States Trustee for the District of Delaware, (Attn: Linda Richenderfer); email: linda.richenderfer@usdoj.gov. If no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without further notice or hearing.

4.    Subject to the entry of a final order on the Motion, the Debtors are authorized, but not required, to renew, amend, supplement, extend, or purchase Insurance Policies and Workers'

Compensation Policies to the extent that the Debtors determine that such action is in the best interest of their estates in the ordinary course of business.

5.      Subject to a final order on the Motion, the Debtors are authorized to enter into new premium financing agreements in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases to the extent that the Debtors determine such action is in the best interest of their estates.

6.      The Debtors are authorized, but not required, to pay all amounts necessary to maintain the Premium Financing Agreements, the Insurance Policies, and/or the Workers' Compensation Policies, including, without limitation, the amounts specified in **Exhibit D** to the Motion on an interim basis in an amount not to exceed $565,904.98.

7.      Payments made pursuant to the authority granted in this Interim Order shall not be deemed to constitute the post-petition assumption of any executory contract pursuant to Bankruptcy Code section 365.

8.      Nothing in this Interim Order shall affect the Debtors' rights to contest the amount or validity of any amounts under any of the Premium Financing Agreements, the Insurance Policies, and/or the Workers' Compensation Policies.

9.      Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Interim Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' insurance providers or any third party.

10.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective immediately upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

13.     Counsel for the Debtors is directed to serve a copy of this Order on the parties that received service of the Motion within three (3) days of the entry of this Interim Order and to file a certificate of service with the Clerk of Court.

## **EXHIBIT F**

## **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[3] | Case No. 23-10961 |
| | (Jointly Administered) |
| Debtors. | **Related Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO CONTINUE PREPETITION INSURANCE AND WORKERS' COMPENSATION POLICIES AND TO PAY PREPETITION PREMIUMS AND RELATED OBLIGATIONS AND (II) GRANTING RELATED RELIEF**

This matter is before the Court on the *Emergency Motion for Entry of an Order (I) Authorizing Debtors to Continue Prepetition Insurance and Workers' Compensation Policies and to Pay Prepetition Premiums and Related Obligations and (II) Granting Related Relief* (the "Motion") [Docket No. __] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). All capitalized terms used but not defined herein shall have the meanings given them in the Motion.

The Court has considered the Motion, the First Day Declaration, and the matters reflected in the record of the hearing held on the Motion on July ___, 2023. It appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

to 28 U.S.C. §§1408 and 1409(a); and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that good cause has been shown therefor; and any objection to the Motion having been withdrawn, resolved, or overruled; and a hearing having been held with respect to the entry of a final order granting the Motion; IT IS HEREBY ORDERED:

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not required, to maintain the Insurance Policies and Workers' Compensation Policies, and to pay any post-petition obligations related to the Insurance Policies, insurance deductibles, and any other amounts related thereto.

3.      The Debtors are authorized, but not required, to renew, amend, supplement, extend, or purchase Insurance Policies and Workers' Compensation Policies to the extent that the Debtors determine that such action is in the best interest of their estates in the ordinary course of business.

4.      The Debtors are authorized to enter into new premium financing agreements in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the commencement of the Debtors' chapter 11 cases to the extent that the Debtors determine such action is in the best interest of their estates.

5.      The Debtors are authorized, but not required, to pay all amounts necessary to maintain the Premium Financing Agreements, the Insurance Policies, and/or the Workers' Compensation Policies, including, without limitation, the amounts specified in **Exhibit D** to the Motion.

6.      Payments made pursuant to the authority granted in this Final Order shall not be deemed to constitute the post-petition assumption of any executory contract pursuant to Bankruptcy Code section 365.

7.     Nothing in this Final Order shall affect the Debtors' rights to contest the amount or validity of any amounts under any of the Premium Financing Agreements, the Insurance Policies, and/or the Workers' Compensation Policies.

8.     Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Final Order shall create any rights in favor of, or enhance the status of any claim held by, any of the Debtors' insurance providers or any third party.

9.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective immediately upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Final Order.

12.     Counsel for the Debtors is directed to serve a copy of this Final Order on the parties that received service of the Motion within three (3) days of the entry of this Final Order and to file a certificate of service with the Clerk of Court.