## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 (TMH) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PREPETITION CLAIMS OF CRITICAL VENDORS PURSUANT TO 11 U.S.C. §§ 363(B), 1107 AND 1108, FED. R. BANKR. P. 6003 AND 6004, AND DEL. BANKR. L.R. 9013-1(M) AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file this Emergency Motion for Entry of Interim and Final Orders (i) Authorizing, But Not Directing, Payment of Prepetition Claims of Critical Vendors pursuant to 11 U.S.C. §§ 363(b), 1107, and 1108, Fed. R. Bankr. P. 6003 and 6004, and Del. Bankr. L.R. 9013-1(m) and (ii) Granting Related Relief (the "Motion"), seeking entry of interim and final orders, substantially in the forms hereto as **Exhibit A** and **Exhibit B** (the "Proposed Interim Order" and the "Proposed Final Order," respectively, and together, the "Proposed Orders"), (a) authorizing, but not directing, the Debtors to pay the prepetition claims (the "Critical Vendor Claims") of certain critical vendors (the "Critical Vendors"), and (b) authorizing financial institutions to receive, process, honor and pay all related checks and electronic payment requests for payment of prepetition claims of certain Critical Vendors. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.      The bases for the relief requested herein are sections 105(a), 363(b), 1107 and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed in any of these cases.

4.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and*

*First Day Pleadings* (the "<u>First Day Declaration</u>") filed on the Petition Date and incorporated herein by reference.

5.        Before filing this motion, the Debtors, in consultation with their professionals, reviewed their accounts payable and undertook a process to identify those vendors truly essential to their operations. Thus, the Debtors concluded that each Critical Vendor is absolutely critical as a sole source and/or irreplaceable provider. Any disruption in the supply of the goods or services provided by any Critical Vendor would likely result in immediate and irreparable harm to the Debtors' businesses and their estates by significantly impairing the Debtors' operations, and preventing the Debtors from providing the services they are contractually obligated to provide to their customers. Work on current projects would cease, resulting in significant damage claims and loss of value.

6.        In making the determination that a given vendor is a Critical Vendor, the Debtors consulted with appropriate members of their management team to identify those vendors essential to their operations using the following criteria: (i) whether the vendor in question is a "sole source" and/or irreplaceable provider; (ii) whether certain product-customizations prevent the Debtors from obtaining goods or services from alternative sources within a reasonable timeframe; (iii) if a vendor is not a sole source provider, whether the Debtors have the ability to continue operations while a replacement vendor is procured; (iv) whether the Debtors have favorable pricing and other terms with the vendors that would be lost if the Debtors were to switch to a new vendor; (v) whether a vendor considered essential to the Debtors' operations under the criteria in (i), (ii), (iii), or (iv) is likely to refuse to continue providing goods or services post-petition if its prepetition claims are not paid; and (vi) whether the vendor might be able to obtain (or has obtained) mechanics liens, possessory liens, shippers liens or similar state law trade liens on property of the Debtors' estate.

7.      Broadly speaking, the Critical Vendors fall into two major categories. This includes the administrative services ("Administrative Services") and trade vendors and suppliers ("Trade Vendors"). Administrative services includes various technology and administrative services such as telecommunications and office space. Trade vendors and suppliers provide necessary materials and skilled services in connection with the construction services the Debtors provide. This category also includes construction subcontractors.

8.      It is essential that the Debtors be authorized in their sole discretion to pay the Critical Vendor Claims to ensure the uninterrupted functioning of the Debtors' business operations. The Debtors' ability to generate revenues would be crippled without the ability to do so. Accordingly, the authority requested in this Motion is required to maximize the value of the Debtors' assets.

## RELIEF REQUESTED

9.      By this Motion, the Debtors request, among other things, authority to pay, in the reasonable exercise of its business judgment and in its sole discretion, the Critical Vendor Claims, or a portion thereof, described herein that are essential to the uninterrupted functioning of the Debtors' business operations.

10.     To enable the requested relief, the Debtors also seek interim and final orders authorizing all applicable banks and financial institutions to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtors related to the Critical Vendor payments, whether such payments were presented or electronic requests were submitted before or after the date hereof.

11.     The Debtors seek authority to pay the Critical Vendor Claims solely to the extent that such payments are necessary on a post-petition basis to ensure that a particular vendor

continues to provide necessary goods and services to the Debtors, up to a maximum oof $3,900,000 on an interim basis, and a maximum of $6,500,000 on a final basis. Consistent with the requirements of the Bankruptcy Code and applicable case law, the Debtors will only make payments after determining that such payment is necessary to preserve the value of the Debtors' estates.

12.     The Debtors will seek to condition any payment to Critical Vendors upon an agreement with the Critical Vendor in question continue to provide goods and/or services to the Debtors on the most favorable terms in effect between that Critical Vendor and the Debtors in the 12 months before the Petition Date, or on terms more favorable to the Debtors on which the Debtors and the Critical Vendor may otherwise agree (the "Customary Trade Terms"). The Debtors seek the authority, but not direction, to obtain written verification before issuing any payment to a Critical Vendor that the Critical Vendor will continue to provide goods and services to the Debtors on the Customary Trade Terms throughout these chapter 11 cases.

13.     If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Vendor claim, then the Debtors may, in their sole discretion and without further order of the Court declare that provisional payments made to the Critical Vendor on account of its Critical Vendor Claim be deemed to have been in payment of post-petition obligations to such vendor outstanding from time to time and require that the Critical Vendor immediately repay to the Debtors any payment made to it on account of its Critical Vendor Claims without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

## BASIS FOR RELIEF REQUESTED

14.     Courts have routinely permitted the payment of some prepetition claims when the failure to pay such claims would have a material adverse impact on the debtors or their estates and have done so for claims far higher in numbers and in dollars than the claims that the Debtors seek to pay here. Here, the Critical Vendor Claims that the Debtors seek to pay are to vendors that supply what are undeniably critical elements in the Debtors' operations and that have no obligations to continue to do business with the Debtors on a go-forward basis. Given the significant impact that the loss of these vendors, servicers and suppliers would have on the Debtors, it is well within the Court's authority to authorize the payment of the Critical Vendor Claims.

**A.      The Debtors Should Be Authorized to Pay the Critical Vendor Claims Pursuant to Section 363(b) of the Bankruptcy Code**

15.     The Court may authorize the Debtors to pay Critical Vendor Claims under section 363(b) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition wages pursuant to section 363(b)); *In re UAL Corp.*, No. 02-B-48191, 2002 Bankr. LEXIS 1941, at *3 (Bankr. N.D. Ill. Dec. 11, 2002) (authorizing payment of prepetition claims of  essential trade creditors under section 363). In order to do so, "the debtor must articulate some business justification, other than mere appeasement of major creditors . . . ." *Ionosphere*, 98 B.R. at 175. As discussed more fully herein, the Debtors' request to pay the Critical Vendors meets this standard because, given the nature of

the Debtors' industry, the failure to satisfy the Critical Vendor Claims could have a material adverse impact on the day-to-day operations of the Debtors' business.

**B.**    **The Debtors Should Be Authorized to Pay the Critical Vendor Claims Pursuant to the Court's General Equitable Powers**

16.    In addition, to supplement this explicit statutory power, section 105(a) of the Bankruptcy Code grants the Court broad authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. *See* 11 U.S.C. § 105(a) ("[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (acknowledging that "[c]ertain pre-petition claims . . . may need to be paid to facilitate a successful reorganization" and that "[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of pre-petition claims"); *Ionosphere*, 98 B.R. at 175 ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

17.    As shown above, continuation of the Debtors' positive relationship with the Critical Vendors is imperative to the Debtors' continued operations and their ability to maximize the value of their estates. Therefore, the Court should exercise its equitable power to grant the relief requested in this Motion.

**C.**    **The Debtor Should Be Authorized to Pay the Critical Vendor Claims Pursuant to the "Necessity of Payment" Doctrine**

18.    The "necessity of payment" doctrine further supports the relief requested in this Motion. In a long line of well-established cases, federal courts have consistently permitted under the "doctrine of necessity" or the "necessity of payment doctrine" postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for

the benefit of all creditors or essential to the continued operation of the debtor. *See, e.g.,*
*Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286, 311 (1882) (articulating legal theory
later termed "doctrine of necessity" or "necessity of payment rule" and holding that payment of
pre-receivership claim prior to reorganization permitted to prevent stoppage of crucial business
relations); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (interpreting
"necessity of payment" doctrine to mean that "if payment of a claim which arose prior to
reorganization is essential to the continued operation of the [business] during reorganization
payment may be authorized even if it is made out of corpus"); *In re Boston & Me. Corp.*, 634
F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to
pay claims for goods and services that are indispensably necessary to Debtor's continued
operation); *S. Ry. Co. v. Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962) ("The principle of necessity
of payment [espoused in *Miltenberger*] has since been carried into different factual surroundings
as the basis for granting superiority to business-operating accounts."); *Just For Feet*, 242 B.R. at
824 (granting approval to pay prepetition claims of certain trade vendors which were critical to
Debtor's reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del.
1994) (noting that Debtor may pay prepetition claims that are essential to continued operation of
business); *Ionosphere*, 98 B.R. at 176 ("necessity of payment" doctrine "recognizes the existence
of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims
where such payment is essential to the continued operation of the debtor").

19.     The doctrine of necessity is frequently invoked early in reorganization cases when
preservation of the estate is most critical and often extremely difficult. For that reason, bankruptcy
courts routinely invoke their equitable powers to authorize a debtor to pay certain critical
prepetition claims under the doctrine of necessity where failure to make such payments threatens

to disrupt a debtor's efforts to reorganize. *See, e.g., In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that "to justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process"). Indeed, the Third Circuit stated that "the sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment." *Lehigh & New England Ry.*, 657 F.2d at 581.

20.     As stated more fully above, the payment of the Critical Vendor Claims is critical to the uninterrupted operation of the Debtors' business. In turn, the maintenance of the Debtors' business during these chapter 11 cases without service interruption is crucial to the Debtors' ability to maximize the value of their estates for the benefit of all stakeholders. Preserving the Customary Trade Terms with each Critical Vendor will improve the Debtors' chances of maximizing value by, among other things, allowing the Debtors to continue purchasing goods and services on credit, preserving the Debtors' working capital and liquidity and enabling the Debtors to maintain their competitiveness. Hence, allowing the Debtors to selectively pay the Critical Vendor Claims in exchange for favorable credit terms will serve the purposes of facilitating the Debtors' effort to maximize value for creditors. Accordingly, the Debtors submit the relief requested is necessary and in the best interests of the Debtors' estates and creditors.

21.     Bankruptcy courts, including those in this District, have consistently authorized the relief requested in similar contexts, allowing debtors to pay prepetition trade claims where the payment of such claims is essential to the debtor's continued operations. *See, e.g., In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. April 17, 2018) (authorizing Debtors to pay up to $11.7 million in critical vendor claims); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC)

(Bankr. D. Del. Oct. 30, 2006) (authorizing Debtor to pay up to $29 million in prepetition claims of critical vendors). The Debtors respectfully submit that similar relief is warranted in this case.

D.    **The Debtor Should Be Authorized to Pay the Critical Vendor Claims Pursuant to Sections 1107 and 1108 of the Bankruptcy Code**

22.    The Debtors, operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of . . . its creditors and (if the value justifies) equity owners." *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

23.    It has been noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that pre-plan of reorganization satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497–98. The court provided a three-pronged test for determining whether a pre-plan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

24.     Payment of the Critical Vendor Claims meets the test set forth in *CoServ*. As described above, the Debtors have narrowly tailored the relief requested to encompass only those Critical Vendors that are vital to the Debtors' business and operations. Any interruption of the Debtors' operations could cost the Debtors' estates significantly in lost revenues, cause the Debtors to lose customers, and threaten the Debtors' going concern value. Accordingly, the harm that would stem from the failure to pay any of the Critical Vendors is disproportionate to the amount of the Critical Vendor Claims that the Debtors are seeking to pay hereunder. Moreover, with respect to each Critical Vendor, the Debtors have examined other options short of payment of such vendors and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Critical Vendor Claims. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Critical Vendor Claims. Accordingly, the Court should grant the relief requested herein.

## BANKRUPTCY RULE 6003 IS SATISFIED

25.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## REQUEST FOR WAIVER OF STAY

26.     The Debtors further seek a waiver of any stay of the effectiveness of an order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth

above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going concern value and their efforts to resolve this case to the benefit of creditors.

27.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6004(h).

## **NOTICE**

28.     The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the administrative agents for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Delaware Division of Revenue; (g) the United States Attorney for the District of Delaware; (h) the Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) each Critical Vendor, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the Court.

29.     In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court:

(a) enter an Interim Order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein on an interim basis;

(b) enter a Final Order substantially in the form attached hereto as **Exhibit B** granting the relief requested herein on a final basis; and

(c) grant the Debtors such other and further relief as is just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: July 22, 2023
Wilmington, Delaware

/s/ Mark L. Desgrosseilliers

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0192
_desgross@chipmanbrown.com_

-and-

Sean A. Gordon (*pro hac vice* pending)
Austin B. Alexander (*pro hac vice* pending)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326-4266
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
_Sean.Gordon@thompsonhine.com_
_Austin.Alexander@thompsonhine.com_

Alan R. Lepene (*pro hac vice* pending)
Scott B. Lepene (*pro hac vice* pending)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
_Alan.Lepene@thompsonhine.com_
_Scott.Lepene@thompsonhine.com_

*Proposed Counsel for Debtors*

# **EXHIBIT A**

(**Proposed Interim Order**)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES<br>GROUP INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10961 (TMH)<br><br>(Jointly Administered)<br><br>**Related Docket No. ___** |

**INTERIM ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PREPETITION CLAIMS OF CRITICAL VENDORS PURSUANT TO 11 U.S.C. §§ 363(B), 1107 AND 1108, FED. R. BANKR. P. 6003 AND 6004, AND DEL. BANKR. L.R. 9013-1(M)**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Order") pursuant to sections 105(a) and 363(b), 1107(a) and 1108 of the Bankruptcy Code; Bankruptcy Rules 6003 and 6004(h), and Local Rule 9013-1(m), (a) authorizing, but not directing, the Debtors to pay or honor prepetition Critical Vendor Claims on an interim basis up to $3,900,000, all in accordance with the Customary Trade Terms, (b) authorizing financial institutions to honor all related checks and electronic payment requests and (c) scheduling a Final Hearing to the extent a hearing is necessary, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

dated February 29, 2012; and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis to the extent provided herein.

2.      The Debtors are authorized, but not required, to pay or honor prepetition Critical Vendor Claims; provided however, that the Debtors shall only be authorized to pay Critical Vendor Claims up to a maximum aggregate cap during the interim period of $3,900,000 (the "Interim Vendor Fund").

3.      The Debtors shall make a reasonable effort to condition payment to any Critical Vendor upon an agreement by the party in question to provide Customary Trade Terms, including reasonable and customary price, service, quality and payment terms to the Debtors on a post-petition basis. In the event that the Debtors and the Critical Vendor in question are not, despite diligent efforts, able to come to a resolution pursuant to the Customary Trade Terms, the Debtors are authorized, but not directed, in the exercise of their business judgment and after good-faith negotiations, to make full or partial payment from the Interim Vendor Fund to a Critical Vendor only to the extent that the Debtors deem such payment is necessary to ensure that the particular vendor will provide necessary goods and services to the Debtors on a post-petition basis.

4.      The Debtors are hereby authorized to obtain written verification substantially in the form attached as **Exhibit 1** to this Order before issuing payment to a Critical Vendor that such

Critical Vendor will continue to provide goods and services to the Debtors on Customary Trade Terms for the remaining term of the Critical Vendor's agreement with the Debtor.

5.      The Debtors are hereby authorized to issue post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to Critical Vendors that may be dishonored by any bank.

6.      Nothing herein shall prejudice the Debtors rights to request additional authority to pay Critical Vendor Claims pursuant to this Order.

7.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtor, a waiver of the Debtors' rights to subsequently dispute such claim or the assumption or adoption of any agreement, contract or lease under section 365 of the Bankruptcy Code.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

11.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

12.     The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and shall be served on: (i) the Debtors; (ii) proposed counsel for the Debtors, Thompson Hine LLP, (Attn: Alan Lepene, Esq.), email: *<u>alan.lepene&thompsonhine.com</u>* and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers), email: *desgross@chipmanbrown.com;* (iii) counsel to the administrative agents for the Debtors' prepetition credit facilities, Blank Rome LLP (Attn: Regina Stango Kelbon, Gregory F. Vizza), email: *regina.kelbon@blankrome.com, gregory.vizza@blankrome.com*; (iv) counsel to any statutory committee appointed in these Cases; and (v) the Office of the United States Trustee for the District of Delaware, (Attn: Linda Richenderfer); email: *<u>linda.richenderfer@usdoj.gov</u>.*  If no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without further notice or hearing.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

**EXHIBIT 1**

**Critical Vendor Agreement**

_____ ____, 2023

TO:    [Critical Vendor]
       [Name]
       [Address]

Dear [Critical Vendor]:

On July 22, 2023 (the "Petition Date"), [applicable debtor] (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States District Court for the District of Delaware (the "Bankruptcy Court").

On the Petition Date, the Debtor requested the Bankruptcy Court's authority to pay certain critical suppliers or service providers in recognition of the importance of its relationship with such suppliers and service providers. The Bankruptcy Court entered an order authorizing this relief on _____ ____, 2023, a copy of which is enclosed herewith (the "Order").

In accordance with the Order, the Debtor is prepared to enter into this vendor agreement (this "Agreement") in accordance with the following terms:

1.      The estimated balance of the prepetition claim (net of any setoffs, credits or discounts) that is due and owing is $_____ (the "Claim").

2.      The Debtor hereby agrees to pay $_____ on account of the Claim (the "Claim Payment"), subject to the terms and conditions set forth herein, [it being understood that the remaining amount of your Claim against the Debtor shall be forever released and waived].

3.      In consideration of the Claim Payment, you agree to continue providing and/or supplying goods or services to the Debtor based on acceptable and customary trade terms (the "Customary Trade Terms"), it being understood that the Customary Trade Terms shall be no less favorable than those trade terms provided by each such Critical Vendor to the Debtor before the Petition Date. For purposes of this Agreement, Customary Trade Terms consist of those terms provided [for in the agreement hereto as Exhibit A and/or the following terms and conditions:].

4.      You agree to continue providing and/or supplying goods or services to the Debtor pursuant to the Customary Trade Terms until the Debtor's business is transitioned to a buyer and a novation or similar agreement is completed with the Debtor's and customers relating to the goods and services you supply.

5.      The Claim Payment may only be made upon execution of this Agreement by a duly authorized representative of your company. Your execution of this Agreement and the return of same to the Debtor constitute an agreement by you and the Debtor. You agree to be bound by the terms of this Agreement and you submit to the jurisdiction of the Bankruptcy Court in connection with any enforcement of this Agreement. You further agree and/or represent:

      a.    to the Customary Trade Terms and, subject to the reservations contained above, to the amount of the claim set forth above;

    b.   that, from and after the effective date of this Agreement you will continue to supply the Debtor with goods or services, as applicable, pursuant to the Customary Trade Terms and that the Debtor will pay for such goods in accordance with the Customary Trade Terms;

    c.   that you have reviewed the terms and provisions of the Order and Agreement and that you consent to be bound by such terms and provisions; and

    d.   that you agree to not file or otherwise assert against the Debtor or its assets any lien (regardless of the statute or other legal authority upon which such lien is asserted) or seek payment for reclamation claims in any way related to prepetition amounts allegedly owed to you by the Debtor arising from agreements, written or otherwise, entered into before the Petition Date.

6.    Notwithstanding the foregoing, if you receive the Claim Payment from the Debtor and you do not extend to the Debtor all Customary Trade Terms, or fail to perform in accordance with any of the terms and provisions of this Agreement, you are required to return the Claim Payment to the Debtor and the Debtor may take any of the remedial actions described in the Order.

7.    Any dispute with respect to this Agreement and/or your participation in this payment program shall be determined by the Bankruptcy Court.

8.    All terms of this Agreement (including the existence of this Agreement) are confidential between you and the Debtor.

Sincerely,

_____

By:
Agreed and Accepted By:
[Name of Vendor]

## **EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES<br>GROUP INC., *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 23-10961 (TMH)<br><br>(Jointly Administered)<br><br>**Related Docket No. ___** |

## <u>FINAL ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PREPETITION CLAIMS OF CRITICAL VENDORS PURSUANT TO 11 U.S.C. §§ 363(B), 1107 AND 1108, FED. R. BANKR. P. 6003 AND 6004, AND DEL. BANKR. L.R. 9013-1(M)</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Order</u>") pursuant to sections 105(a) and 363(b), 1107(a) and 1108 of the Bankruptcy Code; Bankruptcy Rules 6003 and 6004(h), and Local Rule 9013-1(m), (a) authorizing, but not directing, the Debtors to pay or honor prepetition Critical Vendor Claims on a final basis up to $6,500,000, all in accordance with the Customary Trade Terms, and (b) authorizing financial institutions to honor all related checks and electronic payment requests, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and venue being proper in this District pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis to the extent provided herein.

2.      The relief provided in the Interim Order, including the Critical Vendor Agreement attached thereto as Exhibit 1, and incorporated therein by reference, is approved on a final basis.

3.      The Debtors are authorized, but not required, to pay or honor prepetition Critical Vendor Claims; provided however, that the Debtors shall only be authorized to pay Critical Vendor Claims up to a maximum aggregate cap of $6,500,000 (the "Final Vendor Fund").

4.      The Debtors shall make a reasonable effort to condition payment to any Critical Vendor upon an agreement by the party in question to provide Customary Trade Terms, including reasonable and customary price, service, quality and payment terms to the Debtors on a post-petition basis. In the event that the Debtors and the Critical Vendor in question are not, despite diligent efforts, able to come to a resolution pursuant to the Customary Trade Terms, the Debtors are authorized, but not directed, in the exercise of its business judgment and after good-faith negotiations, to make full or partial payment from the Final Vendor Fund to a Critical Vendor only to the extent that the Debtors deem such payment is necessary to ensure that the particular vendor will provide necessary goods and services to the Debtors on a post-petition basis.

5.    The Debtors are hereby authorized to obtain written verification substantially in the form attached as Exhibit 1 to the Interim Order before issuing payment to a Critical Vendor that such Critical Vendor will continue to provide goods and services to the Debtors on Customary Trade Terms for the remaining term of the Critical Vendor's agreement with the Debtors.

6.    The Debtors are hereby authorized to issue post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to Critical Vendors that may be dishonored by any bank.

7.    Nothing herein shall prejudice the Debtors' rights to request additional authority to pay Critical Vendor Claims pursuant to this Order.

8.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or the assumption or adoption of any agreement, contract or lease under section 365 of the Bankruptcy Code.

9.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

10.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

11.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

12.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.