**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | ) ) ) | Case No. 23-10961 (TMH) |
| | ) | |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF VICTORIA ARRIGONI OF G2 CAPITAL
ADVISORS IN SUPPORT OF DEBTORS' MOTION SEEKING
<u>POSTPETITION FINANCING</u>**

I, Victoria Arrigoni, declare under penalty of perjury that the following is true and correct:

1. I am the Managing Director, Head of Industrial & Manufacturing ("<u>Managing Director</u>")[2] of G2 Capital Advisors ("<u>G2</u>"), and have served in that role since September 2018. I am over the age of eighteen (18) years and am competent to make this Declaration.

2. Prior to becoming Managing Director, I held several other positions within G2 since joining the company in December 2011, including Principal, Vice President, and Director. I am a graduate of the UC San Diego Jacobs School of Engineering and the Yale School of Management.

3. G2 was initially hired prior to the Petition Date in November 2019 by Williams Industrial Services Group Inc. and its affiliates (collectively, the "<u>Debtors</u>") to provide financial advisory services to the Debtors covering strategic initiatives, cash management, budgeting, forecasting, liquidity enhancement and related services.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] All capitalized but undefined terms shall have the same meanings as defined in the DIP Motion.

4883-2225-7265.4

4.      In my capacity as Managing Director and in connection with this engagement and the foregoing, I became familiar with the Debtors' business, daily operations, and financial condition through the above-described work.

5.       Except as otherwise indicated herein, I have personal knowledge of the matters set forth in this Declaration, and/or all facts described herein are based on discussions with members of the Debtors' senior management and other professional advisors, my review of relevant documents (including without limitation various loan documents and related instruments), and/or my experience and knowledge of the Debtors' business and financial condition.

6.      I am authorized to submit this Declaration on the Debtors' behalf in support of the *Debtors' Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (ii) Granting Liens and Superpriority Administrative Expense Claims; (iii) Authorizing Use of Cash Collateral; (iv) Modifying the Automatic Stay; (v) Scheduling a Final Hearing; and (iv) Granting Related Relief* ("DIP Motion"), and if called to testify I could and would testify competently to the facts set forth herein.

7.      Holdings and certain of its subsidiaries are parties to a Revolving Credit and Security Agreement, dated as of December 16, 2020, as amended, with PNC ("Pre-Petition Revolving Agent"), as agent for the lenders, and the lenders party thereto (the "Pre-Petition Revolving Credit Agreement"). Specifically, Holdings, WISG, WIS, WSS, WPS, Global, CMP, and Electrical are each borrowers, and Power, GPEG, Steam, WISG Canada, Canada Nuclear, and Canada Electrical are each guarantors under the Revolving Credit Agreement (the foregoing borrowers and guarantors being referred to collectively as the "Revolving Loan Credit Parties").

8.      Prior to the commencement of these cases (the "Petition Date"), the borrowers under the Revolving Credit Agreement had access to a revolving line of credit of up to $30 million,

subject to availability determined in accordance with a borrowing base formula, and reserves as were established by PNC. As of the Petition Date, the outstanding amount owed under the Revolving Credit Agreement was approximately $10,400,000, plus a $500,000 letter of credit issued for which the borrowers have a reimbursement obligation to PNC (the "Pre-Petition Revolving Obligations").

9. The obligations owed under the Revolving Credit Agreement are secured by security interests and liens (the "Pre-Petition Revolving Liens"), which are comprised of security interests in substantially all of the Revolving Loan Credit Parties' accounts receivable and contract assets, and a second priority security interest in substantially all other assets of the Revolving Loan Credit Parties. The Revolving Credit Agreement matures on December 16, 2025.

10. Holdings and certain of its subsidiaries are parties to a Term Loan, Guarantee and Security Agreement, dated as of December 16, 2020, as amended (the "Pre-Petition Term Loan Agreement") with EICF Agent LLC, as agent for the lenders (the "Pre-Petition Term Loan Agent"), CION Investment Corporation, as a lender and co lead arranger, and the other lender parties thereto (the "Term Lenders"). Specifically, Holdings, WISG, WIS, WSS, WPS, Global and CMP are each borrowers, and Power, Electrical, GPEG, Steam, WISG Canada, Canada Nuclear, and Canada Electrical are each guarantors under the Term Loan Agreement (the foregoing borrowers and guarantors being referred to collectively as the "Term Loan Credit Parties").

11. The Term Loan Agreement provided for senior secured term loan facilities in an aggregate principal amount of up to $50 Million (collectively, the "Pre-Petition Term Loans"), consisting of a $35 million closing date term loan facility (the "Closing Date Term Loan") and up to $15 million of borrowings under a delayed draw facility (the "Delayed Draw Term Loan Facility"). The obligations owed under the Term Loan Agreement are secured by security interests

3

and liens granted by the Debtors to the Pre-Petition Term Agent (the "Pre-Petition Term Liens," together with the "Pre-Petition Revolving Liens," the "Pre-Petition Liens").

12. Specifically, Debtors granted to the Pre-Petition Term Agent first-priority security interests in substantially all of the Term Loan Credit Parties' assets, other than accounts receivable and inventory, and a second-priority security interest in the Term Loan Credit Parties' accounts receivable and inventory (collectively, the "Permitted Term Liens," each a "Permitted Term Lien"). The Term Loan Agreement matures on December 16, 2025.

13. The Closing Date Term Loan in the amount of $35 million was fully drawn on December 16, 2020. The Delayed Draw Term Loan Facility expired 18 months later without any funds having been drawn thereunder.

14. On February 21, 2023, several of the Term Lenders made protective advances as permitted by the Term Loan Agreement to address urgent working capital needs of the Debtors. Energy Impact Credit Fund I LP advanced $428,571.43. Crowd Out Credit Opportunities Fund LLC advanced $285,714.29. CION Investment Corporation advanced $285,714.29.

15. On February 24, 2023, to address the Debtors' need for additional working capital, the Term Lenders and the Term Loan Credit Parties amended the Term Loan Agreement to provide for delayed draw term loans in the maximum aggregate amount of $1,500,000.00. On that date, Energy Impact Credit Fund I LP advanced $642,857.15. Crowd Out Credit Opportunities Fund LLC advanced $428,571.43. CION Investment Corporation advanced $428,571.43.

16. To address the Debtors' continuing need for working capital, the Term Lenders and the Term Loan Credit Parties executed a further amendment to the Term Loan Agreement, dated as of March 31, 2023, to provide for additional delayed draw term loans in the maximum aggregate amount of $3,500,000. On April 7, 2023, Energy Impact Credit Fund I LP advanced $1,500,000,

4

and Crowd Out Credit Opportunities Fund LLC and CION Investment Corporation each advanced $1,000,000.

17. As of the Petition Date, the outstanding amount owed under the Term Loan Agreement was approximately $32,200,000 (the "Pre-Petition Term Obligations," together with Pre-Petition Revolving Obligations, the "Pre-Petition Obligations").

18. The Pre-Petition Revolving Agent and Pre-Petition Term Agent are party to that certain Intercreditor Agreement, dated as of December 16, 2020 (as amended, or otherwise modified, the "Intercreditor Agreement"), which has been acknowledged and agreed to by Pre-Petition Borrowers and Pre-Petition Guarantors. The Intercreditor Agreement governs, among other things, the relative priority of the respective Liens on the Collateral granted to holders of Obligations (each as defined in the Intercreditor Agreement).

19. The Debtors have no unencumbered assets.

20. In the DIP Motion, the Debtors seek authority (i) for the Debtors to obtain a post-petition term loan facility in the amount of $19,500,000, comprised of (a) $14,000,000 to be advanced upon entry of an Interim Order, (b) $2,750,000 to be advanced one (1) business day after entry of a Final Order, and (c) $2,750,000 to be advanced one (1) week after entry of a Final Order; and (ii) for the Debtors to obtain a post-petition revolving credit facility in an amount up to the lesser of the (a) Borrowing Base (as defined in the DIP Revolving Credit Agreement) and (b) $12,000,000.

21. The Debtors have commenced these cases for the purpose of pursuing a sale of substantially all of the assets of their businesses pursuant to section 363 of the Bankruptcy Code in order to provide the greatest possible recovery for their creditors and preserve jobs for a substantial number of their employees. Immediate access to incremental liquidity in the form of

postpetition financing (as well as access to Cash Collateral) is vital to preserving the value of the Debtors' estates and to maximizing the likelihood of a successful sale process. The Debtors will suffer immediate and irreparable harm absent access to additional liquidity.

22. In anticipation that a sale process under section 363 of the Bankruptcy Code might be necessary, in March 2023 G2 solicited, on a no-names basis, indications of interest in providing DIP financing from three potential third-party lenders who specialize in providing financing in distressed situations, including DIP financing.  After considering the facts and circumstances facing the Debtors, including the prospect of having to obtain priming liens senior to the existing secured lenders, none of these parties expressed any interest in considering possible DIP Financing.  G2 reconfirmed their position within the least two weeks.

23. The provisions of the proposed DIP financing were negotiated at arm's-length and in good faith, and the proposed DIP Facilities provide the best terms presently available to the Debtors.  The interest rates and fees proposed to be charged are well within the range, and in fact at the lower end of the range, for loans of this type.

24. Access to the DIP Facilities will allow the Debtors to continue operations while in chapter 11, including paying its existing employees, vendors, subcontractors, and satisfying other working capital and operational requirements and enable the Debtors to pursue the sale process for the benefit of the Debtors' estate and all of its stakeholders.

Dated:   July 21, 2023                                           /s/ Victoria Arrigoni
                                                                 Name: Victoria Arrigoni
                                                                 Title: Managing Director, Head of
                                                                 Industrial & Manufacturing
                                                                 G2 Capital Advisors