**<u>EXHIBIT C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WILLIAMS INDUSTRIAL SERVICES GROUP, INC., *et al.*,[1] | ) | Case No. ~~23-~~ 23-10961 |
|  | ) | (~~—~~ BLS) |
|  | ) |  |
|  | ) | (Joint Administration Requested) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**ORDER (I) AUTHORIZING THE DEBTORS, FOR THE INTERIM PERIOD, TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO POST-PETITION LENDERS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 AND 507, AND (VI) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2**

Upon the motion ("**DIP Motion**") of Williams Industrial Services Group, Inc. ("**Holdings**"), Williams Industrial Services Group, L.L.C., ("**WISG**"), Williams Industrial Services, LLC, a Georgia limited liability company ("**WISI**"), Williams Specialty Services, LLC, a Georgia limited liability company ("**WSS**"), Williams Plant Services, LLC, a Georgia limited liability company ("**WPS**"), Williams Global Services, Inc., a Georgia corporation ("**Global**"), Construction & Maintenance Professionals, LLC, a Georgia

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

(1)    *Pre-Petition Revolving Financing Documents*.    Prior to the commencement of the Chapter 11 Cases, the Pre-Petition Revolving Secured Parties made loans and advances, and provided other financial accommodations, pursuant to the Pre-Petition Revolving Financing Documents to the Pre-Petition Borrowers.    The Pre-Petition Guarantors guaranteed the Pre-Petition Revolving Obligations (as defined herein) of the Pre-Petition Borrowers under the Pre-Petition Revolving Credit Agreement.    The Pre-Petition Revolving Obligations (as defined herein) were automatically accelerated on the Petition Date as a result of the commencement of the Chapter 11 Cases in accordance with the terms of the Pre-Petition Revolving Financing Documents, and all commitments of the Pre-Petition Revolving Secured Parties are terminated.

(2)    *Pre-Petition Revolving Obligations*.

(a)    *Pre-Petition Revolving Credit Loan Obligations*.    As of the Petition Date, the Pre-Petition Borrowers and the Pre-Petition Guarantors were justly and lawfully indebted and liable to the Pre-Petition Revolving Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $10,891,003.32, including, without limitation, (i) $10,391,003.32 in outstanding principal amount of Pre-Petition Revolving Loans, (ii) outstanding letters of credit in the aggregate amount of $500,000, and (iii) all accrued and accruing charges and Cash Management Products and Services in respect of Cash Management Obligations (each as defined in the Pre-Petition Revolving Credit Agreement) (collectively, together with accrued and unpaid interest, any fees (including $900,000 of accrued and unpaid fees that were due and payable on the Petition Date[5]),

---

[5] Pre-Petition Revolving Secured Parties have agreed to defer these fees due and owing to Pre-Petition Revolving Secured Parties under the Pre-Petition Revolving Financing Documents as of the Petition Date, which fees shall be included as part of the Final ABL Roll-Up and shall be payable upon the Termination Date (as defined in the DIP Revolving Credit Agreement).

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

(c)    The Debtors do not possess and will not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability and non-avoidability of any of the Pre-Petition Term Liens or the Pre-Petition Term Agent's liens, claims or security interests in the Pre-Petition Collateral, which liens and security interests are not subject to subordination (other than as set forth in the Intercreditor Agreement) or avoidance pursuant to the Bankruptcy Code or any other applicable law.

(7)    *Intercreditor Agreement*. The Pre-Petition Revolving Agent and Pre-Petition Term Agent are party to that certain ABL Intercreditor Agreement, dated as of July 18, 2018 (as amended (included in connection with the DIP Facilities), restated, amended and restated, supplemented, or otherwise modified, the "**Intercreditor Agreement**"), which is acknowledged and agreed to by Pre-Petition Borrowers and Pre-Petition Guarantors. The Intercreditor Agreement governs, among other things, the relative priority of the respective Liens on the Collateral granted to holders of Obligations (each as defined in the Intercreditor Agreement) and is acknowledged to be a "subordination agreement" within the meaning of Bankruptcy Code section 510(a), as set forth therein. The Intercreditor Agreement is binding, valid, and enforceable in accordance with its terms, and the parties thereto are bound thereby.

(8)    *No Control*.  None of the Pre-Petition Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Pre-Petition Financing Documents.

H.    <u>Adequate Protection</u>.

validity, enforceability, perfection, extent, or priority of any alleged Senior Lien (or any other alleged liens or security interests, excepting only the Pre-Petition Liens, a challenge to which is subject only to Section VIII below).

~~I.~~    No Control.  ~~None of the Pre-Petition Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Pre-Petition Financing Documents.~~

~~K~~J.    Findings Regarding the DIP Facilities and Use of Revolving Credit Cash Collateral.

(1)    *Request for DIP Financing*.  The Debtors have requested that the DIP Agents and the DIP Lenders extend loans, advances, and other financial accommodations and the DIP Agents and the DIP Lenders are only willing to do so as more particularly described, and subject to the terms and conditions set forth, in this Interim Order and the DIP Financing Documents.

(2)    *Need for DIP Financing*.  As set forth in the DIP Declaration and the First Day Declaration, the Debtors do not have sufficient available sources of working capital to fund the orderly sale(s) and liquidation of the Debtors' businesses in the ordinary course without the DIP Facilities and the ability to use Revolving Credit Cash Collateral, or to fund these Chapter 11 Cases without the DIP Facilities, all on the terms set forth in the DIP Financing Documents and this Interim Order.  The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and to otherwise fund their operations is essential to the viability of the Debtors and the Chapter 11 Cases. The ability of the Debtors to

~~4860-5063-8705.5~~
~~074658.23049/132191951v.7~~074658.23049/132191951v.8

Financing Documents, is in the best interests of the Debtors' Estates and is consistent with the Debtors' exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the DIP Motion, and the record before this Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**I.      Authorization and Terms of Financing.**

1.      <u>DIP Motion Granted</u>.  The interim relief sought in the DIP Motion is granted, the interim financing described herein is authorized and approved, and the use of Revolving Credit Cash Collateral during the Interim Period is authorized, in each case subject to the terms and conditions set forth in the DIP Financing Documents, the Approved Budget and this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry. The rights of all parties in interest to object to the entry of the Final Order are reserved.

2.      <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  To prevent immediate and irreparable harm to the Debtors' Estates, the Debtors are hereby expressly authorized and empowered to immediately borrow, or guaranty, as applicable, and obtain, on a joint and several basis, DIP Revolving Loans under the DIP Revolving Facility (including all Letters of Credit (which term shall include letters of credit issued under the Pre-Petition Loan Documents and which letters of credit shall be deemed to have been issued under the DIP Revolving Financing Documents immediately upon entry of this Interim Order)) and DIP Term Loans under the DIP Term Facility, and the Debtors (on a joint and several basis) are hereby

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

authorized and empowered to incur all other indebtedness and obligations owing to the DIP Agents and the DIP Lenders (including, without limitation, ~~Designated~~ Cash Management ~~Services~~ Obligations (as defined in the DIP Revolving Credit Agreement)) on the terms and subject to the conditions and limitations set forth in the DIP Financing Documents and this Interim Order, during the Interim Period up to the maximum aggregate amount of $8,400,000 with respect to the DIP Revolving Facility, and $14 million with respect to the DIP Term Facility, subject, as applicable, to the Approved Budget (with any variances permitted thereto under the terms and conditions of the DIP Credit Agreements) and from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined in the DIP Credit Agreements). For the avoidance of doubt, notwithstanding anything else provided for in this Interim Order, all reimbursement obligations and fees with respect to ~~Designated~~ Cash Management ~~Services~~ Obligations (as defined in the DIP Revolving Credit Agreement) accruing after the Petition Date as well as Letters of Credit that, immediately upon entry of this Interim Order, shall be deemed to have been issued under the DIP Revolving Financing Documents, shall constitute DIP Revolving Obligations.

3.    <u>Financing Documents</u>.

(a)    *Authorization*.    The Debtors are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Financing Documents.  The Debtors are hereby authorized to borrow money pursuant to the DIP Credit Agreements, which shall be used for all limited purposes permitted hereunder and under the DIP Financing Documents (and subject to and in accordance with the Approved Budget).  Upon entry of this Interim Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered, and the automatic stay imposed by

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

*provided*, *however*, that any material modification or amendment to the DIP Financing Documents that is materially adverse to the interests of the Debtors or their Estates (or to the interest of any of the DIP Secured Parties or the Pre-Petition Secured Parties) shall be subject to providing notice of such material modification or amendment to counsel to any Creditors' Committee, the U.S. Trustee, the Pre-Petition Revolving Agent and DIP Revolving Agent (if such material modification is to the DIP Term Credit Agreement), and the Pre-Petition Term Agent and DIP Term Agent (if such material modification is to the DIP Revolving Credit Agreement), each of which shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment unless the Creditors' Committee, U.S. Trustee, the Pre-Petition Revolving Agent, DIP Revolving Agent, the Pre-Petition Term Agent, and/or the DIP Term Agent, as applicable, agrees in writing to a shorter period.  If no timely objection is raised by any Creditors' Committee, the U.S. Trustee, the Pre-Petition Revolving Agent, the Pre-Petition Term Agent or a DIP Agent (not a party thereto) to any material modification or amendment to the DIP Financing Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period pursuant to an Order of the Court to be submitted under certification of counsel.  If a timely objection is interposed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

(d)     *Application of DIP Facility Proceeds*.  The advances under the DIP Facilities and Revolving Credit Cash Collateral shall be used in each case solely in a manner consistent with the terms and conditions of the DIP Financing Documents and this Interim Order, including, solely with respect to proceeds of the DIP Term Facility, the Permitted DIP Term Uses, and in accordance with and as may be limited by the Approved Budget (subject to any

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

of the Debtors or their Estates or the use of any Revolving Credit Cash Collateral or other proceeds resulting therefrom.[6]

## IV.    Adequate Protection for Pre-Petition Secured Parties.

13.    <u>Pre-Petition Revolving Credit Adequate Protection</u>.  Subject to the Lien Priority Chart, the Claim Priority Chart and the Intercreditor Agreement, as adequate protection for the interests of the Pre-Petition Revolving Agent in the Pre-Petition Collateral, for the benefit of the Pre-Petition Revolving Credit Lenders, on account of the Adequate Protection Obligations, the Pre-Petition Revolving Agent is being provided with adequate protection as set forth below.

(a)    *Revolving Credit Adequate Protection Liens*.  Solely to the extent of any Diminution in Value of such interests pursuant to Bankruptcy Code section 361 and 363(c), and subject to the priority set forth in the Lien Priority Chart, the Debtors shall grant the Pre-Petition Revolving Agent, for itself and for the benefit of the Pre-Petition Revolving Credit Lenders, valid and perfected replacement security interests in, and liens on (the "**Revolving Credit Adequate Protection Liens**"), the DIP Collateral.

(i)    The Revolving Credit Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully-perfected as of the Petition Date and, subject to Section VIII below, not subject to subordination (except as set forth in the Intercreditor Agreement and the Lien Priority Chart) or avoidance for any cause or purpose in these Chapter 11 Cases.

(ii)    The Revolving Credit Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases

---

[6] NTD—Confirm whether there is any Term Loan Priority Collateral being sold and proceeds being used.

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

assists the Debtors during the Chapter 11 Cases, which fees are being paid pursuant to that certain engagement letter dated December 21, 2022, as amended, between certain of the Debtors and Greenhill & Co. LLC (the "**Engagement Letter**"); *provided* that Greenhill & Co. LLC has agreed that, upon the closing of the sale of substantially all of the assets of the Debtors, the fee to be paid to Greenhill pursuant to clause (a) above shall be reduced, in accordance with the terms of the Engagement Letter, by an amount equal to 50% of the aggregate Greenhill Monthly Fee paid to Greenhill & Co. LLC for its assistance to the Debtors during the Chapter 11 Cases; *provided further*, that nothing in this Interim Order authorizes the Debtors' retention of Greenhill. Notwithstanding the foregoing, the Carve Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date (as defined in the DIP Credit Agreements).

(c)     Subject to the terms of this Interim Order, the Carve Out Cap shall be allocated on a Professional-by-Professional basis based on the amounts budgeted to be funded in advance for each Professional pursuant to the Approved Budget.

(d)     For the avoidance of doubt, (i) so long as a Carve Out Trigger Notice has not been issued, the Debtors shall be permitted to pay Allowed Professional Fees as the same may be due and payable in accordance with the DIP Term Credit Agreement and this Interim Order; and (ii) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

16.     Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve Out, nor the proceeds of the DIP Facilities or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim,

ordered by the Court, the Pre-Petition Agents, on behalf of the Pre-Petition Secured Parties, and DIP Agents, on behalf of the DIP Secured Parties, as applicable, shall be automatically and completely relieved from the effect of any stay under Bankruptcy Code section 362, any other restriction on the enforcement of their liens (subject to the Intercreditor Agreement) upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Financing Documents, the Pre-Petition Revolving Financing Documents, the Pre-Petition Term Financing Documents (as applicable), or this Interim Order, subject to the Intercreditor Agreement, the Lien Priority Chart, and the Claim Priority Chart.

22.    <u>Waiver Agreements</u>.  Subject to entry of a Final Order, all rights, options, and remedies granted to the Pre-Petition Agents or DIP Agents in either or both of any landlord or warehouseman's waiver and/or consent executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreements, as applicable, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable, and applicable to and binding upon the landlords and other parties to such waiver or consent agreements with respect to the Pre-Petition Collateral and DIP Collateral.

**VIII.  Challenges to Pre-Petition Obligations.**

23.    The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations included in Paragraph G, which stipulations and admissions are and shall be binding upon the Debtors. Upon the ~~earliest to occur of (i) the effective date of any plan, (ii) two days prior to closing of any asset sale of all or substantially all of the Debtors' assets pursuant to Bankruptcy Code section 363, and (iii) the~~ date that is seventy-five (75) days from entry of this

61

Interim Order (~~as applicable for clauses (i) through (iii), the "~~the "**Initial Challenge Period**"),
the stipulations and admissions contained in this Interim Order, including without limitation, the
Debtors' Stipulations, shall also be binding upon the Debtors' Estates and all other parties in
interest, including the Creditors' Committee and any other person or entity acting or seeking to
act on behalf of the Debtors' Estates, and any chapter 7 or chapter 11 trustee appointed or elected
for any of the Debtors (a "**Trustee**") for all purposes, unless (a) during the Initial Challenge
Period the Creditors' Committee or any other party interest, in each case with request standing,
has properly and timely filed an adversary proceeding as required under the Bankruptcy Rules (x)
challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Obligations,
the liens of the Pre-Petition Agents on the Pre-Petition Collateral securing the Pre-Petition
Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action,
objections, contests, or defenses against the Pre-Petition Agents and/or any other Pre-Petition
Secured Party on behalf of the Debtors' Estates ((x) and (y), collectively, referred to herein as
"**Challenges**") in connection with the matters related to the Pre-Petition Financing Documents,
the Pre-Petition Obligations, the Pre-Petition Liens, or the Pre-Petition Collateral, and (b) there is
a final non-appealable order in favor of the plaintiff sustaining any such Challenge or claim in
any such timely filed adversary proceeding; *provided*, *however*, that, as to the Debtors, all such
Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date.  If
during the Initial Challenge Period, the Creditors' Committee or other third party files a motion
for standing with a draft complaint identifying and describing all Challenge(s) consistent with
applicable law and rules of procedure, the Initial Challenge Period will be tolled for the
Creditors' Committee or other third party solely with respect to the Challenge(s) asserted in the
draft complaint until three (3) business days from the entry of an Order granting the motion for

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8

the terms and provisions of this Interim Order, then in each case the terms and provisions of this Interim Order shall govern.

35.    <u>Calculation of Dates</u>.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

37.    Nothing herein shall be deemed to alter, limit, modify, waive and/or release any rights, claims and/or interests (if any) of any of the Debtors' sureties, including, without limitation, subrogation and/or trust rights (if any), in and to any proceeds of any contracts bonded by the Debtors' sureties, it being expressly acknowledged that all such rights are reserved and preserved.

**XI.    Final Hearing and Response Dates.**

37.    The Final Hearing on the DIP Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for **_____ \_\_, 2023 at \_\_:\_\_ \_.m. (prevailing Eastern Time)** before this Court. The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to a Creditors' Committee, if appointed, through its counsel, if the same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114-1291 (Attn: Alan R. Lepene (alan.lepene@thompsonhine.com), Scott B. Lepene (scott.lepene@thompsonhine.com), and Sean A. Gordon (sean.gordon@thompsonhine.com)), and Chipman Brown Cicero & Cole, LLP,

4860-5063-8705.5
074658.23049/132191951v.7074658.23049/132191951v.8