## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP, INC., *et al.*,[1] | Case No. 23-10961 (BLS) |
|  | (Jointly Administered) |
| Debtors. | **Related Docket Nos. 13 and 75** |

---

**AMENDED ORDER (I) AUTHORIZING THE DEBTORS, FOR THE INTERIM PERIOD, TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO POST-PETITION LENDERS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 AND 507, AND (VI) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2**

---

Upon the motion ("**DIP Motion**") of Williams Industrial Services Group, Inc. ("**Holdings**"), Williams Industrial Services Group, L.L.C., ("**WISG**"), Williams Industrial Services, LLC, a Georgia limited liability company ("**WISI**"), Williams Specialty Services, LLC, a Georgia limited liability company ("**WSS**"), Williams Plant Services, LLC, a Georgia limited liability company ("**WPS**"), Williams Global Services, Inc., a Georgia corporation ("**Global**"), Construction & Maintenance Professionals, LLC, a Georgia limited liability company

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

("**Construction**") (each of Holdings, WISG, WISI, WSS, WPS, Global, and Construction, individually referred to as "**Borrower**" and collectively as "**Borrowers**"), and Global Power Professional Services Inc. a Delaware corporation ("**Power**"), GPEG, LLC, a Delaware limited liability company ("**GPEG**"), Steam Enterprises LLC, a Delaware limited liability company ("**Steam**"), WISG Canada Ltd., a limited company formed in the province of British Columbia, Canada ("**WISG Canada**"), WISG Nuclear Ltd., a limited company formed in the province of British Columbia, Canada ("**WISG Nuclear**"), WISG Electrical Ltd., a limited company formed in the province of British Columbia, Canada ("**WISG Electrical**"), WISG Electrical, LLC, a New York limited liability company ("**WISG Electrical NY**", and together with Power, GPEG, Steam, WISG Canada, WISG Nuclear, and WISG Electrical, each a "**Guarantor**" and, collectively, "**Guarantors**"), each of the foregoing is a debtor and debtor-in-possession (collectively the "**Debtors**," and each, a "**Debtor**") in the above-captioned chapter 11 cases (collectively, "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "**Bankruptcy Local Rules**") for the United States Bankruptcy Court for the District of Delaware (this "**Court**") seeking entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**"; together with the Interim Order, the "**DIP Orders**") granting the following relief to be provided herein until the date that a Final Order has been entered (such interim period being the "**Interim Period**") among other things:

1.    authorization and approval for the Debtors to obtain up to the lesser of the (a) the Borrowing Base (as defined in the DIP Revolving Credit Agreement) and (b) $12 million in

principal of post-petition revolving credit debtor-in-possession financing and other financial accommodations (the "**DIP Revolving Facility**"), but only up to $8,400,000 during the Interim Period, and the revolving loans made under such facility, the "**DIP Revolving Loans**"), pursuant to and in accordance with the terms and conditions set forth in that certain *Super-priority Senior Secured Debtor-In-Possession Revolving Credit and Security Agreement* (as it may be amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Revolving Credit Agreement**") substantially in the form attached hereto as <u>Exhibit 4</u>, by and among the Debtors, as borrowers and/or guarantors, PNC Bank, National Association, in its capacity as administrative agent (in such capacity, the "**DIP Revolving Agent**") and the financial institutions from time to time party thereto, as lenders, (collectively, including any financial institution that has issued letters of credit on behalf of any Debtor in connection with the DIP Revolving Facility, the "**DIP Revolving Lenders**" and together with the DIP Agent, the "**DIP Revolving Secured Parties**");

2.    authorization and approval for the Debtors to obtain up to $19.5 million in principal amount of postpetition term loan debtor-in-possession financing and other financial accommodations (the "**DIP Term Facility**" and the term loans made under such facility, the "**DIP Term Loans**"; the DIP Term Facility together with the DIP Revolving Facility, the "**DIP Facilities**"; and the DIP Revolving Loans together with the DIP Term Loans, the "**DIP Loans**"), but only up to $14 million during the Interim Period pursuant to and in accordance with the terms and conditions set forth in that certain *SuperPriority Senior Secured Debtor-In-Possession Term Loan, Guaranty and Security Agreement*, among Holdings, Borrower, Guarantors, the lenders party thereto, and EICF Agent LLC (as it may be amended, supplemented, extended, restated or replaced from time to time, the "**DIP Term Credit Agreement**" together with the DIP Revolving Credit Agreement, collectively, the "**DIP Credit Agreements**"), substantially in the form attached hereto as <u>Exhibit 5</u>, by and among the Debtors, as borrowers or guarantors, EICF Agent LLC, in its capacity as administrative agent (in such capacity, the "**DIP Term Agent**"; together with the DIP Revolving Agent, the "**DIP Agents**") and the financial institutions from time to time party thereto, as lenders, (collectively, the "**DIP Term Lenders**" and together with the DIP Term Agent, the "**DIP Term Secured Parties**"; the DIP Revolving Lenders and the DIP Term Lenders are collectively referred to as the "**DIP Lenders**"), and the DIP Revolving Secured Parties and the DIP Term Secured Parties are collectively referred to as the "**DIP Secured Parties**"), with the proceeds of the DIP Term Loans being deposited into a deposit account at a financial institution acceptable to the DIP Term Agent (the "**DIP Term Proceeds Account**");

3.    authorization for the Debtors to use the proceeds of the DIP Revolving Facility, DIP Collateral and Pre-Petition Collateral (each as defined herein), in each case constituting the proceeds of Revolving Loan Priority Collateral (as defined in the Intercreditor Agreement (as defined herein)) (the "**Revolving Credit Cash Collateral**"), in accordance with the terms of the DIP Orders and the DIP Revolving Financing Documents (as defined herein), and as limited by the Approved Budget (as defined herein), for, *inter alia*:  (a) general operating, corporate, and working capital purposes of the Debtors in the ordinary course of business; (b) reasonable and documented costs, fees, and other expenses of DIP Revolving Secured Parties; (c) to make Revolving Credit Adequate Protection Payments (as defined herein); (d) following entry of the Interim Order, applying Revolving Credit Cash Collateral collected during the Interim Period to the Pre-Petition Revolving-Obligations (as defined herein) ("**Interim ABL Roll-Up**") and the DIP Revolving Obligations outstanding in accordance with the terms of the DIP Revolving Financing

Documents and this Interim Order, in such order and manner determined by the DIP Revolving Agent in its sole and absolute discretion; and (e) upon entry of the Final Order, exchanging and substituting in the DIP Revolving Agent's sole discretion the remaining amount of Revolving Advances (as defined in the Pre-Petition Credit Agreement; referred to herein as the "**Pre-Petition Revolving Loans**") on a cashless, dollar-for-dollar into DIP Revolving Loans (as defined herein) outstanding under the DIP Revolving Facility (the "**Final ABL Roll-Up**"); *provided*, that, no proceeds of DIP Revolving Loans or Revolving Loan Priority Collateral, including Revolving Credit Cash Collateral, shall be used to (x) make any payments on account of the DIP Term Facility or the Pre-Petition Term Obligations, including any adequate protection payable to the Pre-Petition Term Secured Parties, or (y) pay the fees, costs, and expenses of any party involved in these Chapter 11 Cases other than the fees, costs, and expenses of the Pre-Petition Revolving Secured Parties and the DIP Revolving Secured Parties including, without limitation, Revolving Credit Adequate Protection Obligations;

4. authorization for the Debtors to use the proceeds of the DIP Term Facility in accordance with the terms of the DIP Orders and the DIP Term Financing Documents (as defined herein), and as limited by the Approved Budget, for, *inter alia*:  (a) general operating, corporate, and working capital purposes of the Debtors in the ordinary course of business; (b) the costs and expenses of administering the Chapter 11 Cases, including funding the Carve Out and the Carve Out Reserve Account; (c) to make Term Loan Adequate Protection Payments (as defined herein) and (e) to make any other payments expressly authorized by this Interim Order, the Approved Budget, and the DIP Term Credit Agreement to be paid from the proceeds of the DIP Term Facility, including fees and expenses payable to or on behalf of the DIP Term Secured Parties under the DIP Term Facility, Allowed Professional Fees (as defined herein) and to fund the Carve Out (as defined herein) on the terms described herein (collectively, the "**Permitted DIP Term Uses**"); *provided* that no proceeds of the DIP Term Loans or Term Loan Priority Collateral (as defined in the Intercreditor Agreement) shall be used to make any payments on account of the DIP Revolving Facility or the Pre-Petition Revolving Obligations, including any adequate protection payable to the Pre-Petition Revolving Secured Parties;

5. approval of, authorization and direction for Debtors to (a) enter into, execute and perform under (i) the DIP Revolving Credit Agreement and (ii) all security agreements, pledge agreements, notes, guarantees, mortgages, deeds of trust, control agreements, Uniform Commercial Code financing statements, certificates, reports and other agreements, documents and instruments either or both executed and/or delivered with or to the DIP Revolving Agent and/or the DIP Revolving Lenders in connection with or related thereto (collectively, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Revolving Financing Documents**"), (b) enter into, execute and perform under (i) the DIP Term Credit Agreement and (ii) all security agreements, pledge agreements, notes, guarantees, mortgages, deeds of trust, control agreements, Uniform Commercial Code financing statements, certificates, reports and other agreements, documents and instruments either or both executed and/or delivered with or to the DIP Term Agent and/or the DIP Term Lenders in connection with or related thereto (collectively, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Term Financing Documents**"; together with the DIP Revolving Financing Documents, the Intercreditor Agreement (as defined herein) and any amendment to the Intercreditor Agreement entered into in connection with the DIP Facilities, collectively, the "**DIP Financing Documents**"), and (c) take and perform all other acts and steps as may be required or

contemplated by or in connection with the DIP Financing Documents and the DIP Orders;

6.      granting to (a) the DIP Revolving Agent, for itself and on behalf of the DIP Revolving Lenders, priming, valid, perfected and enforceable liens (as defined in Bankruptcy Code section 101 (37)) in and upon all of the DIP Collateral, in accordance with the priorities described in the Lien Priority Chart, to secure all existing and future obligations and liabilities of every kind or nature (including without limitation, principal of, and accrued interest on, amounts advanced to the Debtors under the DIP Revolving Facility, bank products, reimbursement obligations, and fees in respect of letters of credit, which letters of credit, immediately upon entry of this Interim Order, shall be deemed issued under the DIP Revolving Credit Agreement), and all other fees, and indemnity obligations, reimbursement obligations, any other Obligations (as defined in the DIP Revolving Credit Agreement) under or in connection with the DIP Revolving Financing Documents, whether due or to become due, absolute or contingent, (collectively, the "**DIP Revolving Obligations**") as provided by and more fully defined in, the DIP Revolving Financing Documents, and (b) the DIP Term Agent, for itself and on behalf of the DIP Term Lenders, priming, valid, perfected and enforceable liens (as defined in Bankruptcy Code section 101 (37)) in and upon all of the DIP Collateral, subject the priorities described in the Lien Priority Chart, to secure all existing and future obligations and liabilities of every kind or nature (including without limitation, principal of, and accrued interest on, amounts advanced to the Debtors under the DIP Term Facility), and all other fees, and indemnity obligations, reimbursement obligations, any other Obligations (as defined in the DIP Term Credit Agreement) under or in connection with the DIP Term Financing Documents, whether due or to become due, absolute or contingent, (collectively, the "**DIP Term Obligations**"; together with the DIP Revolving Obligations, collectively, the "**DIP Obligations**"), as provided by and more fully defined in, the DIP Term Financing Documents;

7.      granting to the DIP Secured Parties allowed superpriority administrative expense claim status for the DIP Obligations, pursuant to Bankruptcy Code section 364(c)(1) and 507(b), subject to the priorities described in the Claim Priority Chart (as defined herein) and the terms of the DIP Orders;

8.      authorizing the Debtors' use, in accordance with the terms of the DIP Financing Documents and as limited by the Approved Budget, of all Revolving Credit Cash Collateral (as defined herein), DIP Revolving Loans and DIP Term Loans;

9.      granting adequate protection, including without limitation, Adequate Protection Liens, Adequate Protection Claims, and Adequate Protection Payments (each as defined herein and collectively, the "**Adequate Protection Obligations**") to (a) PNC Bank, National Association, in its capacity as administrative agent (in such capacity, the "**Pre-Petition Revolving Agent**") under that certain Credit Agreement dated as of July 18, 2018 (as amended, restated, amended and restated, modified, supplemented, or extended from time to time, the "**Pre-Petition Revolving Credit Agreement**") by and among the Borrowers ("**Pre-Petition Borrowers**"), the Guarantors ("**Pre-Petition Guarantors**") from time to time party thereto, the financial institutions party thereto from time to time comprising Lenders (as defined in the Pre-Petition Revolving Credit Agreement) holding a Revolving Commitment (as defined in the Pre-Petition Revolving Credit Agreement) (collectively, the "**Pre-Petition Revolving Credit Lenders**", and together with the Pre-Petition Revolving Agent, sometimes collectively referred to as the "**Pre-Petition Revolving Secured Parties**"), and all security agreements, pledge agreements, notes, mortgages, guarantees,

control agreements, collateral access agreements, and related agreements and documents (collectively, with the Pre-Petition Revolving Credit Agreement, as amended, modified, supplemented, extended, restated, amended and restated, or replaced from time to time, the "**Pre-Petition Revolving Financing Documents**"), (b) the Pre-Petition Revolving Credit Lenders, and (c) EICF Agent LLC (in such capacity, "**Pre-Petition Term Agent**"; together with the Pre-Petition Revolving Agent, collectively, the "**Pre-Petition Agents**"), under that certain Term Credit and Guaranty Agreement dated as of July 18, 2018 (as amended, restated, amended and restated, modified, supplemented, or extended from time to time, the "**Pre-Petition Term Credit Agreement**"; together with the Pre-Petition Revolving Credit Agreement, collectively, the "**Pre-Petition Credit Agreements**") by and among the Pre-Petition Borrowers, the Pre-Petition Guarantors from time to time party thereto, the financial institutions party thereto from time to time (collectively, the "**Pre-Petition Term Lenders**", and together with the Pre-Petition Term Agent, sometimes collectively referred to as the "**Pre-Petition Term Secured Parties**"; Pre-Petition Revolving Secured Parties and the Pre-Petition Term Secured Parties together, the "**Pre-Petition Secured Parties**"), and all security agreements, pledge agreements, notes, mortgages, guarantees, control agreements, collateral access agreements, and related agreements and documents (collectively, with the Pre-Petition Term Credit Agreement, as amended, modified, supplemented, extended, restated, amended and restated, or replaced from time to time, the "**Pre-Petition Term Financing Documents**"; together with the Pre-Petition Revolving Financing Documents, the "**Pre-Petition Financing Documents**"), and (d) the Pre-Petition Term Lenders, all such adequate protection with the priority set forth in the Claim Priority Chart and the Lien Priority Chart (each as defined herein) and otherwise in accordance with the terms set forth in this Interim Order, with respect to any Diminution in Value (as defined herein) with respect to their respective interests in the Pre-Petition Collateral (as defined herein), including all "cash collateral" as such term is defined in Bankruptcy Code section 363(a), including, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all Pre-Petition Collateral and DIP Collateral, all in accordance with the terms set forth herein;

10.    approving the application of collections and proceeds of all of the Revolving Loan Priority Collateral and DIP Collateral and the payment of certain Pre-Petition Revolving Obligations and DIP Revolving Obligations, in each case, in the manner and on the terms set forth in the DIP Revolving Credit Agreement and the DIP Orders;

11.    subject to entry of a Final Order, the waiver of: (a) the ability of the Debtors and their bankruptcy estates (as defined under Bankruptcy Code section 541, the "**Estates**") to surcharge against the DIP Collateral with respect to the DIP Secured Parties and the Pre-Petition Collateral with respect to the Pre-Petition Secured Parties pursuant to Bankruptcy Code section 506(c); (b) the applicability of the "equities of the case" exception under Bankruptcy Code section 552(b) with respect to the proceeds, products, offspring or profits of the DIP Collateral and Pre-Petition Collateral;

12.    subject to entry of a Final Order, the waiver of the equitable doctrine of "marshaling" and any similar equitable doctrine with respect to (a) any of the DIP Collateral (as defined herein) for the benefit of any party other than the DIP Secured Parties, and (b) any of the Pre-Petition Collateral (as defined herein), including Revolving Credit Cash Collateral, for the benefit of any party other than the Pre-Petition Secured Parties;

13.     modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rule 4001(a)(3);

14.     waiving the 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order; and

15.     scheduling a final hearing on the DIP Motion ("**Final Hearing**") for entry of a Final Order authorizing the DIP Facilities and the use of Revolving Credit Cash Collateral as contemplated hereby on a final basis and granting such other relief as is requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

Notice of the DIP Motion, the relief requested therein during the Interim Period, and the Interim Hearing (as defined herein) ("**Notice**") having been served by the Debtors in accordance with Bankruptcy Rule 4001(c) on: (i) the United States Trustee for the District of Delaware ("**U.S. Trustee**"); (ii) the holders of the twenty (20) largest unsecured claims against the Debtors' estates; (iii) counsel to the ad hoc group of DIP Term Lenders and Pre-Petition Term Lenders (the "**Ad Hoc Group**"); (iv) the Pre-Petition Revolving Agent and counsel thereto; (v) the Pre-Petition Term Agent and counsel thereto; (vi) the proposed DIP Term Lenders and counsel thereto; (vii) the proposed DIP Revolving Agent and counsel thereto; (viii) the proposed DIP Term Agent and counsel thereto; (ix) the Internal Revenue Service; (x) the Securities and Exchange Commission; (xi) other governmental agencies having a regulatory or statutory interest in these cases; (xii) all parties known to the Debtors that hold any liens or security interests in the Debtors' assets, including those parties that have filed UCC-1 financing statements against the Debtors, or that, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (xiii) all landlords and warehouseman of the Debtors; (xiv) all creditors known to the Debtors to be holding a judgment against the Debtors; (xv) any other parties claiming an interest in the Pre-Petition Collateral (defined below); and (xvi) any party that has requested notice pursuant to Bankruptcy

Rule 2002 (collectively, the "**Noticed Parties**").  In light of the nature of the relief requested, no other or further notice is required.

This Court having considered the relief requested in the DIP Motion for the Interim Period, the First Day Declaration,[2] the DIP Declaration,[3] and the arguments of counsel made at the Interim Hearing; an interim hearing on the DIP Motion having been held by this Court and concluded (the "**Interim Hearing**"); all objections and reservations of rights, if any, to the relief requested in the DIP Motion for the Interim Period having been withdrawn, resolved, or overruled by this Court; it appearing that approval of the interim relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors and their Estates, and is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; it appearing that the Debtors' entry into and performance under the DIP Financing Documents and the other transactions contemplated by this Interim Order is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

        **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    <u>Disposition</u>.  The relief requested in the DIP Motion is **GRANTED** to the extent set forth herein for the Interim Period in accordance with the terms of this Interim Order.  Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been

---

[2]    The term "**First Day Declaration**" means that certain *Declaration of Tracy D. Pagliara in Support of Chapter 11 Petitions and First Day Pleadings*.

[3]    The term "**DIP Declaration**" means the *Declaration of Victoria Arrigoni of G2 Capital Advisors in Support of the DIP Motion*.

[4]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled. This Interim Order shall become effectively immediately upon its entry and any applicable stay (including under Bankruptcy Rule 6004) is waived to permit such effectiveness.

B.    <u>Petition Date</u>.  On July 22, 2023 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

C.    <u>Debtors in Possession</u>.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 Cases and no official committee of unsecured creditors (a "**Creditors' Committee**"), or any other statutory committee, has been appointed in these Chapter 11 Cases.

D.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of these Chapter 11 Cases, the DIP Motion, this Interim Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court's consideration of the DIP Motion constitutes a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). This Court may enter a final order consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases and the DIP Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and procedural bases for the relief sought in the DIP Motion and granted in this Interim Order are Bankruptcy Code sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, 9006-1, and 9013-1.

E.    <u>Notice</u>.  Upon the record presented to this Court at the Interim Hearing, and under the exigent circumstances set forth therein and in the DIP Motion, the First Day Declaration and

the DIP Declaration, notice of the DIP Motion and the relief requested thereby and granted in this Interim Order has been provided in accordance with Bankruptcy Rules 2002, 4001(b) and 4001(c)(1) and Bankruptcy Local Rule 9013-1(m), which notice was appropriate under the circumstances and sufficient for entry of this Interim Order.  No other or further notice of the DIP Motion is required for entry of this Interim Order.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending a Final Hearing.

F.   <u>Final Hearing</u>.  At the Final Hearing, the Debtors will seek approval of the Final Order, which shall be subject to the terms and conditions of the DIP Financing Documents.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

G.   <u>Debtors' Acknowledgements and Agreements</u>.  Without prejudice to the rights of all parties-in-interest other than the Debtors, but subject to the limitations contained in Section VIII below, the Debtors admit, stipulate, acknowledge, and agree (the "**Debtors' Stipulations**") that:

(1)   *Pre-Petition Revolving Financing Documents*.  Prior to the commencement of the Chapter 11 Cases, the Pre-Petition Revolving Secured Parties made loans and advances, and provided other financial accommodations, pursuant to the Pre-Petition Revolving Financing Documents to the Pre-Petition Borrowers.  The Pre-Petition Guarantors guaranteed the Pre-Petition Revolving Obligations (as defined herein) of the Pre-Petition Borrowers under the Pre-Petition Revolving Credit Agreement.  The Pre-Petition Revolving Obligations (as defined herein) were automatically accelerated on the Petition Date as a result of the commencement of the Chapter 11 Cases in accordance with the terms of the Pre-Petition Revolving Financing Documents, and all commitments of the Pre-Petition Revolving Secured Parties are terminated.

(2)   *Pre-Petition Revolving Obligations*.

(a)    *Pre-Petition Revolving Credit Loan Obligations*.  As of the Petition Date, the Pre-Petition Borrowers and the Pre-Petition Guarantors were justly and lawfully indebted and liable to the Pre-Petition Revolving Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $10,891,003.32, including, without limitation, (i) $10,391,003.32 in outstanding principal amount of Pre-Petition Revolving Loans, (ii) outstanding letters of credit in the aggregate amount of $500,000, and (iii) all accrued and accruing charges and Cash Management Products and Services in respect of Cash Management Obligations (each as defined in the Pre-Petition Revolving Credit Agreement) (collectively, together with accrued and unpaid interest, any fees  (including $900,000 of accrued and unpaid fees that were due and payable on the Petition Date[5]), costs, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, hedging obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Pre-Petition Borrowers' or the Pre-Petition Guarantor's obligations pursuant to, or secured by, the Pre-Petition Revolving Financing Documents, including all Obligations (as defined in the Pre-Petition Revolving Credit Agreement) (collectively, the "**Pre-Petition Revolving Obligations**"), which Pre-Petition Revolving Obligations have been guaranteed on a joint and several basis by the Pre-Petition Guarantors.

(b)    The Pre-Petition Revolving Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of Debtors, and are not subject to any

---

[5] Pre-Petition Revolving Secured Parties have agreed to defer these fees due and owing to Pre-Petition Revolving Secured Parties under the Pre-Petition Revolving Financing Documents as of the Petition Date, which fees shall be included as part of the Final ABL Roll-Up and shall be payable upon the Termination Date (as defined in the DIP Revolving Credit Agreement).

offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess, and shall not assert, any claim, counterclaim, setoff, deduction, or defense of any kind, nature, or description that would in any way impair, reduce, or affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Revolving Obligations.

(3)    *Pre-Petition Collateral (for Pre-Petition Revolving Obligations).*

(a)    As of the Petition Date, the Pre-Petition Revolving Obligations were secured pursuant to the Pre-Petition Revolving Financing Documents by valid, binding, perfected, enforceable, and non-avoidable security interests and liens ("**Pre-Petition Revolving Liens**") granted by the Debtors to the Pre-Petition Revolving Agent, for the benefit of the Pre-Petition Revolving Secured Parties, upon the "Collateral" (as defined in the Pre-Petition Revolving Credit Agreement) in existence as of the Petition Date (hereafter, the "**Pre-Petition Collateral**"), subject to the Pre-Petition Term Liens (as defined below) to the extent set forth in the Intercreditor Agreement and as described on the Lien Priority Chart, as well as to any valid, binding, perfected, enforceable and unavoidable lien or security interest otherwise existing as of the Petition Date, which are otherwise acknowledged to be senior in priority under the Pre-Petition Revolving Credit Agreement (collectively, the "**Prior Permitted Liens**" and each a "**Prior Permitted Lien**").  The Prior Permitted Liens, together with any valid and unavoidable lien or security interest that is senior in priority to the liens granted to the Pre-Petition Revolving Secured Parties in the Pre-Petition Collateral that is validly perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), shall be collectively referred to in this Interim Order as "**Senior Liens**."

(b)    The Pre-Petition Revolving Agent, on behalf of the Pre-Petition Revolving Lenders, has a valid, binding, and perfected non-avoidable security interest and lien in all of Pre-Petition Collateral, including Revolving Credit Cash Collateral, subject to the Pre-Petition Term Liens to the extent set forth in the Intercreditor Agreement and as described in the Lien Priority Chart, including all amounts on deposit in all of Pre-Petition Borrowers' banking, checking, or other deposit accounts with any of the Pre-Petition Revolving Secured Parties, whether as original collateral or as proceeds of other Pre-Petition Collateral, and all such Revolving Credit Cash Collateral is part of the Pre-Petition Collateral.

(c)    The Debtors do not possess, and will not assert, any claim, counterclaim, setoff, deduction, or defense of any kind, nature, or description that would in any way impair, reduce, or affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Revolving Secured Parties' liens, claims, or security interests in the Pre-Petition Collateral, which liens and security interests are not subject to subordination (other than as set forth in the Intercreditor Agreement) or avoidance pursuant to the Bankruptcy Code or any other applicable law.

(4)    *Pre-Petition Term Financing Documents*.  Prior to the commencement of the Chapter 11 Cases, the Pre-Petition Term Lenders made certain loans (the "**Pre-Petition Term Loans**") to Pre-Petition Borrowers pursuant to the Pre-Petition Term Financing Documents. The Pre-Petition Guarantors guaranteed the obligations of Pre-Petition Borrowers under the Pre-Petition Term Credit Agreement.

(5)    *Pre-Petition Term Loan Obligations*.

(a)    As of the Petition Date, the aggregate amount of all Obligations (as defined in the Pre-Petition Term Credit Agreement) owing by the Pre-Petition Borrowers to the

Pre-Petition Term Secured Parties under and in connection with the Pre-Petition Term Financing Documents was not less than (i) $32,200,000 in respect of the Pre-Petition Term Loans, plus interest accrued and accruing thereon at the rate in effect on the Petition Date, plus (ii) accrued and accruing fees, plus (iii) all accrued and accruing costs and expenses (including attorneys' fees and legal expenses, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), plus (iv) any other charges and liabilities accrued, accruing or chargeable under the Pre-Petition Term Financing Documents (including indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect thereof) (collectively, "**Pre-Petition Term Obligations**"; together with the Pre-Petition Revolving Obligations, collectively, the "**Pre-Petition Obligations**").

(b)    The Pre-Petition Term Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of the Pre-Petition Borrowers and Pre-Petition Guarantors, and are not subject to any offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code (other than as set forth in the Intercreditor Agreement) or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Term Obligations.

(6)    *Pre-Petition Collateral (for Pre-Petition Term Obligations).*

(a)    As of the Petition Date, the Pre-Petition Term Obligations were secured pursuant to the Pre-Petition Term Financing Documents by valid, binding, perfected, enforceable and non-avoidable security interests and liens granted by the Debtors to the Pre-

Petition Term Agent upon the Pre-Petition Collateral (the "**Pre-Petition Term Liens**"; together with the Pre-Petition Revolving Liens, the "**Pre-Petition Liens**"), subject to the Pre-Petition Revolving Liens to the extent set forth in the Intercreditor Agreement and as described on the Lien Priority Chart as well as to any Senior Liens having priority over the Pre-Petition Term Liens.

(b)     The Pre-Petition Term Agent, for itself and on behalf of the other Pre-Petition Term Secured Parties, has a valid, binding and perfected non-avoidable security interest and lien in the Pre-Petition Collateral, including Revolving Credit Cash Collateral, subject to the Pre-Petition Revolving Liens to the extent set forth in the Intercreditor Agreement and as described on the Lien Priority Chart.

(c)     The Debtors do not possess and will not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description which would in any way impair, reduce, or affect the validity, enforceability and non-avoidability of any of the Pre-Petition Term Liens or the Pre-Petition Term Agent's liens, claims or security interests in the Pre-Petition Collateral, which liens and security interests are not subject to subordination (other than as set forth in the Intercreditor Agreement) or avoidance pursuant to the Bankruptcy Code or any other applicable law.

(7)     *Intercreditor Agreement*. The Pre-Petition Revolving Agent and Pre-Petition Term Agent are party to that certain ABL Intercreditor Agreement, dated as of July 18, 2018 (as amended (included in connection with the DIP Facilities), restated, amended and restated, supplemented, or otherwise modified, the "**Intercreditor Agreement**"), which is acknowledged and agreed to by Pre-Petition Borrowers and Pre-Petition Guarantors. The Intercreditor Agreement governs, among other things, the relative priority of the respective Liens on the Collateral granted to holders of Obligations (each as defined in the Intercreditor Agreement) and is acknowledged to

be a "subordination agreement" within the meaning of Bankruptcy Code section 510(a), as set forth therein. The Intercreditor Agreement is binding, valid, and enforceable in accordance with its terms, and the parties thereto are bound thereby.

(8)     *No Control*.  None of the Pre-Petition Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Pre-Petition Financing Documents.

H.     Adequate Protection.

(1)     Based on the DIP Motion, the First Day Declaration, and the DIP Declaration, and the record presented to this Court at the Interim Hearing, the terms of the adequate protection granted to the Pre-Petition Secured Parties as provided in this Interim Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and provide the Debtors with reasonably equivalent value and fair consideration.

(2)     *Adequate Protection Obligations*.  The Debtors acknowledge and agree that the Pre-Petition Secured Parties are entitled to and being provided with adequate protection (including the Adequate Protection Obligations) with respect to the aggregate diminution in value ("**Diminution in Value**") of the Pre-Petition Secured Parties' respective interests in the Pre-Petition Collateral for any reason for which adequate protection may be granted under the Bankruptcy Code, including as a result of the: (a) provisions of this Interim Order granting either or both first priority and priming liens on the Pre-Petition Collateral to the DIP Agents, for the benefit of the applicable DIP Lenders, with respect to the DIP Facilities; (b) use of the Revolving

Credit Cash Collateral; (c) use, sale, lease, decrease, or depreciation of the Pre-Petition Collateral; (d) subordination to the Carve Out solely as provided for herein; and (e) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 361(a), 363(c), 364(c), and 364(d)(1).  Pursuant to Bankruptcy Code sections 361, 363 and 507(b), as adequate protection for any Diminution in Value, the Debtors have agreed to provide (x) the Pre-Petition Revolving Secured Parties with the Revolving Credit Adequate Protection Liens, the Revolving Credit Adequate Protection Claim (subject to the priorities set forth in the Claim Priority Chart), and the Revolving Credit Adequate Protection Payments (each as defined herein), which Revolving Credit Adequate Protection Payments shall be payable solely from the proceeds of DIP Revolving Loans and the proceeds of the Pre-Petition Collateral and DIP Collateral, in either case, constituting Revolving Loan Priority Collateral, and (y) the Pre-Petition Term Secured Parties with the Term Loan Adequate Protection Liens, the Term Loan Adequate Protection Claim (subject to the priorities set forth in the Claim Priority Chart) and the Term Loan Adequate Protection Payments (each as defined herein), which Term Loan Adequate Protection Payments shall be payable solely from proceeds of DIP Term Loans and the proceeds of the Pre-Petition Collateral and DIP Collateral, in either case, constituting Term Loan Priority Collateral.

(3)     In exchange for such adequate protection (including the Adequate Protection Obligations), the Pre-Petition Secured Parties have agreed to the Debtors' use of the Revolving Credit Cash Collateral on the terms set forth in this Interim Orders and the DIP Credit Agreements.

(4)     *Necessity for Adequate Protection*.  The adequate protection being provided pursuant to this Interim Order is consistent with, *inter alia*, the Intercreditor Agreement, authorized

by the Bankruptcy Code, is consistent with the Debtors' need for the DIP Facilities, and will facilitate the Debtors' ability to continue their business operations.

I.    <u>Prior Liens</u>.  Nothing contained in this Interim Order is intended to: (1) invalidate, negate, avoid, prime or prejudice the holders of any alleged Senior Liens; (2) find or rule that any alleged Senior Liens (or any other alleged liens, excepting only the Pre-Petition Liens, subject only to Section VIII below in the case of such Pre-Petition Liens) are valid, binding, prior, perfected, enforceable, non-avoidable, or senior; or (3) prejudice the right of any party-in-interest, including, without limitation, the Debtors, any Creditors' Committee, the Pre-Petition Revolving Agent, the Pre-Petition Term Agent or DIP Agents, from challenging the validity, enforceability, perfection, extent, or priority of any alleged Senior Lien (or any other alleged liens or security interests, excepting only the Pre-Petition Liens, a challenge to which is subject only to Section VIII below).

J.    <u>Findings Regarding the DIP Facilities and Use of Revolving Credit Cash Collateral</u>.

(1)    *Request for DIP Financing*.  The Debtors have requested that the DIP Agents and the DIP Lenders extend loans, advances, and other financial accommodations and the DIP Agents and the DIP Lenders are only willing to do so as more particularly described, and subject to the terms and conditions set forth, in this Interim Order and the DIP Financing Documents.

(2)    *Need for DIP Financing*.  As set forth in the DIP Declaration and the First Day Declaration, the Debtors do not have sufficient available sources of working capital to fund the orderly sale(s) and liquidation of the Debtors' businesses in the ordinary course without the DIP Facilities and the ability to use Revolving Credit Cash Collateral, or to fund these Chapter 11 Cases without the DIP Facilities, all on the terms set forth in the DIP Financing Documents and this Interim Order.  The Debtors' ability to maintain business relationships with their vendors,

suppliers, and customers, to pay their employees, and to otherwise fund their operations is essential to the viability of the Debtors and the Chapter 11 Cases. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facilities and the use of Revolving Credit Cash Collateral on the terms set forth in the DIP Financing Documents and this Interim Order is vital to the preservation and maximization of the going concern value one or more of the Debtors' currently operating businesses pending sale(s) of such assets. Accordingly, the Debtors have an immediate need to obtain funds from the DIP Facilities and authorization to use Revolving Credit Cash Collateral for the purposes and on the terms and subject to the limitations set forth herein and in the DIP Financing Documents, including the Approved Budget (defined herein), in order to, among other things, (a) maintain business relationships; (b) permit the continued operation of their businesses; (c) make Adequate Protection Payments; (d) pay the costs of administration of these Chapter 11 Cases and satisfy their other working capital and general corporate purposes; (e) minimize disruption of their business operations; and (f) manage and preserve the assets of the Debtors' Estates in order to maximize the value of such assets and the recoveries to creditors of the Estates.

(3)    *No Credit Available on More Favorable Terms*. As stated in the DIP Declaration and the First Day Declaration, the Debtors are unable to procure financing or other financial accommodations on more favorable terms from sources other than from the DIP Lenders under the DIP Financing Documents and are unable to obtain satisfactory unsecured credit allowable under Bankruptcy Code section 364(a) or 364(b) and 503(b)(1) as an administrative expense. The Debtors also are unable to obtain secured credit for the purposes set forth in the DIP Financing Documents and the consensual use of Revolving Credit Cash Collateral on more favorable terms without the grant of liens (including priming liens) on all or substantially all of the

Debtors' assets pursuant to Bankruptcy Code sections 364(c) and (d), subject to the Carve Out solely as provided for herein.  In the Debtors' business judgment, the Debtors cannot procure the necessary financing on terms more favorable than the financing offered by the DIP Agents and the DIP Lenders pursuant to the DIP Financing Documents and this Interim Order.

(4)    *Budget*.  Based upon the record presented to this Court by the Debtors, (a) the Debtors have prepared and delivered the Initial Budget (as defined in the DIP Credit Agreements), in the form attached hereto as Exhibit 1 (the Initial Budget and each subsequent approved budget shall constitute without duplication, the "**Approved Budget**"), (b) the Approved Budget was prepared by the Debtors, with the assistance of their professional advisors and management, and (c) the Approved Budget (as the same may be amended or extended solely as provided for herein) sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.  The Initial Budget and any supplemental Approved Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreements, and once approved in writing by the DIP Agents pursuant to the DIP Credit Agreements, shall supplement and replace the Initial Budget or the then Approved Budget.  The Debtors believe in good faith that the Approved Budget, subject to such variances as permitted in the DIP Credit Agreements is achievable and will allow the Debtors to operate in chapter 11 without the accrual of unpaid post-petition administrative expenses during the term of the Approved Budget. The Pre-Petition Secured Parties and the DIP Secured Parties are relying upon the Debtors' compliance with the Approved Budget, subject to such variances as permitted in the DIP Credit Agreements, in determining to consent to the use of Revolving Credit Cash Collateral solely as contemplated in this Interim Order and to enter into (or as the case may be, consent to) the DIP Facilities as provided for in this Interim Order and the DIP Financing Documents.

(5)     *Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363(m)*.  Based on the record before this Court, including the Debtors' Stipulations, (a) the Debtors and each of the Pre-Petition Secured Parties and the DIP Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facilities, and the Debtors' use of Pre-Petition Collateral, including the Revolving Credit Cash Collateral, respectively, all subject to the terms of this Interim Order and (b) the terms of the DIP Credit Agreements, the other DIP Financing Documents, and the DIP Facilities are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in "good faith" (as that term is used in Bankruptcy Code sections 364(e) and 363(m)) by the Pre-Petition Secured Parties and the DIP Secured Parties, as applicable.

(6)     *No Objection*.  The Pre-Petition Secured Parties have no objection to the DIP Facilities and the use of Revolving Credit Cash Collateral on the terms and conditions set forth in this Interim Order.  Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Secured Parties are or will be adequately protected with respect to any non-consensual use of Pre-Petition Collateral, including Revolving Credit Cash Collateral.

(7)     *No Responsible Person.*  The Debtors stipulate that in making the decision to finance the Debtors' continued business operations through the DIP Facilities, to permit the Debtors to use Revolving Credit Cash Collateral for the limited purposes set forth herein, in administering any loans, in approving the Initial Budget, or in taking any actions permitted by this

Interim Order or the DIP Financing Documents, none of the DIP Agents, the DIP Lenders, the Pre-Petition Revolving Agent, the Pre-Petition Revolving Credit Lenders, the Pre-Petition Term Agent, or the Pre-Petition Term Lenders, as applicable, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "owner or operator," or part of any "control group" with respect to any of the Debtors or the management of the Debtors ore owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or Estates.

(8)    *Good Cause*.  Good and sufficient cause has been shown for the entry of this Interim Order and for authorizing the Debtors to obtain financing pursuant to the DIP Facilities and to use the Revolving Credit Cash Collateral of the Pre-Petition Revolving Secured Parties (solely to the extent consistent with the Approved Budget) and to authorize the provision of adequate protection.  The relief requested in the DIP Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to: (a) minimize disruption to the Debtors' efforts for the continued operations of their businesses; (b) preserve and maximize the value of the Debtors' Estates; and (c) avoid immediate and irreparable harm to the Debtors, their respective businesses, employees, and assets.

(9)    *Immediate Entry*.  Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), 6003(b), and, to the extent applicable, 6004(h).  Absent the immediate grant by this Court of the interim relief sought by the DIP Motion, each Debtors' Estates will be immediately and irreparably harmed pending the Final Hearing.  Consummation of the DIP Facilities and the use of Revolving Credit Cash Collateral, in accordance with the terms of this Interim Order, the Approved Budget and the DIP Financing

Documents, is in the best interests of the Debtors' Estates and is consistent with the Debtors' exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the DIP Motion, and the record before this Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**I.     Authorization and Terms of Financing.**

1.     <u>DIP Motion Granted</u>.  The interim relief sought in the DIP Motion is granted, the interim financing described herein is authorized and approved, and the use of Revolving Credit Cash Collateral during the Interim Period is authorized, in each case subject to the terms and conditions set forth in the DIP Financing Documents, the Approved Budget and this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry. The rights of all parties in interest to object to the entry of the Final Order are reserved.

2.     <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  To prevent immediate and irreparable harm to the Debtors' Estates, the Debtors are hereby expressly authorized and empowered to immediately borrow, or guaranty, as applicable, and obtain, on a joint and several basis, DIP Revolving Loans under the DIP Revolving Facility (including all Letters of Credit (which term shall include letters of credit issued under the Pre-Petition Loan Documents and which letters of credit shall be deemed to have been issued under the DIP Revolving Financing Documents immediately upon entry of this Interim Order)) and DIP Term Loans under the DIP Term Facility, and the Debtors (on a joint and several basis) are hereby authorized and empowered to incur all other indebtedness and obligations owing to the DIP Agents and the DIP Lenders (including, without limitation, Cash Management Obligations (as defined in the DIP Revolving

Credit Agreement)) on the terms and subject to the conditions and limitations set forth in the DIP Financing Documents and this Interim Order, during the Interim Period up to the maximum aggregate amount of $8,400,000 with respect to the DIP Revolving Facility, and $14 million with respect to the DIP Term Facility, subject, as applicable, to the Approved Budget (with any variances permitted thereto under the terms and conditions of the DIP Credit Agreements) and from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined in the DIP Credit Agreements). For the avoidance of doubt, notwithstanding anything else provided for in this Interim Order, all reimbursement obligations and fees with respect to Cash Management Obligations (as defined in the DIP Revolving Credit Agreement) accruing after the Petition Date as well as Letters of Credit that, immediately upon entry of this Interim Order, shall be deemed to have been issued under the DIP Revolving Financing Documents, shall constitute DIP Revolving Obligations.

3.    <u>Financing Documents</u>.

(a)    *Authorization*.  The Debtors are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Financing Documents.  The Debtors are hereby authorized to borrow money pursuant to the DIP Credit Agreements, which shall be used for all limited purposes permitted hereunder and under the DIP Financing Documents (and subject to and in accordance with the Approved Budget).  Upon entry of this Interim Order, in furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized and empowered, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary, to: (i) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Financing Documents, including, without limitation, the DIP Credit Agreements, the Fee Letters (as defined in the DIP Term Credit

Agreement) and all security and pledge agreements; (ii) execute and deliver all certificates, reports, statements, and other agreements and documents required or contemplated by the DIP Financing Documents (including, without limitation, documents required for the Debtors' performance of their obligations under the DIP Financing Documents and the creation and perfection of liens granted or contemplated therein); and (iii) pay all obligations incurred under the DIP Financing Documents in accordance herewith (whether principal, interest, fees, costs, expenses, indemnities, or other amounts described in the DIP Financing Documents as such amounts become earned, due, and payable and without need to obtain further Court approval, including, without limitation, closing fees, unused line fees, arrangement fees, structuring fees, servicing fees, audit fees, appraisal fees, liquidator fees, administrative agent's fees, prepayment premiums, and the fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date), and perform all other undertakings and acts required or contemplated by, the DIP Financing Documents.

(b)     *Approval of Financing Documents*.  The DIP Financing Documents (and all certificates, reports, statements, and other agreements and documents) are approved to the extent necessary to implement the terms and provisions of this Interim Order.

(c)     *Amendment of DIP Financing Documents*.  The Debtors, the DIP Agents, and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Financing Documents, any modification of the DIP Financing Documents; *provided*, *however*, that any material modification or amendment to the DIP Financing Documents that is materially adverse to the interests of the Debtors or their Estates (or to the interest of any of the DIP Secured Parties or the Pre-Petition Secured Parties) shall be subject to providing notice of such material modification or amendment to counsel to any Creditors' Committee, the U.S. Trustee,

the Pre-Petition Revolving Agent and DIP Revolving Agent (if such material modification is to the DIP Term Credit Agreement), and the Pre-Petition Term Agent and DIP Term Agent (if such material modification is to the DIP Revolving Credit Agreement), each of which shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment unless the Creditors' Committee, U.S. Trustee, the Pre-Petition Revolving Agent, DIP Revolving Agent, the Pre-Petition Term Agent, and/or the DIP Term Agent, as applicable, agrees in writing to a shorter period.  If no timely objection is raised by any Creditors' Committee, the U.S. Trustee, the Pre-Petition Revolving Agent, the Pre-Petition Term Agent or a DIP Agent (not a party thereto) to any material modification or amendment to the DIP Financing Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned notice period pursuant to an Order of the Court to be submitted under certification of counsel.  If a timely objection is interposed, the Court shall resolve such objection prior to such modification or amendment becoming effective.

(d)     *Application of DIP Facility Proceeds*.   The advances under the DIP Facilities and Revolving Credit Cash Collateral shall be used in each case solely in a manner consistent with the terms and conditions of the DIP Financing Documents and this Interim Order, including, solely with respect to proceeds of the DIP Term Facility, the Permitted DIP Term Uses, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreements), solely as follows:

(i)     to pay fees, costs, and expenses as provided in the applicable DIP Financing Documents, including amounts incurred in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreements and the other DIP Financing Documents; *provided* that (A) proceeds of the DIP Revolving Facility shall be used to pay fees, costs, and

expenses owed to DIP Revolving Secured Parties solely under the DIP Revolving Financing Documents, and (B) proceeds of the DIP Term Facility shall be used to pay fees, costs, and expenses owed to DIP Term Secured Parties solely under the DIP Term Financing Documents; *provided further* that (x) no (1) Revolving Credit Cash Collateral, (2) Revolving Loan Priority Collateral and proceeds thereof, or (3) proceeds of the DIP Revolving Facility shall be used to pay fees, costs, and expenses owed to DIP Term Secured Parties hereunder or under the DIP Term Financing Documents, the Pre-Petition Term Secured Parties hereunder or under the Pre-Petition Term Financing Documents, and (y) no (1) Term Loan Priority Collateral and proceeds thereof or (2) proceeds of the DIP Term Facility shall be used to pay fees, costs, and expenses owed to DIP Revolving Secured Parties hereunder or under the DIP Revolving Facility or the Pre-Petition Revolving Secured Parties hereunder or under the Pre-Petition Revolving Financing Documents.

(ii)    for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(iii)    for making other payments as expressly provided in this Interim Order and the Approved Budget;

(iv)    following entry of a Final Order, at the discretion of the DIP Revolving Agent, to effectuate the Final ABL Roll-Up (subject to Section VIII below), without which the DIP Revolving Lenders would not be willing to provide the DIP Revolving Loans;

(v)    to fund the Carve Out Reserve Account (as defined herein) on the terms described herein.

(e)    *Conditions Precedent*.  The DIP Lenders shall have no obligation to make any loan or advance (or, with respect to the DIP Revolving Secured Parties, issue any new letter of credit) under the DIP Credit Agreements unless the conditions precedent to such loan or extension of credit under the DIP Credit Agreements have been satisfied in full or waived in accordance with the DIP Credit Agreements.

(f)    *Budget Maintenance*.  The Debtors' proposed budget shall become the "Approved Budget" upon written approval of such budget by the DIP Agents, and the Debtors shall update the Approved Budget each month unless otherwise agreed to by the DIP Agents, subject to written approval of the DIP Agents.  A copy of any updated Approved Budget shall be filed with the Court within one (1) business day after it has been approved in writing by the DIP Agents.

4.    <u>Payments and Application of Payments</u>.  The Debtors are authorized to make all payments and transfers of the Estates' property to the DIP Agents and the DIP Lenders as provided, permitted, or required under the DIP Financing Documents and this Interim Order, which payments, proceeds, and other amounts shall be applied (a) either to the Pre-Petition Revolving Obligations or the DIP Revolving Obligations in such order and manner determined by the DIP Revolving Agent's sole and absolute discretion, including to effectuate the Interim ABL Roll-Up, or (b) to the DIP Term Obligations and thereafter to the Pre-Petition Term Obligations in accordance with the DIP Term Financing Documents or the Pre-Petition Term Credit Agreement, as applicable.  Upon entry of this Interim Order, the DIP Financing Documents shall constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of this Interim Order and the other DIP Financing Documents, against each Debtor, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11

Cases or any other chapter of the Bankruptcy Code, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  No obligation, payment, transfer, or grant of security hereunder or under the DIP Financing Documents to the DIP Agents and/or the DIP Lenders shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under applicable law (including, without limitation, under Bankruptcy Code sections 502(d), 544, and 547 to 550 or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or challenge, whether under the Bankruptcy Code or any other applicable law or regulation by any person or entity for any reason.  Without limiting the generality of the foregoing, and subject to the provisos in paragraph 3(d)(i) above, the Debtors are authorized, without further Order of this Court, to (i) pay all principal, interest, fees, and indemnities when due, under the DIP Financing Documents and (ii) pay or reimburse the DIP Secured Parties, in accordance with the DIP Financing Documents for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Secured Parties in connection with the financing transactions as provided in the DIP Financing Documents and this Interim Order regardless of whether such amounts are in the Approved Budget; *provided*, *however*, that each DIP Agent shall send a redacted summary invoice of any post-petition professional fees, consultant fees, and legal fees and expenses incurred by such DIP Secured Party (subject in all respects to applicable privilege or work product doctrines) to the Debtors and their counsel, the U.S. Trustee and, if appointed, the Creditors' Committee or its counsel.  Within ten (10) days after

delivery of such invoices in accordance with this paragraph (or such shorter time period agreed to by the DIP Agents, the Debtors, the U.S. Trustee, and, if appointed, the Creditors' Committee), the Debtors shall pay such fees and costs; *provided*, *however*, that to the extent an objection has been raised to certain professional, consultant, or legal fees and costs incurred on or after the Petition Date within such ten (10) days, Debtors shall pay only such fees and costs to which no objection has been raised; *provided further*, that such ten (10) day notice period shall not apply to the payment of any such professional, consultant, or legal fees and costs paid on or about (x) the effective date of, a plan of reorganization (the "**Chapter 11 Plan**") in the Chapter 11 Cases or (y) the closing of any sale of Debtors' assets that results in the payment in full of all Pre-Petition Obligations and Post-Petition Obligations owed to the Prepetition Revolving Secured Parties or Prepetition Term Secured Parties, as applicable, or DIP Revolving Secured Parties or DIP Term Secured Parties, as applicable. To the extent there is an objection with respect to any such professional, consultant, or legal fees, costs and expenses that is not consensually resolved, this Court may resolve the objection. Such written invoices shall include the invoices of Blank Rome LLP, counsel to the DIP Revolving Agent, Focus Management Group, financial advisor to the DIP Revolving Agent, Chapman and Cutler LLP, counsel to the DIP Term Agent, and any other professional, advisor, or agent reasonably retained by the DIP Agents in connection with the Chapter 11 Cases and as permitted by the DIP Financing Documents; *provided*, *however*, that none of such fees and expenses payable pursuant to this paragraph shall be subject to the United States Trustee Guidelines or shall require approval by the Court unless an objection is interposed that cannot be resolved by the parties. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

5.      <u>Interest and Fees</u>.  The rate(s) of interest to be charged for the DIP Revolving Loans and DIP Term Loans, as applicable, under the DIP Revolving Facility and DIP Term Facility, as applicable, shall be the rates set forth in the DIP Revolving Credit Agreement and DIP Term Credit Agreement, as applicable, and shall be calculated in the manner and payable at the times set forth therein.  The fees charged under the DIP Facilities shall be those set forth in the applicable DIP Credit Agreement and shall be unconditionally payable in the amounts and at the times set forth in the applicable DIP Credit Agreement, including, without limitation, the Unused Line Fee and the Closing Fee (each as defined in the DIP Revolving Credit Agreement), which Closing Fee shall be absolutely and unconditionally earned upon entry of this Interim Order and execution of the DIP Credit Revolving Agreement, and which shall be non-refundable. The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described above and in the DIP Financing Documents as such amounts become due and without need to obtain further Court approval, and the Debtors shall be jointly and severally obligated to pay all such amounts, and satisfy all such obligations, which in each case shall constitute DIP Obligations hereunder and under the applicable DIP Financing Documents.

6.      <u>Application of Collections</u>.

(a)      All cash, collections, and proceeds of the Revolving Loan Priority Collateral and the DIP Collateral that is Revolving Loan Priority Collateral shall be applied to reduce the Pre-Petition Revolving Obligations and the DIP Revolving Obligations in accordance with the terms of the DIP Revolving Financing Documents and the Pre-Petition Revolving Financing Documents, as applicable, and this Interim Order, in such order and manner determined

by the DIP Revolving Agent in its sole and absolute discretion, subject, as applicable, to the Intercreditor Agreement.

(b)     All cash, collections, and proceeds of the Term Loan Priority Collateral and the DIP Collateral that is Term Loan Priority Collateral shall be applied first in reduction of the DIP Term Obligations in accordance with the terms of the DIP Term Financing Documents and this Interim Order and then against the Pre-Petition Term Obligations, subject, as applicable, to the Intercreditor Agreement.

(c)     If any of the Pre-Petition Secured Parties or DIP Secured Parties, in their capacity as such, obtain possession or control of any Pre-Petition Collateral or DIP Collateral, such Pre-Petition Secured Party shall notify the DIP Agents thereof and its possession or control of such Pre-Petition Collateral or DIP Collateral shall additionally be deemed to be for the benefit of the DIP Agents and the DIP Lenders, subject to the terms of the Intercreditor Agreement and/or the Lien Priority Chart and Claim Priority Chart, as applicable.

7.     <u>Continuation of Pre-Petition Procedures</u>.  Subject to the Intercreditor Agreement, the Lien Priority Chart, and Claim Priority Chart, as applicable, all pre-petition practices and procedures for the payment and collection of proceeds of Revolving Loan Priority Collateral, whether Pre-Petition Collateral or DIP Collateral, including the turnover of Revolving Credit Cash Collateral to the DIP Revolving Agent for application in accordance with this Interim Order and the DIP Revolving Credit Agreement, and the use of any lockbox or blocked depository bank account arrangements, will be unchanged, remain in place, and be identical under the DIP Revolving Financing Documents for the benefit of the DIP Revolving Agent and the DIP Revolving Lenders and are hereby approved and shall continue without interruption after the commencement of the Chapter 11 Cases; *provided*, *however*, that the practices and procedures are

otherwise consistent with the terms of the *Interim Order (I) Authorizing Continued Use of Prepetition Bank Accounts, Cash Management System, Forms, and Books and Records and (II) Granting Related Relief* and any further final orders that may be entered with respect to the Debtors' cash management system.

8.      <u>Final ABL Roll-Up</u>.  Upon entry of the Final Order, without any further action by the Debtors or any other party, and subject to the rights of parties set forth in Section VIII below, at the option of DIP Revolving Agent and in accordance with the DIP Revolving Credit Agreement and the other DIP Revolving Financing Documents, the Debtors may use the proceeds of the next advance (or deemed advance) under the DIP Revolving Credit Agreement to exchange and substitute all of the remaining Pre-Petition Revolving Obligations, including without limitation the Pre-Petition Revolving Loans outstanding under the Pre-Petition Revolving Credit Agreement on the date of the Final Order on a cashless, dollar-for-dollar basis with the DIP Revolving Facility and subject to the terms and conditions set forth in the DIP Revolving Financing Documents.  The Final ABL Roll-Up shall be subject to the challenge rights of the parties set forth in Section VIII below.

9.      [Reserved.]

**II.    Collateralization and Superpriority Administrative Claim Status.**

10.     <u>Collateralization</u>.

(a)     *DIP Lien Grant*.  Subject to and in accordance with the priorities as set forth in the lien priority chart attached hereto as <u>Exhibit 3</u> (the "**<u>Lien Priority Chart</u>**"), to secure the prompt payment and performance of any and all DIP Obligations of the Debtors to each DIP Agent and the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, each DIP Agent, for the benefit of itself and the applicable DIP Lenders, shall have and is hereby granted, effective as of and from the Petition Date, valid, binding, enforceable,

continuing, non-avoidable and perfected security interests and liens (such security interests and liens collectively, "**DIP Liens**") in and upon all property and rights and interests in property of each of the Debtors or their Estates of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including, without limitation: (i) all Pre-Petition Collateral; (ii) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including without limitation all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money, and inter-company claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor; (iii) all real property, leaseholds, rents and profits, and proceeds thereof; (*provided, however*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof:  (A) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as permitted by the applicable lease or applicable law, *provided further* that if any such restriction applies, liens shall then be deemed to be granted and created upon the economic value thereof, including the proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (B) should DIP Agents' or any DIP Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, each DIP Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale

or other disposition of such real property interests); (iv) if not otherwise described above, all of the property or rights in property identified as Collateral (as defined in each Pre-Petition Credit Agreement) and Collateral (as defined in each DIP Credit Agreement); (v) all claims and causes of action of the Debtors and their Estates, whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby, whether by judgment, settlement, or otherwise including, and upon entry of a Final Order, all claims and causes of action under chapter 5 of the Bankruptcy Code and Bankruptcy Code section 724(a) (collectively "**Avoidance Actions**") and all proceeds thereof and the property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law; (vi) subject to Section V of this Interim Order and the Lien Priority Chart and Claim Priority Chart, the reversionary interest in the Carve Out Reserve Account and all funds on deposit in the Carve Out Reserve Account and the reversionary interests in all other segregated or reserve accounts; (vii) all other personal property of the Debtors and their Estates of every kind and nature; and (viii) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing, in whatever form (all of the foregoing being collectively referred to in this Interim Order as "**DIP Collateral**").

(b)    Subject to and in accordance with the priorities as set forth in the Lien Priority Chart, the DIP Liens shall be:

(i)    *Liens on Unencumbered Property*.  Pursuant to Bankruptcy Code section 364(c)(2), continuing valid, perfected, enforceable, and non-avoidable, and fully perfected liens on and security interests in all now owned or hereafter acquired assets and property of the Debtors' right, title, and interest in, to, and under all DIP Collateral that is not otherwise

encumbered by a validly perfected security interest or lien as of the Petition Date, including Avoidance Actions and proceeds thereof upon entry of the Final Order;

(ii)    *Liens on Encumbered Assets*.  Pursuant to Bankruptcy Code section 364(c)(3), a continuing valid, enforceable, and non-avoidable, and fully perfected lien on and security interest (other than as set forth in clauses (iii) and (iv) below) in all now owned or hereafter acquired assets and property of the Debtors' right, title, and interest in, to, and under all DIP Collateral that is subject to, as of the Petition Date, a Senior Lien and the Lien Priority Chart;

(iii)    *Priming Liens on Encumbered Assets.*  Subject to any applicable Senior Liens, pursuant to Bankruptcy Code section 364(d), valid, enforceable, non-avoidable, and fully perfected priming security interests in and priming liens upon all now owned or hereafter acquired assets and property of the Debtors' right, title, and interest in, to, and under all Pre-Petition Collateral;

(iv)    *Liens Senior to Certain Other Liens.*  Notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens and the Adequate Protection Liens (as defined herein) shall not be subject to (A) avoidance or subordination (equitable or otherwise) under Bankruptcy Code sections 510, 549, or 550, or any other provision of the Bankruptcy Code or applicable law (B) any lien or security interest that is avoided or preserved for the benefit of the Debtors or their Estates under Bankruptcy Code section 551, (C) any liens arising after the Petition date provided for herein or (D) any intercompany or affiliate liens of the Debtors, if any; *provided* that the DIP Liens and Adequate Protection Liens shall be subject to the priorities set forth in the Lien Priority Chart and the Adequate Protection Liens shall be subject to Section VIII herein.

(c)    *Post-Petition Lien Perfection*.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security

interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) holding any deposit account of the Debtors (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Agents or the Pre-Petition Agents elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Agents and the Pre-Petition Agents, as applicable, is authorized to perform such Perfection Act, and the Debtors are authorized to perform such Perfection Acts to the extent necessary or required by the DIP Agents or Pre-Petition Agents, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Agents and/or the Pre-Petition Agents may choose, or may choose to direct the Debtors, to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law.  Should the DIP Agents and/or the Pre-Petition Agents so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the DIP Liens or the Adequate Protection Liens granted herein by virtue of the entry of this Interim Order.

11.    <u>Superpriority Administrative Expense</u>.

(a)     For the applicable DIP Obligations, whether now existing or hereafter arising pursuant to this Interim Order, the applicable DIP Financing Documents, or otherwise, subject only to the Carve Out, the DIP Agents, for the benefit of itself and the applicable DIP Lenders, is granted an allowed superpriority administrative expense claim in the Debtors' Estates pursuant to Bankruptcy Code section 364(c)(1), having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors as provided in the superpriority claim priority chart attached hereto as <u>Exhibit 2</u> (the "**Claim Priority Chart**"), whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 and, upon entry of a Final Order, sections 506(c) and 552(b) (the "**DIP Superpriority Claims**").

(b)     Other than as provided in the Claim Priority Chart, (i) with respect to rights preserved under Bankruptcy Code section 506(c), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and (ii) no priority claims are, or will be, senior to, prior to, or *pari passu* with the DIP Superpriority Claims or the DIP Obligations or with any other claims of the DIP Lenders arising hereunder.

### III.   Authorization to Use Revolving Credit Cash Collateral.

12.     Subject to the terms and conditions of this Interim Order, pursuant to Bankruptcy Code section 363(c)(2), the Debtors are authorized to use Revolving Credit Cash Collateral, in accordance with the DIP Revolving Credit Agreement and as may be limited by the Approved

Budget (subject to variances permitted under the terms and conditions of the DIP Revolving Credit Agreement). Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Revolving Credit Cash Collateral at the expiration of the Interim Period without the prior written approval of the DIP Revolving Agent. Except for the sale of inventory in the ordinary course of Debtors' business (and the proceeds thereof) or as may be otherwise expressly permitted herein or in the DIP Credit Agreements, or in any agency arrangement between Debtors and a third party in connection with the liquidation of the DIP Collateral approved in writing by DIP Agents and Pre-Petition Revolving Agent, nothing in this Interim Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their Estates or the use of any Revolving Credit Cash Collateral or other proceeds resulting therefrom.

## IV.    Adequate Protection for Pre-Petition Secured Parties.

13.    <u>Pre-Petition Revolving Credit Adequate Protection</u>. Subject to the Lien Priority Chart, the Claim Priority Chart and the Intercreditor Agreement, as adequate protection for the interests of the Pre-Petition Revolving Agent in the Pre-Petition Collateral, for the benefit of the Pre-Petition Revolving Credit Lenders, on account of the Adequate Protection Obligations, the Pre-Petition Revolving Agent is being provided with adequate protection as set forth below.

(a)    *Revolving Credit Adequate Protection Liens*. Solely to the extent of any Diminution in Value of such interests pursuant to Bankruptcy Code section 361 and 363(c), and subject to the priority set forth in the Lien Priority Chart, the Debtors shall grant the Pre-Petition Revolving Agent, for itself and for the benefit of the Pre-Petition Revolving Credit Lenders, valid and perfected replacement security interests in, and liens on (the "**Revolving Credit Adequate Protection Liens**"), the DIP Collateral.

(i)    The Revolving Credit Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully-perfected as of the Petition Date and, subject to Section

VIII below, not subject to subordination (except as set forth in the Intercreditor Agreement and the Lien Priority Chart) or avoidance for any cause or purpose in these Chapter 11 Cases.

(ii)    The Revolving Credit Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases.  Except as set forth in the Lien Priority Chart, the Revolving Credit Adequate Protection Liens (A) shall not be made subject to or *pari passu* with any lien or security interest by any court Order heretofore or hereafter entered in these Chapter 11 Cases (unless with the consent of the Pre-Petition Revolving Secured Parties); (B) upon entry of a Final Order, shall not be subject to Bankruptcy Code section 506(c); (C) shall not be subject to Bankruptcy Code sections 510, 549, or 550; and (D) no lien or interest avoided and preserved for the benefit of any Estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Revolving Credit Adequate Protection Liens.

(b)    *Revolving Credit Adequate Protection Claim*.    As further adequate protection, to the extent that the Revolving Credit Adequate Protection Liens do not adequately protect the Diminution in Value of the Pre-Petition Revolving Secured Parties' interests in the Pre-Petition Collateral, the Pre-Petition Revolving Agent, for the benefit of the Pre-Petition Revolving Secured Parties, is hereby granted, to the extent of such Diminution in Value, an allowed superpriority administrative expense claim (the "**Revolving Credit Adequate Protection Claim**" and together with the Revolving Credit Adequate Protection Liens, the "**Revolving Credit Adequate Protection**") in these Chapter 11 Cases or an Successor Cases against the Debtors' Estates under Bankruptcy Code sections 503 and 507(b), which shall be consistent with the priority set forth in the Claim Priority Chart, have priority over all other administrative expense claims,

priority claims, and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114.

(c)     *Interest*.  As further adequate protection, the Pre-Petition Revolving Agent, for the benefit of the Pre-Petition Revolving Secured Parties, shall be entitled to interest accruing on account of the outstanding Pre-Petition Revolving Obligations at the default rate set forth in the Pre-Petition Revolving Financing Documents, which was in effect as of the Petition Date and which shall accrue and be paid at the times and in the manner set forth in the Pre-Petition Revolving Financing Documents.

(d)     *Revolving Credit Adequate Protection Payments*.  As further adequate protection, and without limiting any rights of the Pre-Petition Revolving Agent, for the benefit of the Pre-Petition Revolving Secured Parties, under Bankruptcy Code section 506(b) (which rights are hereby preserved), the Debtors shall pay or reimburse the Pre-Petition Revolving Agent (the "**Revolving Credit Adequate Protection Payments**") for any and all of its reasonable fees, costs, expenses, and charges accrued and payable under the Pre-Petition Revolving Financing Documents, including, without limitation, the fees, costs and expenses of the Pre-Petition Revolving Agent (including attorneys' fees and costs) as provided in section 16.9 of the Pre-Petition Revolving Credit Agreement, whether accrued and unpaid pre-petition or accrued and unpaid post-petition, all without further notice, motion, or application to, Order of, or hearing before, this Court; *provided*, *however*, that the DIP Revolving Agent shall be permitted to include such fees and expenses in the DIP Revolving Obligations and make a Revolving Advance (as

defined in the DIP Revolving Credit Agreement; as used herein, the "**DIP Revolving Loans**") for the purposes of effectuating such payment by the Debtors. Except as provided for in paragraph 13(e) below, any and all fees, costs, and expenses charged under the Pre-Petition Revolving Financing Documents (including, without limitation, collateral management fees, Letter of Credit Fees, and the Unused Line Fee (each as defined in the Pre-Petition Revolving Credit Agreement)) shall be as set forth in the Pre-Petition Revolving Financing Documents and shall be payable at the times set forth in the Pre-Petition Revolving Financing Documents.

(e)    *Payment of Professional, Consulting, and Legal Fees as Revolving Credit Adequate Protection Payments*.  Within ten (10) days after delivery by Pre-Petition Revolving Agent of a redacted summary invoice (subject in all respects to applicable privilege or work product doctrines) for all professional, consulting, and legal fees and expenses incurred by Pre-Petition Revolving Agent to the Debtors and their counsel, the U.S. Trustee and, if appointed, a Creditors' Committee or its counsel (or such shorter time period agreed to by the Pre-Petition Revolving Agent, Debtors, the U.S. Trustee, and, if appointed, the Creditors' Committee), Debtors shall pay such reasonable professional, consulting, and legal fees and costs from the DIP Revolving Loans or Revolving Credit Cash Collateral, *provided, however,* that to the extent an objection has been raised to certain professional, consulting, or legal fees and costs within such ten (10) days, Debtors shall pay only such fees and costs to which no objection has been raised, *provided further,* that such ten (10) day notice period shall not apply to the payment of any such fees and costs paid at or in connection with (i) the closing of the DIP Facilities, (ii) pursuant to, and on or about the effective date of, a Chapter 11 Plan in these Chapter 11 Cases, or (iii) the closing of any sale of Debtors' assets that results in the payment in full of all Pre-Petition Obligations and Post-Petition Obligations owed to the Prepetition Revolving Secured Parties and

DIP Revolving Secured Parties, as applicable. To the extent there is an objection with respect to such costs and fees that is not consensually resolved, the Court may resolve the objection. Such written invoices shall include the invoices of Blank Rome LLP, as counsel to the Pre-Petition Revolving Agent, Focus Management Group, as financial advisor to the Pre-Petition Revolving Agent, and any other professional, advisor, or agent reasonably retained by the Pre-Petition Revolving Agent or its counsel in connection with the Chapter 11 Cases and as permitted by the Pre-Petition Revolving Financing Documents; *provided*, *however*, that none of such fees and expenses paid pursuant to this paragraph shall be subject to the United States Trustee Guidelines or shall require approval by the Court unless an objection is interposed that cannot be resolved by the parties. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

14.    <u>Pre-Petition Term Loan Adequate Protection</u>.  Subject to the Lien Priority Chart, the Claim Priority Chart and the Intercreditor Agreement, as adequate protection for the interests of the Pre-Petition Term Agent in the Pre-Petition Collateral, for the benefit of the Pre-Petition Term Lenders, on account of the Adequate Protection Obligations, the Pre-Petition Term Agent is being provided with Term Loan Adequate Protection as set forth below.

(a)    *Term Loan Adequate Protection Liens*.  Solely to the extent of any Diminution in Value of such interests pursuant to Bankruptcy Code section 361 and 363(c), and subject to the priority set forth in the Lien Priority Chart, the Debtors shall grant the Pre-Petition Term Agent for the benefit of the Pre-Petition Term Secured Parties valid and perfected replacement security interests in, and liens on (the "**<u>Term Loan Adequate Protection Liens</u>**"; and together with the Revolving Credit Adequate Protection Liens, the "**<u>Adequate Protection Liens</u>**"), the DIP Collateral.

(i)        The Term Loan Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully-perfected as of the Petition Date and, subject to Section VIII below, not subject to subordination (except as set forth in the Lien Priority Chart and the Intercreditor Agreement) or avoidance for any cause or purpose in these Chapter 11 Cases.

(ii)        The Term Loan Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other Estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases.  Except as set forth in the Lien Priority Chart, the Term Loan Adequate Protection Liens (A) shall not be made subject to or *pari passu* with any lien or security interest by any court Order heretofore or hereafter entered in these Chapter 11 Cases (unless with the consent of the Pre-Petition Term Secured Parties); (B) except to the extent of the Carve Out and upon entry of the terms of the Final Order, shall not be subject to Bankruptcy Code section 506(c); (C) shall not be subject to Bankruptcy Code sections 510, 549, or 550; and (D) no lien or interest avoided and preserved for the benefit of any Estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Term Loan Adequate Protection Liens.

(b)        *Term Loan Adequate Protection Claim*.  As further adequate protection, to the extent that the Term Loan Adequate Protection Liens do not adequately protect the Diminution in Value of the Pre-Petition Term Secured Parties' interests in the Pre-Petition Collateral, the Pre-Petition Term Secured Parties, are hereby granted, to the extent of such Diminution in Value, an allowed superpriority administrative expense claim (the "**Term Loan Adequate Protection Claim**" and together with the Revolving Credit Adequate Protection Claims, the "**Adequate Protection Claims**"; and the Term Loan Adequate Protection Claim together with the Term Loan Adequate Protection Liens, the "**Term Loan Adequate Protection**") in these Chapter 11 Cases

or an Successor Cases against the Debtors' Estates under Bankruptcy Code sections 503 and 507(b), which shall be consistent with the priority set forth in the Claim Priority Chart, have priority over all other administrative expense claims, priority claims, and unsecured claims against the Debtors or their Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114.

(c)     *Interest*.  As further adequate protection, the Pre-Petition Term Agent, for the benefit of the Pre-Petition Term Secured Parties, shall be entitled to interest accruing on account of the outstanding Pre-Petition Term Obligations at the rate(s) and in the manner set forth in the Pre-Petition Term Financing Documents, as in effect as of the Petition Date.

(d)     *Term Loan Adequate Protection Payments*.  As further adequate protection, and without limiting any rights of the Pre-Petition Term Agent, for the benefit of the Pre-Petition Term Secured Parties, under Bankruptcy Code section 506(b) (which rights are hereby preserved), the Debtors shall pay or reimburse the Pre-Petition Term Agent solely from proceeds of the DIP Term Facility and/or Term Loan Priority Collateral (the "**Term Loan Adequate Protection Payments**"; together with the Revolving Credit Adequate Protection Payments, the "**Adequate Protection Payments**") for any and all of its reasonable out of pocket costs, expenses, and charges accrued and payable under the Pre-Petition Term Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition Term Agent and the Pre-Petition Term Lenders (including attorneys' fees and costs), as provided in the Pre-Petition Term Credit Agreement, whether accrued and unpaid pre-petition or accrued and unpaid post-petition, all without further

notice, motion, or application to, Order of, or hearing before, this Court; *provided*, *however*, that the DIP Term Agent shall be permitted to include such fees and expenses in the DIP Term Obligations and make a DIP Term Loan for the purposes of effectuating such payment by the Debtors.

(e)     *Payment of Professional, Consulting, and Legal Fees as Term Loan Adequate Protection Payments.*  Within ten (10) days after delivery by Pre-Petition Term Agent of a redacted summary invoice (subject in all respects to applicable privilege or work product doctrines) for all professional, consulting, and legal fees and expenses incurred by Pre-Petition Term Agent to the Debtors and their counsel, the U.S. Trustee and, if appointed, a Creditors' Committee or its counsel (or such shorter time period agreed to by the Pre-Petition Term Agent, Debtors, the U.S. Trustee, and, if appointed, the Creditors' Committee), Debtors shall pay such reasonable fees and costs solely from proceeds of the DIP Term Facility and/or Term Loan Priority Collateral, *provided*, *however*, that to the extent an objection has been raised to certain professional, consulting, or legal fees and costs within such ten (10) days, Debtors shall pay only such fees and costs to which no objection has been raised, *provided further*, that such ten (10) day notice period shall not apply to the payment of any such fees and costs paid at or in connection with (i) the closing of the DIP Facilities, (ii) pursuant to, and on the effective date of, a plan of reorganization in the Chapter 11 Cases, or (iii) the closing of any sale of Debtors' assets that results in the payment in full of all Pre-Petition Obligations and Post-Petition Obligations owed to the Prepetition Term Secured Parties and DIP Term Secured Parties, as applicable. To the extent there is an objection with respect to such costs and fees that is not consensually resolved, the Court may resolve the objection. Such written invoices shall include the invoices of Chapman and Cutler LLP, as counsel to the Pre-Petition Term Agent and one local counsel for the Pre-Petition Term Agent, as necessary;

*provided, however*, that none of such fees and expenses paid pursuant to this paragraph shall be subject to the United States Trustee Guidelines or shall require approval by the Court unless an objection is interposed that cannot be resolved by the parties.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

**V.      Carve Out.**

15.      *Carve Out.*  The DIP Liens granted to the DIP Term Agent, DIP Superpriority Claim provided to the DIP Term Agent, Term Loan Adequate Protection Liens, and Term Loan Adequate Protection Claims shall be subject only to the right of payment and priority of the following expenses (which expenses are collectively referred to as the "**Carve Out**"), to the extent provided herein:

(a)      all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget;

(b)      the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or the Committee (if appointed) on or after the Petition Date and prior to the delivery of a Carve Out Trigger Notice (as defined herein) whose retention is approved by this Court pursuant to Bankruptcy Code section 327, 328, 363, or 1103 (each a "**Professional**" and collectively, the "**Professionals**") and payable, subject in all respects to the terms of this Interim Order, any Final Order, and any other interim or other compensation Order entered by this Court in these Chapter 11 Cases (the "**Interim Compensation Procedures**"), (i) for the period prior to the delivery of a Carve Out Trigger Notice to the Debtors, Debtors' counsel, and counsel for any Committee, an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted to be funded in advance for each such Professional for such week in accordance with the Approved Budget (to the extent a Carve Out Trigger Notice is delivered mid-week, pro-rated for such week)

and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve Out Trigger Notice is delivered ("**Allowed Professional Fees**").  The Carve Out shall include all Allowed Professional Fees that are incurred or earned (i) at any time before delivery of a Carve Out Trigger Notice as provided above, whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Approved Budget for payment of such Professionals, *provided*, that the budgeted disbursements for subsequent Approved Budget periods shall be amended so that the Borrowers may (x) carry forward any unspent budgeted line item disbursements for Professionals from prior periods and (y) carry back any unspent budgeted line item disbursements for Professionals from future periods, and (ii) beginning the first day after the delivery by DIP Term Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of an Event of Default (as defined herein) (such notice, the "**Carve Out Trigger Notice**") to the Debtors, the Debtors' counsel, counsel for any Committee, and counsel for DIP Revolving Agent, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $300,000 (the "**Post-EOD Carve Out Amount**") (the aggregate amount of clauses (a) and (b), collectively, the "**Carve Out Cap**"); *provided*, *however*, that the Carve Out shall not include any bonus, sale transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals other than fees due to Greenhill & Co. LLC in an aggregate amount not to exceed the sum of (a) $2,900,000, plus (b) $100,000 per month (the "**Greenhill Monthly Fee**") for each month that Greenhill & Co. LLC assists the Debtors during the Chapter 11 Cases, which fees are being paid pursuant to that certain engagement letter dated December 21, 2022, as amended, between certain of the Debtors and Greenhill & Co. LLC (the "**Engagement Letter**"); *provided*

that Greenhill & Co. LLC has agreed that, upon the closing of the sale of substantially all of the assets of the Debtors, the fee to be paid to Greenhill pursuant to clause (a) above shall be reduced, in accordance with the terms of the Engagement Letter, by an amount equal to 50% of the aggregate Greenhill Monthly Fee paid to Greenhill & Co. LLC for its assistance to the Debtors during the Chapter 11 Cases; *provided further*, that nothing in this Interim Order authorizes the Debtors' retention of Greenhill. Notwithstanding the foregoing, the Carve Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date (as defined in the DIP Credit Agreements).

(c)     Subject to the terms of this Interim Order, the Carve Out Cap shall be allocated on a Professional-by-Professional basis based on the amounts budgeted to be funded in advance for each Professional pursuant to the Approved Budget.

(d)     For the avoidance of doubt, (i) so long as a Carve Out Trigger Notice has not been issued, the Debtors shall be permitted to pay Allowed Professional Fees as the same may be due and payable in accordance with the DIP Term Credit Agreement and this Interim Order; and (ii) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

16.     <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve Out, nor the proceeds of the DIP Facilities or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any Order, judgment, determination, or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Pre-Petition Obligations, the DIP Obligations,

the Pre-Petition Agents', the Pre-Petition Secured Parties' or the DIP Agents' respective liens on and security interests in any of the Pre-Petition Collateral or DIP Collateral, as applicable; (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Pre-Petition Obligations or DIP Obligations or the Pre-Petition Agents', the Pre-Petition Secured Parties', or DIP Agents' respective liens on and security interests in the Pre-Petition Collateral or the DIP Collateral, as applicable; or (iii) preventing, hindering, or delaying the Pre-Petition Agents' or DIP Agents' respective assertion or enforcement of any lien, claim, right, or security interest or realization upon any Pre-Petition Collateral or DIP Collateral, as applicable, in accordance with the terms and conditions of this Interim Order; (b) without the consent of the DIP Revolving Agent, a request to use Revolving Credit Cash Collateral or DIP Revolving Loans in any manner except to the extent expressly permitted in this Interim Order and DIP Revolving Financing Documents; (c) without the consent of the DIP Term Agent, a request to use DIP Term Loans or Term Loan Priority Collateral in any matter except to the extent expressly permitted in this Interim Order and the DIP Term Financing Documents, (d) a request, without the prior written consent of each DIP Agent, for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or 364(d) other than from the DIP Secured Parties as contemplated herein), unless such other debtor-in-possession financing or financial accommodation is used, in whole or in part, to indefeasibly pay and satisfy in full in cash all Pre-Petition Obligations and DIP Obligations owed respectively to the Pre-Petition Secured Parties and DIP Secured Parties as contemplated herein; (e) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Pre-Petition Secured Parties or the DIP Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to

avoid any claim, lien, or interest of, or obtain any recovery from any of the Pre-Petition Secured Parties or the DIP Secured Parties, under Chapter 5 of the Bankruptcy Code; *provided*, *however*, that, subject to the Carve Out Cap, an amount not to exceed $25,000.00 in the aggregate of the indebtedness incurred pursuant to the DIP Term Facility may be used to pay the Allowed Professional Fees of a Creditors' Committee to investigate (but not prosecute) claims or any Challenge against and possible objections with respect to the Pre-Petition Obligations, and the pre-petition liens and security interests of, the Pre-Petition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Pre-Petition Secured Parties).

       17.    *Payment of Carve Out*.

       (a)    The Debtors shall maintain an escrow account with Thompson Hine LLP ("**Thompson Hine**") for the payment of Allowed Professional Fees (the "**Carve Out Reserve Account**"), which account shall be funded by or on behalf of the Debtors, including through borrowings under the DIP Term Credit Agreement deposited into the DIP Term Proceeds Account, in accordance with the Approved Budget on a weekly basis, in advance, until the delivery of a Carve Out Trigger Notice. Upon the occurrence and during the continuance of an Event of Default, the Carve Out Reserve Account may continue to be funded at the DIP Term Agent's option, up to the Carve Out Cap. Thompson Hine shall pay Allowed Professional Fees to the Professionals, as applicable, from funds in the Carve Out Reserve Account, in compliance with the Interim Compensation Procedures and in the manner set forth in this Interim Order in accordance with the Approved Budget; *provided*, *however*, that, prior to payment in full of the Pre-Petition Obligations, as applicable, and DIP Obligations and termination of the Carve Out, to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including the date a Carve

Out Trigger Notice is delivered to the Debtors, the Debtors' counsel, and counsel for any Committee are less than the amounts funded into the Carve Out Reserve Account, the excess amounts in the Carve Out Reserve Account shall be applied (i) first to fund the Post EOD Carve Out Amount, and (ii) second remitted to the DIP Term Agent to apply to reduce either or both the Pre-Petition Term Obligations and the DIP Term Obligations at DIP Term Agent's sole discretion. For the avoidance of doubt, in making payments from the Carve Out Reserve Account, Thompson Hine shall be entitled to conclusively rely upon written certifications of each Professional as to the amount due and owing to such Professional from the Carve Out Reserve Account and in accordance with the Approved Budget and shall have no liability to any party based upon its reliance on such certifications *provided further* that in the event the Termination Date (as defined in the DIP Credit Agreements) has occurred, and to the extent the Carve Out Reserve Account has been fully funded as required in this Section V and in accordance with the Approved Budget, all obligations of the DIP Term Secured Parties and Pre-Petition Term Secured Parties with respect to the Carve Out shall be terminated.

(b)     The Carve Out Cap shall be reduced, on a dollar-for-dollar basis, on a weekly basis by (without duplication or double counting) the amounts actually funded into the Carve Out Reserve Account and/or the amounts actually paid on account of the Carve Out. To the extent the Carve Out Reserve Account has not been funded in accordance with the Approved Budget prior to the delivery of a Carve Out Trigger Notice, the DIP Term Agent, on behalf of the DIP Term Lenders, may remit the difference to the Carve Out Reserve Account solely from proceeds of DIP Collateral. Payment of any amounts on account of the Carve Out, whether by or on behalf of the DIP Term Agent or any DIP Term Lender, shall not and shall not be deemed to, reduce the Pre-Petition Term Obligations or the DIP Term Obligations, and shall not, and shall not

be deemed to, subordinate any of the DIP Term Secured Parties' liens and security interests in the DIP Collateral or the DIP Term Superpriority Claims to any junior pre- or post-petition lien, interest, or claim in favor of any other party. No DIP Term Secured Party shall, under any circumstance, be responsible for the payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Chapter 11 Cases or Successor Cases under any chapter of the Bankruptcy Code, and nothing in this Section V shall be construed to obligate any DIP Term Secured Party, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)     Nothing in this Interim Order shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Pre-Petition Term Secured Parties and/or the DIP Term Secured Parties to object to the allowance and payment of such fees and expenses. So long as no Event of Default has occurred or is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an Order of the Court, including any Order approving Interim Compensation Procedures, under Bankruptcy Code sections 330 and 331, as the same may be due and payable, solely to the extent set forth in the Approved Budget, and not to exceed the amounts set forth in the Approved Budget; *provided*, *however*, that any such payment shall be subject to entry of a final Order of the Court of each Professional's final application for allowance of such fees and expenses.

(d)     The claims and liens of (i) the Pre-Petition Revolving Agent under and in connection with the Pre-Petition Revolving Financing Documents and (ii) the DIP Revolving Agent under and in connection with the DIP Revolving Financing Documents (other than with respect to Term Loan Priority Collateral) shall not be subject or subordinate to the claims and liens

in respect of the Carve Out in any respect. If any proceeds of any Revolving Loan Priority Collateral are used in any way to fund the Carve Out, such proceeds shall be immediately transferred back to the Debtors and remain subject to the liens of the DIP Revolving Secured Parties.

**VI.    Right to Credit Bid.**

18.    Subject to entry of the Final Order and, to the extent applicable, Section VIII, and solely as provided in the Intercreditor Agreement and Lien Priority Chart, in connection with any sale of assets by any Debtor outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(k), the Pre-Petition Agents, on behalf of the applicable Pre-Petition Revolving Lenders and Pre-Petition Term Lenders, and the DIP Agents, on behalf of the applicable DIP Lenders, as the case may be, shall be entitled to credit bid for the Pre-Petition Collateral or the DIP Collateral up to the outstanding aggregate amount of the applicable Pre-Petition Obligations and applicable DIP Obligations in respect of any such sale.

**VII.   Default; Rights and Remedies; Relief from Stay.**

19.    <u>Events of Default</u>.  The following shall constitute an "**<u>Event of Default</u>**" under this Interim Order:

(a)    the occurrence of any Event of Default as defined and under the DIP Credit Agreements;

(b)    the failure of the Debtors to obtain entry of a Final Order on or before twenty-five (25) days from the Petition Date, unless otherwise agreed in writing by the Pre-Petition Agents and the DIP Agents;

(d)    the Debtors seeking approval of a sale of all or a portion of the Debtors' property that is not acceptable to the Pre-Petition Agents or the DIP Agents; or

(e)      the sale of all or substantially all of the Debtors' property without the order approving such sale providing for the indefeasible payment and satisfaction in full in cash of the Pre-Petition Obligations and the DIP Obligations.

20.      Rights and Remedies Upon Event of Default/Relief from Stay.

(a)      Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Court or providing an Enforcement Notice (as defined below):  (i) the DIP Agents and DIP Lenders shall no longer have any obligation to make any Revolving Loans or Term Loans, as applicable, (or otherwise extend credit) under the applicable DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents shall, at the option of the applicable DIP Agent, be accelerated and become immediately due and payable; (iii) the DIP Agents and the Pre-Petition Agents shall be entitled to immediately terminate the Debtors' right to use Revolving Credit Cash Collateral, without further application or Order of this Court, *provided*, *however*, that the Debtors shall have the right to use (A) first, any available and liquidated Term Loan Priority Collateral (including from funds in the DIP Term Proceeds Account), and (B) second, to the extent of any shortfall, any available Revolving Credit Cash Collateral, to pay the amount in the Approved Budget for payroll during the week ending on the date of such Event of Default; (iv) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Interim Order, the DIP Credit Agreements and the other DIP Financing Documents and the Pre-Petition Financing Documents; (v) the DIP Agents shall be entitled to charge the default rate of interest under the DIP Credit Agreements.

(b)      Without further notice, application or order of this Court, upon the occurrence of and during the continuance of an Event of Default, and after providing not less than

three (3) business days' advance written notice thereof (such period the "**Remedies Notice Period**") (which three (3) business day period applies only to the DIP Collateral enforcement remedies described below), which notice may be by electronic mail (the "**Enforcement Notice**"), to counsel to the Debtors, the U.S. Trustee, counsel to any Creditors' Committee, and counsel to the DIP Agent that is not issuing the Enforcement Notice, the DIP Agents, for the benefit of themselves and the applicable DIP Lenders, and the Pre-Petition Agents, for the benefit of themselves and the Pre-Petition Secured Parties, as applicable, shall be entitled to take any other action and exercise all other rights and remedies provided in this Interim Order, the DIP Financing Documents, the Pre-Petition Revolving Financing Documents, the Pre-Petition Term Financing Documents, or applicable law (including, without limitation, setting off any DIP Obligations (other than with respect to any amount required to fund the Carve Out Reserve Account up to the Carve Out Cap) or Pre-Petition Obligations with DIP Collateral, Pre-Petition Collateral or proceeds in the possession of any Pre-Petition Secured Party or DIP Secured Party), unless otherwise ordered by this Court, as the DIP Agents or the Pre-Petition Agents, as applicable, may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral (including the Revolving Loan Priority Collateral) or any other assets or properties of the Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, and the Pre-Petition Agents, for the benefit of itself and the Pre-Petition Secured Parties, as applicable, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all the Pre-Petition Obligations and DIP Obligations. Notwithstanding the foregoing or anything in paragraph 20(a) above, DIP Revolving Agent may continue to apply proceeds received into the lockbox or collection account to reduce the Pre-Petition Revolving Obligations

or the DIP Obligations in any order at the sole discretion of the DIP Revolving Agent during the Remedies Notice Period.

(c)        Additionally, upon the occurrence and during the continuance of an Event of Default, expiration of the Remedies Notice Period, and the exercise by a DIP Agent or a Pre-Petition Agent of their respective rights and remedies under this Interim Order, the DIP Financing Documents, or Pre-Petition Financing Documents, the Debtors shall cooperate with the DIP Agents in the exercise of such rights and remedies and assist the DIP Agents in effecting any sale or other disposition of the DIP Collateral required by the DIP Agents, including any sale of DIP Collateral pursuant to Bankruptcy Code section 363 or assumption and assignment of DIP Collateral consisting of contracts and leases pursuant to Bankruptcy Code section 365, in each case, upon such terms that are acceptable to the DIP Agents.

(d)        Upon the occurrence and during the continuance of an Event of Default, and subject to the Remedies Notice Period provided for above, in connection with a liquidation of any of the Pre-Petition Collateral or DIP Collateral as provided for herein, the DIP Agents or the Pre-Petition Agents (or any of their respective employees, agents, consultants, contractors, or other professionals), as applicable, shall have the right, at the sole cost and expense of the Debtors, to: (i) enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by the Debtors; *provided*, *however*, that the DIP Agents may only be permitted to do so in accordance with (A) existing rights under applicable non-bankruptcy law, including, without limitation, applicable leases, (B) any pre-petition (and, if applicable, post-petition) landlord waivers or consents, or (C) further order of the Court on motion and notice appropriate under the circumstances; and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents, equipment, or any other similar assets of the Debtors, or assets that

are owned by or subject to a lien of any third party and that are used by the Debtors in their businesses; *provided*, *however*, the DIP Agents and the Pre-Petition Agents may use such assets upon entry of this Interim Order to the extent permitted by non-bankruptcy law.  The applicable DIP Agents and DIP Lenders (or the applicable Pre-Petition Secured Parties) will be responsible for the payment of any applicable fees, rentals, royalties, or other amounts owing to such lessor, licensor or owner of such property (other than the Debtors) for the period of time that the such DIP Agent(s) or DIP Lender(s) actually occupies any real property or uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts owing for any period prior to the date that such DIP Agent(s) or DIP Lender(s) actually occupies or uses such assets or properties).

(f)     The rights and remedies of the DIP Agents and Pre-Petition Agents specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agents and/or Pre-Petition Agents may have under the DIP Financing Documents or Pre-Petition Revolving Financing Documents, or the Pre-Petition Term Financing Documents, as applicable, or otherwise and may be exercised in whole or in part in any order.  With respect to the exercise of such rights and remedies, the fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

21.     <u>Relief from Stay</u>.  For the purpose of exercising rights, options and remedies set forth in this Section VII, upon expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the Pre-Petition Agents, on behalf of the Pre-Petition Secured Parties, and DIP Agents, on behalf of the DIP Secured Parties, as applicable, shall be automatically and completely relieved from the effect of any stay under Bankruptcy Code section 362, any other restriction on the enforcement of their liens (subject to the Intercreditor Agreement) upon and security interests

in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Financing Documents, the Pre-Petition Revolving Financing Documents, the Pre-Petition Term Financing Documents (as applicable), or this Interim Order, subject to the Intercreditor Agreement, the Lien Priority Chart, and the Claim Priority Chart.

22.    <u>Waiver Agreements</u>.  Subject to entry of a Final Order, all rights, options, and remedies granted to the Pre-Petition Agents or DIP Agents in either or both of any landlord or warehouseman's waiver and/or consent executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreements, as applicable, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable, and applicable to and binding upon the landlords and other parties to such waiver or consent agreements with respect to the Pre-Petition Collateral and DIP Collateral.

**VIII.  Challenges to Pre-Petition Obligations.**

23.    The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations included in Paragraph G, which stipulations and admissions are and shall be binding upon the Debtors. Upon the date that is seventy-five (75) days from entry of this Interim Order (the "**<u>Initial Challenge Period</u>**"), the stipulations and admissions contained in this Interim Order, including without limitation, the Debtors' Stipulations, shall also be binding upon the Debtors' Estates and all other parties in interest, including the Creditors' Committee and any other person or entity acting or seeking to act on behalf of the Debtors' Estates, and any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**<u>Trustee</u>**") for all purposes, unless (a) during the Initial Challenge Period the Creditors' Committee or any other party interest, in each case with request standing, has properly and timely filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Pre-

Petition Obligations, the liens of the Pre-Petition Agents on the Pre-Petition Collateral securing the Pre-Petition Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against the Pre-Petition Agents and/or any other Pre-Petition Secured Party on behalf of the Debtors' Estates ((x) and (y), collectively, referred to herein as "**Challenges**") in connection with the matters related to the Pre-Petition Financing Documents, the Pre-Petition Obligations, the Pre-Petition Liens, or the Pre-Petition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge or claim in any such timely filed adversary proceeding; *provided*, *however*, that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date.  If during the Initial Challenge Period, the Creditors' Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the Creditors' Committee or other third party solely with respect to the Challenge(s) asserted in the draft complaint until three (3) business days from the entry of an Order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court (the "**Extended Challenge Period**", together with the Initial Challenge Period, the "**Challenge Period**").  If standing is denied by the Court, the Challenge Period shall be deemed to have expired. If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court:  (1) the Debtors' stipulations, admissions and releases contained in this Interim Order (including the Debtors' Stipulations and the releases set forth in paragraph 25 below) shall be binding on all parties in interest, including the Debtors' Estates, the Creditors' Committee, and any subsequently appointed Trustee, case fiduciary, or other successors and assigns of the Debtors and the Debtors' Estates; (2) the Pre-

Petition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases, including, without limitation, any subsequent chapter 7 case; (3) the Pre-Petition Agents' liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and with the priority specified in the Debtors' Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Pre-Petition Obligations, the Pre-Petition Secured Parties' liens on the Pre-Petition Collateral; and the Pre-Petition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further Challenge by any Creditors' Committee or any other party in interest, and any such Creditors' Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided*, *however*, that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of any remaining Initial Challenge Period or ten (10) days from appointment, whichever is greater, subject to the limitations described herein. If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations, and admissions (including without limitation, in the Debtors' Stipulations), contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Creditors' Committee and any other person, including any Trustee appointed in any Chapter 11 Case(s) or Successor Cases, as applicable, except as to any such findings and

admissions that were expressly challenged as set forth with specificity in the original complaint initiating the adversary proceeding, and any claims or challenges not so specified shall be deemed forever, waived, released and barred, including any amended or additional claims that may or could have been asserted thereafter through an amended complaint under Federal Rules of Civil Procedure 15 or otherwise. Nothing in this Interim Order vests or confers on any person, including any Creditors' Committee, any Trustee, or any other party in interest, standing or authority to pursue any claim or cause of action belonging to the Debtors or their Estates.

**IX.    Debtors' Waivers and Releases.**

24.    <u>Section 506(c) Claims and 552(b) Equities</u>.  Upon entry of a Final Order, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against any of the Pre-Petition Secured Parties or the DIP Secured Parties, their respective claims, or the DIP Collateral or Pre-Petition Collateral, as applicable, pursuant to Bankruptcy Code section 506(c) without the prior written consent of the DIP Agents (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agents, any DIP Lender or any Pre-Petition Secured Party). Upon entry of a Final Order, the Pre-Petition Secured Parties and DIP Secured Parties shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Pre-Petition Secured Parties and DIP Secured Parties with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable.

25.    <u>Release</u>.

(a)    In consideration of and as a condition to the DIP Agents and the DIP Lenders making the DIP Facilities available under the applicable DIP Credit Agreement, the consent by the Pre-Petition Revolving Secured Parties and DIP Secured Parties to the use of

Revolving Credit Cash Collateral, the consent of the Pre-Petition Term Secured Parties to have their liens primed as specifically set forth herein, and providing other credit and financial accommodations to the Debtors pursuant to the provisions of this Interim Order and the DIP Financing Documents (including the Carve Out provisions), each Debtor, on behalf of itself, and successors and assigns and its Estate (collectively, the "**Releasors**"), hereby absolutely releases and forever discharges and acquits each Pre-Petition Secured Party and each of their respective successors, participants, and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, and other representatives (the Pre-Petition Agents, each of the Pre-Petition Revolving Credit Lenders, each of the Pre-Petition Term Lenders, and all such other parties being hereinafter referred to collectively as the "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, the "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against the Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever that arose or may have arisen at any time on or prior to the date of this Interim Order, arising out of, relating to, or in connection with, any of the Pre-Petition Obligations, the Pre-Petition Financing Documents, any Pre-Petition Revolving Loans, Pre-Petition Term Loans, or other financial accommodations under the Pre-Petition

Financing Documents; *provided*, *however*, that such release shall not be effective with respect to (i) the Debtors until entry of a Final Order and (ii) the Estates until the expiration of the Challenge Period as provided in paragraph 23. In addition, upon the indefeasible payment and satisfaction in full of all Obligations (as defined in the DIP Financing Documents) owed to the DIP Agents and the DIP Lenders by the Debtors, and termination of the rights and obligations arising under this Interim Order, any Final Order, and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agents), the DIP Agents and the DIP Lenders shall be automatically deemed to be absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims, and causes of action arising, occurring in connection with, or related to the DIP Financing Documents, this Interim Order, or any Final Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated).

(b)     Subject to Section VIII with respect to all applicable parties other than the Debtors, each Releasor hereby absolutely, unconditionally and irrevocably covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding, or otherwise) any Releasee on the basis of any Pre-Petition Released Claim that has been released and discharged by each Releasor pursuant to clause 25(a) above.  If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**X.     Other Rights and Obligations.**

26.     <u>No Modification or Stay of this Interim Order</u>.  Based upon the record presented to the Court by the Debtors, notwithstanding (a) any stay, modification, amendment, supplement, *vacatur*, revocation, or reversal of this Interim Order, the DIP Financing Documents or any term

hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2), or (c) the dismissal or conversion of one or more of the Chapter 11 Cases, the DIP Agents and the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agents and the DIP Lenders pursuant to Bankruptcy Code section 364(e), this Interim Order, and the DIP Financing Documents as of the date any event referred to in clauses (a), (b) or (c) shall have occurred.

27.      Power to Waive Rights; Duties to Third Parties.  The Pre-Petition Secured Parties and the DIP Secured Parties shall have the right, in their respective sole discretions, to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order, the Pre-Petition Credit Agreements, or the DIP Credit Agreements ("**Lender Rights**") with respect to each of them, as applicable, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by any of them of any Lender Rights shall apply solely to such party and to the Lender Right so waived and shall not be or constitute a continuing waiver, except that any waiver by the Pre-Petition Agents, on behalf of the Pre-Petition Revolving Lenders or Pre-Petition Term Lenders, as applicable, or the DIP Agents, on behalf of the applicable DIP Lenders, shall bind the Pre-Petition Revolving Lenders, Pre-Petition Term Lenders, or DIP Lenders, as applicable, in accordance with the applicable Pre-Petition Financing Documents or DIP Financing Documents, including, as applicable, the Intercreditor Agreement. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any Pre-Petition Secured Party or any DIP Secured Party.  For the avoidance of doubt, such discretion

with respect to the DIP Term Agent shall be governed by the terms of the DIP Term Credit Agreement.

28.    <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Interim Order are in addition, and without prejudice, to the rights of the Pre-Petition Secured Parties or the DIP Secured Parties, subject to the Intercreditor Agreement, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition Financing Documents, or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Revolving Credit Cash Collateral, other Pre-Petition Collateral or the proceeds of the DIP Facilities (other than as permitted under this Interim Order and the DIP Credit Agreements) or the granting of any interest in the DIP Collateral (other than as contemplated herein or permitted under the DIP Financing Documents, subject to the Intercreditor Agreement), to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

29.    <u>Modification of the Automatic Stay</u>.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Financing Documents, including, without limitation, the application of collections, authorization to make payments, granting of liens, and perfection of liens.

30.    <u>Binding Effect</u>.

(a)    The provisions of this Interim Order, the DIP Financing Documents, the DIP Superpriority Claims, DIP Liens, Adequate Protection Liens, Adequate Protection Claims, the DIP Obligations and any and all rights, remedies, privileges, and benefits in favor of the DIP

Agents, the DIP Lenders, and the Pre-Petition Secured Parties provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other Order, including, without limitation, any order that may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

(b)    Any order dismissing one or more of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the DIP Agents', the DIP Lenders' and the Pre-Petition Secured Parties' respective, liens on, and security interests in, the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations, Adequate Protection Obligations, and Pre-Petition Obligations, as applicable, owed to such parties, respectively, are indefeasibly paid and satisfied in full, and (ii) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claims, DIP Liens, Adequate Protection Liens, and Adequate Protection Claims of the Pre-Petition Secured Parties and DIP Secured Parties, as applicable.

(c)    In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing, this Interim Order shall remain in full force and effect, except as expressly amended or modified at such Final Hearing.

(d)    This Interim Order shall be binding upon the Debtors, their Estates, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases of any

Debtors, and shall inure to the benefit of the Pre-Petition Secured Parties, the DIP Secured Parties, the Debtors, and their respective successors and assigns, subject to the rights of any party in interest or trustee under Section VIII above.

31.     Marshaling.  Subject to entry of a Final Order, in no event shall the DIP Agents, the DIP Lenders, or the Pre-Petition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar equitable doctrine with respect to the Pre-Petition Collateral or the DIP Collateral.

32.     Proofs of Claim.  Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, neither the Pre-Petition Secured Parties nor the DIP Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases with respect to, as applicable, any of Pre-Petition Obligations, Adequate Protection Obligations, Adequate Protection Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims, or any other claims or liens granted hereunder or created by this Interim Order.  Each Pre-Petition Agent, for the benefit of the applicable Pre-Petition Secured Parties, and each DIP Agent, for the benefit of the applicable DIP Secured Parties, is hereby authorized and entitled, in its respective sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of the applicable Pre-Petition Secured Parties in respect of the applicable Pre-Petition Obligations or on behalf of the applicable DIP Secured Parties in respect of the applicable DIP Obligations.  Any proof of claim so filed shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the Pre-Petition Secured Parties or DIP Secured Parties.

33.    <u>Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h)</u>.  The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

34.    <u>Order Controls</u>.  In the event of a conflict between (a) the terms and provisions of the DIP Financing Documents or the Pre-Petition Financing Documents, as applicable, and (b) the terms and provisions of this Interim Order, then in each case the terms and provisions of this Interim Order shall govern.

35.    <u>Calculation of Dates</u>.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

37.    Nothing herein shall be deemed to alter, limit, modify, waive and/or release any rights, claims and/or interests (if any) of any of the Debtors' sureties, including, without limitation, subrogation and/or trust rights (if any), in and to any proceeds of any contracts bonded by the Debtors' sureties, it being expressly acknowledged that all such rights are reserved and preserved.

**XI.    Final Hearing and Response Dates.**

38.    The Final Hearing on the DIP Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for **August 17, 2023, at 10:00 a.m. (<u>prevailing Eastern Time</u>)** before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to a Creditors' Committee, if appointed, through its counsel, if the same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Thompson Hine LLP, 3900 Key Center, 127

Public Square, Cleveland, OH 44114-1291 (Attn: Alan R. Lepene (alan.lepene@thompsonhine.com), Scott B. Lepene (scott.lepene@thompsonhine.com), and Sean A. Gordon (sean.gordon@thompsonhine.com)), and Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (b) counsel for the DIP Revolving Agent and Pre-Petition Revolving Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com), and One Logan Square, 130 N. 18th Street, Philadelphia, Pennsylvania 19103, Attn: Gregory F. Vizza, Esq. (gregory.vizza@blankrome.com); (c) counsel for the DIP Term Agent and Pre-Petition Term Agent, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020 (Attn: David T.B. Audley (audley@chapman.com) and Carey J. Gaughan (gaughan@chapman.com)); (d) counsel to any Creditors' Committee; and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801(Attn: Joseph Cudia); email: joseph.cudia@usdoj.gov; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, by no later than **August 10, 2023, at 4:00 p.m. (prevailing Eastern Time)**.

**Dated: July 27th, 2023**
**Wilmington, Delaware**

                                    **BRENDAN L. SHANNON**
                                    **UNITED STATES BANKRUPTCY JUDGE**