**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP, INC., *et al.*,[1] | Case No. 23-10961 (BLS) |
| Debtors. | (Jointly Administered) |

**MOTION TO LIFT STAY AS TO BONDED CONTRACT FUNDS, OR
ALTERNATIVELY, FOR ADEQUATE PROTECTION
FILED BY LIBERTY MUTUAL INSURANCE COMPANY, BERKSHIRE HATHAWAY
SPECIALTY INSURANCE COMPANY AND ARCH INSURANCE COMPANY**

Co-sureties, Liberty Mutual Insurance Company, Berkshire Hathaway Specialty Insurance Company, and Arch Insurance Company (collectively "Liberty Mutual"), through undersigned counsel, pursuant to 11 U.S.C. § 362(d) and 11 U.S.C. § 105, move this Honorable Court for an Order modifying the automatic stay in the captioned bankruptcy cases to permit the Jacksonville Electric Authority ("JEA") to declare Debtor Williams Industrial Services, LLC ("Debtor") in default of its Bonded Contract (as defined *infra*) with JEA, and to allow Liberty Mutual to: (1) collect Bonded Contract Funds (as defined *infra*) from JEA on the Bonded Contract and (2) utilize said Bonded Contract Funds to pay claims under the payment and performance bond issued by Liberty Mutual on behalf of the Debtor, including payment of labor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918),Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177),  GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N.  3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

subcontractor, and supplier claims and costs, and other costs incurred in completing the Bonded Contract, and reimbursing Liberty Mutual for Bonded Contract payments advanced by Liberty Mutual to date. Liberty Mutual has no objection to filing with the Court a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

Alternatively, Liberty Mutual seeks adequate protection of the Bonded Contract Funds in the form of an order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Liberty Mutual before funds can be disbursed, and an Order that the Bonded Contract Funds are to be used and can be used only for direct Bonded Contract costs, including the payment of amounts due to subcontractors and suppliers for work performed on the Bonded Contract, and not for other purposes, including unbonded projects, general overhead or administrative costs, and / or employee or officer compensation.  In support of this motion, Liberty Mutual states:

## JURISDICTION

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334.  This matter is a "core" proceeding pursuant to 28 U.S.C. Section 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On July 22, 2023, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code ("Petition").  Several of the Debtor's related entities also filed Chapter 11 Cases, which are being jointly administered with the Debtor's.  Doc. 56..

30957150v.1

3.      At all material times, the Debtor was engaged in public works construction. From time to time, the Debtor was required to provide payment bonds and performance bonds in connection with those public projects. The bonds secured the Debtor's performance under those contracts, as well as the payment of subcontractors, laborers and materialmen providing labor in connection with and/or materials incorporated into those projects.

4.      At the time that the Debtor filed the Petition, Debtor was a party to a construction contract with JEA for the construction of the Consolidated Rivertown/WTP Project Package – IFB # 029-21 ("Project"), JEA Contract No. JEA10617 (the "Bonded Contract") where Liberty Mutual had issued payment and performance bonds (the "Bond"). Declaration of Genise Teich, at ¶ 3, attached as **Exhibit "A."**

5.      Before it would issue said performance and payment bonds, Liberty Mutual required certain protections from the Debtor of monies to be paid to the Debtor under the Bonded Contract (the "Bonded Contract Funds"), and from loss to Liberty Mutual if the Debtor failed to perform its obligations under the Bonded Contract or to pay labor and material suppliers on the Bonded Contract.  *See* Declaration of Ms. Teich, at ¶ 4.

6.      In issuing performance and payment bonds, Liberty Mutual relied upon its rights of legal and equitable subrogation, based on established law that the surety has a priority right to contract funds on bonded projects for the completion of those projects and payment of subcontractors and suppliers on those projects.  *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36 (1962); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989).

7.      Further, to induce Liberty Mutual to issue the Bond, the Debtor[2] (and others) signed a General Agreement of Indemnity (the "Indemnity Agreement") with Liberty Mutual, a copy of which is attached as **Exhibit "B,"** wherein the Debtor acknowledged that the Bonded Contract Funds are trust funds for the payment of Bonded Project costs and obligations. Indemnity Agreement, ¶ 10; s*ee also* Declaration of Ms. Teich, at ¶ 6.

8.      In reliance on its rights of legal and equitable subrogation and the Indemnity Agreement, Liberty Mutual issued the Bond on behalf of and at the request of the Debtor on the Bonded Contract. Declaration of Ms. Teich, at ¶ 7.

9.      In early-to-mid July 2023, the Debtor advised Liberty Mutual that it had encountered financial difficulties and did not anticipate completing the Bonded Contract.  *See* Declaration of Ms. Teich, at ¶ 8.  On or about July 19, 2023, Debtor abandoned the Project and instructed its employees and subcontractors not to return to the Project.  Declaration of David "Joe" Mattingly, attached as **Exhibit "C."** On July 22, 2023, Debtor filed the Petition, and on July 24, 2023 filed a First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date ("Rejection Motion"). Doc. 37. Debtor seeks to reject the Bonded Contract in the Rejection Motion effective as of July

---

[2] Co-Debtor Williams Industrial Services Group, Inc. ("WISG"), executed the Indemnity Agreement.  However, the Indemnity Agreement applies to any of WISG's "subsidiaries or affiliates."  Indemnity Agreement, pg. 1.  Debtor is a subsidiary of WISG.  Affidavit of Ms. Teich, at ¶ 5.  *See also* Doc. 1, pg. 26-27 (Omnibus Corporate Ownership Statement stating that "100% of Williams Industrial Services, LLC is owned by Williams Industrial Services Group, LLC" and that "100% of Williams Industrial Services Group, LLC is owned by Williams Industrial Services Group, Inc.").

30957150v.1

22, 2023.  Doc. 37-1, pg. 5, ln. 5.  Thus, Debtor has abandoned the Project and has no intention of completing it.

10.    Liberty Mutual has not completed a financial books and records and analysis of the Bonded Project, but based on its ongoing investigation, Liberty expects to sustain losses completing the Bonded Project and making payments for labor, services and/or material furnished to the Project. Liberty Mutual anticipates that the cost to complete the Bonded Project to exceed Contract Balances by approximately $4,000,000.  Mattingly Declaration, ¶ 4.

11.    Furthermore, Liberty currently does not know whether the remaining Bonded Contract Funds are fully collectible because JEA may have claims for backcharges, direct payments by JEA to subcontractors and/or suppliers, and other claims.  Declaration of David Mattingly, ¶ 5.  Additionally, Liberty anticipates receiving claims against the Bond from Debtor's unpaid subcontractors and suppliers, which will increase the amount of the loss.  *Id*., ¶ 4.

12.    Based on the above information, Liberty Mutual currently is exposed to a loss of at least $4,000,000.  Again, this does not include potential additional losses due to uncollectable Bonded Contract balances, unreimbursed payments made pursuant to the Bond, or payments made to Payment Bond claimants.  Thus, based on information Liberty Mutual has obtained to date, there are insufficient Bonded Contract Funds to reimburse it for its losses on Bonded Project, pay outstanding claims on Bonded Project and to complete the Bonded Project, and there does not appear to be equity in the Bonded Contract Funds for the estate.  Further, the warranty

period — to the extent applicable — under the Bonded Contract has not run, so unknown exposure remains.

13.    Debtor, through its abandonment of the Bonded Project and representations made in the Rejection Motion, has no intention of completing the Bonded Project.  However, JEA has not declared Debtor in default of the Bonded Project. Declaration of Ms. Teich, at ¶ 8.  As a condition of Liberty Mutual's performance under the Bond, JEA must declare Debtor in default of the Bonded Contract. *Id.*  Thus, Liberty Mutual also requests leave from the stay, to the extent necessary, to allow JEA to declare Debtor in default of the Bonded Contract.

## LAW AND ARGUMENT

The Bonded Contracts Funds are trust funds for payment of the costs of completing the work under the Bonded Contract and payment of those supplying labor and materials used in the prosecution of work under the Bonded Contracts, and Liberty Mutual has a first priority right to the Bonded Contract sum that is superior to that of the Debtors (and any lenders or other creditors attempting to claim priority) under principles of legal and equitable subrogation.  *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36 (1962); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989); *Federal Ins. Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Co. v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *School Board of Broward Co. v. J.V. Construction Corp.,* 2004 WL 1304058 *17 (S.D. Fla. April 23, 2004); *In re Cone Constructors, Inc.*, 265 B.R. 302, 308-309 (Bkrtcy. M.D. Fla. 2001). Liberty Mutual's equitable subrogation rights are superior to that of any other creditor of the Debtors.  *Id.*  As noted by the Supreme

Court in *Pearlman*, "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-137.

In *Transamerica Ins. Co. v. Barnett Bank of Marion Co.,* an action was brought to determine the priority between a bank, which provided loans to a contractor, and a surety, which issued payment and performance bonds on behalf of a contractor to earned but unpaid sums due from a contracting party to a contractor. *Transamerica Ins. Co.,* 540 So. 2d at 114. The Florida Supreme Court (the Bonded Project is located in Florida) quashed the lower court's finding that a bank that provided loans to the contractor had a priority interest in the defaulted principal contractor's accounts receivable on a construction project, and held that, under the doctrine of equitable subrogation, the right of a surety to bonded contract funds is superior to the interests of all concerned parties, including any assignment rights of a bank. *Id.* at 116; *In re Padula Constr. Co., Inc.,* 118 B.R. 143, 146 (S.D. Bankr. Fla. 1990). Thus, Liberty Mutual's rights in the Bonded Contract Funds holds priority over any creditor claim, including any lenders.

Further, the Bonded Contract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 to the extent that the Debtor has failed to pay subcontractors and/or suppliers for work performed on the Bonded Contract and has not completed certain Bonded Contract obligations. Therefore, the Debtor has not earned the Bonded Contract Funds, which represent work performed by subcontractors and/or suppliers and further must be used to complete the Bonded Contract before the Debtor can realize any equity in the Bonded Contract Funds. *See Pearlman,* 371 U.S. at 135-36 (recognizing surety's priority right to contract funds); *In re*

*Modular Structures, Inc.*, 27 F.3d 72, 77 (3rd Cir. 1994); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir. 1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820 (1968); *In re Pacific Marine Dredging & Construction*, 79 B.R. 924, 929 (Bankr. D.Or. 1987).  In *Modular Structures*, the Court noted:

> We conclude that, based upon the record currently available in the present case, Modular breached its contractual obligation to pay its subcontractors and was therefore not "owed" the monies held by the [Owner].  Under those circumstances, those funds are not properly considered part of the estate in bankruptcy and are not subject to the Bank's superpriority lien.

27 F.3d at 77.

As noted above, Liberty Mutual further has a priority interest in the Bonded Contract sums as the subrogee of the obligees on and claimants under the Bond that is superior to any claim of other creditors or the Debtor. *Transamerica,* 540 So. 2d 113 (Fla. 1989); *see also Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *See also In the Matter of J.V. Gleason Co., Inc.*, 452 F.2d 1219 (8th Cir. 1971) (subrogation right attaches even in the absence of a UCC-1 filing).

Although the Bonded Contract Funds are not property of the estate to the extent that the Debtor has not paid subcontractors and suppliers on or completed all obligations under Bonded Contracts, in an abundance of caution, Liberty Mutual requests that the Court modify the stay to (1) allow JEA to declare Debtor in default; (2) permit Liberty to collect Bonded Contract Funds from JEA; and (3) utilize said Bonded Contract Funds to pay claims under the Bond, including costs incurred in completing any Bonded Contract.  *See Louisiana Industrial Coatings, Inc. v. Boh Bros. Constr. Co., Inc.*, 53 B.R. 464 (E.D. La. 1985).  Liberty Mutual has no objection to

providing the Court and the Debtor with a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

Alternatively, Liberty Mutual is entitled to adequate protection of the Bonded Contract sums to insure that they are used solely for direct Bonded Contract costs. Bankruptcy courts have protected the surety's interest in contract funds by limiting the debtor's use of the contract funds to the bonded project and requiring the debtor to separately account for contract funds. *See In re RAM Construction Co.*, 32 B.R. 758 (Bankr. W.D. Pa. 1983) (noting that "the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *see also* 11 USC § 363(c)(4) (requiring the Debtor to "segregate and account for any cash collateral").

Accordingly, Liberty Mutual is entitled to adequate protection of the Bonded Contract Funds in the form of an Order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Liberty Mutual before funds can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project costs, and not for other purposes.

## CONCLUSION

Liberty Mutual respectfully requests that the Court lift the stay to allow JEA to declare Debtor in default of the Bonded Contract for abandoning the Bonded Project and rejecting the Bonded Contract, and to allow Liberty Mutual to: (1) perform in accordance with its Bond, including but not limited to collecting Bonded Contract Funds; and (2) to utilizing said Bonded Contract Funds to pay claims under the Bond on behalf of the Debtor, including payment of

-9-

labor, subcontractor, and supplier claims and costs, and other costs incurred in completing the Bonded Contract; and (3) authorizing Liberty Mutual to include any losses exceeding Bonded Contract balances in its proof of claim. Liberty Mutual has no objection to filing with the Court a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

Alternatively, Liberty is entitled to adequate protection of the Bond Contract balances in the form of an order requiring that the funds be deposited into a separate trust account that requires the signature of the Debtor and Liberty Mutual before funds can be disbursed, and an Order that the Bonded Contract balances can be used only for direct Bonded Project costs, and not for other purposes, such as payment of officer salaries, home office overhead or administrative costs, or other projects.

Dated: August 1, 2023     Respectfully submitted,

          WHITE AND WILLIAMS LLP

          */s/ Rochelle Gumapac*
          Rochelle Gumapac, Esquire (DE No. 4866)
          WHITE AND WILLIAMS LLP
          600 N. King Street, Suite 800
          Wilmington, DE  19801-3722
          Telephone:  (302) 654-0424
          Facsimile:  (302) 654-0245
          Email: gumapacr@whiteandwilliams.com

           -and-

          WHITE AND WILLIAMS LLP
          Amy E. Vulpio, Esquire (admitted *pro hac vice*)
          1650 Market Street, Suite 1800
          One Liberty Place

-10-

Philadelphia, PA  19103-7395
Telephone: (215) 864-6250
Facsimile:  (215) 789-7550
Email: vulpioa@whiteandwilliams.com

*Counsel for Co-Sureties Arch Insurance Company,*
*Berkshire Hathaway Specialty Insurance Company,*
*and Liberty Mutual Insurance Company*

-11-