# EXHIBIT "B"



# GENERAL AGREEMENT OF INDEMNITY
## COMMERCIAL SURETY

This General Agreement of Indemnity (hereinafter the "Agreement") is made and entered into by the following undersigned individuals, corporations, and/or other business entities **Williams Industrial Services Group Inc.** (individually and collectively hereinafter called "Indemnitors"), jointly and severally, in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Corporation, and any other company that is part of or added to the Liberty Mutual Group, severally not jointly (individually and collectively hereinafter called "Surety") with respect to any bonds, undertakings, recognizances, reinsurances, instruments of guarantee or other Surety obligations (individually and collectively hereinafter called "Bonds"), requested from and/or issued by the Surety before, on or after the date of this Agreement, for:

(i) any of the Indemnitors, and any Indemnitor added hereto by written amendment;
(ii) any of the Indemnitors' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and/or
(iii) any other entity or person in response to a request from any party described in items (i) or (ii) above (including requests from their agents, brokers or producers);

and as to all of the foregoing, whether they act alone or in joint venture with others whether or not said others are named herein (individually and collectively hereinafter called "Principals").

WHEREAS, the Indemnitors and Principals desire Surety to execute Bonds on their behalf, or to renew, continue, extend, replace or to refrain from canceling Bonds; and WHEREAS, at the request of Indemnitors and Principals and with the understanding that this Agreement be given and in reliance upon this Agreement, the Surety has heretofore or has presently been requested to and/or has executed or has procured to be executed, and, from time to time hereafter, may be requested to and/or may execute or may procure to be executed, Bonds for the Principals;

NOW, THEREFORE, in consideration of these premises, and intending to be legally bound hereby, the Indemnitors and Principals for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree, in favor of the Surety, its successors and assigns, as follows:

1. BENEFICIAL INTEREST - The Indemnitors represent and warrant that each of them is specifically, materially and beneficially interested in the procurement and/or issuance of each of the Bonds for each of the Principals.

2. PREMIUMS - The Principals or Indemnitors shall pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety for any Bonds requested from and/or issued by the Surety, in accordance with the Surety's rate filings, its manual of rates, or as otherwise agreed upon, and where such premium, costs and charges are annual, continue to pay the same, until the Principals or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from all liability under any Bonds.

3. DECLINE EXECUTION - The Surety has no obligation to execute, renew, continue, extend, amend or replace any Bonds, including final bonds (regardless of whether the Surety has issued a bid or proposal bond), and may, at its sole discretion, decline to do so. The Surety may cancel any Bonds unless the Bonds state otherwise, and the Principals and Indemnitors shall make no claim to the contrary. The Principals and Indemnitors shall make no claim relating to the failure or refusal of any person or entity to accept any of the Surety's Bonds or to award any contract to any Principals.

4. CHANGES - Assent by the Surety to changes in any Bonds and/or in the contracts or obligations covered by any Bonds or refusal so to assent shall not release or in any way affect the obligations of the undersigned to the Surety.

5. INDEMNITY - The Indemnitors shall exonerate, indemnify and save harmless the Surety from and against any and all losses, costs, and damages of whatsoever kind or nature, including, but not limited to, counsel and consultant fees and expenses, court costs, and pre- and post-judgment interest (such interest to accrue from the date of a breach of this Agreement or a breach of any other written agreements executed with or in favor of the Surety by any Indemnitors and/or Principals (hereinafter called the "Other Agreements")), which the Surety may at any time sustain or incur by reason of the extension of surety credit to any Principal, including but not limited to: (1) the request to execute, procure, or deliver any Bonds; (2) the execution, procurement or delivery of any Bonds, whether already or hereafter executed; or the renewal or continuation thereof; (3) making any investigation or payment; (4) obtaining a release from any Bonds or other obligations related to the extension of surety credit; or (5) the prosecution, defense, or obtaining a release from any action brought in connection therewith, including those subject to bankruptcy court jurisdiction, and, further, those actions relating to the recovery or attempt to recover any salvage, the failure of the Principals or Indemnitors to perform or comply with the terms of this Agreement or any Other Agreements, and in the enforcement of the terms of this Agreement or any Other Agreements. The Principals and Indemnitors agree that in any accounting between any of them and the Surety, vouchers or other evidence of payment(s) incurred by the Surety shall constitute *prima facie* evidence of the fact and extent of the liability of the Principals and Indemnitors to the Surety.

6. SETTLEMENTS - The Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds.

7. BOOKS AND RECORDS - Until such time as the Surety has been furnished with evidence (satisfactory to the Surety in its sole discretion) of its discharge, without loss, from any and all Bonds, and the Surety is fully reimbursed all amounts due to it under this Agreement or Other Agreements, the Surety shall have the right to reasonable access to the books, records and accounts of the Principals and Indemnitors for the purposes of inspection, copying or reproduction. The Principals and Indemnitors hereby authorize and request that any person or entity doing business with the Principals and Indemnitors shall furnish to the Surety any information requested by the Surety that

is related or relevant to any Bonds, bonded contracts or obligations, or any obligations of the Principals and Indemnitors to the Surety under this Agreement or Other Agreements.

8. ASSIGNMENT, SECURITY AND EVENTS OF DEFAULT - The Principals and the Indemnitors hereby grant, assign, pledge and convey to the Surety, as security for the full performance of their obligations under this Agreement and for the payment of any other indebtedness or liability of the Principals and Indemnitors to the Surety, whether heretofore or hereafter incurred, a lien on and security interest in and to the Principals' and/or Indemnitors' interest, title and rights in: (a) the proceeds of any insurance policy affording coverage for all or part of any bonded obligations; and (b) the contracts or the obligations that are the subject of the Bonds, or that grow in any manner out of the Bonds, including without limitation all proceeds thereof, whether such interest, title and rights are accounts or general intangibles (as defined in the relevant Uniform Commercial Code). While the lien and security interest granted to the Surety herein is effective immediately and may be evidenced by the filing of a financing statement by the Surety at any time, <u>the Surety may exercise its remedies with respect to such lien and security interest hereunder and under applicable law only in the event of</u>: 1) any abandonment, forfeiture or breach of any contract or obligations referred to in the Bonds or any breach of any Bonds; or 2) a default in discharging any other indebtedness or liability incurred in connection therewith, when due; or 3) any breach of this Agreement or any Other Agreements; or 4) any assignment by the Principals or Indemnitors for the benefit of creditors, or upon any one or more of the Principals' or Indemnitors' involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether insolvent or not. The Principals and Indemnitors hereby irrevocably grant, appoint and constitute the Surety as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all rights of the Principals and Indemnitors assigned and set over to the Surety in this Agreement, including the authority to execute on behalf of the Principals and Indemnitors any documents or agreements deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to the Surety under all other provisions of this Agreement. The Principals and Indemnitors hereby ratify all actions taken and done by the Surety as attorney-in-fact. Principals and Indemnitors agree to use their best efforts to effectuate all provisions of this Paragraph. This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, under law or in equity. The Principals and Indemnitors hereby authorize Surety to file such financing statements as Surety deems necessary or appropriate to perfect the liens and security interests granted herein.

9. TAKEOVER OF PERFORMANCE - Upon the happening of any of the events of default described in 1) through 4) of paragraph 8, irrespective of whether the Surety exercises any of its rights and remedies under paragraph 8, the Surety shall have the right, but not the obligation, with or without exercising any other right conferred upon it by law or under the terms of this Agreement, to take over part or all of the performance under any contract(s) or obligation(s) covered by any Bond, and at the expense of the Principals and Indemnitors to complete or arrange for the completion of the same, and the Principals and Indemnitors shall promptly, upon demand, pay to the Surety all losses, costs and damages of whatsoever kind or nature incurred by the Surety, including, but not limited to, counsel and consultant fees and expenses.

10. TRUST FUNDS - The Principals and Indemnitors hereby understand, agree and declare that all of their interest, title and rights in the contract or the obligations that are the subject of a Bond, or that grow in any manner out of said Bond, including but not limited to funds required by statute or regulation to be held in trust for the benefit of any obligee, are trust funds, whether in the possession of the Principals or Indemnitors or otherwise, for the benefit of Surety for any liability or loss it may incur or sustain under said Bond, including but not limited to the payment of obligations incurred in the performance of the bonded contract or obligations; and, further, it is expressly understood, agreed and declared that these trust funds also inure to the benefit of the Surety for any liability or loss it may have or sustain under any other Bonds, under this Agreement, or under any Other Agreements, and this Agreement constitutes notice of the existence of such trust.

11. DISCHARGE/PLACE IN FUNDS - The Indemnitors will, within thirty (30) calendar days or within the Shorter Period (defined below) following the date of Surety's written demand, either: (i) procure the discharge of the Surety from any Bonds and all liability by reason thereof, or, if the Indemnitors are unable to secure such discharge; (ii) place the Surety in immediately available funds in an amount equal to the aggregate amount of the penal sums of all Bonds for which discharge has been demanded; regardless of whether, with respect to any of said Bonds: (a) the Surety has established any reserve; (b) the Surety has made any payments or incurred any liability; or (c) the Surety has received any notice of any claims. If the terms of any outstanding Bonds require the Surety to make payment to the obligee(s) of said Bonds in less than thirty (30) calendar days (which period shall be called the "Shorter Period"), then with respect to such Bonds only, the Surety may require that it be discharged or placed in funds pursuant to this paragraph within said Shorter Period, again regardless of whether the Surety has received any demand or notice of any claims, established any reserve, or made any payments or incurred any liability with respect to such Bonds. The Surety shall send its written demand to the Indemnitors' last known address by overnight courier or by registered or certified mail, and such demand shall be effective upon the date of mailing by the Surety. The terms of this paragraph may be modified by a written amendment to this Agreement, entered into by the Surety and the Indemnitors, providing alternative methods of funding or collateralizing any bonded obligations, but Surety has no obligation to enter into any such alternative arrangements and may do so, or decline to do so, at its sole election and discretion. The Indemnitors hereby represent and acknowledge that if the Indemnitors breach their obligations set forth in this paragraph, the Surety will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this paragraph.

12. OTHER INDEMNITY - The addition to this Agreement of any Indemnitor, including any entities acquired after the date of this Agreement, may be effected by written amendment executed by such Indemnitor only. The Indemnitors shall continue to remain bound under the terms of this Agreement and any Other Agreements even though the Surety may from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accept indemnity obligations or collateral from, or release or reduce indemnity obligations or collateral, or release or apply any specific underwriting requirements to, any current or future Principals or Indemnitors for any reason. The Indemnitors waive notice of the Surety's acceptance, release or reduction of any indemnity obligations or collateral or specific underwriting requirements of any current or future Principals or Indemnitors, and agree that they shall make no defense to the enforcement of this Agreement or any Other Agreements based on such action by the Surety.

13. **SURETIES** - In the event the Surety procures the execution of any Bonds by other sureties, or executes any Bonds with co-sureties, or reinsures any portion of any Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of any such other sureties, co-sureties and reinsurers, their successors and assigns, as their interests may appear.

14. **INVALIDITY** - Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction shall not render the other provisions hereof invalid. In case any of the parties set forth in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, including lack of authority to bind any party, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. Each party agrees to execute promptly any documentation necessary to cure any such failure, defect or invalidity.

15. **ENFORCEMENT** - The availability of any particular right or remedy shall not be prejudiced by either (i) a delay by Surety in exercising it, or (ii) Surety's decision to exercise or not exercise any other right or remedy. The obligations of the Principals and Indemnitors hereunder shall be in addition to, and not in lieu of, their obligations to the Surety under any Other Agreements, and in the event of any conflict or inconsistency between the terms of this Agreement and the terms of any of the Other Agreements, the term or interpretation most favorable to the Surety, as determined by the Surety, shall control. Separate suits may be brought under this Agreement and any Other Agreements as causes of action accrue, and the bringing of suit or the obtaining of judgment or recovery of damages upon any cause of action shall not prejudice or bar the bringing of other suits or the obtaining of judgment or recovery of damages upon other causes of action, whether theretofore or thereafter arising. The Indemnitors' liability under this Agreement is joint and several, and the Surety may enforce any or all of the terms and conditions of this Agreement against any or all of the Indemnitors, or any combination of some but less than all of the Indemnitors, at the Surety's sole discretion and election.

16. **GOVERNING LAW** - This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by U.S. federal law. As to all legal actions or proceedings related to this Agreement, Indemnitors consent and agree to the general jurisdiction of any state or Federal court of the United States or its territories having proper subject matter jurisdiction or in which claim may be brought against Surety under any Bond, and hereby waive any claim or defense in such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

Dated as of this __18th__ day of __January__, in the year __2021__.

*By signing below, each individual executing this Agreement on behalf of a business entity, and each business entity executing this Agreement on behalf of another business entity, represents and warrants that he, she or it is **duly authorized** by Indemnitor to bind Indemnitor to all of the terms and conditions of this Agreement:*

**ATTEST OR WITNESS:**                                    **BY:**

                                                          **Williams Industrial Services Group Inc.**
                                                          T.I.N.: ▮▮▮▮▮▮▮
                                                          100 Crescent Centre Parkway, Suite 1240, Tucker, GA 30084

By: _Charles E. Wheelock_                                 By: _____ (Seal)
Charles E. Wheelock                                       Randall Lay
Vice President, General Counsel, and Secretary            Chief Financial Officer

## NOTARY ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __Georgia__ )
County of __Newton__ )

On __January 18__ (Date) before me, __Sandra Newton__ (Notary), personally appeared Charles E. Wheelock, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Georgia__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Notary Public residing at: __Newton__
My commission expires: __July 21, 2024__

## NOTARY ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __Georgia__ )
County of __Newton__ )

On __January 18__ (Date) before me, __Sandra Newton__ (Notary), personally appeared Randall Lay, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Georgia__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Notary Public residing at: __Newton__
My commission expires: __July 21, 2024__