IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC.,[1] | ) ) ) | Case No. 23-10961 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## MOTION OF LEXON INSURANCE COMPANY TO LIFT STAY AS TO BONDED CONTRACT FUNDS, OR ALTERNATIVELY, FOR ADEQUATE PROTECTION

Lexon Insurance Company and its affiliated sureties ("Surety"), pursuant to 11 U.S.C. § 362(d) and 11 U.S.C. § 105, move this Honorable court for an Order modifying the automatic stay in the above-captioned bankruptcy cases to permit project owners to declare Debtor Williams Industrial Services, LLC ("Debtor") in default of its Bonded Contracts (defined below), and to allow the Surety to (1) collect Bonded Contract Funds (defined below) from project owners and (2) use the Bonded Contract Funds to pay claims under the payment and performance bonds issued by the Surety in which the Debtor is the principal (including but not limited to payment of labor, subcontractor, and supplier claims and costs), as well as other costs incurred in completing the Bonded Contract, including consultation and other professional costs and expenses. The Surety has no objection to filing with the Bankruptcy Court, a quarterly accounting of the receipt and expenditure of Bonded Contract Funds.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is 200 Ashford Center N., Suite 425, Atlanta, GA 30338.

Alternatively, the Surety seeks adequate protection of the Bonded Contract Funds in the form of an order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and the Surety before funds can be disbursed, and an Order that the Bonded Contract Funds are to be used and can be used only for direct Bonded Contract costs, including the payment of amounts due to subcontractors and suppliers for work performed on the Bonded Contract, and not for other purposes, including unbonded projects, general overhead or administrative costs, and/or employee or officer compensation.  In support of this motion, the Surety states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceedings pursuant to 28 U.S.C. § 157.  Venue for the DIP Financing Motion, Bidding Procedures Motion and the Objection is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On July 22, 2023 (the "Petition Date"), Williams Industrial Services Group Inc. and its affiliated entities ("Debtors") each commenced a case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which cases are now being jointly administered.  The Debtors continues to operate their businesses as debtors-in-possession pursuant to Bankruptcy Code Section 1107(a) and 1108.

3. Prior to the Petition Date, at the request of one or more of the Debtors as Principal (including but not limited to the Debtor), the Surety issued a Performance Bond and a Payment Bond under Surety Bond Number LICX1200716 in favor of JEA [Jacksonville Electric Authority], each bond in the penal sum of $3,358,137.98, with respect to Contract #JEA10286/194526 for

"4511 Spring Park Road Pump Station Rehab and Upgrade" ("Spring Park Bonds"). (Declaration of John P. Wilson dated August 4, 2023 at ¶ 3).

4. Also prior to the Petition Date, at the request of one or more of the Debtors as Principal (including but not limited to the Debtor), the Surety issued a Performance Bond and a Payment Bond under Surety Bond Number LICX1200727 in favor of City of Green Cove Springs, each bond in the penal sum of $15,426,644.33, with respect to a Construction Contract for "DEP SRF Harbor Road WRF Expansion, Ph. 2" ("Harbor Road Bonds, and with the Spring Park Bonds, the "Bonds"). (Wilson Decl. at ¶ 4).

5. In order to induce the Surety to issue the Bonds, the Surety relied upon (i) its rights of legal and equitable subrogation, based on established law that a surety has an equitable lien and priority right to contract funds on bonded contracts for the completion of those contracts and payments to subcontractors and suppliers, and (ii) a General Agreement of Indemnity ("Indemnity Agreement") executed and delivered to the Surety by Debtor Williams Industrial Services Group Inc. (on behalf of itself and its present and future subsidiaries, affiliates and successors, among others)("Indemnitors"). (*Id*. at ¶ 5, Exhibit A thereto, Indemnity Agreement).

6. Pursuant to the Indemnity Agreement, the Debtors agreed to:

> upon demand from the Surety, promptly indemnify, exonerate, reimburse and hold the Surety harmless from and against any and all liability, loss, cost and expense of whatsoever kind or nature and pay the Surety for any Loss sustained or incurred (i) in connection with or arising out of the execution by the Surety of any Bond, (ii) by reason of the failure of the Indemnitor to perform or comply with the covenants and conditions of this Agreement or Other Agreements, and (iii enforcing any of the covenants and conditions of this Agreement ….

(*Id*. at ¶ 6, Exhibit A, Indemnity Agreements at ¶ 3).

7. The Indemnity Agreement defines the Indemnitor, in pertinent party as "Every individual and entity executing this Agreement, and their present and future subsidiaries, affiliates,

3

successors …" and defines the Surety, in pertinent part, as "[Lexon Insurance Company] and their affiliates, subsidiaries, assigns, successors or reinsurers…." (*Id*. at ¶ 7, Exhibit A, Indemnity Agreement at ¶ 1 [Definitions]).

8. The Indemnity Agreement states that a bonded contract is defined as "[a]ny agreement for which the Surety has issued or procured the issuance, renewal, continuation, substitution or amendment of a Bond[,]" here, Contract #JEA10286/194526 for "4511 Spring Park Road Pump Station Rehab and Upgrade" and City of Green Cove Springs construction contract for "DEP SRF Harbor Road WRF Expansion, Ph. 2" (jointly, "Bonded Contracts" and the projects as "Bonded Projects"). (*Id*. at ¶ 8, Exhibit A, Indemnity Agreement at ¶ 1 [Definitions]).

9. Events of default under the Indemnity Agreement include: "(1) any abandonment, forfeiture, default or declaration of default, breach, failure, refusal or inability to perform with respect to any of Indemnitor's obligations under any Bond or Bonded Contract … (5) … an application by any Indemnitor for reorganization or arrangement under the terms of the United States Bankruptcy Code …." ("Event of Default"). (*Id*. at ¶ 9, Exhibit A, Indemnity Agreement at ¶ 1 [Definitions]).

10. The Surety's remedies upon an Event of Default, under the Indemnity Agreement, include but are not limited to: "(2) take over the control of all funds, including accounts receivable, on any Bonded Contract…." ("Bonded Contract Funds"). (*Id*. at ¶ 10, Exhibit A, Indemnity Agreement at ¶ 8).

11. The Surety faces potential exposure of $37,569,564.62 (the aggregate penal sums on the Bonds) because the Debtor has not yet completed the Bonded Projects. (*Id*. at ¶ 11).

12. The Debtors have moved to reject the Bonded Contracts effective as of July 22, 2023. (*Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject*

*Certain Executory Contracts Effective as of the Rejection Date* ("Rejection Motion") [Doc. No. 27].[2] A hearing on the Rejection Motion is scheduled for August 17, 2023 at 10:00 a.m.

## ARGUMENT

13. The *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* ("Cash Collateral Motion") [Doc. No. 13] does not offer to provide any adequate protection to the Surety as no provision is made within the Cash Collateral Motion to identify and isolate funds that are subject to the Surety's equitable lien, which funds are not and cannot be subject to the Debtors' bankruptcy estate. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962) (holding that a surety that is, or may be, called on to complete performance of a bonded contract, or pay for its performance on the default of its principal, steps into the shoes of obligee and becomes subrogated to the obligee's rights to apply funds due or to become due the principal in the hands of the obligee, to the satisfaction of the performance obligation). *See also, In Re Jones Constr. & Renovation, Inc.,* 337 B.R. 579 (Bankr. E.D.Va. 2006) (holding when a debtor-contractor breaches its contract with a project owner, it precludes debtor's entitlement to retained funds, and thus those funds are not property of the estate, with the doctrine of equitable subrogation applicable to entitle the surety to any funds that may be due on the bonded contracts to satisfy any bond claims).

14. A surety's equitable subrogation rights are not limited to rights it obtains by standing in the shoes of a defaulting contractor. Although a surety stands in the shoes of a

---

[2] The description of one of the contracts to be rejected varies slightly from one of the bonded contracts. Counsel for the Surety asked counsel for the Debtors to confirm whether or not it is the same contract, but no response has been received to date.

defaulting contractor when it pays the bills for the job, completes the job and thus is entitled to the defaulting contractor's accounts receivables, the surety also stands in the shoes of laborers and materialmen who have been paid by the surety (e.g., the laborers may have liens), and the surety also stands in the shoes of the beneficiary of the bond (the obligees), in this case, JEA and the City of Green Cove Springs. *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.*, 540 So.2d 113, 115-16 (Fla. 1989).

15. Additionally, the contract funds are explicitly assigned to the Surety pursuant to the Indemnity Agreement. Upon the happening of an event of default, the Surety is "hereby authorized by each Indemnitor … to take over the control of all funds, including accounts receivable, on any Bonded Contract." (*See,* Wilson Decl. at Exhibit A, Indemnity Agreement at ¶ 8). "As to each Bond or Bonded Contract, the Indemnitor hereby pledges, assigns, transfers and conveys to [the Surety] to secure the obligations under this Agreement, all right, title and interest of the Indemnitor in: (i) all monies due or to become due to the Indemnitor under a Bonded Contract…." *Id* at ¶ 9.

16. The rights conveyed by assignment in the Indemnity Agreement are transferred to the Surety in the event of default, and become vested to the Surety such that the Bonded Contract funds never become property of the bankruptcy estate. *Jones,* 337 B.R. at 587.

17. A surety's assignment interest in accounts receivable trumps that of a lender's security interest in the accounts receivable. *See, generally,* T*ransamerica*, 540 So.2d at 116-17. A surety's assignment interest is not a security interest subject to the Uniform Commercial Code, and differs from a lender's security interest because a surety's assignment is contingent on performance by the surety in the event the principal defaults (in contrast to a financier's assignment which does not call for performance), and "the U.C.C. itself suggests that a surety's assignment from a contractor, should be excluded from the U.C.C.…" *Transamerica*, 540 So.2d at 116.

Although "[n]onsurety assignees of a contractor in default would have no enforceable claim on funds withheld by the owner/obligee because of contractor default … [all parties in interest] are best served by prompt performance by the surety [such that] it is appropriate to give priority to the claims of the surety, up to the limits of its performance." *Transamerica*, 540 So.2d at 117.

18. Accordingly, since the Surety has a superior interest in, the Surety asks that the Bankruptcy Court modify the stay to (1) allow the project owners/obligees on the Bonds [JEA and the City of Green Cove Springs] to declare Debtor in default; (2) permit the Surety to collect Bonded Contract Funds from JEA and the City of Green Cove Springs; and (3) use the Bonded Contract Funds to pay claims under the bonds, including costs incurred in completing any Bonded Contract.  The Surety has no objection to providing the Bankruptcy Court and the Debtors with a quarterly accounting of the receipt and expenditure of Bonded Contract Funds.

19. Alternatively, the Surety is entitled to adequate protection of the Bonded Contract Funds to insure that they are used solely for direct Bonded Contracts costs.  Bankruptcy courts have protected the surety's interest in contract funds by limiting the debtor's use of the contract funds to the bonded project and requiring the debtor to separately account for contract funds. *See In re RAM Construction Co.*, 32 B.R. 758 (Bankr. W.D. Pa. 1983)(noting that "the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *see also*, 11 U.S.C. § 363(c)(4) (requiring the debtor to "segregate and account for any cash collateral").

20. Accordingly, the Surety is entitled to adequate protection of the Bonded Contract Funds in the form of an Order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and the Surety before funds

can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project costs, and not for other purposes.

21. Finally, the Surety hereby joins in the legal argument asserted by Liberty Mutual Insurance Company and its affiliated companies in its *Motion to Lift Stay as to Bonded Contract Funds, or Alternatively, for Adequate Protection* [Doc. No. 104] and incorporates those arguments herein.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Surety respectfully requests that the Bankruptcy Court lift the stay to allow JEA and the City of Green Cove Springs to declare the Debtor in default of the Bonded Contracts and to allow the Surety(1) to receive Bonded Contract Funds and use said Bonded Contract Funds to adjust, settle, resolve and pay claims under the Bonds, including payment of labor, subcontractor and supplier claims and costs, and other costs incurred in completing the Bonded Contracts, and, (2) to the extent the Debtor received Bonded Contract Funds pre-petition, those funds must be used only for direct Bonded Project costs and not for other purposes such as payment of officer salaries, capital distributions, debt payments, home office overhead or administrative costs, or other projects.

  The Surety has no objection to filing with the Bankruptcy Court a quarterly accounting of the receipt and expenditure of Bonded Contract Funds.

Alternatively, the Surety is entitled to adequate protection of the Bonded Contract Fund balances in the form of an order requiring that that funds be deposited into a separate trust account that requires the signature of the Debtor and the Surety before funds can be disbursed, and an Order that the Bonded Contract Fund balances can be used only for direct Bonded Project cots, and not

for other purposes, such as payment of officer salaries, home office overhead or administrative costs, or other projects.

                                    Respectfully submitted,

                                    **McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: August 4, 2023                */s/ Gary D. Bressler*
                                          Gary D. Bressler, Esq.
                                          David P. Primack, Esq.
                                          300 Delaware Avenue, Suite 1014
                                          Wilmington, DE  19801
                                          Telephone: 302-300-4515
                                          Facsimile:  302-654-4031
                                          E-mail: gbressler@mdmc-law.com
                                                    dprimack@mdmc-law.com

                                    *Attorneys for Lexon Insurance Company and its affiliated sureties*