# EXHIBIT A


SOMPO INTERNATIONAL

## GENERAL AGREEMENT OF INDEMNITY
(Commercial Surety Standard Form)

This General Agreement of Indemnity (the "Agreement") is effective as of the date written below by the undersigned (individually, jointly, and severally, the "Indemnitor"), and by one or more of the bonding companies known as Endurance Assurance Corporation, Endurance American Insurance Company, Lexon Insurance Company, and Bond Safeguard Insurance Company (individually and collectively, the "Surety"), for the purposes set forth herein and for the continuing benefit of the Surety.

In consideration of the execution of any Bond for any Indemnitor, and as an inducement to the Surety to execute any Bond, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Indemnitor agrees individually, jointly, and severally as follows:

**1.    DEFINITIONS.**

The following terms used in this Agreement will have the meanings described below unless the context otherwise requires. The meanings shall apply equally to the singular and plural forms of such terms.

Bond: Any surety undertaking, guaranty or other contractual obligation undertaken or procured by the Surety and/or with any co-surety or additional surety on behalf of or at the request of any Indemnitor, either before or after the date of this Agreement, and any renewal, amendment, alteration, continuation, extension or substitution thereof, including any Bond on which any Indemnitor appears alone or with others.

Bonded Contract: Any agreement for which the Surety has issued or procured the issuance, renewal, continuation, substitution or amendment of a Bond.

Claim: Any notice of default, notice of deficiency, notice of termination, demand for payment, demand for meeting, threat of litigation, suit, writ, judgment or any other form of notice, claim or demand received by the Surety in connection with any Bond or Bonded Contract.

Collateral: Any security provided to the Surety or a designated representative of the Surety to secure an Indemnitor's obligations to the Surety under this Agreement or Other Agreements, which shall be in the form of cash or letter of credit acceptable to the Surety or such other form of security as the Surety may accept in its sole discretion.

Event of Default: The occurrence of any one or more of the following: (1) any abandonment, forfeiture, default or declaration of default, breach, failure, refusal or inability to perform with respect to any of Indemnitor's obligations under any Bond or Bonded Contract; (2) the failure, delay, refusal, or inability of any Indemnitor to pay bills or other indebtedness incurred in, or in connection with, the performance of any Bonded Contract; (3) any breach by any Indemnitor of any of the provisions of this Agreement or Other Agreements; (4) the failure to pay and discharge, when due, any indebtedness or liabilities of any Indemnitor to Surety, including the obligation to pay premiums timely; (5) any assignment by any Indemnitor for the benefit of creditors, or any appointment or application for the appointment of a receiver or trustee for any Indemnitor or its property, whether insolvent or not, or an application by any Indemnitor for reorganization or arrangement under the terms of the United States Bankruptcy Code or any similar laws of any other jurisdiction, or if such proceedings are initiated by other persons, the continuance of those proceedings for a period of thirty days; or (6) the failure of any Indemnitor to promptly furnish accurate, complete and up-to-date financial statements upon request of Surety, or the furnishing of a financial statement by any Indemnitor which contains any material

1

misstatement or omission. The Indemnitor agrees that Surety's determination that there has been an Event of Default shall be conclusive.

Indemnitor: Every individual and entity executing this Agreement, and their present and future subsidiaries, affiliates, successors, executors, trustees, personal representatives and assigns, and any co-principals, partners or joint ventures of any Indemnitor or other form of common enterprise of any Indemnitor.

Loss: Any and all payments, damages, costs and expenses of any kind, including fees for attorneys, accountants, consultants, engineers, experts, investigators or other professionals, sustained or incurred by the Surety, whether inside as salaries or outside as retainers, in connection with or as a result of furnishing any Bond, handling any Claim or in enforcing any terms or rights under this Agreement or any Other Agreement with the Surety, together with interest thereon.

Other Agreements: Any agreements executed by any Indemnitor that inure to or for the benefit of the Surety, including but not limited to collateral, escrow, disbursement, funds administration, project monitoring, capital retention, subordination, or settlement agreements.

Surety: The bonding companies listed above and their affiliates, subsidiaries, assigns, successors or reinsurers, including any co-sureties that they may procure to issue any Bond on behalf of any Indemnitor.

**2.    PREMIUM.** The Indemnitor shall pay all premiums and costs charged by the Surety for any Bond, including initial, renewal, continuation, and additional premiums thereon, computed according to current rate charges, until satisfactory proof is furnished to the Surety of the Surety's discharge or release from liability under such Bond. The Indemnitor acknowledges that the initial premium on every Bond is fully earned upon execution of the Bond and, if a premium is not paid when due, it shall bear interest at the rate of six percent per annum.

**3.    INDEMNIFICATION.** The Indemnitor shall, upon demand from the Surety, promptly indemnify, exonerate, reimburse and hold the Surety harmless from and against any and all liability, loss, cost and expense of whatsoever kind or nature and pay the Surety for any Loss sustained or incurred (i) in connection with or arising out of the execution by the Surety of any Bond, (ii) by reason of the failure of the Indemnitor to perform or comply with the covenants and conditions of this Agreement or Other Agreements, and (iii) enforcing any of the covenants and conditions of this Agreement. The Surety shall be entitled to be indemnified and reimbursed for all disbursements made by it in good faith under the belief that it is or was liable for such disbursements, whether or not such liability, expediency or necessity existed. "Good faith" in this Agreement shall mean honesty in fact and the absence of willful misfeasance or malfeasance. An itemized statement of Loss by the Surety, sworn to by an officer of the Surety, shall be prima facie evidence of the fact and amount of the liability of the Indemnitor to the Surety. The Surety shall be entitled to receive interest at the rate of six percent per annum from the date of its payment of each Loss.

The Indemnitor agrees to defend the Surety against any lawsuit, arbitration demand, action or other proceeding brought with respect to any Bond. Upon the Surety's demand, the Indemnitor shall retain counsel acceptable to the Surety, at the Indemnitor's sole cost and expense, to represent and defend the Surety. The Surety reserves the right, at any time, and at its sole and absolute discretion, to retain or substitute counsel to represent and defend itself regardless of whether the Indemnitor tenders and/or the Surety initially accepts counsel for the Surety's defense. Regardless of who retains counsel, the Indemnitor agrees to fully indemnify the Surety against all legal fees, costs and other expenses. The Indemnitor's retention of counsel to defend the Surety shall in no way waive, modify or otherwise affect the Surety's right in its sole and absolute discretion to pay, compromise, defend, settle, investigate, appeal or otherwise

handle or resolve any claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond.

If any Indemnitor desires to resist, defend or litigate a Claim or demand against the Surety, the Indemnitor shall give timely written notice to the Surety of its intention. Surety, at its sole and absolute discretion, may require the Indemnitor to immediately deposit Collateral pursuant to Paragraph 5 hereof in an amount which the Surety deems sufficient to cover (i) the cost and expense of the claim or demand including, without limitation, recoverable interest, attorney's fees and costs through the probable date of disposition and (ii) the anticipated fees, costs and expenses which the Surety deems sufficient for its defense. The Indemnitor's posting of Collateral and/or retention or counsel to defend the Surety shall in no way waive, modify or otherwise affect the Surety's right in its sole and absolute discretion to pay, compromise, defend, settle, investigate, appeal or otherwise handle or resolve any Claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond, or any other rights set forth in this Agreement.

**4.   DISCHARGE.** The Indemnitor shall, upon request of the Surety, procure the discharge of the Surety from any Bond and all liability or potential liability by reason thereof. If such discharge does not occur within 30 days, the Indemnitor shall, upon demand by the Surety, deposit Collateral with the Surety pursuant to Paragraph 5 hereof. The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond.

**5.   COLLATERAL SECURITY.** If a Claim is made against the Surety, whether disputed or not, or if the Surety deems it necessary to establish a reserve for potential Claims or contingent losses, or if the Indemnitor fails to procure a discharge of any Bond and the release of the Surety from potential liability thereunder as requested in Paragraph 4 hereof, or if the financial condition of any Indemnitor has deteriorated in the Surety's view, upon demand from the Surety, the Indemnitor shall deposit Collateral with the Surety in the form and amount as the Surety in its sole discretion deems necessary or appropriate to protect the Surety with respect to any Claim or potential Claim or Loss in connection with any Bond. In its sole discretion the Surety may from time to time request an increase or supplement to a collateral reserve previously demanded. The Surety may hold such Collateral in such form as the Surety may decide, in its sole discretion, and shall have no obligation to invest or provide income or return on the Collateral. The Collateral may be used by the Surety to satisfy any Claim or Loss in connection with any Bond. The Surety shall return the unused portion of the Collateral upon the complete satisfaction of each Indemnitor's obligations secured by any Bond, the termination of liability of the Surety under every Bond, and the satisfaction by each Indemnitor of its obligations to the Surety under this Agreement or Other Agreements. Each Indemnitor acknowledges that the failure to deposit any Collateral demanded by the Surety shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law, so that the Surety shall be entitled to injunctive relief for specific performance of this obligation of each Indemnitor. Posting of Collateral by any Indemnitor shall in no way waive, modify or otherwise affect Surety's right in its sole and absolute discretion to pay, compromise, defend, settle, investigate, appeal or otherwise handle or resolve any Claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond, as provided in this Agreement.

**6.   DECLINE EXECUTION.** The Surety shall have the right at its option and at its sole discretion to issue, or cancel or decline the execution of any Bond or change or renewal of any existing Bond without affecting the liability of the Indemnitor under this Agreement.

**7.   CLAIM SETTLEMENT.** The Surety shall have the exclusive right for itself and any Indemnitor, in its sole discretion, to determine whether a claim or liability involving any Bond or Bonded Contract shall be settled, compromised, paid, defended, prosecuted or appealed, and take any action it may deem necessary, appropriate, or expedient in handling any Claim or fulfilling any bonded obligation. The Surety's

decisions shall be binding and conclusive upon the Indemnitor, irrespective of any offer from the Indemnitor to assume the defense of the Surety upon such Claim.

**8. REMEDIES UPON DEFAULT.** Upon the happening of an Event of Default, the Surety or a designated representative of the Surety shall have the right, at its option and in its sole discretion, with or without exercising any other right or option conferred upon it by law or the terms of this Agreement, and is hereby authorized by each Indemnitor: (1) to take possession of any part or all of the work, including equipment, materials and supplies, under any Bonded Contract and to complete or arrange for the completion of the same; (2) to take over the control of all funds, including accounts receivable, on any Bonded Contract; (3) to take possession of the office equipment, computer programs, disks, and books and records as are necessary or useful for the completion of the Bonded Contract; and (4) to take any other action that the Surety may deem appropriate to obtain a discharge of the Surety's obligations, all at the expense of the Indemnitor.

**9. ASSIGNMENT AND SECURITY INTEREST.** As to each Bond or Bonded Contract, the Indemnitor hereby pledges, assigns, transfers, and conveys to the Surety to secure the obligations under this Agreement, all right, title and interest of the Indemnitor in: (i) all monies due or to become due to the Indemnitor under a Bonded Contract; (ii) all property of every nature and description that may now or hereafter be related to a Bonded Contract; (iii) all subcontracts in connection with a Bonded Contract; (iv) all actions, causes of actions, claims, and/or the proceeds therefrom and any demands whatsoever which the Indemnitor may have against any party related to a Bonded Contract; (v) all monies due or to become due to any Indemnitor on any policy of insurance relating to any claims or any premium refund arising out of any Bonded Contract; and (vi) all right, title and interest, or use of any license, patent, trademark or copyright held by any Indemnitor in connection with or relating to a Bonded Contract. This assignment, transfer and security interest granted hereunder shall be effective as of the date of this Agreement but shall not be enforceable until the happening of an Event of Default. Notwithstanding anything to the contrary contained herein, the assignment, transfer and grant of a security interest pursuant hereto shall be subordinate to any prior perfected interest in any of the assets aforesaid, and in the event that the assignment, transfer or grant of a security interest in the aforesaid assets would violate the terms of any prior agreement concerning such prior perfected interest, then this provision shall be ineffective for such time as the prior perfected interest remains in force.

**10. PERFECTION OF SECURITY INTEREST.** This Agreement shall constitute a Security Agreement and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code (the "Code") of every jurisdiction wherein the Code is in effect, for the benefit of the Surety, with or without an Event of Default, and whether or not such security interest is perfected or would be perfected by such filing. The Surety is hereby appointed irrevocably as the attorney-in-fact on behalf of each Indemnitor to execute such additional instruments and financing statements as may be reasonably necessary or desirable to permit their filing as a financing statement under the Code and to perfect the foregoing security interest. The filing or recording of this Agreement, or any other document executed by any Indemnitor, shall be solely at the option of the Surety, may be done without notice of any Indemnitor, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, under law or in equity, and shall not be construed to be an election of remedies or otherwise impair any rights of subrogation of the Surety. Any copy of the Agreement certified as such by the Surety shall be considered an original for purposes of filing as a financing statement.

**11. CHANGES TO BONDS AND CONTRACTS.** The Surety is authorized and empowered, without notice to or knowledge of any Indemnitor, notice being hereby expressly waived, to assent or to refuse to assent to any change whatsoever in any Bond or Bonded Contract and also to assent or to refuse to assent to the execution of any continuations, extensions or renewals of any Bond or Bonded Contract, it being expressly understood and agreed that any Indemnitor shall remain bound under the terms of this Agreement

even though any such assent or the refusal to assent by the Surety does or might substantially increase the liability of the Indemnitor.

**12. NOTICE OF BONDS AND LIABILITIES.** Each Indemnitor waives notice of the execution of any Bond and of the acceptance of this Agreement. Each Indemnitor acknowledges that the Surety makes no representation as to the validity or acceptability of any Bond to any person under any contract, and each Indemnitor agrees that it shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person to award any contract to an Indemnitor, or to accept any bond executed and delivered by Surety, or that Surety has been requested to execute and deliver. Each Indemnitor has relied upon its own due diligence in making its own independent appraisal of the underlying business and financial condition and agrees to keep itself fully informed as to the business and financial affairs of each other Indemnitor in order to be aware of the risks and hazards of continuing as an Indemnitor. No Indemnitor has relied upon, nor will any Indemnitor hereafter rely upon, the Surety for information.

**13. BENEFICIAL INTEREST AND SEVERABILITY.** Each Indemnitor warrants and affirms that it has a substantial, material and beneficial interest in the obtaining of any Bond requested by any other Indemnitor. The invalidity of any provision of this Agreement by reason of the laws of any state, or for any other reason, shall not affect the validity of any other provision of this Agreement.

**14. INVALIDITY AND WAIVERS.** The Indemnitor waives any defense that this Agreement was executed subsequent to the issuance of any Bond, agreeing that such Bond was issued at the Indemnitor's request and in the Surety's reliance upon the Indemnitor's promise to execute this Agreement. If any Indemnitor fails to execute this Agreement or if any Indemnitor's execution is invalid, such failure or invalidity shall not affect the validity of this Agreement or the liability hereunder of any other Indemnitor. Each Indemnitor waives and subordinates the rights of indemnity, subrogation, contribution or collection against any other Indemnitor or its property until the obligations of each Indemnitor to the Surety under this Agreement or Other Agreements have been satisfied in full. Each Indemnitor waives notice of the execution of any Bond for any Indemnitor; the taking or failing to take or the release of any security, Collateral, or assignment of an Indemnitor; the settlement or partial settlement with any Indemnitor; or the addition of a new Indemnitor. Each Indemnitor waives the benefit of any statute or rule of law that gives Indemnitor the right to require the Surety to first proceed against any other Indemnitor or any other person, firm or entity, or to proceed against or exhaust any Collateral or other security held by Surety at any time, or to pursue any other remedy available to Surety before proceeding against any Indemnitor. The Surety is expressly authorized to settle with any one or more Indemnitor individually, without reference to the others, and such settlement shall not affect the liability of any of the others, and each Indemnitor hereby expressly waives the right to be discharged and released by reason of the release of one or more of the joint debtors. The Surety's failure to act to enforce any of its rights under this Agreement shall not be construed as a waiver of any of its rights.

**15. RIGHT TO INFORMATION.** Until the Surety's exposure to liability under every Bond or Bonded Contract has terminated and satisfactory proof is furnished to the Surety of the Surety's discharge or release from liability, the Surety shall have unrestricted access to any and all books, records, trust funds, accounts, documents, or other information pertaining to the financial affairs or operations of the Indemnitor, including the right to obtain credit reports or other investigative reports, for the purpose of examining and copying them. The Indemnitor hereby authorizes third parties, including but not limited to any bank depository, supplier, subcontractor, obligee, government entity, creditor, accountant or other person or entity to furnish the Surety any information requested.

**16. ATTORNEY-IN-FACT.** Each Indemnitor irrevocably appoints the Surety as its attorney-in-fact with the right to exercise all of the rights of the Indemnitor assigned, transferred and set over to the Surety in this Agreement, and in the name of the Indemnitor to make, endorse, execute, sign and deliver any

5

additional or other instruments, writings, assignments, financing statements, checks, drafts, deposits, liens and releases deemed necessary and proper by the Surety in order to provide the protection and the rights to the Surety contemplated by all of the provisions of this Agreement and by law. The powers and authority granted herein shall not be affected by the disability or incapacity of any Indemnitor. Each Indemnitor hereby ratifies and confirms all actions taken by the Surety as such attorney-in-fact and agrees to protect and hold harmless the Surety for all such actions.

**17. TERMINATION BY INDEMNITOR.** This Agreement is a continuing obligation of each Indemnitor, but may be terminated prospectively upon thirty days' written notice sent to the Surety by certified mail to its office at 12890 Lebanon Road, Mount Juliet, TN 37122. Such notice of termination shall not operate to modify, bar or discharge the Indemnitor as to any Bond that has been executed prior to the end of the thirty-day notice period. Such notice of termination by a particular Indemnitor shall not constitute notice by any other Indemnitor and shall in no way affect the continuing obligations of any other Indemnitor that has not given such notice. After the effective date of such termination by giving notice, the notifying Indemnitor shall nonetheless be liable hereunder for (i) any Bond executed or authorized prior to such date, and renewals, substitutions and extensions thereof; and (ii) any Bond subsequently executed pursuant to a bid, proposal or consent of surety issued or authorized prior to such date, and renewals, substitutions and extensions thereof.

**18. APPLICATION OF LAW, JURISDICTION AND WAIVER OF JURY TRIAL.** This Agreement is governed by the laws of the State of New York without regard to conflict of law rules. Each Indemnitor agrees to submit itself to personal jurisdiction and venue in the County of New York and in the United States District Court for the Southern District of New York (if appropriate), and in whatever other jurisdiction in which the Surety sustains or pays any Loss for which the Indemnitor is liable hereunder, and in whatever jurisdiction the Surety may be sued or required to arbitrate as a consequence of its having issued any Bond. Each Indemnitor waives any defense based upon alleged lack of personal jurisdiction, improper venue or forum non-conveniens. **THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION TO ENDORSE OR DEFEND ANY MATTER ARISING FROM OR RELATING TO THIS AGREEMENT, INCLUDING CLAIMS AGAINST PERSONS OR ENTITIES WHO ARE NOT PARTIES TO THIS AGREEMENT.**

**19. CUMULATIVE RIGHTS.** The rights of the Surety under this Agreement are cumulative, and are in addition to and not in lieu of any other rights the Surety may have with respect to the Indemnitor under any prior agreement of indemnity, other agreement, or operation of law. The Surety, in addition to all other rights expressly provided herein, shall have every right, defense, or remedy which a personal Surety without compensation would have, including, but not limited to, the right of exoneration. Further, the liability of each Indemnitor extends to every Bond issued on behalf of any Indemnitor, whether issued prior to or after the execution of this Agreement, and whether or not a particular Bond was covered by an agreement of indemnity previously executed by a particular Indemnitor.

**20. JOINT AND SEVERAL LIABILITY.** The obligations of each Indemnitor under this Agreement are individual, joint and several. The Surety may bring separate suits against any or all of them as causes of action may accrue hereunder. The Surety need not proceed first against any one Indemnitor, or any third party, or exhaust or avail itself of any other legal remedy or of any collateral. The Surety may maintain repeated actions as Losses arise under this Agreement without any former action operating as a bar to any subsequent action.

**21. REPRESENTATIONS AND WARRANTIES.** Each Indemnitor represents, warrants and agrees that it has the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein, and that the execution, delivery, and performance of their duties and obligations pursuant to this Agreement have been duly authorized by all necessary corporate action. Each Indemnitor

also represents and warrants to the Surety the accuracy and completeness of all applications, financial statements and other information furnished by the Indemnitor in connection with the Surety's underwriting of each Bond.

**22. AMENDMENTS.** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by an officer of the Surety.

**23. COUNTERPARTS.** This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

**IN WITNESS WHEREOF,** the Indemnitor has signed this Agreement effective as of the __12__ day of __June__, 20__19__.

[Signature Pages Follow]

**If Indemnitor is a Corporation, Limited Liability Company or Partnership, sign below:**

Instructions: If the entity is: 1) a corporation the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company the manager(s) or member(s) should sign on behalf of the LLC, or 3) a partnership the partner(s) should sign on behalf of the partnership. Two signatures are required for all entities and each indemnitors' signature must be notarized and dated. Please provide the entity's federal tax identification number on the line provided.

**(ALL SIGNATURES MUST BE ACKNOWLEDGED AND NOTARIZED BELOW)**

**ATTEST:**

By: _[signature]_
Name: _Darrell G. Holladay_
Title: _VP Insurance and Risk Mgt_

**Indemnitor:**
Williams Industrial Services Group Inc.

By _[signature]_
Name: _Charles E. Wheelock_
Title: _General Counsel_
Taxpayer ID #: _[redacted]_
State of Incorporation: _DE_

Indemnitor Address: 100 Crescent Centre Parkway, Suite 1240, Tucker, GA 30084

**ACKNOWLEDGEMENT**

STATE OF _GA_ )
                              ) SS:
COUNTY OF _DeKalb_ )

On this _12th_ day of _June_, in the year _2019_, before me personally appeared _Charles E. Wheelock_, known or proven to me to be the _General Counsel_ of _Williams Industrial Services Group Inc._, the entity executing the above General Agreement of Indemnity (Commercial Surety Standard Form), who acknowledged to me that said instrument is the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath that he/she executed said instrument by authority of the Entity.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

(Notary Seal)
[Seal: VICTORIA M MORGAN, NOTARY PUBLIC, GWINNETT COUNTY, GEORGIA]

_[signature]_
Signature of Notary Public

_2327 Roseberry Ln., Grayson, GA 30017_
Residing at

_04/15/22_
My Commission expires

8

Rev. 01/2019