**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Ch. 11 |
| WILLIAMS INDUSTRIAL SERVICES | ) | |
| GROUP, *et al.*,[1] | ) | Case No. 23-10961 (BLS) |
| | ) | |
| Debtors. | ) | |

**MOTION OF HARCO NATIONAL INSURANCE COMPANY FOR RELIEF FROM
AUTOMATIC STAY AND FOR ADEQUATE PROTECTION**

Harco National Insurance Company ("Harco"), by and through the undersigned counsel,

hereby submits this *Motion for Relief from the Automatic Stay and for Adequate Protection* (this

"Motion") pursuant to 11 U.S.C. §§ 105 and 362 and *Declaration of William Pearce in Support of

the Motion for Relief from the Automatic Stay and for Adequate Protection* (the "Pearce

Declaration").  Contemporaneously herewith, Harco is filing a motion Requesting an Order

Shortening Notice Period for and Scheduling Expedited Hearing on the Motion so that it is set for

hearing on August 17, 2023 (the "Motion for Expedited Hearing").[2]

Harco files the Motion and Motion for Expedited Hearing to ensure that the proceeds of

Harco's bonded contracts are utilized for and dedicated to the completion of those contracts and

the payment to those subcontractors and suppliers that furnished labor and/or materials in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Williams Industrial Services Group Inc. (1378); Williams Industrial Services Group, LLC (2666); Williams Industrial Services, LLC (0406); Williams Plan Services, LLC (9575); Williams Specialty Services, LLC (9578); WISG Electrical, LLC (6918); Construction & Maintenance Professionals, LLC (0925); Williams Global Services, Inc. (3708); Steam Enterprises, LLC (9177); GPEG LLC (5707); Global Power Professional Services, Inc. (2550); WISG Canada Ltd. (B.N. 6518); WISG Nuclear Ltd. (B.N. 3510); and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is 200 Ashford Center N., Suite 425, Atlanta, GA 30338.

[2] On July 24, 2023, the Debtors filed their First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts as of the Rejection Date [Dkt. No. 37] (the "First Rejection Motion").  The hearing to consider the First Rejection Motion is August 17, 2023.  Harco seeks expedited consideration of its Motion in conjunction with the First Rejection Motion to provide clarity and transparency to the contract counterparties to the contracts bonded by Harco, and to help minimize any potential delays in transitioning the projects.

1

furtherance of those contracts.  The Debtor has informed Harco that it does not oppose the Motion

for Expedited Hearing nor the relief sought in this Motion.

## I.    JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper in this Court pursuant to

28 U.S.C. §§1408 and 1409.

## II.    RELATIONSHIP OF THE PARTIES

2.    Prior to filing the Petition, Debtor Williams Industrial Services, LLC ("WIS")

entered into various construction contracts relating to wastewater construction projects in Texas

and Florida.   Prior to the Petition Date, at the request of Williams Industrial Services, LLC

("WIS") and Williams Industrial Services Group, Inc. ("WISG"), Harco, as surety, issued and/or

executed a performance bond and a payment bond, each bearing number 0811139 and each in the

penal sum of $1,831,611.54, on behalf of WIS, as principal, and in favor of JEA, as obligee, in

connection with contract number JEA10741 / 200958, referred to as "Construction Services for

the Arlington East WRF Second MCC Replacement Project 1410403646" (the "JEA Bonds").

Pearce Declaration, § 3.

3.    At the request of WIS and WISG, Harco, as surety, also issued and/or executed a

performance bond and a payment bond, each bearing number 0800972 and each in the penal sum

of $4,367,679.25, on behalf of Williams Industrial Services, LLC ("WIS"), as principal, and in

favor of Bridgestone Municipal Utility District, as obligee, in connection with the "Construction

of Water Plant No. 4" (the "Bridgestone Bonds").  Pearce Declaration, § 4.

4.     At the request of WIS and WISG, Harco, as surety, issued and/or executed certain license and permit bonds issued by Harco on behalf of WIS in the State of Arizona (the "License and Permit Bonds").  Pearce Declaration, § 5.

5.     Harco, as surety, issued the JEA Bonds and Bridgestone Bonds in connection to the contracts referenced in the bonds and hereinafter referred to as the "Bonded Contracts".  Pearce Declaration, § 6.  The License and Permit Bonds, together with the JEA Bonds and Bridgestone Bonds, shall be referred to hereinafter as the "Bonds".  Pearce Declaration, § 6.  A list of the Bonds and the Bonded Contracts is attached as **Exhibit A** to the Pearce Declaration.

6.     As of the Petition Date, Harco had issued Bonds with an aggregate penal sum exceeding $12 million in connection with the Bonded Contracts and the Debtors' operations. Harco issued the Bonds as condition of WISG's execution of an Agreement of Indemnity dated April 19, 2021 (the "Indemnity Agreement").  Pearce Declaration, § 7. A true and correct copy of the Indemnity Agreement is attached as **Exhibit B** to the Pearce Declaration.

7.     Pursuant to the Indemnity Agreement, among other things, WISG and others, jointly and severally, agreed:

> SECOND:    The Principal and Indemnitors shall exonerate, indemnify, and keep indemnified [Harco] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, courts costs and the costs of services rendered by counsel, investigators, accountants, engineers or other consultants . . . ) and from and against any and all such losses and/or expenses which [Harco] may sustain and incur:  (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal and/or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.  The Principal and Indemnitors agree to promptly reimburse [Harco] for all sums paid on account of any such loss.  In the event of any payment by [Harco], the Principal and the Indemnitors further agree that in any accounting between [Harco] and the Principal and Indemnitors, [Harco] shall be entitled to

charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether no not such liability, necessity or expediency existed.

\*\*\*

FIFTH:  This Agreement shall constitute a Security Agreement to [Harco] and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by [Harco] without in any way abrogating, restricting or limiting the rights of [Harco] under this Agreement or under law, or in equity.

\*\*\*

EIGHTH:  At any time, and until such time as the liability of [Harco] under any and all said Bonds is terminated, [Harco] shall have the right to reasonable access to books, records, and accounts of the Principal and Indemnitors, and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by [Harco] is hereby authorized to furnish to [Harco] any information requested.  The Principal and Indemnitors agree to execute, as requested by [Harco], any additional documents to cause the release of records and information authorized by this paragraph.

\*\*\*

EIGHTEENTH:  The Principal and Indemnitors hereby irrevocably nominate, constitute, appoint, and designate [Harco] or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to [Harco] in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by [Harco] in order to give effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be given to [Harco] under all other provisions of this Agreement.

8.      Thus, the Indemnity Agreement (1) creates a contractual right of indemnification;

(2) serves as a security agreement with respect to any and all collateral rights granted under the

Indemnity Agreement; (3) grants Harco access to documents and information necessary to address

the Bonded Contracts, and protect its rights under the Bonds; and (4) appoints Harco as the Principal's and Indemnitors' attorney-in-fact to arrange for the completion of the Bonded Contracts.  These rights are in addition to Harco's equitable subrogation rights pertaining to said funds, which are explained in more detail below.

9.      On July 24, 2023, the Debtors filed their First Rejection Motion.  The Bonded Contracts with respect to which Harco issued Bonds – the Bridgestone Municipal Utility District Bonded Contract and the Jacksonville Electric Authority ("JEA") Bonded Contract – are subjects of the First Rejection Motion.

### Basis of Motion

10.     By this Motion, Harco seeks an order modifying the automatic stay to permit the obligees of the Bond (the "Bond Obligees") under these Bonded Contracts to declare WIS in default under the Bonded Contracts, and to allow Harco to (a) collect the balances on the Bonded Contracts (the "Bonded Contract Balances"), and (b) utilize the Bonded Contract Balances to assure the completion of the Bonded Contracts, and to pay for labor and/or materials provided in furtherance of the Bonded Contracts.  Harco is willing to provide an accounting to the Debtor of its collections and uses of the Bonded Contract Balances.  The Debtor has agreed to provide Debtor Harco with an accounting of all Bonded Contract Balances paid to the Debtor within ninety (90) days of the Petition Date and thereafter, and the uses of said funds, and all Bonded Contract Balances in possession of the Debtor as of the Petition Date, and the uses of such funds.

11.     In addition, Harco seeks modification of the stay out of an abundance of caution so that it may cancel the Arizona License Bonds.

12.     Alternatively, Harco seeks adequate protection should the Court be unwilling to grant relief from the Section 362 automatic stay.

### III.    <u>ARGUMENT</u>

13.    Harco files this Motion out of an abundance of caution in case the Section 362 automatic stay applies.  On the other hand, the automatic stay may not apply for Harco to complete the Bonded Contracts, or to collect the Bonded Contract Balances particularly when the Debtor has indicated it will reject the Bonded Contracts and that it has no remaining equity in the Bonded Contracts.[3]    In addition, Section 362 automatic stay may be inapplicable since the Bonded Contract Balances may be trust funds and are otherwise subject to Harco's right of equitable subrogation, and therefore they are not property of the Debtor's estate.  "[W]hen a debtor contractor breaches its contract with a project owner, it precludes debtor's entitlement to retained funds, and thus these funds are not property of the estate." estate.  *In re Jones Constr. & Renovation, Inc*., 337 B.R. 579, 585 (Bankr. E.D. Va. 2006) (citing *First Indem. of Am. Ins. Co. v. Modular Structures (In re Modular Structures),* 27 F.3d 72 (3rd Cir. 1994) and *In re Pacific Marine Dredging and Construction,* 79 B.R. 924, 929 (Bankr. D. Or. 1987)). [4]

14.    A surety is subrogated to and acquires the rights of the contractor whose obligation it discharged, the subcontractors whose claims it paid, and the owner who holds contract balances

---

[3] The only **arguable** right to the Bonded Contract Balances  the Debtor could retain is bare legal title.  *See Varon v. Salmon (In re: Martin Fein & Co., Inc.)*, 43 B.R. 623, 626 (Bankr. S.D.N.Y. 1984) ("where the debtor's interest in property consists only of bare legal title to a constructive trust, lacking any equitable interest in the trust res, the estate acquires nothing more than bare legal title").  However, even where the Debtor does have legal title to certain property, the Debtor has no right to recover the property for the benefit of the estate.  *Krommenhoek v. A-Mark Precious Metals, Inc. (In re: Bybee)*, 945 F.2d 309, 315 (9th Cir. 1991) ("Property in which the debtor possessed only legal title cannot be recovered for the benefit of the bankruptcy estate").  As the United States Supreme Court has explained, "[t]he Bankruptcy Act simply does not authorize a trustee to distribute other people's property among the bankrupt's debtors….  So here if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of this fund, or had an equitable lien or prior right to it, this property interest of the surety never became part of the bankruptcy estate to be administered, liquidated, and distributed to general creditors of the bankrupt."  *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 135 – 36, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

[4]   Additionally, the surety's right of equitable subrogation takes precedent over any security interest or the interest of a trustee in the bankruptcy because the proceeds subject to the right never become property of the principal or its estate.  *In re Modular Structures*, 27 F.2d at 78-80; *see also In re Larbar Corp.*, 177 F.2d 439, 443 – 444 (6th Cir. 1999).

and retention.  *See generally, Prairie State National Bank v. United States*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Pearlman*, 371 U.S. 132, *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir.1969); *Jones Construction & Renovation, Inc.*, 337 B.R. at 583-84; *In re Larbar Corp.*, 177 F.3d 439 (6th Cir. 1999); *In re Modular Structures, Inc.*, 27 F.2d 72, 74 n1 (3rd Cir. 1994).  In addition, the surety also stands in the shoes of the laborers and material men who have been paid by the surety.  *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.*, 540 So.2d 113, 115-16 (Fla. 1989).  The doctrine of equitable subrogation recognized in the *Pearlman* case has been widely applied to protect sureties upon a bankruptcy filing by a bonded principal.  See, e.g., *In re Modular Structures*, 27 F.3d 72 (3d Cir. 1994).  A surety's equitable subrogation rights attach regardless of whether the payments relate to a performance bond or a payment bond, and the surety's equitable subrogation rights relate "back to the date of the surety's issuance of the bonds . . . ."  *Larbar*, 172 F.2d at 443-44. [5]

15.     In addition, Harco does not believe that relief from the stay is required for Harco to adjust and defend claims under the Bonds or the Bonded Contracts in its own name or in the name of the Debtor.[6]

---

[5] Under the doctrine of subrogation, to the extent Harco may be required to perform and/or pay under a Bond, Harco possesses an equitable interest, superior to those of the Debtor and other claimants in the unpaid progress payments and retainage due under the Bonded Contract it is being required to perform up to the point that Harco is "made whole."  See *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 135 – 36, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).; *Kentucky Central Ins. Corp. v. Brown (In re Larbar Corp.)*, 177 F.3d 439 (6th Cir. 1999); *In re Larbar Corp.*, 177 F.3d 439, 443 (6th Cir. 1999)  ("[t]he law is clear that a surety under these circumstances has a right to the payments due the contractor to the extent of full reimbursement.").  *Prairie State National Bank v. United States*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Pearlman*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir.1969); *n re Jones Construction & Renovation, Inc.*, 337 B.R. 579, 583-84 (Bankr. E.D. Va. 2006).

[6] Harco has the right to enforce the Bonded Contracts and to manage the same in its own name, and  to collect the proceeds payable from Bond Obligees thereunder.  See *Stehle v. United Sur. Co.*, 68 A. 600, 602 (Md. 1908); See *Logan Planning Mill Co. v. Fidelity & Cas. Co. of New York*, 212 F. Supp. 906, 815 (S.D. W. Va. 1962).

16.     Additionally, the Bonds in **Exhibit A** include two license bonds issued on behalf of WIS and in favor of the State of Arizona (the "Arizona License Bonds") in connection with certain licenses that WIS may have used in the operation of its business in Arizona.  The Arizona License Bonds are cancelable by Harco at its election.  The Debtor, as principal on a bond, has no property interest in the bond. *In re Wegner Farms Co.*, 49 B.R. 440, 4440 (Bankr. N.D. Iowa 1985); *see also Matter of Edwards Mobile Homes Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990); See *Matter of Lockard*, 884 F. 2d 1171, 1177 (9th Cir. 1989); *In re Mansfield Tire and Rubber Co.*, 660 F. 2d 1108, 1115 (6th Cir. 1981) (the surety bonds not property of the estate); *In re McLean Trucking Co.*, 74 B.R. 820, 826 (Bankr. W.D.N.C. 1987) (surety bond is not property of the debtor's estate).  Thus, Harco believes that Arizona License Bonds are not property of the Debtor, and that it may send notices of cancellation to the obligees thereunder without violating the stay imposed by 11 U.S.C. § 362.

17.     As stated however, Harco is seeking relief in the event the Court finds the relief sought herein by Harco is subject to Section 362(a).  Harco also seeks relief as the Bonded Contracts require the obligees of the Bond (the "Bond Obligees") to take certain steps to pursue claims and demands under the Bonds, and those Bond Obligees may not be willing to take such steps without clarity that they can do so without violating the automatic stay.  Accordingly, Harco is also filing this Motion, out of an abundance of caution so that it is clear to the Bond Obligees that they can take the appropriate steps under the Bonds to pursue claims thereunder, that  Harco can assert the Debtor's defenses to claims under the Bonds, and any of the Debtors' affirmative claims under the Bonded Contracts, and so that it is clear to the Bond Obligees that they can pay the Bonded Contract Balances to Harco without concern that they may be in violation of the automatic stay.  Finally, Harco is filing this Motion in the event the Court believes its use and

collection of the Bonded Contract Proceeds is subject to the automatic stay and/or Harco's cancellation of the Arizona Bonds is subject to the automatic stay.

18.     Relief is warranted as in light of the First Rejection Motion, Harco is in a better position than the Debtor to adjust, manage, control, settle and defend claims under the Bonds and the Bonded Contracts, and to prosecute any affirmative claims of the Debtor relative to the Bonds and the Bonded Contracts.  Additionally, to the extent of its trust fund rights, its equitable subrogation rights, the Bonds and the Indemnity Agreement, Harco is the proper party to collect the Bonded Contract Balances payable under the Bonded Contracts.  While the Debtor may have rights in the Bonded Contract Balances, whether earned and paid, earned and unpaid, or unearned, those rights are subject to Harco's rights and, and to that end, Harco is willing to, on a quarterly basis and upon request, provide the Debtor with updates regarding claims under the Bonds and Harco's collection and uses of Bonded Contract Balances.  Further, Harco submits it is entitled to relief to cancel the Arizona Bonds since the Debtor has no interest nor further need of them. Accordingly, Harco believes that the Debtor supports the entry of an order granting relief from the automatic stay for the purposes set forth in this paragraph.  In addition, Harco adopts the arguments made by any other surety in support of relief from the automatic stay, including those made in the Motion to Lift Stay as to Bonded Contract Funds, or, Alternatively, for Adequate Protection filed by Liberty Mutual Insurance Company, Berkshire Hathaway Specialty Insurance Company and Arch Insurance Company [Dkt. No. 104] (the "Liberty Motion"), and the Motion of Lexon Insurance Company to Lift Stay as to Bonded Contract Fund, or Alternatively, for Adequate Protection [Dkt. No. 114] (the "Lexon Motion").

19.     Based therefore on the following, to the extent the stay imposed by § 362 of the Bankruptcy Code applies, Harco seeks the entry of an order modifying the automatic stay to make

it clear that Harco is allowed  (a) to adjust, manage, control and defend, in its own name or in the name of the Debtor, claims under the Bonds and the Bonded Contracts, without further leave or Order of this Court, (b) to prosecute and settle any affirmative claims of the Debtor relative to the Bonds and the Bonded Contracts without further leave or Order of this Court, and (c) to collect and apply the Bonded Contract Balances from the Bond Obligees without further leave or Order of this Court, all pursuant to its rights under the Indemnity Agreement and the Bonds.

20.     Alternatively, in the event the Court is unwilling to lift the Section 362 automatic stay as to Harco (and otherwise believes the Section 362 automatic stay applies, Harco seeks adequate protection in connection with the Bonded Contract Proceeds and Bonded Contract Balances.  Such adequate protection can be provided by requiring that the Debtor Bonded segregate and deposit the Bonded Contract Proceeds into a separate trust account, subject to the signature of both the Debtor and Harco before Bonded Contract Proceeds can be disbursed and subject to the requirement where Bonded Contract Proceeds can only be used to satisfy amounts owed on Bonded Contracts.  *See In re RAM Construction Co.*, 32 B.R. 758 (Bankr. W.D. Pa. 1983) ("the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *see also* 11 U.S.C. §363(c)(4) (requiring the Debtor to "segregate for any cash collateral").

21.     Nothing herein shall be deemed to waive, alter or limit any of Harco's rights, interests or remedies in respect of any claims against Harco under the Bonds, the Indemnity Agreement and/or its common law rights of subrogation..  Harco further reserves all rights, remedies and interests to any Bonded Contract Proceeds paid to the Debtor and not utilized for the completion of the Bonded Contracts and/or the payment of work labor, and/or materials in furtherance of the Bonded Contracts.

WHEREFORE, for the foregoing reasons, Harco respectfully requests that the Court enter an order, substantially in the form attached hereto (the "Proposed Order"):  (a) granting relief from the automatic stay imposed by § 362 of the Bankruptcy Code; (b)  providing that, to the extent the stay imposed by § 362 of the Bankruptcy Code is applicable, Harco is granted relief from the stay to  (i) adjust and defend claims against it under the Bonds and the Bonded Contracts and assert the Debtor's defenses and affirmative claims in respect of those claims, (ii) collect the Bonded Contract Balances, pursuant to its rights under the Bonds and the Indemnity Agreement, (iii) cancel the Arizona License and Permit Bonds; (c) directing the Debtor to provide Harco with an accounting of all Bonded Contract Balances paid to the Debtor within ninety (90) days of the Petition Date and thereafter, and the uses of said funds, and all Bonded Contract Balances in possession of the Debtor as of the Petition Date, and the uses of such funds; (d) directing Harco shall, on a quarterly basis and upon request, provide a statement to the Debtor regarding claims under the Bonds, Harco's collection of the Bonded Contract Balances, and Harco's use of the Bonded Contract Balances pursuant to its rights under the Bonds and the Indemnity Agreement; and (e) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MCELROY, DEUTSCH, MULVANEY**
**& CARPENTER, LLP**

Dated: August 7, 2023

*/s/ Gaston P. Loomis*
Gaston P. Loomis
Michael R. Morano (admitted *pro hac vice*)
300 Delaware Ave., Suite 1014
Wilmington, DE  19801
Telephone:  (302) 300-4510
Facsimile:  (302) 654-4031
Email:  gloomis@mdmc-law.com
        mmorano@mdmc-law.com

-and-

Scott C. Williams (admitted *pro hac vice*)
Michael E. Collins (admitted *pro hac vice*)
**MANIER & HEROD, P.C.**
1201 Demonbreun Street, Suite 900
Nashville, Tennessee  37203
Telephone:  (615) 244-0030
Facsimile:  (615) 242-4203
Email:  swilliams@manierherod.com
            mcollins@manierherod.com

*Counsel to Harco National Insurance Company*