**EXHIBIT A – Bonds and Bonded Contracts**

| Bond No. | Principal (Name on bond itself) | Amount (in bond or rider) | Obligee (in bond or rider) | Project, Description, or Type |
|---|---|---|---|---|
| 0800972 <br><br> Harco National Insurance Company | Williams Industrial Services, LLC | $ 4,367,679.25 | Bridgestone Municipal Utility District | Performance Bond <br><br> Chapter 2253 Texas Government Code <br><br> Construction of Water Plant No. 4 |
| 0800972 <br><br> Harco National Insurance Company | Williams Industrial Services, LLC | $ 4,367,679.25 | Bridgestone Municipal Utility District | Payment Bond |
| 0811139 | Williams Industrial Services, LLC | $1,831,611.54 | JEA, 21 W. Church Street, Jacksonville, FL | Performance Bond <br><br> Construction Services for the Arlington East WRF Secondary MCC Replacement Project 1410403646 <br><br> Contract # JEA10741/200958 |
| 0811139 | Williams Industrial Services, LLC | $1,831,611.54 | JEA, 21 W. Church Street, Jacksonville, FL | Payment Bond <br><br> Construction Services for the Arlington East WRF Secondary MCC Replacement Project 1410403646 <br><br> Contract # JEA10741/200958 |

| | | | | |
|---|---|---|---|---|
| 0800990 | Williams Industrial Services, LLC | $35,000 | State of Arizona | A-Engineering License Bond |
| 0800991 | Williams Industrial Services, LLC | $15,000 | State of Arizona | C-4 Boilers, Steamfitting and Process Piping |
| | Total | $12,448,581.58 | | |

**<u>Exhibit B – Indemnity Agreement</u>**

**<u>Exhibit B – Indemnity Agreement</u>**



# AGREEMENT OF INDEMNITY
## Commercial Bond (II)

THIS AGREEMENT of Indemnity, made and entered into this _19th_ day of _April_, 20_21_ by

Williams Industrial Services Group Inc. ; any company which is subsidiary to or affiliated with Williams Industrial Services Group Inc. (whether now owned or hereafter created or acquired); any other entity or individual for whom Williams Industrial Services Group Inc. requests a bond or bonds, 100 Crescent Centre Parkway, Suite 1240, Tucker, GA 30084

(Insert full name and address of Principal)
(hereinafter called the Principal) and


(Insert full name and addresses of Indemnitors, if any)
(hereinafter called the Indemnitors, if any) and

**INTERNATIONAL FIDELITY INSURANCE COMPANY, ALLEGHENY CASUALTY COMPANY, and/or HARCO NATIONAL INSURANCE COMPANY, all affiliates of IAT Insurance Group, Inc.,**
One Newark Center, 20th Floor, Newark, NJ 07102 (hereinafter called the Surety),

## WITNESSETH:

WHEREAS the Principal, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue to substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Principal or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Principal and Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Principal and Indemnitors or the Surety may have already issued such Bonds in reliance upon execution of this Agreement; and

WHEREAS, the Principal and Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

NOW, THEREFORE, in consideration of the premises, the Principal and Indemnitors for themselves, their existing and future subsidiaries and affiliates, heirs, executors, co-venturers, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

### PREMIUMS
FIRST: The Principal and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Principal or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Principal and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal and/or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Principal and Indemnitors agree to promptly reimburse the Surety for all sums paid on account of any such loss. In the event of any payment by the Surety, the Principal and Indemnitors further agree that in any accounting between the Surety and the Principal and Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

The Surety is not a fiduciary and owes no fiduciary obligations to the Principal and Indemnitors.

Payments not made by the Principal and Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at maximum rate allowed by law, with such interest accruing from the date payment was made by the Surety for which reimbursement is demanded.

The Principal and Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against each other or each other's property until the Principal's and Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

No action or failure to act by the Surety shall constitute a waiver of any right, power, or remedy afforded it by this Agreement, at law, or otherwise, nor shall such action or inaction constitute approval of or acquiescence in any breach by the Principal and/ or Indemnitors, except as may be specifically agreed in writing.

The Principal and Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued in reliance upon this Agreement, notwithstanding that the entity on whose behalf said Bonds were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

## COLLATERAL SECURITY

THIRD: The Principal and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgement, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Principal and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to demand an additional amount of collateral security to cover any possible additional liability or loss, the Principal and Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such demand. The Surety shall have no obligation to invest or to provide a return on any such deposits. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the money or other collateral security and further agree that the aforesaid money or other collateral security may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

## DISCHARGE AND ADDITIONAL SECURITY

FOURTH: The Principal and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge is unattainable, the Principal and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim. The amount of such demand, including reasonable attorney fees and expenses is at the sole discretion of the Surety. The Principal and Indemnitors expressly waive any right to interest or other income which may be earned on the aforesaid funds and further agree that said funds may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such funds, at public or private sale, with or without notice to the Principal and Indemnitors, or by any other method permitted or applicable by law.

The Principal and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make immediate payment to Surety as herein provided shall cause the Principal and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision.

In the event that any or all of the Principal and Indemnitors fail to comply with such demand as stated in this provision, the Principal and Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and attorney's fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Principal and Indemnitors to Surety under the terms of this provision. The authority to confess judgment as set forth herein shall not be exhausted by one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Principal and Indemnitors to the Surety shall have been paid in full. Demand shall be sufficient if sent by registered or certified mail, hand delivered, or via overnight mail to the last known address of the Principal and Indemnitors, whether or not actually received.

## SECURITY INTERESTS AND UCC SECURITY AGREEMENT

FIFTH: This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the Code.

This Security Agreement and Financing Statement shall secure payments made, and to be made, by the Surety hereunder and under the Bonds issued by the Surety that are not reimbursed to the Surety by the Principal and Indemnitors and shall cover and attach to the following collateral: all tangible or intangible personal property and fixtures owned by the Principal and Indemnitors, wherever located or situated and whether now owned or hereafter acquired, and shall cover proceeds from sale of covered property.

## CHANGES

SIXTH: The Surety is authorized and empowered, without notice to or knowledge of the Principal and Indemnitors, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Principal and Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Principal and Indemnitors.

## CONTINUING DUTY OF DISCLOSURE TO SURETY

SEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, if the Principal and/or Indemnitors become aware of any materially adverse change in the Principal's financial condition, or any fact (s) suggesting the possibility of any such change (including, but not limited to, pending legal actions against the Principal), the Principal and/or Indemnitors shall immediately advise the Surety of same in writing.

As used herein, "materially adverse change" shall be defined to include: (a) any event or circumstance which, when considered individually or together with other events, could be expected to have a materially adverse effect on (i) the financial condition of the Principal, or on the earnings, operations, assets, business affairs or business prospects of the Principal; (ii) the ability of the Principal to perform or observe any of its obligations under this Agreement or under any contract that is the subject of the Surety's Bond obligations; (iii) the rights and remedies of the Surety under this Agreement; and/or (iv) the Surety's evaluation of risk in determining whether to continue to extend surety credit to the Principal and/or in determining the terms and conditions of any such extension of credit.

## BOOKS AND RECORDS

EIGHTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Principal and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested. The Principal and Indemnitors agree to execute, as requested by the Surety, any additional documents to cause the release of records and information authorized by this paragraph.

## DECLINE EXECUTION

NINTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Principal and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

TENTH: The Principal and Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Principal and Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Principal and Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

ELEVENTH: The Principal and Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

TWELFTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Principal and Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## CO-SURETIES AND REINSURERS

THIRTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring insurers and/or sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring insurers and/or sureties, as their interests may appear.

## SUITS

FOURTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

The Principal and Indemnitors hereby consent and submit to personal jurisdiction in the courts of New Jersey with regard to claims and actions against them by the Surety hereunder and consent that any process necessary or proper for the initiation of any court action in New Jersey or for entry of judgment may be served upon them by certified and ordinary mail, addressed to them or to their attorneys, at their last known addresses.

The Indemnitors furthermore hereby agree to submit to personal jurisdiction in any forum in which the Surety may be sued on an obligation for which the Principal and Indemnitors have agreed to indemnify the Surety.

## OTHER RIGHTS

FIFTEENTH: All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against any one or more of the Principal and Indemnitors shall not release or waive any right against any other of the Principal and Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Principal or to await receipt of any dividends from the legal representatives of the Principal before asserting its rights under this Agreement against the Indemnitors

The rights, powers and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by terms of any other agreement, by operation of law or otherwise.

## OTHER INDEMNITY

SIXTEENTH: The Principal and Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal and Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from any and all of the Principal and Indemnitors or others, it being expressly understood and agreed by the Principal and Indemnitors that any and all other rights which the Surety may have or acquire against the Principal and Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No subsequent agreements of indemnity or other agreements of any type whatsoever between the Surety and the Principal and/or Indemnitors, or any of them, shall be deemed a novation of this Agreement.

## INVALIDITY

SEVENTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Principal and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Principal and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. If any part of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such part was omitted.

## ATTORNEY IN FACT

EIGHTEENTH: The Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to the Surety in this Agreement, and in the name of the Principal and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principal and Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such attorney-in-fact.

## NOTICE

**NINTEENTH:** Upon becoming aware of any demand, notice, or proceeding preliminary to fixing any liability with which the Surety may be subsequently charged under any Bond, the Principal and Indemnitors shall immediately notify the Surety in a writing delivered at its Home Office, One Newark Center, 20th Floor, Newark, New Jersey 07102 to the attention of the Claims Department. The Surety reserves the right to change periodically the address for delivery of notification by the Surety's written direction delivered to the Principal and Indemnitors.

Any notification by the Surety to any one individual or entity comprising the Principal and Indemnitors shall constitute notice to the remaining individuals and entities comprising the Principal and Indemnitors.

## TERMINATION

**TWENTIETH:** This Agreement may be terminated by the Principal and Indemnitors upon twenty days' written notice sent by certified or registered mail to the Surety at its home office at One Newark Center, 20th Floor, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Principal and Indemnitors from their obligations under this Agreement as to the Bonds that may have been theretofore executed or executed pursuant to Consent of Surety issued prior to notice of termination or with respect to Bonds executed after the date of such termination which the Surety has become obligated, prior to such date, to execute. Further, such notice of termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given.

## THIRD PARTIES

**TWENTY-FIRST:** In the event that that the Principal and/or an Indemnitor(s) and/or their subsidiaries or affiliates request that a Bond or Bonds be issued on behalf of a third party as principal, the provisions of this Agreement shall apply with equal force to any such Bond or Bonds. This Agreement applies to Bonds executed at the request of the Principal and/or Indemnitor(s) on behalf of any and all of their wholly or partially owned subsidiary companies, subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

## AMENDMENTS

**TWENTY-SECOND:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SUBSEQUENT EXECUTION

**TWENTY-THIRD:** The Principal and Indemnitors waive any defense that this instrument was executed subsequent to the date of any Bond, admitting and covenanting that such Bond was executed pursuant to the request of the Principal and Indemnitors, and in reliance upon the Principal/Indemnitors' promise to execute this document.

## CROSS-INDEMNITY

**TWENTY-FOURTH:** In the event that more than one party executes this Agreement as "Principal", and the Surety sustains any loss with respect to one or more of the parties identified as "Principal", all parties executing this Agreement as either "Principal", or "Indemnitors", or both, shall be jointly and severally liable to the Surety for such loss in accordance with the terms of this Agreement.

## REPRESENTATIONS

**TWENTY-FIFTH:** The undersigned represent to the Surety that they have carefully read the entire Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein. The undersigned further warrant and represent to the Surety that all necessary action has been taken by them to authorize the execution and delivery of this Agreement.

## UNIFORM ELECTRONIC TRANSACTIONS ACT

TWENTY-SIXTH: The undersigned agree that this document and any and all bonds issued by the Surety will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

## COUNTERPARTS

TWENTY-SEVENTH: This Agreement may be executed in any number of counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Principal and Indemnitor when that Principal or Indemnitor executes this Agreement, regardless of whether any other Principal or Indemnitor has executed the Agreement or fails or ceases to be bound by the Agreement for any reason. Delivery of a facsimile, electronic or digital copy of this Agreement's signature pages, executed by any Principal or Indemnitor, to the Surety or the Surety's agent or representative shall constitute effective execution and delivery of this Agreement by that Principal or Indemnitor and shall constitute a valid and original signature to this Agreement for all purposes. Principal's and Indemnitors' obligations to Surety shall not be affected by the failure of any Principal or Indemnitor to sign any Bond.

IN WITNESS WHEREOF, we have hereunto set our hands and seals.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

**IMPORTANT:** To all indemnitors: please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation). The signature of each and every Corporation must be attested to and sealed by the Corporate Secretary or other officer as permitted by the governing documents and/or state law. The signature of each and every LLC, Partnership and/or Trust that is a party to this agreement must be witnessed by at least one disinterested person. The signature of each Individual party does not require a witness except for agreements containing Principals and/or Indemnitors located in the state of Louisiana, which requires the witness of a disinterested person. All signatures must be notarized.

**PRINCIPALS - (Corporate Signatories)**

Attest (intended to be signed under seal):   Williams Industrial Services Group Inc.   (Corporate Name)

_Charles E. Wheelock_   By _M Kelly Powers_   (Seal)
(Secretary/Assistant Secretary)   (Signature)

_Charles E. Wheelock, Secretary_   _M. Kelly Powers - President_
(Print or Type Name)   (Print or Type Name and Title)

Federal Tax ID ▓▓▓▓▓▓▓▓

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Georgia_
COUNTY OF _DeKalb_   s.s.

On This _19_ day of _April_, in the year 20_21_ before me personally come(s) _Charles Wheelock and Michael Powers_ to me known who, being by me duly sworn, deposes and says that he/she resides in the city of _____

that he/she is the _Secretary & President_ of the Williams Industrial Services Group Inc. the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

_[signature]_   _July 21, 2024_
(Signature and title of official taking acknowledgment/ Notary)   My Commission Expires (Date)

[Notary Seal: SANDRA NEWTON, MY COMMISSION EXPIRES JULY 21, 2024, NEWTON CO., GEORGIA, NOTARY PUBLIC]