<u>EXHIBIT A</u>
(Proposed Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| | (Jointly Administered) |
| Debtors. | Re. Docket No. _____ |

### ORDER (I) AUTHORIZING EMPLOYMENT
### AND RETENTION OF G2 CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR,
### EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (a) authorizing the employment and retention of G2 Capital Advisors, LLC ("G2"), as financial advisor, effective as of the Petition Date, under the terms of the Amended Engagement Letter, a copy of which is attached to the Application as **Exhibit C**, and (b) granting related relief, all as more fully set forth in the Application; and this Court having reviewed the Application and the Arrigoni Declaration; and this Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and this Court having found, based on the representations made in the Application and the Arrigoni Declaration, that G2 is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that the employment of G2 is in the best interests of the Debtors, their estates, and creditors; and this Court having found that the terms and conditions of G2's employment set forth in the Engagement Letter (including the fee and expense structure) are reasonable, and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to retain and employ G2 as financial advisor, effective as of the Petition Date, under the terms of the Amended Engagement Letter, as modified by this Order.

4.      The Debtors are authorized to compensate and reimburse G2 consistent with the terms of the Amended Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court, provided, however, that G2 shall not seek reimbursement for any attorneys' fees or expenses for the defense against any formal objection to its fee applications filed in the Chapter 11 Cases.

5.      G2 is authorized to provide the Debtors with the professional services described in the Application.

6.      G2 shall use its reasonable best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in the Chapter 11 Cases.

7.      The Indemnification Provisions in the Amended Engagement Letter are approved subject to the following modifications during the pendency of the Chapter 11 Cases

      a.      Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify the Indemnified Parties, in accordance with the Amended Engagement Letter, for any claim arising from, related to, or in connection with their performance of the services described in the Amended Engagement Letter;

      b.      Notwithstanding anything to the contrary in the Amended Engagement Letter, the Debtors will have no obligation to indemnify any Indemnified Parties, or provide contribution or reimbursement to any Indemnified Parties, (i) for any claim or expense that is judicially determined (the determination having become final and no longer subject to appeal) to have arisen directly from the respective Indemnified Party's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of G2's obligations under the Amended Engagement Letter, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al*., 315 F.3d 217 (3d Cir. 2003); or (iii) settled before a judicial determination as to that Indemnified Party's gross negligence, willful misconduct, or bad faith, but determined by this Court, after notice and a hearing, to be a claim or expense for which that Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Amended Engagement Letter as modified by this Order; and

      c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, G2 believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Amended Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, G2 must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court will have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify G2.

8.      Notwithstanding anything in the Amended Engagement Letter to the contrary, this Court shall retain jurisdiction over any and all matters arising under or in connection with G2's engagement by the Debtors and the Amended Engagement Letter, including the Indemnification Provisions.

9.      G2 shall file fee applications for allowance of compensation and reimbursement of fees and expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures established by this Court.

10.     In the event that, during the pendency of the Chapter 11 Cases, G2 seeks reimbursement for any attorneys' fees or expenses, the invoices and supporting time records from such attorneys, appropriately redacted to preserve applicable privileges, shall be included in G2's fee applications and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of this Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; *provided*, that G2 shall not seek reimbursement from the Debtors' estates for any attorney's fees incurred in defending against objections to any of G2's fee applications filed in the Chapter 11 Cases.

11.     To the extent that there is any inconsistency between the terms of the Application, the Arrigoni Declaration, the Amended Engagement Letter, and this Order, the terms of this Order shall govern.

12.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order in accordance with the Application.

13.     Notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014, this Order shall be effective and enforceable upon entry hereof.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

EXHIBIT B
(Victoria Arrigoni Declaration)

00055308.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| Debtors. | (Jointly Administered) |

**DECLARATION OF VICTORIA ARRIGONI**
**IN SUPPORT OF APPLICATION OF DEBTORS**
**FOR ENTRY OF ORDER (I) AUTHORIZING EMPLOYMENT**
**AND RETENTION OF G2 CAPITAL ADVISORS, LLC AS**
**FINANCIAL ADVISOR, EFFECTIVE AS OF PETITION DATE,**
**AND  (II) GRANTING RELATED RELIEF**

I, Victoria Arrigoni, being duly sworn, state the following under the penalty of perjury:

1.      I am a Managing Director at G2 Capital Advisors, LLC ("G2"), which has its principal office at 420 Boylston Street, Boston, Massachusetts 02116. G2 is the proposed financial advisor to the above-captioned debtors and debtors in possession (the "Debtors").  I am over the age of eighteen (18) years and am competent to make this declaration.

2.      I am duly authorized to make this declaration (the "Declaration") on behalf of G2 in support of the Debtors' *Application of Debtors for Entry of Order (I) Authorizing Employment and Retention of G2 Capital Advisors, LLC as Financial Advisor, Effective as of Petition Date, and (II) Granting Related Relief* (the "Application")[2] seeking authorization to retain G2 as the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

financial advisor on the terms, and subject to the conditions, set forth therein and in the Amended Engagement Letter.

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.[3]

## PERSONAL BACKGROUND AND QUALIFICATIONS

4.      I am the Managing Director, Head of Industrial and Manufacturing of G2, and served in that role since September 2018.  Prior to becoming Managing Director, I held several other positions with G2 since joining the company in December 2011, including Principal, Vice President, and Director.  I am a graduate of the UC San Diego Jacobs School of Engineering and the Yale School of Management.

## G2'S QUALIFICATIONS

5.      G2 is a leading independent financial advisory firm that has provided financial advisory services to major corporation, partnerships, institutions, governments, and investors throughout the United States.

6.      G2 and its professionals have extensive experience working with financially distressed companies from a variety of industries in complex financial restructurings, both in- and out-of-court, and have an excellent reputation for providing high quality financial advisory services to debtors and other constituencies in chapter 11 cases and other distressed situations, including, among others, Directed, LLC; Frontier Yarns; Beavex Incorporated; The Paper Store; Epic Companies, LLC; Tilden Marcellus LLC; Aerospace Holdings, Inc.; AeroCision Parent, LLC; and Obstetric and Gynecologic Associates of Coralville Clinic.

---

[3] Certain of the disclosures set forth herein relate to matters not within my personal knowledge, but are rather within the knowledge of other G2 employees and are based on information provided to me by them.

## SERVICES TO BE PROVIDED

7.      Pursuant to the Amended Engagement Letter, the Company (as defined in the Engagement Letter) has requested that G2 render the following professional services in connection with the Chapter 11 Cases:

      a.     Assisting the Company with financial forecasting and reporting, including:
           i.    weekly updates to the 13-week cash flow ("TWCF") forecast
          ii.    weekly reporting of actual cash flow performance vs the DIP budget ("Weekly Variance Reporting)
        iii.    updates to the monthly 3-statement forecast, projection of key financial covenants, and sensitivity analysis
        iv.    Preparation of other key financial and operating reports
         v.    Preparation of certain schedules, such as the SOFA and SOAL schedules, in connection with the Chapter 11 case
      b.     Assisting the Company with other ad-hoc financial analysis as needed

8.      To the extent that the Debtors requests that G2 perform additional services not contemplated by the Amended Engagement Letter, such services and the fees for such services will be mutually agreed upon by G2 and the Debtors in writing, and will be subject to Court approval.

9.      I believe that G2 is well qualified and able to provide the foregoing services to the Debtors. In addition, I believe that the services that G2 will provide are necessary to maximize the value of their estates and will not be duplicative of the services that other professionals will be providing to the Debtors in the Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

10.      In consideration of the services to be provided by G2, and as more fully described in the Amended Engagement Letter, subject to the Court's approval, G2 will charge the Debtors for its services at the rates set forth in the Amended Engagement Letter.  Those rates are as follows:

| Team Member Level | Hourly Rate |
|---|---|
| Senior Managing Director | $850 |
| Managing Director | 750 |
| Director | 650 |
| Vice President/Principal | 500 |
| Senior Associate | 400 |
| Associate/Analyst | 300 |

In my capacity as a Managing Director, I will serve as the executive leader on the engagement and Zachary Talotta, Vice President, will serve as the project manager. The foregoing rates represent a discount from G2's standard hourly rates currently in effect.

11.    The Debtors have agreed to pay G2 for its services at the rates specified in paragraph 10, and to reimburse G2 for reasonable out-of-pocket expenses incurred in connection with its engagement, including, without limitation, travel, lodging, document preparation, and engagement related legal fees and costs, all such fees and expenses being subject to approval by the Court following notice and a hearing as provided in the Bankruptcy Code and applicable Bankruptcy Rules.

12.    G2 will maintain time-keeping records in support of its compensation and actual necessary costs and expenses incurred in connection with rendering services to the Debtors. G2 intends to apply to the Court for the allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any orders of this Court.

13.    G2 has not shared and will not agree to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## PRE-PETITION PAYMENTS TO G2

14.     On January 3, 2023, the Company and G2 executed a First Amendment to the Engagement Letter pursuant to which, among other things the Company paid G2 an "evergreen" deposit in the amount of $30,000, against which G2 charged fees for its services, and reimbursement of its expenses, on a weekly basis, which deposit was refreshed weekly to its original amount prior to the Petition Date to provide for advance payments to cover services furnished prior to the Petition Date.   As contemplated by the First Amendment to the Engagement Letter, the deposit was increased to $70,000 as of July 11, 2023 to ensure coverage for services rendered before the petition.  As a result, G2 has received payment in full for all fees and expenses associated with the services furnished to the Debtors prior to the Petition.  As of the Petition Date, the remaining balance of the evergreen deposit was $7,325.  G2 received $263,937.50 from the Debtors within 90 days of the Petition Date for services rendered prior to the Petition Date.

## DISINTERESTEDNESS OF G2

15.     To the best of my knowledge, information and belief, as of the date hereof, G2: (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as is required under section 327(a) of the Bankruptcy Code and, as set forth in this Declaration; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, shareholders, or other parties in interest, except as disclosed in this Declaration and in Schedule 2 attached hereto.

16.     G2 obtained from the Debtors or its representatives the names of individuals and entities that may be parties in interest in the Chapter 11 Cases ("Potential Parties in Interest"), and such parties are listed on Schedule 1.

17.    G2 has conducted a search of its electronic client databases for relationships to determine its connections with the Potential Parties in Interest. As G2, and not any of its affiliates, is the entity being retained by the Debtors, we have researched only the electronic client data bases of G2, not of all its affiliates, to determine if G2 has connections with any Potential Parties in Interest, and G2 makes no representation as to the disinterestedness of its affiliates or their respective professionals or employees in respect to the Chapter 11 Cases. G2 will not represent entities which are creditors of, or have other relationships to, the Debtors, in matters relating to the Chapter 11 Cases.

18.    To the best of my knowledge and belief, based on the search of G2's electronic data bases for relationships as described above, neither G2 nor I, nor any other employee of G2 that will provide services to the Debtors in connection with this engagement, holds any interest adverse to the Debtors or its estates or has any connection with the Potential Parties in Interest, except (a) as set forth in Schedule 2 and (b) as otherwise set forth below:

    a.    G2 is a prominent financial advisory firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information, and belief, G2's services to these parties were and are wholly unrelated to the Debtors, their estates, or the Chapter 11 Cases.

    b.    As part of its practice, G2 appears in numerous cases, proceedings and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Chapter 11 Cases. Furthermore, G2 has in the past and will likely in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors in matters upon which G2 is to be engaged.

19.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, G2 has not been retained to assist any entity or person other than

the Debtors on matters relating to, or in direct connection with, the Chapter 11 Cases. G2 may, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in the Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

20.    I am not related or connected to, and, to the best of my knowledge, no other professional of G2 who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware or any employee in the Office of the United States Trustee for the District of Delaware.

21.    Moreover, insofar as I have been able to determine, no G2 employee who will work on this engagement holds or represents any interest adverse to the Debtors or their estates, and G2 is a "disinterested person" as such term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that such professionals:

    a.    are not creditors, equity security holders, or insiders of the Debtors;
    b.    were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and
    c.    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

22.    To the extent that G2 discovers any additional facts bearing in a material respect on its disinterestedness during the period of G2's retention in connection with the Chapter 11 Cases, G2 will supplement this Declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 9, 2023                                   */s/ Victoria Arrigoni*
                                                        Victoria Arrigoni
                                                        Managing Director

## SCHEDULE 1
## Potential Parties in Interest

### Debtors
Williams Industrial Services Group, Inc.
Williams Industrial Services Group, LLC
Williams Plant Services, LLC
Williams Specialty Services, LLC
Williams Industrial Services, LLC
WISG Electrical, LLC
Construction management Professionals, LLC
Williams Global Services, Inc.
Steam Enterprises, LLC
GPEG LLC
Global Power Professional Services, Inc.
WISG Canada Ltd.
WISG Nuclear Ltd
WISG Electrical Ltd

### Related Non-Debtor Entities
Braden Holdings, LLC
Braden Manufacturing SA de CV

### Current and Former Directors and Officers
Tracy D. Pagliara
Gary C. Volo

### Significant Bondholders / Equityholders
Hanover Insurance Company

### Secured Lenders
PNC Bank, National Association
EICF Agent LLC
Energy Impact Credit Fund I LP
WYNNEFIELD PARTNRS SMALL CAP VALUE, LP I
WYNNEFIELD PARTNERS SMALL CAP VALUE, LP

### Adverse Litigation Parties
Bobby Thompson & Paul Blake
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
Fabiani, Cohen & Hall, LLG
FordHarrison
Lewis Brisbois
Mauro Lilling Naparty LLP
Michael G. Conway, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Ramey Chandler Law Firm
Thompson Coe

**Significant Creditors/Vendors/Contract Counterparties**
18-27A 42ND STREET ASTORIA LLC
ARIES BUILDING SYSTEMS
AUGUSTA INDUSTRIAL SERVICES
BAUMERT SAS
BAY CRANE SERVICE INC
CIGNA HEALTHCARE ACCT # 630873
CMF
DEPT OF LABOR AND INDUSTRIES
FASTENAL COMPANY
FLEXENTIAL CORP
GEXPRO
GRANITE TELECOMMUNICATIONS LLC
HDS WHITE CAP CONST SUPPLY
HERC RENTALS
HUDSON ELEVATOR GROUP
JOHNSON CONTRACTORS, INC.
KBH SOLUTIONS LLC
KMC CONSTRUCTION INC
MAGID GLOVE & SAFETY MFG CO
MARTIN MARIETTA MATERIALS
PENTA TECHNOLOGIES,LLC
PLANT MACHINE & WELDING INC.
RETUBECO
SUNBELT RENTALS
THOMPSON BUILDING WRECKING CO
THOMPSON HINE
UNITED RENTALS-PAYMENT CENTER
WA STATE DEPARTMENT OF REVENUE
WELDING WORKS, INC.

**Landlords**

**Banks**
PNC
Bank Direct Capital Finance
Texas Capital Bank
TD Bank

**Insurers/Brokers**
First Insurance Funding
Starr Indemnity & Liability Company
Western Surety Company

XL Specialty Insurance Company
Liberty Mutual Insurance Company
Berkshire Hathaway Specialty Insurance Co.
Arch Insurance Co.
Harco National Insurance Co.
Lexon Insurance Co.
Nationwide Mutual Insurance Co.
Simkiss & Block
Alera Group Agency, LLC

**Utilities**
Jacksonville Electric Authority (JEA) -- Florida
St. Johns County, Florida
Bridgestone Municipal Utility District
Clay County Utility Authority (Texas)
Green Cove Springs, Florida
FRONTIER COMMUNICATIONS
COMCAST
LANE LAND DEVELOPMENT LLC
ADT SECURITY SERVICES
VERIZON WIRELESS
WOW! INTERNET CABLE AND PHONE
GRANITE TELECOMMUNICATIONS LLC

**Taxing Authorities**
Alabama Department of Revenue
Alaska Department of Revenue
Arizona Department of Revenue
Arizona Unclaimed Property
Arkansas Auditor of State's Office
Arkansas Secretary of States
Canada Revenue Agency
Chillicothe City Income Tax Department
City of Dothan
City of Dunwoody
Colorado Department of Revenue
Commonwealth of Pennsylvania State Treasury Department
Comptroller of Maryland
DC Government Unclaimed Property Unit
Delaware Department of Finance
Delaware Division of Revenue
Department of Finance and Administration
Department of Revenue
Department of Revenue Services
Department of State
Department of Taxation

Department of the Treasury
Duval County Property Appraiser's Office
Florida Department of Financial Services
Florida Department of Revenue
Franchise Tax Board
Georgia Department of Revenue
Idaho State Tax Commission
Illinois Department of Revenue
IN Department of Revenue
Iowa Department of Revenue
Kentucky Department of Revenue
Kentucky State Treasurer
Louisiana Department of Revenue
Louisiana Department of Treasury
Maine Revenue Services
Massachusetts Department of Revenue
Michigan Department of Treasury
Minnesota Department of Commerce
Minnesota Department of Revenue
Missouri Department of Revenue
Montana Department of Revenue
MS Claiborne County Tax Assessor
Nebraska Department of Revenue
New Hampshire Department of Revenue Administration
New Mexico Taxation and Revenue Department
New York State Department of Taxation and Finance
New York State Office of the State Comptroller
North Carolina Department of Revenue
North Carolina Department of State Treasurer
NYC Department of Finance
Office of State Tax Commissioner
Ohio Department of Taxation
Ohio Division of Unclaimed Funds
Oklahoma Tax Commission
Ontario Ministry of Finance
Oregon Department of Revenue
PA Department of Revenue
SC State Treasurer's Office
Shelby County Assessor of Property
State of Alabama Office of The State Treasurer
State of New Hampshire Treasury
State of West Virginia Treasurer's Office
State Treasures Office
Tennessee Department of Revenue
Tennessee Department of Treasury
Texas Comptroller of Public Accounts

The Workplace Safety and Insurance Board Ontario
Town of West Point Treasurer
Treasurer of Virginia
Treasurer State of Connecticut
Utah State Tax Commission
Vermont Department of Taxes
Washington State Department of Revenue
West Virginia State Tax Department
Wisconsin Department of Revenue

**Debtor's Professionals (including Ordinary Course Professionals)**
Epiq Global
Thompson Hine LLP
G2 Capital Advisors
Greenhill & Co., LLC
Chipman Brown Cicero & Cole, LLP

**Other Parties' Professionals**

**Bankruptcy Judges (District of Delaware)**
Chief Judge Laurie Selber Silverstein
Judge John T. Dorsey
Judge Craig T. Goldblatt
Judge Thomas M. Horan
Judge Karen B. Owens
Judge Brendan L. Shannon
Judge J. Kate Stickles
Judge Mary F. Walrath
Judge Ashley M. Chan

**Staff of Office of the United States Trustee, Region 3**
Lauren Attix
Linda Casey
Denis Cooke
Joseph Cudia
Holly Dice
Shakima L. Dortch
Timothy J. Fox, Jr.
Diane Giordano
Christine Green
Benjamin Hackman
Ramona Harris
Nyanquoi Jones
Jane Leamy
Hannah M. McCollum
Joseph McMahon

Angelique Okita
James R. O'Malley
Michael Panacio
Linda Richenderfer
Juliet Sarkessian
Richard Schepacarter
Edith A. Serrano
Rosa Sierra-Fox
Dion Wynn

**<u>Regulatory and Government</u>**
Internal Revenue Service
U.S. Nuclear Regulatory Commission

**<u>SCHEDULE 2</u>**
**Connections to Potential Parties in Interest**

None Identified.

<u>EXHIBIT C</u>

(Engagement Letter, First Amendment, and Second Amendment)

G2 | CAPITAL ADVISORS

**G2 / Williams Industrial Services Group Inc.**
**FINANCIAL ADVISORY ENGAGEMENT LETTER**
11/25/2019

Williams Industrial Services Group Inc.
100 Crescent Centre Parkway, Suite 1240
Tucker, GA 30084
Attention:  Randall Lay, Chief Financial Officer

Dear Mr. Lay,

This letter agreement (together with the Addenda hereto, the "Agreement") will confirm that Williams Industrial Services Group Inc. (the "Company"), has engaged S3 Advisors, LLC ("G2") to act as the Company's advisor in connection with certain financial advisory and support services for the Company as more fully described in Addendum 1 (the "Engagement") attached herein.

1)  **Base Fee.**  For Phase 1 of the Engagement, G2 anticipates it will take between 8 – 12 weeks in duration with an estimated fee in a range of $80,000.00 - $120,000.00 USD. G2 shall bill the Company on an hourly rate basis per the Rate Schedule in Addendum 1. Additional work may be performed under a mutually agreed upon scope of work expansion and fee estimate.

2)  **Payment Terms.** G2 shall invoice the Company the Base Fee on a biweekly basis. Payment is due upon the receipt of an invoice.

3)  **Expense Reimbursement.**  In addition to paying the Base Fee, the Company will reimburse G2 within 15 days after the delivery to the Company by G2 of a written statement itemizing the expense items for all reasonable out-of-pocket expenses incurred by G2 in connection with this Agreement including, without limitation, travel, lodging, document preparation, printing, and Engagement-related legal fees and costs.  G2 will not seek reimbursement from the Company for the fees or costs of legal counsel or other third-party advisors in connection with the Engagement without the approval of the Company.  For avoidance of doubt, the preceding language does not include G2 seeking reimbursement for legal expenses that fall under indemnification protections in Addendum 2 and such reimbursement shall not require Company approval.

4)  **Term and Tail Period.** This Agreement shall have an initial term of three (3) months (the "Initial Term") and thereafter shall continue (such Initial Term and the entire period of continuation is called the "Term") until terminated, (a "Termination"), for any reason, by notice to the other party specifying the date of termination (the "Termination Date"), which date shall be at least fifteen (15) business days after the giving of such notice.

5)  **Exclusivity and Non-Circumvention.**

    a)  **Non-Contravention. Non-Circumvention.** The Company shall not create or utilize any subsidiary, parent or affiliate entity with intent of circumventing G2's entitlement to Fees under this Agreement. The person signing this Agreement on behalf of the Company represents and warrants to G2 that he/she has all necessary authorization and authority from the Company to sign this Agreement on the Company's behalf and to bind the Company to this Agreement's terms.

G2 | CAPITAL ADVISORS

b) **Non-Hire.  Non-Solicit.**  The Company shall not solicit, directly or indirectly, any of the representatives of G2 or any of its affiliates for personnel the Company wishes to hire, directly or indirectly, without 1) requesting first permission of G2 to engage in such discussions with the representative and 2) without agreeing to pay G2 a fee of $150,000 USD for any representative hired or engaged by the firm outside of this Engagement or for a period of 12 months following this Engagement.

6) **Documentation.** Any materials, analysis and information prepared by G2 for the Company in connection with the Engagement shall be the sole property of the Company. Nevertheless, the Company shall not, at any time (including without limitation after any termination of this Agreement), without G2's express written consent, use, circulate, distribute or divulge any portion of any materials, analysis and information prepared by G2 in any manner or for any reason or purpose to the extent such materials, analysis and information refer to G2, except with respect to the Company officers, directors, employees, agents, financing sources and financial, legal and other advisors (together, the "Representatives") on a confidential and need-to-know basis. The Company will not make any disclosure to any third party regarding the Engagement (other than the Representatives).

7) **Indemnification.** In consideration of, and as a condition precedent to G2's undertaking the engagement contemplated hereby, the Company agrees to the indemnification provisions and other matters set forth in Addendum 2 attached hereto and incorporated by reference into this Agreement.

8) **Change in Engagement Services/Additional Services**.

a) If in the event the scope of work for the Engagement expands beyond the analysis and advisory scope outlined in Addendum 1 and the scope expansion includes any form of financing transaction, the Company agrees to the need for a separate and standalone engagement letter between the Company and G2 Securities. G2 Securities are offered through Western International Securities, Inc., Member FINRA/SIPC.

b) In addition to G2's capacity as the Company's advisor under this Agreement (with G2's only obligations thereunder as defined in Addendum 1), G2 will provide advisory services related to management, lines of business and operations of the Engagement as determined by the Company. If the Company desires that additional services (including, but not limited to due diligence, interim management, board observation or representation) be provided by G2 during the term of this Engagement, such services shall be subject to a separate agreement and fee arrangement to be agreed upon by the parties.

9) **Relationship of the Parties**. G2's relationship to the Company is that of an independent contractor, and such relationship shall not under any circumstances be construed so as to constitute G2 as a partner, joint venture, or employee of the Company. G2 shall have no authority whatsoever to make any representations on behalf of the Company or commit or bind the Company in any manner whatsoever, unless this authority is granted through the Engagement as detailed in Addendum 1 to include interim management responsibility, which authority shall be specifically outlined. The Company shall have no authority to commit or bind G2 in any manner whatsoever.

10) **Miscellaneous.**

G2 | CAPITAL ADVISORS

a) This Agreement shall be binding upon, and inure to the benefit of, both parties and their respective successors and assigns.

b) This Agreement (including, without limitation, Addenda 1 and 2) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof.

c) This Agreement may be executed in counterparts each of which shall be deemed an original and all of which, taken together, shall comprise one and the same Agreement. This Agreement may be executed by the delivery of signatures by facsimile or other electronic means.

d) This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts (without regard to its conflicts of law principles). The parties hereby irrevocably consent to the exclusive jurisdiction of any Massachusetts state court or United States federal court sitting in Suffolk County over any action or proceeding arising out of or relating to this Agreement. Solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this Agreement is brought by or against any Indemnified Person. G2 and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) irrevocably agree to waive all rights to trial by jury.

e) After Phase 2 of the Engagement has been completed and publicly disclosed by the parties, G2 may refer to it in traditional "tombstone" announcements and/or its professional promotional materials. In connection therewith, G2 may use the Company's corporate logo (including electronic versions thereof) in G2's advertising or promotional materials.

f) If requested by G2, the Company shall use a mutually acceptable reference to G2 in any press release or other public announcement made by the Company regarding the Engagement.

**G2** | CAPITAL ADVISORS

Please countersign a copy of this letter to confirm your agreement to its terms.  We look forward to working with you.

Very truly yours,
S3 ADVISORS, LLC

By: _____

Jeffrey Unger
Chief Executive Officer

**AGREED TO AND ACCEPTED:**
WILLIAMS INDUSTIRAL SERVICES GROUP INC.

By: _____
Name:
Title:

**G2** | CAPITAL ADVISORS

## ADDENDUM 1

### Rate Schedule

The following hourly rate schedule is to be applied for Phase 1:

| Team Member Level | Hourly Rate |
|---|---|
| Sr. Managing Director | $850 |
| Managing Director | $750 |
| Director | $650 |
| Vice President/Principal | $500 |
| Senior Associate | $400 |
| Associate/Analyst | $300 |

### Scope of Engagement

**Engagement Scope.** Victoria Arrigoni, Managing Director and Konstantin Danilov, Vice President, will lead the engagement with support from other G2 staff as needed. Success also depends on significant participation by the Company and key personnel.

G2's services under the Engagement will be segregated into distinct phases; each phase with its own focused services. For purposes of clarity, this Engagement will cover Phase 1's services and deliverable (as outlined below) and billed hourly as shown in the rate schedule. Whether G2 is retained for Phase 2, will be at the sole discretion of the Company.

G2 will perform modeling, strategic alternative planning and other support services based upon specific needs outlined by management and desired outcomes from the current financing process led by the Company ("Phase 1").

1) **Phase 1 Services.** During Phase 1 of this Engagement, and as mutually agreed upon by G2 and the Company, G2 will perform the following advisory services:
   a) situational assessment, may include
      i) review and analyze the Company's business and financial projections and cash flows;
      ii) review and analyze the Company's assets and the operating and financial strategies of the Company;
      iii) order-to-cash cycle analysis;
      iv) assess the Company's recapitalization options;
      v) develop a three statement model;
   b) develop a recapitalization and / or refinancing plan, as needed (and to be executed under a separate engagement letter scope and fee structure, "**Phase 2**");
   c) render such other financial advisory services as may be agreed upon by G2 and the Company, including but not limited to:
      i) assist the Company with negotiations with existing lenders; and
      ii) assist the Company with forward looking scenario analysis.

2) If G2 and the Company mutually agree to proceed with Phase 2 of the Engagement, G2 and the Company agree to amend the terms and conditions of this Engagement including, as appropriate, revising the services to be rendered, the fees payable to G2 and other relevant provisions to be memorialized in an amendment to this agreement or a separate and standalone engagement letter.

G2 | CAPITAL ADVISORS

**ADDENDUM 2**

**INDEMNIFICATION, EXCULPATION AND RELATED MATTERS**

In the event that any of S3 Advisors, LLC (together with its affiliates, "G2"), the respective shareholders, members, directors, managers, partners, officers, contractors, agents or employees of G2, or any affiliate of any of the foregoing (each, an "Indemnified Person") becomes involved in any action, claim, suit, investigation or proceeding (each, a "Proceeding"), actual or threatened, brought by or against any person, including stockholders of Williams Industrial Services Group Inc. (the "Company"), in connection with the engagement contemplated by the letter agreement to which this Addendum 2 is attached (the "engagement"), the Company will reimburse such Indemnified Person for any losses, claims, reasonable fees (including reasonable fees of legal counsel and other professional advisors), reasonable expenses, damages or liabilities related to such Proceeding (collectively, "Losses") including, without limitation, Losses incurred in investigating, responding to third party subpoenas, serving as a witness, making an Indemnified Person available to serve as a witness, or enforcing the engagement, as such expenses are incurred; provided, however, that if it is finally determined by a court or arbitral tribunal (each, a "Court") that any Loss of any Indemnified Person has resulted primarily and directly from the gross negligence or willful misconduct of G2 in performing the engagement, G2 will repay the portion of such Loss attributable thereto.

If such indemnification is not available or is insufficient to hold an Indemnified Person harmless (except by reason of the gross negligence or willful misconduct of G2), the Company and G2 shall contribute to the reimbursement of such Loss in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by G2 in the engagement; or, if such allocation is determined by a Court to be unavailable, in such proportion as reflects other equitable considerations such as the relative fault of the Company and of G2; provided, however, that in no event shall the amounts to be contributed by G2 exceed the fees actually received by G2 in the engagement.

The Company also agrees that neither G2 nor any other Indemnified Person shall have any liability to the Company or any person asserting claims on behalf or in right of the Company in connection with or as a result of the engagement or any matter referred to in the engagement, except to the extent that any Losses incurred by the Company are finally determined by a Court to have resulted primarily and directly from the willful misconduct or gross negligence of G2 in performing the services that are the subject of the engagement.  In no event shall G2 or any other Indemnified Person be responsible for any indirect, special or consequential damages, even if advised of the possibility thereof.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.

The provisions of this Addendum 2 shall apply to the engagement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement.  If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.



**G2 / WILLIAMS INDUSTRIAL SERVICES GROUP INC.**
**FIRST AMENDMENT**
January 3, 2023

Williams Industrial Services Group Inc.
100 Crescent Centre Parkway, Suite 1240
Tucker, GA 30084
Attention:  Damien Vassall, Chief Financial Officer

Dear Mr. Vassall,

This letter agreement (the "First Amendment") is made and entered into on this 3rd day of January, 2023 by and between Williams Industrial Services Inc. (the "Company") and G2 Capital Advisors, LLC ("G2") in order to amend that certain engagement letter agreement dated November 25, 2019 (the "Engagement Letter") by and between G2, as successor to S3 Advisors, LLC, the original counterparty in the Engagement Letter, and the Company with respect to G2's financial advisory services. This Amendment will reflect an updated scope of restructuring-related services and that the Engagement Letter should be clarified and modified to amend certain terms and conditions. All capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Engagement Letter.

The Engagement Letter shall be amended by adding the following language to the end of Section 1:

"From the date of execution of the First Amendment, fees for the Engagement will be charged on an hourly basis for the Scope of Work per the Rate Schedule in Addendum 1. Within five days of the date of execution of the First Amendment, the Company will pay G2 a deposit of $30,000 USD, which shall be treated as an "evergreen" deposit, in that it shall be refreshed in connection with weekly invoices and held to be applied to the final invoice. G2 shall reserve the right to increase the deposit in its sole discretion."

The Engagement Letter shall be amended by adding the following language to the end of  Section 2:

"From the date of execution of the First Amendment, G2 shall bill the Company on a weekly basis with invoices due upon receipt. If invoices remain unpaid within five (5) business days of delivering to the Company, G2 may cease providing any further services pursuant to this Agreement until such invoice is paid."

The Engagement Letter shall be amended by adding the following language to the Scope of Work section of Addendum 1:

"From the date of execution of the First Amendment, the Company has requested that G2 provide advisory support related to financial forecasting, credit agreement amendments, and restructuring initiatives. Such services will include, but are not limited to, the following areas:

420 Boylston Street, Suite 302  |  Boston, MA 02116  |  617.531.9911  |  www.g2cap.com
BOSTON  |  CHICAGO  |  INDIANAPOLIS  |  NAPLES  |  SAN FRANCISCO

**G2** | CAPITAL ADVISORS

a) Assisting the Company with financial forecasting, including:
   i) weekly updates to the 13-week cash flow ("TWCF") forecast and budget-to-actual variance reporting
   ii) updates to the monthly 3-statement forecast, projection of key financial covenant ratios, and sensitivity analysis
b) Assisting the Company in negotiations with the Term Loan and Revolving Line of Credit ("RLOC") Lenders to amend credit agreements and receive additional liquidity support
c) Assisting the Company identify and evaluate potential strategic alternatives
d) Assisting the Company identify and evaluate restructuring initiatives to improve profitability and liquidity
e) Assistance in the preparation and execution of any form of operational wind down, liquidation, and / or bankruptcy process should it be necessary

Victoria Arrigoni, Managing Director will serve as the executive sponsor on the Engagement and Zachary Talotta, Vice President shall serve as the project manager on the Engagement responsible for the delivery of all of the Services with support from additional G2 staff as needed.  Success also depends on significant cooperation and participation by the Company and key personnel."

# G2 | CAPITAL ADVISORS

Please countersign a copy of this letter to confirm your agreement to its terms.  We look forward to working with you.

Very truly yours,
G2 CAPITAL ADVISORS, LLC

By: _____

Jeffrey Unger
Chief Executive Officer

**AGREED TO AND ACCEPTED:**
WILLIAMS INDUSTRIAL SERVICES INC.

By: _____

Name:   Damien Vassall
Title:    CFO

420 Boylston Street, Suite 302  |  Boston, MA 02116  |  617.531.9911  |  www.g2cap.com
BOSTON  |  CHICAGO  |  INDIANAPOLIS  |  NAPLES  |  SAN FRANCISCO

# G2 | CAPITAL ADVISORS

**G2 / WILLIAMS INDUSTRIAL SERVICES GROUP INC.**
**SECOND AMENDMENT**
July 22, 2023

Williams Industrial Services Group Inc.
100 Crescent Centre Parkway, Suite 1240
Tucker, GA 30084
Attention:  Randy Lay, EVP, Chief Financial Officer and Chief Operating Officer

Dear Mr. Lay,

This letter agreement (the "Second Amendment") is made and entered into on this 22nd day of July, 2023 by and between Williams Industrial Services Inc. (the "Company") and G2 Capital Advisors, LLC ("G2") in order to amend that certain engagement letter agreement dated November 25, 2019 (the "Engagement Letter") by and between G2, as successor to S3 Advisors, LLC, the original counterparty in the Engagement Letter, and the Company with respect to G2's financial advisory services. This Amendment will reflect an updated scope of restructuring-related services and that the Engagement Letter should be clarified and modified to amend certain terms and conditions. All capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Engagement Letter.

The Engagement Letter shall be amended by adding the following language to the end of Section 2:

"From the date of execution of the Second Amendment, G2 shall bill the Company on a weekly basis with invoices due upon receipt and paid in accordance with the treatment of carved-out professional fees as reviewed and approved by the United States Bankruptcy Court for the District of Delaware. G2 will maintain contemporaneous time records in one-tenth hour increments. G2 may cease providing any further services pursuant to this Agreement if invoices are not paid in accordance with the above."

# G2 | CAPITAL ADVISORS

The Engagement Letter shall be amended by adding the following language to the Scope of Work section of Addendum 1:

"From the date of execution of the Second Amendment, the Company has requested that G2 provide financial advisory support after the filing of a Chapter 11 case petition as the Company pursues the completion of a sale of substantially all its assets under section 363 of the US Bankruptcy Code. Such services will include, but are not limited to, the following areas:

a) Assisting the Company with financial forecasting and reporting, including:
   i) weekly updates to the 13-week cash flow ("TWCF") forecast
   ii) weekly reporting of actual cash flow performance vs the DIP budget ("Weekly Variance Reporting")
   iii) updates to the monthly 3-statement forecast, projection of key financial covenants, and sensitivity analysis
   iv) Preparation of other key financial and operating reports
   v) Preparation of certain schedules, such as the SOFA and SOAL schedules, in connection with the Chapter 11 case
b) Assisting the Company with other ad-hoc financial analysis as needed

Victoria Arrigoni, Managing Director will serve as the executive sponsor on the Engagement and Zachary Talotta, Vice President shall serve as the project manager on the Engagement responsible for the delivery of all the Services with support from additional G2 staff as needed. Success also depends on significant cooperation and participation by the Company and key personnel."



Please countersign a copy of this letter to confirm your agreement to its terms.  We look forward to working with you.

Very truly yours,

G2 CAPITAL ADVISORS, LLC

By:    _____

Jeffrey Unger
Chief Executive Officer

**AGREED TO AND ACCEPTED:**

WILLIAMS INDUSTRIAL SERVICES INC.

By:    _____

Name:   Randy Lay

Title:    EVP, Chief Financial Officer and Chief Operating Officer