## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: August 30, 2023, at 2:00 p.m. (ET)** **Objection Deadline: August 23, 2023, at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF GREENHILL & CO., LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned action (collectively, the "Debtors" or the "Company"), respectfully represent as follows in support of this application (this "Application"):

### RELIEF REQUESTED

1.      By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) authorizing the Debtors to employ and retain Greenhill & Co., LLC ("Greenhill") as its investment banker, effective as of the Petition Date (as defined below), on the terms and conditions set forth in the letter agreement dated June 29, 2023, effective as of December 21, 2022, attached hereto as **Exhibit C** (the "Engagement Letter") as modified by this Application[2], and (b) granting related relief. In support of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

00055302.2

Application, the Debtors submit the *Declaration of Eric Mendelsohn in Support of Debtors'*
*Application for Entry of Order (I) Authorizing Employment and Retention of Greenhill & Co., LLC*
*as Investment Banker to the Debtors and Debtors in Possession, Effective as of Petition Date, and*
*(II) Granting Related Relief* (the "Mendelsohn Declaration") attached hereto as **Exhibit B**.

## JURISDICTION AND VENUE

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has
jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing
Order of Reference from the United States District Court for the District of Delaware, dated as of
February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28
U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United
States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief requested herein are sections 327(a) and
328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the
Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the
District of Delaware (the "Local Rules").

4.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order
or judgment by the Court in connection with this Application if it is later determined that the Court,
absent consent of the parties, cannot enter final orders or judgments consistent with Article III of
the United States Constitution.

## BACKGROUND

5.    On July 22, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for
relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the
District of Delaware (the "Court"). The Debtors have continued in possession of their properties

and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in these cases.  On August 2, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**") in these Chapter 11 bankruptcy cases.

6.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

<u>**GREENHILL'S QUALIFICATIONS**</u>

7.      Greenhill, a leading independent financial advisory firm and investment bank, has provided financial advice and investment banking services in significant and numerous restructurings, recapitalizations, financings, mergers, and acquisitions, and capital advisory services to major corporations, partnerships, institutions, governments, and institutional investors across the United States and internationally. As a result, Greenhill is qualified and has significant experience as both a financial advisor and investment banker.

8.      Greenhill and its professionals have extensive experience working with financially distressed companies from a variety of industries in complex financial restructurings, both in and out of court, and have an excellent reputation for providing high quality financial advisory and investment banking services in such engagements. Greenhill's restructuring professionals have extensive experience in advising debtors and other constituencies in chapter 11 cases and have served as financial advisors and/or investment bankers to numerous debtors and other constituencies in restructurings involving, among others: Akorn, Inc., American Commercial

Lines Inc., American Roads LLC, AMR Corporation, Answers Corporation, Ascena Retail Group,

Atlantic Express Transportation Group, Avaya Inc., BearingPoint, Inc., Bethlehem Steel Corp.,

Blockbuster Inc., Cable Satisfaction International Inc., Cengage Learning, Inc., Cenveo, Inc.,

Chrysler, LLC, Circuit City Stores, Inc., Cirque du Soleil Canada Inc., City of Detroit, Clover

Technologies Group, LLC, Constar International Inc., David's Bridal, Inc., Delphi Corp.,

Destination Maternity Corporation, Eclipse Aviation Corp., Electrical Components International

Inc., Energy Future Holdings, EXCO Resources, Inc., Fairpoint Communications, Inc., Fairway

Group Holdings, Fusion Connect, Inc., Genco Shipping & Trading Limited, General Growth

Properties, Inc., Global Eagle Entertainment Inc., Global Geophysical Services, Inc., GT

Advanced Technologies Inc., The Gymboree Corporation, Harry & David Holdings, Inc., Hawker

Beechcraft, Inc., Inner City Media Corporation, Innovative Communication Corporation, LATAM

Airlines Group S.A., LifeCare Holdings LLC, Lyondell Chemical Company, M&G USA

Corporation, Milacron Holdings Inc., Momentive Performance Materials, Motor Coach Industries

International, Inc., MTE Holdings LLC, Nassau Broadcasting Partners, L.P., New World Pasta

Company, NPC International, Inc, Pacific Drilling S.A., Performance Sports Group, Quebecor

World, Inc., Refco Inc., rue21, Inc., The Roman Catholic Diocese of Rockville Centre, Sbarro,

Inc., Skillsoft Corporation, Sports Authority Holdings, Inc., Trident Resources Corp., Trump

Entertainment Resorts, Inc., U.S. Shipping Partners L.P., VeraSun Energy Corp., Werner Co., and

WestPoint Stevens Inc.

9.      Greenhill has represented the Debtors and their non-Debtor affiliates since

December 2022. As a result, Greenhill has developed significant relevant experience and expertise

regarding the Debtors' businesses, capital structure, and creditors that: (a) make Greenhill a natural

selection to continue as the Debtors' investment banker and (b) will enable Greenhill to provide effective and efficient services to the Debtors throughout the Chapter 11 Cases.

## SERVICES TO BE PROVIDED

10.     Pursuant to the Engagement Letter, the Company (as defined in the Engagement Letter) has requested that Greenhill render the following professional services in connection with the Chapter 11 Cases:

a.    assisting the Company in preparing marketing materials (based entirely on information supplied by the Company) for distribution to potential acquirors;

b.    assisting the Company in identifying and contacting selected potential acquirors;

c.    assisting the Company in arranging for potential acquirors to conduct business investigations;

d.    assisting the Company in evaluating potential financial and strategic alternatives with respect to a potential Transaction;

e.    advising the Company as to the timing, structure and pricing of a potential Transaction (as defined in the Engagement Letter);

f.    assisting the Company in negotiating the financial terms of a potential Transaction;

g.    if requested, evaluate potential financing alternatives for the Company as part of, or in parallel to, a Transaction, and advise the Company on the financial implications of each;

h.    assist in the determination of an appropriate capital structure for the Company and its affiliates;

i.    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of the Company and/or their respective representatives in connection with a Transaction;

j.    advise the Company with respect to, and upon request attend, meetings of the Company's senior management, board of directors, audit committees (as necessary), creditor groups and other interested parties, as necessary, with respect to matters on which Greenhill has been engaged to advise hereunder;

k.    if requested by the Company, participate in hearings before the Court and provide relevant testimony with respect to Greenhill's services and the matters described

herein, as well as issues arising in connection with any proposed Plan in Greenhill's area of expertise concerning a Transaction; and

l.    provide such other general advisory services and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Company and Greenhill,

(each a "Service" and together, the "Services").[3]

11.    To the extent that the Debtors request that Greenhill perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by Greenhill and the Debtors, in writing, and will be subject to Court approval.

12.    In addition, the Debtors will retain the services of other professionals over the course of the Chapter 11 Cases. By separate application, the Debtors are requesting that the Court approve the retention of G2 Capital Advisors, LLC ("G2") as the Debtors' financial advisors in the Chapter 11 Cases. The Debtors discussed with both firms the division of roles and responsibilities as between Greenhill and G2 and the Debtors intend to monitor carefully these and other retained professionals to prevent a duplication of effort in the Chapter 11 Cases. Greenhill and G2 have informed the Debtors that they will undertake to coordinate all of their services in order to avoid any unnecessary duplication of services.

13.    The Debtors believe that Greenhill is well qualified and able to provide the foregoing services to the Debtors. In addition, the Debtors believe that the services that Greenhill will provide are necessary to maximize the value of their estates and will not be duplicative of the services that other professionals will be providing to the Debtors in the Chapter 11 Cases.

---

[3] Terms used but undefined in this paragraph have the meanings ascribed in the Engagement Letter.

## PROFESSIONAL COMPENSATION

14.     Greenhill's decision to advise and assist the Debtors in the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter, as modified by this Application. In consideration of the services to be provided by Greenhill, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay the following compensation to Greenhill:[4]

> a.    Retainer Fee. The parties hereto acknowledge that the Company has already paid a retainer fee of $250,000 (the "Retainer Fee"), in two (2) equal installments; the first installment (1) on or around December 21, 2022 and a second installment (2) on January 31st, 2023.

> b.    Monthly Advisory Fee. Commencing as of May 1, 2023, a financial advisory fee of $100,000 per month (the "Monthly Advisory Fee"), which shall be due and paid promptly by the Company on a monthly basis in advance. The Monthly Advisory Fees for May, June and July, 2023 were paid prior to the Petition Date. The Monthly Advisory Fee for August will be paid upon the entry of an Order approving this Application, and thereafter the Monthly Advisory Fee shall be payable in advance on the first business day of each month. In the event the Company consummates a Restructuring Transaction or M&A Transaction, fifty percent (50%) of the Monthly Advisory Fees paid to Greenhill from and after the Petition Date shall be credited against the Restructuring Transaction Fee or M&A Transaction Fee payable to Greenhill.

> c.    Restructuring Transaction Fee. If, at any time during the Fee Period (as defined in the Engagement Letter), the Company consummates a Restructuring Transaction, Greenhill shall be entitled to receive a fee equal to $2,900,000 (the "Restructuring Transaction Fee") earned and payable upon the earlier of (a) the consummation of a Restructuring Transaction and (b) the confirmation, sanction, or approval, as applicable, and effectiveness of a Plan.[5]

> d.    Financing Fee. If the Company decides to pursue a Financing as part of, or in parallel to, the Transaction, and either (i) requests that Greenhill provide services that are material in nature or scope in connection therewith, and such services are provided, or

---

[4] To the extent there are any inconsistencies between this Application and the Engagement Letter, this Application controls unless otherwise stated. All capitalized terms in this paragraph 14 not otherwise defined in this paragraph 14 have the meanings ascribed to such terms in the Engagement Letter.

[5] The Restructuring Transaction Fee and Minimum M&A Transaction Fee in the Engagement Letter were $3,500,000, against which the $250,000 initial retainer was credited for a net fee of $3,250,000. Prior to the Petition Date, Greenhill agreed to reduce its Restructuring Transaction Fee (net of the $250,000 initial retainer credit) to $2,900,000, subject to the entry of an order approving this Application.

(ii) such Financing is associated with the Transaction, (e.g., such Financing is provided by a buyer, or a party providing Financing to support the Transaction), then the Company shall pay Greenhill a financing fee in an amount calculated in accordance with the formula set forth below (the "<u>Financing Fee</u>") if (A) a Financing is consummated during the term of this Agreement, or, (B) no Restructuring Fee and no M&A Fee has been paid to Greenhill, and a Financing is consummated within 18 months thereafter, or a definitive agreement is entered into within 18 months thereafter that subsequently results in a Financing.  The Financing Fee shall equal:

| | |
|---|---|
| (i) | 1.5% of the gross proceeds of any indebtedness raised that is secured by a first lien, including, without limitation, any debtor in possession financing raised, other than a last-out first lien; plus |
| (ii) | 2.0% of the gross proceeds of any indebtedness raised that is (a) secured by a last-out first lien, or (b) secured by a second or more junior lien; plus |
| (iii) | 2.5% of the gross proceeds of any indebtedness raised that is unsecured; plus |
| (iv) | 3.0% of the gross proceeds of any debt raised with warrants attached to it; plus |
| (v) | 5.0% of the gross proceeds of any capital raised in the form of equity, equity-linked, hybrid, preferred, or convertible capital. |

For the avoidance of doubt, the term "<u>raised</u>" includes the amount committed or otherwise made available to the Company, whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company.  Capital shall have been "raised" upon the earlier to occur of (i) the consummation of such a raise and (ii) the execution of an agreement in principle or a definitive agreement to affect a new capital raise and a new capital raise is eventually consummated at any time thereafter.

e.   <u>M&A Fee</u>. A success-based transaction fee (the "<u>M&A Fee</u>") payable, if no Restructuring Fee has previously been earned, upon the consummation of an M&A Transaction, if during the term of this Agreement, or if this Agreement is terminated by the Company prior to the consummation of a M&A Transaction, within 18 months thereafter (the "<u>Tail Period</u>"), a M&A Transaction is consummated or a definitive agreement is entered into that subsequently results in a M&A Transaction.  The M&A Transaction Fee shall equal:

| | |
|---|---|
| (i) | 4.0% of the first $90,000,000 Transaction Value (as defined in Schedule B); plus |
| (ii) | 5.0% of the next $10,000,000 Transaction Value; plus |
| (iii) | 6.0% for anything over $100,000,000 Transaction Value; |

Subject to a minimum fee of $2,900,000.

For the avoidance of doubt, if any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A

Transaction Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees).

f.  If no Restructuring Fee or M&A Fee has previously been earned, in the event that, during the term of engagement or the Tail Period, the Company shall execute a definitive agreement providing for a Transaction, which agreement subsequently is terminated and the Company is paid a termination, "break up", liquidated damages or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination) in connection with such termination (a "Break-Up Payment"), then the Company shall pay to Greenhill, upon its receipt of such Break-Up Payment, an amount (the "Break-Up Fee") equal to the lesser of (i) 20% of such Break-Up Payment and (ii) the M&A Fee (based on the estimated M&A Fee that would have been payable had the proposed Transaction been consummated in accordance with the terms of such definitive agreement). Any such Break-Up Payment shall be credited to amounts due to Greenhill for any subsequent M&A Fee or Restructuring Fee.

g.  Notwithstanding anything to the contrary in Section 4(d), Section 4(e), Section 4(f) or Section 4(g) of the Engagement Letter, any Restructuring Fee, M&A Fee, Break-Up Fee or Financing Fee shall be payable to Greenhill during the Tail Period only if the definitive agreement providing for a Transaction or a Financing, or the consummated Transaction or Financing, as applicable, is with a Covered Party (as defined below).  As soon as reasonably practicable after receipt by Greenhill of a notice of termination of the engagement from the Company, Greenhill shall compile and deliver to the Company a list (the "List") of all potential acquirers or, in the case of a Financing, potential financing sources, contacted by Greenhill on behalf of the Company and with whom the Company entered into a confidentiality agreement in connection with the Transaction or Financing. Within ten (10) days of receipt of the List, the Company shall supplement the List with all potential acquirers or financing sources who contacted the Company directly, or who were contacted directly by the Company or by any other party acting on the Company's behalf, during the term of the engagement and with whom the Company entered into a confidentiality agreement in connection with the Transaction. Any potential acquirer or financing source included on the List (as supplemented by the Company) shall be considered a "Covered Party."  The failure of the Company to include an appropriate party on the List shall not relieve the Company of its obligations pursuant hereto.

As noted above, if any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees) and the lower (or other) fee shall cease to be payable even if a second Transaction is consummated.

As used in the Engagement Letter, "Fee Period" shall mean the period including (i) the term of the Engagement Letter and Greenhill's engagement hereunder, and (ii) the period

beginning upon the termination of the Engagement Letter and Greenhill's engagement hereunder and extending 18 (eighteen) months thereafter.  For the avoidance of doubt if the Engagement Letter is terminated unilaterally and voluntarily by Greenhill and Greenhill is not deemed to be providing any Services in relation to any Transaction or the Transactions, then the Fee Period shall be amended to only include the term of Greenhill's engagement.

For the avoidance of doubt, notwithstanding any provision of the Engagement Letter to the contrary, Greenhill shall not be entitled to receive an Opinion Fee or a Credit Amendment Fee, as those terms are defined in the Engagement Letter.

No fee payable to any other financial advisor by the Company or any other person in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Greenhill.

15.     In addition to the fees described above, the Debtors have agreed to reimburse Greenhill for its reasonable and documented out-of-pocket expenses incurred in connection with this engagement, such as travel, lodging, duplicating, messenger and telephone charges, and fees and expenses of Greenhill's counsel (without the need for such legal counsel to be retained as a professional during these Chapter 11 cases).

16.     The Debtors understand that Greenhill will maintain records in support of its compensation and actual necessary costs and expenses incurred in connection with rendering services to the Debtors. However, the Debtors also understand that it is not the general practice of an investment banking firm to keep detailed time-keeping records similar to those customarily kept by attorneys, including maintaining time records on a "project category" basis. Notwithstanding the foregoing, Greenhill intends to apply to the Court for the allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of the Court, and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Guidelines"). Such applications will include time records setting forth, in summary form, a

description of the services rendered by each Greenhill professional and the amount of time spent on each date by each such individual in rendering services to the Debtors.

17.    Because Greenhill does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors respectfully request that: (a) Greenhill be allowed to keep its time records in one-half hour increments; (b) Greenhill's professionals not be required to keep time records on a "project category" basis; (c) Greenhill's non-financial advisory or investment banking personnel in administrative departments (including legal) not be required to maintain any time records; and (d) Greenhill not be required to provide or conform to any schedule of hourly rates. To the extent that Greenhill's time-keeping process as described herein deviates from what would otherwise be required under Local Rule 2016-2(d), the Debtors respectfully request that the Court allow such deviations pursuant to Local Rule 2016-2(h) and waive any requirements to the contrary.

18.    Greenhill will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Greenhill's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter.

19.    In addition, from time to time, Greenhill's professionals may be required to work after business hours and during the weekend and holidays. Such professionals are permitted to be reimbursed for reasonable meals and transportation to and from the office related to such work. To the extent that the Local Rules or the U.S. Trustee Guidelines or any other applicable orders and procedures of the Court do not permit the reimbursement of the foregoing (or provide for additional or different requirements in respect thereof), the Debtors respectfully request that the Court waive such prohibition and requirements with respect to the Greenhill professionals.

20.     Greenhill has not shared and will not agree to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. The compensation summarized above and described more fully in the Engagement Letter is consistent with Greenhill's standard billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with the Chapter 11 Cases and the risks related thereto.

21.     The Debtors believe that the Engagement Letter, as modified by the Application, and the compensation contemplated therein are each consistent with and typical of compensation arrangements entered into by Greenhill and other comparable firms in connection with the rendering of similar services under similar circumstances and are the result of arm's-length negotiations between the Debtors and Greenhill. The Debtors believe, as does Greenhill, that the terms and conditions in the Engagement Letter, as modified by the Application, are in fact reasonable, consistent with the market for providers of similar services, and designed to compensate Greenhill fairly for its work and to cover fixed and routine overhead expenses.

22.     Moreover, Greenhill's strategic and financial expertise, as well as its significant capital markets knowledge, restructuring capabilities, and mergers and acquisitions expertise—some or all of which may be required by the Debtors during the terms of Greenhill's engagement—were important factors in the Debtors determining to engage Greenhill. Moreover, the ultimate benefit to the Debtors cannot be measured by reference to the mere number of hours to be expended by Greenhill's professionals in the performance of services, but rather should be considered in the context of Greenhill's valuable institutional knowledge of the Debtors' businesses and financial affairs obtained since December 21, 2022.

23.    Accordingly, the Debtors believe that Greenhill's retention should be subject to only the standard of review set forth in section 328(a) of the Bankruptcy Code and that Greenhill's compensation should not be subject to any additional standard of review, including under section 330 of the Bankruptcy Code.

## INDEMNIFICATION

24.    As a material part of the consideration for which Greenhill has agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions set forth in Schedule A of the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions provide that the Debtors will indemnify and hold harmless Greenhill and any of affiliates and their respective officers, directors, members, partners, employees, agents, representatives and each other entity or person, if any, controlling Greenhill or any of its affiliates (collectively, the "Indemnified Parties") under certain circumstances. All requests of Greenhill for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and will be subject to review by, the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter.

25.    The Debtors and Greenhill believe that the Indemnification Provisions contained in the Engagement Letter are standard and customary for financial advisory and investment banking engagements. That said, pursuant to the Proposed Order, the Debtors seek to qualify and limit the Indemnification Provisions as follows:

a.    Subject to the provisions of subparagraphs b and c below, the Debtors are authorized to indemnify the Indemnified Parties, in accordance with the Engagement Letter, for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter;

b.    Notwithstanding anything to the contrary in the Engagement Letter, the Debtors will have no obligation to indemnify any Indemnified Parties, or provide contribution or reimbursement to any Indemnified Parties, (i) for any claim or expense that is judicially determined (the determination having

become final and no longer subject to appeal) to have arisen directly from the respective Indemnified Party's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of Greenhill's obligations under the Engagement Letter, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.,* 315 F.3d 217 (3d Cir. 2003); or (iii) settled before a judicial determination as to that Indemnified Party's gross negligence, willful misconduct, or bad faith, but determined by the Court, after notice and a hearing, to be a claim or expense for which that Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Proposed Order; and

c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, Greenhill believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including, without limitation, the advancement of defense costs, Greenhill must file an application before the Court, and the Debtors may not pay any such amounts before the entry of an order by the Court approving the payment. This subparagraph c is intended only to specify the period of time under which the Court will have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Greenhill.

26.     The Indemnification Provisions, as qualified and limited by the Proposed Order, are customary and were negotiated by the Debtors and Greenhill at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the terms of Greenhill's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require Greenhill's services to successfully consummate a sale of its assets. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions as set forth in the Engagement Letter and as modified pursuant to the Proposed Order.

## DISINTERESTEDNESS

27.    To the best of the Debtors' knowledge, information, and belief, and except as disclosed herein and in the Mendelsohn Declaration, Greenhill (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtors' estates, and (c) has no connection to the Debtors, their creditors, or other parties in interest, except as disclosed in the Mendelsohn Declaration and Schedule 2 attached thereto.

28.    The Debtors' knowledge, information, and belief regarding Greenhill's disinterestedness are based on, and made in reliance upon, the Mendelsohn Declaration. As set forth in further detail therein, Greenhill may have certain connections with creditors, equity security holders, and other parties in interest in the Chapter 11 Cases. All of these matters, however, are unrelated to the Chapter 11 Cases. The Debtors and Greenhill do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or the Chapter 11 Cases.

29.    To the extent that Greenhill discovers any additional facts bearing in a material respect on its disinterestedness with respect to the Chapter 11 Cases, Greenhill will supplement the Mendelsohn Declaration, as required by Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF REQUESTED

30.    The Debtors submit that Greenhill's retention on the terms described herein is appropriate under sections 327(a) and 328 of the Bankruptcy Code.

31.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval, may employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's]

duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a

"disinterested person" as a person that:

> a. is not a creditor, an equity security holder, or an insider;
>
> b. is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Further, section 1107(b) of the Bankruptcy Code provides that "a person is

not disqualified for employment under section 327 of this title by a debtor in possession solely

because of such person's employment by or representation of the debtor before the commencement

of the case." 11 U.S.C. § 1107(b). Accordingly, Greenhill's prepetition relationship with the

Debtors is not an impediment to Greenhill's retention as the Debtors' investment banker.

32.     Additionally, the Debtors seek approval of the Engagement Letter pursuant to

section 328(a) of the Bankruptcy Code, which provides that a debtor, "with the court's approval,

may employ or authorize the employment of a professional person under section 327 . . . on any

reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a

fixed percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a). Section 328(a) of

the Bankruptcy Code permits compensation of professionals, such as financial advisors and

investment bankers, on flexible terms that reflect the nature of their services and market conditions.

*See Donaldson Lufkin & Jenrette Securities Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123

F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty

by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)");

*see also In re Wash. Mut., Inc.,* No. 08-12229, 2018 WL 704361, at *4 (Bankr. D. Del. Feb. 2,

2018) (stating that "courts 'must protect agreements and expectations' once they have been found reasonable") (*quoting In re Nat'l Gypsum Co.,* 123 F.3d 861).

33.     The Debtors submit that the terms of the Engagement Letter were negotiated in good faith and at arm's-length between the Debtors and Greenhill and reflect the extensive work and substantial commitment undertaken by Greenhill before the Petition Date, as well as the Debtors' evaluation of the extensive work and substantial commitment remaining to be completed by Greenhill during the Chapter 11 Cases. The Debtors submit that the terms and conditions of the Engagement Letter, including the fee structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that Greenhill may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, (b) Greenhill's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (c) Greenhill's substantial experience with respect to investment banking, (d) the market prices for Greenhill's services for engagements of this nature, and (e) the fee structures typically utilized by Greenhill and other investment bankers, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

34.     Accordingly, the Debtors believe that Greenhill's compensation should be subject only to the standard of review in section 328(a) and should not be subject to any additional standard of review under section 330 of the Bankruptcy Code. Retention of Greenhill is appropriate and in the best interest of the Debtors, their estates, and all parties in interest. For the reasons set forth above, the Debtors believe that Greenhill's retention on the terms of the Engagement Letter is fair, appropriate, in line with the market, and reasonable.

35.     The Debtors request that Greenhill's retention be made effective as of the Petition Date, in order to allow Greenhill to be compensated for the work performed for the Debtors before

the Court's consideration and approval of this Application. The Debtors submit that, under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if Greenhill is not immediately retained, retroactive approval to the Petition Date is warranted.

## NOTICE

The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the administrative agents for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Delaware Division of Revenue; (g) the United States Attorney for the District of Delaware; (h) the Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) the proposed counsel for the Committee of Unsecured Creditors; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the Court.

36.    In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## NO PRIOR REQUEST

37.    No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors request this Court enter an order, substantially in the form of Exhibit A, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Blank]*

Dated:  August 9, 2023                    WILLIAMS INDUSTRIAL SERVICES GROUP INC, *ET AL*.


By:      */s/ Randy Lay*
Its:     EVP, CFO & COO