<u>EXHIBIT A</u>
(Proposed Order)

00055302.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| | (Jointly Administered) |
| Debtors. | Re. Docket No. _____ |

### ORDER (I) AUTHORIZING EMPLOYMENT
### AND RETENTION OF GREENHILL & CO., LLC AS INVESTMENT BANKER,
### EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (a) authorizing the employment and

retention of Greenhill & Co., LLC ("Greenhill"), as its investment banker, effective as of the Petition

Date, under the terms of the Engagement Letter dated June 29, 2023, effective as of December 21,

2022, as modified by the Application, a copy of which is attached to the Application as **Exhibit C**,

and (b) granting related relief, all as more fully set forth in the Application; and this Court having

reviewed the Application and the Mendelsohn Declaration; and this Court having jurisdiction to

consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012; and this Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and this Court having found, based on the representations made in the Application and the Mendelsohn Declaration, that Greenhill is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that the employment of Greenhill is in the best interests of the Debtors, their estates, and creditors; and this Court having found that the terms and conditions of Greenhill's employment set forth in the Engagement Letter (including the fee and expense structure), as modified by the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, IT IS HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to retain and employ Greenhill as investment banker, effective as of the Petition Date, under the terms of the Application and the Engagement Letter, as modified by this Order.

4.      None of the fees payable to Greenhill shall constitute a "bonus" or fee enhancement under applicable law.

5.      The Debtors are authorized to compensate and reimburse Greenhill consistent with the terms of the Engagement Letter, as modified by the Application, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable

orders of this Court, provided, however, that Greenhill shall not seek reimbursement for any attorneys' fees or expenses for the defense against any formal objection to its fee applications filed in the Chapter 11 Cases.

6.      The requirements of the Bankruptcy Code, the Bankruptcy Rules, and Local Bankruptcy Rule 2016-2 are hereby modified such that Greenhill's restructuring professionals who provide services to the Debtors (with the exception of personnel in administrative departments, including legal, who shall not be required to keep time records) shall only be required to maintain summary time records in half-hour increments and shall not be required to conform to any schedules of hourly rates.

7.      To the extent requested in the Application, Greenhill is granted a waiver with respect to the information requirements contained in Local Rule 2016-2(d).

8.      Greenhill is authorized to provide the Debtors with the professional services described in the Application.

9.      Greenhill shall use its reasonable best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in the Chapter 11 Cases.

10.     The Indemnification Provisions in the Engagement Letter are approved subject to the following modifications, application during the pendency of the Chapter 11 Cases

a.      Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify the Indemnified Parties, in accordance with the Engagement Letter, for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter;

b.      Notwithstanding anything to the contrary in the Engagement Letter, the Debtors will have no obligation to indemnify any Indemnified Parties, or provide contribution or reimbursement to any Indemnified Parties, (i) for any claim or expense that is judicially determined (the determination having become final and no longer subject to appeal) to have arisen directly from the respective Indemnified Party's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors allege breach

of Greenhill's obligations under the Engagement Letter, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled before a judicial determination as to that Indemnified Party's gross negligence, willful misconduct, or bad faith, but determined by this Court, after notice and a hearing, to be a claim or expense for which that Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, Greenhill believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Greenhill must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court will have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Greenhill.

11.    Notwithstanding anything in the Engagement Letter to the contrary, this Court shall retain jurisdiction over any and all matters arising under or in connection with Greenhill's engagement by the Debtors and the Engagement Letter, including the Indemnification Provisions.

12.    Greenhill shall file fee applications for monthly, interim, and final allowance of compensation and reimbursement of fees and expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures established by this Court; *provided*, that Greenhill's compensation shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review, including under section 330 of the Bankruptcy Code.

13.    Notwithstanding the preceding paragraph, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and this Court shall retain the right to object to the compensation and fees and expenses to be paid to Greenhill pursuant to the Application and the Engagement Letter, including, without limitation, the Monthly Fee, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and this Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code.

14.    Greenhill shall include in its monthly, interim, and final fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour increments, but Greenhill shall be excused from keeping time in tenth-hour increments.

15.    Notwithstanding anything in the Application, Engagement Letter, or the Mendelsohn Declaration, to the contrary, to the extent the Debtors wish to expand the scope of Greenhill's services beyond those services set forth in the Application, the Debtors shall be required to seek further approval from this Court. Notwithstanding anything in the Application, the Engagement Letter, or Mendelsohn Declaration to the contrary, Greenhill shall (a) to the extent that Greenhill uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in the Chapter 11 Cases, pass-through the cost of such Contractors to the Debtors at the same rate that Greenhill pays the Contractors, (b) seek reimbursement for actual costs only, (c) ensure that the Contractors are subject to the same conflict checks as required for Greenhill, and (d) file with this Court such disclosures required by Bankruptcy Rule 2014.

16.     In the event that, during the pendency of the Chapter 11 Cases, Greenhill seeks reimbursement for any attorneys' fees or expenses, the invoices and supporting time records from such attorneys, appropriately redacted to preserve applicable privileges, shall be included in Greenhill's fee applications and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of this Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; *provided*, that Greenhill shall not seek reimbursement from the Debtors' estates for any attorney's fees incurred in defending against objections to any of Greenhill's fee applications filed in the Chapter 11 Cases.

17.     To the extent that there is any inconsistency between the terms of the Application, the Mendelsohn Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

18.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order in accordance with the Application.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014, this Order shall be effective and enforceable upon entry hereof.

20.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# EXHIBIT B
## (Mendelsohn Declaration)

00055302.2
4864-5382-1296.6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ERIC MENDELSOHN
IN SUPPORT OF APPLICATION OF DEBTORS
FOR ENTRY OF ORDER (I) AUTHORIZING EMPLOYMENT
AND RETENTION OF GREENHILL & CO., LLC AS
INVESTMENT BANKER, EFFECTIVE
AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Eric Mendelsohn, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am Managing Director and Co-Head of North American Financing Advisory and Restructuring at Greenhill & Co., LLC ("Greenhill"), a leading independent investment bank, which has its principal office at 1271 Avenue of the Americas, New York, NY 10022. Greenhill is the proposed investment banker to the above-captioned debtors and debtors in possession (the "Debtors").

2.      I am duly authorized to make this declaration (the "Declaration") on behalf of Greenhill in support of the Debtors' *Application of Debtors for Entry of Order (I) Authorizing Employment and Retention of Greenhill & Co., LLC as Investment Banker, Effective as of Petition*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

*Date, and (II) Granting Related Relief* (the "<u>Application</u>")[2] seeking authorization to retain Greenhill as the Debtors' investment banker on the terms, and subject to the conditions, set forth therein and in the Engagement Letter.

3.     Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.[3]

## **PERSONAL BACKGROUND AND QUALIFICATIONS**

4.     I joined Greenhill in June 2012 as a Managing Director. Prior to Greenhill, I was a Managing Director and founding member of the Restructuring Group of Lazard Frères & Co. LLC ("<u>Lazard</u>**"),** where I was employed from 1999 to 2012. Before that I was an associate in the Restructuring Group at Alex. Brown & Sons. From 1993 through 1995, I was a Fixed Income Research Analyst at CS First Boston.

5.     The nature of my work at Greenhill, and before that at Lazard, has been primarily focused on providing restructuring advisory services to companies and/or their stakeholders, both in and out of chapter 11. The scope of this work includes, but is not limited to, review of debtors' operations, review and analyses of business plans, review and assistance in the preparation and/or compilation of liquidation analyses, negotiations with creditors, analysis of valuations and ranges of debt capacity and potential capital structures, advice on mergers and acquisitions, and review of other bankruptcy related issues, including assistance to debtors in obtaining DIP and exit credit facilities.

6.     Over the last 23 years, I have worked on over 50 restructuring engagements ranging from out-of-court restructurings to in-court insolvencies, including involvement in the chapter 11

---

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

[3] Certain of the disclosures set forth herein relate to matters not within my personal knowledge, but are rather within the knowledge of other Greenhill employees and are based on information provided to me by them.

cases of the following companies, among others: 360networks Inc., American Roads LLC, Atlas Air Worldwide Holdings Inc., BearingPoint, Inc., Brazos Sportswear Inc., CAI Wireless Systems Inc., Collins & Aikman Corp, Cooper-Standard Holdings Inc., Eddie Bauer Holdings, Flagstar Cos Inc., Energy Future Holdings Corp., Fruit of the Loom Ltd., Hayes Lemmerz International Inc., Insight Health Services Holdings Corp., Journal Register Company, Metaldyne Corp., NextWave Telecom Inc., Pacific Drilling S.A., SkyView World Media, LLC, Sun Healthcare Group Inc., Tower Automotive, Inc., US Airways Group, Inc. and WorldCom Inc. Additionally, my merger and acquisition experience includes troubled company buyside and sellside assignments, as well as special committee representations and traditional M&A transactions. I have significant experience and expertise in raising and structuring debtor in possession financing, secured debt, exit financing, second lien loans, convertible notes, rights offerings, and preferred and common stock.

7.      I am licensed by the NASD and NYSE with Series 24 General Securities Principal, Series 7 General Securities and Series 63 State Law licenses. I have authored numerous investment research reports as a Fixed Income Analyst while at CS First Boston. I have lectured on financing, valuation, and other restructuring issues at various industry symposiums. I have an M.B.A. in Finance from The Wharton School of the University of Pennsylvania and a B.A. in Economics with High Honors from Middlebury College.

## GREENHILL'S QUALIFICATIONS

8.      Greenhill, a leading independent investment bank, has provided financial advice and investment banking services to numerous major corporate entities and investors across the United States and internationally. Greenhill is qualified and has significant experience as both a financial advisor and investment banker.

9.     Greenhill and its professionals have extensive experience working with financially distressed companies from a variety of industries in complex financial restructurings, both in- and out-of-court, and Greenhill has an excellent reputation for providing high quality financial advisory and investment banking services to debtors and other constituencies in such engagements. Greenhill's restructuring professionals have served as financial advisors to numerous debtors and other constituencies in restructurings involving, among others: Akorn, Inc., American Commercial Lines Inc., American Roads LLC, AMR Corporation, Answers Corporation, Ascena Retail Group, Inc., Atlantic Express Transportation Group, Avaya Inc., BearingPoint, Inc., Bethlehem Steel Corp., Blockbuster Inc., Cengage Learning, Inc., Cenveo, Inc., Chrysler, LLC, Circuit City Stores, Inc., Cirque du Soleil Canada Inc., City of Detroit, Clover Technologies Group, LLC, Constar International Inc., David's Bridal, Inc., Delphi Corp., Destination Maternity Corporation, Eclipse Aviation Corp., Electrical Components International Inc., Energy Future Holdings, EXCO Resources, Inc., Fairpoint Communications, Inc., Fairway Group Holdings, Fusion Connect, Inc., Genco Shipping & Trading Limited, General Growth Properties, Inc., Global Eagle Entertainment Inc., Global Geophysical Services, Inc., GT Advanced Technologies Inc., The Gymboree Corporation, Harry & David Holdings, Inc., Hawker Beechcraft, Inc., Inner City Media Corporation, Innovative Communication Corporation, LATAM Airlines Group S.A., LifeCare Holdings LLC, Lyondell Chemical Company, M&G USA Corporation, Milacron Holdings Inc., Momentive Performance Materials, Motor Coach Industries International, Inc., MTE Holdings LLC, Nassau Broadcasting Partners, L.P., New World Pasta Company, NPC International, Inc, Pacific Drilling S,A., Performance Sports Group, Quebecor World, Inc., Refco Inc., rue21, Inc., The Roman Catholic Diocese of Rockville Centre, Sbarro, Inc., Skillsoft Corporation, Sports

Authority Holdings, Inc., Trident Resources Corp., Trump Entertainment Resorts, Inc., U.S. Shipping Partners L.P., VeraSun Energy Corp., Werner Co., and WestPoint Stevens Inc.

**<u>SERVICES TO BE PROVIDED</u>**

10.    Pursuant to the Engagement Letter, the Company (as defined in the Engagement Letter) has requested that Greenhill render the following professional services in connection with the Chapter 11 Cases:

a.    assisting the Company in preparing marketing materials (based entirely on information supplied by the Company) for distribution to potential acquirors;

b.    assisting the Company in identifying and contacting selected potential acquirors;

c.    assisting the Company in arranging for potential acquirors to conduct business investigations;

d.    assisting the Company in evaluating potential financial and strategic alternatives with respect to a potential Transaction;

e.    advising the Company as to the timing, structure and pricing of a potential Transaction (as defined in the Engagement Letter);

f.    assisting the Company in negotiating the financial terms of a potential Transaction;

g.    if requested, evaluate potential financing alternatives for the Company as part of, or in parallel to, a Transaction, and advise the Company on the financial implications of each;

h.    assist in the determination of an appropriate capital structure for the Company and its affiliates;

i.    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of the Company and/or their respective representatives in connection with a Transaction;

j.    advise the Company with respect to, and upon request attend, meetings of the Company's senior management, board of directors, audit committees (as necessary), creditor groups and other interested parties, as necessary, with respect to matters on which Greenhill has been engaged to advise hereunder;

k.    if requested by the Company, participate in hearings before the Court and provide relevant testimony with respect to Greenhill's services and the matters described

herein, as well as issues arising in connection with any proposed Plan in Greenhill's area of expertise concerning a Transaction; and

l.   provide such other general advisory services and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Company and Greenhill,

(each a "Service" and together, the "Services").[4]

11.     To the extent that the Debtors request that Greenhill perform additional services not contemplated by the Application, such services and the fees for such services will be mutually agreed upon by Greenhill and the Debtors, in writing, and will be subject to Court approval.

12.     In addition, the Debtors will retain the services of other professionals over the course of the Chapter 11 Cases. By separate application, the Debtors are requesting that the Court approve the retention of G2 Capital Advisors, LLC ("G2") as the Debtors' financial advisors in the Chapter 11 Cases. The Debtors discussed with both firms the division of roles and responsibilities as between Greenhill and G2 and the Debtors intend to monitor carefully these and other retained professionals to prevent a duplication of effort in the Chapter 11 Cases. Greenhill and G2 have informed the Debtors that they will undertake to coordinate all of their services in order to avoid any unnecessary duplication of services.

13.     I believe that Greenhill is well qualified and able to provide the foregoing services to the Debtors. In addition, I believe that the services that Greenhill will provide are necessary to maximize the value of the Debtors' estates and will not be duplicative of the services that other professionals will be providing to the Debtors in the Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

14.     Greenhill's decision to advise and assist the Debtors in the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter, as

---

[4] Terms used but undefined in this paragraph have the meanings ascribed in the Engagement Letter.

modified by this Application. In consideration of the services to be provided by Greenhill, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay the following compensation to Greenhill:[5]

a.  <u>Retainer Fee.</u> The parties hereto acknowledge that the Company has already paid a retainer fee of $250,000 (the "<u>Retainer Fee</u>"), in two (2) equal installments; the first installment (1) on or around December 21, 2022 and a second installment (2) on January 31st, 2023.

b.  <u>Monthly Advisory Fee</u>.  Commencing as of May 1, 2023, a financial advisory fee of $100,000 per month (the "<u>Monthly Advisory Fee</u>"), which shall be due and paid promptly by the Company on a monthly basis in advance. The Monthly Advisory Fees for May, June and July, 2023 were paid prior to the Petition Date. The Monthly Advisory Fee for August will be paid upon the entry of an Order approving the Application, and thereafter the Monthly Advisory Fee shall be payable in advance on the first business day of each month. In the event the Company consummates a Restructuring Transaction or M&A Transaction, fifty percent (50%) of the Monthly Advisory Fees paid to Greenhill from and after the Petition Date shall be credited against the Restructuring Transaction Fee or M&A Transaction Fee payable to Greenhill.

c.  <u>Restructuring Transaction Fee</u>.  If, at any time during the Fee Period (as defined in the Engagement Letter), the Company consummates a Restructuring Transaction, Greenhill shall be entitled to receive a fee equal to $2,900,000 (the "<u>Restructuring Transaction Fee</u>") earned and payable upon the earlier of (a) the consummation of a Restructuring Transaction and (b) the confirmation, sanction, or approval, as applicable, and effectiveness of a Plan.[6]

d.  <u>Financing Fee</u>.  If the Company decides to pursue a Financing as part of, or in parallel to, the Transaction, and either (i) requests that Greenhill provide services that are material in nature or scope in connection therewith, and such services are provided, or (ii) such Financing is associated with the Transaction, (e.g., such Financing is provided by a buyer, or a party providing Financing to support the Transaction), then the Company shall pay Greenhill a financing fee in an amount calculated in accordance with the formula set forth below (the "<u>Financing Fee</u>") if (A) a Financing is consummated during the term of this Agreement, or, (B) no Restructuring Fee and no M&A Fee has been paid to Greenhill, and a Financing is consummated within 18

---

[5] To the extent there are any inconsistencies between this Application and the Engagement Letter, this Application controls unless otherwise stated. All capitalized terms in paragraph 14 of the Application not otherwise defined in said paragraph have the meanings ascribed to such terms in the Engagement Letter.

[6] The Restructuring Transaction Fee and Minimum M&A Transaction Fee in the Engagement Letter were $3,500,000, against which the $250,000 initial retainer was credited for a net fee of $3,250,000. Prior to the Petition Date, Greenhill agreed to reduce its Restructuring Transaction Fee (net of the $250,000 initial retainer credit) to $2,900,000, subject to the entry of an order approving this Application.

months thereafter, or a definitive agreement is entered into within 18 months thereafter that subsequently results in a Financing. The Financing Fee shall equal:

(vi)  1.5% of the gross proceeds of any indebtedness raised that is secured by a first lien, including, without limitation, any debtor in possession financing raised, other than a last-out first lien; plus

(vii)  2.0% of the gross proceeds of any indebtedness raised that is (a) secured by a last-out first lien, or (b) secured by a second or more junior lien; plus

(viii)  2.5% of the gross proceeds of any indebtedness raised that is unsecured; plus

(ix)  3.0% of the gross proceeds of any debt raised with warrants attached to it; plus

(x)  5.0% of the gross proceeds of any capital raised in the form of equity, equity-linked, hybrid, preferred, or convertible capital.

For the avoidance of doubt, the term "raised" includes the amount committed or otherwise made available to the Company, whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company. Capital shall have been "raised" upon the earlier to occur of (i) the consummation of such a raise and (ii) the execution of an agreement in principle or a definitive agreement to affect a new capital raise and a new capital raise is eventually consummated at any time thereafter.

e.  M&A Fee. A success-based transaction fee (the "M&A Fee") payable, if no Restructuring Fee has previously been earned, upon the consummation of an M&A Transaction, if during the term of this Agreement, or if this Agreement is terminated by the Company prior to the consummation of a M&A Transaction, within 18 months thereafter (the "Tail Period"), a M&A Transaction is consummated or a definitive agreement is entered into that subsequently results in a M&A Transaction. The M&A Transaction Fee shall equal:

(iv)  4.0% of the first $90,000,000 Transaction Value (as defined in Schedule B); plus

(v)  5.0% of the next $10,000,000 Transaction Value; plus

(vi)  6.0% for anything over $100,000,000 Transaction Value;

Subject to a minimum fee of $2,900,000.

For the avoidance of doubt, if any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A Transaction Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees).

f.  If no Restructuring Fee or M&A Fee has previously been earned, in the event that, during the term of engagement or the Tail Period, the Company shall execute a definitive agreement providing for a Transaction, which agreement subsequently is

terminated and the Company is paid a termination, "break up", liquidated damages or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination) in connection with such termination (a "Break-Up Payment"), then the Company shall pay to Greenhill, upon its receipt of such Break-Up Payment, an amount (the "Break-Up Fee") equal to the lesser of (i) 20% of such Break-Up Payment and (ii) the M&A Fee (based on the estimated M&A Fee that would have been payable had the proposed Transaction been consummated in accordance with the terms of such definitive agreement). Any such Break-Up Payment shall be credited to amounts due to Greenhill for any subsequent M&A Fee or Restructuring Fee.

g.      Notwithstanding anything to the contrary in Section 4(d), Section 4(e), Section 4(f) or Section 4(g) of the Engagement Letter, any Restructuring Fee, M&A Fee, Break-Up Fee or Financing Fee shall be payable to Greenhill during the Tail Period only if the definitive agreement providing for a Transaction or a Financing, or the consummated Transaction or Financing, as applicable, is with a Covered Party (as defined below).  As soon as reasonably practicable after receipt by Greenhill of a notice of termination of the engagement from the Company, Greenhill shall compile and deliver to the Company a list (the "List") of all potential acquirers or, in the case of a Financing, potential financing sources, contacted by Greenhill on behalf of the Company and with whom the Company entered into a confidentiality agreement in connection with the Transaction or Financing. Within ten (10) days of receipt of the List, the Company shall supplement the List with all potential acquirers or financing sources who contacted the Company directly, or who were contacted directly by the Company or by any other party acting on the Company's behalf, during the term of the engagement and with whom the Company entered into a confidentiality agreement in connection with the Transaction. Any potential acquirer or financing source included on the List (as supplemented by the Company) shall be considered a "Covered Party."  The failure of the Company to include an appropriate party on the List shall not relieve the Company of its obligations pursuant hereto.

As noted above, if any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees) and the lower (or other) fee shall cease to be payable even if a second Transaction is consummated.

As used in the Engagement Letter, "Fee Period" shall mean the period including (i) the term of the Engagement Letter and Greenhill's engagement hereunder, and (ii) the period beginning upon the termination of the Engagement Letter and Greenhill's engagement hereunder and extending 18 (eighteen) months thereafter.  For the avoidance of doubt if the Engagement Letter is terminated unilaterally and voluntarily by Greenhill and Greenhill is not deemed to be providing any Services in relation to any Transaction or the Transactions, then the Fee Period shall be amended to only include the term of Greenhill's engagement.

For the avoidance of doubt, notwithstanding any provision of the Engagement Letter to the contrary, Greenhill shall not be entitled to receive an Opinion Fee or a Credit Amendment Fee, as those terms are defined in the Engagement Letter.

No fee payable to any other financial advisor by the Company or any other person in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Greenhill.

15.     In addition to the fees described above, the Debtors have agreed to reimburse Greenhill for its reasonable and documented out-of-pocket expenses incurred in connection with this engagement, such as travel, lodging, duplicating, messenger and telephone charges, and fees and expenses of Greenhill's counsel (without the need for such legal counsel to be retained as a professional during these Chapter 11 cases).

16.     Greenhill will maintain time-keeping records in support of its compensation and actual necessary costs and expenses incurred in connection with rendering services to the Debtors. Greenhill intends to apply to the Court for the allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any orders of the Court, including the order with respect to the Application.

17.     The Engagement Letter, as modified by the Application, and the compensation contemplated therein are each consistent with and typical of compensation arrangements entered into by Greenhill and other comparable firms in connection with the rendering of similar services under similar circumstances and are the result of arm's-length negotiations between the Debtors and Greenhill. Greenhill believes that the terms and conditions in the Engagement Letter, as modified by the Application, are in fact reasonable, consistent with the market for providers of similar services, and designed to compensate Greenhill fairly for its work and to cover fixed and routine overhead expenses. Moreover, the ultimate benefit to the Debtors cannot be measured by

reference to the mere number of hours to be expended by Greenhill's professionals in the performance of services, but rather should be considered in the context of Greenhill's valuable institutional knowledge of the Debtors' businesses and financial affairs obtained since December 2022.

18.     In the 90 days prior to the Petition Date, the Debtors paid Greenhill $327,278.00 in fees (representing three Monthly Advisory Fees under the Engagement Letter) and expenses (representing expenses under the Engagement Letter). As of the Petition Date, the Debtors did not owe Greenhill any amounts for services rendered before the Petition Date.

19.     To the best of my knowledge, Greenhill has not shared and will not agree to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**DISINTERESTEDNESS OF GREENHILL**

20.     To the best of my knowledge, information and belief, as of the date hereof, Greenhill: (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as is required under section 327(a) of the Bankruptcy Code and, as set forth in this Declaration; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, shareholders, or other parties in interest, except as disclosed in this Declaration and in Schedule 2 attached hereto.

21.     Greenhill obtained from the Debtors or its representatives the names of individuals and entities that may be parties in interest in the Chapter 11 Cases ("Potential Parties in Interest"), and such categories of parties are listed on Schedule 1.

22.     Greenhill has conducted a search of its electronic client databases for relationships during the last five years to determine its connections with the Potential Parties in Interest. As

Greenhill, and not its affiliates, is the entity being retained by the Debtors, we have researched only the electronic client data bases of Greenhill, not of all its affiliates, to determine if Greenhill has connections with any Potential Parties in Interest, and Greenhill makes no representation as to the disinterestedness of its affiliates or their respective professionals or employees in respect to the Chapter 11 Cases. To the best of my knowledge and belief, Greenhill has not represented any Potential Parties in Interest in the last five years in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, Greenhill in matters relating to the Chapter 11 Cases, except as set forth herein and in the Connections to Parties in Interest attached hereto as <u>Schedule 2</u>.

23.    To the best of my knowledge and belief, based on the search of Greenhill's electronic data bases for relationships during the last five years as described above, neither Greenhill nor I, nor any other employee of Greenhill that will provide services to the Debtors in connection with this engagement, has any connection with or holds any interest adverse to the Debtors, its estates or the Potential Parties in Interest, except (a) as set forth in <u>Schedule 2</u> and (b) as otherwise set forth below:

a.    Greenhill is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information, and belief, Greenhill's services to these parties were and are wholly unrelated to the Debtors, their estates, or the Chapter 11 Cases.

b.    As part of its practice, Greenhill appears in numerous cases, proceedings and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Chapter 11 Cases. Furthermore, Greenhill has in the past and will likely in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors in matters upon which Greenhill is to be engaged.

24.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Greenhill has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the Chapter 11 Cases. Greenhill will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in the Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

25.     I am not related or connected to, and, to the best of my knowledge, no other professional of Greenhill who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware or any employee in the Office of the United States Trustee for the District of Delaware.

26.     Moreover, insofar as I have been able to determine, no Greenhill employee who will work on this engagement holds or represents any interest adverse to the Debtors or their estates, and Greenhill is a "disinterested person" as such term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that such professionals:

     a.     are not creditors, equity security holders, or insiders of the Debtors;

     b.     were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

     c.     do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

27.     To the extent that Greenhill discovers any additional facts bearing in a material respect on its disinterestedness during the period of Greenhill's retention in connection with the Chapter 11 Cases, Greenhill will supplement this Declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

[*space intentionally left blank*]

Dated: August 9, 2023

/s/ Eric Mendelsohn
Eric Mendelsohn
Managing Director

## <u>SCHEDULE 1</u>
## Potential Parties in Interest

### <u>Debtors:</u>

- Williams Industrial Services Group Inc.
- Williams Industrial Services Group, LLC
- Williams Industrial Services, LLC
- Williams Plant Services, LLC
- Williams Specialty Services, LLC
- WISG Electrical, LLC
- Construction & Maintenance Professionals, LLC
- Williams Global Services, Inc.
- Steam Enterprises, LLC
- GPEG LLC
- Global Power Professional Services, Inc.
- WISG Canada Ltd.
- WISG Nuclear Ltd.
- WISG Electrical Ltd.

### <u>Directors & Managers:</u>

- Robert B. Mills (Chairman of the Board of Directors)
- David A. B. Brown (director)
- Steven D. Davis (director)
- Linda A. Goodspeed (director)
- Nelson Obus (director)
- Tracy D. Pagliara (President, CEO, and director)
- Mitchell I. Quain (director)
- Randall R. Lay (Executive Vice President, COO)
- Charles E. Wheelock (Senior Vice President, CAO, general counsel, and Secretary)
- Damien A Vassall (Vice President, CFO, and principal financial and accounting officer)
- Dawn A. Jenkins (Vice President, Human Resources)
- Michael Bruno (Executive Vice President of Business Development)
- Damien E. Mudd (Vice President of Power Operations)
- Charles Macaluso (former Chairman of the Board and Director)
- Terence J. Cryan (former President, CEO, and Director)
- Carl Bartoli (former director)
- David Keller (former director)
- Michael E. Rescoe (former director)
- Michael E. Salvati (former director)
- Gary J. Taylor (former director)

- Luis Manuel Ramirez (former President, CEO, and director)
- Raymond K. Guba (former Senior Vice President and Chief Financial Officer)

**Secured Lenders:**

- PNC Bank, National Association
- EICF Agent LLC, as agent for the [Term] lenders
- CION Investment Corporation
- Energy Impact Credit Fund I LP
- Crowd Out Credit Opportunities Fund LLC

**Top 30 Creditors:**

- Retubeco
- United Rentals-Payment Center
- Kbh Solutions LLC
- Simkiss & Block
- Johnson Contractors, Inc.
- Augusta Industrial Services
- Cogburn Bros Inc
- Baumert Sas
- Dept Of Labor And Industries
- Herc Rentals
- Thompson Building Wrecking Co
- Martin Marietta Materials
- Bankdirect Capital Finance
- Sunbelt Rentals
- Ferguson Enterprises Inc
- Oleary Construction Inc
- Complete Service Well Drilling
- Ironside Developments LLC
- Ek Birken Masonry, Inc
- Kmc Construction Inc
- Clarion Electrical
- Hudson Elevator Group
- Hds White Cap Const Supply
- Eversource Energy
- International Plant SVCS LLC
- International Duros Steel
- Argos USA LLC
- Southeastern Systems Tech

- Verde Electric Corporation
- Harrington Ind Plastics LLC

**Litigation Parties:**

- Luis Omar Alvarez
- Champion Painting Specialty Services
- Fasciano, Charles
- Stout, Kyle
- Taverez, Carlos
- Inoa, Jose
- Inoa, Julio
- Enterprise Gas Processing LLC
- Jenness, Dorren
- McManus, Ryan
- Smith, Eric
- Loaisiga, Emilio
- Riley, Michael
- Riley, Anthony
- MEITEC, Inc.
- Pelican Island Storage Terminal (Apex Oil Co)
- Pelican Island Storage Terminal
- Oscar Baxin
- Victor Hernandez
- Strange, Shayla
- Kelly Powers

**Leases:**

- Ashford Office Center, LLC
- 18-31 42nd Street Astoria, LLC
- Lan Darty Real Estate DBA D. Ream Properties
- Lane Land Development, LLC
- Associated Food Distributors Company
- Crescent Office Center, LP
- Odyssey Manufacturing Co.
- TexAz Commercial Properties, LLC

**Utilities:**

- 18-27A 42nd Street Astoria LLC

- Frontier Communications
- Comcast
- Lane Land Development LLC
- ADT Security Services
- Verizon Wireless
- Wow! Internet Cable And Phone
- Granite Telecommunications LL
- Verizon Wireless

**Taxing Authorities**

- City of Dothan, AL
- Duval County Property Appraiser's Office, FL
- City of Dunwoody, GA
- Claiborne County Tax Assessor, MS
- Dept of Revenue, TN
- Town of West Point Treasurer, OH
- Department of Taxation, VA
- Alabama Department of Revenue
- New Hampshire Department of Revenue Administration
- Tennessee Department of Revenue
- Oregon Department of Revenue
- Arkansas Secretary of States
- Department of State, DE
- New York State Department of Taxation and Finance
- Oklahoma Tax Commission
- Texas Comptroller of Public Accounts
- Franchise Tax Board, CA
- Florida Department of Revenue
- Georgia Department of Revenue
- Louisiana Department of Revenue
- Minnesota Department of Revenue
- Missouri Department of Revenue
- Department of Revenue, MS
- North Carolina Department of Revenue
- New Mexico Taxation and Revenue Department
- NYC Department of Finance
- Utah State Tax Commission
- West Virginia State Tax Department
- U.S. Department of the Treasury
- Alaska Department of Revenue
- Department of Finance and Administration, AR

- Arizona Department of Revenue
- Colorado Department of Revenue
- Department of Revenue Services, CT
- Delaware Division of Revenue
- Iowa Department of Revenue
- Idaho State Tax Commission
- Illinois Department of Revenue
- Indiana Department of Revenue
- Kansas Department of Revenue
- Kentucky Department of Revenue
- Comptroller of Maryland
- Maine Revenue Services
- Michigan Department of Treasury
- Montana Department of Revenue
- Nebraska Department of Revenue
- State of New Jersey
- Chillicothe City Income Tax Dept., OH
- Pennsylvania Department of Revenue
- SC Department of Revenue
- U.S. Internal Revenue Service
- Virginia Department of Taxation
- Vermont Department of Taxes
- Canada Revenue Agency
- Ontario Workplace Safety and Insurance Board
- Ontario Employer Health Tax
- St. Lucie County Property Appraiser's Office, FL
- Dekalb County Property Appraisal, GA
- Shelby County Assesser of Property, TN
- Virginia King William County
- Washington Department of Revenue
- State Treasurer, CT
- Division of Unclaimed Property, FL
- State Treasurer, IL
- Department of Treasury - Unclaimed Property, MI
- Comptroller, State of New York
- Commonwealth of Pennsylvania
- Comptroller of Public Accounts - Unclaimed Property, TX
- Massachusetts Department of Revenue
- North Dakota Office of the State Tax Commissioner
- Wisconsin Department of Revenue

**SCHEDULE 2**
**Connections to Potential Parties in Interest**

| Interested Parties | Relationship to Greenhill |
|---|---|
| Williams Industrial Services Group Inc. | Client |
| Williams Industrial Services Group, LLC | Affiliate of client |
| Williams Industrial Services, LLC | Affiliate of client |
| Williams Plant Services, LLC | Affiliate of client |
| Williams Specialty Services, LLC | Affiliate of client |
| WISG Electrical, LLC | Affiliate of client |
| Construction & Maintenance Professionals, LLC | Affiliate of client |
| Williams Global Services, Inc. | Affiliate of client |
| Steam Enterprises, LLC | Affiliate of client |
| GPEG LLC | Affiliate of client |
| Global Power Professional Services, Inc. | Affiliate of client |
| WISG Canada Ltd. | Affiliate of client |
| WISG Nuclear Ltd. | Affiliate of client |
| WISG Electrical Ltd. | Affiliate of client |
| Robert B. Mills | None |
| David A. B. Brown | None |
| Steven D. Davis | None |
| Linda A. Goodspeed | None |
| Nelson Obus | None |
| Tracy D. Pagliara | None |
| Mitchell I. Quain | None |
| Randall R. Lay | None |
| Charles E. Wheelock | None |
| Damien A Vassall | None |
| Dawn A. Jenkins | None |
| Michael Bruno | None |
| Damien E. Mudd | None |
| Charles Macaluso | None |

| Interested Parties | Relationship to Greenhill |
|---|---|
| Terence J. Cryan | None |
| Carl Bartoli | None |
| David Keller | None |
| Michael E. Rescoe | None |
| Michael E. Salvati | None |
| Gary J. Taylor | None |
| Luis Manuel Ramirez | None |
| Raymond K. Guba | None |
| PNC Bank, National Association | None |
| EICF Agent LLC, as agent for the [Term] lenders | None |
| CION Investment Corporation | Party in Pending Project |
| Energy Impact Credit Fund I LP | None |
| Crowd Out Credit Opportunities Fund LLC | None |
| Retubeco | None |
| United Rentals-Payment Center | None |
| Kbh Solutions LLC | None |
| Simkiss & Block | None |
| Johnson Contractors, Inc. | None |
| Augusta Industrial Services | None |
| Cogburn Bros Inc | None |
| Baumert Sas | None |
| Dept Of Labor And Industries | None |
| Herc Rentals | None |
| Thompson Building Wrecking Co | None |
| Martin Marietta Materials | Party in Pending Project |
| Bankdirect Capital Finance | None |
| Sunbelt Rentals | None |
| Ferguson Enterprises Inc | None |
| Oleary Construction Inc | None |
| Complete Service Well Drilling | None |

| Interested Parties | Relationship to Greenhill |
| --- | --- |
| Ironside Developments LLC | None |
| Ek Birken Masonry, Inc | None |
| Kmc Construction Inc | None |
| Clarion Electrical | None |
| Hudson Elevator Group | None |
| Hds White Cap Const Supply | None |
| Eversource Energy | None |
| International Plant SVCS LLC | None |
| International Duros Steel | None |
| Argos USA LLC | None |
| Southeastern Systems Tech | None |
| Verde Electric Corporation | None |
| Harrington Ind Plastics LLC | None |
| Luis Omar Alvarez | None |
| Champion Painting Specialty Services | None |
| Fasciano, Charles | None |
| Stout, Kyle | None |
| Taverez, Carlos | None |
| Inoa, Jose | None |
| Inoa, Julio | None |
| Enterprise Gas Processing LLC | None |
| Jenness, Dorren | None |
| McManus, Ryan | None |
| Smith, Eric | None |
| Loaisiga, Emilio | None |
| Riley, Michael | None |
| Riley, Anthony | None |
| MEITEC, Inc. | None |
| Pelican Island Storage Terminal (Apex Oil Co) | None |
| Pelican Island Storage Terminal | None |

| Interested Parties | Relationship to Greenhill |
|---|---|
| Oscar Baxin | None |
| Victor Hernandez | None |
| Strange, Shayla | None |
| Kelly Powers | None |
| Ashford Office Center, LLC | None |
| 18-31 42nd Street Astoria, LLC | None |
| Lan Darty Real Estate DBA D. Ream Properties | None |
| Lane Land Development, LLC | None |
| Associated Food Distributors Company | None |
| Crescent Office Center, LP | None |
| Odyssey Manufacturing Co. | None |
| TexAz Commercial Properties, LLC | None |
| 18-27A 42nd Street Astoria LLC | None |
| Frontier Communications | None |
| Comcast | Vendor |
| Lane Land Development LLC | None |
| ADT Security Services | None |
| Verizon Wireless | Vendor |
| Wow! Internet Cable And Phone | None |
| Granite Telecommunications LL | None |
| City of Dothan, AL | None |
| Duval County Property Appraiser's Office, FL | None |
| City of Dunwoody, GA | None |
| Claiborne County Tax Assessor, MS | None |
| Dept of Revenue, TN | None |
| Town of West Point Treasurer, OH | None |
| Department of Taxation, VA | None |
| Alabama Department of Revenue | None |
| New Hampshire Department of Revenue Administration | None |
| Tennessee Department of Revenue | None |

| Interested Parties | Relationship to Greenhill |
|---|---|
| Oregon Department of Revenue | None |
| Arkansas Secretary of States | None |
| Department of State, DE | None |
| New York State Department of Taxation and Finance | None |
| Oklahoma Tax Commission | None |
| Texas Comptroller of Public Accounts | None |
| Franchise Tax Board, CA | None |
| Florida Department of Revenue | None |
| Georgia Department of Revenue | None |
| Louisiana Department of Revenue | None |
| Minnesota Department of Revenue | None |
| Missouri Department of Revenue | None |
| Department of Revenue, MS | None |
| North Carolina Department of Revenue | None |
| New Mexico Taxation and Revenue Department | None |
| NYC Department of Finance | None |
| Utah State Tax Commission | None |
| West Virginia State Tax Department | None |
| U.S. Department of the Treasury | None |
| Alaska Department of Revenue | None |
| Department of Finance and Administration, AR | None |
| Arizona Department of Revenue | None |
| Colorado Department of Revenue | None |
| Department of Revenue Services, CT | None |
| Delaware Division of Revenue | None |
| Iowa Department of Revenue | None |
| Idaho State Tax Commission | None |
| Illinois Department of Revenue | None |
| Indiana Department of Revenue | None |
| Kansas Department of Revenue | None |

| Interested Parties | Relationship to Greenhill |
|---|---|
| Kentucky Department of Revenue | None |
| Comptroller of Maryland | None |
| Maine Revenue Services | None |
| Michigan Department of Treasury | None |
| Montana Department of Revenue | None |
| Nebraska Department of Revenue | None |
| State of New Jersey | None |
| Chillicothe City Income Tax Dept., OH | None |
| Pennsylvania Department of Revenue | None |
| SC Department of Revenue | None |
| U.S. Internal Revenue Service | None |
| Virginia Department of Taxation | None |
| Vermont Department of Taxes | None |
| Canada Revenue Agency | None |
| Ontario Workplace Safety and Insurance Board | None |
| Ontario Employer Health Tax | None |
| St. Lucie County Property Appraiser's Office, FL | None |
| Dekalb County Property Appraisal, GA | None |
| Shelby County Assesser of Property, TN | None |
| Virginia King William County | None |
| Washington Department of Revenue | None |
| State Treasurer, CT | None |
| Division of Unclaimed Property, FL | None |
| State Treasurer, IL | None |
| Department of Treasury - Unclaimed Property, MI | None |
| Comptroller, State of New York | None |
| Commonwealth of Pennsylvania | None |
| Comptroller of Public Accounts - Unclaimed Property, TX | None |
| Massachusetts Department of Revenue | None |
| North Dakota Office of the State Tax Commissioner | None |

| Interested Parties | Relationship to Greenhill |
|---|---|
| Wisconsin Department of Revenue | None |

<u>EXHIBIT C</u>
(Engagement Letter)

Greenhill & Co., LLC
1271 Avenue of the Americas
New York, New York 10020



June 29, 2023, effective as of
December 21, 2022

Williams Industrial Services Group Inc.
200 Ashford Center North, Suite 425
Atlanta, GA 30338

Attn: Tracy D. Pagliara
President, CEO & Director

Dear Mr. Pagliara:

This letter agreement (this "Agreement") amends and restates the terms under which Williams Industrial Services Group Inc. (collectively with its direct and indirect subsidiaries, including any that are formed or invested in during the Fee Period (as defined below), the "Company") has engaged Greenhill & Co., LLC ("Greenhill"), as financial advisor and investment banker to the Company in connection with developing, and advising the Company with respect to, various strategic and business alternatives for the Company, which may include, without limitation, a possible Credit Amendment Transaction, Restructuring Transaction, Financing Transaction and/or M&A Transaction (each as defined below, and together, where the context permits, the "Transactions"), and with respect to such other financial matters as to which the Company and Greenhill may agree in writing during the term of this engagement, as more specifically discussed herein. Our engagement with respect to an M&A Transaction is on an exclusive basis.

This Agreement replaces the letter agreement dated December 21, 2022 previously entered into by and between the Company and Greenhill and renders such letter agreement null and void. For the avoidance of doubt the entry into this Agreement between Greenhill and the Company shall leave intact the Company's prior obligations with respect to Section 3 (out of pocket expenses), Section 5 and Schedule A (Indemnification) of the December 21, 2022 letter agreement.

If appropriate in connection with performing its services for the Company hereunder, Greenhill may utilize the services of one or more of its affiliates, in which case references herein to Greenhill shall include such affiliates.  In such circumstances, Greenhill shall be responsible for the performance of its affiliates as if they were a party to this Agreement.

1.    Scope of Services

        In connection with the engagement hereunder, Greenhill will render the services set forth below, to the extent the Company deems necessary, as appropriate and feasible:

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 2

a.   assisting the Company in preparing marketing materials (based entirely on information supplied by the Company) for distribution to potential acquirors;

b.   assisting the Company in identifying and contacting selected potential acquirors;

c.   assisting the Company in arranging for potential acquirors to conduct business investigations;

d.   assisting the Company in evaluating potential financial and strategic alternatives with respect to a potential Transaction;

e.   advising the Company as to the timing, structure and pricing of a potential Transaction;

f.   assisting the Company in negotiating the financial terms of a potential Transaction;

g.   if requested, evaluate potential financing alternatives for the Company as part of, or in parallel to, a Transaction, and advise the Company on the financial implications of each;

h.   if appropriate, rendering an opinion to the Board of Directors of the Company as to the fairness, from a financial point of view, to the Company or, if applicable, holders of the Company's common stock of the consideration to be received by the Company or such holders (or the exchange ratio provided for) in connection with a proposed Transaction (an "Opinion"); it being understood that the nature and scope of Greenhill's investigation as well as the scope, form and substance of, and the assumptions and qualifications contained in, its Opinion, shall be as Greenhill deems appropriate; and

i.   assist in the determination of an appropriate capital structure for the Company and its affiliates;

j.   assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of the Company and/or their respective representatives in connection with a Transaction;

k.   advise the Company with respect to, and upon request attend, meetings of the Company's senior management, board of directors, audit committees (as necessary), creditor groups and other interested parties, as necessary, with respect to matters on which Greenhill has been engaged to advise hereunder;

l.   in the event the Company determines to commence a Bankruptcy Case (as defined below), and if requested by the Company, participate in hearings before the United States Bankruptcy Court in which such cases are pending (the

"<u>Bankruptcy Court</u>") and provide relevant testimony with respect to Greenhill's services and the matters described herein, as well as issues arising in connection with any proposed Plan in Greenhill's area of expertise concerning a Transaction; and

m.   provide such other general advisory services and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Company and Greenhill,

(each a "<u>Service</u>" and together, the "<u>Services</u>").

In rendering the Services to the Company hereunder, Greenhill is not assuming any responsibility for the Company's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction.  The Company agrees that Greenhill shall not have any obligation or responsibility to provide accounting, audit, "crisis management", or "business consultant" services for the Company, and shall have no responsibility for designing or implementing any operating, organizational, administrative, cash management or liquidity improvements, or to provide any opinions with respect to solvency in connection with any Transaction.  The Company confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax, regulatory and other similar advice.

It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Greenhill to underwrite, place or purchase any securities.

As part of Greenhill's investment banking business, Greenhill has regular ordinary-course conversations concerning its clients' respective businesses, the markets, and potential transactions, as is customary for advisory services.  Often, Greenhill may represent such clients on matters unrelated to any Transaction. Greenhill's clients include lender institutions, creditors, interested parties and potential counterparties to the Company who may have interests that are not aligned with the Company's interests.  Greenhill shall provide customary disclosure to the Company regarding any material relationships or conflicts of interest that it may have with respect to the Company and any of the Transactions, including any conflicts with respect to the provision of the Opinion.

2.   <u>Information.</u>

The Company shall use its best efforts to make available to Greenhill all information concerning the business, assets, operations, financial condition and prospects of the Company that Greenhill requires to render the Services hereunder ("<u>Company Information</u>"), and shall provide Greenhill with access to the Company's officers, directors, employees, independent accountants, counsel and other advisors and agents as Greenhill deems appropriate.  In order to coordinate effectively the Company's

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 4

and Greenhill's activities to effect any Transaction, the Company will promptly inform Greenhill of any discussions, negotiations or inquiries regarding a possible Transaction (including any such discussions, negotiations or inquiries that have occurred prior to the date of this Agreement).

The Company represents that all Company Information furnished by it or on its behalf to Greenhill, at all times during Greenhill's engagement will, to the best of the Company's knowledge, (i) be true and correct in all material respects, and (ii) not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made, in each case as of the date on which such Company Information is provided, or as of the date indicated in such Company Information, as applicable. If at any time during the term of this engagement, the Company becomes aware that the Company Information is or becomes inaccurate, incomplete or misleading in any material respect the Company shall promptly notify Greenhill.

Greenhill agrees that it will use the Company Information for the sole purpose of the engagement contemplated by this Agreement. The Company recognizes and acknowledges that in advising the Company and completing its engagement hereunder, Greenhill will also be using and relying on publicly available information and on data, material and, with the Company's permission, other information furnished to Greenhill by the Company's other advisors.

It is understood that in performing under this engagement, Greenhill shall be entitled to rely upon and assume, without assuming any responsibility for independent verification, the accuracy and completeness of all information that is publicly available and of all information that has been furnished to it by the Company or otherwise reviewed by Greenhill, and Greenhill shall not assume any responsibility or have any liability therefor; *provided*, *however*, that Greenhill acknowledges that projections and forecasts are subject to significant uncertainties and contingencies, many of which may be beyond the Company's control, and no assurance can be given that any particular projections or forecasts will be realized and that actual results during the period or periods covered by the projections or forecasts may differ from projected results, and such differences may be material.

3.    <u>Definitions.</u>

As used herein, the term "<u>Restructuring Transaction</u>" shall mean any one or more of the following, whether or not on an out-of-court basis or pursuant to a plan of reorganization of the Company (a "<u>Plan</u>") confirmed in connection with any case or cases commenced by or against the Company, any of its affiliates or subsidiaries, its parent companies or any combination thereof, whether individually or on a consolidated basis, whether or not pursuant to chapter 11 of the United States Bankruptcy Code, or similar proceedings in other jurisdictions (a "<u>Bankruptcy Case</u>"), and whether proposed by the Company or any other party: (a) any transaction or series of related transactions that effects or proposes to

effect material amendments to, or other material changes in all or a significant amount of the Company's outstanding indebtedness, including, without limitation, by any material exchange, repurchase, refinancing, repayment, equitization, amend-and-extend, cramdown or forgiveness of any portion thereof; (b) any material acquisition, directly or indirectly, by the Company, whether in a single transaction or series of related transactions, of any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization of the Company or change of control of the other person; (c) any material restructuring, reorganization, recapitalization, equitization, exchange offer, tender offer, amend-and-extend, cramdown, financing, refinancing, repayment (except for scheduled amortization); or (d) any M&A Transaction that involves a restructuring or insolvency proceeding, or similar transaction, whether or not pursuant to a Plan, in the case of (a) through (c), which transaction is intended to provide for the long term operation of the Company in the absence of an M&A Transaction and in each case above, excluding any Credit Amendment Transaction.

As used herein, the term "Credit Amendment Transaction" shall mean a transaction in which Greenhill is the lead financial advisor and provides material services and which involves an amendment of all or a significant amount of the Company's outstanding indebtedness resulting only in any of the following: (a) modifications to (i) financial covenants ratios or levels, (ii) terms of existing negative covenants, (iii) interest rate(s), (b) payment of a consent fee or similar fee, or (c) a waiver, forbearance or standstill in relation to exercise of remedies upon an event of default or a consensual agreement to enable payment in kind of interest payments for a period not longer than six (6) months; in all cases without any equitization or change in control; provided that a "Credit Amendment Transaction" shall not include (1) any of the foregoing (a), (b) or (c) which is entered into in connection with a short-term amendment of the Company's existing credit facilities intended by the Company to facilitate the consummation of an M&A Transaction, (2) any amendment to reflect "concessions" being sought from the Company's existing lenders in connection with an M&A Transaction or (3) any amendment of the Company's existing credit facilities in connection with a transaction entered into with any insurance company that is a surety under any of the Company's customer projects.  For the avoidance of doubt, a transaction that incorporates elements other than those listed in (a) through (c) above shall not be deemed a Credit Amendment Transaction.

As used herein, the term "M&A Transaction" shall mean any one or more of the following, whether or not pursuant to a Plan confirmed in connection with any case or cases commenced by or against the Company, whether individually or on a consolidated basis, whether or not pursuant to a Bankruptcy Case, and whether proposed by the Company or any other party: (i) any merger, consolidation, disposition, business combination, exchange of equity interests or other equity securities, or other transaction, in each case, pursuant to which all or a majority of the equity interests of the Company or all or a majority of the assets or operations of the Company is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition,

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 6

directly or indirectly, by one or more Acquirers (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction or multiple related transactions, of (x) all or a majority of the assets (including through the assignment of any executory contracts) or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company for the purpose of effecting a change of control of the Company.

As used herein, the term "Transaction" shall mean any of a Restructuring Transaction and / or M&A Transaction.

As used herein, "Financing" means any issuance, sale or placement of any hybrid security with debt features, debt, derivative securities, other similar securities or financial instruments, or other obligations of the Company (including any loan or other financing involving any such securities) for the purposes of financing the Company in order to effect a Transaction, with one or more investors, lenders or other counterparties, excluding any financing transaction that is a private placement or at-the-market offering arranged by a banker or broker with whom the Company has been in discussions prior to the date of this Agreement and of which discussions Greenhill is aware or a settlement with any customer or insurance company acting as a surety in relation to any of the Company's projects.

4.    Compensation.

As compensation for Greenhill's services rendered hereunder, the Company (or any successor to or assignee of all or substantially all of the assets and/or business of the Company that assumes the obligations of the Company under this Agreement) shall pay Greenhill the following fees, in cash, in U.S. Dollars, via direct wire transfer:

   a.   Retainer Fee. The parties hereto acknowledge that the Company has already paid a retainer fee of $250,000 (the "Retainer Fee"), in two (2) equal installments; the first installment (1) on or around December 21, 2022 and a second installment (2) on January 31st, 2023.

   b.   Opinion Fee. A creditable, non-refundable, opinion fee of $1,000,000 (the "Opinion Fee"), payable at the time Greenhill delivers any Opinion. No portion of the Opinion Fee shall be contingent upon the consummation of the Transaction, or any conclusion set forth in the Opinion.

   c.   Monthly Advisory Fee.  Commencing as of May 1, 2023, a non-refundable financial advisory fee of $100,000 per month (the "Monthly Advisory Fee"), which shall be due and paid promptly by the Company on a monthly basis in advance. The initial Monthly Advisory Fee shall be payable upon the execution of this Agreement, and thereafter the Monthly Advisory Fee shall be payable in advance on the first business day of each month.

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 7

If any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees) and the lower (or other) fee shall cease to be payable even if a second Transaction is consummated.

d.  Restructuring Transaction Fee.  Subject to the preceding paragraph, if, at any time during the Fee Period (as defined below), the Company consummates a Restructuring Transaction, Greenhill shall be entitled to receive a fee equal to $3,500,000 (the "Restructuring Transaction Fee") earned and payable upon the earlier of (a) the consummation of a Restructuring Transaction and (b) the confirmation, sanction, or approval, as applicable, and effectiveness of a Plan.

e.  Credit Amendment Fee. If at any time during the Fee Period the Company consummates a Credit Amendment Transaction, Greenhill shall be entitled to receive a fee (a "Credit Amendment Fee"), payable promptly at the closing thereof, equal to $750,000.

f.  Financing Fee.  If the Company decides to pursue a Financing as part of, or in parallel to, the Transaction, and either (i) requests that Greenhill provide services that are material in nature or scope in connection therewith, and such services are provided, or (ii) such Financing is associated with the Transaction, (e.g., such Financing is provided by a buyer, or a party providing Financing to support the Transaction), then the Company shall pay Greenhill a financing fee in an amount calculated in accordance with the formula set forth below (the "Financing Fee") if, during the term of this Agreement, or, if no Restructuring Fee and no M&A Fee has been paid to Greenhill, within 18 months thereafter a Financing is consummated, or a definitive agreement is entered into that subsequently results in a Financing.  The Financing Fee shall equal:

(i)  1.5% of the gross proceeds of any indebtedness raised that is secured by a first lien, including, without limitation, any debtor in possession financing raised, other than a last-out first lien; plus

(ii)  2.0% of the gross proceeds of any indebtedness raised that is (a) secured by a last-out first lien, or (b) secured by a second or more junior lien; plus

(iii)  2.5% of the gross proceeds of any indebtedness raised that is unsecured; plus

(iv)  3.0% of the gross proceeds of any debt raised with warrants attached to it; plus

(v)  5.0% of the gross proceeds of any capital raised in the form of equity, equity-linked, hybrid, preferred, or convertible capital.

For the avoidance of doubt, the term "raised" includes the amount committed or otherwise made available to the Company, whether or not such amount (or

any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company.  Capital shall have been "raised" upon the earlier to occur of (i) the consummation of such a raise and (ii) the execution of an agreement in principle or a definitive agreement to effect a new capital raise and a new capital raise is eventually consummated at any time thereafter.

g.   <u>M&A Fee</u>. A success-based transaction fee (the "<u>M&A Fee</u>") payable, if no Restructuring Fee has previously been earned, upon the consummation of an M&A Transaction, if during the term of this Agreement, or if this Agreement is terminated by the Company prior to the consummation of a M&A Transaction, within 18 months thereafter (the "<u>Tail Period</u>"), a M&A Transaction is consummated or a definitive agreement is entered into that subsequently results in a M&A Transaction.  The M&A Transaction Fee shall equal:

   (i)   4.0% of the first $90,000,000 Transaction Value (as defined in Schedule B); plus
   (ii)  5.0% of the next $10,000,000 Transaction Value; plus
   (iii) 6.0% for anything over $100,000,000 Transaction Value;

   Subject to a minimum fee of $3,500,000.

h.   If no Restructuring Fee or M&A Fee has previously been earned, in the event that, during the term of this Agreement or the Tail Period, the Company shall execute a definitive agreement providing for a Transaction, which agreement subsequently is terminated and the Company is paid a termination, "break up", liquidated damages or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination) in connection with such termination (a "<u>Break-Up Payment</u>"), then the Company shall pay to Greenhill, upon its receipt of such Break-Up Payment, an amount (the "<u>Break-Up Fee</u>") equal to the lesser of (i) 20% of such Break-Up Payment and (ii) the M&A Fee (based on the estimated M&A Fee that would have been payable had the proposed Transaction been consummated in accordance with the terms of such definitive agreement). Any such Break-Up Payment shall be credited to amounts due to Greenhill for any subsequent M&A Fee or Restructuring Fee.

i.   Notwithstanding anything to the contrary in Section 4(d), Section 4(e), Section 4(f) or Section 4(g), any Restructuring Fee, M&A Fee, Break-Up Fee or Financing Fee shall be payable to Greenhill during the Tail Period only if the definitive agreement providing for a Transaction or a Financing, or the consummated Transaction or Financing, as applicable, is with a

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 9

Covered Party (as defined below).  As soon as reasonably practicable after receipt by Greenhill of a notice of termination of this Agreement from the Company, Greenhill shall compile and deliver to the Company a list (the "List") of all potential acquirers or, in the case of a Financing, potential financing sources, contacted by Greenhill on behalf of the Company and with whom the Company entered into a confidentiality agreement in connection with the Transaction or Financing. Within ten (10) days of receipt of the List, the Company shall supplement the List with all potential acquirers or financing sources who contacted the Company directly, or who were contacted directly by the Company or by any other party acting on the Company's behalf, during the term of this Agreement and with whom the Company entered into a confidentiality agreement in connection with the Transaction. Any potential acquirer or financing source included on the List (as supplemented by the Company) shall be considered a "Covered Party." The failure of the Company to include an appropriate party on the List shall not relieve the Company of its obligations pursuant hereto.

As noted above, if any transaction or series of transactions triggers the payment to Greenhill of both a Restructuring Transaction Fee and a M&A Fee, Greenhill shall only be paid the higher of the two triggered fees (or if such fees are of an equal amount, one of such fees) and the lower (or other) fee shall cease to be payable even if a second Transaction is consummated.

As used in this Agreement, "Fee Period" shall mean the period including (i) the term of this Agreement and Greenhill's engagement hereunder, and (ii) the period beginning upon the termination of this Agreement and Greenhill's engagement hereunder and extending 18 (eighteen) months thereafter.  For the avoidance of doubt if this Agreement is terminated unilaterally and voluntarily by Greenhill and Greenhill is not deemed to be providing any Services in relation to any Transaction or the Transactions, then the Fee Period shall be amended to only include the term of this Agreement and Greenhill's engagement hereunder.

5.    Credit.

Greenhill shall credit against any Restructuring Transaction Fee or M&A Fee 50% of the Monthly Advisory Fees paid in cash in excess of $300,000, provided that such Restructuring Transaction Fee or M&A Fee is paid in full and not subject to discount, and provided that the sum of the foregoing credits shall not exceed the Restructuring Transaction Fee.

The Retainer Fee and Opinion Fee, to the extent previously paid, shall be credited once against and otherwise discharged in full by payment of the Restructuring Transaction Fee, M&A Fee or the Break-Up Fee payable to Greenhill hereunder.

Should Greenhill receive a Credit Amendment Fee, then any Credit Amendment Fee shall be credited, in the aggregate and without duplication, against any Restructuring

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 10

Transaction Fee or M&A Fee; provided, however that the sum of the foregoing credits (which, for the avoidance of doubt, shall include accounting for any credits against the Transaction Fee under this paragraph 5) shall not exceed the Restructuring Transaction Fee or M&A Fee, as applicable.

No fee payable to any other financial advisor by the Company or any other person in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Greenhill hereunder.

6.  Recognition of Fee Structure.

The Company and Greenhill acknowledge and agree that the hours worked, the results achieved, and the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Greenhill have taken this into account in setting the fees hereunder.

No fee payable to any other person, by the Company or any other party, shall affect any fee payable to Greenhill hereunder.

7.  Out-of-Pocket Expenses.

Without in any way reducing or affecting the provisions of Schedule A hereto, the Company shall promptly reimburse, during the term of the engagement hereunder, Greenhill on a monthly basis for its documented and reasonable out-of-pocket expenses incurred in connection with the performance of its engagement hereunder, including, without limitation, the customary fees, disbursements and other documented charges of Greenhill's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Expenses shall also include, but not be limited to, documented out-of-pocket expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If a Bankruptcy Case is commenced and Greenhill's engagement hereunder is approved by the Bankruptcy Court, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Greenhill for such expenses under this Section 7 upon presentation of an invoice or other similar documentation with reasonable detail. Greenhill agrees to provide the Company with reasonable documentary support for its expenses at the Company's request or at the Bankruptcy Court's direction. Greenhill shall provide advance notice of its intent to engage outside legal counsel, including the identity of the firm to be engaged and an estimate of the fee to be paid to such counsel with respect to an Opinion or a Bankruptcy Case.

8.  Indemnification.

The Company hereby indemnifies Greenhill and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this Agreement as Schedule A. Such Indemnification Provisions are an integral part of

this Agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Greenhill's engagement hereunder.

9.  <u>Termination</u>.

This Agreement and Greenhill's engagement hereunder may be terminated by either the Company or Greenhill at any time, upon providing 30 days' advance written notice thereof to the other party, provided, however, that (a) termination of Greenhill's engagement hereunder shall not affect the Company's continuing obligation to indemnify Greenhill and certain related persons as provided for in Schedule A to this Agreement, and its continuing obligations and agreements under paragraphs 8, 9, 10, 11, 13 and 14 hereof, (b) notwithstanding any such termination, Greenhill, shall be entitled to receive from the Company the fees in the amounts and at the times provided for in paragraph 4 hereof which have accrued before the effective date of such termination notice or are otherwise expressly provided to survive the termination of this Agreement during the Tail Period, and (c) any termination of Greenhill's engagement hereunder shall not affect the Company's obligation to reimburse expenses provided in paragraph 7 hereof in the amounts and at the times provided therein.

10.  <u>Independent Contractor</u>.

Greenhill has been retained under this Agreement as an independent contractor with no fiduciary duties owing to or agency relationship with the Company or to any other party.

11.  <u>Confidentiality</u>.

The advice (oral or written) rendered by Greenhill pursuant to this Agreement is intended solely for the benefit and use of the Company and its Board of Directors acting solely in its capacity as such, in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Greenhill be made by the Company, without the prior written consent of Greenhill, except in each case as may be required by law, rule, or regulation or legal, judicial, administrative or regulatory process or proceeding, including in connection with any application for retention of Greenhill in a Bankruptcy Case. Greenhill acknowledges that its engagement has already been publicly disclosed by the Company. Greenhill understands that its Opinion may be reproduced in full in a proxy or information statement or similar disclosure document that is required to be filed under the federal securities laws in connection with a tender offer or otherwise and mailed to the Company's stockholders; <u>provided</u> that Greenhill has previously reviewed and approved the form and substance of all references to or descriptions of Greenhill or the Opinion in any such proxy or information statement or similar

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 12

disclosure document.  Greenhill will not fail to approve any such references and descriptions that are customary for transactions such as the Transaction. Greenhill shall have no responsibility for the form or content of any such disclosure document, other than the Opinion itself.

12. <u>Required Information.</u>

The Company acknowledges that Greenhill is required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with Greenhill (including, but not limited to, the Company's complete legal name, street address and taxpayer ID number or similar identification number) in accordance with the USA Patriot Act and FinCEN rules.

13. <u>Public Announcement</u>.

The Company agrees that Greenhill shall have the right, at its own expense, without the Company's consent, upon the earlier of (i) public announcement of Greenhill's retention and (ii) closing of a Transaction, to place announcements and advertisements or otherwise publicize a Transaction in such financial and other newspapers and journals as it may choose, stating that Greenhill acted as financial advisor to the Company in connection with such Transaction. The Company further agrees that Greenhill may utilize the Company's logo and other marks in any such public announcement and/or general marketing and promotional materials.

14. <u>Choice of Law; Jurisdiction</u>.

This Agreement shall be deemed to be made in New York.  This Agreement and all controversies arising from or relating to performance of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law.  The Company and Greenhill hereby irrevocably consent to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this Agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waive any objection to venue with respect thereto, and hereby agree that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under either chapter 11 of the Bankruptcy Code, or similar proceedings in other jurisdictions, during any such case, any such claims shall be heard and determined by any Bankruptcy Court having jurisdiction over the chapter 11 case or cases, or similar proceedings in other jurisdictions.

The Company and Greenhill hereby irrevocably consent to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at the address set forth above, such service to become effective ten (10) days after such mailing.

ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH GREENHILL'S ENGAGEMENT IS HEREBY WAIVED BY BOTH PARTIES.

15.   <u>Successors and Assigns</u>.

This Agreement shall be binding upon the parties hereto and their respective successors and assigns (including, in the case of the Company, any successor to all or a substantial portion of the assets and/or the businesses or operations of the Company under a Plan or a sale under §363 of the Bankruptcy Code).  Except as expressly provided herein, this Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the Indemnified Persons referenced in the Indemnification Provisions contained herein.

16.   <u>Chapter 11</u>.

In the event that the Company is or becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall use its commercially reasonable efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this Agreement and Greenhill's retention by the Company under the terms of this Agreement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Company shall supply Greenhill with a draft of such application and any proposed order authorizing Greenhill's retention sufficiently in advance of the filing of such application and proposed order to enable Greenhill and its counsel to review and comment thereon. Greenhill shall have no obligation to provide any services under this Agreement if Greenhill's retention under the material terms of this Agreement is not approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Greenhill in all respects.  Greenhill acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Greenhill's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders.  In the event that the Company becomes a debtor under the Bankruptcy Code and Greenhill's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Greenhill hereunder as promptly as practicable in accordance with the terms hereof

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 14

and the order approving the retention of Greenhill.  Subject to being so retained, Greenhill agrees that during the pendency of any Bankruptcy Case, it shall continue to perform its obligations under this Agreement and shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Greenhill in cash.

The Company shall use best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case provides for the full and prompt payment of Greenhill's fees and expenses contemplated hereby from any cash collateral and financing proceeds.  Greenhill's fees, documented out-of-pocket expenses and indemnification under this Agreement shall be entitled to payment priority as expenses of administration or as professional compensation to the fullest extent permitted by the Bankruptcy Code.

In agreeing to seek Greenhill's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Greenhill's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Greenhill's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Retainer Fee, Opinion Fee, Monthly Advisory Fee, the Restructuring Transaction Fee, the Financing Fee and the M&A Fee are reasonable, regardless of the number of hours expended by Greenhill's professionals in performance of the services provided hereunder.

17.    <u>Entire Agreement</u>.

Except as provided herein, this Agreement, including Schedule A hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

18.    <u>Authority</u>.

Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and the transactions contemplated hereby.  Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate or other action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 15

19.   <u>Counterparts</u>.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Agreement.

20.   <u>Additional Services.</u>

If at any time during the term of this Agreement the Company requests additional services not covered in this Agreement, the parties may agree on an additional engagement, the terms of which will be set forth in an amendment to this Agreement or a separate letter agreement containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions.  In any such additional engagement, Greenhill shall be paid fees to be mutually agreed upon in good faith by the Company and Greenhill at the appropriate time, which fees shall be customary for similarly situated investment banking firms in similar circumstances.

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Page 16

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between the parties hereto.

Very truly yours,

GREENHILL & CO., LLC

By: _____
    Stephen A. Cruise
    Global Co-Head of Industrial Corporate
    Advisory

By: _____
    Eric Mendelsohn
    Co-Head of North American Financing Advisory
    & Restructuring

Accepted and Agreed to:

WILLIAMS INDUSTRIAL SERVICES GROUP INC.

By: _____
    Tracy Pagliara
    President, CEO & Director

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Schedule

# SCHEDULE A

# INDEMNIFICATION

The Company shall indemnify and hold harmless Greenhill, its affiliates and their respective officers, directors, members, partners, employees, agents, representatives and each other entity or person, if any, controlling Greenhill or any of its affiliates (collectively, the "Indemnified Parties") from and against any losses, claims, damages, demands and liabilities (collectively, "Liabilities") (or actions or proceedings in respect thereof), to which any of the Indemnified Parties may become subject related to or arising in any manner out of any activities performed or services furnished pursuant to the attached letter agreement, any matter contemplated thereby or an Indemnified Party's role in connection therewith, including prior to the date hereof (the "Indemnified Activities"), except to the extent a court of competent jurisdiction shall have determined by final nonappealable judgment that such Liabilities resulted directly from the gross negligence or willful misconduct of Greenhill in performing the services that are the subject of the attached letter agreement. In addition, the Company shall promptly reimburse the Indemnified Parties for all costs and expenses (including, without limitation, fees, costs and expenses of legal counsel), as incurred, in connection with (i) the investigation of, preparation for, responding to, serving as a witness in respect of, or defending, pursuing, settling or otherwise becoming involved in, any pending or threatened investigative, administrative, judicial, or regulatory or other claim, action or proceeding or any arbitration or investigation in any jurisdiction related to or arising in any manner out of any Indemnified Activities, whether or not in connection with pending or threatened litigation to which Greenhill (or any other Indemnified Party) or the Company or any of its securityholders is, or is threatened to be, a party (collectively, "Proceedings") and (ii) enforcing any Indemnified Party's right under the attached letter agreement (including this Schedule A).

Greenhill shall notify the Company after it becomes aware that a Proceeding has been commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against an Indemnified Party in respect of which indemnity may be sought hereunder. In any event, failure to notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent the Company shall not otherwise have been aware of such Proceeding and the Company shall have been materially prejudiced with respect to the Proceeding by such failure. The Company shall not be liable for any settlement of any Proceeding effected by an Indemnified Party without the Company's written consent, which consent shall not be unreasonably withheld, but if settled in accordance herewith or if there is a judgment against an Indemnified Party, the Company agrees to indemnify the Indemnified Party from and against any Liability by reason of such settlement or judgment. Neither the Company nor any member of the Company's board of directors shall (a) settle, compromise, consent to the entry of a judgment in or otherwise seek to terminate any pending or threatened Proceeding in respect of which indemnity may be sought hereunder, whether or not any Indemnified Party is an actual or potential party to such Proceeding, or (b) participate in or facilitate any such settlement, compromise, consent or termination, including on behalf of the Company's board of directors (or a committee thereof), in each case without Greenhill's prior written consent, unless such

settlement, compromise, consent or termination includes an unconditional release of each Indemnified Party from all actual or potential Liabilities relating to the Indemnified Activities (such release to be set forth in an instrument signed by all parties to such settlement, compromise, consent or termination) and does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of any Indemnified Party.

The Company agrees that if any indemnification or reimbursement sought pursuant to this Schedule A were for any reason not to be available to any Indemnified Party (other than for reasons arising from Greenhill's gross negligence or willful misconduct), or insufficient to hold it harmless as and to the extent contemplated by this Schedule A, then the Company shall contribute to the amount paid or payable by such Indemnified Party in respect of Liabilities and expenses in such proportion as is appropriate to reflect the relative benefits to the Company and its affiliates, their respective securityholders and creditors on the one hand, and such Indemnified Party on the other, in connection with the transactions contemplated by the attached letter agreement (whether or not consummated) or, if such allocation is not permitted by applicable law as determined by a court of competent jurisdiction by final nonappealable judgment, in such proportion as is appropriate to reflect not only the relative benefits but also the relative fault of the Company (and its affiliates, and their respective directors, employees, agents and other advisors) on the one hand and such Indemnified Party on the other hand, as well as any other equitable considerations.  It is hereby agreed that the relative benefits to the Company and its affiliates and their respective securityholders and creditors and to the Indemnified Party with respect to transactions contemplated by the attached letter agreement shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company and its affiliates and their respective securityholders and creditors pursuant to transactions contemplated by the attached letter agreement (whether or not consummated) bears to (ii) the fees paid to Greenhill under the attached letter agreement (excluding amounts received by Greenhill as reimbursement of expenses and amounts paid under this Schedule A).  The relative fault of the Company and the Indemnified Party shall be determined by reference to, among other things, whether the statements, actions or omissions to act or any other alleged conduct were by the Company (or its affiliates or their respective directors, employees, agents or other advisors) or the Indemnified Party and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action or omission to act.  In no event shall the Indemnified Parties be required to contribute or otherwise be liable for an amount in excess of the aggregate amount of fees actually received by Greenhill pursuant to the attached letter agreement (excluding amounts received by Greenhill as reimbursement of expenses and amounts paid under this Schedule A).

The Company further agrees that no Indemnified Party shall have any Liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with Greenhill's engagement hereunder or the transactions contemplated by the attached letter agreement except to the extent a court of competent jurisdiction shall have determined by final nonappealable judgment that any Liability resulted directly from the gross negligence or willful misconduct of Greenhill in performing the services that are the subject of the attached letter agreement.  The indemnity, reimbursement and contribution obligations of

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Schedule

the Company shall be in addition to any liability which the Company may otherwise have to an Indemnified Party, shall not be limited by any rights that an Indemnified Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party.

The indemnity, reimbursement and contribution provisions set forth herein shall remain operative and in full force and effect regardless of (i) any withdrawal, termination or consummation of or failure to initiate or consummate any transaction contemplated by the attached letter agreement, (ii) any investigation made by or on behalf of any party hereto or any person controlling (within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) any party hereto, (iii) any amendment or other modification or termination of the attached letter agreement or the completion of Greenhill's engagement and (iv) whether or not Greenhill shall, or shall not be called upon to, render any formal or informal advice in the course of such engagement.

WILLIAMS INDUSTRIAL SERVICES GROUP INC.
As of December 21, 2022
Schedule

## SCHEDULE B

## M&A FEE

For the purpose of calculating a M&A Fee, "Transaction Value" shall equal the aggregate value of (A) the total value of all proceeds and other consideration to be paid or received, directly or indirectly, in connection with a Transaction, including, without limitation: (i) cash; (ii) notes, securities and other property; (iii) payments made in installment; (iv) amounts paid or payable under agreements not to compete or similar agreements; (v) amounts paid under contractual arrangements (including lease arrangements, management fees, put or call agreements); (vi) contingent payments (whether or not related to future earnings or operations); and (vii) amounts held in escrow; plus (B) the aggregate principal amount of all indebtedness and other liabilities (including, without limitation, capitalized leases, pension liabilities and preferred stock obligations) outstanding immediately prior to consummation of a Transaction or otherwise, directly or indirectly, assumed, refinanced, defeased, extinguished or consolidated (including any premiums paid or defeasance costs) in connection with such Transaction.  For purposes of computing any fees payable to Greenhill hereunder, (x) shares issuable upon exercise of options, warrants or other rights of conversion shall be deemed outstanding, (y) contingent and installment payments shall be valued based upon the estimated net present value thereof using an appropriate discount rate as determined in good faith by Greenhill and the Company, (z) non-cash consideration shall be valued as follows: (A) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for five trading days ending five trading days prior to the closing of the Transaction and (B) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Greenhill on the day prior to the consummation of the Transaction; provided that, if such parties are unable to agree on a fair market value for such non-cash consideration, then the parties shall submit such issue to a panel of three arbitrators located in New York, New York (with one arbitrator being chosen by each party and the third being chosen jointly by the parties) for determination, which determination shall be binding upon each of the Company and Greenhill.

Transaction Value also shall include, without duplication, (i) the aggregate amount of any dividends or other distributions declared after the date hereof (other than normal recurring cash dividends), (ii) any amounts paid to repurchase any securities (other than repurchases pursuant to and consistent with currently existing stock repurchase programs) and (iii) in the case of a sale of assets, the net value of any working capital (other than cash) not acquired in such Transaction.

In connection with a sale, transfer or other disposition of 50% or more of the outstanding common stock of the acquired company, Transaction Value will be calculated as if 100% of the outstanding common stock on a fully diluted basis had been acquired at the same per share amount paid in such Transaction.