## **Exhibit A**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2024.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.    Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



**5.  Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.  Disposition of Data.**

6.1  Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2  Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7.  Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

**8. <u>Limitation of Liability</u>**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



### 9.   Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

### 11.  General

11.1   No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2   This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3   This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4   The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5   Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6   In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

If to Epiq:

    Epiq Corporate Restructuring, LLC
    777 Third Avenue, 12th Floor
    New York, New York 10017
    Attn:  Brad Tuttle

If to Client:

    Williams Industrial Services Group Inc.
    200 Ashford Center North, Suite 425
    Atlanta, Georgia 30338
    Attn:  Randall R. Lay

With a copy to:

    Thompson Hine LLP
    3900 Key Center
    127 Public Square
    Cleveland, Ohio 44114-1291
    Attn: Alan Lepene

11.11 Invoices sent to Client should be delivered to the following address:

    Williams Industrial Services Group Inc.
    200 Ashford Center North, Suite 425
    Atlanta, Georgia 30338
    Attn:  Randall R. Lay

Email:    rlay@wisgrp.com

11.12   The "Effective Date" of this Agreement is July 10, 2023.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:   General Manager


**WILLIAMS INDUSTRIAL SERVICES GROUP INC.**

By:_____
Name: Randall R. Lay
Title:   Chief Financial Officer



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➤ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➤ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➤ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➤ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➤ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

**<u>NOTICING</u>**

➤ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➤ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➤ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## **BALLOTING/TABULATION**

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

➢ Undertake such other duties as may be requested by the Client.

## **CALL CENTER**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



**<u>MISCELLANEOUS</u>**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



## PRICING SCHEDULE

### CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
| --- | --- |
| IT / Programming | $45.00 – $70.00 |
| Project Managers/Consultants/ Directors | $55.00 – $170.00 |
| Solicitation Consultant | $170.00 |
| Executive Vice President, Solicitation | $175.00 |
| Executives | No Charge |

### CLAIMS AND NOTICING RATES[1]

| | |
| --- | --- |
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

### DATA MANAGEMENT RATES

| | |
| --- | --- |
| Creditor/Data Records, Maintenance & Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Case Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | $5 per CD |

### ON-LINE CLAIM FILING SERVICES

| | |
| --- | --- |
| On-Line Claim Filing | NO CHARGE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors



## CALL CENTER RATES

Standard Call Center Setup                    NO CHARGE

Call Center Operator                          $55 per hour

Voice Recorded Message                        $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                          Quoted at time of request

Strategic Communication Services              Quoted at time of request

Escrow Services                               Quoted at time of request /competitive rates

Securities Exchange / ATOP Event              Quoted at time of request

eDiscovery                                    Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace                Quoted at time of request

Disbursements -- Check and/or Form 1099       Quoted at time of request

Disbursements -- Record to Transfer Agent     Quoted at time of request

**<u>Exhibit B</u>**

**Mailloux Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 (BLS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF KATE MAILLOUX
IN SUPPORT OF DEBTORS' APPLICATION FOR
AUTHORITY TO APPOINT EPIQ CORPORATE RESTRUCTURING, LLC
AS ADMINISTRATIVE ADVISOR EFFECTIVE AS OF PETITION DATE**

I, Kate Mailloux, under penalty of perjury, declare as follows:

1.  I am a Senior Director of Epiq Corporate Restructuring, LLC ("**Epiq**"). The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.  This Declaration is made in support of the Debtor's application (the "**Application**") for an order appointing Epiq Corporate Restructuring, LLC ("**Epiq**") as administrative advisor ("**Administrative Advisor**") in the Debtors' chapter 11 case, effective as of the date of commencement of the Debtors' chapter 11 case in accordance with the terms and conditions set forth in that certain Standard Services Agreement dated as of July 10, 2023, the "**Engagement Agreement**"), attached to the Application as **Exhibit A**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Epiq and are based on information provided by them.

3.      Epiq is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has substantial experience in matters of this size and complexity, and has acted as the official administrative advisor in many large bankruptcy cases pending in this District and other districts nationwide.  *See, e.g.*, *In re Armstrong Flooring, Inc.,* 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); *In re Gulf Coast Health Care, LLC,* Case No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC,* Case No. 21-10474; *In re RTI Holding Company, LLC*, Case No. 20- Case 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports International LLC*, Case No. 20-12168, (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC*, Case No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020); *In re Tonopah Solar Energy, LLC*, Case No. 20-11884 (KBO) (Bankr. D. Del. July 31, 2020); *In re Lucky Brand Dungarees, LLC*, Case No. 20-11768 (CSS) (Bankr. D. Del. July 6, 2020); *In re Southland Royalty Company LLC*, Case No. 20-10158 (KBO) (Bankr. D. Del. Jan. 29, 2020); *In re RUI Holding Corp.,* Case No. 19-11509, (JTD) (Bankr. D. Del. Jul. 7, 2019); *In re THG Holdings LLC,* Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re HDR Holding, Inc.,* Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.,* Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.,* Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (MFW) (Bankr. D. Del. Apr. 18, 2018).

4.      As Administrative Advisor, Epiq will perform the bankruptcy administration services specified in the Application and the Engagement Agreement.   In performing such services, Epiq will charge the Debtors the rates set forth in the Engagement Agreement.

5.      Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Epiq and its professional personnel:

(a)     are not creditors, equity security holders, or insiders of the Debtors;

(b)     are not and were not, within two (2) years before the date of the filing of this case, directors, officers, or employees of the Debtors; and

(c)     do not have an interest materially adverse to the interest of the Debtors' estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.      If Epiq's proposed retention is approved by the Court, Epiq will not accept any engagement or perform any service for any entity or person related to the chapter 11 cases, other than the Debtors, without the prior approval of the Court. Epiq may, however, provide professional services to entities or persons that may be creditors or parties in interest in the chapter 11 cases, which services do not relate to, or have any direct connection with, the chapter 11 cases or the Debtors.

7.      Epiq represents that:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Administrative Advisor;

(b)     by accepting employment in the chapter 11 cases, Epiq waives any right to receive compensation from the United States government in its capacity as the Administrative Advisor;

(c)     in its capacity as the Administrative Advisor, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)     Epiq will not employ any past or present employees of the Debtors in connection with its work as the Administrative Advisor in the chapter 11 cases.

8.      In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest

(the "**Potential Parties in Interest**") in the chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, the Debtors' non-Debtor affiliates, current and former directors and officers of the Debtors, the Debtors' secured creditors and other lenders, the Debtors' 30 largest unsecured creditors on a consolidated basis and other parties in interest in the chapter 11 cases.  The results of the conflict check were compiled and reviewed by Epiq professionals under my supervision.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties-in-Interest were current or former clients of Epiq, these parties have been identified on a list annexed hereto as Schedule 1 (the "**Client Match List**"). At this time, and as set forth in further detail herein, Epiq is not aware of any connection that would present a disqualifying conflict of interest.  Epiq currently serves, or in the past may have served, in a neutral capacity as claims, noticing, balloting and/or solicitation agent for these parties or related parties.  However, given Epiq's neutral position as claims and noticing agent or administrative advisor in its cases, the chapter 11 cases, or any other cases, Epiq does not view such relationship as a real or potential conflict.  Accordingly, to the best of my knowledge, Epiq and each of its employees are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14), and neither Epiq nor any of its employees hold or represent an interest adverse to the Debtors' estates related to any matter for which Epiq will be employed.

9.    To the best of my knowledge, neither Epiq nor any of its personnel have any relationship with the Debtors that would impair Epiq's ability to serve as Administrative Advisor.  I am not related or connected to, and, to the best of my knowledge, no other employees of Epiq are related or connected to any United States Bankruptcy Judge or District Judge for the District of Delaware or the United States Trustee for the District of Delaware or to any employee in the offices thereof.  Epiq may have relationships with certain of the Debtors' creditors as vendors

or in connection with cases in which Epiq serves or has served in a neutral capacity as administrative advisor for another chapter 11 debtor. To the best of my knowledge, such relationships are completely unrelated to the Chapter 11 cases. Epiq's personnel may have relationships with some of the Debtors' creditors or other parties-in-interest. To the best of my knowledge, however, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to the Chapter 11 cases. Epiq has and will continue to represent clients in matters unrelated to the Chapter 11 cases. In addition, Epiq has had, and will continue to have, relationships in the ordinary course of its business with certain vendors, professionals, and other parties-in-interest that may be involved in the chapter 11 cases in matters unrelated to the chapter 11 cases.

10.     Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

11.     Epiq Systems, Inc., is a wholly owned subsidiary of Document Technologies, LLC ("**DTI**"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("**DTI Topco**"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("**OAC**"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("**OPE**", which

together with OAC are referred to as "**OMERS**"), and funds managed by Harvest Partners, LP, ("**Harvest**") a leading private equity investment firm.

12.     Neither DTI, DTI Topco, OMERS nor Harvest, are currently identified on the Potential Parties in Interest list.  However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

13.     Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("**Parent Board Designees**").  No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI.  Further, Epiq has the following restrictions in place (collectively, the "**Barrier**"):  (i)  prior to the Debtors commencing the chapter 11 cases, Epiq did not share the names or any other  information identifying the Debtors with DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not  and will not furnish any material nonpublic information about the Debtors to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees,  work on Epiq client matters or have access to Epiq client information, client files,   or client personnel; (iv) no  DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's  offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with  OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than   the Parent Board Designees).

14.     Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtors and the Potential Parties in Interest list provided by the Debtors. Based solely

on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtors and the potential parties in interest.

15.     In addition, after the Petition Date, Epiq requested that both OMERS and Harvest search the names of the Debtors against OMERS' and Harvest's respective private equity investments. Based solely on the foregoing searches, Epiq has determined, to the best of its knowledge, that there are no connections.  To the extent Epiq learns of any connections involving such entities and/or such investments with the Debtors, Epiq will promptly file a supplemental disclosure.

16.     Based on, among other things, the business separation between Epiq, DTI, DTI Topco, OMERS and Harvest, and in light of the administrative nature of the services proposed to be performed by Epiq for the Debtors, Epiq believes that it does not hold or represent an interest adverse to the Debtors.

17.     To the extent that Epiq discovers any connection with any interested party or enters into any new relationship with any interested party, Epiq will promptly supplement its disclosure to the Court.

18.     Subject to the Court's approval, the Debtors have agreed to compensate Epiq for professional services rendered pursuant to section 327(a) of the Bankruptcy Code in connection with the chapter 11 cases according to the terms and conditions of the Engagement Agreement. As referenced in the Application and the Engagement Agreement, the Debtors and Epiq have agreed to a pricing schedule, which is attached to the Engagement Agreement.  Payments are to

be based upon the submission of Epiq's relevant applications in accordance with the U.S. Trustee Guidelines.

19.     The Debtors provided Epiq a retainer in the amount of $25,000.  Epiq seeks to hold the retainer as security for payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Engagement Agreement.

20.     The services provided by Epiq will be administrative in nature, and Epiq will not provide services in the nature of legal representation and/or advice to the Debtors.

21.     Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

*[space intentionally left blank]*

Dated: August 9, 2023
     New York, New York

                                    */s/ Kate Mailloux*
                                    Kate Mailloux
                                    Senior Director
                                    Epiq Corporate Restructuring, LLC

## SCHEDULE 1

### Potential Parties in Interest

**Debtors**
Williams Industrial Services Group, Inc.
Williams Industrial Services Group, LLC
Williams Plant Services, LLC
Williams Specialty Services, LLC
Williams Industrial Services, LLC
WISG Electrical, LLC
Construction & Management Professionals, LLC
Williams Global Services, Inc.
Steam Enterprises, LLC
GPEG LLC
Global Power Professional Services, Inc.
WISG Canada Ltd.
WISG Nuclear Ltd.
WISG Electrical Ltd.

**Related Non-Debtor Entities**
Braden Holdings, LLC
Braden Manufacturing SA de CV

**Current and Former Directors and Officers**
Tracy D. Pagliara
Gary C. Volo

**Significant Bondholders / Equityholders**
Hanover Insurance Company

**Secured Lenders**
PNC Bank, National Association
EICF Agent LLC
Energy Impact Credit Fund I LP
Wynnefield Partnrs Small Cap Value, LP I
Wynnefield Partners Small Cap Value, LP

**Adverse Litigation Parties**
Bobby Thompson & Paul Blake
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
Fabiani, Cohen & Hall, LLG
FordHarrison
Lewis Brisbois
Mauro Lilling Naparty LLP
Michael G. Conway, Esq.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Ramey Chandler Law Firm
Thompson Coe

**Significant Creditors/Vendors/Contract Counterparties**
18-27A 42nd Street Astoria LLC
Aries Building Systems
Augusta Industrial Services
Baumert SAS
Bay Crane Service INC
Cigna Healthcare ACCT # 630873
CMF
Dept Of Labor And Industries
Fastenal Company
Flexential Corp
Gexpro
Granite Telecommunications LLC
HDS White Cap Const Supply
Herc Rentals
Hudson Elevator Group
Johnson Contractors, Inc.
KBH Solutions LLC
KMC Construction Inc
Magid Glove & Safety Mfg Co
Magic Glove & Safety Mfg Co
Martin Marietta Materials
Penta Technologies, LLC
Plant Machine & Welding Inc.
Retubeco
Sunbelt Rentals
Thompson Building Wrecking Co
Thompson Hine
United Rentals-Payment Center
WA State Department of Revenue
Welding Works, Inc.

**Banks**
PNC
Bank Direct Capital Finance
Texas Capital Bank
TD Bank

**Insurers/Brokers**
First Insurance Funding
Starr Indemnity & Liability Company
Western Surety Company

XL Specialty Insurance Company
Liberty Mutual Insurance Company
Berkshire Hathaway Specialty Insurance Co.
Arch Insurance Co.
Harco National Insurance Co.
Lexon Insurance Co.
Nationwide Mutual Insurance Co.
Simkiss & Block
Alera Group Agency, LLC

**Utilities**
Jacksonville Electric Authority (JEA) -- Florida
St. Johns County, Florida
Bridgestone Municipal Utility District
Clay County Utility Authority (Texas)
Green Cove Springs, Florida
Frontier Communications
Comcast
Lane Land Development LLC
ADT Security Services
Verizon Wireless
WOW! Internet Cable And Phone
Granite Telecommunications LLC

**Taxing Authorities**
Alabama Department of Revenue
Alaska Department of Revenue
Arizona Department of Revenue
Arizona Unclaimed Property
Arkansas Auditor of State's Office
Arkansas Secretary of States
Canada Revenue Agency
Chillicothe City Income Tax Department
City of Dothan
City of Dunwoody
Colorado Department of Revenue
Commonwealth of Pennsylvania State Treasury Department
Comptroller of Maryland
DC Government Unclaimed Property Unit
Delaware Department of Finance
Delaware Division of Revenue
Department of Finance and Administration
Department of Revenue
Department of Revenue Services
Department of State
Department of Taxation

Department of the Treasury
Duval County Property Appraiser's Office
Florida Department of Financial Services
Florida Department of Revenue
Franchise Tax Board
Georgia Department of Revenue
Idaho State Tax Commission
Illinois Department of Revenue
IN Department of Revenue
Iowa Department of Revenue
Kentucky Department of Revenue
Kentucky State Treasurer
Louisiana Department of Revenue
Louisiana Department of Treasury
Maine Revenue Services
Massachusetts Department of Revneue
Michigan Department of Treasury
Minnesota Department of Commerce
Minnesota Department of Revenue
Missouri Department of Revenue
Montana Department of Revenue
MS Claiborne County Tax Assessor
Nebraska Department of Revenue
New Hampshire Department of Revenue Administration
New Mexico Taxation and Revenue Department
New York State Department of Taxation and Finance
New York State Office of the State Comptroller
North Carolina Department of Revenue
North Carolina Department of State Treasurer
NYC Department of Finance
Office of State Tax Commissioner
Ohio Department of Taxation
Ohio Division of Unclaimed Funds
Oklahoma Tax Commission
Ontario Ministry of Finance
Oregon Department of Revenue
PA Department of Revenue
SC State Treasurer's Office
Shelby County Assessor of Property
State of Alabama Office of The State Treasurer
State of New Hampshire Treasury
State of West Virginia Treasurer's Office
State Treasures Office
Tennessee Department of Revenue
Tennessee Department of Treasury
Texas Comptroller of Public Accounts

The Workplace Safety and Insurance Board Ontario
Town of West Point Treasurer
Treasurer of Virginia
Treasurer State of Connecticut
Utah State Tax Commission
Vermont Department of Taxes
Washington State Department of Revenue
West Virginia State Tax Department
Wisconsin Department of Revenue

**Debtor's Professionals (including**
**Ordinary Course Professionals)**
Epiq Global
Thompson Hine LLP
G2 Capital Advisors
Greenhill & Co., LLC
Chipman Brown Cicero & Cole, LLP

**Bankruptcy Judges (District of Delaware)**
Chief Judge Laurie Selber Silverstein
Judge John T. Dorsey
Judge Craig T. Goldblatt
Judge Thomas M. Horan
Judge Karen B. Owens
Judge Brendan L. Shannon
Judge J. Kate Stickles
Judge Mary F. Walrath
Judge Ashley M. Chan

**Staff of Office of the United States Trustee, Region 3**
Lauren Attix
Linda Casey
Denis Cooke
Joseph Cudia
Holly Dice
Shakima L. Dortch
Timothy J. Fox, Jr.
Diane Giordano
Christine Green
Benjamin Hackman
Ramona Harris
Nyanquoi Jones
Jane Leamy
Hannah M. McCollum
Joseph McMahon
Angelique Okita

James R. O'Malley
Michael Panacio
Linda Richenderfer
Juliet Sarkessian
Richard Schepacarter
Edith A. Serrano
Rosa Sierra-Fox
Dion Wynn

**<u>Regulatory and Government</u>**
Internal Revenue Service
U.S. Nuclear Regulatory Commission

6

**Exhibit C**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 (BLS) |
| | (Jointly Administered) |
| Debtors. | |

### ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC AS ADMINISTRATIVE ADVISOR EFFECIVE AS OF PETITION DATE

Upon the application (the "**Application**")[2] of Williams Industrial Services Group Inc., *et al.*, as debtors and debtors in possession in the above-captioned chapter 11 case (the "**Debtors**"), pursuant to section 327 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), requesting entry of an order appointing Epiq Corporate Restructuring, LLC ("**Epiq**") as administrative advisor ("**Administrative Advisor**") in the Debtors' chapter 11 case, effective as of the Petition Date, in accordance with the Engagement Agreement attached to the Application as **Exhibit A** (the "**Engagement Agreement**"), all as more fully described in the Application; and upon the Mailloux

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

Declaration submitted in support of the Application; and this Court being satisfied that Epiq has the capability and experience to provide the services described in the Application and that Epiq does not hold or represent an interest adverse to the Debtors or the estate related to any matter for which Epiq will be employed; and this Court having jurisdiction to consider the Application and the relief requested therein in pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Application is granted to the extent set forth herein.

2.      Debtors are authorized to retain Epiq as Administrative Advisor under § 327(a) of the Bankruptcy Code effective as of the Petition Date under the terms of the Engagement Agreement as modified herein, and Epiq is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement.

3.      Epiq is authorized to take such other action to comply with all duties set forth in the Application.

4.      Epiq shall apply to this Court for allowance of its compensation and reimbursement of expenses incurred after the Petition Date in accordance with § § 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.

5.      Epiq may hold its retainer for services authorized pursuant to the Section 156(c) Application and Order, during the Chapter 11 Cases as security of payment of Epiq's final invoice for services rendered and expenses incurred under both the order authorizing the Section 156(c) services [D.I. 73] and this Order.

6.      The Debtors shall indemnify Epiq and each other Indemnified Person, as that term is defined in the Engagement Agreement (collectively, the "**Indemnified Persons**"), under the terms of the Engagement Agreement, as modified pursuant to this Order.

7.      The Indemnified Persons shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by this Court.

8.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify the Indemnified Persons, or provide contribution or reimbursement to the Indemnified Persons, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from an Indemnified Person's gross negligence, willful misconduct or fraud; (b) for a contractual dispute in which the Debtors allege the breach of an Indemnified Person's contractual obligations if this Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to applicable law; or (c) settled before a judicial determination under (a) or (b), but determined by this Court,

after notice and a hearing, to be a claim or expense for which an Indemnified Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

9.      Notwithstanding anything to the contrary in the Engagement Agreement, for services rendered pursuant to this Order, the limitation of liability contained in paragraph 8 shall have no force or effect during the chapter 11 cases.

10.      If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing this chapter 11 case, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, the Indemnified Person or Epiq must file an application therefor in this Court, and the Debtors may not pay any such amounts to such Indemnified Person before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution or reimbursement.

11.      The Debtors and Epiq are authorized to take all action necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.    Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order and the Epiq engagement.

13.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

14.    In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.