**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ○

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WILLIAMS INDUSTRIAL SERVICES | : | Case No. 23-10961 (BLS) |
| GROUP INC., *et al.*,[1] | : | Jointly Administered |
| Debtors. | : | Re: D.I. 33 |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - : 

**Hearing Date: August 17, 2023, at 3:30 p.m.**
**Obj. Deadline for UST: August 14, 2023, at**
**5:00 p.m.**

**OBJECTION OF THE UNITED STATES TRUSTEE**
**TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING**
**PROCEDURES FOR THE SALE OF ASSETS, (II) SCHEDULING HEARINGS AND**
**OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' AUTHORITY TO**
**SELL, (III) SCHEDULING BID DEADLINES AND AN AUCTION, (IV) APPROVING**
**THE FORM AND MANNER OF NOTICE THEREOF, (V) APPROVING CONTRACT**
**ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED**
**RELIEF**

Andrew R. Vara, United States Trustee for Region 3 & Region 9 (the "U.S.

Trustee"), through his undersigned counsel, objects on a limited basis to the this *Motion for Entry*

*of an Order (i) Approving Bidding Procedures for the Sale of Assets, (ii) Scheduling Hearings*

*and Objection Deadlines with Respect to the Debtors' Authority to Sell, (iii) Scheduling Bid*

*Deadlines and an Auction, (iv) Approving the Form and Manner of Notice Thereof,  (v) Approving*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

*Contract Assumption and Assignment Procedures, and (vi) Granting Related Relief* (D.I. 33) (the

"Motion"), and in support of his objection respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Motion seeks approval of the sale of substantially all of the Debtors'

assets to a stalking horse bidder, Energy Solutions, Inc. ("Energy Solutions").

2.      The U.S. Trustee objects to those portions of the Motion, the APA, and the

Bid Procedures that propose to pay Energy Solutions Bid Protections[2] based on various

Termination Events: (a) Debtors' breach of representations, warranties, or covenants, (b) the

Debtors' cases being dismissed, converted to chapter 7, or an examiner appointed, (c) failure to

enter an unstayed Sale Order within 40 days after entry of the Bidding Procedures Order, (d)

Debtors' determination that proceeding with the Transactions or failing to terminate the

Agreement would be inconsistent with its fiduciary obligations, and (e) if a competing transaction

is entered into within 12 months following termination.

3.      The Asset Purchase Agreement attached to the Motion ("APA") proposes

payment of Bid Protections due as a result of a Termination Event within 2 business days of that

event, or within 1 business day if a competing transaction is entered into within 12 months

following termination, without further court order.  Bid Protections should be payable only after

an alternative transaction has closed and application is made to the Court, with parties in interest

having at least 10 days to review. Bid Protections are supposed to compensate a party for

expending the time and energy necessary to perform the due diligence necessary to submit a bid;

they are not liquidated damages for breach of contract.

---

[2] Capitalized terms not otherwise defined, have the meaning assigned to them in the Motion, APA, Bid Procedures, or Transition Services Agreement.

4.    The U.S. Trustee also objects to approval of the APA to the extent Energy Solutions is not obligated to be a Back-Up Bidder. If there is only one competing bidder who wins the auction but fails to close, the Debtors could be left without a purchaser for its assets but are still responsible to pay the Bid Protections to Energy Solutions. The Motion and Bid Procedures propose a requirement that any other bidder must serve as a Back-Up Bidder.

5.    The proposed timeline is aggressively short and does not provide sufficient notice to the Debtors' creditors or to potential bidders not already involved with the process. The Debtors propose only 19 days between the hearing on Bid Procedures and the Sale Hearing, inclusive of the Labor Day holiday weekend. The Motion provides that notice be served "no later than 3 business days after entry of the Bidding Procedures Order." With the Bidding Procedures hearing scheduled on August 17, 2023, that means that notice will go out no later than Tuesday, August 22, 2023, potentially leaving only 9 days for parties to: receive notice by regular mail, perform due diligence, and decide whether to submit a bid, and only 12 days until the Sale Objection deadline (on the Sunday before Labor Day).

6.    Further, to the extent not resolved consensually before the hearing, the U.S. Trustee also objects to provisions in the Bidding Procedures and the Transition Services Agreement that: (a) allow for less than 10 days for review of an Additional Stalking Horse Bidder Application (section 13 of Bid Procedures), (b) require a demonstration of financial wherewithal merely for access to the Data Room (section 16(b) of Bid Procedures), (c) do not clearly state the process necessary for a creditor to attend the auction, as required by local rule (section 42 of Bid Procedures), (d) provide for counterparties to an Assumed Contract to seek additional amounts on account of any defaults occurring between service of the Cure Notice and the assumption of the contract (paragraph 24 of the Bid Procedures Order), (e) do not include the U.S. Trustee as a notice

3

party if a prospective bidder is denied access to the data room (section 17 of Bid Procedures), and (f) provide Energy Solutions a superpriority administrative claim for transition services fees, costs, and expenses (section 4(a) of the Transition Services Agreement).

## JURISDICTION & STANDING

7.     Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

8.     Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

9.     The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

10.     On July 22, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

11.     On that same day, July 22, 2023, the Debtors filed the Motion.

12.     Also on July 22, 2023, the Debtors entered into the APA with Energy Solutions.

13.     The Statements and Schedules have not yet been filed.

**The APA**

   14.  Section 6.13 states that Energy Solutions is not obligated to be the Back-Up

Bidder:

> Section 6.13 No Back Up Bidder Obligation. The Bidding Procedures shall exclude the Buyer from any obligation to act as a Back-Up Bidder following the Auction (if any is conducted) in the event that the Buyer is not selected as the Successful Bidder.

   15.  Section 8.01 provides for the payment of Bid Protections:

Section 8.01 Approval of Break-Up Fee and Buyer Expense Reimbursement. Sellers acknowledge that (i) Buyer has expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of Sellers, (ii) Sellers' agreement to pay the Break-Up Fee and Buyer Expense Reimbursement on the terms set forth herein are an integral part of the Transactions and are a necessary inducement for the Buyer to enter into this Agreement, and (iii) Buyer's efforts have substantially benefited Sellers and will benefit Sellers and will benefit the bankruptcy estates of Sellers through the submission of the offer reflected in this Agreement which will, among other things, serve as a minimum bid on which other potentially interested bidders can rely. In consideration thereof, Sellers, jointly and severally, shall pay to Buyer, in accordance with the terms hereof, and the Bidding Procedures Order and subject to approval by the Bankruptcy Court, (i) a break-up fee (the "**Break-Up Fee**") in an amount equal to $2,400,000, representing four percent (4%) of the Base Purchase Price and (ii) the Buyer Expense Reimbursement. The Break-Up Fee and Buyer Expense Reimbursement shall only be payable following the termination of this Agreement pursuant to Sections 11.01(c), 11.01(d), 11.01(f), 11.01(g), and 11.01(h). In the event this Agreement is validly terminated pursuant to Sections 11.01(c) or 11.01(h), the Break-Up Fee and Buyer Expense Reimbursement shall be due and payable to Buyer within two (2) Business Days following the date of termination. In the event this Agreement is validly terminated pursuant to Sections 11.01(d), 11.01(f) or 11.01(g) and a Competing Transaction is consummated or entered into on or prior to the date which is twelve (12) months following such termination of this Agreement, the Break-Up Fee and Buyer Expense Reimbursement shall be due and payable to Buyer within one (1) Business Day following consummation of the Competing Transaction. If payable hereunder, the Break-Up Fee shall be paid to an account designed by Buyer by wire transfer of immediately available funds. If Sellers fail to pay the Break-Up Fee or Buyer Expense Reimbursement within the time period specified herein, Sellers shall pay the costs and expenses (including reasonable legal fees and expenses) incurred by Buyer in connection with any Action taken to collect payment of such amounts. The Break-Up Fee and Buyer Expense Reimbursement shall, subject to Bankruptcy

Court approval, constitute an administrative expense against each Seller and its respective estate in the Bankruptcy Cases under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

16. Section 11.01 provides for Events of Termination (in pertinent part):

(c) by Buyer, if Sellers shall have breached any representation or warranty or failed to comply with or perform any covenant or agreement applicable to Sellers that would cause any Closing Condition set forth in Section 10.02(a) not to be satisfied, and (i) such breach is not waived by Buyer or (ii) if such breach has not been waived by Buyer but is curable and is not cured by Sellers prior to the earlier to occur of (A) ten (10) Business Days after receipt by Sellers of Buyer's notice of such breach and (B) the Outside Date; provided, however, that Buyer is not then in material breach of this Agreement, which breach, either individually or in the aggregate with other breaches by Buyer, would result in, if occurring or continuing on the Closing Date, the failure of any of the Closing Conditions set forth in Section 10.01;

(d) by either Sellers or Buyer, if the Closing shall not have occurred by the date that is 57 days after the Petition Date (provided that such date may be extended by (x) the Sellers with the written consent of the Agents for an additional period not to extend beyond 120 days from the date of this Agreement or (y) Buyer and Parent to such other subsequent date as may be mutually agreed by Buyer and Parent in writing) (the "**Outside Date**"); provided, that the right to terminate this Agreement pursuant to this Section 11.01(d) shall not be available to any Party whose failure to perform any of its obligations under this Agreement has been the primary cause of the Closing to have not occurred by the Outside Date;

(f) by either Sellers or Buyer, if (i) any Seller enters into a definitive agreement with respect to a Competing Transaction, (ii) the Bankruptcy Court enters an Order approving a Competing Transaction or (iii) if any of the Bankruptcy Cases is (A) dismissed, (B) converted to a case or cases under Chapter 7 of the Bankruptcy Code, or (C) if a trustee or examiner with expanded powers to operate or manage the financial affairs, the business, or the reorganization of any Seller is appointed in the Bankruptcy Cases;

(g) by Buyer, if Sellers have failed to obtain entry of an effective and unstayed Sale Order that is reasonably acceptable to Buyer by no later than the date that is forty (40) days after entry of the Bidding Procedures Order; provided, that the right to terminate this Agreement under this Section 11.01(g) shall not be available if Buyer's failure to perform any of its obligations under this Agreement has been a substantial cause of such failure and, provided, further, that the Parties agree that a Sale Order in substantially the form attached hereto as Exhibit D is acceptable to Buyer and Sellers;

(h) by Seller, if any Seller, or its governing body, determines in consultation with outside legal counsel, that proceeding with the Transactions or failing to terminate this Agreement would be inconsistent with its or such governing body's fiduciary obligations under applicable Law, including to pursue a Competing Transaction or take such other action to pursue any transaction or restructuring that, in the Seller's business judgment, will maximize the value of its estate;

**The Motion**

17.    Paragraph 25 of the Motion outlines the Sale Schedule:

(iii)    Bid Deadline: August 31, 2023 at 5:00 p.m. (prevailing Eastern Time) is the deadline by which all Bids must be actually received by the parties specified in the Bidding Procedures (the "Bid Deadline").

(2) Auction: The Auction, if necessary, will be held on September 2, 2023 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel to the Debtors, Thompson Hine LLP, Two Alliance Center, 3560 Lenox Road NE, Suite 1600, Atlanta, GA 30309 and/or virtually.

(3) Sale Objection Deadline: The deadline by which all objections to the Sale or the assumption and assignment of any executory contracts must be filed with the Court and served so as to be actually received by the appropriate notice parties ("Sale Objection Deadline"), is September 3, 2023 at 5:00 p.m. (prevailing Eastern Time).

(4) Sale Hearing: The hearing authorizing the Sale to the Successful Bidder (as defined in the Bidding Procedures) shall take place before the Court on September 5, 2023 at 10:00 a.m. (prevailing Eastern Time).

18.    Paragraph 26 details when and how notice will be provided (emphasis added):

**As soon as reasonably practicable, but no later than three (3) business days after entry of the Bidding Procedures Order ("Mailing Date"), the Debtors (or their agents) will cause the notice substantially in the form attached as Exhibit 2 to the Bidding Procedures Order ("Sale Notice"), to be served on the following parties or their respective counsel, if known:** (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors' pre-petition and post-petition secured lenders, (c) the counsel to the official committee of unsecured creditors, if any; (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest in the Assets; (f) the Internal Revenue Service; (g) the Georgia Department of Revenue; (h) the Delaware Division of Revenue; (i) the United States Attorney

for the District of Delaware; (j) the state attorneys general for states in which the Debtors conduct business; (k) the Securities Exchange Commission; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**The Transition Services Agreement**

19.     The Transition Services Agreement describes the fees to be charged in

section 4(a) (emphasis added):

(iii)    Fees. In respect of each Service during each Payment Period, Seller Parties shall pay to Buyer in accordance with the terms of this Agreement an amount equal to the actual cost of the Buyer Parties to provide or cause to be provided such Service during such Payment Period (as defined below) (including any applicable taxes borne by Seller Parties pursuant to Section 4€ and reasonable allocation of the Buyer Parties' overhead expenses), together with any out-of-pocket costs and expenses of obtaining any third party consents, approvals, licenses, authorizations or amendments necessary for the performance of the Services borne by Seller Parties pursuant to Section 6(b) (collectively, the "Per Service Fee"), which Per Service Fee shall be paid in advance in respect of each Service in accordance with Section 4(b). Buyer shall provide an estimated Per Service Fee payable by Seller Parties in respect of each Service to Seller prior to the initial Payment Period and in the event of any adjustment thereto, the start of any subsequent Payment Period (an "Agreed Estimate"). With respect to any Service, if such Service is provided for only a portion of any Payment Period due to earlier termination of such Service (or this Agreement), the Per Service Fee for such Service payable by Seller Parties will be pro-rated to reflect the number of days such Service was actually provided during such Payment Period. **Pursuant to the Sale Order, the claim of Buyer in respect of all reasonable fees, costs and expenses payable under this Agreement is and constitutes a superpriority administrative expense claim against Seller Parties under Sections 503 and 507(b) of the Bankruptcy Code in the Bankruptcy Cases, senior to all other administrative expense claims of Seller Parties.**

**The Bid Procedures**

20.     In Section 29(k)(iii) of the Bid Procedures contains the following provision:

iii. a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

## ARGUMENT

**Bid Protections**

21.     Break-up fees must be sought and analyzed under Section 503(b).  *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999)).

22.     The analysis of break-up fees under Section 503(b) "must be made in reference to general administrative expense jurisprudence.  In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535 (emphasis added).  "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018).

23.     Break-up fees are ordinarily predicated on a stalking horse's having placed estate property into a sales posture to attract other bidders to an auction, actually serving as a catalyst to attract additional bids, or in some other way preserving or enhancing the value of the estate.  But that does not satisfy Third Circuit precedent: the requesting party must show that a break-up fee is "actually necessary" to preserve the value of the estate.  *O'Brien*, 181 F.3d at 535. There is no certainty that a break-up fee will be actually necessary.  Even if a break-up fee would benefit the estate, the Court must still determine "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate." *Id.* at 314 (citing *O'Brien*, 181 F.3d at 535) (quotation marks omitted).

24.     It is extremely difficult to see how, at this juncture, the Court could determine that payment of the Bid Protections meets the appropriate standard for approval of bid protections under *O'Brien* in circumstances where termination of the APA results from (a) a failure of Sellers to satisfy a closing condition, (b) whether the closing occurs within 57 days after the petition date, (c) if the case is dismissed or converted or a trustee or examiner is appointed, (d) the failure to obtain entry of a Sale Order within 40 days after the entry of the Bid Procedures order, or (e) if the Debtors determine that proceeding with the transaction would be inconsistent with their fiduciary duty. Without knowing the specific circumstances, payment of the Bid Protections cannot be demonstrated to be "actually necessary to preserve the value of the estate," as required under *O'Brien.*

25.     If Energy Solutions wants payment of the Bid Protections under such circumstances, they must come back to the Court and make the case that under the particular circumstances the payment of Bid Protections would meet the *O'Brien* standard. Other than as a result of the Debtors accepting a higher and better offer for their assets that closes, payment of the Bid Protections are not truly bid protections, but function as liquidated damages for breach of the APA.

26.     If the Bid Protections are approved, all expenses to be reimbursed should be documented, with such documentation provided to the Debtors, the Committee, and the U.S. Trustee for a 10-day review period to object, prior to being paid.

**Energy Solutions Not Required to be Back-Up Bidder**

27.     Per Section 6.13 of the APA, Energy Solutions is not required to serve as a Back-Up Bidder. However, pursuant to section 11.01(f) of the APA, a termination event (and the

resulting payment of Bid Protections) occurs upon "**the Seller entering into a definitive agreement** with respect to a Competing Transaction . . ." (emphasis added).

28.    In a case where there is only one competing bidder who tops Energy Solutions' final bid, but cannot close the transaction, it could leave the Debtors without sale proceeds but still responsible for payment of Bid Protections to Energy Solutions.

29.    This provision is illogical unless Energy Solutions would rather receive its Bid Protections than close on the Debtors' assets at a price they bid. It is also unfair to potential outside bidders who are required to serve as a Back-Up Bidder pursuant to Section 29(k)(iii) of the Bid Procedures, as a condition of submitting a bid.

**Sale Timeline**

30.    The Motion proposes an extremely tight timeline for the sale process: 19 days between the Bid Procedures hearing and the proposed Sale Hearing. The motion also provides a Mailing Deadline of 3 business days after the Bid Procedures hearing. Adjusting for the Mailing Deadline, that leaves only 12 days between service of the bid procedures and the sale hearing, and only 9 days until the bid deadline. Making matters worse, the proposed timeline extends over the Labor Day holiday weekend.

31.    Under the circumstances, the proposed timeline does not provide for adequate notice to Debtors' creditors and other parties in interest of the sale objection deadline, especially when such notice will be sent by regular mail.

32.    Further, only 9 days of effective notice is insufficient for potential bidders to qualify as a potential bidder, perform due diligence, line up financing, and to formulate and submit a bid. Such a short notice period virtually ensures that any party not already involved in the bid process will not be able to participate, chilling bidding.

11

**Superpriority Administrative Claims Status for Transition Services Fees**

33.    Section 4(a) of the Transition Services Agreement calls of the granting of superpriority administrative claim status for fees due to Energy Services under the Agreement.

34.    Section 503(b) does not provide for superpriority status for transition services fees.  Superpriority status is provided for only in Sections 364(c)(1) and 507(b).  Those sections are addressed exclusively to (a) parties providing post-petition financing, and (b) secured creditors who have received insufficient "adequate protection" for the post-petition diminution in the value of their collateral.  Neither of those circumstances is presented here.  "[C]ourts do not have the authority to create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code."  *See Energy Future Holdings Corp.*, 904 F.3d at 313 (quoting *O'Brien*, 181 F.3d at 532) (quotation marks omitted).  Giving transition services fees superpriority status has no basis in the Bankruptcy Code and should be denied.

35.    The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required, and to object on such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the

Motion and grant such other relief as the Court deems appropriate and just.


Dated August 14, 2023                    Respectfully submitted,
Wilmington, Delaware

                                         **ANDREW R. VARA**
                                         **UNITED STATES TRUSTEE**

                                         By: _/s/ Joseph F. Cudia_
                                         Joseph F. Cudia
                                         Trial Attorney
                                         Office of the United States Trustee
                                         J. Caleb Boggs Federal Building
                                         844 King Street, Suite 2207, Lockbox 35
                                         Wilmington, DE 19801
                                         (302) 573-6491
                                         (302) 573-6497 (fax)