**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-10961 (BLS)<br><br>(Jointly Administered)<br><br>**Hrg. Date: TBD**<br>**Obj. Due: TBD** |

**MOTION FOR AN ORDER APPROVING THE DEBTORS'**
**(A) KEY EMPLOYEE RETENTION PROGRAM, (B) KEY EMPLOYEE**
**INCENTIVE PROGRAM, AND (C) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and each a "**Debtor**"), hereby move (this "**Motion**") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 105(a), 363(b) and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the entry of an order approving (a) the proposed key employee retention program (the "**KERP**"), (b) the proposed key employee incentive program (the "**KEIP**"), and (c) granting certain related relief. In support of this Motion, the Debtors incorporate the statements in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

declaration of Edward T. Gavin, CTP, NCPM (the "**Gavin Declaration**") attached hereto as **Exhibit B**, and respectfully represent as follows:

## JURISDICTION & VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The Debtors confirm their consent, pursuant to Local Rule 9013-f, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested herein are sections 105(a), 363(b), and 503 of the Bankruptcy Code and Bankruptcy Rule 6004.

## BACKGROUND

**I.    The Chapter 11 Cases**

5. On July 22, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

6. On August 2, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**") in these chapter 11 bankruptcy cases.

7.  The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 2] filed on the Petition Date and incorporated herein by reference.

## II.  Facts Pertinent to this Motion

8.  On July 24, 2023, the Debtors filed their *Motion for Entry of an Order (i) Approving Bidding Procedures for the Sale of Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Authority to Sell, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice thereof, (v) Approving Contract Assumption and Assignment Procedures, and (vi) Granting Related Relief* [D.I. 33] (the "**Sale Motion**").[2]  By the Sale Motion, the Debtors seek (a) Court approval of bidding procedures designed to maximize the value of the Debtors' estates, and (b) entry of an order following a final sale hearing authorizing the sale by the Debtors of their assets.

9.  Due to the filing of these bankruptcy cases and related stresses and difficulties faced by the Debtors and their employees during recent weeks and months, the Debtors have faced significant attrition.  In March of 2023, the Corporate Controller for Debtor Williams Industrial Services Group Inc. ("**WISG**") resigned and was not replaced.  In the month prior to the Petition Date, WISG's CFO resigned.  In addition, WISG's Treasurer and Financial Planning and Analysis ("**FP&A**") director resigned and was not replaced.  As a result, WISG's COO assumed both the FP&A's responsibilities and the CFO's responsibilities, in addition to his regular operating responsibilities.  On August 9, 2023, WISG's proposal manager resigned with two (2) weeks' notice, vacating a position responsible for the coordination of responses to new business opportunities related to the businesses subject to the Sale Motion.

---

[2]  On July 27, 2023, the Sale Motion was amended and supplemented.  *See* D.I. 83.

10. As a result of the foregoing, a smaller work force has been tasked with assisting Mr. Gavin, the Debtors' Chief Restructuring Officer, with the administration of the Debtors' bankruptcy estates, including, without limitation, the continued operation of the Debtors' business as a going concern while assisting Mr. Gavin and the Debtors' professionals with the demands of this chapter 11 bankruptcy proceeding and the execution and successful completion of a commercially reasonable sale process.

11. On August 15, 2023, WISG's Board of Directors approved the KERP and the KEIP, both of which are detailed further below and in the Gavin Declaration. Furthermore, the Debtors have previously discussed and negotiated the terms of the KEIP and the KERP with their proposed post-petition financing lenders.

A. **The KERP**

12. The nine (9) employees participating in the KERP (the "**KERP Participants**") will receive a retention bonus payment if the employee continues to be employed by WISG through the Court's approval of the Debtors' sale of assets to a third-party purchaser and the subsequent consummation and anticipated closing date of the Debtors' sale of assets (the "**Closing Date**"), regardless of whether such consummation occurs. If the employee is terminated by WISG for any reason other than cause prior to the Closing Date, the employee will still receive the retention bonus after the Closing Date.

13. The Debtors' sale process could be derailed if critical employees resign their positions prior to the Closing Date. They are critical to maintaining the Debtors' business as a going concern and assisting the Debtors' professionals with the sale process. Thus, the goal of the KERP is to entice an appropriate level of corporate employees, who each provide services critical to the ongoing operation of the business to provide those services through the Closing Date of the Debtors' assets under section 363 of the Bankruptcy Code to ensure the sale process is properly

executed. The KERP Participants, their respective titles, and the amounts of their retention bonuses are detailed on the attached **Exhibit C**.

### B.     The KEIP

14.     In contrast, the four (4) employees participating in the KEIP (the "**KEIP Participants**") will only receive an incentive bonus payment upon the consummation of a sale of substantially all the Debtors' assets. To receive an incentive bonus payment, the employee must (a) either be (i) employed by WISG through the Closing Date, or (ii) terminated by the Debtor for any reason other than cause prior to the Closing Date; ***and*** (b) the sale <u>must</u> consummate. If the sale of substantially all the Debtors' assets is not consummated, then the KEIP Participants will not receive an incentive payment.

15.     The KEIP Participants are senior leadership employees and their services and expertise have been and will continue to be critical to the Debtors' implementation of the sale procedures and consummation of a sale transaction. The Debtors' loss of the skills and institutional knowledge that the KEIP Participants possess would jeopardize the Debtors' ability to sell their assets for the benefit of the estates. As set forth in the Gavin Declaration, the Debtors respectfully submit that the KEIP will provide the necessary incentives to leadership to maximize the going concern value of the Debtors and effectuate a sale transaction for the benefit of all stakeholders in these chapter 11 proceedings. The KEIP Participants, their respective titles, and the amounts of their incentive payments are detailed on the attached **Exhibit C**.

### RELIEF REQUESTED

16.     By this Motion, and pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors respectfully request the entry of an order approving the KERP, and KEIP, and granting certain related relief.

**BASIS FOR THE REQUESTED RELIEF**

I. **The KERP Should be Approved**

17. Sections 503(c)(1) and (2) of the Bankruptcy Code generally provide certain restrictions on retention plans for "insiders." 11 U.S.C. § 503(c)(1) and (2). An insider of a corporation includes a "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B). Here, however, none of the KERP Participants are "insiders" of the Debtors. Because of this, the restrictions in sections 503(c)(1) and (2) are inapplicable to the KERP.

18. Section 503(c)(3) of the Bankruptcy Code requires that contemplated payments to a debtor's employees outside of the ordinary course of business be "justified by the facts and circumstances of the case." *See* 11 U.S.C. § 503(c)(3). This standard is the same as the business judgment test applied under section 363(b)(1). *See*, *e.g.*, *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)." (citations omitted)). Under section 363(b)(1), a debtor is authorized to use property of the estate so long as the debtor can show that a "sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999). A debtor's reasonable business decision is generally entitled to deference under this standard. *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (explaining that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

19. Courts consider several factors when determining whether a compensation plan is a proper exercise of a debtor's business judgement. These factors include: (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. *In re Dana Corp.*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006) (citations omitted); *see also Global Home Prods*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (applying *Dana*).

20. The implementation of the KERP is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates. As such, the KERP should be approved. The KERP also satisfies the *Dana* factors. The KERP was narrowly tailored to reward the KERP Participants for their substantial efforts in these chapter 11 proceedings and to ensure that they continue focusing their attention and efforts on the Debtors' operations up to and including the sale Closing Date. Indeed, the Debtors' maintenance of employee morale and prevention of any further attrition is integral to managing any adverse impacts of these proceedings on the Debtors' sale efforts. The compensation provided under the KERP is fair and reasonably compensates the employees for the stresses imposed upon them in these cases. The compensation also is consistent with industry standards. Furthermore, the terms and conditions of the KERP were negotiated with the Debtors' proposed post-petition lenders, and specifically, the Debtors' debtor-in-possession term lenders, Energy Impact Credit Fund I LP, CION Investment Corporation, and EICF Agent LLC, as agent (collectively, the "**DIP Term Lenders**"), and the term lenders have agreed to make such funding available for this purpose through their debtor-in-

possession term loan collateral. Consequently, the Debtors submit that the KERP is justified by the facts and circumstances of these chapter 11 cases, is a sound exercise of the Debtors' business judgment, and that implementation of the KERP is in the best interests of all stakeholders in these proceedings.

21. Courts in this district and others regularly approve retention compensation programs for non-insiders. *See*, *e.g.*, *In re Horsehead Holding Corp.*, No. 16-10287 (Bankr. D. Del. Jun. 8, 2016) (approving KERP for non-insiders); *In re Coldwater Creek Inc.*, No. 14-10867 (Bankr. D. Del. June 6, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (Bankr. D. Del. Oct. 29, 2013) (same); *In re Mervyn's Holdings, LLC*, No. 08-11586 (Bankr. D. Del. Oct 30, 2009) (same); *In re Eastman Kodak Co.*, Case No. 12-10202 (S.D.N.Y. May 1, 2012) (same); *In re Sbarro, Inc.*, No. 11-11257 (Bankr. S.D.N.Y. June 28, 2011) (same); *In re BearingPoint, Inc.*, No. 09-10691 (Bankr. S.D.N.Y. Mar. 30, 2009) (same); *In re Linens Holding Co.*, No. 08-10832 (Bankr. D. Del. Oct. 21, 2008) (same).

**II.    The KEIP Should be Approved**

22. As a preliminary matter, the KEIP provides incentives to senior leadership rather than severance payments or retention payments. The Debtors' primary goal in creating the KEIP is to maximize the enhancement of value of the Debtors' estates by motivating performance of senior leadership. Accordingly, sections 503(c)(1) and (2) of the Bankruptcy Code do not apply to the KEIP. *See*, *e.g.*, *In re Nobex Corp.*, 2006 Bankr. LEXIS 417, at *6-7 (Bankr. D. Del. Jan. 19, 2006) (finding that sale-related incentive pay to key employees was not governed by §§ 503(c)(1) or (c)(2)); *In re Am. Eagle Energy Corp.*, No. 15-15074, 2016 Bankr. LEXIS 2366, at *7 (Bankr. D. Col. June 23, 2016) (finding that sale-related incentive plan was not the type of plan prohibited by § 503(c)(1)).

23. The KEIP is a reasonable exercise of the Debtors' business judgment and should be approved as such. "The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment." *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citing *In re U.S. Airways, Inc.*, 329 B.R. 793, 795 (Bankr. E.D. Va. 2005)); *see also, e.g.*, *Nobex*, 2006 Bankr. LEXIS 417, at *6-7 (approving sale-related incentive pay).[3] The KEIP also satisfies the *Dana* factors. The KEIP was specifically designed to motivate the Debtors' senior leadership to continue to focus on the Debtors' operations, maximize the value of the Debtors' estates, and consummate a valuable sale transaction for the benefit of all stakeholders. The KEIP fairly incentivizes the KEIP Participants, is reasonable in amount, and is consistent with industry standards. In addition, the KEIP was designed after consultation with the Debtors' professionals, and the terms were discussed and negotiated with the proposed post-petition lenders with the DIP Term Lenders agreeing to make their debtor-in-possession term loan cash collateral available for this purpose. Therefore, the KEIP is justified by the facts and circumstances of these cases, is a sound exercise of the Debtors' business judgment, and implementation of the KEIP is in the best interests of all stakeholders in these chapter 11 proceedings.

24. Courts frequently approve KEIPs that are tethered to performance goals or chapter 11 milestones. *See, e.g.*, *Nobex*, 2006 Bankr. LEXIS 417, at *6-7 (approving sale related incentive pay); *Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *23 (approving plan aimed at incentivizing key employees to complete sale); *In re Midway Games Inc.*, No. 09-10465 (Bankr.

---

[3] The KEIP and the KERP may alternatively be approved under Section 105(a) of the Bankruptcy Code, which permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The compensation programs are vital to the Debtors' continued operations and consummation of a sale transaction.

D. Del. Apr. 22, 2009) (approving incentive plan based on achievement of chapter 11 restructuring milestones); *In re Nortel Networks Inc.*, No. 09-10138 (Bankr. D. Del. Mar. 4, 2010) (approving incentive plan based on achievement of separate milestones including a cost reduction plan, "certain parameters" resulting in a "leaner and more focused organization" and plan confirmation).

### III. The KEIP and KERP are Administrative Expenses

25. The Debtors request that their obligations under the KEIP and the KERP, once earned, be deemed to be administrative expenses pursuant to 11 U.S.C. § 503(b) and entitled to priority under 11 U.S.C. § 507(a)(2).

### NOTICE

26. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors; (c) counsel to the administrative agents for the Debtors' prepetition credit facilities; (d) the Internal Revenue Service; (e) the Georgia Department of Revenue; (f) the Delaware Division of Revenue; (g) the United States Attorney for the District of Delaware; (h) the Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) the proposed counsel for the Committee of Unsecured Creditors, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013- 1(m) of the Local Rules of Bankruptcy Practice and Procedure of the Court.

27. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

### NO PRIOR REQUEST

28. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that this Court enter an order, substantially in the form of the Proposed Order filed herewith, granting the relief requested herein and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: August 15, 2023<br>Wilmington, Delaware | **CHIPMAN BROWN CICERO & COLE, LLP**<br><br>*/s/ Mark L. Desgrosseilliers*<br>Mark L. Desgrosseilliers (No. 4083)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>Telephone: (302) 295-0192<br>desgross@chipmanbrown.com<br><br>-and-<br><br>Sean A. Gordon (admitted *pro hac vice*)<br>Austin B. Alexander (admitted *pro hac vice*)<br>**THOMPSON HINE LLP**<br>Two Alliance Center<br>3560 Lenox Road NE, Suite 1600<br>Atlanta, Georgia 30326-4266<br>Telephone: (404) 541-2900<br>Facsimile: (404) 541-2905<br>Sean.Gordon@thompsonhine.com<br>Austin.Alexander@thompsonhine.com<br><br>Alan R. Lepene (admitted *pro hac vice*)<br>Scott B. Lepene (admitted *pro hac vice*)<br>**THOMPSON HINE LLP**<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114-1291<br>Telephone: (216) 566-5500<br>Facsimile: (216) 566-5800<br>Alan.Lepene@thompsonhine.com<br>Scott.Lepene@thompsonhine.com<br><br>*Proposed Counsel for Debtors* |