# **EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 23-10961 (BLS)<br><br>(Jointly Administered) |

### DECLARATION OF EDWARD T. GAVIN, CTP, NCPM IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER APPROVING THE DEBTORS' (A) KEY EMPLOYEE RETENTION PROGRAM, (B) KEY EMPLOYEE INCENTIVE PROGRAM, AND (C) GRANTING CERTAIN RELATED RELIEF

Edward T. Gavin, CTP, NCPM, certifies, pursuant to 28 U.S.C. § 1746, as follows:

1.　　I am a Managing Director of the firm Gavin/Solmonese LLC, and I am the Debtors' proposed Chief Restructuring Officer ("**CRO**"). In my capacity as the Debtors' proposed CRO, I am familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2.　　This Declaration is given in support of the *Motion for an Order Approving the Debtors' (A) Key Employee Retention Program, (B) Key Employee Incentive Program, and (C) Granting Certain Related Relief* (the "**Motion**").[2] In submitting this Declaration, I have considered and/or relied upon, among other things, (a) my experience in chapter 11 cases,

---

[1]　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2]　Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

including with key employee retention plans and key employee incentive plans, (b) the Motion, (c) correspondence with the Debtors' management, and (d) correspondence with other professionals and advisors to the Debtors.

3. I am authorized to execute this Declaration on behalf of the Debtors. I am over the age of 18 years old. If called upon to testify, I could and would competently testify to the matters set forth herein.

4. On July 24, 2023, the Debtors filed the Sale Motion, through which the Debtors seek Court approval of bidding procedures designed to maximize the value of the Debtors' estates and entry of an order following a final sale hearing authorizing a sale of the Debtors' assets.

5. Because of the filing of these bankruptcy cases and related stresses and difficulties faced by the Debtors and their employees during recent weeks and months, the Debtors have recently experienced employee attrition in critical positions. As a result, a smaller workforce has been tasked with assisting me with the administration of the Debtors' bankruptcy estates, including, without limitation, the continued operation of the Debtors' business as a going concern while assisting myself and the Debtors' professionals with the demands of this chapter 11 bankruptcy proceeding and the execution and completion of a commercially reasonable sale process.

6. On August 15, 2023, the Board of Directors for WISG approved the KERP and the KEIP. Furthermore, the Debtors have previously discussed and negotiated the terms of the KEIP and the KERP with their proposed post-petition financing lenders and specifically, the Debtors' debtor-in-possession term lenders, Energy Impact Credit Fund I LP, CION Investment Corporation, and EICF Agent LLC, as agent (collectively, the "**DIP Term Lenders**"), and the

term lenders have agreed to make such funding available for this purpose through their debtor-in-possession term loan collateral.

I. **The KERP**

7. The KERP Participants will receive a retention bonus payment if the employee continues to be employed by WISG through the Closing Date, regardless of whether the consummation of the sale occurs. If the employee is terminated by WISG for any reason other than cause prior to the Closing Date, the employee will still receive the retention bonus after the Closing Date.

8. It is my understanding and my belief that none of the KERP Participants are "insiders" as defined under the Bankruptcy Code. None of the KERP Participants are board members, regularly attend board meetings or report to the board, or have authority to make firm-wide decisions on behalf of the Debtors. Rather, the KERP Participants' duties and responsibilities are restricted to particular divisions of the Debtors' business.

9. The Debtors' sale process could be derailed if critical employees resign their positions prior to the Closing Date. They are critical to maintaining the Debtors' business as a going concern and assisting the Debtors' professionals with the sale process. Thus, the goal of the KERP is to entice an appropriate level of corporate employees to provide ongoing services through the Closing Date of the Debtors' assets under section 363 of the Bankruptcy Code to ensure the sale process is properly executed.

10. The Debtors' implementation of the KERP is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates. The KERP was narrowly tailored to reward the KERP Participants for their substantial efforts in these chapter 11 proceedings and to ensure that they continue focusing their attention and efforts on the Debtors'

operations up to and including the Closing Date. The Debtors' maintenance of employee morale and prevention of any further attrition is integral to managing any adverse impacts of these proceedings on the Debtors' sale efforts. The compensation provided under the KERP is fair and reasonably compensates the employees for the stresses imposed upon them in these cases. The compensation also is consistent with industry standards. I believe that the terms of the KERP are justified by the facts and circumstances of these chapter 11 cases.

11. The KERP Participants, their respective titles, and the amounts of their retention bonuses are detailed on **Exhibit C** attached to the Motion.

## II. The KEIP

12. The KEIP Participants will only receive an incentive bonus payment upon the consummation of a sale of substantially all the Debtors' assets. To receive an incentive bonus payment, the employee must (a) either be (i) employed by WISG through the Closing Date, or (ii) terminated by the Debtor for any reason other than cause prior to the Closing Date; *and* (b) the sale must consummate. If the sale of substantially all the Debtors' assets is not consummated, then the KEIP Participants will not receive an incentive payment.

13. The KEIP Participants are senior leadership employees and their services and expertise have been and will continue to be critical to the Debtors' implementation of the sale procedures and consummation of a sale transaction. The Debtors' loss of the skills and institutional knowledge that the KEIP Participants possess would jeopardize the Debtors' ability to sell their assets for the benefit of the estates and would significantly increase the cost of operating the Debtors through the sale, while also increasing the complexity and transactional risk of getting to a successful sale closing. I believe that the KEIP will provide the necessary incentives to

leadership to maximize the going concern value of the Debtors and effectuate a sale transaction for the benefit of all stakeholders in these chapter 11 proceedings.

14. The KEIP provides incentives to senior leadership rather than severance payments or retention payments. The KEIP was specifically designed to motivate the Debtors' senior leadership to continue to focus on the Debtors' operations, maximize the value of the Debtors' estates, and consummate a valuable sale transaction for the benefit of all stakeholders. The KEIP is a reasonable exercise of the Debtors' business judgment and should be approved as such. Indeed, the KEIP fairly incentivizes the KEIP Participants, is reasonable in amount, and is consistent with industry standards. I believe that the KEIP is therefore justified by the facts and circumstances of these cases, is a sound exercise of the Debtors' business judgment, and implementation of the KEIP is in the best interests of all stakeholders in these chapter 11 proceedings.

15. The KEIP Participants, their respective titles, and the amounts of their incentive payments are detailed on **Exhibit C** attached to the Motion.

I hereby certify, under penalty of perjury, that the foregoing factual statements made by me are true to the best of my knowledge, information, and belief.

Date: August 15, 2023    */s/ Edward T. Gavin*
                                                    Edward T. Gavin, CTP, NCPM