**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10961-BLS<br><br>(Jointly Administered)<br><br>**Related Docket Nos.: 33, 149** |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF DEBTORS' ASSETS, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE SALE, (III) SCHEDULING BID DEADLINES AND AN AUCTION, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE APA, (VII) AUTHORIZING AND APPROVING BID PROTECTIONS, AND (VIII) GRANTING RELATED RELIEF**

This matter is before the Court on the motion ("Motion")[2] [D.I. 33] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order ("Order"): (a) approving the proposed bidding procedures attached as **Exhibit 1** to this Order ("Bidding Procedures"); (b) scheduling an Auction ("Auction"); (c) approving the form and manner of notice thereof; (d) scheduling dates and deadlines in connection with the Sale of the Assets; (e) approving the form and manner of notice thereof; (f) approving procedures for assuming and assigning the Debtors' executory contracts and unexpired leases ("Assumption and Assignment Procedures");

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion, the Stalking Horse APA, or the Bidding Procedures, as applicable.

(g) authorizing and approving the Debtors' entry into the Stalking Horse APA, (h) authorizing and approving the Break-Up Fee and Buyer Expense Reimbursement (as described in more detail in the Stalking Horse APA and Bidding Procedures, the "Bid Protections"), and (i) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and certain objections (collectively, the "Bidding Procedures Objections") having been filed with respect to the motion, including the Objection filed by the Office of the United States Trustee (Docket No. 149) (the "Trustee Objection"); and the Court having held hearings on the Motion and the Sale Objections on August 17, 2023, and August 18, 2023 (collectively, the "Bidding Procedures Hearings"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Bidding Procedures Hearings; and this court having determined that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearings establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, THE COURT FINDS THAT:

A. The findings of fact and conclusions of law herein constitute the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

B. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory bases for the relief requested in the Motion are sections 105, 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

D. Notice of the Motion, the Bidding Procedures Hearings, and the proposed entry of this Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Notice of the Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Official Committee of Unsecured Creditors (the "Committee"); (c) the Debtors' thirty (30) largest unsecured creditors; (d) counsel to the Stalking Horse Bidder; (e) counsel to the administrative agents for the Debtors' prepetition and postpetition credit facilities; (f) the Internal Revenue Service; (g) the Georgia Department of Revenue; (h) the Delaware Division of Revenue; (i) the United States Attorney for the District of Delaware; (j) the Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.  The Debtors have articulated good and sufficient reasons for this Court to: (a) approve the Bidding Procedures; (b) schedule the Bid Deadline, the Auction, the Sale Objection Deadline, and the Sale Hearing; (c) approve the form of the Sale Notice attached hereto as **Exhibit 2**; (d) approve the Assumption and Assignment Procedures and the form and manner of notice of the Cure Notice attached hereto as **Exhibit 3**; and (e) grant related relief.

F.  The Bidding Procedures are reasonable and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates. The Bidding Procedures balance the Debtors' interests in emerging expeditiously from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

G.  The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

H.  The Cure Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures.

I.  The Stalking Horse APA represents the highest and otherwise best offer the Debtors have received to date to purchase the Assets designated for purchase thereunder. The Stalking Horse APA provides the Debtors with the opportunity to sell such Assets in a manner designed to preserve and maximize their value and provides a floor for a further marketing and auction process. Without the Stalking Horse APA, the Debtors are at a significant risk of realizing a lower price for their Assets.

J.  Good and sufficient business reasons exist for the Court to authorize the Debtors to enter into the Stalking Horse APA in accordance with the terms of this Order and the Bidding Procedures.

K.      The Bid Protections as set forth in Section 8.01 of the Stalking Horse APA to be paid under the circumstances described therein to the Stalking Horse Bidder are: (1) an actual and necessary cost of preserving the value of the respective Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; and (3) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments and accommodations of the Stalking Horse Bidder that have been made for the benefit of the Debtors' estates, and the efforts that have been and will be expanded by the Stalking Horse Bidder.

L.      The Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price for the Transferred Assets to maximize the value of the Debtors' estates.

M.      The Bid Protections are an essential and material inducement and express condition of the Stalking Horse Bidder's entry into, and continuing obligations under, the Stalking Horse APA. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse APA (including the Stalking Horse Bidder's obligation to maintain its committed offer while such offer is subject to higher and/or otherwise better offers as contemplated by the Bidding Procedures). The Bid Protections have induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Transferred Assets on which the Debtors, their creditors

and other bidders can rely, and which encourages and facilitates the Auction process. The Stalking Horse Bidder has thus provided a material benefit to the Debtors, their estates and creditors by increasing the likelihood that the best possible purchase price for the Transferred Assets will be realized. Accordingly, the Bid Protections are fair, reasonable and appropriate, and necessary to facilitate a competitive, value-maximizing Sale for the benefit of the Debtors' estates.

N.    The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of directors, officers or controlling stockholders exists among the Stalking Horse Bidder and the Debtors. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiations of the Bid Protections and the Bidding Procedures and entry into the Stalking Horse APA.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as provided herein.

2.    The Bidding Protections Objections, other than the Trustee Objection, that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court, are overruled.  The Trustee Objection is overruled in part and sustained in part.

**I.    Important Dates and Deadlines.**

3.    The following dates and deadlines are hereby approved (and may be amended from time to time by the Debtors in consultation with the Consultation Parties (as defined in the Bidding Procedures)) by filing an appropriate notice on the Court's docket and posting such notice on the Case Website.

4.      Unless extended by the Debtors, in consultation with the Consultation Parties, the deadline by which all bids for the Assets must be actually received by the parties specified in the Bidding Procedures is August 29, 2023, at 5:00 p.m. (prevailing Eastern Time).

5.      In accordance with Local Rule 6004-1(c)(ii)(A), the date and time of the Auction, if needed, is August 31, 2023 at 10:00 a.m. (prevailing Eastern Time), which time may be extended by the Debtors, in consultation with the Consultation Parties, upon written notice filed with the Court, to be held at the offices of Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1512 N. Market Street, Suite 5400, Wilmington, DE 19801 and/or virtually.  The Debtors shall provide written notice of the date, time, and place of the Auction to Qualified Bidders no later than two (2) days before such Auction, and shall post notice of the same no later than two (2) days before such Auction on the Case Website.

6.      In accordance with Local Rule 6004-1(c)(ii)(B), each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

7.      In accordance with Local Rule 6004-1(c)(ii)(C), the Auction will be conducted openly. Representatives of the Qualified Bidders, the Debtors, and the Consultation Parties shall be permitted to attend the Auction in person. All other parties permitted to attend by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules may attend virtually pursuant to procedures to be provided upon request as set forth in the Bidding Procedures.

8.      In accordance with Local Rule 6004-1(c)(ii)(D), bidding at the Auction will be transcribed or videotaped.

9.      If the Debtors do not receive a Qualified Bid with respect to the Transferred Assets other than the Stalking Horse Bid (as defined in the Bidding Procedures), the Debtors will not hold

the Auction and the Stalking Horse Bidder shall be deemed the Successful Bidder upon the Bid Deadline with respect to the Transferred Assets. If the Debtors receive one or more Qualified Bids with respect to the Transferred Assets in addition to the Stalking Horse Bid, the Debtors will conduct the Auction for the Transferred Assets.

10. In the event of a competing Qualified Bid with respect to the Transferred Assets, the Stalking Horse Bidder shall be entitled, but not obligated, to submit subsequent bids and shall be entitled, but not obligated, in any and all such subsequent bids to credit bid the full amount of the Bid Protections in lieu of cash, and for purposes of evaluating the subsequent bid, the full amount of such Bid Protections shall be treated as equal to cash in the same amount.

11. The deadline to object to approval of the Sale ("Sale Objection Deadline") is set for September 5, 2023 at 5:00 p.m. (prevailing Eastern Time). Any objections to the Sale (a "Sale Objection") must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules and the Local Rules and (d) be filed with the Bankruptcy Court and served upon the following parties so as to be received not later than the Sale Objection Deadline: (i) proposed counsel for the Debtors, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114-1291 (Attn: Alan R. Lepene (alan.lepene@thompsonhine.com) and Sean A. Gordon (sean.gordon@thompsonhine.com)), and Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (ii) counsel for the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Matthew M. Roose, Esq. (matthew.roose@ropesgray.com) and Daniel G. Egan (daniel.egan@ropesgray.com)), and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)); (iii) proposed counsel for the Committee,

Lowenstein Sandler LLP, 1251 Avenue of the America, New York, NY 10020 (Attn: Jeffrey Cohen, Esq. (jcohen@lowenstein.com), Eric Chafetz, Esq. (echafetz@lowenstein.com), and Phillip Khezri, Esq. (pkhezri@lowenstein.com)); (iv) counsel for any Additional Stalking Horse Bidder; (v) counsel for the Revolving Agents, Blank Rome LLP, 1201 Market Street, Suite 800 Wilmington, DE 19801 (Attn: Regina S. Kelbon (regina.kelbon@blankrome.com) and Gregory F. Vizza (gregory.vizza@blankrome.com)); (vi) counsel for the Term Agents, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020 (Attn: David T.B. Audley (audley@chapman.com) and Carey J. Gaughan (gaughan@chapman.com)); and (vii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)). Any party failing to timely file a Sale Objection by the Sale Objection Deadline shall be forever barred from objecting and shall be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the Transferred Assets free and clear of any and all Liens, Claims, Interests, and other Liabilities in accordance with the Stalking Horse APA or other definitive agreement with respect to the Sale.

12. The hearing to consider approval of the Sale ("Sale Hearing") will take place on September 7, 2023, at 2:00 p.m. (prevailing Eastern Time) at the United States Federal Courthouse 824 North Market Street, 6th Floor, Wilmington, DE 19801. Information regarding attending the Sale Hearing viz zoom or other remote means, if applicable, may be obtained from the Court's website (www.deb.uscourts.gov).

13. Any request by a Potential Bidder for modification of the deadlines set forth in this Order or set forth in the Bidding Procedures shall be considered in good faith by the Debtors, and in consultation with the Consultation Parties. The Debtors consent to the Court's consideration of

any such modification requests filed by the Committee or otherwise, if necessary, on an expedited basis.

## II.     The Bidding Procedures.

14.     The Bidding Procedures are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets. Any party desiring to bid for all or a portion of the Assets shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

15.     The Debtors are deemed to have complied with all contractual rights of first refusals, or similar contractual purchasing rights, regarding the Assets. The Bidding Procedures and the notice thereof provide all parties in interest with notice of, and the opportunity to participate in, any potential Sale and/or Auction.

## III.    Stalking Horse Bidder, Bid Protections, and Stalking Horse APA.

16.     The Debtors' entry into the Stalking Horse APA is authorized, subject to higher and/or better offers at the Auction regarding the Transferred Assets in accordance with the Bidding Procedures.

17.     The Debtors are authorized to perform all obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and prior to the entry of the Sale Order, subject to the terms of the Bidding Procedures.

18.     The Bid Protections for the Stalking Horse Bidder are approved in their entirety; provided, however, that notwithstanding anything to the contrary in this Order or the Motion, the Bid Protections, if payable, shall be paid by the Prepetition Term Lenders in accordance with the ruling of this Court at the Bidding Procedures Hearings, and the Prepetition Term Lenders are

authorized to pay any amounts that may become due to the Stalking Horse Bidder on account of the Bid Protections on the terms set forth in the Stalking Horse APA, subject to any modification set forth herein. The Stalking Horse Bidder shall be granted allowed administrative expense claims under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code in an amount equal to the Break-Up Fee and the Buyer Expense Reimbursement to the extent they become due in accordance with the terms of the Stalking Horse APA, which (if triggered) shall be payable solely upon consummation of a Competing Transaction, notwithstanding anything in the Stalking Horse APA; provided, however, that upon payment by the Prepetition Term Lenders as set forth herein, such claims shall be of no force or effect. The Break-Up Fee shall be paid in full solely upon consummation of a Competing Transaction without any further action, application, or order of the Court. After consummation of a Competing Transaction, the Stalking Horse Bidder shall provide to counsel to the Debtors, counsel to the Committee, counsel for the Prepetition Term Lenders and the U.S. Trustee copies of invoices with respect to the costs and expenses comprising the Buyer Expense Reimbursement (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). The Debtors, the Committee, the Prepetition Term Lenders and the U.S. Trustee shall have ten (10) days from receipt to review the summary legal invoices, and (a) in the event the Debtors, the Committee, the Prepetition Term Lenders or the U.S. Trustee files with this Court an objection to any such invoice within ten (10) days of its receipt thereof, the undisputed portion of such invoice shall be paid

without further order of the Court whereas the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Court and (b) in the event the Debtors, the Committee, the Prepetition Term Lenders or the U.S. Trustee do not file with this Court an objection to any such invoice within ten (10) days of its receipt thereof, such invoice shall be paid without further order of the Court and shall not be subject to any further review, challenge, or disgorgement.

19. Notwithstanding anything to the contrary in the Stalking Horse APA, the Break-Up Fee shall be equal to 3% ($1,800,000) of the cash consideration provided by the Stalking Horse Bidder under the Stalking Horse APA.

20. Notwithstanding anything to the contrary in the Stalking Horse APA, the Break-Up Fee and Buyer Expense Reimbursement shall only be earned, and payable to the Stalking Horse Bidder, solely upon consummation of a Competing Transaction, subject to the requirements set forth in Paragraph 18 above and herein.

21. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar fee or payment.

22. Any deposit provided by the Stalking Horse Bidder and all other Qualified Bidders shall be held in escrow and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

23. Notwithstanding anything to the contrary in the Stalking Horse APA or in paragraphs 4(a) of the Transition Services Agreement and Reverse Transition Services Agreement, subject to entry of the Sale Order, any claim of the Stalking Horse Bidder in respect of fees, costs, and expenses payable under the Transition Services Agreement and Reverse Transition Services

Agreement shall constitute allowed administrative expense claims under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

24. Notwithstanding anything to the contrary in the Stalking Horse APA, under Section 2.02(f)(xvi) of the Stalking Horse APA, any exclusion of liabilities referenced therein shall only be to the extent permitted under applicable law.

## IV.   Notice Procedures.

25. The form of Sale Notice attached hereto as **Exhibit 2** is approved.

26. No later than two (2) business days after entry of the Bidding Procedures Order ("Mailing Date"), the Debtors shall serve the Sale Notice, Bidding Procedures Order and Bidding Procedures by first-class mail or courier service upon: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) the Debtors' thirty (30) largest unsecured creditors; (d) counsel to the administrative agents for the Debtors' prepetition and postpetition credit facilities, (e) all parties who have expressed a written interest in some or all of the Debtors' assets; (f) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets' (g) the Internal Revenue Service; (h) the Georgia Department of Revenue; (i) the Delaware Division of Revenue; (j) the United States Attorney for the District of Delaware; (k) the Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) all non-Debtor parties to the Debtors' executory contracts and unexpired leases, and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

27. Additionally, within five days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, setting forth the information contained in the Sale Notice, on one occasion, in *The New York Times*. Such publication notice shall be deemed

sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

## V. The Assumption and Assignment Procedures.

28. The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of the Assigned Contracts proposed to be assumed by the Debtors and assigned to the Successful Bidder are approved.

1. **Cure Notice.** On or prior to the Mailing Date the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, which shall contain the Instructions and the Necessary Notice Information, on all Contract Counterparties and all parties that have requested notice pursuant to Bankruptcy Rule 2002, and post the Cure Notice to the Case Website. Service as set forth herein shall be deemed proper, timely, good, and sufficient notice and no other or further notice is necessary.

2. **Content of Cure Notice.** The Cure Notice shall notify the applicable Contract Counterparties that the Assigned Contracts may be subject to assumption and assignment in connection with a proposed sale transaction, and contain the following information: (i) a list of the Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the Cure Costs; and (iv) the deadline by which any Contract Counterparty to an Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; provided that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid. A form of Cure Notice is attached hereto as **Exhibit 3**.

3. **Objections.** Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Court's Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be actually received by proposed counsel for the Debtors, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114-1291 (Attn: Alan R. Lepene (alan.lepene@thompsonhine.com) and Sean A. Gordon (sean.gordon@thompsonhine.com)), and Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)) and (b) counsel for the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New

York, NY 10036 (Attn: Matthew M. Roose, Esq. (matthew.roose@ropesgray.com) and Daniel G. Egan (daniel.egan@ropesgray.com)), and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)) 5:00 p.m. (prevailing Eastern Time) on the date fourteen (14) days after service of the Cure Notice.

4. **Dispute Resolution.** Any objection to the proposed assumption and assignment of an Assigned Contract, or Cure Costs, that remain unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at such later date as may be fixed by the Court). Upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the closing date of the sale transactions. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Stalking Horse Bidder's or other Successful Bidder's reasonable discretion. To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Stalking Horse Bidder or other Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing. If an Assigned Contract Objection is not satisfactorily resolved, the Stalking Horse Bidder or other Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Stalking Horse Bidder or other Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

5. **Supplemental Cure Notice.** The Debtors reserve the right, with the consent of the Stalking Horse Bidder or Successful Bidder, as applicable, at any time after the Assumption and Assignment Service Date, to: (i) supplement the Assigned Contract Schedule attached to the Cure Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale; (ii) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (iii) modify the previously stated Cure Cost associated with any Assigned Contracts ("Supplemental Assigned Contracts Schedule"). In the event that the Debtors exercise any of the rights reserved above, the Debtors will serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty, and its counsel, if known, to each impacted Assigned Contract at the last known address available to the Debtors. Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice. Any Assigned Contract Counterparty listed on a Supplemental Cure Notice may file a Supplemental Assigned Contract Objection only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any. All Supplemental Assigned Contract Objections must: (x) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (y) include appropriate documentation

       in support of the objection; and (z) be filed and served on counsel for the Debtors no later than 5:00 p.m. (prevailing Eastern Time) on the date that is the later of (i) the Sale Objection Deadline and (ii) fourteen days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice ("Supplemental Assigned Contract Objection Deadline").

6. **Supplemental Hearing.** If a Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek a Supplemental Assigned Contract Hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts. If there is no such objection, then the Debtors will obtain entry of an order, including by filing a certification of no objection, fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Cure Notice.

29. If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice, or Supplemental Cure Notice, as applicable, shall be binding and controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and shall be the only amounts necessary to be paid to cure all monetary defaults pursuant to section 365(b) of the Bankruptcy Code under such Assigned Contracts, to the extent the Stalking Horse Bidder (or other Successful Bidder) ultimately decides to have the applicable Assigned Contract assumed and assigned to it, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them; provided, however, that a Contract Counterparty shall not be barred from seeking additional amounts on account of any defaults occurring between the service of the Cure Notice and the assumption of the relevant contract.

30. Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the later of the Sale Objection Deadline or Supplemental Assigned Contract Objection Deadline, as applicable, and such objections will be resolved at the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable. The Debtors may adjourn the resolution of any such objection to a later hearing.

31. The inclusion of an Assigned Contract on the Assigned Contract Schedule, Supplemental Assigned Contract Schedule, and/or in a Supplemental Cure Notice will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

32. Notwithstanding anything to the contrary in this Order, unless Cigna Health and Life Insurance Company ("Cigna") and the Debtors agree otherwise, the Debtors shall provide to Cigna, through its counsel of record, no later than two (2) business days prior to the Sale Hearing, subject to extension upon agreement of the parties, written notice of Debtors' irrevocable (subject to closing of the proposed Sale) decision as to whether or not the Debtors propose to assume and assign the Cigna Policies to the Successful Bidder as part of the proposed Sale. This resolves Cigna's Objection [D.I. 142] to Debtors' Motion.

## VI. Miscellaneous.

33. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

34. In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

35. The Debtors, subject to the terms of this Order and the Bidding Procedures, are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

36. All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the Transferred Assets, the Auction, and Sale.

37. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

38. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

39. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: August 19th, 2023  
Wilmington, Delaware

BRENDAN L. SHANNON  
UNITED STATES BANKRUPTCY JUDGE