# **EXHIBIT 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*[1] | Case No. 23-10961-BLS |
| Debtor. | (Joint Administration Requested) |

## BIDDING PROCEDURES

### Overview

1.      On July 22, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court"). These Chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Williams Industrial Services Group Inc.*, Case No. [23-10961].

2.      On _____, 2023, the Court entered an order (Dkt. No. ____) ("Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids, and approved these procedures ("Bidding Procedures") for the consideration of the highest or otherwise best bids (or any combination of Partial Bids (as defined below) comprising one Qualified Bid (as defined below)) for the Debtors' businesses and assets ("Assets") on the terms and conditions set forth herein.[2]

### Designation of Stalking Horse Bidder

3.      On July 22, 2023 Debtors Williams Industrial Services Group Inc. ("Parent"), Williams Industrial Services Group, L.L.C. ("WISG"), Williams Industrial Services LLC ("WIS"), Construction & Maintenance Professionals, LLC ("CMP"), WISG Electrical, LLC ("Electrical"), Williams Plant Services, LLC ("WPS") and Williams Specialty Services, LLC ("WSS" and together with Parent, WISG, CMP, Electrical, and WPS, each an "APA Seller" and collectively, the "APA Sellers") entered into an asset purchase agreement (the "Stalking Horse APA") with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order or the Stalking Horse APA (as defined below), as applicable.

EnergySolutions Nuclear Services, LLC (the "Stalking Horse Bidder") pursuant to which the Stalking Horse Bidder proposes to, among other things, purchase, acquire, and take assignment and delivery of certain of the Assets (as described in more detail in the Stalking Horse APA, the "Transferred Assets") and assume certain liabilities relating to such Transferred Assets (as described in more detail in the Stalking Horse APA, the "Assumed Liabilities"), all on the terms and conditions set forth in the Stalking Horse APA (such bid, the "Stalking Horse Bid"). Subject to the terms and conditions of the Stalking Horse APA, the Stalking Horse Bidder has agreed to purchase the Transferred Assets for purchase price consideration consisting of a cash payment in the amount of $60,000,000 plus the assumption of the Assumed Liabilities, subject to certain adjustments as set forth in the Stalking Horse APA.

4.      As set forth in the Bidding Procedures Order, in recognition of the expenditure of time, energy, and resources by the Stalking Horse Bidder, and because the agreement to make payment thereof is necessary to preserve the value of each of the Debtors' estates, the Debtors have agreed that, among other triggering events, if the Stalking Horse Bidder is not the Successful Bidder with respect to the Transferred Assets, then the Debtors are required to pay to the Stalking Horse Bidder, pursuant to and in accordance with the terms of the Stalking Horse APA, (a) an expense reimbursement in an amount not to exceed $1,000,000 for reasonable costs and expenses incurred by the Stalking Horse Bidder in connection with the Stalking Horse Bid (as such term is defined in the Stalking Horse APA, the "Buyer Expense Reimbursement"), and (b) a break-up fee in an amount equal to $1,800,000 (as such term is defined in the Stalking Horse APA, the "Breakup Fee" and, together with the Buyer Expense Reimbursement, the "Bid Protections").

5.      As set forth more fully in the Stalking Horse APA, the Stalking Horse Bidder will not purchase the Retained Businesses or the Excluded Assets and will not assume the Excluded Liabilities. The Debtors, in consultation with the Consultation Parties (as defined below), may designate one or more additional stalking horse bidders and enter into separate stalking horse agreements for the purchase of any of the Retained Businesses or the Excluded Assets and the assumption of the Excluded Liabilities, with such bid protections determined by the Debtors, in consultation with the other Consultation Parties, in accordance with the Bidding Procedures Order.

6.      The Stalking Horse Bid is subject to higher or better offers submitted in accordance with the terms and conditions of these Bidding Procedures. These Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' businesses or assets, subject to an order of the Bankruptcy Court approving such potential sale transactions; (ii) the manner in which bidders and bids become Qualified Bidders (defined below) and Qualified Bids (defined below); (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive any Qualified Bids other than the Stalking Horse Bid; (v) the procedure for the ultimate selection of any Successful Bidder and any Back-Up Bidder (as defined below); and (vi) the process for approval of the Sale Transactions at the applicable Sale Hearing.

7.      For all purposes under these Bidding Procedures, (a) the Stalking Horse Bidder is deemed a Qualified Bidder (as defined below) with respect to the Transferred Assets and the Stalking Horse Bid is deemed a Qualified Bid (as defined below) with respect to the Transferred Assets, and (b) any additional stalking horse bidder that may be approved as such pursuant to the Bidding Procedures Order with respect to the Excluded Assets shall be considered a Qualified

Bidder with respect to the Excluded Assets and any such stalking horse bid shall be considered a Qualified Bid with respect to the Excluded Assets. Subject to the other provisions of these Bidding Procedures, in the event that the Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline (as defined below), the Stalking Horse Bidder shall be deemed the Successful Bidder (as defined below) for the Transferred Assets.

### Reservation of Rights

8.      **Except as otherwise set forth herein, the Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to: (i) modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer for the Debtors' assets, or impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the sale of the assets; (ii) waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); (iii) extend the deadlines set forth herein; (iv) announce at the Auction modified or additional procedures for conducting the Auction; or (v) alter the assumptions set forth herein; provided, that, the Debtors shall not be authorized to make material modifications to these Bidding Procedures without further order of the Court; provided further, that the Debtors may not modify the Bid Protections afforded to the Stalking Horse Bidder in accordance with the Stalking Horse APA and Bidding Procedures Order unless agreed in writing by the Stalking Horse Bidder. For the avoidance of doubt, the Debtors may not modify the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Buyer Expense Reimbursement without the express written consent of the Stalking Horse Bidder. The Debtors shall provide reasonable notice of any such proposed modifications to all Qualified Bidders, including the Stalking Horse Bidder and any additional stalking horse bidders. The Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order, as applicable. All parties reserve their rights to seek Court relief with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).**

### Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to Submit Bids | August 29, 2023 by 5:00 p.m. |
| Auction (if necessary) | August 31, 2023 at 10:00 a.m. |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | September 1, 2023 |
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | Two (2) business days after the entry of the Bidding Procedures Order |

| Deadline to File Objections to the Sale Transactions (the "Sale Objection Deadline") | September 5, 2023 at 5:00 p.m. |
|---|---|
| Deadline to File Contract Objections | Fourteen days after service of the Cure Notice |
| Deadline for Successful Bidders to file Successful Bidder Assumption Schedule | September 5, 2023 by 5:00 p.m. |
| Sale Hearing | September 7, 2023 at 2:00 p.m. |

## Businesses to be Acquired

9.     Debtors are engaged in the business of providing a broad range of construction and maintenance services to customers in the nuclear, conventional power (fossil, hydro, natural gas), energy delivery, water and wastewater, pulp & paper, chemical, and government industries. Parties may submit bids for one or more of the Debtors' businesses or assets, including for all or part of each Debtors' businesses or assets (each, a "Partial Bid"), provided, that, when combined, such Partial Bids must be higher or better than the Stalking Horse Bid or any other stalking horse bids (as determined by the Debtors in in consultation with the Consultation Parties), in accordance with the terms and conditions set forth herein.

## Designation of Additional Stalking Horse Bidders

10.     The procedures set forth in this section shall apply to the designation of any Additional Stalking Horse APA, any Additional Stalking Horse Bidder, and any Additional Bid Protections (each as defined below).

11.     Subject to the terms of the Bidding Procedures Order, the Debtors may designate one or more additional stalking horse bidders (each, an "Additional Stalking Horse Bidder") and enter into one or more purchase agreements (each, an "Additional Stalking Horse APA") with any Additional Stalking Horse Bidder (other than the Stalking Horse Bidder) that submits a Qualified Bid solely for all or any portion of the Excluded Assets (in each case, subject to higher or otherwise better offers at the Auction) (each, an "Additional Stalking Horse Bid"). The Debtors shall promptly provide copies of any Additional Stalking Horse Bid received by the Debtors to the Consultation Parties.

12.     The Debtors may offer each Additional Stalking Horse Bidder certain bid protections, including a break-up fee ("Additional Bid Protections"); provided, that, all Additional Bid Protections must be negotiated by the Debtors, in consultation with the Consultation Parties, subject to notice and an opportunity for parties in interest to object. For the avoidance of doubt, no Additional Stalking Horse Bidder shall be entitled to any Additional Bid Protections absent entry of an Additional Stalking Horse Order (as defined below) or another applicable order of the Court.

13.     In the event that the Debtors select one or more parties to serve as an Additional Stalking Horse Bidder with respect to all or a portion of the Excluded Assets and to receive Additional Bid Protections, upon such selection, the Debtors shall file a notice and proposed form of order (the "Additional Stalking Horse Order") and provide all parties in interest at least ten (10) calendar days' notice to file an objection to the designation of the Additional Stalking Horse Bidder and the Additional Bid Protections. Any objections to the designation of an Additional Stalking Horse Bidder, including any Additional Bid Protections, must (a) be in writing; (b) comply with

the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court within ten (10) calendar days after service of the applicable notice.

14.     If a timely objection is filed and served in accordance with the preceding paragraph, the proposed designation of an Additional Stalking Horse Bidder and any Additional Bid Protections will not be approved until either the objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

15.     For the avoidance of doubt, the Stalking Horse APA is deemed a Qualified Bid and, following the entry of any applicable Additional Stalking Horse Order, any Additional Stalking Horse APA executed by any of the Debtors and the transactions contemplated thereby, will each be deemed a Qualified Bid. The Stalking Horse Bidder is deemed a Qualified Bidder and, following the entry of any applicable Additional Stalking Horse Order, any Additional Stalking Horse Bidder will be deemed a Qualified Bidder. No party submitting a bid (other than the Stalking Horse Bidder and any Additional Stalking Horse Bidder) shall be entitled to a break-up fee or expense reimbursement. Any substantial contribution claims by any bidder are deemed waived.

## Due Diligence

16.     The Debtors have posted copies of all material documents related to the Debtors' businesses and assets to the Debtors' confidential electronic data room ("Data Room"). To access the Data Room, a party must submit to the Debtors' advisors Greenhill & Co, Inc. (the "Advisors"):

    (a) an executed confidentiality agreement in a form and substance that is satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

    (b) sufficient information, as reasonably determined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors to determine, in their reasonable business judgment, that the interested party intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

17.     An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "Potential Bidder" and such Bid (as defined below) shall be a "Potential Bid". A party may be deemed a Potential Bidder up until the Bid Deadline. As soon as practicable after becoming a Potential Bidder, the Debtors will provide such Potential Bidder access to the Data Room; provided, that, such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors shall provide prompt notice to the Consultation Parties, including to counsel to the Official Committee of Unsecured Creditors (the "Committee") and the Office of the United States Trustee, if access to the Data Room is terminated for any Potential Bidder or Qualified Bidder as set forth herein or denied to any interested party seeking such access. The

Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

18.     Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their Advisors regarding the ability of such Potential Bidder to consummate the Sale Transactions.

19.     Until the consummation of the sale of substantially all of the Debtors' assets, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment bankers, Greenhill & Co., LLC ("Greenhill"), Attn: Eric Mendelsohn (eric.mendelsohn@greenhill.com). To the extent any request for information by a Potential Bidder is denied by the Debtors, the Debtors shall immediately thereafter inform the Consultation Parties. In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room. Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder may be terminated, with prompt notice to the Consultation Parties, if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement, or (iv) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

20.     Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' businesses or assets to any person or entity (other than the Stalking Horse Bidder and any Additional Stalking Horse Bidder) who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors.

21.     Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the applicable assets prior to making a bid and (y) investigate and/or inspect any documents and the applicable assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. The Debtors, their respective estates, and their representatives and advisors are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bidding Procedures and the Sale Transactions.

**Bid Deadline**

22. A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than August 29, 2023 at 5:00 p.m. (prevailing Eastern Time) ("Bid Deadline"); provided, that, the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders, the Stalking Horse Bidder, and any Additional Stalking Horse Bidders. The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Debtors' businesses or assets specified in such bid. Any party that does not submit a bid by the Bid Deadline may not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

23. Bids should be submitted by email to the following Seller representatives:

<table>
<tr><td>Alan R. Lepene</td><td>Sean A. Gordon</td></tr>
<tr><td>THOMPSON HINE LLP</td><td>THOMPSON HINE LLP</td></tr>
<tr><td>3900 Key Center</td><td>Two Alliance Center</td></tr>
<tr><td>127 Public Square</td><td>3560 Lenox Road NE, Suite 1600</td></tr>
<tr><td>Cleveland, Ohio 44114-1291</td><td>Atlanta, Georgia 30326-4266</td></tr>
<tr><td><em>Alan.Lepene@ThompsonHine.com</em></td><td><em>Sean.Gordon@ThompsonHine.com</em></td></tr>
</table>

**Consultation Parties**

24. Throughout the bidding process, the Debtors and their Advisors will regularly and timely consult with (i) the Committee's professionals, (ii) PNC Bank, N.A., as agent ("Prepetition Revolving Agent") on behalf of the prepetition revolving lenders (the "Prepetition Revolving Lenders") and PNC Bank, N.A., as agent ("DIP Revolving Agent," together with Prepetition Revolving Agent, the "Revolving Agents") on behalf of the DIP revolving lenders (the "DIP Revolving Lenders"), (iii) EICF Agent LLC, as agent (the "Prepetition Term Agent") on behalf of the prepetition term lenders (the "Prepetition Term Lenders" together with the Prepetition Revolving Lenders, the "Prepetition Lenders") and EICF Agent LLC, as agent (the "DIP Term Agent," together with Prepetition Term Agent, the "Term Agents") on behalf of DIP term lenders (the "DIP Term Lenders" together with the DIP Revolving Lenders, the "DIP Lenders"), and (iii) any other person or group that in the Debtors' determination should be consulted regarding this process (each a "Consultation Party," and collectively, the "Consultation Parties"). In the event that a Consultation Party submits a Bid in the Auction, such party shall no longer be a Consultation Party with respect to the bidding and any Auction relating to the assets subject to such Bid until such time as such party withdraws such Bid. For the avoidance of doubt, the Debtors will consult with and provide copies of any Bids or confidential information to the Revolving Agents and the Term Agents unless and until the Revolving Agents or Term Agents submit a Credit Bid, in which case the applicable Revolving Agents or Term Agents that submitted a Credit Bid shall no longer be provided with such information.

25. The Debtors shall promptly provide copies of all Bids (as defined below) received by the Debtors to the Consultation Parties, but in no event later than the next day after such Bid is received; provided, that, the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.

26.    For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order. All rights of the Consultation Parties with respect to the proposed Sale Transactions are fully reserved.

27.    In the event that any Consultation Party or an affiliate of the foregoing submits a bid, any obligation of the Debtors to consult with the bidding party or its affiliates established under these Bidding Procedures will be waived, discharged, and released without further action; provided, that, the bidding party will have the same rights as any other Qualified Bidder set forth in these Bidding Procedures.

28.    Notwithstanding anything to the contrary herein, the Consultation Parties shall not share any inside information received from the Debtors or their Advisors related to the bid procedures with any of their respective members unless and until such member (a) affirmatively declares to the Debtors in writing via email that it will not submit a bid, (b) does not submit a bid by the Bid Deadline, or (c) affirmatively withdraws its bid (collectively, the "Bid Declaration Date"); provided that prior to the applicable Bid Declaration Date, the Debtors may provide information to the Consultation Parties in accordance with these Bidding Procedures on a professional eyes' only basis.

### Form and Content of Qualified Bid

29.    A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid ("Bid"). To constitute a "Qualified Bid" a Bid must include, at a minimum, the following:[3]

(a) Proposed Agreement. Each Bid must include an executed agreement ("Proposed Agreement") for the acquisition of all or some of the businesses or assets of the Debtors, together with a redline comparing the Proposed Agreement to the Stalking Horse APA or the Additional Stalking Horse APA, if applicable, in each case distributed by the Debtors to Potential Bidders. The Proposed Agreement shall:

i. include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the applicable Stalking Horse APA or Additional Stalking House APA distributed by the Debtors to Potential Bidders; and

---

[3] The Debtors may waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

     ii.   not condition the closing of the proposed Sale Transaction on the receipt of any third-party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

(b) <u>Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid</u>.

     i.   <u>Purchase Price</u>. Each Bid must clearly identify the purchase price to be paid ("<u>Purchase Price</u>") and specify the aggregate amount of cash and other consideration being offered.

     ii.   <u>Cash Requirements</u>. Subject to Paragraph 29(b)(v) below, each Bid with respect to the Transferred Assets must provide for a cash purchase price that exceeds the aggregate cash consideration set forth in the Stalking Horse APA by at least $3,050,000, which represents the sum of (i) the Bid Protections plus (ii) an initial overbid of $250,000. Additionally, subject to Paragraph 29(b)(v) below, each Bid with respect to any Excluded Assets must provide for a cash purchase that exceeds the aggregate cash consideration set forth in any Additional Stalking Horse APA by at least the sum of any Additional Bid Protections plus an initial overbid of $250,000. Any Credit Bid must also include sufficient cash consideration to pay in full all obligations secured by senior liens on the applicable assets (as applicable, the "<u>Secured Obligations</u>").

     iii.   <u>Assets / Business Purchased</u>. Each Bid must, in the Proposed Agreement, clearly identify the particular assets or business the Potential Bidder seeks to acquire from the Debtors. The Bid must clearly state the allocation of Purchase Price among Assets, as applicable. For the avoidance of doubt, any such allocation of the Purchase Price among the Assets shall not be binding on the Debtors or any third-party and shall remain subject to determination by the Court.

     iv.   <u>Assumed Liabilities</u>. Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

     v.   <u>Credit Bid</u>. Persons or entities holding a valid and perfected security interest in the Debtors' assets (each, a "<u>Secured Creditor</u>") may submit a credit bid ("<u>Credit Bid</u>") on such assets, to the extent permitted by applicable law or Court order, and the documentation governing the Debtors' prepetition or postpetition secured credit facilities; provided, that, any Credit Bid with respect to the Transferred Assets (including any Credit Bid described below in this Paragraph 29(b)(v)) must include sufficient cash consideration to pay in full all Bid Protections to the Stalking Horse Bidder, and any Credit Bid with respect to any Excluded Assets must include sufficient cash consideration to pay in full any Additional Bid Protections in connection with any Additional Stalking Horse APA with respect to such Excluded Assets.

1. In order to qualify to Credit Bid, a Secured Creditor, other than Revolving Agents or Term Agents, acting on behalf of the applicable Prepetition Lenders and applicable DIP Lenders, (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid, and (ii) that has a Security Interest in the assets being sold that is disputed, must have its Security Interest allowed prior to being able to submit a Credit Bid.

2. The Revolving Agents, on behalf of the Prepetition Revolving Lenders and DIP Revolving Lenders, and each have been deemed a Qualified Bidder to the extent of the applicable Secured Obligations owed to such lenders, and shall be permitted to submit a Credit Bid on behalf of the Prepetition Revolving Lenders and DIP Revolving Lenders, as applicable (which Credit Bid may include any adequate protection liens and claims granted in favor of Prepetition Revolving Lenders and DIP Revolving Lenders), for all or any portion of the Assets subject to and in accordance with the terms of the Intercreditor Agreement between the Revolving Agents and Term Agents (as amended in connection with the DIP financings) at any time prior to the end of the Auction. The Credit Bid may be submitted as a Back-Up Bid in the event that the sale to the Successful Bidder does not close, and such Credit Bid expressly states that it is being submitted solely for such purposes (a "Revolving Agent Backup Credit Bid"). If Revolving Agents submit a Credit Bid or a Revolving Agent Backup Credit Bid, they will promptly submit a form of agreement after the Auction to reflect the terms of the transaction comprising the Credit Bid or Revolving Agent Backup Credit Bid, as applicable. If Revolving Agents submit a Credit Bid and are selected as the Successful Bidder in accordance with the terms hereof, Revolving Agents shall not be required to take title to or ownership of, or have any obligation in connection with, the Assets or any portion of the Assets for which Revolving Agents are the Successful Bidder, but rather Revolving Agents shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to such Asset(s).

3. The Term Agents, on behalf of the Prepetition Term Lenders and DIP Term Lenders, have been deemed a Qualified Bidder to the extent of the Secured Obligations owed to such lenders, and shall be permitted to submit a Credit Bid on behalf of the Prepetition Term Lenders and DIP Term Lenders (which Credit Bid may include any adequate protection liens and claims granted in favor of Prepetition Term Lenders and DIP Term Lenders), for all or any portion of the Assets subject to and in accordance with the terms of the Intercreditor Agreement between the Revolving Agents and Term Agents (as amended in connection with the DIP financings) at any time prior to the end of the Auction. The Credit Bid may be

submitted as a Back-Up Bid in the event that the sale to the Successful Bidder does not close, and such Credit Bid expressly states that it is being submitted solely for such purposes (a "Term Agent Backup Credit Bid"). If Term Agents submit a Credit Bid or a Term Agent Backup Credit Bid, they will promptly submit a form of agreement after the Auction to reflect the terms of the transaction comprising the Credit Bid or Term Agent Backup Credit Bid, as applicable. If Term Agents submit a Credit Bid and are selected as the Successful Bidder in accordance with the terms hereof, Term Agents shall not be required to take title to or ownership of, or have any obligation in connection with, the Assets or any portion of the Assets for which Term Agents are the Successful Bidder, but rather Term Agents shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to such Asset(s).

(c)   Unconditional Offer / Contingencies. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or with respect to a Back-Up Bid until the earlier of (a) the first business day after the close of the Sale Transaction with the Successful Bidder for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale Transaction with the Successful Bidder for the Assets bid upon by such Back-up Bidder.

(d)   Proof of Financial Ability to Perform. Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.  For the avoidance of doubt, such information shall not be necessary for the portion of any bid which is a Credit Bid.

(e)   Designation of Contracts and Leases. Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder

seeks to assume and receive an assignment of; and (ii) each and every other contract and lease of the Debtors that the Potential Bidder seeks to assume and receive an assignment of.

(f) <u>Required Approvals</u>. A statement or evidence (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal approval, (c) the outcome or review of unperformed due diligence, or (d) regulatory contingencies (except as otherwise provided in this section), (ii) that the Potential Bidder has made or will make in a timely manner any necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the applicable Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

(g) <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transactions), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

(h) <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of the Stalking Horse Bid and any Additional Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

(i) <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Debtors, the Debtors' prepetition secured creditors, and the Debtors' postpetition lender(s), if any, other known Potential Bidders, and/or any officer or director of the Debtors.

(j) <u>Joint Bids</u>. Subject to Paragraph 29(k) below, the Debtors may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

(k) <u>Representations and Warranties</u>. Except for a Credit Bid submitted by a Revolving Agent or a Term Agent, each Bid must include the following representations and warranties.

    i. a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable business or asset prior to submitting its Bid;

    ii. a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the businesses or assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the businesses or assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

    iii. a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

    iv. a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) taken any other action to prevent a transparent and competitive auction process; provided, that, certain joint bids may be permitted as set forth herein;

    v. a statement that all proof of financial ability to consummate the Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

    vi. a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

2. A Potential Bidder must also accompany its Bid with:

(a) a cash deposit in the amount of 10% of the proposed purchase price ("<u>Good Faith Deposit</u>"); provided, that, a Potential Bidder submitting a Credit Bid will not be required to provide a Good Faith Deposit in cash for any portion of the Purchase Price that is a Credit Bid, but any such Potential Bidder submitting a Credit Bid other than Revolving Agent, for the benefit of itself and the Prepetition Revolving Lenders or DIP Revolving Lenders, as applicable, must instead agree to a waiver

of it secured claim in an equal amount to the Good Faith Deposit under the same conditions that would trigger waiving the Good Faith Deposit of a cash bidder;

(b) the contact information of the specific person(s) whom the Debtors or their Advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

(c) a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

### Credit Bids for Unencumbered Assets of the Debtors

30.    If (i) any Potential Bidder seeks to acquire any assets of the Debtors that are unencumbered by liens (collectively, "Unencumbered Assets"), (ii) such Potential Bidder is named a Successful Bidder in accordance with these Bid Procedures, and (iii) any portion of such Successful Bid is a Credit Bid, then the Court shall determine the value of any such Unencumbered Assets at the Sale Hearing and such Successful Bidder may be required to provide additional cash consideration to the Debtors equal to the value of such Unencumbered Assets as determined by the Court.

### Good Faith Deposit

31.    The Good Faith Deposit submitted with a Potential Bid must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors ("Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, a Good Faith Deposit by the Stalking Horse Bidder and any Additional Stalking Horse Bidder or other Qualified Bidders shall only be for purposes of this process. No party, including any prepetition lenders or postpetition lenders, shall have any lien, claim, or right with respect to any Good Faith Deposit, and such funds shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bidding Procedures or, in the case of the Good Faith Deposit provided by the Stalking Horse Bidder, the terms of the Stalking Horse APA.

### Review of Bids; Designation of Qualified Bids

32.    The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

33.     A Bid that is reasonably determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid (including the Stalking Horse Bid and any Additional Stalking Horse Bid) will be considered a "Qualified Bidder." For avoidance of doubt, each Revolving Agent, for the benefit of itself and the Prepetition Revolving Lenders or DIP Revolving Lenders, as applicable, and each Term Agent, for the benefit of itself and the Prepetition Term Lenders or DIP Term Lenders, as applicable, shall be deemed to be a Qualified Bidder for all purposes.

34.     By no later than one (1) business day prior to the Auction ("Qualified Bid Deadline"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline. By no later than the Qualified Bid Deadline, the Debtors shall notify the Stalking Horse Bidder as to whether or not any bids constitute Qualified Bids with respect to the Transferred Assets and shall provide the Stalking Horse Bidder with a copy of any Qualified Bids with respect to the Transferred Assets.

35.     In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

(a) the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (provided, that, for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

(b) the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

(c) the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the Stalking Horse Bidder's rights to the Bid Protections and any Additional Stalking Horse Bidder's rights to the Additional Bid Protections;

(d) any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including replacement letters of credit;

(e) the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; tax leakage; and required governmental or other approvals;

(f) the impact on employees and employee claims against the Debtors;

(g) the impact on trade creditors; and

(h) any other factors the Debtors may deem relevant, consistent with their fiduciary duties.

36.    A Bid that contemplates the liquidation of some or all of the Debtors' businesses or assets shall not be disqualified from being a Qualified Bid solely for that reason. The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

37.    Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided, that, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures; provided further, that the Stalking Horse APA may be terminated by the Stalking Horse Bidder in accordance with the terms thereof. For the avoidance of doubt, any material amendment to the Stalking Horse APA and any Additional Stalking Horse APA shall be shared with counsel to the Creditors' Committee as promptly as possible and filed with the Bankruptcy Court within one (1) business day of such amendment, or as soon as reasonably practicable thereafter, and the Debtors will take into account all such amendments or modifications at the Auction.

38.    Subject to the terms of the Bidding Procedures Order and these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any Assets and the right under applicable law to credit bid claims secured by such liens shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. For the avoidance of doubt, any Credit Bid for the Assets shall be subject to any lien challenge rights of the Creditors' Committee set forth in any Court order.

39.    Any Qualified Bidder intending to credit bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Debtors, the Stalking Horse Bidder, and any Additional Stalking Horse Bidder by the Bid Deadline. For the avoidance of doubt, such Qualified Bidder that provides notice of intent to submit a Credit Bid will no longer be a Consultation Party with respect to the bidding on the Assets subject to the Credit Bid and auction relating to the assets subject to such Credit Bid until such time as such party withdraws such Credit Bid.

### Failure to Receive Qualified Bids Other Than the Stalking Horse Bid(s)

40.    If no Qualified Bid (other than the Stalking Horse Bid and any Additional Stalking Horse Bid) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction with respect to the assets subject to such Stalking Horse Bid or any Additional Stalking Horse Bid, and shall file a notice with the Court indicating that no Auction will be held and the Stalking Horse Bidder and any Additional Stalking Horse Bidder will be named Successful Bidder(s).

## Auction Procedures

41.     If the Debtors receive two or more Qualified Bids with respect to the applicable assets, the Debtors shall conduct the Auction on August 31, 2023, beginning at 10:00 a.m. (prevailing Eastern Time) at (i) the offices of Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801, and/or (ii) virtually, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties and upon notice to all parties in interest.  Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Debtors, and the Consultation Parties shall be permitted to attend and observe the Auction in person. All other parties permitted to attend by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules may attend virtually pursuant to procedures to be provided upon request by contacting Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn. Mark L. Desgrosseilliers, Esq. (desgross@chipmanbrown.com)) at least forty-eight (48) hours prior to the start of the Auction.

42.     The following auction rules shall apply to the Auction to promote a spirited and robust auction ("Auction Rules"). All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The starting bid ("Starting Bid") shall be the highest or best Qualified Bid, as determined by the Debtors in consultation with the Consultation Parties. If the Stalking Horse Bid and any Additional Stalking Horse Bid, if applicable, is selected as the Starting Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), plus the Bid Protections and Additional Bid Protections, if applicable, plus a minimum overbid increment of $250,000. If the Stalking Horse Bidder or any Additional Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder or any Additional Stalking Horse Bidder, as applicable, will be entitled to credit bid on a dollar-for-dollar basis the maximum amount of the Bid Protections or Additional Bid Protections, as applicable.

43.     Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; provided, that, certain joint bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

44.     All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; provided, that, parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.

45.     The Debtors shall conduct an Auction for the Debtors' businesses and assets on a consolidated or semi-consolidated basis pursuant to the Auction Rules. To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets/businesses (each, a "Sub-Auction") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets or businesses which were the subject of an earlier Sub-Auction. The Debtors may, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder"). The Debtors may also identify, in consultation with the Consultation Parties, a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "Back-Up Sub-Auction Bid" and the bidder submitting such bid, a "Back-Up Sub-Auction Bidder").

46.     If the Debtors, in the exercise of their reasonable business judgment and in consultation with the other Consultation Parties, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Debtors' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' assets or business on a consolidated or semi-consolidated basis, then the Debtors may declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

47.     The Debtors may, in the exercise of their business judgment and in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective business or assets to be acquired (each, a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder"). The Debtors may also identify a Qualified Bidder, in consultation with the Consultation Parties, that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "Back-Up Bid" and the bidder submitting such bid, a "Back-Up Bidder"); provided, that notwithstanding anything to the contrary herein, the Stalking Horse Bidder shall have no obligation to act as a Back-Up Bidder following the Auction (if any is conducted) in the event that the Stalking Horse Bidder is not selected as the Successful Bidder.

48.     Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, each Successful Bidder shall (i) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount

required to increase the Successful Bidder's Good Faith Deposit to an amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by the Stalking Horse Bidder, an Additional Stalking Horse Bidder, or other Qualified Bidders to such designated account shall only be for purposes of this process. No party, including any prepetition lender or postpetition lender, has or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bidding Procedures. A Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

49.      At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) (other than the Stalking Horse Bid and any Additional Stalking Horse Bid) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

50.      As set forth above, the Debtors reserve their right, in their reasonable business judgment and in consultation with the Consultation Parties, to announce at the Auction modified or additional procedures for conducting the Auction.

51.      Any request by a Potential Bidder for modification of the deadlines set forth in these Bidding Procedures shall be considered in good faith by the Debtors, and in consultation with the Consultation Parties.  The Debtors shall consent to the Court's consideration of any such modification requests, if necessary, on an expedited basis.

## Post-Auction Process

52.      Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

53.      Within one (1) day after the conclusion of the Auction, but in no event no less than forty-eight (48) hours prior to the Sale Objection Deadline, the Debtors shall file the Successful Bidder's adequate assurance documentation.

54.      Within two (2) business days after the conclusion of the Auction, the Successful Bidder shall file a schedule of all executory contracts and unexpired leases it shall seek to cure and have the Debtors assumed and assign to it (the "Successful Bidder Assumption Schedule").  Upon filing of the Successful Bidder Assumption Schedule, the Successful Bidder shall not have the ability to remove any executory contracts and unexpired leases from the Successful Bidder Assumption Schedule without the consent of the Debtors and the Committee, but may file subsequent modifications to add additional executory contracts and leases; provided, however,

notwithstanding anything to the contrary herein, the applicable deadlines for the Stalking Horse Bidder to identify executory contracts and unexpired leases for assumption and assignment shall be as set forth in the Stalking Horse APA; provided, however, that the Stalking Horse Bidder, if the Successful Bidder, shall not remove any executory contracts and unexpired leases from the Successful Bidder Assumption Schedule after the commencement of the Sale Hearing.

55.     Within two (2) business days after the Auction, the Debtors shall direct the Escrow Agent to return the Good Faith Deposit of any bidder (including the Stalking Horse Bidder and any Additional Stalking Horse Bidder), together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. The Good Faith Deposit of each Back-Up Bidder shall be returned, together with interest accrued thereon, within two (2) business days after the earlier of (a) consummation of the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder or (b) 30 days after entry of an order approving the Sale Transaction with the Successful Bidder for the assets bid upon by such Back-Up Bidder. Upon the authorized return of any such Good Faith Deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

56.     Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sale Transactions.

57.     In addition to the foregoing, the Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate the Sale Transactions according to these Bidding Procedures. In addition to receipt of a Good Faith Deposit, the Debtors specifically reserve the right to seek all additional available damages from a defaulting Successful Bidder or Back-Up Bidder.

58.     Notwithstanding the foregoing, the Good Faith Deposit, including the amount thereof, and any remedies against the Stalking Horse Bidder and any Additional Stalking Horse Bidder shall be governed by the Stalking Horse APA or Additional Stalking Horse APA, as applicable.

59.     To assist Revolving Agents in complying with applicable regulatory requirements, each Successful Bidder (and each Back-Up Bidder upon becoming a Successful Bidder) shall disclose to Revolving Agents at the conclusion of the Auction the identity of the person(s), entity(ies), and/or financial institution(s) that will be funding the cash portion of each Successful Bid.

### Notices Regarding Assumption and Assignment

60.     The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases of the Debtors in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Objections and Hearing

61.     Objections to the Sale Transactions (each, a "Sale Objection"), shall: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court; and (vi) be served upon (a) proposed counsel for the Debtors, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114-1291 (Attn: Alan R. Lepene (alan.lepene@thompsonhine.com) and Sean A. Gordon (sean.gordon@thompsonhine.com)), and Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (b) proposed counsel for the Committee, Lowenstein Sandler LLP, 1251 Avenue of the America, New York, NY 10020 (Attn: Jeffrey Cohen, Esq. (jcohen@lowenstein.com), Eric Chafetz, Esq. (echafetz@lowenstein.com), and Phillip Khezri, Esq. (pkhezri@lowenstein.com)); (c) counsel for the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Matthew M. Roose, Esq. (matthew.roose@ropesgray.com) and Daniel G. Egan (daniel.egan@ropesgray.com)), and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)); (d) counsel for any Additional Stalking Horse Bidder; (e) counsel for the Revolving Agents, Blank Rome LLP, 1201 Market Street, Suite 800 Wilmington, DE 19801 (Attn: Regina S. Kelbon (regina.kelbon@blankrome.com) and Gregory F. Vizza (gregory.vizza@blankrome.com)); (f) counsel for the Term Agents, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020 (Attn: David T.B. Audley (audley@chapman.com) and Carey J. Gaughan (gaughan@chapman.com)); and (g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph Cudia (Joseph.Cudiar@usdoj.gov)) by September 5, 2023 at 5:00 p.m. (prevailing Eastern Time); provided, that, the Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

62.     An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

63.     Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the Sale or to the consummation and performance of a sale transaction contemplated by a purchase agreement with a Debtor and a Successful Bidder, including the transfer of the Assets to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code. Any objection filed after the Sale Objection Deadline will not be considered by the Court.

## Consent to Jurisdiction and Authority as Condition to Bidding

64.    All Potential Bidders (including the Stalking Horse Bidder and any Additional Stalking Horse Bidder) that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**<u>EXHIBIT 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*[1] | Case No. 23-10961-BLS |
| Debtors. | (Jointly Administered) |

### NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS

PLEASE TAKE NOTICE that on August 18, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (i) Approving Bidding Procedures for the Sale of Debtors' Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice thereof, (v) Approving Contract Assumption and Assignment Procedures, and (vi) Granting Related Relief* (Dkt. No. _____) ("Bidding Procedures Order"),[2] authorizing the above captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction ("Auction") to select the party or parties to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

**Copies of the Bidding Procedures Order or other documents related thereto are available by visiting the Debtors' Case Website at *https://dm.epiq11.com/casse/williamsindustrialservicesgroup/info*.**

**PLEASE TAKE FURTHER NOTICE** that the **Bid Deadline is August 29, 2023 at 5:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the **Auction**, at which they will consider proposals submitted by the Bid Deadline to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, **on August 31, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

the Debtors, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1512 N. Market Street, Suite 5400, Wilmington, DE 19801. Creditors and holders of equity interests in the Debtors may observe the Auction virtually. Those parties interested in observing the Auction virtually must contact counsel to the Debtors no later than 9:00 a.m. (prevailing Eastern Time) on August 31, 2023 to request instructions for accessing the virtual platform by contacting Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers, Esq. ([desgross@chipmanbrown.com](mailto:desgross@chipmanbrown.com))) at least forty-eight (48) hours prior to the start of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that on **September 7, 2023, at 2:00 p.m. (prevailing Eastern Time)** or as soon thereafter as the Debtors may be heard, shall be the date and time for the hearing at which the Court will consider approval of the Sale (**"Sale Hearing"**).

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to approval of the Sale (**"Sale Objection Deadline"**) is set for **September 5, 2023, at 5:00 p.m. (prevailing Eastern Time)**.[3] Any objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Court's Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection; and (iv) be filed with the Court and served on counsel to the Debtors so as to be actually received by the no later than the Sale Objection Deadline.

*[Remainder of Page Intentionally Blank]*

---

[3] Parties may object to the Sale based on the identity of the Successful Bidder (if other than the Stalking Horse Bidder) at any time prior to the commencement of the Sale Hearing.

Dated: August ▢, 2023.
Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
*desgross@chipmanbrown.com*

  -and-

  Sean A. Gordon (admitted *pro hac vice*)
  Austin B. Alexander (admitted *pro hac vice*)
**THOMPSON HINE LLP**
  Two Alliance Center
  3560 Lenox Road NE, Suite 1600
  Atlanta, Georgia 30326-4266
  Telephone: (404) 541-2900
  Facsimile: (404) 541-2905
  *Sean.Gordon@thompsonhine.com*
  *Austin.Alexander@thompsonhine.com*

  Alan R. Lepene (admitted *pro hac vice*)
  Scott B. Lepene (admitted *pro hac vice*)
**THOMPSON HINE LLP**
  3900 Key Center
  127 Public Square
  Cleveland, Ohio 44114-1291
  Telephone: (216) 566-5500
  Facsimile: (216) 566-5800
  *Alan.Lepene@thompsonhine.com*
  *Scott.Lepene@thompsonhine.com*

  *Proposed Counsel for Debtors*

**<u>Exhibit 3</u>**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES<br>GROUP INC., *et al.*[1]<br><br><br>Debtors. | Chapter 11<br><br>Case No. 23-10961-BLS<br><br>(Jointly Administered) |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on August ___, 2023, the United States Bankruptcy Court for the District of Delaware ("Court") entered the *Order (i) Approving Bidding Procedures for the Sale of Debtors' Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice thereof, (v) Approving Contract Assumption and Assignment Procedures, and (vi) Granting Related Relief* (Dkt. No. _____) ("Bidding Procedures Order"),[2] authorizing the above captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction ("Auction") to select the party to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

   **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures, the Debtors may assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as Exhibit A, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' Case Website (*https://dm.epiq11.com/casse/williamsindustrialservicesgroup/info*). The Debtors have conducted a review of their books and records and have determined that the cure amount for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

unpaid monetary obligations under such Assigned Contracts is as set forth on Exhibit A attached hereto ("Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Court's Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be actually received by counsel to the Debtors prior to **the date fourteen days after the date of this notice at 5:00 p.m. (prevailing Eastern Time) ("Cure Objection Deadline")**.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Costs in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such executory contracts and/or unexpired leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

Dated: August ☐, 2023.
Wilmington, Delaware

/s/ Mark L. Desgrosseilliers

Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
*desgross@chipmanbrown.com*

-and-

Sean A. Gordon (admitted *pro hac vice*)
Austin B. Alexander (admitted *pro hac vice*)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326-4266
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
*Sean.Gordon@thompsonhine.com*
*Austin.Alexander@thompsonhine.com*

Alan R. Lepene (admitted *pro hac vice*)
Scott B. Lepene (admitted *pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
*Alan.Lepene@thompsonhine.com*
*Scott.Lepene@thompsonhine.com*

*Proposed Counsel for Debtors*

**EXHIBIT A TO CURE NOTICE**

**SCHEDULE OF CURE COSTS AND TRANSFERRED CONTRACTS**