## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10961 (BLS)<br><br>(Jointly Administered)<br><br>**Related Docket No. 162** |

### SUPPLEMENTAL DECLARATION OF EDWARD T. GAVIN, CTP, NCPM IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER APPROVING THE DEBTORS' (A) KEY EMPLOYEE RETENTION PROGRAM, (B) KEY EMPLOYEE INCENTIVE PROGRAM, AND (C) GRANTING CERTAIN RELATED RELIEF

Edward T. Gavin, CTP, NCPM, certifies, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a Managing Director of the firm Gavin/Solmonese LLC, and I am the Debtors' proposed Chief Restructuring Officer ("**CRO**"). In my capacity as the Debtors' proposed CRO, I am generally familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2.  This Supplemental Declaration (the "**Supplemental Declaration**") is given in support of the *Motion for an Order Approving the Debtors' (A) Key Employee Retention Program, (B) Key Employee Incentive Program, and (C) Granting Certain Related Relief* [Dkt. No 162] (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

"**Motion**") and supplements the Gavin Declaration that was filed in support of the Motion.[2]  In submitting this Supplemental Declaration, I have considered and/or relied upon, among other things, (a) my experience in chapter 11 cases, including with key employee retention plans and key employee incentive plans, (b) the Motion, (c) correspondence with the Debtors' management, and (d) correspondence with other professionals and advisors to the Debtors.

3. I am authorized to execute this Supplemental Declaration on behalf of the Debtors. I am over the age of 18 years old.  If called upon to testify, I could and would competently testify to the matters set forth herein.

4. As further clarification in formulating the KERP and KEIP, which are described in the Motion, these bonus plans, approved by the Debtors' Board of Directors (the "**Board**"), were established using market data provided by the Debtors' compensation consultant and reviewed by the Debtors' investment banker, who determined the amounts to be reasonable.  The KERP was developed using the high value – high risk methodology, which was applied in the Debtors' pre-petition retention plan.  The high value-high risk participants changed from January to July due to attrition and increased workload for key individuals.  In addition, once I was appointed as the Debtors' CRO, I reviewed the program independently and used external sources of compensation metrics to vet the personnel and amounts included.

5. In determining the amounts of the individual awards for employees governed by the KERP and KEIP and which employees would participate, the Debtors included high risk-high value employees.  Some of these personnel acquired additional responsibilities as a result of attrition while other positions were singular in nature but consisted of critical tasks that no other employee could handle.  In connection with these plans, I evaluated each covered KEIP

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

employee's amount based on cost to replace if a covered KEIP employee resigned during the pendency of the above-captioned case to ensure that the KEIP incentive costs were less than the replacement costs.

6.  A critical component of the KERP and KEIP is to ensure that these key employees can assist with operating the Debtors' business as a going concern through the consummation of the sale of the Debtors' assets. The departure of KERP and KEIP employees could hinder the Debtors' ability to successfully operate through the consummation of the sale of Debtors' assets without disruption, negative purchase price adjustment, or an outright failure to close.

I hereby certify, under penalty of perjury, that the foregoing factual statements made by me are true to the best of my knowledge, information, and belief.

Date: August 29, 2023    */s/ Edward T. Gavin*
                        Edward T. Gavin, CTP, NCPM