## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*[1] | Case No. 23-10961-BLS |
| | (Jointly Administered) |
| Debtors. | |

**DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) ESTABLISHING NOTICE AND HEARING PROCEDURES FOR TRADING IN OR DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO EQUITY SECURITIES IN WILLIAMS INDUSTRIAL SERVICES GROUP INC.; AND (II) GRANTING RELATED RELIEF**

The above captioned debtors and debtors in possession (collectively, the "Debtors[2]") file this ("Motion") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and a final order substantially in the form attached hereto as **Exhibit B** (the "Final Order") establishing notice and hearing procedures that must be followed before certain transfers of, or certain declarations of worthlessness with respect to, equity securities in Debtor Williams Industrial Services Group, Inc. ("Williams"), or of any beneficial interest therein, are deemed effective. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Tracy Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* ("First Day Declaration") [D.I. 2]. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

1.      By this Motion, pursuant to sections 105(a), 362(a)(3) and 541 of title 11 of the United States Code (the "Bankruptcy Code"), the Debtors seek entry of an Interim Order, on an expedited basis, establishing notification and hearing procedures that must be satisfied before certain transfers of, or certain declarations of worthlessness with respect to, equity securities in Williams, or of any beneficial interests therein, including Options (as defined below) to acquire such securities, are deemed effective. The procedures are designed to protect and preserve the potential value of the Debtors' U.S. federal and state tax attributes, including but not limited to, net operating losses and net operating loss carryforwards ("NOLs" and, collectively with capital losses, net unrealized built-in losses, tax and business credits, and certain other tax attributes, the "Tax Attributes").

2.      If no such restrictions are imposed by this Court, the Debtors' ability to use, or realize the value of, their Tax Attributes could be impaired or even eliminated. This could lead to significant negative consequences for the Debtors, their estates, creditors, stakeholders, and other parties in interest.

3.      To preserve, to the fullest extent possible, the Tax Attributes, the Debtors seek immediate procedural relief that will enable the Debtors to closely monitor certain transfers of, or certain declarations of worthlessness with respect to, Williams equity securities so as to be in a position to act expeditiously, if necessary, to preserve their Tax Attributes. The Debtors request that the Court enter an Interim Order preserving the status quo in this regard.

4.      In addition, the Debtors request that the Court schedule a final hearing (the "<u>Final Hearing</u>")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

5.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## <u>JURISDICTION, VENUE AND PREDICATES FOR RELIEF</u>

6.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these chapter 11 cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7.      The predicates for the relief requested by this Motion are sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code and Rules 3001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

8.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

---

[3] The period between the date this Motion is filed and the Final Hearing is referred to herein as the "<u>Interim Period</u>." The Debtors estimate that the Interim Period will last twenty-one (21) days where such an estimate is required for the purposes of the relief requested herein.

## BACKGROUND

### A.    OVERVIEW

9.      On July 22, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On August 2, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in these chapter 11 bankruptcy cases.

10.     On August 19, 2023, the Court entered an Order (i) Approving Bidding Procedures for the Sale of Debtors' Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice Thereof, (v) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases, (vi) Authorizing and Approving the Debtors' Entry into the Stalking Horse APA, (vii) Authorizing and Approving Bid Protections, and (viii) Granting Related Relief [D.I. 196] (the "Bidding Procedures Order"), which approved, among other things, certain procedures in connection with the sale or sales of certain of the Debtors' assets (the "Bidding Procedures").

11.     In connection with the Bidding Procedures and as approved in the Bidding Procedures Order, Debtors executed an Asset Purchase Agreement (the "Stalking Horse APA") with Energy Solutions. The Stalking Horse APA identifies Energy Solutions Nuclear Services, LLC as the proposed Stalking Horse Bidder, and provides certain Bid Protections as specified therein.

12.     Pursuant to the Bidding Procedures Order, the deadline by which all bids for the Assets must be actually received by the parties specified in the Bidding Procedures is August 29, 2023, at 5:00 p.m. (prevailing Eastern Time).

13.     In accordance with Local Rule 6004-1(c)(ii)(A), the date and time of the Auction, if needed, is August 31, 2023, at 10:00 a.m. (prevailing Eastern Time).

14.     Additional background and information regarding the Debtors, including its business operations, its corporate and capital structure, its restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**B.     THE DEBTORS' TAX ATTRIBUTES**

15.     The Debtors have generated, and may currently be generating, NOLs and other Tax Attributes. Generally, a company generates NOLs if its operating expenses exceed the revenues it has earned during a single tax year. As of December 31, 2022, the Debtors estimated that Williams had valuable Tax Attributes including, without limitation, (i) federal NOLs in excess of $200 million, (ii) state NOLs in excess of $250 million, (iii) foreign operating loss carryforwards in excess of $5 million, and foreign tax credit carryforwards in excess of $4 million. Although the value of the Debtors' Tax Attributes is contingent on the amount of the Debtors' taxable income that may be offset by the Tax Attributes before their expiration and any existing limitations on their usage, the Debtors' NOLs and other Tax Attributes may translate into future tax savings for the Debtors that are valuable assets of the Debtors' estates.

16.     The Debtors' Tax Attributes are a valuable asset because title 26 of the United States Code (the Internal Revenue Code of 1986, as amended, the "IRC") generally permits corporations to offset the Debtors' taxable income in the taxable year in which such Tax Attributes are realized, with any excess generally being carried forward to reduce the Debtors' future federal income tax liabilities, potentially making funds available to meet working capital requirements

and service debt. *See* 26 U.S.C. §§ 38, 39, 172, 904.[4] In particular, the Tax Attributes may be available to the Debtors to offset future tax liability arising from ordinary course activity and other transactions contemplated during the course of the Chapter 11 Cases, including associated with a sale under section 363 of the Bankruptcy Code.

### C.    POTENTIAL LIMITATIONS ON THE USE OF THE DEBTORS' TAX ATTRIBUTES

17.    As a general matter, if a corporation undergoes an "ownership change," section 382 of the IRC ("Section 382") could impair the corporation's ability to use its Tax Attributes to offset future taxable income. *See* 26 U.S.C. § 382.[5] Under Section 382, an ownership change occurs when the percentage, by value, of a company's equity held by one or more persons holding five percent or more of the stock (in certain cases, taking into account Options to acquire such stock) (the "5% Shareholders") has increased by more than 50 percentage points over the lowest percentage of equity owned by such 5% Shareholders at any time during the preceding three-year period or since the last ownership change, as applicable (the "Testing Period"). *See id*. at § 382(g). If there has been a prior ownership change, the Testing Period for determining whether another ownership change has occurred begins on the first day following the date of the prior ownership change. *See id*. at § 382(i).

18.    An ownership change can also occur as a result of a "worthless stock deduction" claimed by any "50% Shareholder."  A 50% Shareholder is any person that owned 50 percent or more of a corporation's stock at any time during the three-year period ending on the last day of the taxable year with respect to which the worthless stock deduction is claimed. *See* 26 U.S.C.

---

[4] Some states have similar rules that may allow the NOLs to reduce the Debtors' state income tax liability.

[5] Section 383 of the IRC imposes a similar limitation to certain tax credits of a corporation. For clarity, this discussion refers only to Section 382, but the rules, principles, and policies discussed therein are generally applicable to section 383's limit to a corporation's use of credits after an ownership change and are incorporated by reference into section 383 by the IRC and the Treasury Regulations promulgated thereunder. *See* 26 U.S.C. § 383(e); 26 C.F.R. § 1.383-1(g).

382(g)(4)(D).  If the 50% Shareholder still owns the corporation's stock at the end of the year, Section 382 essentially treats the person as newly purchasing the stock on the first day of the next taxable year.  Notably, while the seminal case of *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565 (2d Cir. 1991) is generally relied upon to support equity trading motions, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

19.     The general purpose of Section 382 is to prevent a company with taxable income from reducing its tax obligations by acquiring control of another corporation with NOLs, net unrealized built-in loss ("NUBIL") or certain other tax attributes, so called "trafficking in losses." To achieve this objective, Section 382 limits the amount of taxable income that can be offset by a corporation's "pre-change losses" to an annual amount equal to the product of the long-term tax-exempt rate (as published monthly by the U.S. Department of the Treasury) as of the ownership change date and the fair market value of the equity of the loss corporation immediately before the ownership change (a "Section 382 Limitation").[6]  Pre-change losses include the Tax Attributes and, potentially, certain other deductions.  Once an NOL or certain other Tax Attributes are limited under Section 382, their use is limited forever, while the use of any NUBIL is limited for a period of five years beginning on the date of the ownership change.

### D.     PROPOSED PROCEDURES FOR TRADING IN OR DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO EQUITY SECURITIES

20.     By establishing procedures for continuously monitoring the trading of, and declarations of worthlessness with respect to, Williams equity securities, the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that such

---

[6] For ownership changes occurring in August 2023, the applicable long-term tax-exempt rate is 3.05 percent. If a corporation has a "net unrealized built-in gain" ("NUBIG") in their assets as of the time of the ownership change, the Section 382 Limitation may be increased in certain circumstances.

activities may jeopardize the use of their Tax Attributes. Accordingly, the Debtors request that this Court enter the Interim Order and Final Order establishing procedures for certain trading in, and certain declarations of worthlessness with respect to, equity securities. The proposed procedures are as follows:[7]

### Procedures for Trading in Equity Securities

a)  Any purchase, sale, or other transfer of equity securities (including any transfer of Options, as defined below, to acquire such securities or any exercise thereof) in Williams on or after the Petition Date in violation of the procedures set forth herein (including notice requirements) shall be null and void *ab initio* as an act in violation of the automatic stay under sections 362 and 105(a) of the Bankruptcy Code; and the person or entity making such purchase, sale, or other transfer shall be required to take remedial actions specified by the Debtors, which may include the actions specified in Private Letter Ruling 201010009 (Dec. 4, 2009), to appropriately reflect that such transfer is null and void *ab initio*;

b)  Any person or entity (as defined in Treasury Regulations Section 1.382-3(a)) who currently is or becomes a Substantial Shareholder (defined in subparagraph (f) below) shall file with this Court, and serve on counsel to the Debtors and counsel to the Committee a notice of such status, in the form of **Exhibit C-1** attached hereto, on or before the later of (i) 21 calendar days after the date of the Notice of Interim Order or Notice of Final Order (as defined below and as applicable) and (ii) 10 calendar days after becoming a Substantial Shareholder.  For the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Equityholder even if no notice has been filed pursuant to this subparagraph (b);

c)  At least 21 calendar days prior to effectuating any transfer of equity securities (including Options, as defined below, to acquire such securities or any exercise thereof) that would result in an increase in the amount of Williams Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder or potential Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors and counsel to the Committee advance written notice, in the form of **Exhibit C-2** attached

---

[7] With respect to the procedures set forth herein, the Debtors request that the Court permit the Debtors to waive, in writing, in their reasonable discretion following consultation with the Committee, any and all restrictions, stays and notification procedures contained in this Motion or the Interim/Final Order; *provided, however,* the Debtors shall provide notice of any such waiver to (i) the Office of the United States Trustee for Region 3 (the "U.S. Trustee") and (ii) counsel to the Committee in writing within three business days thereafter.

hereto, of the intended transfer of equity securities (including Options to acquire such securities, as defined below);

d)    At least 21 calendar days prior to effectuating any transfer of equity securities (including Options, as defined below, to acquire such securities) that would result in a decrease in the amount of Williams Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors and counsel to the Committee advance written notice, in the form of **Exhibit C-3** attached hereto, of the intended transfer of equity securities (the notices required to be filed and served under subparagraph (c) and this subparagraph (d), each a "Notice of Proposed Transfer");

e)    The Debtors and the Committee shall have 21 calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities (including Options, as defined below, to acquire such securities) described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. During such 21-day period, and while any objection by the Debtors (or any other party in interest) to the proposed transfer is pending, such Substantial Shareholder shall not effectuate the proposed transfer to which the Notice of Proposed Transfer relates and thereafter shall do so only in accordance with the Court's ruling, and, as applicable, any appellate rules and procedures. If neither the Debtors nor the Committee objects within such 21-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this subparagraph (e) must be the subject of additional notices as set forth herein, with an additional 21-day waiting period; and

f)    For purposes of these procedures, (A) a "Substantial Shareholder" is any person or entity (as defined in Treasury Regulations Section 1.382-3(a)) which beneficially owns at least 4.50% of all issued and outstanding shares (equal to, as of the Petition Date, approximately 1,224,467.60 shares)[8] of the common stock of Williams ("Williams Stock") and (B) "beneficial ownership" (of any variation thereof) of Williams Stock and Options to acquire Williams Stock shall be determined by the Debtors, in accordance with applicable rules under Section 382, Treasury Regulations promulgated thereunder (other than Treasury Regulations Section 1.382-2T(h)(2)(i)(A) (that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity) and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct, indirect and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially

---

[8] Based on approximately 4.50% of 27,210,391 shares of Williams Stock issued and outstanding as of the Petition Date.

own all shares owned or acquired by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations Section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

### *Procedures for Declarations of Worthlessness of Equity Securities*

a) Any declaration of worthlessness of equity securities of Williams (including Options to acquire such securities) on or after the Petition Date in violation of the procedures set forth herein (including notice requirements) shall be null and void *ab initio* as an act in violation of the automatic stay under sections 362 and 105(a) of the Bankruptcy Code, and the person or entity making such declaration shall be required to file an amended tax return revoking such declaration and any related deduction to appropriately reflect that such declaration is void *ab initio*;

b) Any person or entity that currently is or becomes a 50% Shareholder (defined in subparagraph (e) below) must file with this Court and serve on counsel to the Debtors and counsel to the Committee advance written notice, in the form of **Exhibit C-4** attached hereto, on or before the later of (i) 21 calendar days after the date of the Notice of Interim Order or Notice of Final Order (as defined below and as applicable), and (ii) ten calendar days after becoming a 50% Shareholder;

c) Prior to filing any federal or state tax return or any amendment to such a return that claims any deduction for worthlessness of beneficial ownership of Williams Stock for a tax year ending before the Debtors' emergence from chapter 11 protection, such 50% Shareholder must file with this Court and serve on counsel to the Debtors and counsel to the Committee a Declaration of Intent to Claim a Worthless Stock Deduction, substantially in the form annexed to these procedures as **Exhibit C-5**;

d) The Debtors and the Committee will have 21 calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with this Court and serve on such 50% Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes.  During such 21-

day period, and while any objection by the Debtors or the Committee (or any other party in interest) to the proposed transfer is pending, such 50% Shareholder shall not file the return or amendment to which the Declaration of Intent to Claim a Worthless Stock Deduction relates and thereafter shall do so only in accordance with the Court's ruling, and, as applicable, any appellate rules and procedures.  If neither the Debtors nor the Committee objects within such 21-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction; and

e)      For purposes of these procedures, "50% Shareholder" is any person or entity that has beneficially owned 50 percent or more of the equity securities of Williams during the time frame determined in accordance with IRC § 382(g)(4)(D) and the applicable Treasury Regulations thereunder.

**E.      NOTICE OF PROCEDURES FOR INTERIM ORDER AND FINAL ORDER**

      **a)      <u>Notice of Interim Order</u>**

21.      To ensure parties in interest receive appropriate notice of the procedures for trading equity securities in the Debtors, the Debtors hereby request that this Court approve the following notice provisions for such procedures. Following entry of an Interim Order granting the Motion, the Debtors propose to send a notice in substantially the form attached hereto as **Exhibit C-6** (the "<u>Notice of Interim Order</u>") to the following parties: (a) the Office of the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) the Office of the United States Attorney for the District of Delaware; (d) counsel for the prepetition secured lenders; (e) the Internal Revenue Service; (f) the U.S. Securities & Exchange Commission; (g) all banks, brokers, intermediaries, other nominees or their mailing agents (collectively, the "<u>Nominees</u>") that hold Williams Stock in "street name" for the beneficial holders of the Williams Stock, as applicable; (h) the transfer agent(s) for the Williams Stock, as applicable; (i) registered holders of Williams Stock; (j) all known Substantial Shareholders, if any; and (k) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Equity Trading Notice Parties</u>").

22.     Any person or entity, broker or agent acting on their behalf, who sells at least 1,224,467.60 shares (approximately 4.50% of all issued and outstanding shares of Williams Stock), or an Option with respect thereto, to another person or entity shall be required to provide Notice of Interim Order (unless the Court has entered the Final Order) to such purchaser of such Williams Stock, or any broker or agent acting on their behalf, to the extent reasonably feasible. The Notice of Interim Order will provide information as to the procedures to be followed in trading the Williams Stock and include notice of a hearing to grant the motion on a final basis and an opportunity to object before entry of the Final Order. If, at the time of the purchase, the Court has entered the Final Order, any person or entity, or broker or agent acting on their behalf, who sells at least 1,224,467.60 shares (approximately 4.50% of all issued and outstanding shares of Williams Stock), or an Option with respect thereto, to another person or entity shall provide the purchaser (or its agent) with the Notice of Final Order as provided in detail below.

**b)      Notice of Final Order**

23.     Following entry of the Final Order, the Debtors propose to send a notice in substantially the form attached hereto as **Exhibit C-7** (the "Notice of Final Order") to the Equity Trading Notice Parties.

24.     Upon receipt of the Notice of Final Order, the Nominees shall serve the Notice of Final Order to any beneficial holders of the Williams Stock by no later than five (5) business days after being served with the Notice of Final Order. Additionally, any person or entity, or broker or agent acting on their behalf, who sells at least 1,224,467.60 shares (approximately 4.50% of all issued and outstanding shares of Williams Stock) or an Option with respect thereto, to another person or entity shall be required to provide the Notice of Final Order to such purchaser of such Williams Stock, or any broker or agent acting on their behalf, to the extent reasonably feasible.

The Notice of Final Order will provide information as to the procedures to be followed in trading the Williams Stock

**BASIS FOR RELIEF**

**A.    The Significance of the Tax Attributes**

25.    As a result of past and current operations, the Debtors presently have significant Tax Attributes. These Tax Attributes may increase as the Chapter 11 Cases proceed and could translate into potential future income tax savings for the Debtors.

26.    As discussed above, the IRC generally permits corporations to carry forward NOLs and tax credits to offset future taxable income, thereby significantly improving such corporations' cash position in the future. *See* 26 U.S.C. §§ 38, 39, 172, 904. Thus, the Debtors' Tax Attributes are a valuable asset constituting property of their estates (as discussed in more detail below) whose availability could facilitate the Debtors' successful reorganization and serve to improve creditor recoveries. For example, Williams could utilize its NOLs to offset income earned or recognized during the course of the Chapter 11 Cases or to offset any gain that may be recognized in connection with a sale under section 363 of the Bankruptcy Code. However, absent the relief requested herein, trading and accumulation of or the claiming of worthless stock deductions with respect to equity securities of Williams during the pendency of the Chapter 11 Cases could severely limit the Debtors' ability to utilize the value of their Tax Attributes.

**B.    The Provisions of Section 382**

27.    As described above, Section 382 limits the amount of taxable income that can be offset by a corporation's Tax Attributes in taxable years (or portions thereof) following an ownership change, based on a formula that takes into account the fair market value of the equity of such corporation. This formulaic limitation under Section 382 can severely restrict the ability

to use pre-change losses because the fair market value of the equity of a distressed company may be quite low.

28.    If certain equity holders transfer Williams Stock, or make declarations of worthlessness to claim deductions with respect to Williams Stock, such transfers or deductions may trigger an ownership change that would not fall within the ambit of special relief provisions applicable to an ownership change resulting from a confirmed chapter 11 plan because such an ownership change would not occur pursuant to such a plan. An ownership change occurring during the chapter 11 cases is of particular concern because it could likely result in a Section 382 Limitation. Subsequent to such an ownership change, the Debtors' ability to utilize their Tax Attributes both during and after these Chapter 11 Cases could be limited.

29.    The Debtors, through this Motion, seek the ability to monitor and object to certain changes in ownership of Williams Stock and certain declarations of worthlessness with respect to Williams Stock so that they may prevent an ownership change during the pendency of the Chapter 11 Cases, and so preserve (i) the ability to utilize their Tax Attributes during the pendency of the Chapter 11 Cases to offset taxable income and any potential prepetition tax claims that may be asserted; and (ii) the flexibility in crafting a possible plan of reorganization, depending on facts and circumstances as they develop. In short, the Debtors seek to maximize their ability to reduce future income taxes by offsetting their income earned during these Chapter 11 Cases and thereafter with current Tax Attributes.

**C.    Tax Attributes are Property of the Debtors' Estates and are Entitled to Protection**

30.    Courts have uniformly held that a debtor's tax attributes constitute property of the estate under section 541 of the Bankruptcy Code, which provides that the property of the estate comprises, among other things, "all legal or equitable interest of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541; *Prudential Lines*, 928 F.2d at 573 (finding that a debtor's potential ability to utilize NOLs is property of an estate); *Official Comm. of Unsecured Creditors for Forman Enters. v. Forman (In re Forman Enters.)*, 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same); *Nisselson v. Drew Indus. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("it is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them").

31.     Because the Debtors' Tax Attributes are property of their estates, this Court has the authority under section 362 of the Bankruptcy Code to enforce the automatic stay by restricting the transfer of equity securities in the Debtors that could jeopardize the existence or value of this asset. *See In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) (holding that section 362 prohibited the sale of stock in the debtors as an exercise of control of the debtors' NOLs, which were property of the debtors' estates). Section 362(a)(3) stays "any act [of an entity] to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

32.     Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Debtors have a duty to take steps to preserve the value of the Tax Attributes for the estate. Once an NOL or certain other Tax Attributes are limited under Section 382, their use is limited forever, while the use of any NUBIL is limited for a period of five years beginning on the date of the ownership change. The limited relief sought herein is necessary to avoid an irrevocable loss or reduction in the availability of the Tax Attributes and the irreparable harm which could be caused by unrestricted trading in equity securities in or certain declarations of worthlessness with respect to equity securities of Williams and the Debtors' resulting inability

to offset taxable income freely with the Tax Attributes. The Court's enforcement of the automatic stay to prevent jeopardizing the value of the Tax Attributes is therefore necessary and appropriate.

### D.    The Requested Relief is Narrowly Tailored

33.    The Debtors limit the relief requested herein to the extent necessary to preserve estate value. The requested relief does not bar all trading of or declarations of worthlessness in respect of Williams Stock. Instead, the Debtors seek to establish procedures enabling them to monitor those types of transactions that pose a serious risk under the Section 382 ownership change test, so as to preserve the Debtors' ability to seek substantive relief if it appears that a proposed trade of equity securities or declaration of worthlessness will jeopardize the use of their Tax Attributes. The benefits to the Debtors and their estates of the requested relief outweighs the theoretical burdens placed on a very small universe of potential transfers.

34.    Moreover, the Debtors submit that the foregoing notice procedures satisfy due process and the requirements of Bankruptcy Rule 9014 by providing the counterparties with a notice and an opportunity to object and attend a hearing. *See, e.g.*, *In re Atamian*, 368 B.R. 375, 378 (Bankr. D. Del. 2007), *aff'd*, No. ADV A-06-50435 (MFW), 2008 WL 853462 (D. Del. Mar. 31, 2008), *aff'd*, 300 F. App'x 175 (3d Cir. 2008) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014). Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwanted administrative expenses.

### E.    The Requested Relief Is Necessary to Avoid Irreparable Harm to the Debtors

35.    Once an NOL or certain other Tax Attributes are limited under Section 382, their use is limited forever, while the use of any NUBIL is limited for a period of five years beginning on the date of the ownership change. The relief sought herein is necessary to avoid an irrevocable loss or reduction in the availability of the Tax Attributes and the irreparable harm that could be

caused by unrestricted trading in or certain declarations of worthlessness with respect to the Williams equity securities and the Debtors' resulting inability to offset future taxable income freely with their Tax Attributes.

## THE DEBTORS SATISFY THE REQUIREMENTS OF BANKRUPTCY RULE 6003(B)

36.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one days after filing the petition. Fed. R. Bankr. P. 6003(b). The Debtors respectfully submit that Bankruptcy Rule 6003 does not apply to the relief requested herein because the Debtors are not, by this Motion, seeking to use, sell, or lease property of their estates. Notwithstanding the foregoing, even if the Court were to find that Bankruptcy Rule 6003 applied to this Motion, the relief requested herein satisfies the "immediate and irreparable harm" standard.

37.     Immediate and irreparable harm exists where the absence of relief would significantly disrupt a debtor's business and operations, thereby challenging a debtor's ability to resolve a bankruptcy case in an orderly manner. *See, e.g., In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 469 (Bankr. S.D.N.Y. 2014). Here, immediate and irreparable harm would result without the relief requested herein. As set forth in this Motion, the Debtors' business operations and the estates will suffer greatly if the Debtors lose the value of their Tax Attributes. The requested relief is necessary to avoid an irrevocable loss or reduction in the availability of the Tax Attributes and the irreparable harm which could be caused by unrestricted trading in or certain declarations of worthlessness with respect to equity securities in the Debtors and the Debtors' resulting inability to offset future taxable income with the Tax Attributes. Absent the requested relief, such trading or declarations of worthlessness could occur at any time.

38.     For these reasons, the Debtors submit that the relief requested is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries. By this Motion, the Debtors seek to implement procedures that would protect against such irreparable harm. Accordingly, to the extent that Bankruptcy Rule 6003 applies to the relief requested herein, it does not require the Court to wait twenty-one days before entering the Interim.

## **REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)**

39.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the requested relief in this motion is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **RESERVATION OF RIGHTS**

40.     Nothing contained in this motion is intended to or shall: (a) be construed as an admission as to the validity of any claim against the Debtors; (b) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtors; (c) impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between any Debtor and any third party under section 365 of the Bankruptcy Code; or (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person. Authorization to pay the claims described in

this motion should not be deemed a direction to the Debtors to pay such claims; rather, the Debtors will make any such payments in their discretion. In addition, any payment made pursuant to an order of the Court granting the relief requested in this motion is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtors' rights to subsequently dispute such claim.

## NOTICE

41.     Notice of this motion will be provided to: (a) the Office of the United States Trustee for Region 3; (b) the Office of the United States Attorney for the District of Delaware; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Debtors' secured lenders; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the attorney general for each state in which the Debtors operate; (h) known Substantial Shareholders and their respective counsel (if applicable); (i) the transfer agent(s) for the Williams Stock, as applicable; (j) Nominees; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) any other party entitled to notice under Local Rule 9013-1(m). As this motion seeks expedited interim relief and the equivalent of "first day" relief, notice of this motion and any order entered in connection herewith will be served on all parties required by Local Rule 9013-1(m). Such notice is sufficient and no further notice of this motion is required.

## NO PRIOR REQUEST

42.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, scheduling a Final Hearing on the Motion, thereafter, enter the Final Order substantially in the form attached hereto as **Exhibit B**, granting the relief requested in this Motion and such other and further relief as the Court may deem just and proper.

Dated: August 29, 2023.
Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (No. 4083)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
*desgross@chipmanbrown.com*

-and-

Sean A. Gordon (admitted *pro hac vice*)
Austin B. Alexander (*pro hac vice* pending)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326-4266
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
*Sean.Gordon@thompsonhine.com*
*Austin.Alexander@thompsonhine.com*

Alan R. Lepene (admitted *pro hac vice*)
Scott B. Lepene (admitted *pro hac vice*)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
*Alan.Lepene@thompsonhine.com*
*Scott.Lepene@thompsonhine.com*

*Counsel for Debtors*