# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 23-10961 (BLS)<br><br>(Jointly Administered) |

### MOTION OF ARCH INSURANCE COMPANY TO LIFT STAY AS TO BONDED CONTRACT FUNDS, OR, ALTERNATIVELY, FOR ADEQUATE PROTECTION

Arch Insurance Company ("Arch"), through undersigned counsel, pursuant to 11 U.S.C. § 362(d) and 11 U.S.C. § 105, move this Honorable Court for an Order modifying the automatic stay in the captioned bankruptcy cases to permit St. John's County, Florida ("St. John's") to declare Debtor Williams Industrial Services, LLC ("Debtor") in default of its Bonded Contract (as defined *infra*) with St. John's, and to allow Arch to: (1) collect Bonded Contract Funds (as defined *infra*) from St. John's on the Bonded Contract and (2) utilize said Bonded Contract Funds to pay claims under the public construction bond issued by Arch on behalf of the Debtor, including payment of labor, subcontractor, and supplier claims and costs, and other costs incurred in completing the Bonded Contract, and reimbursing Arch for Bonded Contract payments advanced by Arch to date. Arch has no objection to filing with the Court a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

30951166v.2

Alternatively, Arch seeks adequate protection of the Bonded Contract Funds in the form of an order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Arch before funds can be disbursed, and an Order that the Bonded Contract Funds are to be used and can be used only for direct Bonded Contract costs, including the payment of amounts due to subcontractors and suppliers for work performed on the Bonded Contract, and not for other purposes, including unbonded projects, general overhead or administrative costs, and / or employee or officer compensation. In support of this motion, which is further supported by the Declaration of Jonathan Panico (the "Panico Declaration"), Arch states:

## JURISDICTION

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This matter is a "core" proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On July 22, 2023, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code ("Petition"). Several of the Debtor's related entities also filed Chapter 11 Cases, which are being jointly administered with the Debtor's. Doc. 56.

3. At all material times, the Debtor was engaged in public works construction. From time to time, the Debtor was required to provide payment bonds and performance bonds in connection with those public projects. The bonds secured the Debtor's performance under those

contracts, as well as the payment of subcontractors, laborers and materialmen providing labor in connection with and/or materials incorporated into those projects.

4. At the time that the Debtor filed the Petition, Debtor was a party to a construction contract with St. John's for the construction of the SR 16 WWTF Headworks & RAS/WAS Improvements in St. John's County, Florida (the "Project"), Bid No. 21-03R (the "Bonded Contract") in connection with which Arch issued a public construction bond, Bond No. SU1175012 (the "Bond"). *See* Panico Declaration at ¶ 3. A copy of the Bond is attached as **Exhibit "A"** to the Panico Declaration.

5. Before it would issue said Bond, Arch required certain protections from the Debtor of monies to be paid to the Debtor under the Bonded Contract (the "Bonded Contract Funds"), and from loss to Arch if the Debtor failed to perform its obligations under the Bonded Contract or to pay labor and material suppliers on the Bonded Contract. *See* Panico Declaration at ¶ 4.

6. In issuing the Bond, Arch relied upon its rights of legal and equitable subrogation, based on established law that the surety has a priority right to contract funds on bonded projects for the completion of those projects and payment of subcontractors and suppliers on those projects. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36 (1962); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989).

7. Further, to induce Arch to issue the Bond and other payment and performance bonds, the Debtor (and others) (collectively, "Indemnitors") signed a General Agreement of

Indemnity (the "Indemnity Agreement") with Arch, a copy of which is attached as **Exhibit "B"** to the Panico Declaration.

  8. Pursuant to the Indemnity Agreement, the Indemnitors agreed:

> To indemnify, hold harmless and exonerate [Arch] from and against any and all Losses, as well as any other reasonable expenses that [Arch] may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s); (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense or any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due [Arch] hereunder, including interest, shall be made immediately upon [Arch]'s demand. Vouchers, affidavits, or other evidence of payment by [Arch] shall be prima facie evidence of the Indemnitors' liability for any such Losses or expenses.

Indemnity Agreement ¶ 2. The Indemnity Agreement defines "Bond[s]" as:

> any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued procured or undertaken by [Arch], whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals, extensions thereof issued by [Arch], or issued by another at the request of [Arch], on behalf of the Indemnitors, whether issued prior to or subsequent to the date of this Agreement.

Indemnity Agreement (preamble). "Losses" are defined as:

> any and all (a) sums paid by [Arch] sums paid by [Arch] to claimants under the Bonds, (b) sums required to be paid to claimants by [Arch] but not yet, in fact, paid by [Arch], by reason of execution of such Bonds, (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e) all accrued and unpaid premiums owing to [Arch] for the issuance, continuation or renewal of any Bonds and/or (f) all other amounts payable to [Arch] according to the terms and conditions of this Agreement.

*Id.*

    9.    The Indemnity Agreement further contemplates that:

> [Arch] may execute or procure Bond(s) that guarantee the lndemnitors' obligations or performance under one or more contracts (each a "Bonded Contract"). The Indemnitors shall be considered in default of a Bonded Contact if any of the following occur: (a) a declaration of default by any Bonded Contract owner; (b) an actual breach or abandonment of the Bonded Contract; and/or (c) an improper diversion of Bonded Contract funds or Indemnitors' assets to the detriment of the Bonded Contract obligations. In the event of default under a Bonded Contract, Indemnitors grant to [Arch] a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with such Bonded Contract.

Indemnity Agreement ¶ 12.

    10.    In reliance on its rights of legal and equitable subrogation and the Indemnity Agreement, Arch issued the Bond on behalf of and at the request of the Debtor on the Bonded Contract. Panico Declaration at ¶ 7.

    11.    In early-to-mid July 2023, the Debtor advised Arch that it had encountered financial difficulties and did not anticipate completing certain bonded projects. *See* Panico Declaration at ¶ 8. On July 22, 2023, Debtor filed the Petition, and on July 24, 2023, it moved to reject the Bonded Contract effective as of July 22, 2023. *See* Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date [Doc. 37] (the "Rejection Motion"). Thus, Debtor has abandoned the Bonded Project and has no intention of completing it.

    12.    Arch has not completed a financial books and records and analysis of the Bonded Project, but based on its ongoing investigation, Arch expects to sustain losses completing the Bonded Project and making payments for labor, services and/or material furnished to the Project.

30951166v.2

Arch anticipates that the cost to complete the Bonded Project could approximate $1,000,000. Panico Declaration ¶ 10.

13. Based on incomplete information known to date, Arch believes that there is approximately $400,000 in remaining Bonded Contract Funds held by St. John's. Furthermore, Arch currently does not know whether the remaining Bonded Contract Funds are fully collectible because St. John's may have claims for backcharges, direct payments by St. John's to subcontractors and/or suppliers, and other claims. Panico Declaration ¶ 11. Additionally, Arch anticipates receiving claims against the Bond from Debtor's unpaid subcontractors and suppliers, which will increase the amount of the loss. *Id.*

14. Based on the above information, Arch currently estimates that it is exposed to a loss of at least $600,000. Again, this does not include potential additional losses due to uncollectable Bonded Contract balances, unreimbursed payments made pursuant to the Bond, or payments made to Bond claimants. Thus, based on information Arch has obtained to date, there are insufficient Bonded Contract Funds to reimburse it for its losses on Bonded Project, pay outstanding claims on Bonded Project and to complete the Bonded Project, and there does not appear to be equity in the Bonded Contract Funds for the estate. Further, the warranty period — to the extent applicable — under the Bonded Contract has not run, so unknown exposure remains.

15. Debtor, through its abandonment of the Bonded Project and representations made in the Rejection Motion, has no intention of completing the Bonded Project. However, St. John's has not declared Debtor in default of the Bonded Project. Panico Declaration at ¶ 9. As a

condition of Arch's performance under the Bond, St. John's must declare Debtor in default of the Bonded Contract.  *Id*.  Thus, Arch also requests relief from the stay, to the extent necessary, to allow St. John's to declare Debtor in default of the Bonded Contract.

## LAW AND ARGUMENT

The Bonded Contracts Funds are trust funds for payment of the costs of completing the work under the Bonded Contract and payment of those supplying labor and materials used in the prosecution of work under the Bonded Contracts, and Arch has a first priority right to the Bonded Contract sum that is superior to that of the Debtors (and any lenders or other creditors attempting to claim priority) under principles of legal and equitable subrogation.  *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36 (1962); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989); *Federal Ins. Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Co. v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *School Board of Broward Co. v. J.V. Construction Corp.,* 2004 WL 1304058 *17 (S.D. Fla. April 23, 2004); *In re Cone Constructors, Inc.*, 265 B.R. 302, 308-309 (Bkrtcy. M.D. Fla. 2001). Arch's equitable subrogation rights are superior to that of any other creditor of the Debtors.  *Id.*  As noted by the Supreme Court in *Pearlman*, "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-137.

In *Transamerica Ins. Co. v. Barnett Bank of Marion Co.,* an action was brought to determine the priority between a bank, which provided loans to a contractor, and a surety, which


issued payment and performance bonds on behalf of a contractor to earned but unpaid sums due from a contracting party to a contractor. *Transamerica Ins. Co.,* 540 So. 2d at 114. The Florida Supreme Court (the Bonded Project is located in Florida) quashed the lower court's finding that a bank that provided loans to the contractor had a priority interest in the defaulted principal contractor's accounts receivable on a construction project, and held that, under the doctrine of equitable subrogation, the right of a surety to bonded contract funds is superior to the interests of all concerned parties, including any assignment rights of a bank. *Id.* at 116; *In re Padula Constr. Co., Inc.,* 118 B.R. 143, 146 (S.D. Bankr. Fla. 1990). Thus, Arch's rights in the Bonded Contract Funds hold priority over any creditor claim, including any lenders.

Further, the Bonded Contract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 to the extent that the Debtor has failed to pay subcontractors and/or suppliers for work performed on the Bonded Contract and has not completed certain Bonded Contract obligations. Therefore, the Debtor has not earned the Bonded Contract Funds, which represent work performed by subcontractors and/or suppliers and further must be used to complete the Bonded Contract before the Debtor can realize any equity in the Bonded Contract Funds. *See Pearlman,* 371 U.S. at 135-36 (recognizing surety's priority right to contract funds); *In re Modular Structures, Inc.*, 27 F.3d 72, 77 (3rd Cir. 1994); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir. 1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820 (1968); *In re Pacific Marine Dredging & Construction*, 79 B.R. 924, 929 (Bankr. D.Or. 1987). In *Modular Structures*, the Court noted:

> We conclude that, based upon the record currently available in the present case, Modular breached its contractual obligation to pay its

>   subcontractors and was therefore not "owed" the monies held by the [Owner]. Under those circumstances, those funds are not properly considered part of the estate in bankruptcy and are not subject to the Bank's superpriority lien.

27 F.3d at 77.

As noted above, Arch further has a priority interest in the Bonded Contract sums as the subrogee of the obligees on and claimants under the Bond that is superior to any claim of other creditors or the Debtor. *Transamerica,* 540 So. 2d 113 (Fla. 1989); *see also Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *See also In the Matter of J.V. Gleason Co., Inc.*, 452 F.2d 1219 (8th Cir. 1971) (subrogation right attaches even in the absence of a UCC-1 filing).

Although the Bonded Contract Funds are not property of the estate to the extent that the Debtor has not paid subcontractors and suppliers on or completed all obligations under Bonded Contracts, in an abundance of caution, Arch requests that the Court modify the stay to (1) allow St. John's to declare Debtor in default; (2) permit Arch to collect Bonded Contract Funds from St. John's; and (3) utilize said Bonded Contract Funds to pay claims under the Bond, including costs incurred in completing any Bonded Contract. *See Louisiana Industrial Coatings, Inc. v. Boh Bros. Constr. Co., Inc.*, 53 B.R. 464 (E.D. La. 1985). Arch has no objection to providing the Court and the Debtor with a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

Alternatively, Arch is entitled to adequate protection of the Bonded Contract sums to insure that they are used solely for direct Bonded Contract costs. Bankruptcy courts have protected the surety's interest in contract funds by limiting the debtor's use of the contract funds

to the bonded project and requiring the debtor to separately account for contract funds. *See In re RAM Construction Co.*, 32 B.R. 758 (Bankr. W.D. Pa. 1983) (noting that "the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *see also* 11 USC § 363(c)(4) (requiring the Debtor to "segregate and account for any cash collateral").

Accordingly, Arch is entitled to adequate protection of the Bonded Contract Funds in the form of an Order[2] requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Arch before funds can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project costs, and not for other purposes.

## CONCLUSION

Arch respectfully requests that the Court lift the stay to allow St. John's to declare Debtor in default of the Bonded Contract for abandoning the Bonded Project and rejecting the Bonded Contract, and to allow Arch to: (1) perform in accordance with its Bond, including but not limited to collecting Bonded Contract Funds; (2) utilize said Bonded Contract Funds to pay claims under the Bond on behalf of the Debtor, including payment of labor, subcontractor, and supplier claims and costs, and other costs incurred in completing the Bonded Contract; and (3) authorizing Arch to include any losses exceeding Bonded Contract balances in its proof of claim. Arch has no objection to filing with the Court a monthly accounting of the receipt and expenditure of Bonded Contract Funds.

---

[2] The proposed form of Order that accompanies this Motion is substantially in the form that was agreed upon among the Debtors and other sureties, and approved by PNC, the Official Committee of Unsecured Creditors, and the Office of the United States Trustee.

Alternatively, Arch is entitled to adequate protection of the Bond Contract balances in the form of an order requiring that the funds be deposited into a separate trust account that requires the signature of the Debtor and Arch before funds can be disbursed, and an Order that the Bonded Contract balances can be used only for direct Bonded Project costs, and not for other purposes, such as payment of officer salaries, home office overhead or administrative costs, or other projects.

Dated: August 30, 2023

Respectfully submitted,

WHITE AND WILLIAMS LLP

*/s/ Michael A. Ingrassia*
Michael A. Ingrassia, Esquire (DE No. 7068)
WHITE AND WILLIAMS LLP
600 N. King Street, Suite 800
Wilmington, DE 19801-3722
Telephone: (302) 467-4503
Facsimile: (302) 467-4550
Email: ingrassiam@whiteandwilliams.com

-and-

WHITE AND WILLIAMS LLP
Amy E. Vulpio, Esquire (admitted *pro hac vice*)
1650 Market Street, Suite 1800
One Liberty Place
Philadelphia, PA 19103-7395
Telephone: (215) 864-6250
Facsimile: (215) 789-7550
Email: vulpioa@whiteandwilliams.com

*Counsel for Arch Insurance Company*