IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961 (BLS) Jointly Administered |
| Debtors. | Re: D.I. 162 |
| | Hearing Date: September 7, 2023, at 2:00 p.m. |
| | Obj. Deadline: September 1, 2023, at 4:00 p.m. |

### OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR AN ORDER APPROVING THE DEBTORS' (A) KEY EMPLOYEE RETENTION PROGRAM, (B) KEY EMPLOYEE INCENTIVE PROGRAM, AND (C) GRANTING CERTAIN RELATED RELIEF

Andrew R. Vara, United States Trustee for Region 3 & Region 9 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Motion for an Order Approving Debtors' (A) Key Employee Retention Program, (B) Key Employee Incentive Program, and (C) Granting Certain Related Relief* (D.I. 162) (the "Motion"), and in support of his objection respectfully states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

**PRELIMINARY STATEMENT**

1. The Motion seeks approval of the Debtors' proposed key employee retention program ("KERP") and the proposed key employee incentive program ("KEIP") (together, the "Plans").

2. The U.S. Trustee objects to the approval of the KEIP[2] because the proposed metrics appear easy to achieve and therefore are not truly incentivizing. As such, the KEIP is an impermissible insider retention bonus, and approval of the KEIP should be denied. The Debtors are left to their burden to demonstrate that the KEIP is truly incentivizing and is not impermissible under the Bankruptcy Code.

**JURISDICTION & STANDING**

3. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

---

[2] Subject to the Debtors satisfying their evidentiary burden with respect to the proposed KERP, the U.S. Trustee does not object to the relief sought in the KERP portion of the Motion.

5. The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

6. On July 22, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court (the "Petition Date").

7. Also on July 22, 2023, the Debtors entered into an Asset Purchase Agreement with the stalking horse bidder, Energy Solutions, Inc.

8. On July 24, 2023, the Debtors filed their *Motion for Entry of an Order (i) Approving Bidding Procedures for the Sale of Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Authority to Sell, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice thereof, (v) Approving Contract Assumption and Assignment Procedures, and (vi) Granting Related Relief* (D.I. 33) (the "Bid Procedures Motion").

9. On August 15, 2023, the Debtors filed the Motion.

10. Also on August 15, 2023, the Debtors' Board of Directors approved the Plans. Mot. ¶ 11.

11. On August 19, an Order was entered approving the Bid Procedures Motion (D.I. 196).

12. To date, the Debtors have not filed their Statements of Financial Affairs and schedules.

**The KERP**

13. The Debtors' proposed KERP would pay nine employees a retention bonus totaling $175,000. Mot. Ex. C. The participants would be eligible for the bonus payments if they are "employed by WISG through the Court's approval of the Debtors' sale of assets to a third-party purchaser and the subsequent consummation and closing date of the Debtors' sale of assets . . .[,]" regardless of whether the sale closes. Mot. ¶ 12.

**The KEIP**

14. Under the KEIP, the Debtors propose to pay 4 senior leadership employees a total of $200,000 if (a) they are employed by WISG through the Closing Date (or terminated for reasons other than for cause) and (b) the sale of substantially all the Debtors' assets closes. *Id*. ¶¶ 14, 15.

15. The Debtors believe that the loss of these employees "would jeopardize the Debtors' ability to sell the assets for the benefit of the estates and would significantly increase the cost of operating the Debtors through the sale, while also increasing the complexity and transactional risk of getting to a successful sale closing." Mot. Ex. B ¶ 13.

16. The Debtors also assert that the KEIP was "specifically designed to motivate the Debtors' senior leadership . . . and is a reasonable exercise of the Debtors' business judgment. *Id.* ¶ 14.

**ARGUMENT**

**The KEIP Is Neither Primarily Incentivizing Nor Justified by the Facts and Circumstances.**

17. Transfers to insiders must be reviewed under 11 U.S.C. § 503(c). If a transfer to an insider is for the purpose of inducing the insider to stay with the Debtors, the transfers are allowable only under Section 503(c)(1), even if the transfers are otherwise in the ordinary course of the Debtors' business. *Nellson Nutraceutical*, 369 B.R.787, 800-01 (Bankr. D. Del. 2007) (holding that nothing exists in section 503(c)(1) of the Code that would limit its applicability to transactions or payments made outside the ordinary course of business and that the only limitation is that such transfers be "for the benefit of, an insider of the debtor.").

18. Congress added section 503(c) to the Bankruptcy Code as one of the BAPCPA amendments in 2005, to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Prods., LLC,* 369 B.R. 778, 783-84 (Bankr. D. Del. 2007). The intent of section 503(c) is to "limit the scope of 'key employee retention plans' and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor." 4 Alan N. Resnick & Henry J. Sommer (eds.), COLLIER ON BANKRUPTCY ¶ 503.17 (15th ed. rev. 2007); *see also In re Foothills Texas, Inc.,* 408 B.R. 573, 577 (Bankr. D. Del. 2009) (stating that section 503(c) restricts debtors from making retention or severance payments to insiders unless applicable requirements of section 503(c) are satisfied.); *In re AMR Corp.,* 497 B.R. 690, 696 (Bankr. S.D.N.Y. 2013) (finding that the language of Section 503(c) is prohibitive; if payments to insiders do not comply with the applicable 503(c) provisions, they "shall neither be allowed, nor paid").

19. Section 503(c) establishes specific and strict evidentiary standards that must be met before a bankruptcy court may authorize payments to an insider for the purpose of inducing

such person to remain with a debtor's business or payments made on account of severance. *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) ("*Dana I*"); 11 U.S.C. § 503(c)(1). By enacting the BAPCPA, Congress put into place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG), 2010 WL 3810899, *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citations omitted). The proponent of a bonus plan has the burden of showing that the plan is not a retention plan governed by Section 503(c)(1). *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012). For the KEIP, the Debtors cannot satisfy this burden. Rather, the KEIP appears to be a thinly-disguised retention plan to reward the insiders for remaining with the Debtors through the sale of the Debtors' business.

20. Where section 503(c)(1) applies, the transfer cannot be justified solely on the debtor's business judgment. *See In re Borders Grp., Inc.*, 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011). If a proposed transfer falls within section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *Id.*; *Dana I*, 351 B.R. at 100; 11 U.S.C. § 503(c)(1). Here, if the KEIP is governed by section 503(c)(1), there is no evidence that the KEIP payments would satisfy the strict requirements for making retention payments to insiders, which must include "a finding based on evidence in the record that . . . the individual[s] [have] a bona fide job offer from another business at the same or greater rate of compensation[.]" 11 U.S.C. § 503(c)(1).

21. To show that a bonus plan is not governed by section 503(c)(1), the Debtors must prove by a preponderance of the evidence that the bonuses are a part of a "pay for value" plan that offers incentives based on performance rather than a "pay to stay" plan. *Global Home Prods.*, 369 B.R. at 783; *accord Residential Cap., LLC,* 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).

If the Debtors fail to meet their burden of proof, then the bonus plan cannot be approved. In addition, although any payment to an employee, including regular wages, has at least a partial purpose of retaining the employee, for bonus plans to fall outside the purview of section 503(c)(1), they must be primarily incentivizing. *In re Nellson Nutraceutical*, 369 B.R. 787, 802 (Bankr. D. Del. 2007) (bankruptcy court construed section 503(c)(1) to mean "'a transfer to ... an insider of the debtor for the [primary] purpose of inducing such person to remain with the debtor's business.'") (citation omitted; emphasis in original). The requirements to receive the bonus (a) remaining employed until the sale closes, and (b) that a sale actually closes are the epitome of a "pay to stay" plan, which seeks to reward the insider KEIP participants for remaining employed through the sales process. No additional sale value to the estates is sought from or required from the KEIP participants in order to earn the offered bonus. Presumably, even if the sale process results in a lower recovery than the current stalking horse bid, the KEIP participants would be paid the same bonus.

22. Further, a debtor's label of a plan as incentivizing to avoid the strictures of section 503(c)(1) must be viewed with skepticism; the circumstances under which the proposal is made and the structure of the compensation package control. *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) ("Attempts to characterize what are essentially prohibited retention programs as incentive programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1).") (internal quotation marks and citations omitted); *see also Residential Cap.*, 478 B.R. at 161 *(*finding that an incentive plan "should incentivize employees for their post-petition efforts, not compensate them for the work

they did before the bankruptcy filing."*)*; *Hawker Beechcraft*, 479 B.R. at 313 ("The concern in the type of motion presented ... is that the debtor has dressed up a KERP to look like a KEIP in the hope that it will pass muster under the less demanding 'facts and circumstances' standard in ... § 503(c)(3)."); *Dana I*, 351 B.R. at 102 n. 3 ("If it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).").

23. In the present cases, the predominant metrics for determining payment of the KEIP award are the (i) consummation of the sale (the condition for the participant's entitlement to the KEIP award) and (ii) the condition that the KEIP participants remain within the employ of the Debtors when a sale closes.

24. The KEIP participants will each earn $50,000 if the sale to the stalking horse bidder, or any other buyer, closes. Closing a sale for the Debtors' assets that was in place at the time of the filing of the chapter 11 cases and the Motion does not appear to be a difficult-to-achieve metric. Without sufficiently challenging objectives that trigger the bonus payments, the KEIP Plan is not incentivizing, and is a *fait accompli* for payment of the funds dedicated to the KEIP.

25. To the extent that the Court determines that the payments are not retention payments, Section 503(c)(3) limits payments made to the Debtors' employees outside of the ordinary course unless such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Absent fulfilling the evidentiary requirements set forth by the Bankruptcy Code, it is not proper for those payments to be allowed or paid.

26. The payments here are not in the ordinary course of the Debtors' business. The Motion establishes that the Debtors designed the KEIP (and the KERP) specifically for the chapter 11 cases. Mot. ¶ 5. ("Because of the filing of these bankruptcy cases and related stresses and difficulties faced by the Debtors and their employees during recent weeks and months, the

Debtors have recently experienced employee attrition in critical positions."). In fact, the Board approved the Plans three weeks after the Petition Date and the APA was signed, and only 2 days before the Bid Procedures hearing. *Id.* ¶ 11.

27. Transactions outside the ordinary course of business which relate to compensation must be analyzed under section 503(c)(3). Certain courts have held that the "facts and circumstances" language of section 503(c)(3) creates a standard substantially similar to the business judgment standard under section 363(b). *See Borders*, 453 B.R. at 473.

28. In *In re Dana Corp., (Dana II)*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006), Judge Lifland listed several factors that courts consider when determining if the structure of a compensation proposal and the process for its development meet the business judgment test:

> • Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?
>
> • Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?
>
> • Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?
>
> • Is the plan or proposal consistent with industry standards?
>
> • What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?
>
> • Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

358 B.R. at 576–77 (emphasis in original); s*ee Global Home*, 369 B.R. at 786 (evaluating an incentive plan under the business judgment standard of section 363 by applying the factors listed above); *Borders*, 453 B.R. at 474 (same). *But see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-

37 (Bankr. N.D. Tex. 2009) (noting the standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would ostensibly be rendered meaningless).

29. If the Court finds that the proposed bonus payments do not fall within the parameters of section 501(c)(1) because they are not primarily retentive, then the Debtors have the burden of proof to establish that the requested bonuses are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3).

30. The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required, and to object on such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems appropriate and just.

Dated August 30, 2023  
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**  
**UNITED STATES TRUSTEE**

By: */s/ Joseph F. Cudia*  
Joseph F. Cudia  
Trial Attorney  
Office of the United States Trustee  
J. Caleb Boggs Federal Building  
844 King Street, Suite 2207, Lockbox 35  
Wilmington, DE 19801  
(302) 573-6491  
joseph.cudia@usdoj.gov