IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| _____ ) | |
| In re: ) | Chapter 11 |
| ) | |
| **WILLIAMS INDUSTRIAL SERVICES** ) | Case No. 23-10961-BLS |
| **GROUP INC.**, *et al.*, ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| _____ ) | Relate to Dkt. No. 203 |

**OBJECTION OF THE CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. TO NOTICE TO CONTRACT COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Consolidated Edison Company of New York, Inc. ("Con Edison"), by counsel, hereby asserts its objection (the "Objection") to the Debtors' *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 203] (the "Assumption and Cure Notice"), and sets forth the following:

**FACTUAL BACKGROUND**

**Procedural Facts**

1.    On July 22, 2023, each of the Debtors filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (the "Bankruptcy Cases").  The Bankruptcy Cases are being jointly administered.

2.    The Debtors are operating their business as debtors-in-possession, and no trustee or examiner has been appointed.

3.    On the Petition Date, the Debtors filed *Debtors'*

1

*Emergency Motion for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, Payment of Prepetition Claims of Critical Vendors Pursuant to 11 U.S.C. §§ 363(B), 1107 and 1108, Fed. R. Bankr. P. 6003 and 6004, and Del. Bankr. L.R. 9013-1(M) and (II) Granting Related Relief* [Docket No. 12] (the "Critical Vendor Motion").

4.    On July 25, 2023 and August 16, 2023, the Bankruptcy Court entered orders [Docket Nos. 64 and 165, respectively] (together, the "Critical Vendor Order") granting the Critical Vendor Motion on an interim and final basis, respectively.  The Critical Vendor Order authorizes, but does not direct, the Debtors to pay prepetition claims of certain vendors that the Debtors deem "Critical Vendors".

## Facts Regarding the Sale Motion and Cure Notice

5.    On July 24, 2023, the Debtors filed their *Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Authority To Sell, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 33] (the "Sale Motion"), which sought entry of a bidding procedures order setting the following deadlines:

2

     A.    Bid Deadline – August 3, 2023

     B.    Auction – September 2, 2023

     C.    Sale Objection Deadline – September 3, 2023 (i.e., the Sunday of Labor Day weekend)

     D.    Sale Hearing – September 5, 2023 (i.e., the day after Labor Day)

     E.    Assumption and Cure Notice to be filed – 3 business days after entry of bidding procedures order

     F.    Assumption and Cure Objection Deadline – 14 days after service of Assumption and Cure Notice (extending over Labor Day weekend)

6.    On August 14, 2023, the U.S. Trustee filed its Objection to the Sale Motion [Docket No. 149] (the "U.S. Trustee Objection"), expressly objecting to the timeline proposed in the Sale Motion, as follows:

> The proposed timeline is aggressively short and does not provide sufficient notice to the Debtors' creditors or to potential bidders not already involved with the process. The Debtors propose only 19 days between the hearing on Bid Procedures and the Sale hearing, inclusive of the Labor Day holiday weekend. The Motion provides that notice be served "no later than 3 business days after entry of the Bidding Procedures Order." With the Bidding Procedures hearing scheduled on August 17, 2023, that means that notice will go out no later than Tuesday, August 22, 2023, potentially leaving only 9 days for parties to: receive notice by regular mail, perform due diligence, and decide whether to submit a bid, and only 12 days until the Sale Objection

deadline (on the Sunday before Labor Day). U.S. Trustee Objection at ¶ 5; *see also id.* at ¶¶ 30-32 (noting the "extremely tight" 19 days between bid procedures hearing and proposed sale hearing, 12 days between service of bid procedures and sale hearing, and 9 days until bid deadline, all extending over the Labor Day weekend, which "does not provide for adequate notice to Debtors' creditors and other parties in interest of the sale objection deadline" or provide sufficient notice for potential bidders "to qualify as potential bidders, perform due diligence, line up financing, and to formulate and submit a bid").

7.  On August 19, 2023, the Bankruptcy Court entered an *Order (I) Approving Bidding Procedures for the Sale of Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases, (VI) Authorizing and Approving the Debtors' Entry into the Stalking Horse APA, (VII) Authorizing and Approving Bid Protections, and (VIII) Granting Related Relief* [Docket No. 196] (the "Bidding Procedures Order"), authorizing the debtors to conduct an auction and sale of the Debtors' assets.  Despite the U.S. Trustee's Objection, the approved Bidding Procedures Order extended the sale timeline by only 2 days – specifically, moving the Sale Objection deadline from September 3, 2023 to September 5, 2023 (the day after Labor Day) and moving the Sale Hearing to September 7, 2023.

4

8.    On August 22, 2023, the Debtors filed and served the Assumption and Cure Notice.  Exhibit A to the Cure Notice lists the following contracts with Con Edison as executory contracts potentially to be assumed and/or assigned to a purchaser of the Debtors' assets, each with purported Cure Costs of $0:

A.    "Bronx River 36" Gas Main" [Presumably this is the Bronx River Contract defined in paragraph 15.A. below]

B.    "Hudson Elevator" [Presumably the Hudson Elevator Contract defined in paragraph 15.B. below]

C.    "Con Ed Maintenance" [Presumably the Generating Stations Contract and Generating Stations Purchase Order defined in paragraphs 10.B. and 14 below]

D.    "Con Ed Tunnel Maintenance" [Presumably the Tunnel Maintenance Contract defined in paragraph 10 below]

9.    In accordance with the Bidding Procedures Order, the deadline for filing an objection to the Cure Notice is September 5, 2023.

10.    On August 30, 2023, the Debtors filed their *Notice of Auction Cancellation and Designation of Successful Bidder* [Docket No. 231] (the "Successful Bidder Notice"), designating EnergySolutions Nuclear Services, LLC ("EnergySolutions"), the Stalking Horse Bidder, as the Successful Bidder.

**Facts Concerning Con Edison's Contracts with the Debtors**

11.    Con Edison and the Debtors are parties to certain Blanket

5

Purchase Agreements (collectively, the "BPAs"), including the following active BPAs, under which Con Edison has issued various purchase orders for construction services:

A.    Blanket Purchase Agreement No. 5422392, related to tunnel maintenance and repair, the term of which commenced March 1, 2020 and expired August 31, 2023 (the "Tunnel Maintenance Contract");

B.    Blanket Purchase Agreement No. 5921728, related to civil repairs for various generating stations, substations and facilities locations throughout the Con Edison & Orange and Rockland Utilities, Inc. service territory, the term of which commenced May 20, 2023 and expires May 31, 2026 (the "Generating Stations Contract").

12.    The Tunnel Maintenance Contract is not an executory contract that can be assumed and/or assigned by the Debtors pursuant to the proposed sale, as it has expired by its terms prior to the sale hearing and closing.

13.    The Agreed Contract Amount for the Tunnel Maintenance Contract is $17,180,000, of which Con Edison has paid $15,529,552.88 in milestone payments to date. A total of $1,144,554.97 in milestone invoices issued by the Debtors to Con Edison for work performed under the Tunnel Maintenance Contract have not been paid (the "Unpaid Tunnel Maintenance Invoices").

14.    As of August 1, 2023, the Debtors ceased all work under

6

the Tunnel Maintenance Contract and all of the Debtors' employees who had been performing work under that contract subsequently left the Debtors' employment for another company. Accordingly, other than the Unpaid Tunnel Maintenance Invoices (which are subject to offsets for Unpaid Vendor Charges, as defined below) there are no further amounts owed by Con Edison to the Debtors under the Tunnel Maintenance Contract. Con Ed has confirmed it has not incurred any damages based on the Debtors' failure to complete the Tunnel Maintenance Contract.

15. As of August 25, 2023, the Debtors had completed all required work under the only purchase order that was outstanding under the Generating Stations Contract as of the Petition Date, i.e., Purchase Order No. 5950728 (the "Generating Stations Purchase Order") and had fully demobilized from the site. The Debtors have not yet invoiced Con Edison for any amounts under the Generating Stations Purchase Order.

16. Con Edison and the Debtors are also parties to various purchase orders for construction projects (i.e., not issued pursuant to any BPA) performed or to be performed by the Debtors (collectively, with purchase orders issued under the BPAs, the "Purchase Orders"), including the following:

A. Purchase Order No. 5634925, relating to the Debtors' installation of a 36-inch gas main and related work on the Bronx River (the "Bronx River Contract") – the Debtors

7

have indicated that they currently have the funding and staffing in place to continue the work on this project until a sale of the Debtors' assets is consummated;

B.    Purchase Order No. 5426662, relating to replacement of an elevator in the Brooklyn Shaft of the Hudson Avenue Tunnel (the "Hudson Elevator Contract") – this is a time sensitive project, and to date there have not been any delays;

C.    Purchase Order No. 5654662, relating to removal and replacement of two tunnel vent fans on the Hudson River (the "Hudson River Fan Contract") – this project has essentially been completed and Con Edison is holding the 6% retainage;

D.    Purchase Order No. 5786409, relating to the removal of 26-inch gas main within the Astoria Tunnel in Queens, NY and related work (the "Astoria Tunnel Contract") – this project has essentially been completed, except for punch list items, and Con Edison is holding the retainage.

17.    As of September 1, 2023, a total of $1,257,387.63[1] in invoices (collectively, the "Unpaid Invoices") (which includes the Unpaid Tunnel Maintenance Invoices) had been issued by the Debtors to Con Edison for construction services performed pursuant to the BPAs and/or the Purchase Orders prior to the Petition Date, which invoices have not yet been paid, as Con Edison is in the process

---

[1] Debtors' counsel has produced a $319,500 invoice that is not included in this total.

ME1 45905442v.1

of determining the extent of its setoff rights.

18.  Certain subcontractors and vendors of the Debtors that performed work on Con Edison projects covered by the BPAs and/or the Purchase Orders prior to the Petition Date have contacted Con Edison concerning the Debtors' non-payment of invoices issued to the Debtors in connection with those projects, including the following:

      A.    CMF Inc. - $72,158.60 as of 8/11/23

      B.    RWT Corp. (dba Welding Works) - $99,967.25 as of 7/25/23

19.  On August 11, 2023, Debtors' counsel sent Con Edison's counsel an excel chart and represented that it included all prepetition unpaid balances that had been invoiced by the Debtors' subcontractors and vendors in connection with Con Edison projects covered by the BPAs and/or Purchase Orders (the "Unpaid Vendor Charges") as of that date, which prepetition Unpaid Vendor Charges totaled $917,270.68.  Notably, the Unpaid Vendor Charges for CMF and Welding Works are less on the Debtors' list than the amounts those vendors had previously notified Con Edison were owing to them for Con Edison projects.

20.  The Debtors subsequently represented that as of August 18, 2023, a total of $318,375.64 of the Unpaid Vendor Charges had been paid by the Debtors pursuant to the authority granted in the Critical Vendor Order.  On August 25, 2023, Debtors' counsel claims

9

that the total of Unpaid Vendor Charges paid by the Debtors under the Critical Vendor Order increased to $377,972.47. Con Edison has asked Debtors' counsel to provide evidence of the foregoing payments and lien waivers, and lien waivers have been provided with respect to some, but not all of the Unpaid Vendor Charges.

21. Con Edison is in the process of (a) confirming the Debtors' representations set forth in paragraphs 19 and 20 above concerning Unpaid Vendor Charges and payments purportedly made thereon, and (b) determining whether there are additional Unpaid Vendor Charges for prepetition or post-petition work that has been completed under Con Edison's contracts with the Debtors, all of which past due Unpaid Vendor Charges are defaults that must be cured in connection with the Debtors' assumption of the applicable contracts.

22. Each of the BPAs and Purchase Orders provides for setoff rights as follows:

> Con Edison shall have the right to set off against any sums due Contractor **_under the Contract or any other contract between Con Edison and the Contractor or otherwise_**, any claims Con Edison may have against Contractor under the Contract or any other contract between Con Edison and Contractor or otherwise, without prejudice to the rights of the parties in respect of such claims. (Emphasis added.)

*See* Article 46 of Standard Terms and Conditions to Construction Contracts incorporated into Bronx River Contract, Generating

Stations Contract, Hudson Elevator Contract, and Astoria Tunnel Contract; *see also* Article 27 of Standard Terms and Conditions for Service Contracts incorporated into Tunnel Maintenance Contract and Hudson Fans Contract.  Copies of the contracts will be provided upon request.

## Facts Concerning Qualifying Con Edison Contractors and Vendors

23.  As a regulated utility, Con Edison's regulator mandates that Con Edison have a rigorous qualification process for all contractors and vendors to protect the ratepayer money used to pay these contractors and vendors.  As such, Con Edison has an established process for qualifying prospective contractors and other vendors to perform work on Con Edison projects (the "Qualification Process"), which all of its prospective contractors and vendors must complete.  The Qualification Process ensures that the contractors/vendors that Con Edison conducts business with meet applicable technical, safety, third party risk, financial and insurance requirements, and have all applicable licensing and permits required to perform the work contemplated by the applicable contracts, including but not limited to the following:

A.  Submission and approval of corporate and job specific/site specific Health and Safety Plans (each, a "HASP") - A separate HASP is required of each new contractor/vendor, and a new contractor/vendor cannot simply step into the shoes of a HASP submitted by a prior entity;

11

B.    Submission and approval of a job specific/cite specific Drug & Alcohol Plan;

C.    Gold Shovel Standard Certification;

D.    Northeast Gas Association Operator Qualification;

E.    Demonstration and confirmation of the contractor/vendor's willingness and ability to utilize union labor where required by the applicable contract;

F.    Demonstration of financial wherewithal to complete the applicable projects; and

G.    Demonstration of ability and willingness to meet third-party risk management standards.

24.    The Qualification Process requires a prospective contractor/vendor to apply through a link that Con Edison provides, answer various questions, provide requested documentation, and undergo a site visit.  Documents and information that a prospective contractor/vendor must provide include:

- Audited Financial Statements from Last 3 Years
- Accountant Certification
- Disclosures
- Information Security Practices and Posture
- Safety Performance and Procedures
- Business, Ethics & Compliance Policies
- Human Rights & Uyghur Forced Labor Prevention Act Policies
- Financial Crime and Compliance Controls and Assessments
- Policy/Procedure Demonstrating OFAC Sanctions Compliance
- Physical Security Policies/Procedures/Standards
- Employee Background Check Policy/Procedure
- Business Continuity/Disaster Recovery Policies and Plans
- Supplier Risk Management Policy/Framework
- Environmental, Social and Governance (ESG) and/or Sustainability Policy and Certifications

12

- Licensure or Certification for Relevant Scope of Work
- Insurance (Collected by the Buyer)

25.  The Qualification Process can take up to four months to complete depending upon how quickly the prospective contractor/vendor provides the required information and documents, and a prospective contractor cannot begin any work for Con Edison until such process, including Con Edison's internal review of materials provided, has been completed and the contractor has been approved by meeting all required qualifications.

26.  EnergySolutions, the Successful Bidder, is not currently on Con Edison's list of approved contractors/vendors.  As EnergySolutions is a private company, Con Edison has been unable to locate any specifics online concerning its financial, insurance, technical and/or safety qualifications to perform under the Debtors' contracts to be assigned.  Moreover, the ultimate entity(ies) that the assigned contracts, permits and other assets will be put into by EnergySolutions may impact the qualification process and how long that process may take.

27.  On August 31, 2023, EnergySolutions filed a *Declaration of Steven E. Birchfield in Support of the Debtors' Sale Motion and EnergySolutions Nuclear Services, LLC's Adequate Assurance of Future Performance* [Docket No. 243] (the "Declaration").  The Declaration is a four-page declaration made by the chief financial officer of EnergySolutions, in which the only information provided

13

concerning its ability to perform under the Debtors' contracts to
be assumed and assigned to EnergySolutions pursuant to the sale is
as follows:

> 7. On August 22, 2023, the Debtors filed the Notice to Contract
> Parties to Potentially Assumed Executory Contracts and
> Unexpired Leases [Docket No. 203] (the "Cure Cost Schedule"),
> which included a schedule of proposed Cure Costs that would be
> owed to non-debtor counterparties to the Assumed Contracts if a
> potential executory contract or unexpired lease became an
> Assumed Contract.

> 8. Buyer, through its parent company, EnergySolutions, LLC, has
> sufficient resources available to it to (i) pay the Cure Costs set
> forth in the Cure Cost Schedule (in the event an executory
> contract or unexpired lease becomes an Assumed Contract) and
> (ii) meet its post-Closing obligations under any Assumed
> Contracts as they become due. On a consolidated basis with its
> parent company, EnergySolutions, LLC, Buyer has a trailing
> twelve month revenue as of June 30, 2023 (last completed
> quarter) in excess of $550 million with a current liquidity amount
> in excess of $90 million as of August 24, 2023.

> 9. Buyer's parent company, EnergySolutions, LLC, is an established
> international nuclear services company with more than 15 years
> of experience in managing operations similar to those of the
> Debtors with operations in over 40 states and throughout Canada
> and Japan.

> 10. Based upon the foregoing, I believe the Buyer has sufficient
> existing and expected capital to pay Cure Costs in respect of the
> Assumed Contracts and continue operating the Transferred
> Assets for the foreseeable future. Accordingly I believe that there
> has been sufficient showing by Buyer of adequate assurance of
> future performance.

Declaration at pp. 2-3.

    28. As an initial matter, EnergySolutions' representation
that it has sufficient resources to pay the $0 Cure Costs listed
by the Debtors in their Assumption and Cure Notice is irrelevant,

ME1 45905442v.1

as the actual cure costs (as set forth above) far exceed the $300,000 Cure Cap payable by Buyer in the applicable asset purchase agreement.

29.   Further, no financial or other actual business documents were attached to or provided with the Declaration, and to date Con Edison has not received any such documents evidencing or concerning EnergySolutions' financial or technical ability to perform under the applicable Assignable Contracts (defined below) in accordance with Con Edison's required standards for all of its approved contractors and vendors.

## **DISCUSSION**

30.   Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default.
> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

31.   The Tunnel Maintenance Contract cannot be assumed and/or assigned by the Debtors, as it expired by its terms on August 31,

2023, which is prior to the proposed sale hearing and closing. Con Edison has entered into a contract with another contractor, commencing September 1, 2023, to perform the work previously performed by the Debtors under the Tunnel Maintenance Contract going forward.

32. Con Edison does not oppose the Debtors' assumption and/or assignment of the Bronx River Contract, the Hudson Elevator Contract, or the Generating Stations Contract (which Con Edison presumes is the contract the Debtors describe as "Con Ed Maintenance") (collectively, the "Assignable Contracts"), provided the Debtors do not seek to assume only portions of any of those agreements while rejecting other portions thereof in a piecemeal fashion and provided that the applicable assignee of the Assignable Contracts first demonstrates adequate assurance of future performance. It is well established that a contract cannot be assumed in part or rejected in part. Rather, a debtor is required under Section 365 of the Bankruptcy Code to either reject the contract in full or assume the contract in full, which includes the benefits and burdens. *AGV Productions, Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F.Supp.2d. 378, 391 (S.D.N.Y. 2000) (debtor cannot assume executory contract in part and reject it in part); *see also In re Leslie Fay Cos., Inc.*, 166 B.R. 802, 808 (S.D.N.Y. 1994) (same); *In re Atlantic Computer Sys., Inc.*, 173 B.R. 844, 849 (S.D.N.Y. 1994) (same); *see also In re Plum Run Serv. Corp.*, 159

16

B.R. 496, 498 (Bankr. S.D. Ohio 1993) (noting that executory contract must be assumed or rejected by debtor in its entirety and cannot be dealt with in piecemeal fashion); *In re Plitt Amusement Co. of Washington, Inc.*, 233 B.R. 837, 840 (Bankr. C.D. Cal. 1999) (holding that trustee must assume or reject executory contract as whole, and cannot retain beneficial aspects of such contract while rejecting its burdens).

33. However, Con Edison does object to the sale of the Assignable Contracts under the current schedule set forth in the Bidding Procedures Order. Con Edison cannot be expected to evaluate EnergySolutions' ability to provide adequate assurance of future performance thereunder, particularly here where EnergySolutions has failed to provide any actual business or other documents evidencing its financial and/or technical ability to provide the services required by the Assignable Contracts or to provide such services in accordance with the standards Con Edison requires of all of its contractors and vendors. Accordingly, the Debtors have not and cannot meet their burden with respect to adequate assurance of performance under the current sale schedule.

34. If the Debtors want to assume and/or assign any of the Assignable Contracts:

    A. They must first cure those contracts by paying all outstanding prepetition and post-petition Unpaid Vendor Charges incurred in connection with those contracts plus any

17

additional post-petition charges incurred by the Debtors under the applicable contracts through the effective date of assumption; and

B.    In addition, the Debtors must first demonstrate EnergySolutions' adequate assurance of future performance under the Assignable Contracts by complying with Con Edison's Qualification Process and actually being approved as a contractor/vendor in accordance with that process.

35.    Further, in strict accordance with the setoff provisions of the Assignable Contracts, Con Edison hereby reserves its rights to setoff against any amounts owing or to become owing under the Assignable Contracts all defaults of the Debtors and damages incurred by Con Edison under its Debtor contracts not being assumed and/or assigned by the Debtors, including but not limited to its rights to offset Unpaid Vendor Charges relating to the Tunnel Maintenance Contract.

WHEREFORE, Con Edison respectfully requests that the Court enter an Order:

A.    Prohibiting the Debtors' proposed assumption and/or assignment of the Tunnel Maintenance Contract;

B.    Requiring, as a condition to the Debtors' assumption and/or assignment of any of the Assignable Contracts that the Debtors and/or EnergySolutions: (1) pay all unpaid prepetition and post-petition amounts accrued thereunder through the effective

18

date of assumption, including but not limited to all Unpaid Vendor Charges incurred under those contracts, in an amount to be determined, and (2) demonstrate EnergySolutions' adequate assurance of future performance under the Assignable Contracts by qualification of EnergySolutions as an approved Con Edison contractor/vendor through the Qualification Process; and

C.    Granting such other and further relief as the Court deems just and proper.

Dated: September 1, 2023

MCCARTER & ENGLISH, LLP

By: /s/ William F. Taylor, Jr.
William F. Taylor, Jr. (DE#2936)
Shannon D. Humiston (DE#5740)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware  19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
E-mail: wtaylor@mccarter.com
E-mail: shumiston@mccarter.com

and

LAW FIRM OF RUSSELL R. JOHNSON III, PLC
Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
E-mail: russell@russelljohnsonlawfirm.com
        john@russelljohnsonlawfirm.com

*Counsel to Consolidated Edison Company of New York, Inc.*

19