<u>EXHIBIT A</u>
(Proposed Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-10961-BLS |
| | (Jointly Administered) |
| Debtors. | Re. Docket No. _____ |

## ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF MOSS ADAMS LLP AS ACCOUNTANTS TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the Debtors for entry of an order (a) authorizing the employment and retention of Moss Adams, as accountant to the Debtors, effective as of the Petition Date, under the terms of the Engagement Letters, as modified by the Application, a copy of which is attached to the Application as **Exhibit C**, and (b) granting related relief, all as more fully set forth in the Application; and this Court having reviewed the Application and the Gonzalez Declaration; and this Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

1

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and this Court having found, based on the representations made in the Application and the Gonzalez Declaration, that Moss Adams is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that the employment of Moss Adams is in the best interests of the Debtors, their estates, and creditors; and this Court having found that the terms and conditions of Moss Adams' employment set forth in the Engagement Letters (including the fee and expense structure), as modified by the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, IT IS HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to retain and employ Moss Adams as accountant to the Debtors, effective as of the Petition Date, under the terms of the Application and the Engagement Letters, as modified by this Order.

4.      None of the fees payable to Moss Adams shall constitute a "bonus" or fee enhancement under applicable law.

5.      The Debtors are authorized to compensate and reimburse Moss Adams consistent with the terms of the Engagement Letters, as modified by the Application, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court, provided, however, that Moss Adams shall not seek reimbursement for any

attorneys' fees or expenses for the defense against any formal objection to its fee applications filed in the Chapter 11 Cases.

6.      The requirements of the Bankruptcy Code, the Bankruptcy Rules, and Local Bankruptcy Rule 2016-2 are hereby modified such that Moss Adams' accountants who provide services to the Debtors (with the exception of personnel in administrative departments, including legal, who shall not be required to keep time records) shall only be required to maintain summary time records in one hour increments and shall not be required to conform to any schedules of hourly rates.

7.      To the extent requested in the Application, Moss Adams is granted a waiver with respect to the information requirements contained in Local Rule 2016-2(d).

8.      Moss Adams is authorized to provide the Debtors with the professional services described in the Application.

9.      Moss Adams shall use its reasonable best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in the Chapter 11 Cases.

10.     Notwithstanding anything in the Engagement Letters to the contrary, this Court shall retain jurisdiction over any and all matters arising under or in connection with Moss Adams' engagement by the Debtors and the Engagement Letters.

11.     Moss Adams shall file fee applications for monthly, interim, and final allowance of compensation and reimbursement of fees and expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures established by this Court; *provided*, that Moss Adams' compensation shall be subject to the standard of review provided in section 328(a)

of the Bankruptcy Code and not subject to any other standard of review, including under section 330 of the Bankruptcy Code.

12.     Notwithstanding the preceding paragraph, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and this Court shall retain the right to object to the compensation and fees and expenses to be paid to Moss Adams pursuant to the Application and the Engagement Letters, including, without limitation, the Monthly Fee, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and this Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code.

13.     Moss Adams shall include in its monthly, interim, and final fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by Moss Adams and the amount of time spent by each such individual in rendering services on behalf of the Debtors in one hour increments, but Moss Adams shall be excused from keeping time in tenth-hour increments.

14.     Notwithstanding anything in the Application, Engagement Letters, or the Gonzalez Declaration, to the contrary, to the extent the Debtors wish to expand the scope of Moss Adams' services beyond those services set forth in the Application, the Debtors shall be required to seek further approval from this Court. Notwithstanding anything in the Application, the Engagement Letters, or Gonzalez Declaration to the contrary, Moss Adams shall (a) to the extent that Moss Adams uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in the Chapter 11 Cases, pass-through the cost of such Contractors to the Debtors at the same rate that Moss Adams pays the Contractors, (b) in addition to the expenses permitted in the Engagement Letters, seek reimbursement for travel

costs only, (c) ensure that the Contractors are subject to the same conflict checks as required for Moss Adams, and (d) file with this Court such disclosures required by Bankruptcy Rule 2014.

15.     In the event that, during the pendency of the Chapter 11 Cases, Moss Adams seeks reimbursement for any attorneys' fees or expenses, the invoices and supporting time records from such attorneys, appropriately redacted to preserve applicable privileges, shall be included in Moss Adams' fee applications and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of this Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; *provided*, that Moss Adams shall not seek reimbursement from the Debtors' estates for any attorney's fees incurred in defending against objections to any of Moss Adams' fee applications filed in the Chapter 11 Cases.

16.     To the extent that there is any inconsistency between the terms of the Application, the Gonzalez Declaration, the Engagement Letters, and this Order, the terms of this Order shall govern.

17.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order in accordance with the Application.

18.     Notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014, this Order shall be effective and enforceable upon entry hereof.

19.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7.

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

<u>EXHIBIT B</u>
<u>(Gonzalez Declaration)</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES<br>GROUP INC., *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 23-10961- BLS<br><br>(Jointly Administered) |

**DECLARATION OF PEDRO GONZALEZ IN SUPPORT OF DEBTORS APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF MOSS ADAMS LLP AS ACCOUNTANTS TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Pedro Gonzalez declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am Partner at Moss Adams LLP ("Moss Adams"), a leading accounting firm, which has its principal office at 999 Third Avenue Suite 2800, Seattle, WA 98104. Moss Adams is the proposed accountant and auditor to the above-captioned debtors and debtors in possession (the "Debtors").

2.      I am duly authorized to make this declaration (the "Declaration") on behalf of Moss Adams in support of the Debtors' *Application of Debtors for Entry of Order (I) Authorizing Employment and Retention of Moss Adams LLP as Accountants, Effective as of Petition Date, and (II) Granting Related Relief* (the "Application")[2] seeking authorization to retain Moss Adams as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used but undefined herein have the meanings ascribed in the Application.

the Debtors' accountant on the terms, and subject to the conditions, set forth therein and in the

Engagement Letters.

3.        Unless otherwise stated in this Declaration, I have personal knowledge of the facts

set forth herein and, if called as a witness, I would testify thereto.[3]

## SERVICES TO BE PROVIDED

4.        Pursuant to the Engagement Letters, the Company (as defined in the Engagement

Letters) has requested that Moss Adams render the following professional services in connection

with the Chapter 11 Cases:

a.    On or about May 4, 2023, Moss Adams and the Company executed an engagement
letter ("Audit Engagement") for: (i) the audit of the Debtors' consolidated balance
sheets as of December 31, 2023 and related statements; and (ii) the review of the
quarterly consolidated balance sheets and related statements for year 2023, and fourth
quarter information that is required by Regulation S-K, Item 302(a) in accordance with
standards of the Public Company Accounting Oversight Board (United States);

b.    On or about July 10, 2023, the Moss Adams and the Company executed an engagement
letter (the "Review Engagement") for the review of the Company's condensed
consolidated balance sheet of the Company as of June 30, 2023, and the related
condensed consolidated statements for the three and six months then ended June 30,
2023 ("interim financial information") in accordance with Public Company
Accounting Oversight Board ("PCAOB") Auditing Standards No. 4105, *Reviews of
Interim Financial Information*;

c.    Moss Adams and the Company are the in the process of executing an engagement letter
(the "Examination Engagement") for the examination of the payroll extract of
Richmond County Constructors, LLC ("RCC") Loaned Employees stating the amount
of additives under billing of Williams Industrial Services Group, Inc. as of and for the
period ended December 31, 2022. The examination is to be conducted in accordance
with the attestation standards established by the American Institute of Certified Public
Accountants;

(each a "Service" and together, the "Services").[4]

---

[3] Certain of the disclosures set forth herein relate to matters not within my personal knowledge but are within the knowledge of
other Moss Adams employees and are based on information provided to me by them.

[4] Terms used but undefined in this paragraph have the meanings ascribed in the Engagement Letters.

5.      To the extent that the Debtors request that Moss Adams perform additional services not contemplated by the Application, such services and the fees for such services will be mutually agreed upon by Moss Adams and the Debtors, in writing, and will be subject to Court approval.

6.      I believe that Moss Adams is well qualified and able to provide the foregoing services to the Debtors.

## PROFESSIONAL COMPENSATION

7.      Moss Adams' decision to provide services to the Debtors in the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letters, as modified by this Application. In consideration of the services to be provided by Moss Adams, and as more fully described in the Engagement Letters, subject to the Court's approval, the Debtors have agreed to pay the following compensation to Moss Adams:[5]

a.   Pursuant to the Audit Engagement, the Debtors will pay fees in the estimated amounts of: (i) $40,000 for SAS 100 reviews each quarter; and (ii) $350,000-$360,000 for the audit of consolidated financial statements.

b.   Pursuant to the Review Engagement, the Debtors will pay hourly fees according to the following professional rates:

| FEES | |
|---|---|
| **Staff Level** | **Hourly Rate** |
| • Partner (Engagement Reviewer) | $600 |
| • Partner (Engagement Quality Reviewer) | $735 |
| • Partner (Other) | $525 |
| • Manager | $305 |
| • Senior Staff Member | $255 – $280 |
| • Staff Member | $215 – $225 |

c.   Pursuant to the Examination Engagement, the Debtors will pay hourly fees according to the following professional rates:

---

[5] To the extent there are any inconsistencies between this Application and the Engagement Letters, this Application controls unless otherwise stated. All capitalized terms in paragraph 14 of the Application not otherwise defined in said paragraph have the meanings ascribed to such terms in the Engagement Letters.

| FEES | |
|---|---|
| **Staff Level** | **Hourly Rate** |
| • Partner | $600 |
| • Manager | $305 |
| • Senior Staff Member | $255 |

8.      The Debtors provided a deposit in the amount of $125,000 on January 17, 2023, against which fees and expenses for services performed are billed. The deposit is replenished upon receiving invoices.

9.      In addition to these fees, Moss Adams will charge a flat expense charge, calculated as five percent (5%) of fees, to cover expenses such as copying costs, postage, administrative billable time, report processing fees, filing fees, and technology expenses. Travel expenses will be billed separately and are not included in the 5% charge.

10.      Notwithstanding anything to the contrary above or in the Engagement Letters, Moss Adams will maintain time-keeping records in support of its compensation and travel costs and expenses incurred in connection with rendering services to the Debtors. Moss Adams intends to apply to the Court for the allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any orders of the Court, including the order with respect to the Application.

11.      The Engagement Letters, as modified by the Application, and the compensation contemplated therein are each consistent with and typical of compensation arrangements entered into by Moss Adams in connection with the rendering of similar services under similar circumstances and are the result of arm's-length negotiations between the Debtors and Moss Adams. Moss Adams believes that the terms and conditions in the Engagement Letters, as modified by the Application, are in fact reasonable, and designed to compensate Moss Adams fairly for its

work and to cover fixed and routine overhead expenses. Moreover, the ultimate benefit to the Debtors cannot be measured by reference to the mere number of hours to be expended by Moss Adams' professionals in the performance of services, but rather should be considered in the context of Moss Adams' valuable institutional knowledge of the Debtors' businesses and financial affairs obtained since November of 2017.

12. In the 90 days prior to the Petition Date, the Debtors paid Moss Adams $78,750 in fees and expenses. As of the Petition Date, the Debtors did not owe Moss Adams any amounts for services rendered before the Petition Date.

13. To the best of my knowledge, Moss Adams has not shared and will not agree to share any of its respective compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## DISINTERESTEDNESS OF MOSS ADAMS

14. To the best of my knowledge, information and belief, as of the date hereof, Moss Adams: (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as is required under section 327(a) of the Bankruptcy Code and, as set forth in this Declaration; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, shareholders, or other parties in interest, except as disclosed in this Declaration and in Schedule 2 attached hereto.

15. Moss Adams obtained from the Debtors or its representatives the names of individuals and entities that may be parties in interest in the Chapter 11 Cases ("Potential Parties in Interest"), and such categories of parties are listed on Schedule 1.

16. Moss Adams has conducted a search of its electronic client databases for relationships to determine its connections with the Potential Parties in Interest. As Moss Adams,

and not its affiliates, is the entity being retained by the Debtors, we have researched only the electronic client data bases of Moss Adams, not of all its affiliates, to determine if Moss Adams has connections with any Potential Parties in Interest, and Moss Adams makes no representation as to the disinterestedness of its affiliates or their respective professionals or employees in respect to the Chapter 11 Cases. To the best of my knowledge and belief, Moss Adams is not representing any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses relating to the Chapter 11 Cases, except as set forth herein and in the Connections to Parties in Interest attached hereto as Schedule 2.

17.     To the best of my knowledge and belief, based on the search of Moss Adams electronic data bases as described above, neither Moss Adams nor I, nor any other employee of Moss Adams that will provide services to the Debtors in connection with this engagement, has any connection with or holds any interest adverse to the Debtors, its estates or the Potential Parties in Interest, except (a) as set forth in Schedule 2 and (b) as otherwise set forth below:

a.      Moss Adams is a large accounting firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information, and belief, Moss Adams' services to these parties were and are wholly unrelated to the Debtors, their estates, or the Chapter 11 Cases.

b.      As part of its practice, Moss Adams  provides services to clients in matters involving many different professionals, some of which may represent claimants and parties in interest in the Chapter 11 Cases. Furthermore, Moss Adams has in the past and will likely in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors in matters upon which Moss Adams is to be engaged.

18.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Moss Adams has not been retained to assist any entity or person

other than the Debtors on matters relating to, or in direct connection with, the Chapter 11 Cases. Moss Adams will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in the Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

19.    I am not related or connected to, and, to the best of my knowledge, no other professional of Moss Adams who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware or any employee in the Office of the United States Trustee for the District of Delaware.

20.    Moreover, insofar as I have been able to determine, no Moss Adams employee who will work on this engagement holds or represents any interest adverse to the Debtors or their estates, and Moss Adams is a "disinterested person" as such term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that such professionals:

    a.    are not creditors, equity security holders, or insiders of the Debtors;

    b.    were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

    c.    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

21.    To the extent that Moss Adams discovers any additional facts bearing in a material respect on its disinterestedness during the period of Moss Adams' retention in connection with the Chapter 11 Cases, Moss Adams will supplement this Declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 31, 2023                          _/s/ Pedro Gonzalez_____
                                                Pedro Gonzalez
                                                Partner

**SCHEDULE 1**
**Potential Parties in Interest**

**Debtors:**

- Williams Industrial Services Group Inc.
- Williams Industrial Services Group, LLC
- Williams Industrial Services, LLC
- Williams Plant Services, LLC
- Williams Specialty Services, LLC
- WISG Electrical, LLC
- Construction & Maintenance Professionals, LLC
- Williams Global Services, Inc.
- Steam Enterprises, LLC
- GPEG LLC
- Global Power Professional Services, Inc.
- WISG Canada Ltd.
- WISG Nuclear Ltd.
- WISG Electrical Ltd.

**Directors & Managers:**

- Robert B. Mills (Chairman of the Board of Directors)
- David A. B. Brown (director)
- Steven D. Davis (director)
- Linda A. Goodspeed (director)
- Nelson Obus (director)
- Tracy D. Pagliara (President, CEO, and director)
- Mitchell I. Quain (director)
- Randall R. Lay (Executive Vice President, COO)
- Charles E. Wheelock (Senior Vice President, CAO, general counsel, and Secretary)
- Damien A Vassall (Vice President, CFO, and principal financial and accounting officer)
- Dawn A. Jenkins (Vice President, Human Resources)
- Michael Bruno (Executive Vice President of Business Development)
- Damien E. Mudd (Vice President of Power Operations)
- Charles Macaluso (former Chairman of the Board and Director)
- Terence J. Cryan (former President, CEO, and Director)
- Carl Bartoli (former director)
- David Keller (former director)
- Michael E. Rescoe (former director)
- Michael E. Salvati (former director)
- Gary J. Taylor (former director)

- Luis Manuel Ramirez (former President, CEO, and director)
- Raymond K. Guba (former Senior Vice President and Chief Financial Officer)

**Secured Lenders:**

- PNC Bank, National Association
- EICF Agent LLC, as agent for the [Term] lenders
- CION Investment Corporation
- Energy Impact Credit Fund I LP
- Crowd Out Credit Opportunities Fund LLC

**Top 30 Creditors:**

- Retubeco
- United Rentals-Payment Center
- Kbh Solutions LLC
- Simkiss & Block
- Johnson Contractors, Inc.
- Augusta Industrial Services
- Cogburn Bros Inc
- Baumert Sas
- Dept Of Labor And Industries
- Herc Rentals
- Thompson Building Wrecking Co
- Martin Marietta Materials
- Bankdirect Capital Finance
- Sunbelt Rentals
- Ferguson Enterprises Inc
- Oleary Construction Inc
- Complete Service Well Drilling
- Ironside Developments LLC
- Ek Birken Masonry, Inc
- Kmc Construction Inc
- Clarion Electrical
- Hudson Elevator Group
- Hds White Cap Const Supply
- Eversource Energy
- International Plant SVCS LLC
- International Duros Steel
- Argos USA LLC
- Southeastern Systems Tech

- Verde Electric Corporation
- Harrington Ind Plastics LLC

**Litigation Parties:**

- Luis Omar Alvarez
- Champion Painting Specialty Services
- Fasciano, Charles
- Stout, Kyle
- Taverez, Carlos
- Inoa, Jose
- Inoa, Julio
- Enterprise Gas Processing LLC
- Jenness, Dorren
- McManus, Ryan
- Smith, Eric
- Loaisiga, Emilio
- Riley, Michael
- Riley, Anthony
- MEITEC, Inc.
- Pelican Island Storage Terminal (Apex Oil Co)
- Pelican Island Storage Terminal
- Oscar Baxin
- Victor Hernandez
- Strange, Shayla
- Kelly Powers

**Leases:**

- Ashford Office Center, LLC
- 18-31 42nd Street Astoria, LLC
- Lan Darty Real Estate DBA D. Ream Properties
- Lane Land Development, LLC
- Associated Food Distributors Company
- Crescent Office Center, LP
- Odyssey Manufacturing Co.
- TexAz Commercial Properties, LLC

**Utilities:**

- 18-27A 42nd Street Astoria LLC

- Frontier Communications
- Comcast
- Lane Land Development LLC
- ADT Security Services
- Verizon Wireless
- Wow! Internet Cable And Phone
- Granite Telecommunications LL
- Verizon Wireless

**Taxing Authorities**

- City of Dothan, AL
- Duval County Property Appraiser's Office, FL
- City of Dunwoody, GA
- Claiborne County Tax Assessor, MS
- Dept of Revenue, TN
- Town of West Point Treasurer, OH
- Department of Taxation, VA
- Alabama Department of Revenue
- New Hampshire Department of Revenue Administration
- Tennessee Department of Revenue
- Oregon Department of Revenue
- Arkansas Secretary of States
- Department of State, DE
- New York State Department of Taxation and Finance
- Oklahoma Tax Commission
- Texas Comptroller of Public Accounts
- Franchise Tax Board, CA
- Florida Department of Revenue
- Georgia Department of Revenue
- Louisiana Department of Revenue
- Minnesota Department of Revenue
- Missouri Department of Revenue
- Department of Revenue, MS
- North Carolina Department of Revenue
- New Mexico Taxation and Revenue Department
- NYC Department of Finance
- Utah State Tax Commission
- West Virginia State Tax Department
- U.S. Department of the Treasury
- Alaska Department of Revenue
- Department of Finance and Administration, AR

- Arizona Department of Revenue
- Colorado Department of Revenue
- Department of Revenue Services, CT
- Delaware Division of Revenue
- Iowa Department of Revenue
- Idaho State Tax Commission
- Illinois Department of Revenue
- Indiana Department of Revenue
- Kansas Department of Revenue
- Kentucky Department of Revenue
- Comptroller of Maryland
- Maine Revenue Services
- Michigan Department of Treasury
- Montana Department of Revenue
- Nebraska Department of Revenue
- State of New Jersey
- Chillicothe City Income Tax Dept., OH
- Pennsylvania Department of Revenue
- SC Department of Revenue
- U.S. Internal Revenue Service
- Virginia Department of Taxation
- Vermont Department of Taxes
- Canada Revenue Agency
- Ontario Workplace Safety and Insurance Board
- Ontario Employer Health Tax
- St. Lucie County Property Appraiser's Office, FL
- Dekalb County Property Appraisal, GA
- Shelby County Assesser of Property, TN
- Virginia King William County
- Washington Department of Revenue
- State Treasurer, CT
- Division of Unclaimed Property, FL
- State Treasurer, IL
- Department of Treasury - Unclaimed Property, MI
- Comptroller, State of New York
- Commonwealth of Pennsylvania
- Comptroller of Public Accounts - Unclaimed Property, TX
- Massachusetts Department of Revenue
- North Dakota Office of the State Tax Commissioner
- Wisconsin Department of Revenue

## **SCHEDULE 2**
### **Connections to Potential Parties in Interest**

None Identified.

<u>EXHIBIT C</u>
(Engagement Letters)



T (972) 458-2296
F (972) 788-4943

14555 Dallas Parkway
Suite 300
Dallas, TX 75254

May 4, 2023

Audit Committee
c/o Mr. Robert Mills, Chair
Williams Industrial Services Group, Inc.
200 Ashford Center North, Suite 425
Atlanta, Georgia 30338

Re: Audit Services

Dear Mr. Mills:

This letter confirms our understanding of the terms and objectives of our engagement and the nature and limitations of the services we will provide. This Engagement Letter and the attached Professional Services Agreement, which is incorporated herein by this reference, represent the entire agreement regarding the services to be rendered by Moss Adams LLP to Williams Industrial Services Group, Inc. In order to better understand each party's obligations, the terms "Moss Adams", "we", "us", and "our" will identify Moss Adams LLP. The terms "you", "your", and "Company" will apply to Williams Industrial Services Group, Inc. and management of the Company.

We will audit the consolidated balance sheets of Williams Industrial Services Group, Inc. as of December 31, 2023, and the related consolidated statements of operations, comprehensive income (loss), stockholders' equity, and cash flows for the year then ended.

We will review the consolidated balance sheets of Williams Industrial Services Group, Inc. as of the end of each of the four fiscal quarters, the related consolidated statements of operations, comprehensive income (loss), stockholders' equity, and cash flows for the quarters then ended, and the fourth quarter information that is required by Regulation S-K, Item 302(a) in accordance with standards of the Public Company Accounting Oversight Board (United States).

As additional conditions of our engagement the Company and the Audit Committee agree to:

1) Promptly notify us of all Exchange Act reports (such as Form 8-K) whether we have or have not performed any professional work in connection with the filing.
2) Obtain our consent for each 1933 Securities Act Filing and each amendment, for each amended 1934 Act filing, and for each non-registered offering of securities where our report is included or incorporated by reference in the offering document.
3) Promptly provide us with a copy of any correspondence to or from the SEC and state securities regulators.
4) Provide us with any proposed earnings release in a timely manner prior to publication.

We are under no obligation to re-issue our report or provide consent for the use of our report at a later date.

Assurance, tax, and consulting offered through Moss Adams LLP. ISO/IEC 27001 services offered through Cadence Assurance LLC, a Moss Adams company.
Investment advisory services offered through Moss Adams Wealth Advisors LLC.



## Timing

Pedro Gonzalez is responsible for supervising the engagement and authorizing the signing of our report. We expect to begin our audit in August 2023 and issue our report no later than March 31, 2024. As we reach the conclusion of the audit, we will coordinate with you the date the audited consolidated financial statements will be issued. You understand that you will be required to consider subsequent events through the date the consolidated financial statements are issued which will coincide with the date of the management representation letter and the date of the audit report.

We anticipate that field work will end in approximately February or March 2024 unless unforeseen circumstances arise. If unforeseen difficulties occur which make meeting the March 31, 2024, improbable, we will inform you and the Audit Committee immediately. Our ability to meet these targets will be dependent, in part, on the level of preparation and cooperation by your staff.

Our scheduling is based on your completion of the year-end closing and/or adjusting process prior to our arrival to begin the fieldwork. Efficient use of our staff benefits both you and Moss Adams, allowing for timely completion of our work. Delays in rendering services may occur due to the availability of your staff or delays in your closing and adjusting process. We will work with you to coordinate completion of our work, realizing that any such delays will also delay completion of our work and the delivery of our work product. If delays are caused by your Company's delay in preparation for the audit, our fees are subject to adjustment to compensate us for inefficiencies in our scheduling and completion of the work. Our services will be concluded upon delivery to the Audit Committee of our report on your consolidated financial statements for the year ending December 31, 2023.

## Fees

We estimate that our fees for the audit and review services will be as follows:

- SAS 100 reviews (per quarter)    $30,000–$40,000

- Audit*                          $350,000–$360,000

    *Please note preliminary estimate is to be updated during 2023.

In addition to fees, we will charge you for expenses. Our invoices include a flat expense charge, calculated as five percent (5%) of fees, to cover expenses such as copying costs, postage, administrative billable time, report processing fees, filing fees, and technology expenses. Travel expenses will be billed separately and are not included in the 5% charge.



Audit Committee
c/o Mr. Robert Mills, Chair
Williams Industrial Services Group, Inc.
May 4, 2023
Page 3 of 4

Our ability to provide services in accordance with our estimated fees depends on the quality, timeliness and accuracy of the Company's records, and the number of general ledger adjustments required as a result of our work. To assist you in this process, we will provide you with a Client Audit Preparation Schedule that identifies the key work you will need to perform in preparation for the audit. We will also need your accounting staff to be readily available during the engagement to respond in a timely manner to our requests. Lack of preparation, poor records, general ledger adjustments and/or untimely assistance will result in an increase of our fees.

Any billing under this agreement not paid within 30 days of the invoice date will bear interest at the rate of 1% (12% per annum) per month on any unpaid balance.

Management of the Company or the Audit Committee may request that we perform additional services not contemplated by this Engagement Letter. If this occurs, we will communicate with the Audit Committee regarding the scope of the additional services and the estimated fees, and request advance approval from the Audit Committee prior to beginning work. It is our practice to issue a separate Engagement Letter covering additional services.

This letter and the attached Professional Services Agreement constitute the entire agreement and understanding between Moss Adams LLP and the Company. The Company agrees that in entering into this agreement that it is not and has not relied upon any oral or other representation, promise or statement made by anyone that is not set forth herein.

We appreciate the opportunity to be of service to you. If you agree with the terms of our engagement, please sign the enclosed copy of this letter, and return it to us.

Very truly yours,

*Pedro A Gonzalez*

Pedro Gonzalez
Partner for
Moss Adams LLP

Enclosures



**Accepted and Agreed:**

This Engagement Letter and the attached Professional Services Agreement set forth the entire understanding of Williams Industrial Services Group, Inc. with respect to the services to be provided by Moss Adams LLP:

Authorized Signature: _____

1E4A0BCF7F0149B...

For the Audit Committee of Williams Industrial Services Group, Inc.


Date: _____

**Acknowledged:**

I acknowledge the responsibilities and obligations of management and the Company in this letter and the attached Professional Services Agreement:

Authorized Signature: _____

Damien Vassall

E73FC5EDAF84422...

Print Name: _____

Title: _____

Date: _____

Client: #193690
v. 11/22/2022

## PROFESSIONAL SERVICES AGREEMENT
## Audit of Issuers

This Professional Services Agreement ("Agreement") together with the Engagement Letter, which is hereby incorporated by reference, represents the terms and conditions relating to services to be provided to Williams Industrial Services Group, Inc. by Moss Adams LLP. The terms "we, us, and our" will identify Moss Adams LLP. The terms "you, your, and Company" will apply to Williams Industrial Services Group, Inc.

### Objective of the Audit

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with the standards of the Public Company Accounting Oversight Board (United States) and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. If our opinion is other than unqualified, we will discuss the reasons with you and the Audit Committee in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or to issue a report as a result of this engagement.

### Procedures and Limitations

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of certain receivables and certain other assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will require certain written representations from management about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the audit to obtain reasonable, but not absolute, assurance about whether the financial statements are free of material misstatement, whether from errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity that may have a direct financial statement impact. Because an audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed examination of all transactions as such is cost prohibitive, there is a risk that material misstatements may exist and not be detected by us. Although not absolute assurance, reasonable assurance is a high level of assurance. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the Audit Committee of any material errors, fraudulent financial reporting or misappropriation of assets and violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of the Company's internal control sufficient to plan the audit and to determine the nature, timing, and extent of audit procedures to be performed. An audit of financial statements is not designed to provide assurance on internal control or to identify deficiencies in the design or operation of internal control. However, if, during the audit, we become aware of any matters involving internal control or its operation that we consider to be significant deficiencies or material weaknesses under standards of the Public Company Accounting Oversight Board, we will communicate them in writing to management and the Audit Committee prior to the issuance of our report. We will also communicate in writing to the Company's Board of Directors if we become aware that the oversight of the Company's external financial reporting and internal control over financial reporting by the Audit Committee is ineffective,

Our reviews of the quarterly financial statements will be conducted in accordance with the standards of the Public Company Accounting Oversight Board (United States), and will consist primarily of inquiries of Company personnel and analytical procedures applied to financial data. We will require a representation letter from management. Our review does not contemplate obtaining corroborating evidential matter, and other procedures that are performed during an audit, and does not, therefore, provide assurance that we will become aware of all significant matters that might be disclosed in an audit. Our review engagement cannot be relied upon to disclose errors, fraud, or illegal acts that may exist. However, we will inform you of any material errors that come to our attention and any fraud or illegal acts that come to our attention, unless they are clearly inconsequential. In addition, we have no responsibility to identify significant deficiencies or material weaknesses in your internal control solely arising from this review engagement. However, if, during the review, we become aware of any matters involving internal control or its operation that we consider to be significant deficiencies or material weaknesses under standards of the Public Company Accounting Oversight Board, we will communicate them in writing to management and the Audit Committee prior to the Company's filing of its periodic report with the SEC. A review is not an audit, the objective of which is the expression of an opinion regarding the financial statements taken as a whole, and, accordingly, we will not express such an opinion on the quarterly financial statements.

Our fees do not reflect the additional procedures required by us if you refer to our work on the quarterly financial statements in any filing with the SEC. We ask that you advise us in advance of making any such reference to our work on the interim financial statements so that we can plan for, and perform the needed work on a timely basis.

## Responsibility for Financial Statements

You are responsible for making all financial records and relevant information available to us and for the accuracy and completeness of that information. We may advise you and the Audit Committee about appropriate accounting principles and their application, but the responsibility for the financial statements, including disclosures, remains with you. This responsibility includes the establishment and maintenance of adequate records and effective internal control over financial reporting, the selection and application of accounting principles, and the safeguarding of assets. You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. You are responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators or others. You are responsible for adjusting the financial statements to correct material misstatements relating to accounts or disclosures and for confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. You are also responsible for identifying and ensuring that the Company complies with applicable laws and regulations.

You agree that as a condition of our engagement, you will provide us, in a timely and orderly way, with information in your possession that we request or that has a material impact on the nature or characterization of any material transaction to complete our engagement, and that information will be, to the best of your knowledge and belief, truthful and accurate.

## Management's Responsibility to Notify Us of Affiliates (SEC)

Our professional standards require that we remain independent of the Company as well as any "affiliate" of the Company. Professional standards define an affiliate as follows:

- an entity that has control over the Company, or over which the Company has control, including the Company's parents and subsidiaries;

- an entity which is under common control with the Company, unless either the common control entity or the Company are not material to the controlling entity;

- an entity over which the Company has significant influence, unless the entity is not material to the Company;

- an entity that has significant influence over the Company, unless the Company is not material to the entity; and

- each entity in an investment company complex when the Company is an entity that is part of that investment company complex, assuming both the Company and the entity are material to the controlling entity or entities.

In order to fulfill our mutual responsibility to maintain auditor independence, you agree to notify Moss Adams of any known affiliate relationships, to the best of your knowledge and belief.  Additionally, you agree to inform Moss Adams of any known services provided to or relationships between affiliates of the Company and Moss Adams or any of its employees and personnel.

## Dissemination of Financial Statements

Our report on the financial statements should be associated only with the financial statements that were the subject of our engagement. You may make copies of our report, but only if the entire financial statement (including related footnotes and supplemental information, as appropriate) is reproduced and distributed with our report. Our report should not be reproduced and associated with any other financial statements, or portions thereof, that are not the subject of this engagement. This paragraph does not serve as Moss Adams LLP's consent to be referred to as "experts" or for the use of our report in any filings with the SEC or other regulatory entity.

You may choose to publish your financial statements electronically on your Company's Internet website. Internet websites are a means to distribute information and we are not required under professional standards to read or monitor the information contained on your website or to consider the consistency of other information in the electronic site with the original document. However, we reserve the right to review the information as presented on your Internet website, and to withdraw our report should we disagree with the form, context or manner of presentation of the financial statements upon which we reported. You agree that upon written notification of our objections to immediately remove our report and any reference thereto or to Moss Adams from your Internet website.

## Consents and Report Re-issuance

We are under no obligation to re-issue our reports or provide consent for the use or our reports at a later date in connection with an offering of securities, the issuance of debt instruments or for any other circumstance. The determination of whether or not we will re-issue our reports or provide consent for the use of our reports is solely the responsibility of Moss Adams, and will be made only after we have conducted any due diligence we deem necessary in the circumstances. Fees associated with the re-issuance of our report or providing consent are beyond the fees contemplated by this Agreement. If we decide not to re-issue our reports or consent to the use of our reports, it is possible the Company may be required to engage another firm to audit periods covered by our audit reports, and those firms will likely bill you for their services. While the successor auditor may request access to our engagement documentation for those periods, we are under no obligation to permit such access.

The services outlined in this Agreement do not contemplate the requirements of Moss Adams or an underwriter or its lawyer in connection with the offering of securities. We require that our firm be included on each distribution of draft offering materials and that we receive a complete set of final documents. We expect adequate time to review documents where our report is requested to be reissued, or referred to, or reference to our firm as "Experts" is expected to be made. We will attempt to respond quickly in order to keep to timetables as required and will not unreasonably withhold our opinion or consent pending satisfaction of our own due diligence and completion of required subsequent events procedures. Finally, should we be asked to provide comfort to the underwriter regarding financial matters in any registration statement, we expect adequate notice of the requested matters so that we can evaluate the appropriateness of the request and have sufficient time to complete the procedures requested. The services discussed in this paragraph cannot be estimated with any accuracy and accordingly, are not included in the fee estimates in the Engagement Letter.

## Changes in Professional or Accounting Standards

To the extent that future federal, state, or professional rule-making activities require modification of our audit approach, procedures, scope of work, etc., we will advise you of such changes and the impact on our fee estimate. If we are unable to agree on the additional fees, if any, that may be required to implement any new accounting and auditing standards that are required to be adopted and applied as part of our engagement, we reserve the right to withdraw from the engagement, regardless of the stage of completion.

## Representations of Management

During the course of our engagement, we may request information and explanations from management regarding, among other matters, the Company's operations, internal control, future plans, specific transactions, and accounting systems and procedures. At the conclusion of our engagement, we will require, as a precondition to the issuance of our report, that management reconfirm some or all of the representations made in a written representation letter. The procedures that we will perform in our engagement will be heavily influenced by the representations that we receive from management. Accordingly, false representations could cause us to expend unnecessary efforts or could cause a material error or fraud to go undetected by our procedures. While we may assist management in the preparation of the representation letter, it is management's responsibility to carefully review and understand the representations made therein.

## Fees and Expenses

The Company acknowledges that the following circumstances will result in an increase of our fees:

- Failure to prepare for the audit as evidenced by accounts and records that have not been subject to normal year-end closing and reconciliation procedures;

- Failure to complete the audit preparation work by the applicable due dates;

- Significant unanticipated transactions, audit issues, or other such circumstances;

- Delays causing scheduling changes or disruption of fieldwork;

- After audit or post fieldwork circumstances requiring revisions to work previously completed or delays in resolution of issues that extend the period of time necessary to complete the audit;

- Issues with the prior audit firm, prior year account balances or report disclosures that impact the current year engagement; and

- An excessive number of audit adjustments.

We will endeavor to advise you in the event these circumstances occur, however we may be unable to determine the impact on the estimated fee until the conclusion of the engagement. We will bill any additional amounts based on the experience of the individuals involved and the amount of work performed.

DocuSign Envelope ID: 36B31A2B-CC6A-4C16-A923-723EEBBA0936

Billings are due upon presentation and become delinquent if not paid within 30 days of the invoice date. Any past due fee under this Agreement will bear interest at the highest rate allowed by law on any unpaid balance. In addition to fees, you may be billed for expenses and any applicable sales and gross receipts tax. Direct expenses may be charged based on out-of-pocket expenditures, per diem allotments, and mileage reimbursements, depending on the nature of the expense. Indirect expenses, such as processing time and technology expenses, may be passed through at our estimated cost and may be billed as a flat charge or a percentage of fees. If we elect to suspend our engagement for nonpayment, we may not resume our work until the account is paid in full. If we elect to terminate our services for nonpayment, or as otherwise provided in this Agreement, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our work. You will be obligated to compensate us for fees earned for services rendered and to reimburse us for expenses. You acknowledge and agree that in the event we stop work or terminate this Agreement as a result of your failure to pay on a timely basis for services rendered by Moss Adams as provided in this Agreement, or if we terminate this Agreement for any other reason, we shall not be liable to you for any damages that occur as a result of our ceasing to render services.

## Subpoena of Documents

As a result of our services to you, we may be required or requested to provide information or documents to you or a third-party in connection with governmental regulations or activities, or a legal, arbitration or administrative proceeding (including a grand jury investigation), in which we are not a party. You may, within the time permitted for our firm to respond to any request, initiate such legal action as you deem appropriate to protect information from discovery. If you take no action within the time permitted for us to respond or if your action does not result in a judicial order protecting us from supplying requested information, we may construe your inaction or failure as consent to comply with the request. If this occurs, our efforts in complying with such requests or demands will be deemed a part of this engagement and we shall be entitled to additional compensation for our time and reimbursement for our out-of-pocket expenditures (including legal fees) in complying with such request or demand.

## Regulatory Access to Documentation

The documents created or incorporated into our documentation for this engagement are the property of Moss Adams and constitute confidential information. However, we may be requested to make certain engagement related documents available to regulatory agencies pursuant to authority given to them by law or regulation. If requested and in our opinion a response is required by law, access to such engagement related documents will be provided under the supervision of Moss Adams personnel. Furthermore, upon request, we may provide photocopies of selected engagement related documents to regulatory agencies. The regulatory agencies may intend, or decide, to distribute the photocopies or information contained therein to others, including other government agencies.

## Document Retention Policy

At the conclusion of this engagement, we will return to you all original records you supplied to us. Your Company records are the primary records for your operations and comprise the backup and support for your financial reports and tax returns. Our records and files, including our workpapers whether kept on paper or electronic media are our property and are not a substitute for your own records. Our firm policy calls for us to destroy our engagement files and all pertinent workpapers after a retention period of seven years, after which time these items will no longer be available. Catastrophic events or physical deterioration may result in our firm's records being unavailable before the expiration of the above retention period.

## Use of Electronic Communication

In the interest of facilitating our services to you, we may communicate by facsimile transmission or send electronic mail over the Internet. Such communications may include information that is confidential. We employ measures in the use of electronic communications designed to provide reasonable assurance that data security is maintained. While we will use our best efforts to keep such communications secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept we have no control over the unauthorized interception of these communications once they have been sent. Unless you issue specific instructions to do otherwise, we will assume you consent to our use of electronic communications to your representatives and other use of these electronic devices during the term of this MSA as we deem appropriate.

## Enforceability

In the event that any portion of this Agreement or the related Engagement Letter is deemed invalid or unenforceable, said finding shall not operate to invalidate the remainder of the Engagement Letter or this Agreement.

## Entire Agreement

This Professional Services Agreement and the Engagement Letter constitute the entire agreement and understanding between Moss Adams and the Company. The Company agrees that in entering into this Agreement it is not and has not relied upon any oral or other representations, promise or statement made by anyone which is not set forth herein.

## Use of Moss Adams' Name

The Company may not use any of Moss Adams' name, trademarks, service marks or logo in connection with the services contemplated by this Agreement or otherwise without the prior written consent of Moss Adams, which consent may be withheld for any or no reason and may be subject to certain conditions.

## Use of Nonlicensed Personnel

Certain engagement personnel who are not licensed as certified public accountants may provide services during this engagement.

## Use of Subcontractor and Affiliate

We may retain subcontractors and/or our affiliate, Moss Adams (India) LLP, to assist us in providing our services to you. These entities may collect, use, transfer, store, or otherwise process information provided by you or on your behalf ("Client information") in the domestic and foreign jurisdictions in which they operate. All of these entities are required to protect the confidentiality of any Client information to which they have access in the course of their work. We will be responsible for their performance in accordance with the terms of this Agreement.

## Dispute Resolution Procedure, Venue and Limitation Period

This Agreement shall be governed by the laws of the state of Washington, without giving effect to any conflicts of laws principles. If a dispute arises out of or relates to the engagement described herein, and if the dispute cannot be settled through negotiations, the parties agree first to try in good faith to settle the dispute by mediation using an agreed upon mediator. If the parties are unable to agree on a mediator, the parties shall petition the state court that would have jurisdiction over this matter if litigation were to ensue and request the appointment of a mediator, and such appointment shall be binding on the parties. Each party shall be responsible for its own mediation expenses, and shall share equally in the mediator's fees and expenses.

Each party hereby irrevocably (a) consents to the exclusive jurisdiction and venue of the appropriate state or federal court located in King County, state of Washington, in connection with any dispute hereunder or the enforcement of any right or obligation hereunder, and (b) WAIVES ITS RIGHT TO A JURY TRIAL. EACH PARTY FURTHER AGREES THAT ANY SUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT MUST BE FILED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ARISES.

## Termination

This Agreement may be terminated by either party, with or without cause, upon written notice. In such event, we will stop providing Services hereunder except on work, mutually agreed upon in writing. In the event of termination: (a) you shall pay us for Services provided and expenses incurred, (b) we will provide you with all finished reports that we have prepared pursuant to this Agreement, (c) neither party shall be liable to the other for any damages that occur as a result of our ceasing to render Services, and (d) we will require any new accounting firm that you may retain to execute a letter satisfactory to Moss Adams pursuant to Statement on Auditing Standards No. 84.

## Additional Procedures Relating to Fraud

We have advised you of the limitations of our audit regarding the detection of fraud and the possible effect on the financial statements (including misappropriation of cash or other assets). We will not design our engagement to detect errors or fraud unless they are material to the financial statements. Errors and fraud are considered to be material only if their magnitude, individually or in aggregate, are such that a reasonable person relying on the presentation of your company's financial statements would be influenced by their inclusion or omission. Services specifically designed to detect fraud that are not material to your financial statements are available at substantial additional cost. You have chosen not to engage us to perform these additional cost services.

## Hiring of Employees

As we are sure you realize, we have a significant investment in the training and development of our accountants, and they are valued employees of Moss Adams. If you should hire one of our accountants either during the audit or within one year after the completion of this engagement, you agree to pay a personnel placement fee to compensate Moss Adams. Any offer of employment to members of the audit team prior to issuance of our report may impair our independence, and as a result, may result in our inability to complete the engagement and issue a report.

## Mutual Waiver of COVID-19 Claims

This provision addresses issues regarding the novel coronavirus ("COVID-19"). The Parties acknowledge their respective understanding of the hazards of COVID-19, including, but not limited to, its highly contagious nature and the corresponding health risks associated with being exposed to or infected by COVID-19. Each Party agrees to waive, release, discharge, and covenants not to sue the other Party or its affiliates and its and their respective officers, directors, partners, principals, employees, agents, or subcontractors from any and all claims, damages, expense, liability, illness or losses that may occur

DocuSign Envelope ID: 36B31A3B-CC6A-4C16-A822-723EEBBA0936

from exposure to or infection by COVID-19 arising out of, related to, or in any way connected with the professional services provided by Moss Adams.



T (972) 458-2296
F (972) 788-4943

14555 Dallas Parkway
Suite 300
Dallas, TX 75254

July 10, 2023

The Audit Committee
c/o Robert Mills, Chair
Williams Industrial Services Group, Inc.

Re: Review services conducted in accordance with the Standards of the Public Company Accounting
    Oversight Board


Dear Mr. Mills:

This engagement letter ("Engagement Letter") and the attached Professional Services Agreement,
which is incorporated by this reference, confirm our acceptance and understanding of the terms and
objectives of our engagement, and limitations of the services that Moss Adams LLP ("Moss Adams,"
"we," "us," and "our") will provide to Williams Industrial Services Group, LLC ("you," "your," and
"Company").We will review the condensed consolidated balance sheet of the Company as of
June 30, 2023, and the related condensed consolidated statements of operations, comprehensive
income (loss), stockholders' equity, and cash flows for the three and six months then ended June 30,
2023 ("interim financial information") in accordance with Public Company Accounting Oversight Board
("PCAOB") Auditing Standards No. 4105, *Reviews of Interim Financial Information*.

We understand that the interim financial information will be included in the Company's quarterly
reports on Form 10-Q after the completion of our review. As a condition of our engagement, we
require that you obtain our separate written consent prior to making reference to our review of the
interim financial information in any SEC form or filing.

As additional conditions of our engagement, the Company and the Audit Committee agree to:

1) Promptly notify us of all Exchange Act reports (such as Form 8-K), whether we have or have
   not performed any professional work in connection with the filing.
2) Obtain our consent for each 1933 Securities Act Filing and each amendment, and for each
   amended 1934 Act filing.
3) Promptly provide us with a copy of any correspondence to or from the SEC and state
   securities regulators.
4) Provide us with any proposed earnings release in a timely manner prior to publication.

Assurance, tax, and consulting offered through Moss Adams LLP. ISO/IEC 27001 services offered through Cadence Assurance LLC, a Moss Adams company.
Investment advisory services offered through Moss Adams Wealth Advisors LLC.



Robert Mills, Chair
Williams Industrial Services Group, Inc.
July 10, 2023
Page 2 of 4

**Timing**

Pedro A. Gonzalez is responsible for supervising the engagement and authorizing conclusion of our review engagement. We expect to begin our review on approximately July 24, 2023, and complete our review work no later than August 14, 2023. We anticipate that field work will end on approximately August 7, 2023, unless unforeseen circumstances arise. As we reach the conclusion of the review, we will coordinate with you the date the reviewed interim financial information will be issued. You understand that you will be required to consider subsequent events through the date the interim financial information is issued which will coincide with the date of the management representation letter. We will not issue a review report at the completion of our review of the interim financial statements. We will notify you when we have completed our interim review procedures under AS 4105.

If unforeseen difficulties occur which make meeting the agreed upon dates improbable, we will inform you and the Audit Committee immediately. Our ability to meet these targets will be dependent, in part, on the level of preparation and cooperation by your staff.

**Fees**

Our fees will be based on the experience of the individuals involved and the amount of work performed. You will also be billed for expenses. The rates of the professionals who will be providing the services are as follows:

**See the following rate table below for individual rates.**

| FEES | |
|---|---|
| **Staff Level** | **Hourly Rate** |
| • Partner (Engagement Reviewer) | $600 |
| • Partner (Engagement Quality Reviewer) | $735 |
| • Partner (Other) | $525 |
| • Manager | $305 |
| • Senior Staff Member | $255 – $280 |
| • Staff Member | $215 – $225 |

Our invoices include a flat expense charge, calculated as five percent (5%) of fees, to cover expenses such administrative billable time, report processing fees, filing fees, and technology expenses. Travel expenses and client meals/entertainment expenses will be billed separately and are not included in the 5% charge.



**Retainer**

Moss Adams and the Company agree that the Company (a) will provide us a "classic retainer" as defined in *In re Production Associates, Ltd*., 264 B.R. 180 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Construction, Inc*., 114 B.R. 989 (Bankr. N.D. Ill. 1990), and (b) will replenish the classic retainer upon receiving invoices from Moss Adams so that the classic retainer amount remains at or above Moss Adams' estimated fees and expenses expected to be accrued and unpaid by the Company between payment cycles. The classic retainer will be earned by Moss Adams upon receipt.

The classic retainer will be placed into Moss Adams' general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these monies. You have no interest in the classic retainer. For purposes of this engagement, the initial retainer amount shall be $125,000.

Management of the Company or the Audit Committee may request that we perform additional services not contemplated by this Engagement Letter. If this occurs, we will communicate with the Audit Committee regarding the scope of the additional services and the estimated fees and request advance approval from the Audit Committee prior to beginning work. It is our practice to issue a separate engagement letter covering additional services.

We appreciate the opportunity to be of service to you. If you agree with the terms of our engagement as set forth herein, please sign the enclosed copy of this Engagement Letter and return it to us with the Professional Services Agreement.

Very truly yours,

*Pedro A Gonzalez*

Pedro A. Gonzalez, Partner, for
Moss Adams LLP

Enclosures



**Accepted and Agreed:**

This Engagement Letter and the attached Professional Services Agreement set forth the entire understanding of Williams Industrial Services Group, Inc. with respect to review services to be provided by Moss Adams LLP:

Authorized Signature _____

For the Audit Committee of Williams Industrial Services, Inc

Date: 7/19/2023 _____


**Acknowledged:**

I acknowledge the responsibilities and obligations of management and the Company in this letter and the attached Professional Services Agreement:

Authorized Signature _____

Print Name: Randy Lay _____

Title: Chief Operating Officer _____

Date: 7/23/2023 _____

Client: #193690
v. 11/22/2022

## PROFESSIONAL SERVICES AGREEMENT

This Professional Services Agreement (the "PSA") together with the Engagement Letter, which is hereby incorporated by reference, represents the entire agreement (the "Agreement") relating to services that Moss Adams will provide to the Company. Any undefined terms in this PSA shall have the same meaning as set forth in the Engagement Letter.

### Objective of the Reviews

The objective of a review of interim financial information under Public Company Accounting Oversight Board ("PCAOB") Auditing Standards No. 4105, *Reviews of Interim Financial Information* ("AS 4105") is to provide the accountant with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles. This objective differs significantly from that of an audit conducted in accordance with the standards of the PCAOB. A review of interim financial information does not provide a basis for expressing an opinion about whether the interim financial information is presented fairly, in all material respects, in conformity with generally accepted accounting principles.

### Procedures and Limitations

Our reviews of interim financial information will be conducted in accordance with AS 4105. This review consists principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters, and does not contemplate (a) tests of accounting records through inspection, observation, or confirmation; (b) tests of controls to evaluate their effectiveness; (c) obtaining corroborating evidence in response to inquiries; or (d) performing certain other procedures ordinarily performed in an audit.

Our review will include obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence; and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles.

A review may bring to our attention significant matters affecting the interim financial information, but it does not provide assurance that we will become aware of all significant matters that would be identified in an audit. Our review of interim financial information does not contemplate obtaining corroborating evidential matter, and other procedures that are performed during an audit, and does not, therefore, provide assurance that we will become aware of all significant matters that might be disclosed in an audit. We will require a representation letter from management.

Our review engagement cannot be relied upon to disclose errors, fraud, or illegal acts that may exist. However, we will inform you of any material errors that come to our attention and any fraud or illegal acts that come to our attention, unless they are clearly inconsequential. In addition, we have no responsibility to identify significant deficiencies or material weaknesses in your internal control solely arising from this review engagement. However, if, during the review, we become aware of any matters involving internal control or its operation that we consider to be significant deficiencies or material weaknesses under standards of the PCAOB, we will communicate them in writing to management and the Audit Committee prior to the Company's filing of its periodic report with the SEC. A review of interim financial information is not an audit, the objective of which is the expression of an opinion regarding the financial statements taken as a whole, and, accordingly, we will not express such an opinion on the interim financial information.

### Responsibility for Interim Financial Information

You are responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. We may advise you and the Audit Committee about appropriate accounting principles and their application, but the responsibility for the interim financial information remains with you. This responsibility includes the establishment and maintenance of adequate records and effective internal control over financial reporting, the selection and application of accounting principles, and the safeguarding of assets. You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the interim financial information. You are responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators or others. You are responsible for adjusting the interim financial information to correct material misstatements and for confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the interim financial information taken as a whole. You are also responsible for identifying and ensuring that the Company complies with applicable laws and regulations.

DocuSign Envelope ID: 5DE797A0-5D95-4298-8EC8-848603038A6

You agree that as a condition of our engagement you will provide us, in a timely and orderly way, with information in your possession that we request or that has a material impact on the nature or characterization of any material transaction to complete our engagement, and that information will be, to the best of your knowledge and belief, truthful and accurate. The Company agrees that as a condition of our engagement management will provide us with:

- access to all information of which management is aware that is relevant to the preparation and fair presentation of the interim financial information, such as records, documentation, and other matters;

- additional information that we may request from management for the purpose of the review; and

- unrestricted access to persons within the Company of whom we determine it necessary to make inquiries.

## Management's Responsibility to Notify Us of Affiliates (SEC)

Our professional standards require that we remain independent of the Company as well as any "affiliate" of the Company. Professional standards define an affiliate as follows:

- an entity that has control over the Company, or over which the Company has control, including the Company's parents and subsidiaries;

- an entity which is under common control with the Company, unless either the common control entity or the Company are not material to the controlling entity;

- an entity over which the Company has significant influence, unless the entity is not material to the Company;

- an entity that has significant influence over the Company, unless the Company is not material to the entity; and

- each entity in an investment company complex when the Company is an entity that is part of that investment company complex, assuming both the Company and the entity are material to the controlling entity or entities.

In order to fulfill our mutual responsibility to maintain auditor independence, you agree to notify Moss Adams of any known affiliate relationships, to the best of your knowledge and belief.  Additionally, you agree to inform Moss Adams of any known services provided to or relationships between affiliates of the Company and Moss Adams or any of its employees and personnel.

## Dissemination of Interim Financial Information

Generally, formal reports for AS 4105 reviews of interim financial information are not issued. However, if we issue a report, it should be associated only with the interim financial information that were the subject of our engagement. You may make copies of our report, if issued, but only if the entire interim financial information (including related footnotes and supplemental information, as appropriate) is reproduced and distributed with our report. If our report is issued, it should not be reproduced and associated with any other financial statements, or portions thereof, that are not the subject of this engagement. This paragraph does not serve as Moss Adams's consent to be referred to as "experts" or for the use of our report in any filings with the SEC or other regulatory entity.

The Company agrees to include the auditor's review report in any report, document, or written communication containing your interim financial information that indicates that such information has been reviewed by us or makes any other reference to our association with your interim financial information.

## Offering of Securities

This Agreement does not contemplate Moss Adams providing any services in connection with the offering of securities, whether registered or exempt from registration, and Moss Adams will charge additional fees to provide any such services. You agree not to incorporate or reference our report in a private placement or other offering of your equity or debt securities without our express written permission. You further agree we are under no obligation to reissue our report or provide written permission for the use of our report at a later date in connection with an offering of securities, the issuance of debt instruments, or for any other circumstance. We will determine, at our sole discretion, whether we will reissue our report or provide written permission for the use of our report only after we have conducted any procedures we deem necessary in the circumstances. You agree to provide us with adequate time to review documents where (a) our report is requested to be reissued, (b) our report is included in the offering document or referred to therein, or (c) reference to our firm is expected to be made. If we decide to reissue our report or provide written permission to use our report, you agree that Moss Adams will be included on each distribution of draft offering materials and we will receive a complete set of final documents. If we decide not to reissue our report or withhold our written permission to use our report, you may be required to engage another firm to review periods covered by our review reports, and that firm will likely bill you for its services. While the successor accountant may request access to our engagement documentation for those periods, we are under no obligation to permit such access.

## Changes in Professional or Accounting Standards

To the extent that future federal, state, or professional rule-making activities require modification of our review procedures, scope of work, etc., we will advise you of such changes and the impact on our fee estimate. If we are unable to agree on the additional fees, if any, that may be required to implement any new accounting and auditing standards that are required to be adopted and applied as part of our engagement, we may terminate this Agreement as provided herein, regardless of the stage of completion.

## Representations of Management

During the course of our engagement, we may request information and explanations from management regarding, among other matters, the Company's operations, internal control, future plans, specific transactions, and accounting systems and procedures. At the conclusion of our engagement, we will require, that management reconfirm some or all of the representations made in a written representation letter. The procedures that we will perform in our engagement will be heavily influenced by the representations that we receive from management. Accordingly, false representations could cause us to expend unnecessary efforts or could cause a material error or fraud to go undetected by our procedures. While we may assist management in the preparation of the representation letter, it is management's responsibility to carefully review and understand the representations made therein.

## Fees and Expenses

Billings are due upon presentation and become delinquent if not paid within 30 days of the invoice date. Any past due fee under this Agreement shall bear interest at the highest rate allowed by law on any unpaid balance. In addition to fees, you may be billed for expenses and any applicable sales and gross receipts tax. Direct expenses may be charged based on out-of-pocket expenditures, per diem allotments, and mileage reimbursements, depending on the nature of the expense. Indirect expenses, such as processing time and technology expenses, may be passed through at our estimated cost and may be billed as a flat charge or a percentage of fees. If we elect to suspend our engagement for nonpayment, we may not resume our work until the account is paid in full. If we elect to terminate our services for nonpayment, or as otherwise provided in this Agreement, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our work. You will be obligated to compensate us for fees earned for services rendered and to reimburse us for expenses. You acknowledge and agree that in the event we stop work or terminate this Agreement as a result of your failure to pay on a timely basis for services rendered by Moss Adams as provided in this Agreement, or if we terminate this Agreement for any other reason, we shall not be liable to you for any damages that occur as a result of our ceasing to render services.

## Subpoena of Documents

As a result of our services to you, we may be required or requested to provide information or documents to you or a third-party in connection with governmental regulations or activities, or a legal, arbitration or administrative proceeding (including a grand jury investigation), in which we are not a party. You may, within the time permitted for our firm to respond to any request, initiate such legal action as you deem appropriate to protect information from discovery. If you take no action within the time permitted for us to respond or if your action does not result in a judicial order protecting us from supplying requested information, we may construe your inaction or failure as consent to comply with the request. If this occurs, our efforts in complying with such requests or demands will be deemed a part of this engagement and we shall be entitled to additional compensation for our time and reimbursement for our out-of-pocket expenditures (including legal fees) in complying with such request or demand.

## Regulatory Access to Documentation

The documents created or incorporated into our documentation for this engagement are the property of Moss Adams and constitute confidential information. However, we may be requested to make certain engagement related documents available to regulatory agencies pursuant to authority given to them by law or regulation. If requested and in our opinion a response is required by law, access to such engagement related documents will be provided under the supervision of Moss Adams personnel. Furthermore, upon request, we may provide photocopies of selected engagement related documents to regulatory agencies. The regulatory agencies may intend, or decide, to distribute the photocopies or information contained therein to others, including other government agencies.

## Document Retention Policy

At the conclusion of this engagement, we will return to you all original records you supplied to us. Your Company records are the primary records for your operations and comprise the backup and support for the results of this engagement. Our records and files, including our engagement documentation whether kept on paper or electronic media, are our property and are not a substitute for your own records. Our firm policy calls for us to destroy our engagement files and all pertinent engagement documentation after a retention period of seven years (or longer, if required by law or regulation), after which time these items will no longer be available. We are under no obligation to notify you regarding the destruction of our

DocuSign Envelope ID: 5DE797A0-5D95-4298-8FC8-84B6033038A6

records. We reserve the right to modify the retention period without notifying you. Catastrophic events or physical deterioration may result in our firm's records being unavailable before the expiration of the above retention period.

Except as set forth above, you agree that Moss Adams may destroy paper originals and copies of any documents, including, without limitation, correspondence, agreements, and representation letters, and retain only digital images thereof.

## Use of Electronic Communication
In the interest of facilitating our services to you, we may communicate by facsimile transmission or send electronic mail over the Internet. Such communications may include information that is confidential. We employ measures in the use of electronic communications designed to provide reasonable assurance that data security is maintained. While we will use our best efforts to keep such communications secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept we have no control over the unauthorized interception of these communications once they have been sent. Unless you issue specific instructions to do otherwise, we will assume you consent to our use of electronic communications to your representatives and other use of these electronic devices during the term of this Agreement as we deem appropriate.

## Enforceability
In the event that any portion of this Agreement is deemed invalid or unenforceable, said finding shall not operate to invalidate the remainder of the Agreement.

## Entire Agreement
This Agreement constitute the entire agreement and understanding between Moss Adams and the Company. The Company agrees that in entering into this Agreement it is not relying and has not relied upon any oral or other representations, promise or statement made by anyone which is not set forth herein.

## Use of Moss Adams' Name
The Company may not use any of Moss Adams' name, trademarks, service marks or logo in connection with the services contemplated by this Agreement or otherwise without the prior written consent of Moss Adams, which consent may be withheld for any or no reason and may be subject to certain conditions.

## Use of Nonlicensed Personnel
Certain engagement personnel who are not licensed as certified public accountants may provide services during this engagement.

## Use of Subcontractor and Affiliate
We may retain subcontractors and/or our affiliate, Moss Adams (India) LLP, to assist us in providing our services to you. These entities may collect, use, transfer, store, or otherwise process information provided by you or on your behalf ("Client information") in the domestic and foreign jurisdictions in which they operate. All of these entities are required to protect the confidentiality of any Client information to which they have access in the course of their work. We will be responsible for their performance in accordance with the terms of this Agreement.

## Dispute Resolution Procedure, Venue and Limitation Period
This Agreement shall be governed by the laws of the state of Washington, without giving effect to any conflicts of laws principles. If a dispute arises out of or relates to the engagement described herein, and if the dispute cannot be settled through negotiations, the parties agree first to try in good faith to settle the dispute by mediation using an agreed upon mediator. If the parties are unable to agree on a mediator, the parties shall petition the state court that would have jurisdiction over this matter if litigation were to ensue and request the appointment of a mediator, and such appointment shall be binding on the parties. Each party shall be responsible for its own mediation expenses, and shall share equally in the mediator's fees and expenses.

Each party hereby irrevocably (a) consents to the exclusive jurisdiction and venue of the appropriate state or federal court located in King County, state of Washington, in connection with any dispute hereunder or the enforcement of any right or obligation hereunder, and (b) WAIVES ITS RIGHT TO A JURY TRIAL. EACH PARTY FURTHER AGREES THAT ANY SUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT MUST BE FILED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ARISES.

## Termination
This Agreement may be terminated by either party, with or without cause, upon written notice. In such event, we will stop providing Services hereunder except on work, mutually agreed upon in writing. In the event of termination: (a) you shall pay us for Services provided and expenses incurred, (b) we will provide you with all finished reports that we have prepared pursuant to this Agreement, (c) neither party shall be liable to the other for any damages that occur as a result of our ceasing

to render Services, and (d) we will require any new accounting firm that you may retain to execute a letter satisfactory to Moss Adams.

### Additional Procedures Relating to Fraud

We have advised you of the limitations of our review regarding the detection of fraud and the possible effect on the interim financial information (including misappropriation of cash or other assets). We will not design our engagement to detect errors or fraud unless they are material to the interim financial information. Errors and fraud are considered to be material only if their magnitude, individually or in aggregate, are such that a reasonable person relying on the presentation of your company's interim financial information would be influenced by their inclusion or omission. Services specifically designed to detect fraud that are not material to your interim financial information are available at substantial additional cost. You have chosen not to engage us to perform these additional cost services.

### Hiring of Employees

We have a significant investment in the training and development of our accountants, and they are valued employees of Moss Adams. If you should hire one of our accountants either during the audit or within one year after the completion of this engagement, you agree to pay a personnel placement fee based on current market conditions to compensate Moss Adams. Any offer of employment to members of the audit team prior to completion of our procedures may impair our independence, and as a result, may result in our inability to complete the engagement and issue a report.

### Mutual Waiver of COVID-19 Claims

This provision addresses issues regarding the novel coronavirus ("COVID-19"). The Parties acknowledge their respective understanding of the hazards of COVID-19, including, but not limited to, its highly contagious nature and the corresponding health risks associated with being exposed to or infected by COVID-19. Each Party agrees to waive, release, discharge, and covenants not to sue the other Party or its affiliates and its and their respective officers, directors, partners, principals, employees, agents, or subcontractors from any and all claims, damages, expense, liability, illness or losses that may occur from exposure to or infection by COVID-19 arising out of, related to, or in any way connected with the professional services provided by Moss Adams.

**DocuSign**

## Certificate Of Completion

Envelope Id: 5DE797A05D9542989EC884B6033038A6                                              Status: Completed
Subject: Complete with DocuSign: Williams Industrial Services Group, Inc. - PCAOB General 193690 - June ...
Deltek Client Engagement Code (123456.XXXX): 193690
Office Location:
Dallas
Document Type: AS - Engagement Letter
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 9 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 3 | Initials: 0 | Sino Varghese |
| AutoNav: Enabled | | 999 Third Avenue |
| EnvelopeId Stamping: Enabled | | Suite 2800 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Seattle, WA  98104 |
| | | Sino.Varghese@mossadams.com |
| | | IP Address: 50.237.200.38 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Sino Varghese | Location: DocuSign |
| 7/19/2023 12:22:16 PM | Sino.Varghese@mossadams.com | |
| Security Appliance Status: Connected | Pool: Security Pool | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Randy Lay | *Randy Lay* | Sent: 7/19/2023 12:25:35 PM |
| rlay@wisgrp.com | 3943EC36B75848C... | Viewed: 7/23/2023 6:39:28 AM |
| Chief Operating Officer | | Signed: 7/23/2023 6:39:56 AM |
| Security Level: Email, Account Authentication (None) | | |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 75.69.110.178 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 7/23/2023 6:39:28 AM | | |
| ID: a5b7ea88-cee0-471a-8e0c-a6eb54a530ee | | |
| Robert Mills | *RBMills* | Sent: 7/19/2023 12:25:36 PM |
| robert.bruce.mills@gmail.com | 1E4A6BCF7F6149B... | Viewed: 7/19/2023 2:31:10 PM |
| Security Level: Email, Account Authentication (None) | | Signed: 7/19/2023 2:31:19 PM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 73.112.70.56 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 7/19/2023 2:31:10 PM | | |
| ID: 27c71096-a700-4a95-9cf7-84feb4147dac | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 7/19/2023 12:25:36 PM |
| Certified Delivered | Security Checked | 7/19/2023 2:31:10 PM |
| Signing Complete | Security Checked | 7/19/2023 2:31:19 PM |
| Completed | Security Checked | 7/23/2023 6:39:56 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on 11/4/2020 6:09:28 PM
Parties agreed to: Randy Lay, Robert Mills

**CONSENT FOR USE OF ELECTRONIC SIGNATURES AND DOCUMENTS**

By selecting the "I Accept" button, you are signing this document electronically. You agree your electronic signature is the legal equivalent of your handwritten signature on this document. By selecting "I Accept" using any device, means or action, you consent to the legally binding terms and conditions of this document. You further agree that your signature on this document (your "E-Signature") is as valid as if you signed the document in writing. You also agree that no certification authority or other third party verification is necessary to validate your E-Signature, and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting agreement between you and Moss Adams LLP. You are also confirming that you are authorized to sign this document. Finally, you understand and agree that your E-Signature will be legally binding and such transaction will be considered authorized by you.



T (972) 458-2296
F (972) 788-4943

14555 Dallas Parkway
Suite 300
Dallas, TX 75254

July 13, 2023

Dawn Jenkins, Treasurer
Williams Industrial Services Group, Inc.
200 Ashford Center North, Suite 425
Atlanta, GA 30338

Re: Examination Services

Dear Ms. Jenkins:

Thank you for the opportunity to provide services to Williams Industrial Services Group, Inc. This engagement letter ("Engagement Letter") and the attached Professional Services Agreement, which is incorporated by this reference, confirm our understanding of the terms and objectives of our engagement, and limitations of the services that Moss Adams LLP ("Moss Adams," "we," "us," and "our") will provide to Williams Industrial Services Group, Inc. ("you," "your," and "Company").

**Scope of Services - Examination**

We will examine the payroll extract of Richmond County Constructors, LLC (RCC) Loaned Employees stating the amount of additives under billing of Williams Industrial Services Group, Inc. ("Subject Matter") as of and for the period ended December 31, 2022. Our examination will be conducted in accordance with the attestation standards established by the American Institute of Certified Public Accountants. Accordingly, it will include tests of your records and other procedures we consider necessary to enable us to express an opinion in a written report about whether your Subject Matter is presented, in conformity with Payroll Additive in Section 4 of the Loaned Personnel Agreement with RCC, dated August 18, 2017 ("Criteria") and the RCC Unanimous Written Consent of the Members of the Board dated October 26, 2020 ("Clarified Criteria Adjustment") in all material respects. If, for any reason, we are unable to complete the examination, we will not issue a report as a result of this engagement.

Because of the inherent limitations of an examination engagement, together with the inherent limitation of internal control, an unavoidable risk exists that some material misstatements may not be detected, even though the examination is properly planned and performed in accordance with attestation standards.

Our report will be restricted as to its use and is intended solely for the use of managers and management of Williams Industrial Services Group, Inc., Richmond County Constructions LLC, and Southern Nuclear pursuant to the administration of the aforementioned loaned personnel agreement and should not be used for any other purpose.

Assurance, tax, and consulting offered through Moss Adams LLP. ISO/IEC 27001 services offered through Cadence Assurance LLC, a Moss Adams company.
Investment advisory services offered through Moss Adams Wealth Advisors LLC.



As a condition of our engagement, Company management acknowledges and understands that it is responsible for the preparation and fair presentation of the Subject Matter in accordance with the Criteria and the accuracy and completeness of that information. Company management agrees that as a condition of our engagement Company management will provide us with:

• Access to all information of which Company management are aware that is relevant to the measurement, evaluation, or disclosure of the Subject Matter;

• Access to additional information that we may request from Company management for the purpose of the engagement; and

• Unrestricted access to persons within the appropriate party(ies) from whom we determine it necessary to obtain evidence.

We may advise you about appropriate Criteria or assist in the development of the Subject Matter, but the responsibility for the Subject Matter remains with you.

At the conclusion of our engagement, we will require a representation letter from management that, among other things, will confirm management's responsibility for the Subject Matter in accordance with the Criteria.

**Timing**

Pedro Gonzalez is responsible for supervising the engagement and authorizing the signing of our report. We expect to begin fieldwork on approximately August 17, 2023, complete fieldwork on approximately September 1, 2023, and issue our report no later than September 15, 2023. If unforeseen difficulties occur which make meeting the September 15, 2023 date improbable, we will inform you immediately. Our ability to meet these targets will be dependent, in part, on the level of preparation and cooperation by your staff.

Our scheduling is based on your completion of all payroll additive calculations and the accumulation of all supporting documentation. Efficient use of our staff benefits both you and Moss Adams, allowing for timely completion of our work. We may experience delays in completing our services due to your staff's unavailability or delays in preparing the required calculation reports and supporting documentation. We will work with you to coordinate completion of our work, realizing that any such delays will also delay completion of our work and the delivery of our work product. You understand our fees are subject to adjustment if we experience delays in completing our services. Our services will be concluded upon delivery to you of our examination report.

DocuSign Envelope ID: CCA8107B-9F33-4959-A658-681174083738



Dawn Jenkins, Treasurer
Williams Industrial Services Group, Inc.
July 13, 2023
Page 3 of 4

**Fees**

Our fees will be based on the experience of the individuals involved and the amount of work performed. You will also be billed for expenses. The rates of the professionals who will be providing the services are as follows:

See the following rate table below for individual rates.

| FEES | |
| --- | --- |
| **Staff Level** | **Hourly Rate** |
| • Partner | $600 |
| • Manager | $305 |
| • Senior Staff Member | $255 |

Our invoices include a flat expense charge, calculated as five percent (5%) of fees, to cover expenses such as administrative billable time, report processing fees, filing fees, and technology expenses. Travel expenses and client meals/entertainment expenses will be billed separately and are not included in the 5% charge.

**Retainer**

Moss Adams and the Company agree that the Company (a) will provide us a "classic retainer" as defined in *In re Production Associates, Ltd*., 264 B.R. 180 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Construction, Inc*., 114 B.R. 989 (Bankr. N.D. Ill. 1990), and (b) will replenish the classic retainer upon receiving invoices from Moss Adams so that the classic retainer amount remains at or above Moss Adams' estimated fees and expenses expected to be accrued and unpaid by the Company between payment cycles. The classic retainer will be earned by Moss Adams upon receipt.

The classic retainer will be placed into Moss Adams' general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these monies. You have no interest in the classic retainer. For purposes of this engagement, the initial retainer amount shall be $125,000.

_____

This Engagement Letter and attached Professional Services Agreement constitute the entire agreement (the "Agreement") and understanding between Moss Adams and the Company. The Company agrees that in entering into this Agreement it is not relying and has not relied upon any oral or other representation, promise or statement made by anyone which is not set forth herein.



We appreciate the opportunity to be of service to you. If you agree with the terms of our engagement as set forth in this Agreement, please sign the enclosed copy of this Engagement Letter and return it to us with the Professional Services Agreement.

Very truly yours,

*Pedro A Gonzalez*

Pedro Gonzalez, Partner, for
Moss Adams LLP

Enclosures

**Accepted and Agreed:**

This Engagement Letter and the attached Professional Services Agreement set forth the entire understanding of Williams Industrial Services Group, Inc. with respect to review services to be provided by Moss Adams LLP:

Authorized Signature: _____

For the Audit Committee of Williams Industrial Services, Inc

Date: 7/19/2023 _____

**Accepted and Agreed:**

This Engagement Letter and the attached Professional Services Agreement set forth the entire understanding of Williams Industrial Services Group, Inc. with respect to this engagement and the services to be provided by Moss Adams LLP:

Authorized Signature: _____

Print Name: _____

Title: _____

Date: _____

Client: #193690
v. 9/7/2021

## PROFESSIONAL SERVICES AGREEMENT
## Examination Services

This Professional Services Agreement (the "PSA") together with the Engagement Letter, which is hereby incorporated by reference, represents the entire agreement (the "Agreement") relating to services to be provided to the Company by Moss Adams. Any undefined terms in this PSA shall have the same meaning as set forth in the Engagement Letter.

### Objective of the Examination

The objective of our examination is the expression of an opinion as stated in the Engagement Letter. Our examination will be conducted in accordance with the standards described in the Engagement Letter and will include tests of your records and other procedures we consider necessary to enable us to express such an opinion. We cannot provide assurance that an unmodified opinion will be expressed. Circumstances may arise in which it is necessary for us to modify our opinion. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the examination or are unable to form or have not formed an opinion, we may decline to express an opinion or may withdraw from this engagement.

### Procedures and Limitations

An examination includes examining evidence on a test basis and cannot be relied upon to disclose all material errors, or known or suspected fraud or noncompliance with laws or regulations or internal control deficiencies that may exist. Therefore, our examination will involve judgment about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the examination to obtain reasonable, but not absolute, assurance about whether your Subject Matter is presented in accordance with (or based on) the Criteria, in all material respects. A risk exists that we may not detect material misstatements because: (a) an examination is designed to provide reasonable, but not absolute, assurance the Subject Matter is fairly presented in all material respects, (b) we will not perform a detailed examination of all transactions as such is cost prohibitive, and (c) an examination is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the Subject Matter. However, we will inform you of any material errors, known or suspected fraud and non compliance with laws or regulations, internal controls deficiencies identified during the engagement, and uncorrected misstatements that come to our attention, unless clearly inconsequential. Our responsibility is limited to the period covered by our examination and does not extend to any time period for which we are not engaged as examiners.

### Changes in Professional or Accounting Standards

To the extent that future federal, state, or professional rule-making activities require modification of our examination approach, procedures, scope of work, etc., we will advise you of such changes and the impact on our fee estimate. If we are unable to agree on the additional fees, if any, that may be required to implement any new accounting and examination standards that are required to be adopted and applied as part of our engagement, we may terminate this Agreement as provided herein, regardless of the stage of completion.

### Representations of Management

During the course of our engagement, we may request information and explanations from management regarding, among other matters, the Company's operations, internal control, future plans, specific transactions, and accounting systems and procedures. At the conclusion of our engagement, we will require, as a precondition to the issuance of our report, that management provide us with a written representation letter confirming some or all of the representations made during the engagement. The procedures we will perform in our engagement will be heavily influenced by the representations that we receive from management. While we may assist management in the preparation of the representation letter, it is management's responsibility to carefully review and understand the representations made therein.

### Fees and Expenses

Billings are due upon presentation and become delinquent if not paid within 30 days of the invoice date. Any past due fee under this Agreement shall bear interest at the highest rate allowed by law on any unpaid balance. In addition to fees, you may be billed for expenses and any applicable sales and gross receipts tax. Direct expenses may be charged based on out-of-pocket expenditures, per diem allotments, and mileage reimbursements, depending on the nature of the expense. Indirect expenses, such as processing time and technology expenses, may be passed through at our estimated cost and may be billed as a flat charge or a percentage of fees. If we elect to suspend our engagement for nonpayment, we may not resume our work until the account is paid in full. If we elect to terminate our services for nonpayment, or as otherwise provided in this Agreement, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed our work. You will be obligated to compensate us for fees earned for services rendered and to reimburse us for expenses. You acknowledge and agree that in the event we stop work or terminate this Agreement as a result of your failure to pay on a timely basis for services rendered by Moss Adams as provided in this Agreement, or if we terminate this Agreement for any other reason, we shall not be liable to you for any damages that occur as a result of our ceasing to render services.

DocuSign Envelope ID: CCA8107B-9F33-4959-A658-68117408373B

## Limitation on Liability

IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR OTHERWISE ARISING OUT OF THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR EXEMPLARY OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT.

## Subpoena or Other Release of Documents

As a result of our services to you, we may be required or requested to provide information or documents to you or a third-party in connection with governmental regulations or activities, or a legal, arbitration or administrative proceeding (including a grand jury investigation), in which we are not a party. You may, within the time permitted for our firm to respond to any request, initiate such legal action as you deem appropriate to protect information from discovery. If you take no action within the time permitted for us to respond or if your action does not result in a judicial order protecting us from supplying requested information, we will construe your inaction or failure as consent to comply with the request. Our efforts in complying with such requests or demands will be deemed a part of this engagement and we shall be entitled to additional compensation for our time and reimbursement for our out-of-pocket expenditures (including legal fees) in complying with such request or demand.

## Document Retention Policy

At the conclusion of this engagement, we will return to you all original records you supplied to us. Your Company records are the primary records for your operations and comprise the backup and support for the results of this engagement. Our records and files, including our engagement documentation whether kept on paper or electronic media, are our property and are not a substitute for your own records. Our firm policy calls for us to destroy our engagement files and all pertinent engagement documentation after a retention period of seven years (or longer, if required by law or regulation), after which time these items will no longer be available. We are under no obligation to notify you regarding the destruction of our records. We reserve the right to modify the retention period without notifying you. Catastrophic events or physical deterioration may result in our firm's records being unavailable before the expiration of the above retention period.

Except as set forth above, you agree that Moss Adams may destroy paper originals and copies of any documents, including, without limitation, correspondence, agreements, and representation letters, and retain only digital images thereof.

## Use of Electronic Communication

In the interest of facilitating our services to you, we may communicate by facsimile transmission or send electronic mail over the Internet. Such communications may include information that is confidential. We employ measures in the use of electronic communications designed to provide reasonable assurance that data security is maintained. While we will use our best efforts to keep such communications secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept we have no control over the unauthorized interception of these communications once they have been sent. Unless you issue specific instructions to do otherwise, we will assume you consent to our use of electronic communications to your representatives and other use of these electronic devices during the term of this Agreement as we deem appropriate.

## Enforceability

In the event that any portion of this Agreement is deemed invalid or unenforceable, said finding shall not operate to invalidate the remainder of this Agreement.

## Entire Agreement

This Professional Services Agreement and Engagement Letter constitute the entire agreement and understanding between Moss Adams and the Company. The Company agrees that in entering into this Agreement it is not relying and has not relied upon any oral or other representations, promise or statement made by anyone which is not set forth herein.

## Use of Moss Adams' Name

The Company may not use any of Moss Adams' name, trademarks, service marks or logos in connection with the services contemplated by this Agreement or otherwise without the prior written permission of Moss Adams, which permission may be withheld for any or no reason and may be subject to certain conditions.

## Dispute Resolution Procedure, Venue and Limitation Period

This Agreement shall be governed by the laws of the state of Washington, without giving effect to any conflicts of laws principles. If a dispute arises out of or relates to the engagement described herein, and if the dispute cannot be settled through negotiations, the parties agree first to try in good faith to settle the dispute by mediation using an agreed upon mediator. If the parties are unable to agree on a mediator, the parties shall petition the state court that would have jurisdiction over this matter if litigation were to ensue and request the appointment of a mediator, and such appointment shall be binding

on the parties. Each party shall be responsible for its own mediation expenses, and shall share equally in the mediator's fees and expenses.

Each party hereby irrevocably (a) consents to the exclusive jurisdiction and venue of the appropriate state or federal court located in King County, state of Washington, in connection with any dispute hereunder or the enforcement of any right or obligation hereunder, and (b) WAIVES ITS RIGHT TO A JURY TRIAL. EACH PARTY FURTHER AGREES THAT ANY SUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT MUST BE FILED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ARISES.

## Termination
This Agreement may be terminated by any party, with or without cause, upon ten (10) days' written notice. In such event, we will stop providing services hereunder except on work, mutually agreed upon in writing, necessary to carry out such termination. In the event of termination: (a) you shall pay us for services provided and expenses incurred through the effective date of termination, (b) we will provide you with all finished reports that we have prepared pursuant to this Agreement, and (c) neither party shall be liable to the other for any damages that occur as a result of our ceasing to render services.

## Use of Nonlicensed Personnel
Certain engagement personnel who are not licensed as certified public accountants may provide services during this engagement.

## Regulatory Access to Documentation
The documents created or incorporated into our documentation for this engagement are the property of Moss Adams and constitute confidential information. However, we may be requested to make certain engagement related documents available to regulatory agencies pursuant to authority given to them by law or regulation. If requested and in our opinion a response is required by law, access to such engagement related documents will be provided under the supervision of Moss Adams personnel. Furthermore, upon request, we may provide photocopies of selected engagement related documents to regulatory agencies. The regulatory agencies may intend or decide to distribute the photocopies or information contained therein to others, including other government agencies.

## Hiring of Employees
We have a significant investment in the training and development of our accountants, and they are valued employees of Moss Adams. If you should hire one of our accountants either during the audit or within one year after the completion of this engagement, you agree to pay a personnel placement fee based on current market conditions to compensate Moss Adams. Any offer of employment to members of the audit team prior to completion of our procedures may impair our independence, and as a result, may result in our inability to complete the engagement and issue a report.

## Mutual Waiver of COVID-19 Claims
This provision addresses issues regarding the novel coronavirus ("COVID-19"). The Parties acknowledge their respective understanding of the hazards of COVID-19, including, but not limited to, its highly contagious nature and the corresponding health risks associated with being exposed to or infected by COVID-19. Each Party agrees to waive, release, discharge, and covenants not to sue the other Party or its affiliates and its and their respective officers, directors, partners, principals, employees, agents, or subcontractors from any and all claims, damages, expense, liability, illness or losses that may occur from exposure to or infection by COVID-19 arising out of, related to, or in any way connected with the professional services provided by Moss Adams.