IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10961 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: September 7, 2024 at 2:00 p.m. (ET)<br>Objection Deadline: September 1, 2024<br><br>**D.I. 162** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTORS'
MOTION FOR ENTRY OF AN ORDER APPROVING THE DEBTORS' (A) KEY
EMPLOYEE RETENTION PROGRAM, (B) KEY EMPLOYEE INCENTIVE
PROGRAM, AND (C) GRANTING CERTAIN RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors-in-possession and its affiliates (collectively, the "Debtors") hereby submits this objection and reservation of rights (the "Objection") to the Debtors' *Motion For Entry of an Order Approving the Debtors' (A) Key Employee Retention Program, (B) Key Employee Incentive Program, and (C) Granting Certain Related Relief* [D.I. 162] (the "Motion").[2] In support of this Objection, the Committee respectfully states as follows:

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Capitalized terms used in this Objection which are not otherwise defined shall have the meanings ascribed to them in the Motion.

## **PRELIMINARY STATEMENT**[3]

1. The proposed terms of the Key Employee Incentive Plan (the "KEIP") and the Key Employee Retention Plan (the "KERP," and collectively with the KEIP, the "Employee Compensation Plans") fail to satisfy the stringent standards of sections 363 and 503 of the Bankruptcy Code. The Motion should be denied because: (i) the proposed payments, totaling $375,000, are being made to insiders and employees who may be employed by the Debtors for as little as one day after approval of the Motion and are receiving bonuses for just doing their jobs, nothing more; (ii) the Employee Compensation Plans neither incentivize insiders, nor promote retention of rank-and-file employees, but instead rewards all of these individuals for past performance; and (iii) any amounts paid under the Employee Compensation Plans reduce, on a dollar-for-dollar basis, the amount that would otherwise be preserved for the benefit of general unsecured creditors pursuant to a DIP financing settlement between the Committee and the DIP Term Lenders.

2. The hearing on the approval of the sale of the Debtors' assets is scheduled to be heard on the same day as the hearing on the Motion. If the sale is approved, EnergySolutions has stated on the record that it intends to close as soon as the day following the sale hearing, meaning that any amounts awarded pursuant to the Motion, up to $375,000, could be paid in exchange for a single day of additional employment.

3. Based on this fact alone, it becomes clear that the KEIP is nothing more than a disguised retention plan for insiders prohibited under section 503(c)(1) that seeks to reward insiders for past performance. Indeed, there is little incentive for KEIP Participants to exert any additional efforts considering the transaction embodied in the executed Stalking Horse APA is

---

[3] Capitalized terms used in Preliminary Statement which are not otherwise defined shall have the meanings ascribed to them in the Objection.

anticipated to close as soon as the day after the hearing on the Motion. All that is required of the KEIP Participants, and likewise the KERP Participants, in order to receive these bonuses is that they continue doing their jobs for the duration of a very short sales process and remain employed for as little as one additional day. In fact, it appears that the only way that the proposed amounts under the Employee Compensation Plans would not be earned is if any participant voluntarily resigns during the very short period of time—as little as 24-hours—between any approval of the Motion and the closing of the sale.

4.      Even if the KEIP was incentivizing in nature, which it is clearly not, it still fails to satisfy the requirements of sections 363(b)(1) and 503(c), as discussed herein. The KERP fails for the same reasons. Simply put, the facts and the circumstances of these cases, as well as the exercise of sound business judgment prohibit these Employee Compensation Plans from being approved.

5.      Importantly, the proposed Employee Compensation Plans will reduce the amounts payable to general unsecured creditors, as the Committee negotiated a settlement with the DIP Term Lenders which provides that any budgeted amounts for the Employee Compensation Plans which are not awarded will be preserved for the benefit of general unsecured creditors.

6.      Accordingly, for the reasons set forth herein, the Committee respectfully requests that the Court deny the Motion.

## BACKGROUND

**The Chapter 11 Cases**

7.      On July 22, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United State Bankruptcy Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. On August 2, 2023, the Office of the United States Trustee appointed the Committee in the Chapter 11 Cases.

9. The factual background regarding the Debtors' commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Tracy D. Pagliara in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 2] (the "Declaration") filed on the Petition Date.

**Summary of the Debtors' Proposed KEIP and KERP**

10. On August 15, 2023, the Debtors filed the Motion seeking entry of an order approving the Debtors' proposed KERP and KEIP.

11. On August 18, 2023, the Debtors filed the *Motion Requesting an Order Shortening Notice Period for and Scheduling Expedited Hearing on the Motion* [D.I. 189] (the "Motion to Shorten"). The Court approved the Motion to Shorten on August 19, 2023 and set the hearing to consider the Motion on September 7, 2023. *See Order Shortening Notice Period* [D.I. 195].

   A. **The Proposed KERP**

12. The Debtors seek authorization for nine (9) employees participating in the KERP (the "KERP Participants") to receive a retention bonus payment if the employees continue to be employed by Williams Industrial Services Group Inc. ("WISG") through the Court's approval of the Debtors' sale of assets to a third-party purchaser and the subsequent consummation and anticipated Closing Date (defined below), regardless of whether such closing occurs. Motion at ¶ 12. If an employee is terminated by WISG for any reason other than cause prior to the Closing Date, then the employee will still receive a retention bonus after the Closing Date. *Id.*

13. The KERP Payments range from $10,000 to $50,000 per employee and total $175,000. *See* Motion, Ex. C.

### B. The Proposed KEIP

14. The Debtors seek authorization for four (4) insider employees participating in the KEIP (the "KEIP Participants") to receive an incentive bonus upon the consummation of a sale of substantially all of the Debtors' assets. KEIP Participants will receive a $50,000 bonus if they are (a) either (i) employed by WISG through the Closing Date, or (ii) terminated by the Debtors for any reason other than cause prior to the Closing Date; and (b) the sale is consummated. Motion at ¶ 14.

15. The KEIP Payments consists of $50,000 per employee, totaling $200,000. *See* Motion, Ex. C.

### C. The Sale Process

16. On July 24, 2023, the Debtors filed the *Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Authority to Sell, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [D.I. 33] which sought, among other things, approval to enter into an asset purchase agreement (the "Stalking Horse APA") with the Debtors' proposed stalking horse bidder, EnergySolutions Nuclear Services, LLC ("EnergySolutions"), subject to higher or better bids.

17. On August 30, 2023, the Debtors filed the *Notice of Auction Cancellation and Designation of Successful Bidder* [D.I. 231] which, among other things, designated EnergySolutions as the successful bidder of substantially all of the Debtors' assets. EnergySolutions has stated on the record that it will be ready to close on the sale as early as September 8, 2023 (the "Closing Date").

**OBJECTION**

**I.    The Debtors Fail to Satisfy Their Burden with Respect to the KEIP.**

18.    The proposed KEIP does not sufficiently incentivize the insider KEIP Participants to do anything beyond satisfying their statutory mandated obligations as executives of a debtor-in-possession during an extraordinarily streamlined sales process, with limited additional bidder interest, for potentially no longer than one day after the sale hearing.  In addition, the Motion fails to articulate facts demonstrating that each KEIP Participant is essential to the Debtors and has a bona fide offer from another employer at the same or greater rate of compensation.  Indeed, the KEIP is a poorly disguised KERP, and the Debtors fail to satisfy the requirements of section 503(c)(1) to implement the KEIP.  *See In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006).

19.    Section 503(c)(1) of the Bankruptcy Code was enacted to impose strict limitations on a debtor's ability to make retention payments to insiders in order "to eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process."  *In re Glob. Home Prod., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citation omitted).  "Section 503(c)(1) prohibits payments to 'insiders' to induce them to remain with the debtor unless a court finds that the evidence establishes that the payment is 'essential' because the individual has a 'bona fide' offer from another entity at the same or greater rate of compensation, and the individual's services are 'essential' to the debtor's survival."  *Id.* at 785 (quoting 11 U.S.C. § 503(c)(1)).  "The retention bonuses are also limited in amount."  *Id.*

20.    The Debtors bear the burden of proving that the KEIP is truly incentivizing, and therefore governed by section 503(c)(3), and not a disguised retention plan governed by section 503(c)(1).  *See In re Residential Cap., LLC*, 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).  For a

bonus plan to be incentivizing, it should be tied to significant goals that are difficult to achieve. *See In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 315 (Bankr. S.D.N.Y. 2012). In determining whether a proposed plan is a true incentive plan or simply a disguised retention program, a court must "determine whether the proposed targets are designed to motivate insiders to rise to a challenge or merely report to work." *Id.* at 313.

21. As an initial matter, it appears undisputed that the KEIP Participants qualify as insiders, as defined in section 101(31) of the Bankruptcy Code.

| Department | Name | Title | KEIP Payment |
|---|---|---|---|
| Officer | Charles Wheelock | CAO, General Counsel VP, Human Resources | $50,000 |
| Officer | Dawn Jenkins | VP, Human Resources | $50,000 |
| Officer | Tracy Pagliara | Chief Executive Officer | $50,000 |
| Officer | Randall Lay | Executive VP, COO | $50,000 |

22. The KEIP lacks any incentive metrics or the triggering of additional bonuses for reaching other goals, such as increasing the sale price for the Debtors' assets. The bar for the KEIP Participants to satisfy their performance goal (remaining employed through the Closing Date) is so outlandishly low that the only way for the KEIP Participants to not achieve this would be to voluntarily quit during a period that is as short as one day between any approval of the Motion and the Closing Date. Thus, the KEIP structure fails to satisfy the requirements set forth by courts that KEIPs must be tied to significant goals that are difficult to achieve. *See, e.g.*, *In re Hawker Beechcraft*, 479 B.R. at 315.

23. Additionally, there is no evidence that any KEIP Participant has secured other employment and will be leaving during the potential one-day period between the hearing on the Motion and Closing Date, why each KEIP Participant is essential during this period, and what consequences any departure may cause to the consummation of the sale to EnergySolutions. The

only support in the Motion for the necessity of the KEIP is that the "KEIP was specifically designed to motivate the Debtors' senior leadership to continue to focus on the Debtors' operations, maximize the value of the Debtors' estates, and consummate a valuable sale transaction for the benefit of all stakeholders." Motion at ¶ 23. Additionally, the Debtors' CRO asserts in his Declaration that "[t]he departure of KERP and KEIP employees could hinder the Debtors' ability to successfully operate through the consummation of the sale of Debtors' assets without disruption, negative purchase price adjustment, or an outright failure to close." Supplemental Declaration at ¶ 6.[4] However, neither the Motion nor the Supplemental Declaration include any factual evidence that any KEIP Participant is necessary to close the sale, especially where the Debtors also have multiple retained professionals including counsel, a financial advisor, and an investment banker. These vague assertions, which lack any factual support, fail to meet the stringent standard set forth in section 503(c)(1) of the Bankruptcy Code regarding the essential services the insiders must provide to be eligible for incentive bonuses. Instead, it appears that the Debtors are seeking to reward the KEIP Participants for nothing more than past performance, which is in contravention of section 503(c) of the Bankruptcy Code.

24.     Accordingly, the Debtors have failed to satisfy their burden of demonstrating that the proposed KEIP is a true incentive plan or otherwise warranted.

II.    **The Proposed KEIP is Neither Justified by the Facts and Circumstances of the Chapter 11 Cases Nor a Sound Exercise of the Debtors' Business Judgment.**

25.     Even if the Court were to conclude that the KEIP appropriately incentivizes KEIP Participants, approval of the KEIP should still be denied because the KEIP does not meet the requirements of sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code. The KEIP is not an

---

[4] The "Supplemental Declaration" refers to the *Supplemental Declaration of Edward T. Gavin, CTP, NCPM in Support of Debtors' Motion for an Order Approving the Debtors' (A) Key Employee Retention Program, (B) Key Employee Incentive Program, and (C) Granting Certain Related Relief* [D.I. 224].

exercise of the Debtors' sound business judgment under section 363(b)(1), and it is not justified by the facts and circumstances of these Chapter 11 Cases as required by section 503(c)(3).

### A. The Proposed KEIP is Not Justified by the Facts and Circumstances of the Chapter 11 Cases.

26. The Debtors have not demonstrated that the KEIP is appropriate given the facts and circumstances of these Chapter 11 Cases. The Debtors are seeking to award insiders $200,000 in bonuses, in addition to their lucrative salaries, for simply doing their jobs during an abbreviated sales process, with minimal interest aside from the Stalking Horse, and for potentially only one day after the sale hearing. The relief sought in the Motion is tone deaf to the facts of these cases and is a slap in the face to the Debtors' creditors who will not be paid in full, but based on a settlement between the Committee and the DIP Lenders, would receive any amounts not awarded under the KEIP. Moreover, in conversations with the Committee, the Debtors have raised concerns regarding their liquidity throughout these cases, yet somehow have set aside enough funding to pay insiders.

27. Additionally, despite the Debtors' assertions, the proposed KEIP fails to satisfy the business judgment standard. Factors that courts consider when determining whether the structure of a compensation proposal and the process for its development meet the business judgment standard include:

   a. Whether there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance.

   b. Whether the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential.

   c. Whether the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly.

    d. Whether the plan or proposal is consistent with industry standards.

    e. What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry.

    f. Whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*See In re Glob. Home Prod.*, 369 B.R. at 786 (citing to *In re Dana*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006).

28. When considering these factors, the proposed KEIP is plainly inappropriate. First, the Debtors have failed to demonstrate that the results to be achieved justify the payments to the KEIP Participants simply upon the closing of the sale pursuant to the previously heavily negotiated Stalking Horse APA. Indeed, after months of extensive negotiations, the Debtors simply needed to maintain the businesses for a few weeks after the Petition Date to consummate the sale to EnergySolutions. The likelihood of EnergySolutions walking away from its bid after approval of the Motion is not grounded in reality.

29. Second, the Debtors have presented no evidence that the cost of the KEIP is reasonable. Despite the Committee's requests, the Debtors have failed to provide the Committee any documentary support of industry standards, market rates, or what other executives in similar size companies facing similar facts have received in other bankruptcy cases.

30. As to the remaining factors, the Motion proffers conclusory statements in support of the Debtors' claims and assertions. The Debtors claim that the KEIP is beneficial to the Debtors' estates based on vague assertions about maximizing and enhancing the value of the Debtors' estates by motivating the performance of senior leadership. *See* Motion at ¶ 22. However, the reality of these cases is that the KEIP Participants are likely aware they will no longer be employed

by the Debtors as of the Closing Date and that the sale to EnergySolutions is *fait accompli*, thereby eliminating any ability for them to increase value to the Debtors' estates. Importantly, the Supplemental Declaration provides that "[i]n determining the amounts of the individual awards for employees governed by the KERP and KEIP and which employees would participate, the Debtors included high risk-high value employees," without any explanation as to why this method was chosen and what other methods were available. Supplemental Declaration at ¶ 5.

31. Accordingly, because the Debtors have failed to demonstrate a sound business purpose to justify the KEIP, the Debtors should not be entitled to rely on their business judgment in seeking approval of the plan.[5]

### III. The Proposed KERP Does Not Satisfy the Requirements of Section 503(c) of The Bankruptcy Code.

32. The Debtors have also failed to meet their burden of showing that the proposed bonuses under the KERP are justified by the facts and circumstances of these cases, as required by section 503(c)(3), and constitute a sound exercise of the Debtors' business judgment under section 363(b)(1).

33. The KERP must comply with the provisions of section 503(c)(3) which prohibits "transfers or obligations that are outside the ordinary course of business and *not justified by the facts and circumstances of the case*, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11 U.S.C. § 503(c)(3) (emphasis added).

---

[5] The Committee notes that the Debtors cite to serval cases in this jurisdiction where KEIPs have been approved. The Committee will not respond to these citations as the Debtors failed to explain the terms of the approved KEIPs in each of those cases and how they differ from the terms proposed by the Debtors in these cases. The Committee is confident that the facts in these cases are substantially different from the Debtors' cited cases.

34.     The Debtors insist that the proposed KERP, which provides for a total of $175,000 in bonuses for nine employees, is a sound exercise of their business judgment.  Specifically, the Debtors contend that the KERP is necessary "to reward the KERP Participants for their substantial efforts in these chapter 11 proceedings[,]" and "to ensure that they continue focusing their attention and efforts on the Debtors' operations up to and including the sale Closing Date."  Motion at ¶ 20.  The Debtors also assert that the "maintenance of employee morale and prevention of any further attrition is integral to managing any adverse impacts of these proceedings on the Debtors' sale efforts."  *Id*.

35.     These arguments appear to be a cut and paste of KERP motions filed in other chapter 11 cases and do not align with the facts as they exist here.  The KERP Participants only worked for the Debtors for a short time from the Petition Date due to the compressed post-petition sales process and will be employed by the Debtors for as little as one day after the hearing on the Motion, meaning the proposed payments reward employees for past performance, in direct contravention to the purposes of a KERP—to retain employees on a go-forward basis.  The Debtors' assertions regarding employee morale and further attrition are irrelevant to these cases as the Debtors will no longer employ any significant number of employees after the Closing.  The reality is the KERP Participants are already motivated to remain employed by the Debtors to ensure that they have an opportunity to be hired by EnergySolutions.

36.     The KERP also fails to satisfy the *Global Home Products* factors adopted by this Court for the same reasons as the KEIP.  The Debtors have failed to demonstrate that the results to be achieved justify the KERP bonuses when the KERP Participants must simply continue to perform their job responsibilities for as little as one additional day until the Closing Date.

**Necessary Modifications to the Terms of the Employee Compensation Plans**

37. To the extent this Court is inclined to approve the KEIP and/or the KERP in these Chapter 11 Cases, the Committee respectfully submits that the following requirements be satisfied prior to the Debtors' payments of any bonus amounts:

   a. **Offer of Employment**. If, during the 12-month period from the Closing Date, any KEIP or KERP Participant receives an offer of employment by EnergySolutions (whether or not such participant accepts such an offer) for substantially the same or greater compensation as such participant received from the Debtors as of the Closing Date, such participant will be required to promptly repay all bonus amounts to the Debtors' estates. Additionally, any participant should be required to consent to the jurisdiction of this Court and agree to be responsible for legal fees and cost associated with any efforts to recover bonus amounts by the Debtors' estates.

   b. **Waiver of Severance and Claims**. Any bonuses awarded under the KEIP and KERP should be contingent on the participants waiving any rights to severance, bonuses, or other payments under any employment agreements they have with the Debtors. Participants should also be required to release all claims against the Debtors' estates.

   c. **Insider Avoidance Claims**. Any order approving the Motion should contain a reservation of the Committee's right to pursue any chapter 5 causes of action and any state law claims, including claims for preferential transfers and fraudulent conveyances, against any KEIP or KERP Participants.

## **RESERVATION OF RIGHTS**

38. The Committee reserves the right to supplement this Objection at any time prior to the hearing on the Motion. The Committee expressly reserves its rights to raise additional or further objections to the Motion at or prior to the currently scheduled hearing or any subsequent hearing.

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion; and (ii) grant such other relief as the Court deems just and appropriate.

Dated September 1, 2023                **MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Siena B. Cerra, Esquire
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: scerra@morrisjames.com

-and-

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq. (admitted *pro hac vice*)
Eric S. Chafetz, Esq. (admitted *pro hac vice*)
Phillip Khezri, Esq. (admitted *pro hac vice*)
Brittany M. Clark, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
E-mail: JCohen@lowenstein.com
E-mail: EChafetz@lowenstein.com
E-mail: PKhezri@lowenstein.com
E-mail: BClark@lowenstein.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

16290615/1