**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                                                                    :
                                                                                          : Chapter 11
WILLIAMS INDUSTRIAL SERVICES                                          :
GROUP INC., *et al.*,[1]                                                       : Case No. 23-10961 (BLS)
                                                                                          :
                                  Debtors.                                      : **Re: Docket Nos. 23, 203, 289**

------------------------------------------------------------- x

### OBJECTION OF BECHTEL POWER CORPORATION TO SALE AND ASSUMPTION OF RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Bechtel Power Corporation ("BPC"), a 75% owner and member of Richmond County Constructors ("RCC"), by and through its undersigned counsel, hereby objects (the "Objection")[2] to the sale of certain assets related to RCC to the Successful Bidder[3] and to any potential piecemeal assumption and assignment of executory contracts related to BPC and RCC to the Successful Bidder.  In support of this Objection, BPC states as follows:

### BACKGROUND

1.      RCC, Debtor Williams Plant Services, LLC ("Debtor WPS"), and BPC are parties to the confidential *Limited Liability Company Operating Agreement of Richmond County Constructors, LLC, dated August 18, 2017, between Bechtel Power Corporation and Williams*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

[2] Immediately prior to the extended objection deadline, BPC was informed by counsel to the Successful Bidder that the Successful Bidder intends to exclude the sale of the 25% membership interest and Agreements from the APA. The Successful Bidder also informed BPC that the Successful Bidder will no longer be seeking to have the Agreements assumed and assigned to it.  Pending review of the revised APA and executory contract schedules, BPC files this Objection out of an abundance of caution.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

*Plant Services, LLC for Vogtle Electric Generating Plant, Units 3 & 4 Construction Completion* (the "Operating Agreement"). In the Operating Agreement, BPC and Debtor WPS form the limited liability company of RCC for purposes of performing engineering, procurement, and construction services for the Plant Vogtle Unit 3 and 4 construction project in Burke County, Georgia (the "Project"). Pursuant to the Operating Agreement, BPC owns a 75% interest in RCC, and Debtor WPS holds a 25% interest in RCC.

2.    The Operating Agreement includes the material obligations and responsibilities of Debtor WPS to BPC and RCC, including, but not limited to:

(a)    Debtor WPS's use of RCC's intellectual property;

(b)    Debtor WPS's provision of personnel to RCC;

(c)    Debtor WPS's provision of materials to RCC;

(d)    Debtor WPS's provision of suitably qualified employees and/or representative to facilitate pre-qualifying for and preparing and submitting the construction scope for the Project; and

(e)    Debtor WPS's indemnification of RCC.

In exchange for Debtor WPS's performance of the foregoing services, RCC has agreed to compensate Debtor WPS.

3.    RCC and WPS are also parties to the confidential *Services Agreement—Vogtle Project dated August 18, 2017* (the "Services Agreement"). The Services Agreement, *inter alia,* requires WPS to provide services to RCC to support the prime contract between BPC and the construction project real property owner. RCC is a subcontractor for the project prime contract, and Debtor WPS has agreed to provide services to RCC in the Services Agreement. RCC compensates Debtor WPS for the services Debtor WPS performs pursuant to the Services Agreement. In the Services Agreement, Debtor WPS agrees to perform the following services for RCC:

2

(a)    Peak time staffing for the equivalent of 4,500 employees;

(b)    New hire reporting to all local, state, and federal employees;

(c)    Union maintenance and any necessary payments;

(d)    Federal and state withholding taxes;

(e)    Federal form W-2 and W-3 creation, reconciliation, printing, and mailing;

(f)    Garnishment set up and maintenance;

(g)    Managing state unemployment inquiries and responses;

(h)    ACH and direct deposit payment arrangements;

(i)    Payroll software access;

(j)    Wage and roster bulletins;

(k)    Month-end financial summaries;

(l)    Maintenance of workers' compensation and general liability insurance; and

(m)    Seven-year record retention for audits.

4.    RCC and Debtor WPS have specifically agreed that the Operating Agreement and Services Agreement are executory and fully integrated.  RCC and Debtor WPS further agree in the Operating Agreement that in a bankruptcy of any member of RCC,[4] the Operating Agreement, Services Agreement, and any loaned personnel agreement shall be treated as one non-severable executory contract for purposes of assumption and rejection and for all other purposes.  *See* Operating Agreement at § 7.2.

---

[4] Debtor WPS is a 25% interest-holding member of RCC.

## THE DEBTORS' BANKRUPTCY

5.      On July 22, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced their voluntary chapter 11 cases pursuant to title 11 of the United States Code (the "Bankruptcy Code").

6.      On July 24, 2023, the Debtors filed the *Motion For Sale of Property Free and Clear of Liens(FEE) / Debtors' Motion for Entry of an Order (i) Approving Bidding Procedures for the Sale of Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Debtors Authority to Sell, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving the Form and Manner of Notice thereof, (v) Approving Contract Assumption and Assignment Procedures, and (vi) Granting Related Relie*f [Docket No. 33] (the "Sale Motion").

7.      In the proposed stalking horse asset purchase agreement included as Exhibit A to the Sale Motion (the "APA"), the Debtors include Debtor WPS's interests in RCC, which are granted in the Operating Agreement, as an asset to be sold pursuant to the Sale Motion.

8.      On August 19, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (i) Approving Bidding Procedures for the Sale of Debtors' Assets, (ii) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (iii) Scheduling Bid Deadlines and an Auction, (iv) Approving Form and Manner of Notice thereof, (v) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases, (vi) Authorizing and Approving the Debtor's Entry into the Stalking Horse APA, (vii) Authorizing and Approving Bid Protections, and (viii) Granting Related Relief* [Docket No. 196] (the "Bidding Procedures").

9.      On August 22, 2023, the Debtors filed the Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases (the "Notice").  The Notice lists the "RCC JV Agreement" between RCC and Debtor WPS on the Assigned Contracts Schedule.  The cure

costs are listed at zero.  After conferring with the Debtors, BPC's objection deadline was extended to September 6, 2023.

10.    On September 5, 2023, the Debtors filed the Notice of Successful Bidder's Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket No. 289] (the "Second Notice").  The Second Notice does not include any executory contracts or unexpired leases related to BPC or RCC.

## THE OBJECTION

11.    BPC files this objection because: (i) the Operating Agreement is an integrated executory contract and cannot be sold to the Successful Bidder without the Debtors' assumption and assignment of the Operating Agreement, the Services Agreement, and any loaned personnel agreements (collectively, the "Agreements"); (ii) all executory contracts and unexpired leases concerning BPC and RCC need to be included in the Debtors' assumption and assignment notices if they are to be assumed and assigned because the Agreements are fully integrated documents as agreed upon by BPC, RCC and Debtor WPC; (iii) the Debtors and Successful Bidder have failed to provide adequate assurance of future performance; and (iv) the Second Notice excludes any mention of RCC; thus, BPC reserves all rights.

## BASIS FOR OBJECTION

*All Integrated Agreements Must be Assumed and Assigned*
*Simultaneously to Be included in the Sale*

12.    The Agreements are fully integrated executory contracts and cannot be sold piecemeal.  Section 7.2 of the Operating Agreement explicitly states that:

> The Members acknowledge and agree that this Agreement and each Loaned Personnel Agreement are executory and fully integrated, and therefore in a bankruptcy of any Member shall be treated as one non-severable contract for purposes of assumption and rejection and all other purposes.

Operating Agreement at § 7.2.[5]  Because the Agreements are fully integrated and executory, the Debtors' sale of its interest in RCC, granted by the Operating Agreement, must include the assumption and assignment of the Agreements.

13.      It is undisputed that the Agreements are fully integrated and executory.  Continued performance is required by all parties to the Agreements, and the Agreements themselves state that they are executory.  Debtor WPS is required to continuously provide personnel services, and RCC is required to compensate Debtor WPS for its services on an ongoing basis.  Any failure to provide services on the one side and compensation on the other would constitute a material breach making the Agreements executory.  *In re Weinstein Co. Holdings LLC,* 997 F.3d 497, 504 (3d Cir. 2021).  For the Debtors to sell the Agreements as executory contracts, the Debtors must assume and assign the Agreements.  *Id.*

14.      The parties' intentions also determine that the Agreements are in reality one agreement.  *In re Philip Servs. (Delaware), Inc.,* 284 B.R. 541, 546 (Bankr. D. Del. 2002), *aff'd,* 303 B.R. 574 (D. Del. 2003) *citing e.g., In re Teligent, Inc.,* 268 B.R. 723, 728 (Bankr. S.D.N.Y. 2001) *citing Huyler's v. Ritz–Carlton Restaurant & Hotel Co.,* 1 F.2d 491, 493 (D. Del. 1924).  Once parties to multiple agreements state their intention to make the multiple agreements inseparable and fully integrated, the assumption of one agreement under section 365 of the Bankruptcy Code necessarily includes the assumption of the others.  *In re Philip Servs.,* 284 B.R. at 546; *see also In re Centrix Fin., LLC*, 434 B.R. 880, 885 (Bankr. D. Colo. 2010) (*In re Philip Servs.* holds that the assumption of one part of an integrated agreement necessarily includes the assumption of all remaining integrated agreements).  The Agreements are required to be sold, assumed, and assigned together.

---

[5] Given the confidential nature of the Agreements, BPC has not attached them to this Objection.

15.     The Debtors cannot sell or assume the Operating Agreement without assuming the Operating Agreement, the Services Agreement, and the loaned personnel agreements.  "All of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re AbitibiBowater Inc.,* 418 B.R. 815, 823 (Bankr. D. Del. 2009) *citing, e.g., Philip Servs. Corp.,* 284 B.R. at 547-48.   The Debtors must unambiguously identify all Agreements in the APA for the sale to be approved.

*Adequate Assurance of Future Performance Is Required*

16.     Bankruptcy Code Section 365 requires adequate assurance of future performance as a condition to the assumption and assignment of an executory contract.  11 U.S.C. § 365.  The Debtors have not provided adequate assurance of future performance to BPC or RCC.

17.     Given the integrated nature of the agreements between RCC and Debtor WPS, and the important personnel and payroll functions Debtor WPS provides to RCC, the Debtors have failed to provide adequate assurance to BPC that the Successful Bidder will assume and perform all of the agreements required to be assumed and assigned pursuant to the Operating Agreement. An important first step would be correctly identifying all of the integrated agreements in the APA and schedules to the Notice and Second Notice.

18.     BPC has attempted to obtain clarification and assurances of performance from the Debtors; however, given the compressed timeframe between the identification of the Successful Bidder and the sale hearing, the Debtors have not been able to provide the clarification and assurances necessary to BPC.  Because the Debtors have not attempted to properly identify the relevant agreements between RCC, BPC, and Debtor WPC, BPC does not have adequate assurance that the Successful Bidder would know of the scope and responsibilities of Agreements, let alone perform as required by the Agreements.

19.     The consequences of the Debtors failure to provide adequate assurance could be severe to RCC and BPC—shutting down the Project if no personnel are provided.  The Bankruptcy Code requires the Debtors to do more to assume and assign the Agreements than list "RCC JV Agreement" on a notice.  *See In re Fleming Companies, Inc*., 499 F.3d 300, 308 (3d Cir. 2007) ("benefits of expedience of a trained staff" is a material and significant term of an executory contract requiring adequate assurance of future performance).  The Debtors must demonstrate that the Successful Bidder can perform the material terms of the Agreements.  The Debtors have not begun to do so.  The Agreements cannot be sold or assumed and assigned to the Successful Bidder without significant assurance of future performance.

*Filing of Conflicting Pleadings*

20.     Giving the conflicting Notices and the terms of the APA, the Debtors' intentions are unclear.  With the sale hearing occurring in less than 24 hours, BPC expressly reserves the right to file a further objection to the potential sale, assumption, assignment, and rejection of any of the Agreements on any grounds.  BPC also reserves the right to supplement the foregoing Objection as further information is disclosed by the Debtors and the Successful Bidder.

WHEREFORE BPC: (i) objects to the Notice, Second Notice, and the sale of any assets related to BPC or RCC to the Successful Bidder; (ii) seeks further information regarding the disposition of the Agreements in this chapter 11 case; (iii) demands adequate assurance of future performance; and (iv) seeks such other relief as is just.

Dated: September 6, 2023
Wilmington, Delaware

**A.M. SACCULLO LEGAL, LLC**

*/s/ Mark T. Hurford*
Anthony M. Saccullo (No. 4141)
Mark T. Hurford (No. 3299)
Mary E. Augustine (No. 4477)
27 Crimson King Drive
Bear, DE  19701
Telephone: (302) 836-8877
Email: ams@saccullolegal.com
       mark@saccullolegal.com
       meg@saccullolegal.com

*Counsel to Bechtel Power Corporation*