# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WILLIAMS INDUSTRIAL SERVICES GROUP INC., *et al.*,[1] | Case No. 23-#####-10961 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Related D.I.: 33, 83, 196** |

**ORDER (A) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING THE DEBTORS TO PERFORM THEIR OBLIGATIONS UNDER THE PURCHASE AGREEMENT AND OTHER TRANSACTION DOCUMENTS, (C) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (D) GRANTING RELATED RELIEF**

Upon the motion [Docket No. [●]33] (the "Original Sale Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), as amended and supplemented by the *Amendment and Supplement to Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Authority to Sell, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 83] (the "Sale Motion Supplement" and, together with the Original Sale Motion, the "Sale Motion"), seeking entry of an order (this "Sale Order"), pursuant to sections 105, 363 and 365 of title 11 of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Williams Industrial Services Group Inc. (1378), Williams Industrial Services Group, LLC (2666), Williams Industrial Services, LLC (0406), Williams Plant Services, LLC (9575), Williams Specialty Services, LLC (9578), WISG Electrical, LLC (6918), Construction & Maintenance Professionals, LLC (0925), Williams Global Services, Inc. (3708), Steam Enterprises, LLC (9177), GPEG LLC (5707), Global Power Professional Services, Inc. (2550), WISG Canada Ltd. (B.N. 6518), WISG Nuclear Ltd. (B.N. 3510), and WISG Electrical Ltd. (B.N. 2116). The location of the Debtors' corporate headquarters and service address is: 200 Ashford Center N, Suite 425, Atlanta, GA 30338.

00054333.2 00054333.4

United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the Debtors' entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, dated as of July [●]22, 2023 (together with the schedules and/or exhibits thereto and all related documents, and as may be amended, supplemented or otherwise modified from time to time after the date hereof in accordance with paragraph 33 of this Sale Order, the "Purchase Agreement"),[2] attached hereto as **Exhibit 1**, by and among Williams Industrial Services Group Inc., Williams Industrial Services Group, L.L.C., Williams Industrial Services LLC, Construction & Maintenance Professionals, LLC, WISG Electrical, LLC, Williams Plant Services, LLC, and Williams Specialty Services, LLC (each a "Seller", and together, the "Sellers") and EnergySolutions Nuclear Services, LLC (together with its subsidiaries and permitted assignees under the Purchase Agreement, the "Buyer"), as amended by that certain side letter amendment to the Purchase Agreement attached hereto as **Exhibit 2,** and all other ancillary documents, including, without limitation, the Transition Services Agreement and Reverse Transition Services Agreement (together with the Purchase Agreement, the "Transaction Documents"), (b) authorizing and approving the sale (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Purchase Agreement, the "Sale") of the Transferred Assets (as defined in the Purchase Agreement) free and clear of all Liens, Claims, Interests, and other Liabilities, except to the extent set forth in the Purchase Agreement, Permitted Liens, and the assumption of the Assumed Liabilities to the extent set

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Purchase Agreement or Bidding Procedures Order (as defined herein), as applicable.

forth in the Purchase Agreement upon the closing of the Sale (the "Closing"), (c) authorizing the assumption and assignment of certain of the Sellers' (as applicable) executory contracts and unexpired leases related thereto as set forth on the applicable schedules to the Purchase Agreement (each, a "Buyer Assumed Agreement," and, collectively, the "Buyer Assumed Agreements"), upon the Closing, subject to payment by the Buyer of all costs necessary to cure any defaults arising under any Buyer Assumed Agreement to the extent required by section 365(b) of the Bankruptcy Code, and (d) granting related relief, all as more fully set forth in the Sale Motion; and this Court having entered the [*Order (AI*) *Approving Bidding Procedures in Connection withfor the Sale of Debtors' Assets, (BII) Authorizing and Approving the Stalking Horse Agreement and Bid Protections; Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (CIV) Approving Procedures for the Form and Manner of Notice Thereof, (V) Approving Assumption and Assignment of CertainProcedures for Executory Contracts and Unexpired Leases; (DVI) Scheduling a Sale Hearing;Authorizing and Approving the Debtors' Entry Into the Stalking Hose APA, (EVII) Authorizing and Approving* ~~the Form and Manner of Notice Thereof~~*;Bid Protections, and (FVIII) Granting Related Relief*] [Docket No. [●]196] (the "Bidding Procedures Order"); [and the Debtors having conducted an auction (the "Auction") for the Transferred Assets]; and the Debtors, in consultation with the [Consultation Parties] (as defined in the Bidding Procedures), having determined that the Buyer has submitted the highest or otherwise best bid for the Transferred Assets and determined that the Buyer is the Successful Bidder and that [●] is the Back-Up Bidder (as defined in the Bidding Procedures), in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Sale Motion (the "Sale Hearing") on [●]September 7, 2023, at which time all interested parties were offered an opportunity to be

heard with respect to the Sale Motion; and the Court having reviewed and considered the Sale Motion, the Purchase Agreement, and any and all objections to the Sale, the Purchase Agreement and the other Transaction Documents filed in accordance with the Bidding Procedures Order; and the Court having heard statements of counsel and the evidence presented in support of the relief requested in the Sale Motion at the Sale Hearing and in the [*Declaration of* [●]*Tracy D. Paglia* in Support of *Chapter 11 Petitions and* First Day ~~Relief~~*Pleadings* [Docket No. [●]2]~~, and~~, the *Declaration of* [●]*David Shim of Greenhill & Co., Inc.* in Support of Debtors' *Sale* Motion ~~to Approve Bidding Procedures in Connection With~~[Docket No. 35], and the *Declaration of Steven E. Birchfield in Support of* the *Debtors'* Sale ~~of Assets~~*Motion and EnergySolutions Nuclear Services, LLC's Adequate Assurance of Future Performance* [Docket No. [●]243]; and it appearing that due notice of the Sale Motion, the Sale Hearing, the Purchase Agreement, and the Sale has been provided; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation;

IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:

**Jurisdiction, Venue, and Final Order**

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) or any other applicable Bankruptcy Rule, and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and the terms and conditions of this Sale Order should be immediately effective and enforceable upon its entry, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

**Notice of the Sale Motion, Auction, Sale Hearing,
Purchase Agreement and Sale and the Cure Costs**

D.      As evidenced by declarations and/or affidavits of service and publication previously filed with this Court  [see Docket Nos. [●]33 at ¶ 58, 216, 217, and [●]234], proper,

timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Purchase Agreement, and the Sale has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and Local Rules 2002-1, 6004-1 and 9006-1.  The Debtors have complied with all obligations to provide notice of the Sale Motion, the Bid Deadline, the Auction, the Sale Hearing, the Purchase Agreement, and the Sale as required by the Bidding Procedures Order.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Bid Deadline, the Auction, the Sale Hearing, the Purchase Agreement, or the Sale is required.  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice (as defined in the Sale Motion) in [The New York Times] on [●]August 24, 2023, as evidenced by the [AffidavitProof of Publication] filed on [●]August 25, 2023 [Docket No. [●]217] was sufficient and reasonably calculated under the circumstances to reach such entities.

E.      A reasonable opportunity to object or to be heard regarding the relief requested in the Sale Motion was afforded to all interested persons and entities.

F.      In accordance with the Bidding Procedures Order, the Debtors have served a notice of their intent to assume and assign the Buyer Assumed Agreements and of the Cure Costs upon each counterparty to a Buyer Assumed Agreement as set forth in the [*Notice of Potential Assumption and Assignment of*to Contract Parties to Potentially Assumed *Executory Contracts and Unexpired Leases in Connection with Proposed Sale of Assets* [Docket No. [●]]] (the203] (the "First Cure Notice") and the *Second Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 249] (the "Second Cure Notice" and, together with the First Cure Notice, each a "Cure Notice" and collectively the

"Cure Notices").  The Cure ~~Notice reflects~~Notices reflect the amounts the Debtors proposed as the costs (each a "Cure Cost") necessary to cure any defaults under each Buyer Assumed Agreement.  The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Buyer Assumed Agreements or establishing a Cure Cost for the respective Buyer Assumed Agreements.  Counterparties to the Buyer Assumed Agreements have been provided with an adequate opportunity to object to assumption and assignment of the applicable Buyer Assumed Agreements and the Cure Costs set forth in the Cure ~~Notice~~Notices (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code).  All objections, responses, or requests for adequate assurance in connection with the assumption and assignment of the Buyer Assumed Agreements that are not adjourned as set forth in this Sale Order or as otherwise set forth on the record at the Sale Hearing have been resolved, overruled, or denied, as applicable, except with respect to any Buyer Assumed Agreements listed in the Second Cure Notice, for which the objection deadline is September 15, 2023, and a hearing, if necessary, will be held at a date and time to be determined with respect to any unresolved disputes regarding the assumption and assignment of any contracts and leases listed in the Second Cure Notice.

## Highest and Best Offer

G.       As demonstrated by the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a sale process in accordance with, and have, along with the Buyer, complied in all material

respects with, the Bidding Procedures Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Transferred Assets and assume the Assumed Liabilities.

H.        (i) The Debtors and their advisors engaged in a robust and extensive marketing and sale process, both prior to the commencement of these Chapter 11 Cases and through the post-petition sale process in accordance with the Bidding Procedures Order and the sound exercise of the Debtors' business judgment; (ii) the Debtors conducted a fair and open sale process; (iii) the sale process, and the Bidding Procedures, and the Auction were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Transferred Assets, or who the Debtors believed may have had an interest in acquiring the Transferred Assets, to make an offer to purchase the Debtors' assets, including, without limitation the Transferred Assets; (iv) the Debtors and the Buyer have negotiated and undertaken their roles leading to the entry into the Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner; and (v) the sale process conducted in good faith by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Transferred Assets for the Debtors and their estates, was in the best interests of the Debtors, their creditors, and all parties in interest.  Consummating the Sale will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.  There is no legal or equitable reason to delay consummation of the Purchase Agreement and the transactions contemplated therein.

I.        The Debtors have determined, in a valid and sound exercise of their business judgment and in consultation with their advisors and the [Consultation Parties], that the next

highest or otherwise best Qualified Bid (the "Designated Back-Up Bid") for the Transferred Assets was that of [●] (the "Designated Back-Up Bidder")[Reserved].

J.        Approval of the Sale Motion and the Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of their obligations under the Purchase Agreement.

K.        The consummation of the Sale outside a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

L.        Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Sale, as set forth in the Purchase Agreement.

**<u>Good Faith of Buyer</u>**

M.        The consideration to be paid by the Buyer under the Purchase Agreement was negotiated at arm's-length, in good faith and without collusion pursuant to section 363(m) of the Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration for the Transferred Assets.  Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Buyer complied in all respects with the applicable provisions of the Bidding Procedures Order in negotiating and entering into the Purchase Agreement and the other Transaction Documents, and the Purchase Agreement, the other Transaction Documents and the transactions described therein

comply with the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments made or to be made by the Buyer in connection with the Sale have been disclosed in the Purchase Agreement; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors and Buyer is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code; (vi) the negotiation and execution of the Purchase Agreement and the other Transaction Documents were at arm's-length and in good faith without collusion or fraud, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; and (vii) the Buyer has not acted in a collusive manner with any person and at all times acted in good faith and reasonably. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement and the other Transaction Documents. The terms and conditions set forth in the Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

N.      The Debtors and the Buyer, and each of their respective management, boards of directors, members, officers, directors, employees, agents, and representatives, have acted in good faith in connection with negotiations and entry into the Purchase Agreement. The Purchase Agreement and the other Transaction Documents, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Debtors and the Buyer in good faith, without collusion or fraud, and from arm's-length bargaining positions. The Buyer is a "good

faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

**No Fraudulent Transfer**

O.       The consideration provided by the Buyer pursuant to the Purchase Agreement for its purchase of the Transferred Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, all states, territories, possession thereof, and the District of Columbia.

P.       Neither the Buyer nor its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies or partners (each, a "Buyer Party") is a continuation of the Debtors or their respective estates ~~and no Buyer Party is holding itself out to the public as a continuation of the Debtors or their respective estates~~ based on the Sale, the Asset Purchase Agreement, or this Order and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and the Debtors.

**Validity of Transfer**

Q.       Each Seller's board of directors has authorized the execution and delivery of the Purchase Agreement and the Sale of the Transferred Assets to the Buyer.  The Debtors (i) have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority

necessary to consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement.  The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

### Section 363(f) Is Satisfied

R.    The Sale of the Transferred Assets to the Buyer and the assumption and assignment to the Buyer of the Buyer Assumed Agreements (including Buyer's payment of any Cure Costs) under the terms of the Purchase Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Transferred Assets will be free and clear of all Liens, Claims, Interests, and other Liabilities, whether known or unknown, and will not subject any Buyer Party to any liability for any Liens, Claims, Interests, or other Liabilities whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Purchase Agreement with respect to Assumed Liabilities.  All holders of Liens, Claims, Interests, or other Liabilities who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Liens, Claims, Interests, or other Liabilities are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by ~~having~~the fact that their Liens, Claims, Interests, or other Liabilities, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert Liens, Claims, Interests, or other Liabilities, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale,

subject to any rights, claims, and defenses of the Debtors or their estates, as applicable; provided however, that Sale proceeds are paid to the Agents[3] at Closing as provided in paragraph 11 below. Those holders of Liens, Claims or other Liabilities who did object and that have an interest in the Transferred Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Transferred Assets: debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset ~~or recoupment~~(except for setoffs exercised prior to the Petition Date), rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment,

---

[3] As used herein, the term Agents refers collectively to PNC Bank, N.A. in its capacity as Prepetition Revolving Agent and DIP Revolving Agent, and EICF Agent LLC in its capacity as Prepetition Term Agent and DIP Term Agent.

indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Transferred Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of

ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory or non-executory contract or unexpired lease to which a Debtor is a party that is not a Buyer Assumed Agreement; (xi) any other Excluded Liabilities under the Purchase Agreement; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

S.      The transfer of the Transferred Assets to the Buyer under the Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets free and clear of all Liens, Claims, Interests, and other Liabilities, except for Permitted Liens and as expressly provided in the Purchase Agreement.  The Sellers may sell their interests in the Transferred Assets free and clear of all Liens, Claims, Interests, and other Liabilities with the Sale proceeds paid in accordance with paragraph 11 below, and in each case, one or more of the standards set forth in section 363(f) has

been satisfied.  The Buyer would not have entered into the Purchase Agreement and Transaction Documents and would not consummate the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Buyer Assumed Agreements (i) if the transfer of the Transferred Assets were not, except for Permitted Liens and as otherwise expressly provided in the Purchase Agreement, free and clear of all Liens, Claims, Interests, and other Liabilities of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, whether at this time known or unknown, or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests or other Liabilities, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to Permitted Liens and the Assumed Liabilities and expressly excluding the Excluded Liabilities.  Not transferring the Transferred Assets free and clear of all Liens, Claims, Interests, and other Liabilities of any kind or nature whatsoever, except for Permitted Liens and as otherwise expressly provided in the Purchase Agreement, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise (subject only to the Assumed Liabilities), would adversely impact the Debtors' efforts to maximize the value of their estates.

### Assumption and Assignment of the Buyer Assumed Agreements

T.      The assumption and assignment of the Buyer Assumed Agreements pursuant to the terms of this Sale Order are integral to the Purchase Agreement, are in the best interests of

the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

U.      The Debtors have met all requirements of section 365(b) and (f) of the Bankruptcy Code for assumption and assignment of each of the Buyer Assumed Agreements. The Buyer and/or the Debtors have (i) cured and/or provided adequate assurance of cure (including through Buyer's payment of any Cure Costs) of any default existing prior to the Closing under all of the Buyer Assumed Agreements within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Buyer Assumed Agreements within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.  The Buyer has provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) and in accordance with the Bidding Procedures to the extent that any such assurance is required and not waived by the counterparties to such Buyer Assumed Agreements.

V.      At any time prior to the Closing and prior to the rejection of an executory contract or unexpired lease, the Debtors shall have the right, upon request of the Buyer and in accordance with the Bidding Procedures Order, to serve a [Supplemental Cure Notice] upon any non-Debtor counterparty thereto indicating the Debtors' intent to assume and assign (but not reject) such executory contract or unexpired lease.  The objection deadline for all Buyer Assumed Agreements, other than those subject to the Second Cure Notice, lapsed on [●]September 5, 2023.  Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed

in any [Supplemental Cure Notice] with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, the correct Cure Cost alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon counsel to the Debtors and counsel to the Buyer so as to be actually received on or before the deadline set forth in the applicable [Supplemental Cure Notice], which shall be no earlier than ten (10) calendar days after service thereof.  If the parties cannot agree on a resolution of any such objection, the Debtors will seek an expedited hearing before the Court to determine the Cure Cost or other matter in dispute and approve the assumption and assignment of such executory contract or unexpired lease to Buyer.  If no objection is filed prior to the applicable objection deadline, then the counterparties will be deemed to have consented (including consent under Section 365(c)(1) of the Bankruptcy Code) to the assumption and assignment to Buyer and the Cure Cost, and such assumption and assignment to Buyer and the Cure Cost shall be deemed approved by this Sale Order without further order of this Court, provided, however, that a counterparty to an Assumed Agreement shall not be barred from seeking additional amounts on account of any defaults occurring between the deadline to object to the Cure Costs set forth in the applicable Cure Notice and the assumption of the Agreement.

W.     ExceptTo the greatest extent allowed by applicable law, except as provided in the Purchase Agreement, the (i) transfer of the Transferred Assets to the Buyer and (ii) assignment to the Buyer of the Buyer Assumed Agreements, will not subject the Buyer to any liability whatsoever that arises, or is based on conduct of any Seller that occurred, prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession

thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

### Prompt Consummation

X.    Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the sale of the Transferred Assets must be approved and consummated promptly to preserve the value of the Transferred Assets.  Time, therefore, is of the essence in effectuating the Purchase Agreement.  As such, the Debtors and the Buyer intend to close the sale of the Transferred Assets as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Purchase Agreement. Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) or any other applicable Bankruptcy Rule.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.    The Sale Motion is GRANTED to the extent set forth herein.

2.    All objections to or reservation of rights with respect to the Sale Motion or the relief requested therein that have not been withdrawn or resolved as stated on the record of the Sale Hearing are overruled.  All persons and entities who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      The record of these cases, including the Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order, are incorporated herein by reference and the Court takes judicial notice of the record.

4.      The Purchase Agreement and the other Transaction Documents, and all terms and conditions thereof, are hereby approved.  The failure to specifically include any particular provision of the Purchase Agreement or any other Transaction Document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement and other Transaction Documents be authorized and approved in their entirety.

5.      The Designated Back-Up Bidder is hereby approved as the [Back-Up Bidder] (as defined in the Bidding Procedures), and the Designated Back-Up Bid is hereby approved and authorized as the [Back-Up Bid] (as defined in the Bidding Procedures) in accordance with the Bidding Procedures.  To the extent necessary, the terms and conditions of the Back-Up Bid will be approved pursuant to a separate sale order to be submitted at a later date consistent with the terms of the Back-Up Bid[Reserved].

**Transfer of the Transferred Assets as set forth in the Purchase Agreement**

6.      The Debtors are authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale consistent with or in furtherance of the Sale in accordance with the terms and conditions set forth in the Transaction Documents and this Sale Order, (b) assume and assign any and all Buyer Assumed Agreements, and (c) take all further actions and execute and deliver the Transaction Documents and any and all additional instruments and documents that are consistent with, in furtherance of, or may be necessary or appropriate to implement the Purchase Agreement and the other Transaction

Documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

7.      The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (each as defined in the Purchase Agreement).

8.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Buyer in accordance with the Purchase Agreement, the other Transaction Documents and this Sale Order.

9.      At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Transferred Assets, including the Purchased Avoidance Actions, shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code with the Sale proceeds to be paid to the Agents at Closing as provided in paragraph 11 below. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Transferred Assets.  All persons or entities, presently or at or after the Closing, in possession of some or all of the Transferred Assets, are directed to surrender possession of any and all portions of the Transferred Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request. For the avoidance of doubt, as of the Closing, the Purchased Avoidance Actions shall be irrevocably waived by the Buyer and the Debtors, as applicable.

10.     This Sale Order (a) shall be effective as a determination that, as of the Closing and Agents' receipt of the Sale proceeds at Closing as provided in paragraph 11 below, (i) the Transferred Assets shall have been transferred to the Buyer free and clear of all Liens, Claims, Interests, and other Liabilities, except for Permitted Liens and to the extent set forth in the Purchase Agreement, and (ii) the conveyances described herein have been effected, and (b) is

and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and the other Transaction Documents.

11.     At Closing, the net proceeds from the Sale of the Transferred Assets, less the amount of any Disputed Cure Escrow as set forth in paragraph 21 hereof, shall be paid by wire transfer directly to Agents in accordance with wire instructions to be provided by the Agents to the Buyer.  With respect to any proceeds remaining after such payment to Agents, all Liens, Claims, Interests, and other Liabilities with respect to the Transferred Assets shall attach to the proceeds of the Sale ultimately attributable to the property against which such Liens, Claims, Interests, and other Liabilities applied, in the same order of priority and with the same validity, force, and effect that such Liens, Claims, Interests, and other Liabilities applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.  For the avoidance of doubt, the Committee Settlement Amounts, as defined and set forth in paragraph 38 of the *Order (I) Authorizing the Debtors, on a Final Basis, to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims to Post-Petition Lenders, (III) Granting*

*Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507* [D.I 181] shall be preserved for the benefit of the Debtors' estates, and not transferred to the Agents or any other person or entity, from the proceeds of the Sale.

12.     The Buyer shall receive the benefits and burdens of the Assumed Liabilities and if the Buyer disputes any alleged charge, credit or payment under any of the Assumed Liabilities and the parties are unable to come to an agreement regarding the amount owed, the dispute may be adjudicated by this Court or any other court of competent jurisdiction.

13.     Except as otherwise provided in this Sale Order or the Purchase Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims of any kind or nature whatsoever against the Debtors or in any way relating to the Business or the Transferred Assets (whether at this time known or unknown) are forever barred, estopped, and permanently enjoined from asserting such claims (including, without limitation, any right of set-off or recoupment) against any Buyer Party and its property (including, without limitation, the Transferred Assets).

14.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Liens, Claims, Interests, and other Liabilities that the person or entity has with respect to the Debtors or the Transferred Assets or otherwise,

then only with regard to the Transferred Assets that are purchased by the Buyer pursuant to the Purchase Agreement and this Sale Order, (a) the Debtors, at their own expense, are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents (each a "Release Document") on behalf of the person or entity with respect to the Transferred Assets; provided, that with respect to the Liens, Claims, and Interests of Agents any such Release Document shall be in form and substance reasonably acceptable to the applicable Agent, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Interests, and other Liabilities against each Buyer Party and the Transferred Assets, and (c) upon consummation of the Sale, the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Liens, Claims, Interests, and other Liabilities that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Transferred Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.   Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Transferred Assets free and clear of Liens, Claims, Interests, and other Liabilities shall be self-executing and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

## No Successor or Transferee Liability

15.     No Buyer Party shall be deemed, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Sale contemplated by the Purchase Agreement, or the transfer, operation, or use of the Transferred Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Buyer, with respect to any Assumed Liabilities), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations).

16.     Other than as expressly set forth in the Purchase Agreement, no Buyer Party shall have any responsibility for (a) any liability or other obligation of the Debtors or (b) any claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the Purchase Agreement with respect to the Buyer, no Buyer Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations ("Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising,

accruing, or payable under, out of, in connection with, or in any way relating to the Transferred Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefits which is or has been sponsored, maintained or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute. Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer or as otherwise expressly set forth in the Purchase Agreement, to the greatest extent allowed by applicable law, no Buyer Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act (29 U.S.C. §§ 2101 *et seq.*), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, (f) the Fair Labor Standards Act, (g) the Americans with Disabilities Act of 1990 (as amended), (h) Title VII of the Civil Rights Act of 1964, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, or (j) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Buyer's purchase of the Transferred Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Purchase Agreement. Without limiting the foregoing, to the greatest extent allowed by applicable law, no Buyer Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors

or any environmental liabilities associated with the Transferred Assets except to the extent they are Assumed Liabilities set forth in the Purchase Agreement.

17.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Buyer Party or their respective assets (including, without limitation, the Transferred Assets), with respect to any Successor or Transferee Liability including, without limitation, the following actions, in each case, with respect to any such Successor or Transferee Liability: (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, (except for setoffs exercised prior to the Petition Date) or right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Transferred Assets or conduct any of the businesses operated with respect to such assets.

**Good Faith of Buyer**

18.    The Sale contemplated by the Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without

limitation, the assumption and assignment of the Buyer Assumed Agreements), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

19.     Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer for the Transferred Assets under the Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Buyer Assumed Agreements**

20.     The Debtors are authorized and directed at the Closing to assume and assign each of the Buyer Assumed Agreements to the Buyer pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Buyer Assumed Agreements to the Buyer.  The payment by the Buyer of the applicable Cure Costs (if any) under a Buyer Assumed Agreement shall (a) effect a cure of all defaults existing thereunder as of the Closing, and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.

21.     Those objections identified on the Notice of Agenda (as amended) filed on September 6, 2023 were timely filed with respect to assumption and assignment of certain Buyer Assumed Agreements.   The Cure Costs for any Buyer Assumed Agreement to which no objection was timely filed (including those set forth in the Second Cure Notice to the extent no objection is timely filed) are hereby fixed at the amounts set forth on the applicable Cure Notice, and the contract counterparties to such Buyer Assumed Agreements are forever bound by such Cure Costs, provided, however, that a counterparty to an Assumed Agreement shall not be barred from seeking additional amounts on account of any defaults occurring between the

deadline to object to the Cure Costs set forth in the applicable Cure Notice and the assumption of the agreement.  Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall pay to the applicable contract counterparty the Cure Costs relating to such Buyer Assumed Agreements at or as soon as reasonably practicable following the Closing.  With respect to any Buyer Assumed Agreements with respect to which a timely objection to the Cure Costs was timely filed (a "Cure Objection"), the Debtors shall set aside in escrow any disputed Cure Cost amounts (a "Disputed Cure Escrow") pending resolution of the applicable Cure Objections (whether by subsequent Court order or by agreement of the Debtors, the Buyer, and the applicable contract counterparty), and the Debtors shall pay to the applicable contract counterparty the amount of any Cure Costs as determined in accordance with this paragraph within three (3) business days after the Cure Objection is resolved.  Upon payment of ~~such~~the Cure Costs as provided for herein, the contract counterparties to such Buyer Assumed Agreements are enjoined from taking any action against the Debtors or their estates with respect to any claim for cure. Subject to and consistent with the terms and conditions of Section 3.03 of the Purchase Agreement, the Purchase Price shall be subject to potential adjustment on account of any Cure Cost Deductions.

22.     Pursuant to section 365(f) of the Bankruptcy Code (subject to Buyer's payment or provision of the Cure Costs or the Debtors' establishment of a Disputed Cure Escrow), the Buyer Assumed Agreements to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the Buyer Assumed Agreements or other restrictions prohibiting their assignment or transfer.  Any provisions in any Buyer Assumed Agreement that prohibit or condition the assignment of such Buyer Assumed Agreement to the Buyer (including

the invocation of Section 1927 of the Social Security Act, 42 U.S.C. § 1396r-8, if applicable) or allow the counterparty to such Buyer Assumed Agreement to terminate, recapture, setoff or recoup, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Buyer Assumed Agreement to the Buyer, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Buyer Assumed Agreements have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Buyer Assumed Agreements, and such Buyer Assumed Agreements shall remain in full force and effect for the benefit of the Buyer.  Each counterparty to the Buyer Assumed Agreements shall, with respect to each Buyer Assumed Agreement, be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or any Buyer Party or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Buyer Assumed Agreements, or any purported written or oral modification to the Buyer Assumed Agreements and (b) asserting against any Buyer Party (or its respective property, including, without limitation, the Transferred Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

23.    Upon the Closing (or the payment of the Cure Costs or establishment of a Disputed Cure Escrow, whichever is later), the Buyer shall be deemed to be substituted for the

Debtors as a party to the applicable Buyer Assumed Agreements and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Buyer Assumed Agreements.   There shall be no rent or payment accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Buyer Assumed Agreements.   The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Buyer Assumed Agreement shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of such Buyer Assumed Agreement.   The validity of the assumption and assignment of any Buyer Assumed Agreement to the Buyer shall not be affected by any existing dispute between the Debtors and any counterparty to such Buyer Assumed Agreement.   Any party that may have had the right to consent to the assignment of any Buyer Assumed Agreement is deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

24.    Buyer has provided adequate assurance of future performance with respect to each of the Buyer Assumed Agreements within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

25.    The assignments of each of the Buyer Assumed Agreements are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

### **Other Provisions**

26.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit (federal or state) may revoke or suspend any permit or License relating to the Transferred Assets sold, transferred, or conveyed to the Buyer on account of (i) the filing or pendency of these Chapter 11 Cases or (ii) the consummation of the Sale contemplated by the Purchase

Agreement or the failure of the Debtors to pay any pre-petition claims of such governmental unit.

27.    The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies or exercise any of its rights under the Purchase Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

28.    The terms and provisions of the Purchase Agreement, the other Transaction Documents and this Sale Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Transferred Assets, all counterparties to the Buyer Assumed Agreements, the Buyer, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s) appointed in any of the Debtors' Chapter 11 Cases or upon conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.  The Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s).

29.    The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered:  (a) confirming any chapter 11 plan in any of these Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this

Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in these Chapter 11 Cases, or following dismissal of these Chapter 11 Cases.

30.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement (including any document requesting a name change or assignment thereof and regardless of whether such agency or department has a Claim against the Debtors).

31.     The Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

32.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order; provided, however, that (i) nothing herein shall subject the Buyer to any liability to a governmental unit for penalties for days of violation prior to closing, and (ii) Buyer shall retain all rights and defenses it may have under non-bankruptcy law with respect to any police or regulatory action brought by governmental units.  Nothing in this Sale Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

33.     The terms of the Purchase Agreement may be waived, modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such waiver, modification, amendment, or supplement does not, based on the Debtors' business judgment, and in consultation with the [Consultation Parties], have an adverse effect on the Debtors' estates or the Agents.  The Debtors shall provide the [Consultation Parties] with reasonable prior written notice (which may be by e-mail to counsel of record for each [Consultation Party]) under the circumstances of any such waiver, modification, amendment, or supplement of the Purchase Agreement.  For the avoidance of doubt, all other waivers, modifications, amendments, or supplements to the terms of the Purchase Agreement shall require Court approval.

34.     Any claim of the Buyer in respect of fees, costs, and expenses payable under the Transition Services Agreement and Reverse Transition Services Agreement shall constitute allowed administrative expense claims under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

35.     Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the Employee Benefits Agreements (as defined in the *Objection of Cigna to Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Assets, (II) Scheduling Hearings and Objection Deadlines With Respect to the Debtors' Authority to Sell, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 142]) shall be assumed and assigned to the Buyer as of the Closing Date, and, in lieu of cure, all obligations due and unpaid under the Employee Benefits Agreements accruing prior to the Closing Date shall pass through and survive assumption and

assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations.  The terms of paragraph 4 are incorporated in this paragraph 35 as if fully set forth herein.

36.    Harco National Insurance Company ("Harco") issued certain surety bonds on behalf of the Debtors (collectively, the "Existing Surety Bonds" and, each individually, an "Existing Surety Bond").  The Existing Surety Bonds were issued pursuant to that certain Agreement of Indemnity dated April 19, 2021 (the "Existing Indemnity Agreement") executed by one or more of the Debtors.  Nothing in this Sale Order, the Purchase Agreement, or the Sale, or any documents related to any of the foregoing shall:

(a)    Be construed to authorize or permit the assumption and assignment of any Existing Surety Bond, or the Existing Indemnity Agreement, or to obligate Harco to replace any Existing Surety Bond in connection with the Sale;

(b)    Be deemed to provide Harco's consent to the involuntary substitution of any principal under any Existing Surety Bond and Existing Indemnity Agreement.  Additionally, the Buyer shall not be deemed a substitute principal under any Existing Surety Bond or the Existing Indemnity Agreement; or

(c)    Be deemed to (i) alter, limit, modify, release, waive or prejudice any rights, remedies and/or defenses of Harco under any Existing Surety Bond, (ii) alter, limit, modify, release, waive or prejudice any rights of Harco under the Existing Indemnity Agreement, (iii) alter, limit, modify, release, waive or prejudice any rights of Harco under the Order Granting Relief from the Automatic Stay and for Adequate Protection [Docket No. 226], or other order of this Court, or (iv) alter, limit, modify, release, waive or prejudice any rights of Harco against the Debtors in respect of any of the foregoing.  The Debtors reserve all rights with respect to any of Harco's claims against the Debtors.

37.    Pursuant to the *Notice of Successful Bidder's Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 289] (the "Assumption Notice"), the Buyer intends to have the Debtors assume and assign to the Buyer the following contracts

(collectively, the "Assumed Con Edison Contracts") with Consolidated Edison Company of New York, Inc. ("Con Edison"):

  (a)    Purchase Order # 5634925, between Con Edison and Williams Specialty Services, LLC, relating to the Debtors' installation of a 36-inch gas main and related work on the Bronx River;

  (b)    Purchase Order # 5426662, between Con Edison and Williams Specialty Services, LLC, relating to replacement of an elevator in the Brooklyn Shaft of the Hudson Avenue Tunnel; and

  (c)    Blanket Purchase Agreement # 5921728, between Con Edison and Williams Specialty Services, LLC, relating to civil repairs for various generating stations, substations and facilities locations throughout the Con Edison & Orange and Rockland Utilities, Inc. service territory, the term of which commenced May 20, 2023 and expires May 31, 2026.

On September 1, 2023, Con Edison filed its *Objection of The Consolidated Edison Company of New York, Inc. to Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 257] (the "Con Edison Cure Objection"), objecting *inter alia* to the cure amounts proposed by the Debtors for assumption and assignment of the Assumed Con Edison Contracts and raising issues concerning the Buyer's adequate assurance of future performance under the Assumed Con Edison Contracts.  The Debtors, Con Edison and the Buyer agree to adjourn the status hearing on the Con Edison Cure Objection to September 20, 2023 at 10:30 a.m. (the "Adjourned Con Edison Contract Status Hearing") while the parties attempt to reach a resolution of the issues raised therein as follows:

  (a)    The Debtors, Con Edison, and the Buyer agree to continue to exchange documents and information regarding the monetary cure amounts required for the Assumed Con Edison Contracts; and

  (b)    With respect to adequate assurance of future performance, the Buyer agrees to submit to Con Edison's Qualification Process (as defined and described in the Con Edison Cure Objection) to become a qualified Con Edison contractor.  If the Buyer qualifies

00054333.2                                                                                                                  00054333.4

as an approved Con Edison subcontractor/vendor after submitting to the Qualification Process, the Con Edison Cure Objection as to the adequate assurance of future performance requirement shall be deemed resolved. If, however, the Buyer fails to qualify as an approved Con Edison contractor through the Qualification Process, the parties shall litigate any such unresolved issues at some agreed upon future hearing date.

38. ~~34.~~ From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale without further order of the Court, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title and interest in and to the Transferred Assets and the Buyer Assumed Agreements.

39. ~~35.~~ The failure specifically to include any particular provisions of the Purchase Agreement or the Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the Purchase Agreement and Transaction Documents are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

40. ~~36.~~ All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41. ~~37.~~ Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9014 or any other applicable Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the terms and conditions of this Sale Order shall be

immediately effective and enforceable upon its entry, there shall be no stay of execution or effectiveness of this Sale Order, and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

42.    38. To the extent there is any conflict between the terms of this Sale Order and the Purchase Agreement, the terms of this Sale Order shall control.  Nothing contained in any chapter 11 plan hereinafter confirmed in these Chapter 11 Cases or any order confirming such chapter 11 plan, or any other order of the Court, shall conflict with or derogate from the provisions of the Purchase Agreement or any other Transaction Document or the terms of this Sale Order.

43.    39. This Court shall retain exclusive jurisdiction to: (a) interpret, implement, and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the Purchase Agreement and other transaction documents, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Sale Order and the Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including any disputed Cure Costs and the interpretation of the terms, conditions, and provisions hereof and thereof, and the status, nature, and extent of the Transferred Assets.

Wilmington, Delaware
Dated: _____, 2023

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Purchase Agreement**

**Exhibit 2**

**Side Letter Amendment**

Document comparison by Workshare 10.0 on Thursday, September 7, 2023 12:53:20 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\ccb-vdc1\DMS\WDOCS\Clients\11286\001\~VER\2\00054333.DOCX |
| Description | 00054333 |
| Document 2 ID | file://\\ccb-vdc1\DMS\WDOCS\Clients\11286\001\00054333.DOCX |
| Description | 00054333 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 125 |
| Deletions | 88 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 217 |